## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-11721 (LSS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

## MOTION OF DEBTORS FOR ENTRY OF
## INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO
## USE CASH COLLATERAL, (II) PROVIDING ADEQUATE PROTECTION TO
## PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY,
## (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") state the following in support of this motion.[2]  In support of this motion, the Debtors respectfully submit the *Declaration of John Boken, Interim Chief Executive Officer of MVK FarmCo LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "<u>First Day Declaration</u>"), filed contemporaneously herewith and incorporated herein by reference.  In further support of this motion, the Debtors respectfully state the following:

### <u>Preliminary Statement</u>

1.    The Debtors commence these chapter 11 cases with the support of a substantial majority of the Prepetition Secured Parties.[3]  As described more fully in the First Day Declaration,

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2]    Capitalized terms used but not otherwise defined in this motion shall have the meanings ascribed to them in the First Day Declaration or the Interim Order, as applicable.

[3]    A lender support agreement was entered into by and among the Prepetition PropCo Lenders signatory thereto, the Prepetition OpCo Lenders signatory thereto, the Prepetition Bridge Lenders signatory thereto, the Prepetition PropCo Agent, the Prepetition OpCo Agent, and the Prepetition Bridge Agents.

the Debtors are pursuing one or more value-maximizing sale transactions, or, in the alternative, an equitization transaction with the Debtors' Prepetition Secured Parties via confirmation of a chapter 11 plan (the "Plan").

2.    In the months preceding the Petition Date (as defined herein), the Debtors, their advisors, and the Prepetition Secured Parties worked diligently and negotiated in good faith to secure bridge financing that would provide the Debtors with sufficient runway to reach the growing and harvest season—the time that generates the vast majority of the Debtors' revenue— and conduct a robust out-of-court sale and marketing process.  Despite the parties' best efforts, however, an out-of-court transaction could not be effectuated, and the Debtors have pivoted to implement the terms of a value-maximizing restructuring through a chapter 11 process.

3.    Given the level of consensus for the Debtors' dual-tracked path to exit, the Debtors have reached agreement with the Prepetition Secured Parties on the terms of the Debtors' consensual use of Cash Collateral (as defined herein).  The Debtors need access to cash on hand and cash flow from operations to fund their working capital needs, capital expenditures, for other general corporate purposes, and for the administrative expenses of these chapter 11 cases.  The ability to satisfy these expenses as and when due is necessary for the Debtors' continued operation of their businesses during the pendency of these chapter 11 cases and the successful implementation of a restructuring process.  Accordingly, the Debtors' access to Cash Collateral during these chapter 11 cases is critical.

4.    For the reasons detailed herein and in the First Day Declaration, the relief proposed in the Interim Order and Final Order (each as defined herein) will maximize the value of the Debtors' estates and provide a smooth transition into chapter 11.

**Relief Requested**

5.      The Debtors seek entry of an interim order, substantially in the form attached hereto

as **Exhibit A** (the "Interim Order"), and a final order (the "Final Order,"[4] and collectively with the

Interim Order, the "Cash Collateral Orders"):

    a.      authorizing the Debtors to use the "Cash Collateral," as defined in
            section 363(a) of the Bankruptcy Code, of the Prepetition Secured Parties;

    b.      granting adequate protection to the Prepetition Secured Parties, solely to the
            extent provided in the Cash Collateral Orders;

    c.      modifying the automatic stay imposed by section 362 of the Bankruptcy
            Code to the extent necessary to implement and effectuate the terms of the
            Cash Collateral Orders;

    d.      scheduling a final hearing (the "Final Hearing") within approximately
            21 days after the commencement of these chapter 11 cases to consider entry
            of the Final Order; and

    e.      granting related relief.

**Jurisdiction and Venue**

6.      The United States Bankruptcy Court for the District of Delaware (the "Court") has

jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing*

*Order of Reference* from the United States District Court for the District of Delaware, dated

February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors

confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"),

to the entry of a final order by the Court in connection with this motion to the extent that it is later

determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.

---

[4]      The Debtors will file a proposed form of the Final Order prior to the Final Hearing (as defined herein).

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are sections 105, 361, 362, 363, 364, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-1, 4001-2, 9006-1, and 9013-1.

## Background

9.      The Debtors are the United States' largest provider of stone fruit, operating an integrated network of farms, ranches, packaging facilities, and grocers.  Founded in 1999 and headquartered in Fresno, California, the Debtors cultivate approximately 18,000 acres of land nestled throughout the San Joaquin Valley.  Each year, the Debtors employ over 8,000 ranchers, harvesters, warehousers, packers, and shippers who, together, grow, harvest, and sell premium quality, fresh stone fruits and tree fruit, including peaches, nectarines, plums, and unique hybrids, such as pluots.  The Debtors' reputation for quality has allowed it to establish strong partnerships with blue chip customers throughout the United States and internationally, and its products can be found in brand name grocery stores, supermarkets, and specialty markets worldwide.

10.      On October 13, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## **The Debtors Have an Immediate Need for Use of Cash Collateral**

11.     The Debtors require immediate access to liquidity to ensure that they can continue operating their business during these chapter 11 cases, preserve the value of their estates for the benefit of all parties in interest, and pursue confirmation and consummation of the Plan.  Without prompt access to Cash Collateral, the Debtors would be unable to satisfy, for example, payroll obligations and trade payables incurred in the ordinary course of business.  Absent the ability to fund ordinary course operations of the business, the Debtors would be unable to preserve value for all stakeholders or administer these chapter 11 cases, all which would cause immediate and irreparable harm to the value of the Debtors' estates to the detriment of all stakeholders.

## **Concise Statement Pursuant to Bankruptcy Rules 4001(b) and Local Rule 4001-2**[5]

12.     Pursuant to Bankruptcy Rule 4001(b) and Local Rule 4001-2(a)(ii), the Debtors submit the following concise statement of the material terms of this Interim Order:

| Summary of Material Terms | | Location |
|---|---|---|
| **Parties with an Interest in Cash Collateral**<br>Bankruptcy Rule 4001(b)(1)(B)(i) | All parties set forth below shall collectively be referred to as the "Prepetition Secured Parties": <br><br>• **Prepetition PropCo Agent**.  Wilmington Trust, National Association ("Wilmington Trust"), in its capacity as successor to Coöperatieve Rabobank U.A., New York Branch ("Rabobank"), as administrative agent and collateral agent under the Prepetition PropCo Credit Agreement. <br><br>• **Prepetition PropCo Lenders**.  Each lender under the Prepetition PropCo Credit Agreement. <br><br>• **Prepetition OpCo Agent**.  Royal Bank of Canada ("RBC"), in its capacity as administrative and collateral agent under the Prepetition OpCo Credit Agreement. <br><br>• **Prepetition OpCo Lenders**.  Each lender under the Prepetition OpCo Credit Agreement. <br><br>• **Prepetition Bridge Administrative Agent**.  Rabobank, in its capacity as administrative agent under the Prepetition Bridge Credit Agreement. | Annex 1 ¶ E |

---

[5]     The summaries contained in this motion are qualified in their entirety by the provisions of the Interim Order. To the extent anything in this motion is inconsistent with the Interim Order, the terms of the Interim Order shall control.

| Summary of Material Terms | | Location |
|---|---|---|
| | • **Prepetition Bridge PropCo Collateral Agent**. Rabobank, in its capacity as collateral agent with respect to the Prepetition PropCo Collateral under the Prepetition Bridge Credit Agreement. | |
| | • **Prepetition Bridge OpCo Collateral Agent**. RBC, its capacity as collateral agent with respect to the Prepetition OpCo Collateral under the Prepetition Bridge Credit Agreement. | |
| | • **Prepetition Bridge Lenders**. Each lender under the Prepetition Bridge Facility. | |
| **Amount of Cash Collateral and Purposes for Use of Cash Collateral** Bankruptcy Rule 4001(b)(1)(B)(ii) Local Rule 4001-2(a)(i)(A) | The Debtors seek authority to use all or substantially all of the Debtors' cash and cash equivalents.  The Debtors will operate consistent with the Approved Budget, and all disbursements of the Debtors will be consistent with the provisions of the Approved Budget, subject in each case to the Permitted Variance.<br><br>In accordance with the terms and conditions of the Interim Order, for, among other things, (i) working capital and general corporate purposes, (ii) the payment of fees, interest, payments, and expenses under the Prepetition Bridge Facility and the Prepetition Loan Documents, and (iii) payment of allowed administrative costs and expenses of these chapter 11 cases, in each case, in accordance with the Interim Order and consistent with the Approved Budget (subject to the Permitted Variance). | ¶ 2 |
| **Budget** Bankruptcy Rule 4001(b)(1)(B)(ii) Local Rule 4001-2(a)(i)(E) and 4001-2(a)(iii) | The initial Approved Budget is attached to the Interim Order as <u>Exhibit A</u>.  Prior to the end of the 9-week period covered by the Approved Budget, the Debtors shall propose an updated budget for the 9-week period immediately following the 9-week period covered by the initial Approved Budget.  Such proposed budget shall become the "Approved Budget" for such 9-week period once approved in writing by each of the Prepetition Agents (at the direction of the applicable Required Lenders).  The initial Approved Budget is an integral part of this Interim Order and has been relied upon by the Prepetition Secured Parties to consent to this Interim Order.  The Debtors represent that the initial Approved Budget is reasonable under the facts and circumstances as of the date of delivery.  The Debtors believe that the initial Approved Budget is achievable and will allow the Debtors to operate in the Cases, consummate the sale process, and pay postpetition obligations as they come due. | Preamble ¶ G |
| **Termination Date** Bankruptcy Rule 4001(b)(1)(B)(iii) Local Rule 4001-2(a)(i)(M), (S) | The Debtors are authorized to use Cash Collateral in accordance with the Approved Budget from the period from the Petition Date through the date on which a Termination Event occurs. | ¶ 16(a) |
| **Termination Events** Bankruptcy Rule 4001(b)(1)(B)(iii) Local Rule 4001-2(a)(i)(M) | The events set forth in paragraph 16(a) of the Interim Order are collectively referred to as the "<u>Termination Events</u>" and include termination events that are customary in a cash collateral order, such as:<br><br>• the date that is thirty-five (35) calendar days after the Petition Date, if the Final Order, in form and substance acceptable to the Prepetition Agents (at the direction of the applicable Required Lenders), has not been entered by the Court by such date; | ¶ 16(a) |

| Summary of Material Terms | | Location |
|---|---|---|
| | • the consummation of any sale of all or substantially all of the assets of, or equity interests in, the Debtors; | |
| | • the effective date of a chapter 11 Plan of any of the Debtors; | |
| | • the Debtors' failure to make any payment under this Interim Order or the Prepetition Loan Documents (as modified by paragraph 17(c) of the Interim Order) to any of the Prepetition Secured Parties within 3 Business Days as and when due and payable hereunder or thereunder (subject to any applicable grace period, if any, provided for in the Prepetition Credit Agreement) or to timely perform or comply with any other material term, provision, condition or obligation under this Interim Order within 5 Business Days of notice from the applicable Prepetition Secured Parties; | |
| | • the filing by the Debtors of any motion without the prior written consent of Prepetition Agents (at the direction of the applicable Required Lenders) to obtain financing under section 364 of the Bankruptcy Code that does not provide for the immediate payment in full in cash of all Prepetition Secured Obligations; | |
| | • the occurrence of any Event of Default under (and as defined in) the Prepetition Bridge Credit Agreement (as modified by paragraph 17(c) of the Interim Order and excluding any requirements of the Debtors to obtain entry and comply with the terms of the Interim Order and Final Order); | |
| | • the Interim Order (or after entry of a Final Order, the Final Order), having been stayed, vacated, reversed, or rescinded, or, without the prior written consent of the Prepetition Agents (at the direction of the Required Lenders), revised, amended, or modified, or the Debtors having filed or supported a motion or other pleading for entry of an order revoking, reversing, staying, vacating, terminating, extending, rescinding, or seeking reconsideration of any provision of the Interim Order (or after entry of a Final Order, the Final Order); and | |
| | • the provisions of the Interim Order (or after entry of a Final Order, the Final Order) for any reason ceasing to be valid, binding, or enforceable against any of the Debtors, or any of the Debtors shall so state in writing, or shall commence or join in any legal proceeding to contest in any manner that this Interim Order (or after entry of a Final Order, the Final Order) constitutes a valid, binding, or enforceable obligation and liability of the Debtors. | |
| **Adequate Protection** Bankruptcy Rule 4001(b)(1)(B)(iv) Local Rule 4001-2(a)(i)(G), (K) | The adequate protection provided to the Prepetition Secured Parties includes: | ¶ 3 |
| | • **Adequate Protection Liens**. To the extent of, and in an aggregate amount equal to, any aggregate Diminution in Value of their interests in the Prepetition Collateral, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and subject in each case to the Carve Out: | |
| |     o The Prepetition PropCo Agent and the other Prepetition PropCo Secured Parties shall have replacement security interests in and liens upon all Adequate Protection Collateral, which PropCo Adequate Protection Liens shall be subject to the terms and conditions in the Interim Order; | |
| |     o The Prepetition OpCo Agent and the other Prepetition OpCo Secured Parties, shall have replacement security interests in and liens upon all Adequate Protection Collateral, which OpCo | |

Adequate Protection Liens shall be subject to the terms and conditions in the Interim Order;

    o  The Prepetition Bridge Agent and the other Prepetition Bridge Secured Parties, on account of the Prepetition Bridge Loans, shall have replacement security interests in and liens upon all Adequate Protection Collateral, which Bridge Loan Adequate Protection Liens shall be subject to the terms and conditions in the Interim Order.

- **Adequate Protection Superpriority Claims**. Subject to the Carve Out, (w) to the extent of any Diminution in Value of the Prepetition Collateral, the Prepetition Bridge Agent and the other Prepetition Bridge Secured Parties shall have, on account of the Prepetition New Money Bridge Loans, allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code, (x) to the extent of any Diminution in Value of the Prepetition Collateral, the Prepetition Bridge Agent and the other Prepetition Bridge Secured Parties shall have, on account of the Prepetition Bridge Roll-Up Loans, allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code, which shall be immediately junior and subject to the New Money Bridge Adequate Protection Superpriority Claims, (y) to the extent of any aggregate Diminution in Value of the Prepetition PropCo Collateral, the Prepetition PropCo Agent and the other Prepetition PropCo Secured Parties shall have allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code, which shall be *pari passu* with the OpCo Adequate Protection Superpriority Claims and immediately junior and subject to the Bridge Adequate Protection Superpriority Claims and (z) to the extent of any Diminution in Value of the Prepetition OpCo Collateral, the Prepetition OpCo Agent and the other Prepetition OpCo Secured Parties shall have allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code, which shall be *pari passu* with the PropCo Adequate Protection Superpriority Claims and immediately junior and subject to the Bridge Adequate Protection Superpriority Claims, in each case against each of the Debtors, jointly and severally, and payable from and having recourse to all Adequate Protection Collateral.

- **Adequate Protection Payments**. The Prepetition Bridge Agent (on behalf of the Prepetition Bridge Lenders) shall receive from the Debtors cash payments in an amount equal to all prepetition and postpetition accrued and unpaid interest on account of the Prepetition New Money Bridge Loans at the rate provided for in the Prepetition Bridge Credit Agreement as and when due under the Prepetition Bridge Credit Agreement.

- **Additional Adequate Protection**.

    o  **Professional Fees**. The Debtors will pay the reasonable and documented fees, out-of-pocket costs and expenses of the Prepetition Agents and Steering Committee in accordance with paragraph 19(a) of the Interim Order. The Debtors shall timely pay the fees and expenses owing to ACM Management Company, LLC in accordance with the terms of the letter agreement, dated October 12, 2023, by and among the Prepetition Agents and ACM Management Company, LLC.

    o  **Financial Reporting**. The Debtors shall comply with the reporting requirements set forth in paragraph 3(d) of the Interim Order.

30855641.2

| Summary of Material Terms | | Location |
|---|---|---|
| **Limitations on Estate Funds Released to the Challenge Period** Local Rule 4001-2(a)(i)(L) | The limitation on estate funds related to the Challenge Period is $50,000. | ¶ 8 |
| **Carve-Out** Bankruptcy Rule 4001(b)(1)(B)(iii) Local Rule 4001-2(a)(i)(F) | The Interim Order provides a "Carve Out" of certain statutory fees, allowed professional fees of the Debtors and any Committee appointed in the chapter 11 cases pursuant to section 1103 of the Bankruptcy Code and a Post-Carve Out Trigger Notice Cap, all as detailed in the Interim Order. | ¶ 9 |
| **Waiver/Modification of Automatic Stay** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(S) | • Upon the occurrence of a Termination Event, without further notice to, hearing, or order from the Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the Prepetition Agents, acting at the request of the applicable Required Lenders to (i) deliver to the Debtors a Termination Notice (as defined below) and (ii) declare the termination, restriction or revocation of the ability of the Debtors to use Cash Collateral, subject to paragraph 16(c) below<br><br>• In addition, upon the occurrence and during the continuation of a Termination Event, the Prepetition Agents, acting at the request of the applicable Required Lenders and subject to the Intercreditor Agreements, shall provide counsel to the Debtors, counsel for any Committee appointed in the Cases (if any), and the U.S. Trustee, five (5) business days' prior written notice (the "Termination Notice") (which may be provided by email or other electronic means) of the occurrence of the Termination Event.<br><br>• Unless the Court has determined that a Termination Event has not occurred during the Remedies Notice Period (or if the Debtors do not contest the occurrence of the Termination Event during the Remedies Notice Period), upon the expiration of the Remedies Notice Period, without further notice to, hearing or order from the Court, the automatic stay as to the Prepetition Agents shall automatically be vacated and modified for the purpose of permitting the Prepetition Agents (acting at the request of the applicable Required Lenders) to exercise all rights and remedies available under or pursuant to this Interim Order, the Prepetition Loan Documents, or applicable law with respect to the Prepetition Collateral and the Adequate Protection Collateral. | ¶ 16 |
| **Stipulations of the Debtors** Local Rule 4001-2(a)(i)(B) | The Interim Order contains certain stipulations by the Debtors, among other things, to:<br><br>• the amount of the claims of the Prepetition Agents and Prepetition Secured Parties as of the Petition Date, including accrued and unpaid interest and fees;<br><br>• the validity, perfection, and priority of the liens and security interests securing the Prepetition PropCo Facility, Prepetition OpCo Facility, and Prepetition Bridge Loans;<br><br>• the lack of a basis to challenge or avoid the validity, enforceability, priority, or perfection of the liens and security interests securing the Prepetition PropCo Facility, Prepetition OpCo Facility, and Prepetition Bridge Loans;<br><br>• the relative priority of the liens securing the Prepetition PropCo Facility, Prepetition OpCo Facility, and Prepetition Bridge Loans; and | Annex 1 |

| Summary of Material Terms | | Location |
|---|---|---|
| | • the fact that all cash proceeds, subject to certain exceptions set forth in the Interim Order, are Cash Collateral of the Prepetition Secured Parties. | |
| **Binding Effect of the Debtors' Stipulations on Third Parties and Challenge Period** Bankruptcy Rule 4001(b)(1)(B)(iii); Local Rule 4001-2(a)(i)(Q) | The Debtors' stipulations, admissions, agreements, releases, and waivers contained in the Interim Order, including the Stipulations, are and shall be irrevocably binding upon the Debtors and any and all of the Debtors' successors in interest and assigns (including, without limitation, any chapter 7 or chapter 11 trustee, responsible person, examiner with expanded powers, or other estate representative). | ¶¶ 7, 26 |
| | Parties in interest have until no later than the date that is the date that is seventy-five (75) calendar days following entry of the Interim Order, as such date may be extended to any such party in interest with the consent of the Prepetition Agents (with the consent of the applicable Required Lenders and each applicable Prepetition Secured Party that is the subject of a Challenge) or by any such later date as has been ordered by the Court for cause upon a motion filed and served within the Challenge Period to (i) object to or challenging any of the Stipulations or (ii) otherwise asserting or prosecuting any action against the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees in connection with or related to the matters covered by the Stipulations. | |
| | In the Debtors' proposed Final Order, the Debtors will request the Challenge Period be the earliest of (i) the date that is seventy-five (75) calendar days following entry of this Interim Order, (ii) five (5) calendar days prior to any auction to be held in connection with the sale of any assets of the Debtors, solely with respect to any Challenge related to such assets or the Prepetition Secured Parties' interests therein or (iii) five (5) calendar days prior to any hearing with respect to a motion by the Debtors to sell assets, solely with respect to any Challenge related to such assets or the Prepetition Secured Parties' interests therein. | |
| **Provisions Limiting the Rights of Parties in Interest** Local Rule 4001-2(a)(i)(T) | The Interim Order does not seek to limit what parties in interest (other than the Debtors) may raise at a hearing during the Remedies Notice Period. | ¶ 16(d) |
| **506(c) Waiver** Local Rule 4001-2(a)(i)(C) | The Debtors shall be deemed, subject to the entry of the Final Order, to have waived any rights, benefits or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the Prepetition Secured Parties, the Prepetition Liens, or the Prepetition Collateral. Except to the extent of the Carve Out, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against, subject to the entry of the Final Order, the Prepetition Secured Parties, any of their respective claims, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise. Nothing contained in the Interim Order, in the Final Order or in the Prepetition Loan Documents shall be deemed a consent by the Prepetition Secured Parties to any charge, lien, assessment or claim against, or in respect of, the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and no such consent shall be implied from any other action, inaction, or acquiescence by any such parties. | ¶ 11 |

| Summary of Material Terms | | Location |
|---|---|---|
| **Provisions Affecting Consideration of the Equities of the Case under Section 552(b)(1)** Local Rule 4001-2(a)(i)(W) | Subject to the entry of the Final Order, and subject to the priorities set forth in the Interim Order, in no event shall the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral. The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to any Prepetition Collateral, or any proceeds, product, offspring or profits thereof. | ¶¶ 31–32 |
| **Provisions Establishing Sale or Plan Milestones** Local Rule 4001-2(a)(i)(H) | The Interim Order provides for the following milestones, among others: <br>• Within 5 days after the Petition Date, the Debtors will file a motion seeking approval of bidding procedures (the "Bidding Procedures Motion") in a form and substance reasonably satisfactory to the Prepetition Agents; <br>• Within 28 days after the Petition Date, the Court will have entered an order approving the Bidding Procedures Motion; and <br>• Any other obligations under the Bidding Procedures Order. | ¶ 4 <br> Annex 3 |

## Explanation for Inclusion of Significant Provisions Pursuant to Local Rule 4001-2(a)(i)

**II.    The Significant Provisions Are Appropriate and Justified Under the Circumstances of These Chapter 11 Cases.**

13.    Local Rule 4001-2(a)(i) requires that the Debtors explain the reason for including certain significant provisions described in Local Rules 4001-2(a)(i)(N)–(X) (collectively, the "Significant Provisions").[6]  The Debtors believe that each of the Significant Provisions and the Carve Out is justified and necessary in the context and circumstances of these chapter 11 cases.

**A.    The Scope of the Carve Out Is Appropriate (Del. Bankr. L.R. 4001-2(a)(i)(F)).**

14.    The adequate protection proposed in the Interim Order is subject to the Carve Out. Without the Carve Out, the Debtors and other parties in interest may be deprived of certain rights and powers because the services for which professionals may be paid in these chapter 11 cases would be restricted.  *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990)

---

[6]    Local Rules 4001-2(a)(i)(N), (O), and (R) are not applicable to the Interim Order.  In addition, as further explained above, Local Rule 4001-2(a)(i)(P) does not apply, and Local Rules 4001-2(a)(i)(U)–(X) are only applicable upon entry of the Final Order.

(observing that courts insist on carve-outs for professionals representing parties in interest because "[a]bsent such protection, the collective rights and expectations of all parties-in-interest are sorely prejudiced").  The Carve Out does not directly or indirectly deprive the Debtors' estates or other parties in interest of possible rights and powers.  Additionally, the Carve Out protects against administrative insolvency during these chapter 11 cases by ensuring that assets remain for the payment of the Clerk of the Court or U.S. Trustee fees and professional fees of the Debtors and any statutory committee.

**B.      The Findings of Validity, Perfection, or Amount of Prepetition Liens and Challenge Period Are Appropriate (Del. Bankr. L.R. 4001-2(a)(i)(Q)).**

15.      Local Rule 4001-2(a)(i)(Q) requires explicit disclosure of provisions that bind the estate or other parties in interest with respect to the validity, perfection, or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order to investigate such matters.  Here, the Interim Order complies with this requirement by providing any committee appointed in these chapter 11 cases and other parties in interest in each case, with requisite standing, with seventy-five (75) days following entry of the Interim Order to file an adversary proceeding challenging the validity, extent, perfection, or priority of the Prepetition Liens on the Prepetition Collateral, the validity, allowability, priority, or amount of the Prepetition Secured Obligations, or the Stipulations.[7]

---

[7]      In the Debtors' proposed Final Order, the Debtors will request the Challenge Period be the earliest of (i) the date that is seventy-five (75) calendar days following entry of this Interim Order, (ii) five (5) calendar days prior to any auction to be held in connection with the sale of any assets of the Debtors, solely with respect to any Challenge related to such assets or the Prepetition Secured Parties' interests therein or (iii) five (5) calendar days prior to any hearing with respect to a motion by the Debtors to sell assets, solely with respect to any Challenge related to such assets or the Prepetition Secured Parties' interests therein.

30855641.2

C.    **The Provisions Modifying the Automatic Stay, Providing for a Remedies Notice Period, and Providing for a Default Notice Hearing Are Appropriate (Del. Bankr. L.R. 4001-2(a)(i)(S), (T)).**

16.    Local Rules 4001-2(a)(i)(S) and (T) require explicit disclosure of provisions that modify the automatic stay upon a Termination Event without a Remedies Notice Period and provisions that seek to limit what parties in interest may raise at an emergency hearing during the Remedies Notice Period.  The Interim Order provides for a five-day Remedies Notice Period for all Termination Events, and thus such Remedies Notice Period is appropriate.  *See* Interim Order ¶ 16.  In addition, as explained above, there is no limit as to what parties in interest may raise during an emergency hearing scheduled during a Remedies Notice Period.  *See id*.  Thus, the Interim Order complies with Local Rule 4001-2(a)(i)(T).  In light of the foregoing, the Debtors submit that the Significant Provisions are appropriate under the facts and circumstances of these chapter 11 cases.  Accordingly, the Significant Provisions in the Interim Order should be approved.

**The Debtors' Prepetition Capital Structure**

III.    **The Debtors' Prepetition Capital Structure.**

17.    As of the Petition Date, the Debtors have approximately $679 million in aggregate outstanding principal of funded debt obligations (including amounts owed under the Prepetition Bridge Facility, as defined and discussed in greater detail below), as reflected below:

| *Funded Debt* | *Outstanding Principal Amount* | *Interest Rate* | *Maturity* |
|---|---|---|---|
| Prepetition PropCo Facility | $292,188,383 | Base Rate: The greater of (i) Prime, (ii) Federal Funds Effective Rate + 0.50% and (iii) one-month Adjusted Term SOFR + 1.00%  <br><br>Adjusted Term SOFR: Term SOFR + Term SOFR Adjustment ((x) one-month 0.11448%, (y) three-months, 0.26161% and (z) six-months, 0.42826%). | September 11, 2026 |

| Funded Debt | Outstanding Principal Amount | Interest Rate | Maturity |
|---|---|---|---|
| | | Applicable Margin: SOFR loans = 3.75% Base Rate loans = 2.75% | |
| Prepetition OpCo Term Facility | $245,542,759 | Base Rate: The greater of (i) Prime, (ii) Federal Funds Effective Rate + 0.50% and (iii) one-month Adjusted Term SOFR + 1.00%<br><br>Adjusted Term SOFR: Term SOFR + Term SOFR Adjustment ((x) one-month 0.11448%, (y) three-months, 0.26161% and (z) six-months, 0.42826%).<br><br>Applicable Margin: SOFR loans = 4.50-4.75% Base Rate loans = 3.50-3.75% | September 11, 2026 |
| Prepetition OpCo Revolving Credit Facility | $35,992,786 (inclusive of $901,536 of issued but undrawn letters of credit) | Base Rate: The greater of (i) Prime, (ii) Federal Funds Effective Rate + 0.50% and (iii) one-month Adjusted Term SOFR + 1.00%<br><br>Adjusted Term SOFR: Term SOFR + Term SOFR Adjustment ((x) one-month 0.11448%, (y) three-months, 0.26161% and (z) six-months, 0.42826%).<br><br>Applicable Margin: SOFR loans = 4.00-4.75% Base Rate loans = 3.00-3.75% | September 13, 2024 |

| Funded Debt | Outstanding Principal Amount | Interest Rate | Maturity |
|---|---|---|---|
| Prepetition Bridge Facility | $23,494,305 of Prepetition New Money Bridge Loans<br><br>$81,500,000 of Prepetition Bridge Roll-Up Loans | Base Rate:<br>The greater of (i) Prime, (ii) Federal Funds Effective Rate + 0.50% and (iii) one-month Adjusted Term SOFR + 1.00%<br><br>Adjusted Term SOFR: Term SOFR + Term SOFR Adjustment (0.11448%).<br><br>Applicable Margin:<br>SOFR loans = 10.00%<br>Base Rate loans = 10.00% | Dependent on Factors Noted Below |
| Total Funded Debt Obligations | | | $678,718,233 |

### A.    Prepetition PropCo Facility.

18.    Each of PropCo, as borrower, Wilmington Trust, as successor to Rabobank, as Prepetition PropCo Agent, and the lenders thereunder are party to the Prepetition PropCo Credit Agreement.  The Prepetition Propco Credit Agreement provides for a term loan credit facility in the aggregate principal amount of up to $340,000,000—the Prepetition PropCo Facility.

19.    Pursuant to (a) that certain Amended and Restated Pledge Agreement, dated as of September 13, 2019, by and between MVK Intermediate Holdings LLC and the Prepetition PropCo Agent, (b) that certain Amended and Restated Pledge and Security Agreement, dated as of September 13, 2019, between PropCo and the Prepetition PropCo Agent, (c) the Mortgages (as defined in the Prepetition PropCo Credit Agreement), and (d) the other Security Documents (as defined in the Prepetition PropCo Credit Agreement) (collectively, and in each case, as amended, restated, supplemented, or otherwise modified, the "Prepetition PropCo Security Documents"), the obligations incurred under the Prepetition PropCo Credit Agreement and each other Loan Document (as defined in the Prepetition PropCo Credit Agreement) are secured by first priority liens on and security interests in (the "Prepetition PropCo Liens") the collateral under

the Prepetition PropCo Credit Agreement, which includes substantially all of PropCo's assets, including certain real property and other assets of PropCo, 100% of the equity in PropCo, and all proceeds of any of the foregoing and any other assets subject to the Prepetition PropCo Liens.

20.     The Prepetition PropCo Facility is scheduled to mature on September 11, 2026. Interest on the Loans (as defined under the Prepetition PropCo Credit Agreement) accrues either quarterly or semi-annually at Term SOFR + applicable credit adjustment spread + 3.75% and Base Rate + 2.75.  As of the Petition Date, PropCo's outstanding obligations under the Prepetition PropCo Facility total $292,188,383 in aggregate principal amount.

### B.     Prepetition OpCo Facilities.

21.     Each of MVK Intermediate Holdings LLC and OpCo, as borrowers (collectively, the "OpCo Borrowers"), RBC, as administrative and collateral agent (in such capacities, the "Prepetition OpCo Agent"), and certain lenders thereunder are party to that certain Credit Agreement, dated as of September 13, 2019 (as amended by that certain Incremental Revolving Credit Commitment Agreement, dated as of May 26, 2020 (the "Incremental RCF Amendment") and the Prepetition OpCo Credit Agreement.

22.     The Prepetition OpCo Credit Agreement provides for (a) a revolving credit facility in an aggregate principal amount of up to $85,000,000 (which includes (i) an original facility in an aggregate principal amount of up to $60,000,000 and an the incremental commitment increase of an additional $25,000,000 contemplated by the Incremental RCF Amendment and a $1,000,000 letter of credit sub-facility that comprises part of, and is not in addition to, the total amount available under the revolving credit facility) (the "Prepetition OpCo Revolving Credit Facility") and (b) a term loan facility in the aggregate principal amount of up to $335,000,000 (the "Prepetition OpCo Term Facility" and, together with the Prepetition OpCo Revolving Credit Facility, the "Prepetition OpCo Facilities").

23.     Pursuant to that certain Subsidiary Guaranty, dated as of September 13, 2019 (as amended, restated, supplemented or otherwise modified, the "Prepetition OpCo Guaranty"), by and among Gerawan Supply, Inc., Gerawan Farming LLC, Gerawan Farming Services LLC, Gerawan Farming Partners LLC, and GFP LLC (collectively, the "Prepetition OpCo Guarantors" and together with the OpCo Borrowers, the "OpCo Obligors"), the OpCo Guarantors have guaranteed the OpCo Borrowers' obligations under the Prepetition OpCo Facilities on a joint and several basis.

24.     Pursuant to (a) that certain Pledge and Security Agreement, dated as of September 13, 2019, by and among the OpCo Obligors and the Prepetition OpCo Agent, (b) that certain Trademark Security Agreement, dated September 13, 2019, by and among OpCo and Gerawan Farming LLC in favor of the Prepetition OpCo Agent, (c) that certain Patent Security Agreement, dated September 13, 2019, by and among OpCo and Gerawan Farming LLC in favor of the Prepetition OpCo Agent, and (d) the other Security Documents (as defined in the Prepetition OpCo Credit Agreement) (collectively, and each case as amended, restated, supplemented or otherwise modified, the "Prepetition OpCo Security Documents") and other Prepetition OpCo Loan Documents,[8] all of the OpCo Obligors' obligations under the Prepetition OpCo Loan Documents are secured by first priority liens on and security interests in (the "Prepetition OpCo Liens") the Collateral (as defined in the Prepetition OpCo Credit Agreement), which includes substantially all of the OpCo Obligors' assets, including without limitation all present and future property and assets, real and personal, tangible or intangible of the OpCo Obligors, including current

---

[8]     As referred to herein, the "Prepetition OpCo Loan Documents" include the Prepetition OpCo Credit Agreement, the Prepetition OpCo Guaranty, the Prepetition OpCo Security Documents and the other Loan Documents under (and as defined in) the Prepetition OpCO Credit Agreement, in each case, as amended, restated, supplemented or otherwise modified.

crops, machinery and equipment, intellectual property, inventory and other goods, accounts receivable, certain owned real property and certain leased real property, 100% of the equity in OpCo, and all proceeds of any of the foregoing and any other assets subject to the Prepetition OpCo Liens.

25.    The Prepetition OpCo Term Facility will mature on September 11, 2026.  Interest on the Term Loans (as defined under the Prepetition OpCo Credit Agreement) accrues monthly, quarterly, or semi-annually at Term SOFR + applicable credit adjustment spread + 4.50% to 4.75% and Base Rate + 3.50% to 3.75%, subject in each case to various consolidated net leverage ratio thresholds.  As of the Petition Date, the OpCo Borrowers' outstanding obligations under the Prepetition OpCo Term Facility total $245,542,759 in aggregate principal amount.

26.    The Prepetition OpCo Revolving Credit Facility is scheduled to mature on September 13, 2024.  Interest on the Revolving Credit Loans (as defined in the OpCo Credit Agreement) accrues monthly, quarterly, or semi-annually at Term SOFR + applicable credit adjustment spread + 4.00% to 4.75% and Base Rate + 3.00% to 3.75%, subject in each case to various consolidated net leverage ratio thresholds.  As of the Petition Date, the OpCo Borrowers' outstanding obligations under the Prepetition OpCo Revolving Credit Facility total $35,992,786 in aggregate principal amount, which amount includes issued but undrawn letters of credit in an aggregate amount of $901,536.

**C.    The Prepetition Bridge Facility.**

27.    The Company faced a potential liquidity shortfall in the spring of 2023.  To address it, the Company worked expeditiously with Steering Committee to secure bridge financing that would provide the Company with runway to (a) reach its growing and harvest season, where the

vast majority of its revenue is generated and (b) conduct an out-of-court sale and marketing process.

28.     To that end, on April 3, 2023, each of MVK Intermediate Holdings LLC, OpCo, and PropCo, as borrowers (collectively, the "Bridge Borrowers"), Rabobank,  in its capacity as Prepetition Bridge Administrative Agent and PropCo collateral agent (in such capacity, the "Prepetition PropCo Collateral Agent") and RBC, as OpCo collateral agent (the "Prepetition OpCo Collateral Agent" and, collectively with the Prepetition Bridge Administrative Agent and the Prepetition PropCo Collateral Agent, the "Prepetition Bridge Agents"), and the lenders thereunder entered into the Prepetition Bridge Credit Agreement, pursuant to which the Bridge Borrowers received a $200 million senior secured bridge financing term loan facility, the Prepetition Bridge Facility, and, collectively with the Prepetition PropCo Facility and the Prepetition OpCo Facility, the "Prepetition Facilities").  The Prepetition Bridge Facility is guaranteed by Gerawan Supply, Inc., Gerawan Farming LLC, Gerawan Farming Services LLC, GFP LLC, and Gerawan Farming Partners LLC.

29.     The Prepetition Bridge Facility is a senior secured, multiple-draw term loan facility in an aggregate principal amount of up to $200 million, up to $100 million of which consists of new money term loans (the "Prepetition New Money Bridge Loans").  Every dollar of committed Prepetition New Money Bridge Loans, once drawn, resulted in the conversion of one dollar of the outstanding principal amount of loans under either of the Prepetition PropCo Facility and/or the Prepetition OpCo Facilities, as applicable, to a term loan to the Bridge Borrowers under the Prepetition Bridge Facility (the "Prepetition Bridge PropCo Roll-Up Loans" and the "Prepetition Bridge OpCo Roll-Up Loans," respectively).  With respect to certain items of collateral, the liens securing the Prepetition Bridge New Money Loans rank first in priority to the Prepetition Bridge

PropCo Roll-Up Loans and the Prepetition Bridge OpCo Roll-Up Loans, at their respective obligors.

30.    The Prepetition Bridge Facility is guaranteed by Gerawan Supply, Inc., Gerawan Farming, LLC, Gerawan Farming Services, LLC, GFP, LLC, and Gerawan Farming Partners, LLC on a joint and several basis pursuant to that certain Guaranty Agreement, dated as of April 3, 2023 (as amended, restated, supplemented or otherwise modified, the "Prepetition Bridge Guaranty"). Pursuant to that certain Pledge and Security Agreement, dated as of April 3, 2023, the other Security Documents (as defined in the Prepetition Bridge Credit Agreement, and in each case as amended, restated, supplemented or otherwise modified, the "Prepetition Bridge Security Documents") and the other Prepetition Bridge Loan Documents,[9] the obligations of the Prepetition Bridge Obligors with respect to the Prepetition Bridge Facility are secured by first priority liens on and security interests in (the "Prepetition Bridge Liens") on all of the collateral under the Prepetition Bridge Loan Documents, which includes substantially all of the Prepetition Bridge Obligors' assets and all proceeds of any of the foregoing, and any other assets subject to the Prepetition Bridge Liens, subject to the terms thereof and of the Intercreditor Agreements

---

[9]    As referred to herein, the "Prepetition Bridge Loan Documents" include the Prepetition Bridge Credit Agreement, the Prepetition Bridge Guaranty, the Prepetition Bridge Security Documents and the other Loan Documents under (and as defined in) the Prepetition Bridge Credit Agreement, in each case, as amended, restated, supplemented or otherwise modified.

(as defined herein).  A summary of the priority of the Prepetition Bridge Facility and the other

Prepetition Facilities is as follows:[10]

| Priority | OpCo Collateral | PropCo Collateral | All Other Collateral |
|---|---|---|---|
| First | Prepetition Bridge Liens securing Prepetition New Money Bridge Loans | Prepetition Bridge Liens securing Prepetition New Money Bridge Loans | Prepetition Bridge Liens securing Prepetition New Money Bridge Loans |
| Second | Prepetition Bridge Liens securing Prepetition Bridge OpCo Roll-Up Loans | Prepetition Bridge Liens securing Prepetition Bridge PropCo Roll-Up Loans | Prepetition Bridge Liens securing Prepetition Bridge Roll-Up Loans |
| Third | Prepetition OpCo Liens | Prepetition PropCo Liens | |
| Fourth | Prepetition Bridge Liens securing Prepetition Bridge PropCo Roll-Up Loans | Prepetition Bridge Liens securing Prepetition Bridge OpCo Roll-Up Loans | |

31.     The obligations of lenders under the Prepetition Bridge Facility to fund each draw

contemplated thereunder were subject to the satisfaction (or waiver) of certain draw conditions

related to the Company's cash flow performance, marketing process, and continued engagement

with its stakeholders.  Specifically, the initial draw under the Prepetition Bridge Facility was

conditioned on, among other things, completion of certain diligence, payment of certain fees, and

delivery of a budget in form and substance reasonably satisfactory to the Prepetition Bridge Agents

(acting at the direction of required lenders under the Prepetition Bridge Facility).  After satisfaction

or waiver of all conditions, the initial draw, in the amount of $39.5 million, was provided on

April 3, 2023.   The second draw of $30 million became available to the Company on

---

[10]     As set forth in more detail in the Intercreditor Agreements (defined in the First Day Declaration), with respect to certain Prepetition OpCo Collateral, Prepetition Bridge Liens securing Prepetition New Money Bridge Loans and Prepetition OpCo Roll-Up Loans and Prepetition OpCo Liens are *pari passu* and, with respect to certain Prepetition PropCo Collateral, Prepetition Bridge Liens securing Prepetition New Money Bridge Loans and Prepetition PropCo Roll-Up Loans and Prepetition PropCo Loans are *pari passu*.

April 24, 2023 and the third draw of $12 million became available to the Company on May 22, 2023. The fourth and final draw (contemplated to be in the amount of $12 million) was conditioned, among other things, upon either the execution of an Acceptable Third-Party APA (as defined in the Bridge Credit Agreement) on or before May 31, 2023, or a pivot to an in-court restructuring and sale process. The preconditions for the fourth and final draw were not satisfied, but, in light of the Company's strong cash flow performance, the Company elected not to request a waiver, and instead opted to continue funding its operations using cash on hand.

32.     Pursuant to its terms, the Company began repaying the Prepetition Bridge Facility on and from the calendar week starting on July 3, 2023. Repayments are made on a weekly basis and to be in an amount equal to the cash or cash equivalents owned or held by the Company in excess of $15 million. These payments have been made weekly since that time, with the last payment having been made on September 27, 2023, and were calculated based on the immediately preceding Friday. As of the Petition Date, the Company has made 13 payments, totaling approximately $68.8 million, with $23,494,305 of Prepetition New Money Bridge Loans remaining unpaid, and $81,500,000 of Prepetition Bridge OpCo Roll-Up Loans remaining unpaid.[11]

33.     The Prepetition Bridge Facility was set to mature upon the earliest of: (a) the date that is six (6) months from the date the Prepetition Bridge Facility was entered into (*i.e.* October 3, 2023); (b) the date of consummation of a sale of all or substantially all of the assets or equity of the Debtors that are party to the Prepetition Bridge Facility; (c) the acceleration of the obligations under the Prepetition Bridge Facility and/or termination of the Prepetition New Money

---

[11]    Certain repayments of the Prepetition Bridge Facility were used to pay fees owed thereunder and, thus, did not reduce principal amounts owed under the Prepetition Bridge Facility.

Bridge Loan commitments; and (d) if the Company files chapter 11 cases:  (i) the effective date of a plan of reorganization for the Company that is confirmed pursuant to an order of the Bankruptcy Court; (ii) the date that is thirty-five (35) days after the Petition Date, if the Bankruptcy Court has not entered the Final DIP Order by such date; (iii) the Interim DIP Order or the Final DIP Order, as applicable, ceasing to be in full force and effect for any reason; (iv) the date of the conversion or dismissal of any of the chapter 11 cases; and (v) the Company having obtained financing under section 364 of the Bankruptcy Code other than the Prepetition Bridge Facility that does not provide for the immediate payment in full in cash of the obligations under the Prepetition Bridge Facility and all obligations under the OpCo Credit Agreement and the Prepetition PropCo Facility. The date set forth in the preceding clause (a) has occurred and, therefore, the Prepetition Bridge Facility has matured.

34.      SOFR loans issued under the Prepetition Bridge Facility bear interest at Term SOFR + the applicable credit spread adjustment of 0.11448% + 10% per annum.  Base Rate loans bear interest at the Base Rate + 10% per annum.  Both the SOFR and Base Rate loans contain zero floor.  As of the Petition Date, the Debtors' outstanding obligations under the Prepetition Bridge Facility total $104,995,664 in aggregate principal amount.

   **D.      Intercompany Agreements.**

35.      The relative rights and priorities of the Prepetition Bridge Liens, on one hand, and Prepetition PropCo Liens, on the other hand, in respect of the assets of PropCo are set forth in (1) that certain Senior Intercreditor Agreement, dated April 3, 2023, among the Prepetition PropCo Agent, the Prepetition PropCo Collateral Agent, and PropCo, and (2) that certain *Pari Passu* Intercreditor Agreement, dated April 3, 2023, among the Prepetition PropCo Agent, the Prepetition PropCo Collateral Agent, and PropCo (in each case, as amended, restated, supplemented or otherwise modified, together, the "Prepetition PropCo Intercreditor Agreements").  The relative

rights and priorities of the Bridge Liens, on one hand, and Prepetition OpCo Liens, on the other hand, in respect of the assets of the OpCo Obligors are set forth in (1) that certain Senior Intercreditor Agreement, dated April 3, 2023, among the Prepetition OpCo Agent, the OpCo Collateral Agent, and the OpCo Borrowers, and (2) that certain *Pari Passu* Intercreditor Agreement, dated April 3, 2023, among the Prepetition OpCo Agent, the Prepetition OpCo Collateral Agent, and the OpCo Borrowers (in each case, as amended, restated, supplemented or modified, together, the "Prepetition OpCo Intercreditor Agreements," and collectively with the PropCo Intercompany Agreements, the "Intercreditor Agreements").

### E.    Equity Interests.

36.    There is one class of equity in MVK FarmCo, which interests are directly held by two unitholders: Wawona Delaware Holdings, LLC, which holds 75% of the equity, and Negocios Libertad LLC, which holds 25% of the equity interests of MVK FarmCo.  Wawona Delaware Holdings, LLC is ultimately majority owned by Paine Schwartz Food Chain Fund IV GP, Ltd., with Smittcamp AG Enterprises, LLC, Daniel Vincent, and certain other co-investors holding a portion of the Company's outstanding equity.  Negocios Libertad LLC is ultimately owned by Daniel Gerawan.

### Basis for Relief

### I.    The Debtors Should Be Authorized to Use the Cash Collateral.

37.    Section 363 of the Bankruptcy Code governs the Debtors' use of property of their estates, including Cash Collateral.[12]  Pursuant to section 363(c)(2) of the Bankruptcy Code,

---

[12]    The Bankruptcy Code defines "cash collateral" as follows:

a debtor may use cash collateral as long as "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."  11 U.S.C. § 363(c)(2).  Here, the Prepetition Secured Parties consent or are deemed to consent to the Debtors' use of the Cash Collateral, subject to the terms and limitations set forth in the Interim Order.

38.    Section 363(e) of the Bankruptcy Code provides for adequate protection of interests in property when a debtor uses cash collateral.  Further, section 362(d)(1) of the Bankruptcy Code provides for adequate protection of interests in property due to the imposition of the automatic stay.  *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996) (*en banc*).  While section 361 of the Bankruptcy Code provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis.  *See, e.g.*, *In re Swedeland Dev. Grp., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (explaining that the "determination of whether there is adequate protection is made on a case-by-case basis"); *In re Satcon Tech. Corp.*, No. 12-12869 (KG), 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012) (same); *In re N.J. Affordable Homes Corp.*, No. 05-60442 (DHS), 2006 WL 2128624, at *14 (Bankr. D.N.J. June 29, 2006) ("the circumstances of the case will dictate the necessary relief to be given"); *In re Columbia Gas Sys., Inc.*, Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992) ("what interest is entitled to adequate protection and what constitutes adequate protection must be decided on a case-by-case basis"); *see also In re*

---

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

*Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding" (citing 2 Collier on Bankruptcy ¶ 361.01[1] at 361–66 (15th ed. 1993))).

39.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral."); *see also Cont'l Airlines, Inc.*, 154 B.R. at 180–81 (holding that adequate protection for use of collateral under section 363 of the Bankruptcy Code is limited to use-based decline in value).

### A.     The Proposed Adequate Protection for the Prepetition Secured Parties Is Sufficient.

40.     As described more fully herein, and as set forth in the Interim Order, the Debtors propose to provide the Prepetition Secured Parties with certain forms of adequate protection to protect against the aggregate diminution in value of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including any Cash Collateral) from and after the Petition Date, resulting from (among other things) the use, sale, or lease by the Debtors of the Prepetition Collateral (including the use of Cash Collateral), the subordination of the Prepetition Liens to the Carve Out, and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code (collectively, the "Adequate Protection Obligations"):

    a.     valid perfected security interests in and liens on the Adequate Protection Collateral (subject to the liens priorities set forth in the Interim Order);

    b.     allowed, superpriority administrative expense claims under section 507(b) of the Bankruptcy Code (subject to the Carve Out and the priorities set out in the Interim Order);

      c.      the payment of all reasonable and documented fees, out-of-pocket costs and expenses of the Prepetition Agents and the members of the Steering Committee in accordance with the Interim Order; and

      d.      the financial reporting requirements set forth in paragraph 3(f) of the Interim Order.

41.     The Debtors submit that the proposed Adequate Protection Obligations are sufficient to protect the Prepetition Secured Parties from any potential diminution in value to the Cash Collateral. Considering the foregoing, the Debtors further submit, and the Prepetition Secured Parties agree, that the proposed Adequate Protection Obligations to be provided for the benefit of the Prepetition Secured Parties are appropriate. Thus, the Debtors' provision of the Adequate Protection Obligations is not only necessary to protect against any diminution in value but is fair and appropriate under the circumstances of these chapter 11 cases to ensure the Debtors are able to continue using the Cash Collateral, subject to the terms and limitations set forth in the Interim Order, for the benefit of all parties in interest and their estates.

## II.    Failure to Obtain Immediate Interim Access to Cash Collateral Would Cause Immediate and Irreparable Harm.

42.     Bankruptcy Rules 4001(b) and 4001(c) provide that a final hearing on a motion to use Cash Collateral pursuant to section 363 of the Bankruptcy Code may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court may conduct a preliminary, expedited hearing on the motion and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. *See* Fed. R. Bankr. P. 4001(b)(2); Del. Bankr. L.R. 4001-2(b). Section 363(c)(3) of the Bankruptcy Code authorizes the court to conduct a preliminary hearing and to authorize the use of cash collateral "if there is a reasonable likelihood that the [debtor] will prevail at the final hearing under [section 363(e) of the Bankruptcy Code]." 11 U.S.C. § 363(c)(3).

43.     The Debtors have an immediate postpetition need to use Cash Collateral. The Debtors cannot maintain the value of their estates during the pendency of these chapter 11 cases without access to cash.  The Debtors will use cash to, among other things, implement and confirm their Plan, continue to operate their business in the ordinary course of business, procure goods and services from vendors of their businesses, pay their employees, and satisfy other working capital needs during these chapter 11 cases.  The Debtors will therefore be unable to proceed with their proposed restructuring and sale process, operate their business in the near term, or otherwise fund these chapter 11 cases without access to Cash Collateral, and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest, including the Prepetition Secured Parties.  In short, the Debtors' ability to finance their operations and the availability of sufficient working capital and liquidity to the Debtors through the use of Cash Collateral is vital to preserve and maximize the value of the Debtors' estates.

44.     The Debtors, therefore, seek immediate authority to use the Cash Collateral, as set forth in this motion and in the Interim Order, to prevent immediate and irreparable harm to their estates pending the Final Hearing pursuant to Bankruptcy Rule 4001(b).  Accordingly, the Debtors respectfully submit that they have satisfied the requirements of Bankruptcy Rule 4001 and Local Rule 4001-2 to support an expedited preliminary hearing and immediate Cash Collateral availability on an interim basis.

### III.     The Automatic Stay Should Be Modified on a Limited Basis.

45.     The relief requested herein contemplates a modification of the automatic stay to the extent necessary to implement and effectuate the terms and provisions of the Interim Order, and specifically permit the Prepetition Agents, each in their sole discretion, to file such financing statements, mortgages, security agreements, notices of liens and other similar documents as necessary.  The Interim Order further provides that, upon the expiration of the Remedies Notice

30855641.2

Period, the automatic stay will be automatically modified to permit the Prepetition Secured Parties, to immediately retain and apply payments and otherwise enforce their respective rights and remedies under and in accordance with the Interim Order and the Prepetition Loan Documents, subject and subordinate to the Carve Out.

## Request for Final Hearing

46.     Pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2(c), the Debtors request that the Court set a date for the Final Hearing that is as soon as practicable, and in no event after twenty-one days after the Petition Date, and fix the time and date prior to the Final Hearing for parties to file objections to this motion.

## The Requirements of Bankruptcy Rule 6003 Are Satisfied

47.     Bankruptcy Rule 6003 empowers a court to grant certain relief within the first twenty-one days after the Petition Date only "to the extent that relief is necessary to avoid immediate and irreparable harm."  For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations, and the failure to receive the requested relief during the first twenty-one days of these chapter 11 cases would severely disrupt the Debtors' operations at this important juncture.  The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations, and maximize the value of their estates for the benefit of all stakeholders. The Debtors have demonstrated that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and the Court should grant the requested relief.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

48.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and

that the Debtors have established cause to exclude such relief from the fourteen-day stay period under Bankruptcy Rule 6004(h).

### **Reservation of Rights**

49.     Nothing contained in this motion or any order granting the relief requested in this motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission or finding that any particular claim is an administrative expense claim, other priority claim or otherwise of a type specified or defined in this motion or any order granting the relief requested by this motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) other than with respect to the liens in favor of the Prepetition Agents; (g) an admission as to the validity, priority, enforceability or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (h) a waiver or limitation of any claims, causes of action or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.

### **Notice**

50.     The Debtors will provide notice of this motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Trust National Association, as successor to Coöperatieve Rabobank U.A., New York Branch, as Prepetition PropCo Agent and counsel thereto; (d) Coöperatieve Rabobank U.A., New York

30855641.2

Branch, as Bridge Administrative Agent and Bridge PropCo Collateral Agent and counsel thereto; (e) Royal Bank of Canada, as Bridge OpCo Collateral Agent and Prepetition OpCo Agent and counsel thereto; (f) Metropolitan Life Insurance Company, in its capacity as Prepetition Lender and a member of the Steering Committee and counsel thereto; (g) Compeer Financial, PCA, in its capacity as Prepetition Lender and a member of the Steering Committee and counsel thereto; (h) AgCountry Farm Credit Services as a member of the Steering Committee and counsel thereto; (i) Paine Schwartz Partners and counsel thereto; (j) the office of the attorney general for each of the states in which the Debtors operate; (k) the United States Attorney's Office for the District of Delaware; (l) the Internal Revenue Service; (m) Prepetition Secured Parties; and (n) any party that has requested notice pursuant to Bankruptcy Rule 2002. As this motion is seeking "first day" relief, within two business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

### No Prior Request

51. No prior request for the relief sought in this motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of the Interim Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated:  October 13, 2023
Wilmington, Delaware

/s/ Joseph Barry
Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:     (302) 571-1253
Email:          jbarry@ycst.com
                   kenos@ycst.com
                   amark@ycst.com

-and-

Ryan Blaine Bennett, P.C. (*pro hac vice* pending)
Whitney C. Fogelberg (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:          ryan.bennett@kirkland.com
                   whitney.fogelberg@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

**Exhibit A**

**Proposed Interim Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| MVK FarmCo LLC, *et al.*,[1] | ) Case No. 23-11721 (LSS) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |
|  | ) **Related Docket No. ___** |

**INTERIM ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, AND 552 AND FED. R. BANKR. P. 2002, 4001, 6003, 6004, AND 9014 (I) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL, (II) PROVIDING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, (IV) SCHEDULING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion, dated October 13, 2023 (the "Motion"),[2] of MVK FarmCo LLC and its subsidiaries, as debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases") filed in the U.S. Bankruptcy Court for the District of Delaware (this "Court"), seeking the entry of this interim order (the "Interim Order") and a Final Order (as defined herein) pursuant to sections 105, 361, 362, 363, 503, 506, 507 and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and the Local Bankruptcy Rules for the District of Delaware (the "Local Rules"), (I) authorizing the Debtors to use cash collateral, (II)  providing adequate

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming, LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners, LLC (0072); Gerawan Farming Services, LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP, LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in **Annex 1** or **Annex 4** attached hereto, the Motion, or the *Declaration of John Boken, Interim Chief Executive Officer of MVK FarmCo LLC in Support of the Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), as applicable.

protection to the Prepetition Secured Parties (as defined herein), (III) modifying the automatic stay, (IV) scheduling a final hearing, and (V) granting related relief, the Debtors sought, among other things, the following relief:

(a)    the Court's authorization for the Debtors to use "cash collateral," as such term is defined in section 363(a) of the Bankruptcy Code ("Cash Collateral"), and all other Prepetition Collateral in which any Prepetition Secured Parties (as defined herein) have an interest, solely in accordance with (and subject to Permitted Variance (as defined herein) the terms of this Interim Order and the 9-week budget and cash flow forecast annexed hereto as **Exhibit A** (the "Approved Budget"); *provided* that, as of each Variance Testing Date, the Debtors shall not permit Tested Net Cash Flow for the Variance Testing Period ended as of such Variance Testing Date to exceed $2,000,000 in negative variance compared to the Tested Net Cash Flow set forth in the Approved Budget for such period (the "Permitted Variance");

(b)    the granting by the Court of the Adequate Protection Superpriority Claims (as defined herein) and Adequate Protection Liens (as defined herein), to the extent of and as compensation for any Diminution in Value (as defined herein) of the Prepetition Secured Parties' interests in the Prepetition Collateral (as defined herein), and the payment of fees and expenses to the Prepetition Agents (as defined herein) and the members of the Steering Committee (as defined herein), in each case, subject to the Carve Out (as defined herein) and as set forth more fully below;

(c)    modification by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

(d)    subject to the entry of the Final Order, approving the Debtors' waiver of any right to surcharge against the Prepetition Collateral pursuant to section 506(c) of the

Bankruptcy Code;

(e)      subject to the entry of the Final Order, approving the Debtors' waiver of any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to the Prepetition Collateral;

(f)      the scheduling by the Court of a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") granting the relief requested in the Motion on a final basis and approving the form of notice with respect to the Final Hearing and the transactions contemplated by the Motion;

(g)      the waiver by the Court of any applicable stay (including under Bankruptcy Rule 6004) and provision for the immediate effectiveness of this Interim Order; and

(h)      the Court having jurisdiction to consider the matters raised in the Motion pursuant to 28 U.S.C. § 1334; and the Court having authority to hear the matters raised in the Motion pursuant to 28 U.S.C. § 157; and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and consideration of the Motion and the requested relief being a core proceeding that the Court can determine pursuant to 28 U.S.C. § 157(b)(2); and due and proper notice of the Motion and opportunity for a hearing on the Motion having been given to the parties listed therein, and it appearing that no other or further notice need be provided; and the Court having reviewed and considered the Motion, the First Day Declaration; and the Court having held an interim hearing on the Motion on [●], 2023 (the "Interim Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and presented at the Interim Hearing establish just cause for the relief granted herein; and the Court having found the relief requested in the Motion to be fair, reasonable, and in the best interests of the Debtors, their creditors, their estates, and all other parties in interest; and the Court having determined that the

relief requested in the Motion pending the Final Hearing is necessary to avoid immediate and irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rules 4001(b)(2), 4001(c)(2) and 6003; and all objections, if any, to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; and upon all of the proceedings had before the Court; after due deliberation and consideration, and good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[3]

A.     **Petition Date.**  On October 13, 2023 (the "Petition Date"), each of the Debtors filed voluntary petitions under chapter 11 of the Bankruptcy Code with the Court commencing these Cases.

B.     **Debtors in Possession**.  The Debtors have continued in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Cases.

C.     **Jurisdiction and Venue.**  The Court has jurisdiction over these proceedings, pursuant to 28 U.S.C. § 1334.  Consideration of the Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  Pursuant to Bankruptcy Rule 7008 and Local Rule 7008-1, the Debtors consent to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

D.     **Committee Formation.**  As of the date hereof, no official committee of unsecured

---

[3]     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

creditors (a "<u>Committee</u>") has been appointed in the Cases.

      E.      **<u>Notice</u>.**  Notice of the Interim Hearing and the relief requested in the Motion has been provided by telecopy, email, overnight courier and/or hand delivery, to (i) the United States Trustee for the District of Delaware (the "<u>U.S. Trustee</u>"), (ii) those creditors holding the 30 largest unsecured claims against the Debtors' estates (on a consolidated basis), (iii) White & Case LLP (as counsel to the Prepetition Bridge Administrative Agent and the Prepetition Bridge PropCo Collateral Agent), (iv) Sidley Austin LLP (as counsel to the Prepetition OpCo Agent and the Prepetition Bridge OpCo Collateral Agent), (v) Covington & Burling LLP (as counsel to the Prepetition PropCo Agent), (vi) the Securities and Exchange Commission, (vii) the Internal Revenue Service, (viii) the United States Attorney's Office for the District of Delaware, (ix) the Attorney General for the State of California, (x) the office of the attorney general for each of the other states in which the Debtors operate, (xi) all other parties asserting a security interest in the assets of the Debtors to the extent reasonably known to the Debtors, and (xii) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "<u>Notice Parties</u>").  Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion constitutes due, sufficient and appropriate notice and complies with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002, 4001(b) and (c) and 9014, and the Local Rules.

      F.      **<u>Stipulations as to Prepetition Secured Obligations</u>**.  Subject to paragraph 7 hereof, the Debtors permanently, immediately, and irrevocably acknowledge, represent, stipulate and agree to the matters set forth in **<u>Annex 1</u>** hereto (the "<u>Stipulations</u>").

      G.      **<u>Budget</u>**.  The initial Approved Budget is attached hereto as **<u>Exhibit A</u>**.  Prior to the end of the 9-week period covered by the Approved Budget, the Debtors shall propose an updated budget for the 9-week period immediately following the 9-week period covered by the initial

Approved Budget. Such proposed budget shall become the "Approved Budget" for such 9-week period once approved in writing by each of the Prepetition Agents (at the direction of the applicable Required Lenders). The initial Approved Budget is an integral part of this Interim Order and has been relied upon by the Prepetition Secured Parties to consent to this Interim Order. The Debtors represent that the initial Approved Budget is reasonable under the facts and circumstances as of the date of delivery. The Debtors believe that the initial Approved Budget is achievable and will allow the Debtors to operate in the Cases, consummate the sale process, and pay postpetition obligations as they come due.

H.    **Budget Reporting**.  The Debtors shall provide weekly variance reporting setting forth in reasonable detail actual operating receipts, operating disbursements and non-operating disbursements for the applicable Variance Testing Period and all budget variances, in each case, on both an individual line item basis and an aggregate basis, as compared to the projected amounts set forth in the then applicable Approved Budget (which budget variances shall be tested on a cumulative basis as of the end of each Variance Testing Period) and including indications as to whether each variance therein is temporary or permanent and an explanation, in reasonable detail, of any material variance, and an analysis demonstrating that the Company is in compliance with the budget covenants set forth in Section 5.11 of the Prepetition Bridge Credit Agreement, and (ii) certified by a Responsible Officer of Borrowers. The Approved Budget Variance Report shall be in a form, and shall contain supporting information, reasonably satisfactory to the Agents (at the direction of the applicable Required Lenders).[4] Additional variances beyond the Permitted Variance, if any, shall be subject to the approval of the Prepetition Agents (at the direction of the

---

[4]    As used herein, "Required Lenders" shall have the meaning set forth in the applicable Prepetition Credit Agreement as defined on **Annex 4**.

applicable Required Lenders).  The Debtors shall operate consistent with the Approved Budget

and all disbursements of the Debtors shall be consistent with the provisions of the Approved

Budget, subject in each case to the Permitted Variance.

       I.      **Immediate Need for Use of Cash Collateral.**  The Debtors have requested

immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2), 4001(c)(2) and

6003 and the Local Rules.  Good cause has been shown for entry of this Interim Order.  An

immediate need exists for the Debtors to use Prepetition Collateral, including Cash Collateral, to

enable, among other things set forth in the Approved Budget, (i) the orderly continuation of their

operations and preserve the value of their business and estates, (ii) the payment of costs and

expenses of administering the Cases, and (iii) the funding and consummation of a sale process to

maximize recoveries to stakeholders.  In the absence of the immediate availability of Cash

Collateral in accordance with the terms hereof, the ability of the Debtors to maintain business

relationships with their vendors, suppliers, and customers, pay their employees, and otherwise

finance their operations would not be possible, and immediate and irreparable harm to the Debtors

and their estates and creditors would occur.  Further, the possibility of conducting a successful

value-enhancing sale process for the benefit of the Debtors' estates and creditors would be

jeopardized in the absence of the availability of funds in accordance with the terms of this Interim

Order.  Thus, the ability of the Debtors to preserve and maintain the value of their assets and

maximize returns for creditors requires the continued use of Cash Collateral.

       J.      **Adequate Protection for Prepetition Secured Parties.**  The Prepetition Agents

and the other Prepetition Secured Parties have negotiated in good faith regarding the Debtors' use

of Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtors'

estates, continued operation of their businesses, and the marketing and consummation of the sale

process, in accordance with the terms hereof and the Approved Budget (subject to the Permitted Variance). The Prepetition Secured Parties have agreed to permit the Debtors to use Prepetition Collateral (including Cash Collateral) in accordance with the terms hereof, subject to the terms and conditions set forth in this Interim Order. The Prepetition Secured Parties are entitled to adequate protection as and to the extent set forth herein pursuant to sections 361, 362, and 363 of the Bankruptcy Code (including the protections afforded parties acting in "good faith" under section 363(m) of the Bankruptcy Code). Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and of the use of Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment, and constitute reasonably equivalent value and fair consideration for the Prepetition Agents and Prepetition Secured Parties' consent thereto; provided that nothing in this Interim Order shall (i) be construed as an acknowledgement or stipulation by any Prepetition Secured Party that its respective interest in the Prepetition Collateral is adequately protected pursuant to this Interim Order or otherwise, or a consent by any Prepetition Secured Party that it would be adequately protected in the event any debtor-in-possession financing is provided or a consent to the terms of any use of Cash Collateral, including the consent to any lien encumbering any of the Prepetition Collateral (whether senior or junior) pursuant to any use of Cash Collateral, in each case, except under the terms hereof, or (ii) prejudice, limit, or otherwise impair the rights of any Prepetition Agents (for the benefit of the respective Prepetition Secured Parties) to seek new, different, or additional adequate protection under any circumstances after the date hereof. The Prepetition Secured Parties' consent to the Debtors' use of Cash Collateral is expressly conditioned upon entry of this Interim Order, and does not and shall not constitute consent other than pursuant to this Interim Order and the terms set forth herein.

30855642

K.    **Sections 506(c) and 552(b).**  The Debtors have agreed that, as a condition to the use of Cash Collateral and as a material inducement to the  Prepetition  Secured Parties' consent to the use of Cash Collateral, and in exchange for (a) the Prepetition Secured Parties' agreement to subordinate the Prepetition Liens (and any Adequate Protection Liens) to the Carve Out and (b) the consensual use of Cash Collateral consistent with the Approved Budget and the terms of this Interim Order (x) the Prepetition Secured Parties are entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to the entry of the Final Order, the "equities of the case" exception shall not apply to any of the Prepetition Secured Parties with respect to the proceeds, products, rent, issues, or profits of any of the Prepetition Collateral, and no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, products, offspring, or profits from any of the Prepetition Collateral under section 552(b) of the Bankruptcy Code, and (y) subject to the entry of the Final Order, the Prepetition Secured Parties are entitled to receive a waiver of the provisions of section 506(c) of the Bankruptcy Code, and, subject to the Carve Out, there shall be no surcharge of any costs or expenses incurred in connection with the preservation, protection, or enhancement of, or realization by Prepetition Secured Parties upon, the Prepetition Collateral.

L.    **No Liability to Third Parties.**  The Debtors stipulate and this Court finds that in permitting the Debtors to use the Prepetition Collateral, including Cash Collateral, in accepting the Initial Budget and any future Approved Budget or in taking any other actions permitted by this Interim Order, none of the Prepetition Secured Parties shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors.

M.      **Relief Essential; Best Interest.**  The relief requested in the Motion (and provided in this Interim Order), is necessary, essential, and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property and satisfies the requirements of Bankruptcy Rule 6003.  It is in the best interest of the Debtors' estates, and consistent with the Debtors' exercise of their fiduciary duties, that the Debtors be allowed to use the Prepetition Collateral, including Cash Collateral, as contemplated herein.

N.      **Immediate Entry**.  Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).

**NOW, THEREFORE,** on the Motion of the Debtors and the record before the Court with respect to the Motion, including the record made during the Interim Hearing, and with the consent of the Debtors and the Prepetition Secured Parties and good and sufficient cause appearing therefor,

**IT IS ORDERED** that:

1.      **Motion Granted.**  The Motion is granted in accordance with the terms and conditions set forth in this Interim Order.  Any objections to the Motion with respect to entry of this Interim Order to the extent not withdrawn, waived, or otherwise resolved, and all reservation of rights included therein, are hereby denied and overruled.

2.      **Authorization and Approval to Use Cash Collateral.**  Subject to the terms and conditions of this Interim Order and in accordance with the Approved Budget (subject to the Permitted Variance), each Debtor is authorized to use Cash Collateral and the proceeds thereof in compliance with the terms and covenants set forth in this Interim Order, including such terms and covenants relating to the Approved Budget (subject to Permitted Variance).  The Approved Budget may be amended, supplemented, modified, restated, replaced, or extended only in accordance with

30855642

10

this Interim Order.  Cash Collateral authorized to be used by this Interim Order shall be used for, among other things set forth in the Approved Budget, (i) working capital and general corporate purposes, (ii) the payment of fees, interest, payments and expenses under the Prepetition Facilities and the Prepetition Loan Documents, and (iii) payment of allowed administrative costs and expenses of these Cases, in each case, in accordance with this Interim Order and consistent with the Approved Budget (subject to the Permitted Variance and the Carve Out).  Notwithstanding anything herein to the contrary, subject only to the Debtors' rights under paragraph 16(e), the Debtors' right to use Cash Collateral shall terminate on the Termination Date (as defined herein). Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates or other proceeds resulting therefrom outside the ordinary course of business, except as expressly permitted herein.

3.    **Adequate Protection for Prepetition Secured Parties.**  As adequate protection for the aggregate diminution in value of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including any Cash Collateral) from and after the Petition Date, resulting from (among other things) the use, sale, or lease by the Debtors of the Prepetition Collateral (including the use of Cash Collateral), the subordination of the Prepetition Liens to the Carve Out, and the imposition or enforcement of the automatic stay of section 362(a) of the Bankruptcy Code (collectively, "Diminution in Value"), the Prepetition Agents for the benefit of the respective Prepetition Secured Parties shall receive adequate protection as follows (and, in the case of the Adequate Protection Liens, with the relative rank and priority set forth below and on **Annex 2** attached hereto):

(a)    **Adequate Protection Liens.**  To the extent of, and in an aggregate amount equal to, any aggregate Diminution in Value of their interests in the Prepetition Collateral, pursuant

to sections 361 and 363(e) of the Bankruptcy Code, and subject in each case to the Carve Out:

      (i)      The Prepetition PropCo Agent and the other Prepetition PropCo Secured Parties shall have replacement security interests in and liens upon (the "PropCo Adequate Protection Liens") all Adequate Protection Collateral (as defined herein), which PropCo Adequate Protection Liens shall be: (1) junior to any pre-existing liens as of the Petition Date of a third party (*i.e.*, a party other than any Prepetition Secured Party) on such Adequate Protection Collateral solely to the extent that such liens were valid, enforceable, perfected and non-avoidable liens as of the Petition Date or were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, were senior to the Prepetition Liens and permitted by the terms of the applicable Prepetition Loan Documents (such liens, "Senior Third Party Liens"); (2) junior to any Bridge Loan Adequate Protection Liens (as defined herein) securing Prepetition New Money Bridge Loans and Prepetition Bridge Liens securing Prepetition New Money Bridge Loans, in each case on all Adequate Protection Collateral; (3) with respect to the PropCo Adequate Protection Liens on Adequate Protection Collateral that is neither Prepetition OpCo Collateral nor Prepetition PropCo Collateral, such PropCo Adequate Protection Liens shall be (A) junior to (I) any Bridge Loan Adequate Protection Liens securing Prepetition Bridge Roll-Up Loans and (II) any Prepetition Bridge Liens securing Prepetition Bridge Roll-Up Loans, in each case on such Adequate Protection Collateral, and (B) *pari passu* with any OpCo Adequate Protection Liens (as defined herein) on such Adequate Protection Collateral; (4) with respect to the PropCo Adequate Protection Liens on Adequate

Protection Collateral consisting of Prepetition PropCo Collateral, such PropCo Adequate Protection Liens shall be (A) senior to (I) any Bridge Loan Adequate Protection Liens securing Prepetition Bridge OpCo Roll-Up Loans, (II) any OpCo Adequate Protection Liens and (III) any Prepetition Bridge Liens securing Prepetition Bridge OpCo Roll-Up Loans, in each case on such Prepetition PropCo Collateral, (B) *pari passu* with any Prepetition PropCo Liens and (C) junior to (I) any Bridge Loan Adequate Protection Liens securing Prepetition Bridge PropCo Roll-Up Loans and (II) any Prepetition Bridge Liens securing Prepetition Bridge PropCo Roll-Up Loans, in each case on such Prepetition PropCo Collateral; and (5) with respect to the PropCo Adequate Protection Liens on Adequate Protection Collateral consisting of Prepetition OpCo Collateral, such PropCo Adequate Protection Liens shall be junior to (A) any Bridge Loan Adequate Protection Liens securing Prepetition Bridge OpCo Roll-Up Loans, (B) any Prepetition Bridge Liens securing Prepetition Bridge OpCo Roll-Up Loans, (C) any OpCo Adequate Protection Liens and (D) any Prepetition OpCo Liens, in each case on such Prepetition OpCo Collateral.

(ii)    The Prepetition OpCo Agent and the other Prepetition OpCo Secured Parties, shall have replacement security interests in and liens upon (the "OpCo Adequate Protection Liens") all Adequate Protection Collateral (as defined herein), which OpCo Adequate Protection Liens shall be:  (1) junior to any Senior Third Party Liens in such Adequate Protection Collateral; (2) junior to any Bridge Loan Adequate Protection Liens securing Prepetition New Money Bridge Loans and Prepetition Bridge Liens securing Prepetition New Money Bridge Loans,

in each case on all Adequate Protection Collateral; (3) with respect to the OpCo Adequate Protection Liens on Adequate Protection Collateral that is neither Prepetition OpCo Collateral nor Prepetition PropCo Collateral, such OpCo Adequate Protection Liens shall be (I) junior to (A) any Bridge Loan Adequate Protection Liens securing Prepetition Bridge Roll-Up Loans, and (B) any Prepetition Bridge Liens securing Prepetition Bridge Roll-Up Loans, in each case on such Adequate Protection Collateral and (II) *pari passu* with any PropCo Adequate Protection Liens on such Adequate Protection Collateral; (4) with respect to the OpCo Adequate Protection Liens on Adequate Protection Collateral consisting of Prepetition OpCo Collateral, such OpCo Adequate Protection Liens shall be: (A) senior to (I) any Bridge Loan Adequate Protection Liens securing Prepetition Bridge PropCo Roll-Up Loans, (II) any PropCo Adequate Protection Liens; and (III) any Prepetition Bridge Liens securing Prepetition Bridge PropCo Roll-Up Loans, in each case on such Prepetition OpCo Collateral, (B) *pari passu* with any Prepetition OpCo Liens and (C) junior to (I) any Bridge Loan Adequate Protection Liens securing Prepetition Bridge OpCo Roll-Up Loans and (II) any Prepetition Bridge Liens securing Prepetition Bridge OpCo Roll-Up Loans, in each case on such Prepetition OpCo Collateral; and (5) with respect to the OpCo Adequate Protection Liens on Adequate Protection Collateral consisting of Prepetition PropCo Collateral, such OpCo Adequate Protection Liens shall be junior to (A) any Bridge Loan Adequate Protection Liens securing Prepetition Bridge PropCo Roll-Up Loans, (B) any Prepetition Bridge Liens securing Prepetition Bridge PropCo Roll-Up Loans, (C) any PropCo Adequate Protection

Liens and (D) any Prepetition PropCo Liens, in each case on such Prepetition PropCo Collateral.

(iii)    The Prepetition Bridge Agent and the other Prepetition Bridge Secured Parties, on account of the Prepetition Bridge Loans, shall have replacement security interests in and liens upon (the "Bridge Loan Adequate Protection Liens" and, collectively with the PropCo Adequate Protection Liens and the OpCo Adequate Protection Liens, the "Adequate Protection Liens") on all Adequate Protection Collateral (as defined herein), which Bridge Loan Adequate Protection Liens shall (1) be junior to any Senior Third Party Liens on such Adequate Protection Collateral, (2) in respect of the Bridge Loan Adequate Protection Liens securing Prepetition New Money Bridge Loans, be senior and prior to all other liens on all Adequate Protection Collateral, and (3) in respect of the Bridge Loan Adequate Protection Liens securing Prepetition Bridge Roll-Up Loans, shall have the priorities provided in the foregoing clauses (i) and (ii) of this Paragraph 3(a), and as further described on **Annex 2** hereto.

(iv)    As used herein, "Adequate Protection Collateral" shall mean, all current or hereafter acquired assets, interests, rights, and property of any nature whatsoever, whether real or personal, of the Debtors including, without limitation, all Prepetition Collateral, and all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, deposit accounts, "core concentration accounts," "cash collateral accounts," and

any bank accounts and in each case all amounts on deposit therein (or credited thereto), equity interests, securities accounts, securities entitlements, securities, commercial tort claims, books, records, plants, equipment, farm products, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property (whether or not such real property constituted Prepetition Collateral under any of the Prepetition Loan Documents), fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, interests of any Debtor in any foreign subsidiary, and all proceeds, rents, issues, profits, offspring, products and substitutions, if any, of any of the foregoing and, subject to the entry of the Final Order, the actions and proceeds of all of the Debtors' rights, claims and causes of action under sections 502(d), 506(d), 542, 543, 544, 545, 547, 548, 549, 550, 553 and 724(a) of the Bankruptcy Code, and any other avoidance or similar action under the Bankruptcy Code or similar state law, whether received by judgment, settlement or otherwise.

(b)      **Adequate Protection Superpriority Claims.**  Subject to the Carve Out, (w) to the extent of any Diminution in Value of the Prepetition Collateral, the Prepetition Bridge Agent and the other Prepetition Bridge Secured Parties shall have, on account of the Prepetition New Money Bridge Loans, allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code (the "New Money Bridge Adequate Protection Superpriority Claims"), (x) to the extent of any Diminution in Value of the Prepetition Collateral, the Prepetition Bridge Agent and the other Prepetition Bridge Secured Parties shall have, on

account of the Prepetition Bridge Roll-Up Loans, allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code (together with the New Money Bridge Adequate Protection Superpriority Claims, the "Bridge Adequate Protection Superpriority Claims"), which shall be immediately junior and subject to the New Money Bridge Adequate Protection Superpriority Claims, (y) to the extent of any aggregate Diminution in Value of the Prepetition PropCo Collateral, the Prepetition PropCo Agent and the other Prepetition PropCo Secured Parties shall have allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code (the "PropCo Adequate Protection Superpriority Claims"), which shall be *pari passu* with the OpCo Adequate Protection Superpriority Claims (as defined herein) and immediately junior and subject to the Bridge Adequate Protection Superpriority Claims and (z) to the extent of any Diminution in Value of the Prepetition OpCo Collateral, the Prepetition OpCo Agent and the other Prepetition OpCo Secured Parties shall have allowed superpriority administrative expense claims as provided for in section 507(b) of the Bankruptcy Code (the "OpCo Adequate Protection Superpriority Claims" and, collectively with the Bridge Adequate Protection Superpriority Claims and the PropCo Adequate Protection Superpriority Claims, the "Adequate Protection Superpriority Claims"), which shall be *pari passu* with the PropCo Adequate Protection Superpriority Claims and immediately junior and subject to the Bridge Adequate Protection Superpriority Claims, in each case against each of the Debtors, jointly and severally, and payable from and having recourse to all Adequate Protection Collateral.

(c)        **Status of the Adequate Protection Liens and Adequate Protection Claims**.  The Prepetition Liens, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims shall not be (1) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the

Bankruptcy Code or (B) any lien or security interest arising after the Petition Date or (2) subordinated to or made *pari passu* with any other lien or security interest, now or hereafter existing and whether authorized under section 363 of the Bankruptcy Code or otherwise; *provided*, *however*, that the Prepetition Liens, Adequate Protection Liens, and the Adequate Protection Superpriority Claims remain subject and subordinate to the Carve Out.

(d)    **Adequate Protection Payments.** The Prepetition Bridge Agent (on behalf of the Prepetition Bridge Lenders) shall receive from the Debtors cash payments in an amount equal to all prepetition and postpetition accrued and unpaid interest on account of the Prepetition New Money Bridge Loans at the rate provided for in the Prepetition Bridge Credit Agreement as and when due under the Prepetition Bridge Credit Agreement.

(e)    **Professional Fees.**    Promptly upon the entry of this Interim Order, the Debtors shall pay all reasonable and documented fees, out-of-pocket costs and expenses of the Prepetition Agents and the members of the Steering Committee, including cash payments of all reasonable and documented professional and advisory fees, out-of-pocket costs, and expenses of the Prepetition Agents and the members of the Steering Committee incurred in connection with the negotiation, administration, and monitoring of the Prepetition Loan Documents and Prepetition Facilities and in connection with the filing of these Chapter 11 Cases, including, without, limitation, the reasonable documented fees, costs and expenses of (i) White & Case LLP (as counsel to the former Prepetition PropCo Agent through the date that Rabobank ceased to be the Prepetition PropCo Agent), the Prepetition Bridge Administrative Agent, and the Prepetition Bridge PropCo Collateral Agent), (ii) Sidley Austin LLP (as counsel to the Prepetition OpCo Agent and the Prepetition Bridge OpCo Collateral Agent), (iii) Covington & Burling LLP (as counsel to the Prepetition PropCo Agent), (iv) counsel selected by any successor to any agent identified in clauses

(i)-(iii), (v) Moore & Van Allen, PLLC and Burr & Forman LLP (as counsel to Compeer Financial, PCA, and AgCountry Farm Credit Services, in each case in their respective capacities as Prepetition Lender and a member of the Steering Committee), (vi) Morgan Lewis & Bockius LLP and Robinson & Cole LLP (as counsel to Metropolitan Life Insurance Company, in its capacity as Prepetition Lender and a member of the Steering Committee), (vii) FTI Consulting, Inc. (as financial advisor to the Prepetition Bridge Agents, the Prepetition PropCo Agent and the Prepetition OpCo Agent), and (viii) any local counsel and other advisors of the Prepetition Agents and the members of the Steering Committee as may be reasonably required, to the extent provided for in the Prepetition Credit Agreements (the foregoing professionals set forth in clauses (i) through (ix), collectively, the "Agent/Steering Committee Professionals"), in each case incurred as of the Petition Date and, thereafter, subject to the procedures set forth in paragraph 19(a) hereof, promptly upon the receipt of summary invoices therefor, the Debtors shall pay all reasonable and documented fees, costs, and expenses of the Prepetition Agents and the members of the Steering Committee incurred in connection with the negotiation, execution, administration and monitoring of the Prepetition Loan Documents and the Prepetition Facilities and in connection with the Cases, including the professional and advisory fees of the Agent/Steering Committee Professionals. Payment of any amounts set forth in this clause (c) shall not be subject to disgorgement.  The Debtors shall timely pay the fees and expenses owing to ACM Management Company, LLC in accordance with the terms of the letter agreement, dated October 12, 2023, by and among the Prepetition Agents and ACM Management Company, LLC.

(f)    **Financial Reporting, etc.**   The Debtors shall timely provide to the Prepetition Agents and the other Prepetition Secured Parties (and, in each case, their respective consultants, advisors, and professionals) (i) all financial information required under the Prepetition

Loan Documents, and (ii) access upon reasonable notice and during regular business hours to the Debtors' books and records, assets, and properties, for purposes of monitoring the Debtors' businesses and the value of the Prepetition Collateral, in each case subject to any limitations on such access or disclosure as and to the extent expressly set forth in this Interim Order.  The Debtors shall also timely provide such reports and information required to be provided in the Prepetition Loan Documents (subject to any limitations as and to the extent expressly set forth therein, and subject to any cure periods in respect of the covenant to provide such reports and information, to the extent applicable, set forth therein) and reasonably cooperate, discuss with, and provide to the Prepetition Agents and the other Prepetition Secured Parties (and, in each case, their respective professionals) all such information as may be reasonably requested and subject to any limitations and conditions set forth in the Prepetition Loan Documents with respect to providing any such information.  Notwithstanding the foregoing, the financial reporting requirements set forth in Section 5.01 of the Prepetition Bridge Credit Agreement shall be deemed modified as follows: (i) the deadline for delivery of quarterly consolidated financial results set forth in Section 5.01(b) of the Prepetition Bridge Credit Agreement shall be changed from 45 days after the end of the applicable quarter to 35 days; and (ii) the deadline for delivery of monthly consolidated financial results set forth in Section 5.01(c) of the Prepetition Bridge Credit Agreement shall be changed from 45 days after the end of each fiscal month to 30 days.  In addition, the Debtors hereby authorize their accountants, attorneys, financial advisors, investment bankers, and consultants to cooperate, consult with, and provide to the Prepetition Agents and the other Prepetition Secured Parties (and, in each case, their respective consultants, advisors and professionals) all such information as may be reasonably requested with respect to the business, results of operations, and financial condition of any of the Debtors; provided that, to the extent the Debtors reasonably

determine that information should be shared on a confidential or professional eyes' only basis, such information can be shared by the Debtors' accountants, attorneys, financial advisors, investment bankers, and consultants with the Agent/Steering Committee Professionals on a confidential or professional eyes' only basis.

4.      **Milestones**.  It is a condition to the use of Cash Collateral and as an integral element of the adequate protection therefor that the Debtors shall comply with those certain case milestones set forth in **Annex 3** hereto (the "Milestones").  The failure to comply with any Milestone shall constitute a Termination Event (as defined herein).

5.      **Subordination of Intercompany Liens.**  All intercompany  liens of the Debtors, if any (other than any liens granted to the Prepetition Secured Parties), will be contractually subordinated to the Adequate Protection Liens on terms satisfactory to the Prepetition Agents.

6.      **Adequate Protection Replacement Lien Perfection.**  Automatically upon entry of this Interim Order, the Adequate Protection Liens shall be deemed to be valid, perfected, enforceable, non-avoidable, and effective by operation of law, and not subject to challenge as of the Petition Date, without the need of any further action of any kind.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to create, attach, validate or perfect the Adequate Protection Liens or to entitle the Adequate Protection Liens to the priorities granted herein. Notwithstanding the foregoing, any Prepetition Agent may, each in their sole discretion, file such financing statements, mortgages, security agreements, notices of liens and other similar documents, and are hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in

21

order to do so, and all such financing statements, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the Petition Date.  The Debtors shall execute and deliver to the applicable Prepetition Agent all such financing statements, mortgages, security agreements, notices, and other documents as such Prepetition Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the Adequate Protection Liens, and the Debtors shall take all such further actions that may be required under any applicable law, or that any Prepetition Agent may reasonably request in order to grant, preserve, protect, or perfect the Adequate Protection Liens granted pursuant to this Interim Order.  Any Prepetition Agent may, in its discretion, file a certified copy of this Interim Order as a financing statement or a notice with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Interim Order.  The Prepetition PropCo Agent and the Prepetition OpCo Agent shall each serve as gratuitous bailee for each other Prepetition Agent for the purposes of perfecting the Adequate Protection Liens on all Adequate Protection Collateral comprised of Prepetition PropCo Collateral and Prepetition OpCo Collateral, respectively, that is of a type such that, without giving effect to the Bankruptcy Code and this Interim Order, perfection of a security interest therein may be accomplished only by possession or control by a secured party.  Notwithstanding and without minimizing the force of the foregoing, the Debtors are authorized to enter into, and cause the financial institutions servicing the Debtors accounts to enter into, such account control agreements and other collateral agreements with the Prepetition Agents and such financial institutions as the Prepetition Agent may reasonably require.

30855642

22

7.        <u>**Reservation of Certain Third Party Rights and Bar of Challenges and Claims**</u>.

(a)        The Debtors' stipulations, admissions, agreements, releases, and waivers contained in this Interim Order, including the Stipulations, are and shall be irrevocably binding upon the Debtors and any and all of the Debtors' successors in interest and assigns (including, without limitation, any chapter 7 or chapter 11 trustee, responsible person, examiner with expanded powers, or other estate representative).

(b)        The Stipulations and all other admissions, agreements, releases, and waivers set forth in this Interim Order also are and shall be binding upon all other persons and entities (including any Committee) and each of their respective successors in interest and assigns, unless, and solely to the extent that (i) such parties in interest (including any Committee) in each case with standing and requisite authority to do so (subject in all respects to any agreement or applicable law which may limit or affect such entity's right or ability to do so) have timely filed the proper pleadings, and timely commenced the appropriate proceedings under the Bankruptcy Code and Bankruptcy Rules, including, without limitation, as required pursuant to Part VII of the Bankruptcy Rules (in each case subject to the limitations set forth below in this paragraph 7), (x) objecting to or challenging any of the Stipulations or (y) otherwise asserting or prosecuting any action against the Prepetition Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees in connection with or related to the matters covered by the Stipulations (each such proceeding or appropriate pleading commencing a proceeding or other contested matter, a "<u>Challenge</u>"), by no later than the date that is seventy-five (75) calendar days following entry of this Interim Order (such period, the "<u>Challenge Period</u>" and the date that is the next calendar day after the termination of the Challenge Period shall be referred to as the "<u>Challenge Period Termination Date</u>"), as such date may be extended to any such party in

30855642

23

interest with the consent of each of the Prepetition Agents (with the consent of the applicable Required Lenders and each applicable Prepetition Secured Party that is the subject of a Challenge) or by any such later date as has been ordered by the Court for cause upon a motion filed and served within the Challenge Period (before giving effect to such extension), and (ii) the Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding, and any such judgment has become final and is not subject to any further review or appeal.

(c)     Any Challenge not asserted by the timely and proper filing of a pleading by a party in interest with the requisite standing and authority as contemplated herein prior to the Challenge Period Termination Date shall be deemed forever waived, released, and barred with respect to such party in interest.  To the extent a party in interest with requisite standing and authority timely and properly commences a Challenge prior to the Challenge Period Termination Date, all claims, causes of action and other matters not specifically set forth in such Challenge shall be deemed forever waived, released, and barred with respect to such party in interest.

(d)     To the extent the Stipulations (or any of them) are (x) not subject to a Challenge timely and properly commenced prior to the Challenge Period Termination Date or (y) subject to a Challenge timely and properly commenced prior to the Challenge Period Termination Date, to the extent any such Challenge does not result in a final and non-appealable judgment or order of the Court that is inconsistent with such Stipulations, then, in each case, without further notice, motion or application to, or order of, or hearing before, this Court and without the need or requirement to file any proof of claim:  (i) any and all such Challenges by any Committee, or any other party in interest shall be deemed to be forever waived, released, and barred (including upon the conversion of any of the Cases to a case under chapter 7 of the

24

Bankruptcy Code or in any other proceedings related to any of the Debtors (such cases or proceedings, "Successor Cases")), and the Prepetition Secured Obligations (as defined herein) shall each be deemed to be an allowed secured claim within the meaning of sections 502 and 506 of the Bankruptcy Code for all purposes in connection with the Cases, and all of the Stipulations and all other waivers, releases, and affirmations set forth in this Interim Order (or any not properly and timely challenged) shall be in full force and effect and shall be binding, conclusive and final on any person, entity or party in interest, including any Committee (in each case, and their successors and assigns), in the Cases and in any Successor Case for all purposes, without any further order of the Court, and shall not be subject to challenge or objection by the Committee or any other party in interest, including, without limitation, any other statutory committee, any trustee, responsible individual, examiner with expanded powers or other representative of the Debtors' estates.

(e)      If, any Challenge is timely and properly filed during the Challenge Period, the Stipulations and all other waivers, releases, and affirmations contained in this Interim Order shall nonetheless remain binding and preclusive, as provided in this paragraph 7, on all other parties in interest (including any Committee), and on any other person or entity, except for the plaintiff or movant timely and successfully asserting such Challenge, as set forth in a final, non-appealable order of a court of competent jurisdiction.   Notwithstanding anything to the contrary herein, the right to commence any Challenge under this Interim Order is preserved only as against any particular Prepetition Secured Obligation or against any Prepetition Secured Party to the extent such Challenge is commenced timely and properly prior to the Challenge Period Termination Date, and in respect of such Prepetition Secured Obligation or Prepetition Secured Party and is otherwise waived as set forth in this paragraph 7.

30855642

25

(f)       All remedies or defenses of any party with respect to any Challenge are hereby preserved.  Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code) including any Committee (if any) appointed in these Cases, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Secured Obligations and an order of the Court (or any other court of competent jurisdiction) conferring such standing on a Committee or other party in interest shall be a prerequisite for the prosecution of a Challenge by the Committee or such other party in interest.

8.       **Limitations on Use of Cash Collateral**.  Notwithstanding anything herein to the contrary, no portion of the Prepetition Collateral (including Cash Collateral), the Carve Out, or the disbursements set forth in the Approved Budget, may be used for the payment of professional fees, disbursements, costs, or expenses incurred by any person in connection with (a) incurring indebtedness other than as expressly provided in this Interim Order and the Approved Budget (subject to Permitted Variance), (b) preventing, hindering, impeding, or delaying any Prepetition Agent's or any other Prepetition Secured Party's enforcement or realization upon, or exercise of rights in respect of, any of the Prepetition Collateral in accordance with the Prepetition Loan Documents, (c) seeking to amend or modify any of the rights or interests granted to any Prepetition Agent or any other Prepetition Secured Party under this Interim Order or the Prepetition Loan Documents, in a manner adverse to the Prepetition Agents or any other Prepetition Secured Parties, including seeking to use Cash Collateral on a contested basis, without the prior written consent of the Prepetition Agents (at the direction of the applicable Required Lenders), (d) directly or indirectly asserting, commencing, or prosecuting any claims or causes of action, including, without limitation, any Challenge or any other actions under chapter 5 of the Bankruptcy Code (or any

similar law), against any Prepetition Agent, or any other Prepetition Secured Party, or any of their

respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees, or

(e) directly or indirectly asserting, joining, commencing, supporting, investigating, or prosecuting

any Challenge, or any other action for any claim, counterclaim, action, cause of action, proceeding,

application, motion, objection, defense, or other contested matter seeking any order, judgment,

determination, or similar relief against, or adverse to the material interests of, the Prepetition

Secured Parties arising out of, in connection with, or relating to the Prepetition Loan Documents

or the transactions contemplated thereunder, including (without limitation) (i) any action arising

under the Bankruptcy Code, (ii) any so-called "lender liability" claims and causes of action,

(iii) any action with respect to the validity and extent of the Prepetition Secured Obligations or the

validity, extent, perfection and priority of the Prepetition Liens, (iv) any action seeking to

invalidate, set aside, avoid, reduce, set off, offset, recharacterize, subordinate (whether equitable,

contractual, or otherwise), recoup against, disallow, impair, raise any defenses, cross-claims, or

counterclaims, or raise any other challenges under the Bankruptcy Code or any other applicable

domestic or foreign law or regulation against, or with respect to, the Prepetition Liens, in whole or

in part, or (v) appeal or otherwise challenge this Interim Order or the Final Order; provided that

no more than $50,000 in the aggregate of the Prepetition Collateral and the Cash Collateral

(including any proceeds of the Prepetition Collateral or the Cash Collateral used to fund the Carve

Out) may be used by a Committee (if any) appointed in these Cases to investigate (but not

prosecute or Challenge, or commence, or initiate the prosecution of, any Challenge, including the

preparation of any complaint or motion on account of, or objection to) the Stipulations before

termination of the Challenge Period.

9.    **Carve Out.**

(a)    Carve Out.  As used in this Interim Order, the "Carve Out" means the sum

of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee

under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate

(without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up

to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to

the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order,

procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees")

incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the

Bankruptcy Code (the "Debtor Professionals") and the Committee (if any) pursuant to section 328

or 1103 of the Bankruptcy Code (together with the Debtor Professionals, the "Professional

Persons"), at any time before or on the first business day following delivery by a Prepetition Agent

of a Carve Out Trigger Notice (as defined herein), whether allowed by the Court prior to or after

delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional

Persons in an aggregate amount not to exceed $1,500,000 incurred after the first business day

following delivery by a Prepetition Agent of a Carve Out Trigger Notice, to the extent allowed at

any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this

clause (iv) being the "Post-Carve-Out Trigger Notice Cap").  For purposes of the foregoing,

"Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic

means) by the Prepetition Agent to the Debtors, their lead restructuring counsel, the U.S. Trustee,

and counsel to the Committee, which notice may be delivered following the occurrence and during

the continuation of a Termination Event and upon termination of the Debtors' right to use Cash

Collateral by the Prepetition Secured Parties, stating that the Post-Carve Out Trigger Notice Cap

has been invoked.

(b)    <u>Carve Out Reserves</u>.  On the day on which a Carve Out Trigger Notice is given by a Prepetition Agent to the Debtors with a copy to counsel to the Committee (if any) (the "<u>Termination Declaration Date</u>"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account at the Prepetition Bridge Agent in trust to pay such then unpaid Allowed Professional Fees (the "<u>Pre-Carve Out Trigger Notice Reserve</u>") prior to any and all other claims.   On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "<u>Post-Carve Out Trigger Notice Reserve</u>" and, together with the Pre-Carve Out Trigger Notice Reserve, the "<u>Carve Out Reserves</u>") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "<u>Pre-Carve Out Amounts</u>"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agents for the benefit of the applicable Prepetition Secured Parties unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above

(the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the Prepetition Agents, for the benefit of the applicable Prepetition Secured Parties, unless the Prepetition Secured Obligations have been indefeasibly paid in full, in cash, in which case any such excess shall be paid to the Debtors' creditors in accordance with their rights and priorities as of the Petition Date and under this Interim Order. Notwithstanding anything to the contrary in the Prepetition Loan Documents, or this Interim Order, if either of the Carve Out Reserves are not funded in full in the amounts set forth in this paragraph 9, then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in this paragraph 9, prior to making any payments to the Prepetition Agents or any of the Debtors' creditors, as applicable. Notwithstanding anything to the contrary in the Prepetition Loan Documents or this Interim Order, following delivery of a Termination Notice, the Prepetition Agents shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the Prepetition Agents for application in accordance with the Prepetition Loan Documents and in accordance with the priorities provided in this Interim Order and the Intercreditor Agreements. Further, notwithstanding anything to the contrary in this Interim Order, (i) disbursements by the Debtors from the Carve Out Reserves shall not constitute loans in the Prepetition Credit Agreement or increase or reduce the Prepetition Secured Obligations, (ii) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, and (iii) in no way shall the Initial Budget, any subsequent Approved Budget, the Carve Out, the Post-

Carve Out Trigger Notice Cap, the Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors. For the avoidance of doubt and notwithstanding anything to the contrary in this Interim Order or in any Prepetition Facilities, the Carve Out shall be senior to all liens and claims securing the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the Prepetition Secured Obligations.

(c)    <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date.</u>  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(d)    <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the Prepetition Agents or the other Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person, the U.S. Trustee, or Clerk of the Court (or any other entity) incurred in connection with the Cases or any Successor Case. Nothing in this Interim Order or otherwise shall be construed to obligate the Prepetition Agents or the other Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(e)    <u>Payment of Carve Out On or After the Termination Declaration Date</u>.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be entitled to the protections granted under this Interim Order, the Bankruptcy Code, and applicable law.

10.    **Reservation of Rights**.  The Prepetition Secured Parties reserve the right to review

and object to any fee statement, interim application or monthly application issued or filed by the Professional Persons.  Notwithstanding anything to the contrary herein, the payment of any Allowed Professional Fees pursuant to the Carve Out shall not (i) reduce any Debtor's obligations owed to the Prepetition Agents or the other Prepetition Secured Parties (whether under this Interim Order or otherwise) or (ii) modify, alter or otherwise affect any of the liens and security interests of such parties (whether granted under this Interim Order or otherwise) in the Prepetition Collateral or the Adequate Protection Collateral (or their claims against the Debtors).

11.    **Section 506(c) Claims.**  As a further condition of the Debtors' authorization to use the Cash Collateral, the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Case) shall be deemed, subject to the entry of the Final Order, to have waived any rights, benefits or causes of action under section 506(c) of the Bankruptcy Code as they may relate to or be asserted against the Prepetition Secured Parties, the Prepetition Liens, or the Prepetition Collateral.  Except to the extent of the Carve Out, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against, subject to the entry of the Final Order, the Prepetition Secured Parties, any of their respective claims, or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.  Nothing contained in this Interim Order, in the Final Order or in the Prepetition Loan Documents shall be deemed a consent by the Prepetition Secured Parties to any charge, lien, assessment or claim against, or in respect of, the Prepetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and no such consent shall be implied from any other action, inaction, or acquiescence by any such parties.

12.    **Collateral Rights; Limitations in Respect of Subsequent Court Orders.**  Upon the entry of this Interim Order, and thereafter, unless the Prepetition Agents (at the direction of the

applicable Required Lenders) have provided their prior written consent, or all Prepetition Secured Obligations have been indefeasibly paid and satisfied in full in cash and discharged (other than contingent obligations not due and owing), it shall constitute a Termination Event if the Debtors shall seek in these Cases, or in any Successor Case, or there shall be entered in these Cases or in any Successor Case (or in each case any proceeding ancillary thereto), any order which authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the Prepetition Collateral or the Adequate Protection Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with the Prepetition Liens or the Adequate Protections Liens or (ii) the use Cash Collateral for any purpose other than as permitted in the Approved Budget (subject to the Permitted Variance).

13.     **Proceeds of Financing.**     Without limiting the provisions and protections of paragraph 12 above, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all Prepetition Secured Obligations, including subsequent to the confirmation of any chapter 11 plan or plans with respect to the Debtors, the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of this Interim Order, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Bridge Agent for application in accordance with the relevant Prepetition Loan Documents and under applicable law.

14.     **Cash Management.**     From the Petition Date until the Prepetition Secured Obligations (other than contingent obligations not due and owing) have been indefeasibly paid and satisfied in full in cash and discharged, all cash receipts, Cash Collateral, and all proceeds from the sale or other disposition of, or other revenue of any kind attributable to, any Prepetition

Collateral or Adequate Protection Collateral that is now in, or shall hereafter come into, the possession or control of any of the Debtors, or to which any of the Debtors is now or shall hereafter become entitled, shall be subject to the Adequate Protection Liens (and shall be treated in accordance with this Interim Order). It shall constitute a Termination Event if the Debtors' cash management system shall not at all times be maintained in accordance with the terms of the Prepetition Loan Documents and any order of this Court approving the maintenance of the Debtors' cash management system, in each case in all material respects, and otherwise in a manner which shall be reasonably satisfactory to the Prepetition Agents and the Required Lenders in accordance with the applicable Prepetition Credit Agreements. The Prepetition Agents shall be deemed to have "control" over all cash management accounts for all purposes of perfection under the Uniform Commercial Code pursuant to this Interim Order and, if required, pursuant to control agreements reasonably acceptable to the Prepetition Agents. Subject to the provisions of this Interim Order, all financial institutions with which the Debtors maintain accounts containing Cash Collateral are authorized to comply with any request of the Prepetition Agents to turn over to the Prepetition Agents all Cash Collateral therein without offset or deduction of any kind.

15. **Disposition of Prepetition Collateral.** It shall constitute a Termination Event if the Debtors shall sell (including, without limitation, any sale and leaseback transaction), transfer (including any assignment of rights), lease, encumber, or otherwise dispose of any portion of the Prepetition Collateral or Adequate Protection Collateral, except as set forth in the Approved Budget, or as may be agreed in writing by the applicable Prepetition Agent(s) (with the consent of the applicable Required Lenders).

16. **Termination Events; Rights and Remedies Upon a Termination Event.**

(a)    The earliest to occur of the following shall constitute a "<u>Termination Event</u>"

and the date on which such Termination Event occurs, the "Termination Date": (i)  the date that is

thirty-five (35) calendar days after the Petition Date, if the Final Order, in form and substance

acceptable to the Prepetition Agents (at the direction of the applicable Required Lenders), has not

been entered by the Court by such date, (ii) the consummation of any sale of all or substantially

all of the assets of, or equity interests in, the Debtors, (iii) the effective date of a chapter 11 plan

of any of the Debtors, (iv) the Debtors' failure to make any payment under this Interim Order or

the Prepetition Loan Documents (as modified by paragraph 17(c) of this Interim Order) to any of

the Prepetition Secured Parties as and when due and payable hereunder or thereunder (subject to

any applicable grace period, if any, provided for in the Prepetition Credit Agreement) or to timely

perform or comply with any other material term, provision, condition or obligation under this

Interim Order within three (3) Business Days of Notice from the applicable Prepetition Secured

Parties, (v) the filing by the Debtors of any motion without the prior written consent of Prepetition

Agents (at the direction of the applicable Required Lenders) to obtain financing under section 364

of the Bankruptcy Code that does not provide for the immediate payment in full in cash of all

Prepetition Secured Obligations, (vi) the occurrence of any Event of Default under the Prepetition

Bridge Credit Agreement (e) (as modified by paragraph 17(c) of this Interim Order and excluding

(A) any requirements of the Debtors to obtain entry and comply with the terms of the DIP Orders,[5]

(B) the failure to deliver the audited financial statements required by Section 5.01(a) of the

Prepetition Bridge Credit Agreement, and (C) the failure to pay Prepetition OpCo Obligations and

Prepetition PropCo Obligations on a current basis; (vii) this Interim Order (or after entry of a Final

---

[5] Under the Prepetition Bridge Credit Agreement, the "DIP Order" means, as the context may require, the Interim DIP Order or the Final DIP Order, whichever is then applicable. The Debtors are not seeking entry of an Interim DIP Order or Final DIP Order.

Order, the Final Order), having been stayed, vacated, reversed, or rescinded, or, without the prior written consent of the Prepetition Agents (at the direction of the Required Lenders), revised, amended, or modified, or the Debtors having filed or supported a motion or other pleading for entry of an order revoking, reversing, staying, vacating, terminating, extending, rescinding, or seeking reconsideration of any provision of this Interim Order (or after entry of a Final Order, the Final Order); (viii) the provisions of this Interim Order (or after entry of a Final Order, the Final Order) for any reason ceasing to be valid, binding, or enforceable against any of the Debtors, or any of the Debtors shall so state in writing, or shall commence or join in any legal proceeding to contest in any manner that this Interim Order (or after entry of a Final Order, the Final Order) constitutes a valid, binding, or enforceable obligation and liability of the Debtors; and (ix) any other event that is explicitly specified as a Termination Event herein.

(b)    Upon the occurrence of a Termination Event, without further notice to, hearing, or order from the Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the Prepetition Agents, acting at the request of the applicable Required Lenders to (i) deliver to the Debtors a Termination Notice (as defined below) and (ii) declare the termination, restriction or revocation of the ability of the Debtors to use Cash Collateral, subject to paragraph 16(c) below.

(c)    In addition, upon the occurrence and during the continuation of a Termination Event, the Prepetition Agents, acting at the request of the applicable Required Lenders and subject to the Intercreditor Agreements, shall provide counsel to the Debtors, counsel for any Committee appointed in the Cases (if any), and the U.S. Trustee, five (5) business days' prior written notice (the "Termination Notice") (which may be provided by email or other electronic means) of the occurrence of the Termination Event.  After such five (5) business day period

30855642

36

(the "<u>Remedies Notice Period</u>"), subject to paragraphs 16(d)-(f) below, without further notice to, hearing, or order from the Court, the automatic stay provisions of section 362 of the Bankruptcy Code shall be vacated and modified to the extent necessary to permit the Prepetition Agents, acting at the request of the applicable Required Lenders, to (i) freeze all monies or balances in any deposit accounts of the Debtors, (ii) immediately exercise any and all rights of set-off under, and in accordance with, the Prepetition Loan Documents, (iii) exercise any right or remedy against the Prepetition Collateral, including, without limitation, the disposition of Prepetition Collateral or Adequate Protection Collateral for application towards the applicable Prepetition Secured Obligations and Adequate Protection Superpriority Claims, respectively, or (iv) take any other action or exercise any other right or remedy permitted under the Prepetition Loan Documents, this Interim Order or applicable law.

(d)    During the Remedies Notice Period, the Debtors and/or any Committee shall be permitted to request an emergency hearing before the Court (which request must be made prior to the conclusion of the Remedies Notice Period, and shall seek consideration of such request on an expedited basis); *provided* that the only issue that may be raised by the Debtors at such hearing shall be whether a Termination Event has in fact occurred and is continuing.

(e)    During the Remedies Notice Period, the Debtors are permitted to use Cash Collateral to the extent granted herein and consistent with the Approved Budget (without any Permitted Variance) to fund expenses necessary in the ordinary course of business to preserve the value of the Debtors' business, the Prepetition Collateral, and the Adequate Protection Collateral, as determined by the Debtors in their reasonable discretion and to fund the Carve Out Reserves in accordance with this Interim Order.

(f)    Unless the Court has determined that a Termination Event has not occurred

30855642

37

during the Remedies Notice Period (or if the Debtors do not contest the occurrence of the Termination Event during the Remedies Notice Period), upon the expiration of the Remedies Notice Period, without further notice to, hearing or order from the Court, the automatic stay as to the Prepetition Agents shall automatically be vacated and modified for the purpose of permitting the Prepetition Agents (acting at the request of the applicable Required Lenders) to exercise all rights and remedies available under or pursuant to this Interim Order, the Prepetition Loan Documents or applicable law with respect to the Prepetition Collateral and the Adequate Protection Collateral.

(g)　　The Debtors shall reasonably cooperate with the Prepetition Secured Parties in their efforts to enforce their liens and security interests in the Adequate Protection Collateral and the Prepetition Collateral, as applicable, in accordance with this Interim Order and the Prepetition Loan Documents and (other than the right to contest whether a Termination Event has occurred) the Debtors shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such party from enforcing its rights or remedies in the Adequate Protection Collateral or the Prepetition Collateral, as applicable.

(h)　　Nothing included herein shall prejudice, impair, or otherwise affect the Prepetition Secured Parties' rights to seek any other or supplemental relief in respect of the Debtors, the Prepetition Collateral or the Adequate Protection Collateral.

17.　**Applications of Proceeds of Collateral, Payments, and Collections**.

(a)　　As a condition to the authorization to use Cash Collateral, each Debtor has agreed that all Cash Collateral and all proceeds of Prepetition Collateral or Adequate Protection Collateral (including proceeds realized from a sale or disposition thereof), any amounts held on account of the Prepetition Collateral or Adequate Protection Collateral, all payments and

collections received by the Debtors with respect to all Prepetition Collateral or Adequate Protection Collateral, and all other collections and proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, shall only be used and applied in accordance with this Interim Order and consistent with the Approved Budget (subject to the Permitted Variance).

(b)     Subject to the Debtors' rights under paragraph 16(e), upon and after the occurrence of the Termination Date, all proceeds of Prepetition Collateral and Adequate Protection Collateral, whenever received, shall be paid and applied in accordance with this Interim Order (including **Annex 2** hereto), the Prepetition Loan Documents, and the Intercreditor Agreements.

(c)     Notwithstanding anything in this Interim Order or any of the Prepetition Loan Documents to the contrary, (i) the Debtors shall not be required to comply with Section 2.10(b)(ii) of the Prepetition Bridge Credit Agreement (i.e., the excess cash flow sweep), (ii) the applicable Debtors shall not be obligated to pay amounts owed to other Debtors under the Master Lease Agreement, and such failure to pay amounts owed or otherwise perform under the Master Lease Agreement shall not be a Termination Event, (iii) the Debtors' failure to repay the obligations under the Prepetition Facilities that automatically became due and payable as a result of the maturity of the Prepetition Facilities shall not be a Termination Event (but shall remain outstanding obligations under the Prepetition Facilities until repaid), and (iv) no Event of Default occurring under any Prepetition Loan Document resulting solely from the filing of these Chapter 11 Cases or events leading up to the filing of these Chapter 11 Cases shall be a Termination Event.

18.     **Proofs of Claim, etc.**  None of the Prepetition Secured Parties shall be required to file proofs of claim in any of the Cases or any Successor Cases for any claim allowed herein, and the Stipulations shall be deemed to constitute a timely filed proof of claim against each of the

applicable Debtors in the Cases.  Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Cases or any Successor Cases to the contrary, each of the Prepetition Agents, on behalf of itself and the other applicable Prepetition Secured Parties, are hereby authorized and entitled, in each of their sole and absolute discretion, but not required, to file (and amend and/or supplement, as it sees fit) a master proof of claim and/or aggregate proofs of claim in each of the Cases or any Successor Cases for any claim allowed herein; for avoidance of doubt, any such proof of claim may in each case (but is not required to be) filed as one consolidated proof of claim against all of the Debtors, rather than as separate proofs of claim against each Debtor.  Any proof of claim filed by any of the Prepetition Agents shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition Secured Parties.  Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation administrative claims) in any of the Cases or any Successor Cases shall not apply to the Prepetition Agents or any of the other Prepetition Secured Parties.  For the avoidance of doubt, none of the Prepetition Secured Parties will be required to file any request for allowance and/or payment of any administrative expenses, and this Interim Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Secured Obligations constituting administrative expenses.

19.    **Fees and Expenses.**

(a)    To the fullest extent provided in this Interim Order and in the other Prepetition Loan Documents, the Debtors shall pay all prepetition and postpetition fees and expenses incurred by the Prepetition Agents and the members of the Steering Committee (including, without limitation, the reasonable and documented fees and expenses of the Agent/Steering Committee Professionals), including in connection with (i) the administration of

30855642

40

the Prepetition Loan Documents, (ii) the Cases or any Successor Cases, and (iii) enforcement of any rights or remedies under the Prepetition Loan Documents.  Payment of all such fees and expenses, and the fees and expenses of the Prepetition Agents and the members of the Steering Committee that are paid as adequate protection hereunder, shall not be subject to allowance (or disallowance) by the Court or restricted by the Approved Budget, and the Prepetition Agents, the members of the Steering Committee and the Agent/Steering Committee Professionals shall not be required to file an application seeking compensation for services or reimbursement of expenses with the Court or comply with the U.S. Trustee fee guidelines, but shall provide their fee and expense statements or invoices, in summary form, which shall not be required to contain time entries but shall include the number of hours billed by the applicable professional (except for financial advisors compensated on other than an hourly basis) and a summary statement of services provided and the expenses incurred (which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client or other privilege, any information constituting attorney work product, or any other confidential or otherwise sensitive information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the Debtors, with copies to be provided to the Office of the U.S. Trustee and counsel for the Committee (if any) contemporaneously with the delivery of such fee and expense statements or invoices to the Debtors.  The Debtors shall pay in cash all such reasonable and documented fees and expenses of all Agent/Steering Committee Professionals (i) promptly upon the entry of this Interim Order and (ii) thereafter, within ten (10) days of presentment of such statements or invoices (the "Review Period"), if no written objections to the reasonableness of the fees and expenses charged in any such statement or invoice (or portion thereof) is made.  Any objection raised by the Debtors, the U.S. Trustee, or the Committee (if any)

with respect to such fee and expense statements or invoices (with notice of such objection provided to the Prepetition Agents and to the respective Agent/Steering Committee Professional) may be made solely during the Review Period and shall specify in writing the amount of the contested fees and expenses and the detailed basis for such objection.  To the extent an objection contests only a portion of an invoice, the undisputed portion thereof shall be promptly paid.  If any such objection to payment of an invoice (or any portion thereof) is not otherwise resolved between the Debtors, any Committee or the U.S. Trustee and the issuer of the invoice, either party may submit such dispute to the Court for a determination as to the reasonableness of the relevant disputed fees and expenses set forth in the invoice.  The Court shall retain the jurisdiction to resolve any dispute as to the reasonableness of any fees and expenses.  Such fees and expenses shall not be restricted by the Approved Budget and shall not be subject to any offset, defense, claim, counterclaim or diminution of any type, kind or nature whatsoever.

20.     **Credit Bid.**

(a)     The Prepetition Agents, at the direction of the applicable Required Lenders, shall have the right, but not the obligation, to credit bid (either directly or through one or more acquisition vehicles), up to the full amount of the applicable Prepetition Secured Obligations, and the Adequate Protection Superpriority Claims, or any of them, in connection with any sale of all or any portion of the Prepetition Collateral (and Adequate Protection Collateral with respect to any Adequate Protection Superpriority Claims), including (without limitation) any sale occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan subject to confirmation under section 1129(b)(2)(A)(ii)-(iii) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, without the need for further court order authorizing the same.

30855642

42

(b)      No Debtor shall object to any Prepetition Secured Parties credit bidding up to the full amount of the applicable outstanding Prepetition Secured Obligations (including any Adequate Protection Superpriority Claims), in each case including any accrued interest, fees, and expenses, in any sale of any Prepetition Collateral (and Adequate Protection Collateral with respect to any Adequate Protection Superpriority Claims), as applicable, whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

21.      **No Requirement to Accept Title to Collateral.**  Except as may otherwise be agreed in writing, the Prepetition Secured Parties shall not be obligated to accept title to any portion of the respective Prepetition Collateral or any Adequate Protection Collateral in payment of the indebtedness owed to such parties by the Debtors, in lieu of payment in cash or cash equivalents, nor shall any of the Prepetition Secured Parties be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than the Prepetition Secured Parties.

22.      **Limitation of Liability.**  Nothing in this Interim Order, any of the Prepetition Loan Documents, or any other documents related thereto shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from any activities by the Debtors in the operation of their businesses or in connection with the administration of these Cases.  The Prepetition Secured Parties shall not, solely by reason of having consented to the use of Cash Collateral, be deemed in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability

30855642

43

Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute).  Nothing in this Interim Order, or the Prepetition Loan Documents shall in any way be construed or interpreted to impose or allow the imposition upon the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors.  Except as explicitly provided for herein or in any credit document, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary.  In determining to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order, the Prepetition Secured Parties shall not owe any fiduciary duty to the Debtors, their respective creditors, shareholders, or estates.

23. **Loss or Damage to Collateral**.  So long as the Prepetition Agents and the other Prepetition Secured Parties comply with their obligations under the Prepetition Loan Documents, (a) the Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Prepetition Collateral or Adequate Protection Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency, or other person and (b) all risk of loss, damage, or destruction of the Prepetition Collateral and Adequate Protection Collateral shall be borne by the Debtors.

24. **Insurance Policies.**  Upon entry of this Interim Order, the Prepetition Secured Parties shall be, and shall be deemed to be, without any further action or notice, named as additional insureds and loss payees, as applicable, on each insurance policy maintained now or in the future by any of the Debtors which in any way relates to the Prepetition Collateral and Adequate Protection Collateral, subject to the lien priorities set forth in this Interim Order (including **Annex 2** hereto) and the Prepetition Loan Documents.  Notwithstanding the foregoing,

30855642

44

the Debtors are authorized to take any reasonable actions that any Prepetition Agent may request, in its reasonable discretion at the direction of the Required Lenders, to be added as an additional insured and loss payee on each insurance policy.

25.     **Payments Free and Clear**.  Any and all payments or proceeds remitted to the any Prepetition Agent on behalf of the respective Prepetition Secured Parties pursuant to the provisions of this Interim Order or the Prepetition Loan Documents shall be received free and clear of any claim, charge, assessment or other liability.

26.     **Binding Effect.**  The provisions of this Interim Order shall be binding upon and inure to the benefit of the Prepetition Secured Parties, the Debtors, and their respective successors and assigns (including any trustee or other fiduciary hereinafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors) whether in the Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 or Chapter 7 cases.

27.     **Discharge**.  None of the Prepetition Secured Obligations or the adequate protection obligations of the Debtors hereunder shall be discharged by the entry of an order confirming any plan of reorganization in any of the Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash (other than contingent indemnification obligations for which no claim has been asserted), on or before the effective date of such confirmed plan, unless the applicable Prepetition Agent (at the direction of the Required Lenders under the applicable Prepetition Facility) has agreed in writing.

28.     **No Waiver.**  Notwithstanding anything herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the Prepetition Secured Parties under the Bankruptcy Code or under any other law against any other person or

30855642

entity in any court, including without limitation, the rights of the Prepetition Agents (i) to seek any other or supplemental relief in respect of the Debtors, (ii) to request modification of the automatic stay of section 362 of the Bankruptcy Code, (iii) request dismissal of any of the Cases, conversion of any or all of the Cases to cases under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner with expanded powers in any of the Cases, (iv) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan, or (v) to exercise any other rights, claims or privileges (whether legal, equitable or otherwise) on behalf of the Prepetition Secured Parties.  Any delay or failure of the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Interim Order or the Prepetition Loan Documents or otherwise shall not constitute a waiver of any of the Prepetition Secured Parties' rights hereunder, thereunder, or otherwise.

29.    **No Third Party Rights.**  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, third party, or incidental beneficiary.

30.    **Intercreditor Matters.**  Nothing in this Interim Order shall be construed to convey on any individual Prepetition Lender any consent, voting or other rights beyond those (if any) set forth in the Prepetition Loan Documents, as applicable.  Except as expressly provided herein, nothing in this Interim Order shall be construed to impair, modify, or otherwise affect (i) the Intercreditor Agreements or (ii) any other intercreditor, subordination, or similar agreement or arrangement in respect of the Prepetition Secured Obligations, which in each case are enforceable to the fullest extent provided by section 510(a) of the Bankruptcy Code and applicable law.

31.    **No Marshaling.**  Subject to the entry of the Final Order, and subject to the priorities set forth in this Interim Order (including **Annex 2** hereto), in no event shall the Prepetition Secured

Parties be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral.

32.    **Section 552(b).**  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and, subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to any Prepetition Collateral, or any proceeds, product, offspring or profits thereof.

33.    **Priority of Terms.**  To the extent of any conflict between or among (a) the express terms or provisions of the Motion, any other order of the Court (other than the Final Order when entered), or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, the terms and provisions of this Interim Order shall govern.

34.    **Survival of Interim Order.**  The provisions of this Interim Order and any actions taken pursuant hereto shall survive and continue in full force and effect, and shall not be modified, impaired or discharged by, any order which may be entered (i) confirming any chapter 11 plan in the Cases, (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (iii) dismissing any of the Cases, (iv) terminating the joint administration of these Cases, (v) providing for the substantive consolidation of the Debtors' estates, (vi) withdrawing of the reference of any of the Cases from the Court, or (vii) providing for abstention from handling or retaining of jurisdiction of any of the Cases in the Court.  The terms and provisions of this Interim Order, including any protections granted to or for the benefit of the Prepetition Secured Parties (including the Adequate Protection Liens and the Adequate Protection Superpriority Claims), shall continue in full force and effect notwithstanding the entry of such order, or in the event any or all of the provisions of this Interim Order are hereafter modified, amended, reversed, or vacated by a

subsequent order of the Court or any other court, and such protections for the Prepetition Secured Parties (including the Adequate Protection Liens and the Adequate Protection Superpriority Claims) shall maintain their priorities as provided by this Interim Order (including **Annex 2** hereto), and the Prepetition Loan Documents (as the case may be), and including the Intercreditor Agreements, as applicable, until all of the Prepetition Secured Obligations have been indefeasibly paid and satisfied in full in cash and discharged. The Court shall retain jurisdiction, notwithstanding any such dismissal, for the purpose of enforcing the claims, liens and security interests referred to in this paragraph 34.

35. **Enforceability.** This Interim Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof.

36. **Waiver of any Applicable Stay.** Any applicable stay (including, without limitation, under Bankruptcy Rule 6004(h)) is hereby waived and shall not apply to this Interim Order and this Interim Order shall be immediately effective and enforceable upon its entry.

37. **Headings**. Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Interim Order.

38. **Final Hearing.**

(a)     The Final Hearing to consider entry of the Final Order is scheduled for [_____], 2023 at [__:__] a.m. (prevailing Eastern Time) at the United States Bankruptcy Court for the District of Delaware. If no objections to the relief sought in the Final Hearing are filed and served in accordance with this Interim Order, no Final Hearing may be held, and a separate Final Order may be presented by the Debtors and entered by the Court.

(b)     On or before [_____], 2023, the Debtors shall serve, by United States mail, first-class postage prepaid, notice of the entry of this Interim Order and of the Final Hearing (the "<u>Final Hearing Notice</u>"), together with copies of this Interim Order and the Motion, on the Notice Parties and to any other party that has filed a request for notices with the Court prior thereto and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  The Final Hearing Notice shall state that any party in interest objecting to the entry of the proposed Final Order shall file written objections with the Clerk of the Court no later than [_____], 2023 at [5:00] pm (prevailing Eastern Time), which objections shall be served so that the same are received on or before such date by:  (a) counsel for the Debtors, Kirkland & Ellis LLP, 300 North LaSalle, Chicago, IL 60654, Attn: Ryan Blaine Bennett, P.C. and Whitney C. Fogelberg; (b) local counsel for the Debtors, Young Conaway Stargatt & Taylor, LLP Attn: Joseph M. Barry, 1000 North King Street, Wilmington, DE 19801; (c) counsel for the Prepetition Bridge Administrative Agent and the Prepetition Bridge PropCo Collateral Agent, White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020, Attn: Scott Greissman, Andrew Zatz, and Lisa Feld; (d) counsel for the Prepetition OpCo Agent and the Prepetition Bridge OpCo Collateral Agent, Sidley & Austin, LLP, 555 West 5th Street, Los Angeles, CA 90013, Attn:  Jennifer Hagle; (e) counsel to the Prepetition PropCo Agent, Covington & Burling LLP, 620 Eighth Avenue, New York NY 10018, Attn: Ronald Hewitt and Martin Beeler, (f) counsel selected by any successor to any agent identified in clauses (c) through (e), (g) local counsel for the Prepetition Agents; (h) counsel to any Committee; and (i) the U.S. Trustee.

39.     **<u>Retention of Jurisdiction</u>.**  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

## Annex 1

### Stipulations

(a)    **Prepetition PropCo Facility.**

(i)    Wawona Farm Co. LLC ("PropCo"), as borrower, each lender party thereto (the "Prepetition PropCo Lenders"), and Wilmington Trust, National Association, as successor to Coöperatieve Rabobank U.A., New York Branch ("Rabobank"), as administrative agent and collateral agent (in such capacities, the "Prepetition PropCo Agent"[1] and, collectively with the Prepetition PropCo Lenders and all other Secured Parties under the Prepetition PropCo Credit Agreement (as defined herein), the "Prepetition PropCo Secured Parties"), are parties to that certain Amended and Restated Credit Agreement, dated as of September 13, 2019 (as amended, restated, supplemented or modified, including pursuant to that certain First Amendment to the Amended and Restated Credit Agreement, dated April 3, 2023, the "Prepetition PropCo Credit Agreement" and, together with the Prepetition PropCo Security Documents, and the other Loan Documents, in each case, as amended, restated, supplemented or modified, the "Prepetition PropCo Loan Documents"), which provided for a term loan facility in the aggregate principal amount of $340,000,000 (the "Prepetition PropCo Facility," and the loans thereunder the "Prepetition PropCo Loans").

(ii)    Pursuant to that certain Amended and Restated Pledge Agreement, dated as of September 13, 2019, by and between MVK Intermediate Holdings LLC ("GroupCo") and the Prepetition PropCo Agent, that certain Amended and Restated Pledge and Security Agreement, dated as of September 13, 2019, between PropCo and the Prepetition PropCo Agent,

---

[1]    On October 12, 2023, Wilmington Trust, N.A. replaced Rabobank as Prepetition PropCo Agent.

the Mortgages, and the other Security Documents, and the other Prepetition PropCo Loan Documents, the Prepetition PropCo Obligations (as defined herein) are secured by first priority liens on and security interests in (the "<u>Prepetition PropCo Liens</u>") the Collateral, which includes substantially all of PropCo's assets, including certain real property and other assets of PropCo, 100% of the equity in PropCo, and all proceeds of any of the foregoing and any other assets subject to the Prepetition PropCo Liens and in each case in accordance with the terms of the Prepetition PropCo Loan Documents and subject to customary exceptions and permitted liens as set forth therein (collectively, the "<u>Prepetition PropCo Collateral</u>").

(iii)    **PropCo Obligations**.  As of the Petition Date, PropCo was justly and lawfully indebted and liable to the Prepetition PropCo Secured Parties under the Prepetition PropCo Credit Agreement, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $292,188,383.19 plus all accrued and unpaid interest and any fees, expenses, indemnification obligations, guarantee obligations, reimbursement obligations (including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable to or reimbursable by PropCo), and all other Obligations (including, without limitation, all Bank Product Obligations), in each case under (and in each case as defined in) the Prepetition PropCo Credit Agreement (collectively, the "<u>Prepetition PropCo Obligations</u>").

(iv)    **<u>Validity, Perfection, and Priority of Prepetition PropCo Liens</u>**.  As of the Petition Date, (a) the Prepetition PropCo Liens on the Prepetition PropCo Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition PropCo Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition PropCo Liens are senior in priority over any and all other liens on the Prepetition

30855642

PropCo Collateral, subject only to certain liens otherwise permitted by the Prepetition PropCo Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition PropCo Liens as of the Petition Date) and the terms of the Intercreditor Agreements; (c) the Prepetition PropCo Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the Prepetition PropCo Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition PropCo Liens or Prepetition PropCo Obligations exist, and no portion of the Prepetition PropCo Liens or Prepetition PropCo Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or any other applicable law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition PropCo Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition PropCo Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition PropCo Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, perfection and priority of the liens securing the Prepetition PropCo Obligations; and (g) the Prepetition PropCo Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(b)      **Prepetition OpCo Facility**.

(i)      Wawona Packing Co. LLC ("OpCo") and GroupCo, as borrowers

30855642

(together, the "OpCo Borrowers"), each lender party thereto (the "Prepetition OpCo Lenders"), and Royal Bank of Canada ("RBC"), as administrative agent and collateral agent (in such capacities, the "Prepetition OpCo Agent" and, collectively with the Prepetition OpCo Lenders and all other Secured Parties under the Prepetition OpCo Credit Agreement (as defined herein), the "Prepetition OpCo Secured Parties"), are parties to that certain Credit Agreement, dated as of September 13, 2019 (as amended, restated, supplemented or modified, including pursuant to that First Amendment to the Credit Agreement dated April 3, 2023, the "Original Prepetition OpCo Credit Agreement"), which provided for a revolving credit facility in the aggregate principal amount of $60,000,000 (which includes a $1,000,000 letter of credit facility) (the "Prepetition OpCo Revolving Credit Facility") and a term loan facility in the aggregate principal amount of $335,000,000 (the "Prepetition OpCo Term Loan Facility").

(ii)    The OpCo Borrowers, certain of the Prepetition OpCo Lenders, and the Prepetition OpCo Agent are parties to that certain Incremental Revolving Credit Agreement, dated May 26, 2020 (as amended, restated, supplemented or modified and, together with the Original Prepetition OpCo Credit Agreement, the "Prepetition OpCo Credit Agreements"), pursuant to which additional revolving loans were made available to the OpCo Borrowers in the aggregate principal amount of up to $25,000,000 (collectively with the Prepetition OpCo Revolving Credit Facility and the Prepetition OpCo Term Loan Facility, the "Prepetition OpCo Facility," and the loans under the Prepetition OpCo Facility, the "Prepetition OpCo Loans").

(iii)    Pursuant to that certain Subsidiary Guaranty, dated as of September 13, 2019 (as amended, restated, supplemented or modified, the "Prepetition OpCo Guaranty"), certain subsidiaries of the OpCo Borrowers party thereto (together with the OpCo Borrowers, the "OpCo Obligors") guaranteed on a joint and several basis the Prepetition OpCo

Obligations (as defined herein), which guaranty is secured by the Prepetition OpCo Collateral (as defined herein).

(iv)    Pursuant to that certain Pledge and Security Agreement, dated as of September 13, 2019, by and among the OpCo Obligors and the Prepetition OpCo Agent, that certain Trademark Security Agreement, dated September 13, 2019, by and among OpCo and Gerawan Farming LLC in favor of the Prepetition OpCo Agent, and that certain Patent Security Agreement, dated September 13, 2019, by and among OpCo and Gerawan Farming LLC in favor of the Prepetition OpCo Agent, and the other Security Documents, and the other Prepetition OpCo Loan Documents, the Prepetition OpCo Obligations are secured by first priority liens on and security interests in (the "<u>Prepetition OpCo Liens</u>") the Collateral, which includes substantially all of the OpCo Obligors' assets, and all proceeds of any of the foregoing and any other assets subject to the Prepetition OpCo Liens and in each in accordance with the terms of the Prepetition OpCo Loan Documents and subject to customary exceptions and permitted liens as set forth therein (the "<u>Prepetition OpCo Collateral</u>").

(v)    **OpCo Obligations**.  As of the Petition Date, the OpCo Obligors were justly and lawfully indebted and liable to the Prepetition OpCo Secured Parties under the Prepetition OpCo Credit Agreements, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $281,535,545.21[2] on account of amounts outstanding under the Prepetition OpCo Facility plus all accrued and unpaid interest, and any fees, expenses, indemnification obligations, guarantee obligations, reimbursement obligations (including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors'

---

[2]    The aggregate principal amount of Prepetition OpCo Loans reflects $35,992,786 outstanding on account of the Prepetition OpCo Revolving Credit Facility (which includes issued but undrawn letters of credit in an aggregate amount of $901,536) and $245,542,759 outstanding on account of the Prepetition OpCo Term Loan Facility, in each case after giving effect to the Prepetition Bridge OpCo Roll-Up Loans.

fees that are chargeable to or reimbursable by the OpCo Obligors), and all other Obligations (including, without limitation, all Bank Product Obligations), in each case under (and in each case as defined in) the Prepetition OpCo Credit Agreements (collectively, the "Prepetition OpCo Obligations").

    (vi) **Validity, Perfection, and Priority of Prepetition OpCo Liens**. As of the Petition Date, (a) the Prepetition OpCo Liens on the Prepetition OpCo Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition OpCo Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition OpCo Liens are senior in priority over any and all other liens on the Prepetition OpCo Collateral, subject only to certain liens otherwise permitted by the Prepetition OpCo Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition OpCo Liens as of the Petition Date) and to the terms of the Intercreditor Agreements; (c) the Prepetition OpCo Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the Prepetition OpCo Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition OpCo Liens or Prepetition OpCo Obligations exist, and no portion of the Prepetition OpCo Liens or Prepetition OpCo Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or any other applicable law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition OpCo Secured Parties or any of their respective

30855642

affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition OpCo Facility; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition OpCo Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, perfection and priority of the liens securing the Prepetition OpCo Obligations; and (g) the Prepetition OpCo Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

     (c)     **Prepetition Bridge Facility.**

     (i)     OpCo, PropCo, and GroupCo, as borrowers (the "Bridge Borrowers"), Rabobank, as administrative agent (in such capacity, the "Prepetition Bridge Administrative Agent") and as collateral agent with respect to the Prepetition PropCo Collateral (as defined herein) (in such capacity, the "Prepetition Bridge PropCo Collateral Agent"), RBC, as collateral agent with respect to the Prepetition OpCo Collateral (as defined herein) (in such capacity, the "Prepetition Bridge OpCo Collateral Agent" and, together with the Prepetition Bridge PropCo Collateral Agent, the "Prepetition Bridge Collateral Agents"),[3] the lenders party thereto (the "Prepetition Bridge Lenders" and, collectively with the Prepetition PropCo Lenders and the Prepetition OpCo Lenders, the "Prepetition Lenders"),[4] and Rabobank and RBC, as joint lead arrangers and joint bookrunners, are parties to that certain Senior Secured Credit Agreement, dated April 3, 2023 (as amended, restated, supplemented or modified, the "Prepetition Bridge Credit Agreement" and, collectively with the Prepetition PropCo Credit Agreement and the Prepetition OpCo Credit Agreement, the "Prepetition Credit Agreements").

---

[3]    The Prepetition Bridge Collateral Agents, collectively with the Prepetition PropCo Agent, the Prepetition OpCo Agent and the Prepetition Bridge Administrative Agent, shall be referred to herein as the "Prepetition Agents."

[4]    The Prepetition Lenders, together with the Prepetition Agents, shall be referred to herein as the "Prepetition Secured Parties."

30855642

(ii)    Pursuant to the Prepetition Bridge Credit Agreement and the other Loan Documents, including the Prepetition Bridge Guaranty (as defined herein) and the Security Documents (the "Prepetition Bridge Loan Documents" and, collectively with the Prepetition PropCo Loan Documents and the Prepetition OpCo Loan Documents, the "Prepetition Loan Documents"), prior to the Petition Date, (1) the Prepetition Bridge Lenders made new money term loans available in an aggregate principal amount of up to $100,000,000 (the "Prepetition New Money Bridge Loans") and (2) each Prepetition Bridge Lender's Prepetition OpCo Loans or Prepetition PropCo Loans (at such Prepetition Bridge Lender's election) were to be converted into loans under the Prepetition Bridge Credit Agreement in an amount commensurate with the Prepetition New Money Bridge Loans provided by such Prepetition Bridge Lender (respectively, the "Prepetition Bridge OpCo Roll-Up Loans" and the "Prepetition Bridge PropCo Roll-Up Loans," together, the "Prepetition Bridge Roll-Up Loans" and, collectively with the Prepetition New Money Bridge Loans, the "Prepetition Bridge Loans").

(iii)    Pursuant to that certain Guaranty Agreement, dated as of April 3, 2023 (as amended, restated, supplemented or modified, the "Prepetition Bridge Guaranty"), the Subsidiary Guarantors unconditionally guaranteed on a joint and several basis the Prepetition Bridge Loan Obligations (as defined herein), which guaranty is secured by the Prepetition Bridge Collateral (as defined herein).

(iv)    Pursuant to that certain Pledge and Security Agreement, dated as of April 3, 2023, the other Security Documents, and the other Prepetition Bridge Loan Documents, the Prepetition Bridge Loan Obligations owed to the Prepetition Bridge Secured Parties are secured by first priority liens on and security interests in (the "Prepetition Bridge Liens" and, collectively with the Prepetition PropCo Liens and the Prepetition OpCo Liens, the "Prepetition Liens") on all

of the Collateral, which includes substantially all of the Bridge Loan Parties' assets and all proceeds of any of the foregoing and any other assets subject to the Prepetition Bridge Liens and in each case in accordance with the terms of the Prepetition Bridge Loan Documents and subject to customary exceptions and permitted liens as set forth therein (the "Prepetition Bridge Collateral" and, collectively with the Prepetition PropCo Collateral and the Prepetition OpCo Collateral, the "Prepetition Collateral"), subject to the terms of the Intercreditor Agreements (as defined herein).

(v)     **Prepetition Bridge Loan Obligations**.  As of the Petition Date, the Debtors were justly and lawfully indebted and liable to the Prepetition Bridge Secured Parties under the Prepetition Bridge Credit Agreement, without objection, defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $104,994,305 in the aggregate, consisting of (1) $23,494,304.60 on account of Prepetition New Money Bridge Loans, (2) $0 on account of Prepetition PropCo Loans converted into Prepetition Bridge Roll-Up Loans ("Prepetition PropCo Bridge Roll-Up Loans"),  and (3) $81,500,000 on account of Prepetition OpCo Loans converted into Prepetition Bridge Roll-Up Loans ("Prepetition OpCo Bridge Roll-Up Loans"), plus all accrued and unpaid interest, and any fees, expenses, indemnification obligations, guarantee obligations, reimbursement obligations (including, without limitation, any attorneys', accountants', consultants', appraisers' and financial and other advisors' fees that are chargeable to or reimbursable by the Debtors), and all other Obligations, in each case outstanding as of the Petition Date under the Prepetition Bridge Credit Agreement (collectively, the "Prepetition Bridge Loan Obligations" and, collectively with the Prepetition PropCo Obligations and the Prepetition OpCo Obligations, the "Prepetition Secured Obligations").

(vi)    **Validity, Perfection, and Priority of Prepetition Bridge Liens**.  As of the

Petition Date, (a) the Prepetition Bridge Liens on the Prepetition Bridge Collateral are valid, binding, enforceable, non-avoidable, and properly perfected and were granted to, or for the benefit of, the Prepetition Bridge Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition Bridge Liens are senior in priority over any and all other liens on the Prepetition Bridge Collateral, subject only to certain liens otherwise permitted by the Prepetition Bridge Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, and senior in priority to the Prepetition Bridge Loan Obligations as of the Petition Date) the terms of the Intercreditor Agreements; (c) the Prepetition Bridge Loan Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors enforceable in accordance with the terms of the Prepetition Bridge Loan Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Bridge Liens or Prepetition Bridge Loan Obligations exist, and no portion of the Prepetition Bridge Liens or Prepetition Bridge Loan Obligations is subject to any challenge or defense including avoidance, disallowance, disgorgement, recharacterization, or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or any other applicable law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including avoidance claims under Chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition Bridge Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon or related to the Prepetition Bridge Loan Obligations; (f) the Debtors have waived, discharged, and released any right to challenge any of the Prepetition Bridge Loan Obligations, the priority of the Debtors' obligations thereunder, and the validity, extent, perfection and priority of the liens securing the Prepetition Bridge Loan Obligations; and (g) the Prepetition

30855642

x

Bridge Loan Obligations constitute allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

        (d)    <u>Intercreditor Agreements</u>

        (i)    The rights of the Prepetition Bridge Secured Parties in respect of the Prepetition Bridge Loan Obligations and the Prepetition Bridge Liens, on the one hand, and the Prepetition PropCo Secured Parties in respect of the Prepetition PropCo Obligations and Prepetition PropCo Liens to the Prepetition Bridge Collateral and the priority of their respective rights to and security interests in the Prepetition Bridge Collateral, on the other hand, are set forth in (1) that certain Senior Intercreditor Agreement, dated April 3, 2023, among the Prepetition PropCo Agent, the Prepetition Bridge PropCo Collateral Agent and PropCo and (2) that certain Pari Passu Intercreditor Agreement, dated April 3, 2023, among the Prepetition PropCo Agent, the Prepetition Bridge PropCo Collateral Agent and PropCo (in each case, as amended, restated, supplemented or modified, together, the "<u>PropCo Intercreditor Agreements</u>").

        (ii)    The rights of the Prepetition Bridge Secured Parties in respect of the Prepetition Bridge Loan Obligations and the Prepetition Bridge Liens, on the one hand, and the Prepetition OpCo Secured Parties in respect of the Prepetition OpCo Obligations and Prepetition OpCo Liens to the Prepetition Bridge Collateral, and the priority of their respective rights to and security interests in the Prepetition Bridge Collateral, on the other hand, are set forth in (1) that certain Senior Intercreditor Agreement, dated April 3, 2023, among the Prepetition OpCo Agent, the Prepetition Bridge OpCo Collateral Agent and the OpCo Borrowers and (2) that certain Pari Passu Intercreditor Agreement, dated April 3, 2023, among the Prepetition OpCo Agent, the Prepetition Bridge OpCo Collateral Agent and the OpCo Borrowers (in each case, as amended, restated, supplemented or modified and, collectively with the PropCo Intercreditor Agreements,

the "Intercreditor Agreements").

(e)    **Indemnity.**  The Prepetition Secured Parties have acted in good faith, and without negligence, misconduct or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting or obtaining requisite approvals for the use of Cash Collateral, including in respect to the granting any Adequate Protection Liens, any challenges or objections to the use of Cash Collateral, and all other documents related to and all transactions contemplated by the foregoing.  Accordingly, without limitation to any other right to indemnification (including any and all rights of the Prepetition Secured Parties to indemnification under the Prepetition Credit Agreements), the Prepetition Secured Parties are hereby indemnified and held harmless by the Debtors in respect of any claim or liability incurred in respect thereof or in any way related thereto in accordance with the terms of the Prepetition Loan Documents.  No exception or defense in contract, law or equity exists as of the date of this Interim Order to any obligation set forth, as the case may be, in this clause (iv), or in the Prepetition Loan Documents to indemnify and/or hold harmless the Prepetition Secured Parties, as the case may be, and any such defenses are hereby waived.

(f)    **No Control.**  None of the Prepetition Secured Parties are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Facilities, the Prepetition Bridge Loans, and/or the Prepetition Loan Documents.

(g)    **No Claims or Causes of Action.**  As of the date hereof, there exist no claims or causes of action against any of the Prepetition Secured Parties with respect to, in connection with, related to, or arising from the Prepetition Loans, the Prepetition Secured Obligations, the

30855642

Prepetition Liens, the Prepetition Loan Documents and/or the Prepetition Facilities that may be asserted by the Debtors or, to the Debtors' knowledge, any other person or entity.

(h)     **Cash Collateral**.  All of the Debtors' cash, including, without limitation, the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code and is Prepetition Collateral of the Prepetition Secured Parties.

(i)     **Release.**  The Debtors, on behalf of themselves and their respective estates, forever and irrevocably release, discharge, and acquit all former, current and future Prepetition Secured Parties, all holders of participation interests under the Prepetition Credit Agreements, and each of the former, current and future officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors and successors in interest of each Prepetition Secured Party and of each of their respective affiliates, in each case in its respective capacity as such (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including (without limitation) all legal and equitable theories of recovery, arising under common law, equity, statute or regulation or by contract, of every nature and description, arising out of, in connection with, or relating to the Prepetition Secured Obligations, the Prepetition Loan Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims

30855642

or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of the Prepetition Secured Parties. The Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction of the payment of any of the Prepetition Secured Obligations that the Debtors now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Interim Order.

(j)    **Sale and Credit Bidding**. The Debtors admit, stipulate, acknowledge, and agree that the Prepetition Secured Parties shall have the right, but not the obligation, to credit bid (independently or together) up to the full amount of the applicable outstanding Prepetition Secured Obligations (including any Adequate Protection Superpriority Claims) in each case, including, without limitation, any accrued interest and expenses, in a sale of any Prepetition Collateral (and Adequate Protection Collateral with respect to any Adequate Protection Superpriority Claims), as applicable, and whether such sale is effectuated through sections 363 or 1129 of the Bankruptcy Code, or otherwise.

30855642

**Annex 2**

**Lien Priorities**

| **Priority** | **OpCo Collateral** | **PropCo Collateral** | **All other Prepetition Collateral** | **Adequate Protection Collateral other than Prepetition Collateral** |
|---|---|---|---|---|
| **First** | Prepetition Bridge Liens securing Prepetition New Money Bridge Loans (and related adequate protection liens) | Prepetition Bridge Liens securing Prepetition New Money Bridge Loans (and related adequate protection liens) | Prepetition Bridge Liens securing Prepetition New Money Bridge Loans (and related adequate protection liens) | Adequate Protection Liens securing Prepetition New Money Bridge Loans |
| **Second** | Prepetition Bridge Liens securing Prepetition Bridge OpCo Roll-Up Loans (and related adequate protection liens) | Prepetition Bridge Liens securing Prepetition Bridge PropCo Roll-Up Loans (and related adequate protection liens) | Prepetition Bridge Liens securing Prepetition Bridge Roll-Up Loans (and related adequate protection liens) | Adequate Protection Liens securing Prepetition Bridge Roll-Up Loans |
| **Third** | Prepetition OpCo Liens (and related adequate protection liens) | Prepetition PropCo Liens (and related adequate protection liens) | PropCo Adequate Protection Liens and OpCo Adequate Protection Liens (on a *pari passu* basis) | PropCo Adequate Protection Liens and OpCo Adequate Protection Liens (on a *pari passu* basis) |
| **Fourth** | Prepetition Bridge Liens securing Prepetition Bridge PropCo Roll-Up Loans (and related adequate protection liens) | Prepetition Bridge Liens securing Prepetition Bridge OpCo Roll-Up Loans (and related adequate protection liens) | | |
| **Fifth** | PropCo Adequate Protection Liens | OpCo Adequate Protection Liens | | |

**<u>Annex 3</u>**

**Milestones**

- On or before the date falling five (5) days after the Petition Date, the Debtors shall file a motion (the "<u>Bidding Procedures Motion</u>") seeking approval of bidding procedures in form and substance reasonably satisfactory to the Prepetition Agents (at the direction of the applicable Required Lenders)

- On or before the date falling thirty-five (35) days after the Petition Date, the Final Order shall have been entered by the Bankruptcy Court

- On or before the date falling twenty-eight (28) days after the Petition Date, the Bankruptcy Court shall have entered an order approving the Bidding Procedures Motion, substantially in a form acceptable the Prepetition Agents (at the direction of the applicable Required Lenders) (the "<u>Bidding Procedures Order</u>")

- The Debtors shall comply with all of their obligations under the Bidding Procedures Order, including any deadline described therein.

**Annex 4**

**Definitions**

"*Approved Budget Variance Report*" means a weekly report (i) provided by Borrowers to the Administrative Agent (a) setting forth in reasonable detail actual operating receipts, operating disbursements and non-operating disbursements for the applicable Budget Period and all budget variances, in each case, on both an individual line item basis and an aggregate basis, as compared to the projected amounts set forth in the then applicable Approved Budget (which budget variances shall be tested such that in week 1 of each then applicable Budget Period, only week 1 variances are tested; in week 2 of each then applicable Budget Period, weeks 1 and 2 variances are tested on a cumulative basis; in week 3 of each then applicable Budget Period, weeks 1 through 3 variances are tested on a cumulative basis; and in week 4 of each then applicable Budget Period, weeks 1 through 4 variances are tested on a cumulative basis) and including indications as to whether each variance therein is temporary or permanent and an explanation, in reasonable detail, of any material variance, and (b) an analysis demonstrating that the Company is in compliance with the budget covenants set forth in <u>Section 5.11</u> in the Prepetition Bridge Credit Agreement, and (ii) certified by a Responsible Officer of Borrowers. The Approved Budget Variance Report shall be in a form, and shall contain supporting information, reasonably satisfactory to the Agents (at the direction of the Required Lenders).

"*Bank Product Obligations*" means all obligations, liabilities, reimbursement obligations, fees, or expenses owing by the Company or its Subsidiaries to any Bank Product Provider pursuant to or evidenced by a Bank Product Agreement and irrespective of whether for the payment of money, whether direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, to any Person permitted to be a secured party in respect of such obligations under the applicable Junior Lien Loan Documents.

"*Bankruptcy Case*s" means the Borrowers and certain of the Borrowers' affiliates' chapter 11 cases commenced under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, in the United States Bankruptcy Court for the District of Delaware.

"*Borrower*" means MVK Intermediate Holdings LLC, Wawona Packing Co. LLC, Wawona Farm Co. LLC.

"*Bridge Loan Parties*" means the Bridge Borrowers (as defined in the Interim Order) and the Subsidiary Guarantors.

"*Collateral*":

Under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition Bridge Facility, has the meanings set forth in each Security Document; *provided* that, following the Petition Date, "Collateral" shall also mean "DIP Collateral" as defined in the DIP Order.

Under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition OpCo Facility (as defined in the Interim Order) means the

property over which a Lien has been or is intended to be granted to Administrative Agent pursuant to the Security Documents.

Under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition PropCo Facility (as defined in the Interim Order) means the property over which a Lien has been or is intended to be granted to Administrative Agent pursuant to the Security Documents.

"**Company**" *or* "**Companies**" means GroupCo, Wawona, PropCo and each of their respective Subsidiaries.

"***DIP Order***" is defined under the Prepetition Bridge Credit Agreement (as defined in the Interim Order) as the "Interim DIP Order" or the "Final DIP Order," as the context may require.  Currently, the Debtors are not seeking entry of an Interim DIP Order or Final DIP Order.

If any of the following events (each such an event, an "***Event of Default***") shall occur:

1.      Obligors shall fail to pay any principal of any Loan when and as the same shall become due and payable, whether at the due date thereof or at a date fixed for prepayment thereof or otherwise;

2.      Obligors shall fail to pay any interest on any Loan or any fee or any other amount (other than an amount referred to in clause (a) of this Section) payable under this Agreement or under any other Loan Document, when and as the same shall become due and payable, and such failure shall continue unremedied for a period of three or more Business Days;

3.      any information contained in any Compliance Certificate or Approved Budget Variance Report or any certification, representation, or warranty made or deemed made by or on behalf of any Obligor in or in connection with this Agreement or any other Loan Document or in any report, certificate, financial statement, or other document furnished pursuant to or in connection with this Agreement or any other Loan Document, shall prove to have been incorrect in any material respect when made or deemed made (unless any such certification, representation or warranty is qualified as to prove materiality or as to Material Adverse Effect, in which case such certification, representation and warranty shall to have been incorrect in any respect);

4.      any Obligor shall fail to observe or perform any covenant, condition or agreement contained in (i) Section 5.01 and such failure shall continue unremedied for a period of 5 or more Business Days, (ii) Section 5.10, Section 5.14, Section 5.15 or Section 5.20 and, in each case, such failure shall continue unremedied for a period of 10 or more Business Days, or (iii) Section 5.02, Section 5.03 (with respect to any Obligor's existence), Section 5.05, Section 5.11, Section 5.12, Section 5.13, Section 5.16, Section 5.17, Section 5.18, Section 5.19, Article VI, or Article VII, or any Obligor shall default in the performance of any of its material obligations contained in any of the Security Documents;

5.      any Obligor shall fail to observe or perform any covenant, condition or agreement contained in this Agreement (other than those specified in clause (a), (b), or (d) of this

Section) or any other Loan Document and such failure shall continue unremedied for a period of 30 or more days;

6.      except as otherwise expressly provided herein, and if the Obligors have not filed the Bankruptcy Cases, any Obligor shall fail to make any payment (including of principal or interest and regardless of amount) in respect of any Material Indebtedness, when and as the same shall become due and payable (after giving effect to any applicable notice requirement, grace period or forbearance);

7.      any event or condition (other than any Event of Default (as defined in the Existing Credit Agreements)) occurs that results in any Material Indebtedness (other than the Obligations) becoming due prior to its scheduled maturity or that enables or permits (with or without the giving of notice, the lapse of time or both) the holder or holders of any such Material Indebtedness or any trustee or agent on its or their behalf to cause any such Material Indebtedness to become due, or to require the prepayment, repurchase, redemption or defeasance thereof, prior to its scheduled maturity (after giving effect to any applicable notice requirement or grace period); **provided** that this clause (g) shall not apply to (i) secured Indebtedness that becomes due as a result of the voluntary sale or transfer of the property securing such Indebtedness in a transaction permitted hereunder and (if applicable) permitted by the DIP Order and (ii) if the Obligors have filed Bankruptcy Cases, any defaults that occur solely as a result of the commencement of the Bankruptcy Cases;

8.      an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking (i) liquidation, reorganization, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency or other relief in respect of any Obligor or any of its Subsidiaries or debts, or of a substantial part of its assets, under any Debtor Relief Laws or (ii) the appointment of a receiver, trustee, custodian, sequestrator, conservator, liquidator, rehabilitator, or similar official for any Obligor or its Subsidiary or for a substantial part of its or their assets,  or an order or decree approving or ordering any of the foregoing shall be entered;

9.      any Obligor or its Subsidiary shall (i) voluntarily commence any proceeding or file any petition seeking liquidation, reorganization, conservatorship, bankruptcy, assignment for the benefit of creditors, moratorium, rearrangement, receivership, insolvency, or other relief under any Debtor Relief Laws now or hereafter in effect, (ii) consent to the institution of, or fail to contest in a timely and appropriate manner, any proceeding or petition described in clause (h) of this Section, (iii) apply for or consent to the appointment of a receiver, trustee, custodian, sequestrator, conservator, liquidator, rehabilitator, or similar official for any Obligor or its Subsidiary or for a substantial part of its assets, (iv) file an answer admitting the material allegations of a petition filed against it in any such proceeding, (v) make a general assignment for the benefit of creditors, or (vi) take any action for the purpose of effecting any of the foregoing; provided, however, that it shall not be an Event of Default if the Obligors or their Subsidiaries file the Bankruptcy Cases and the Interim DIP Order has been approved and entered within three Business Days after the Petition Date and has not, at such time been (x) stayed, vacated, reversed or rescinded, and any appeal of such order shall not have been timely filed and a stay of such order pending

appeal shall not be presently effective or (y) without the prior written consent of the Agents (at the direction of the Required Lenders), revised, amended or modified;

10.     there is entered against any Obligor or its Subsidiary (i) one or more judgments or orders for the payment of money in an aggregate amount in excess of $1,500,000 (exclusive of amounts covered by insurance provided by a financially sound insurance company and for which such insurer has accepted liability) or (ii) any one or more non-monetary final judgments that have, or could reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect and, in either case, with respect to which either (A) the same shall remain undischarged for a period of 30 consecutive days during which execution shall not be effectively stayed (including pursuant to the Bankruptcy Code) or (B) any action (if the Obligors have filed Bankruptcy Cases, that is not in violation of the automatic stay applicable under Section 362 of the Bankruptcy Code) shall be legally taken by a judgment creditor to attach or levy upon any assets of any Obligor or its Subsidiary or otherwise enforce any such judgment;

11.     an ERISA Event shall have occurred that, when taken together with all other ERISA Events that have occurred, would reasonably be expected to result in liability of any Obligor and its Subsidiaries in an aggregate amount that would have a Material Adverse Effect;

12.     (x) any Event of Default (as defined in the Existing PropCo Credit Agreement) shall occur under the Existing  Credit Agreement that is not subject to a forbearance or waiver by the Required Lenders under (and as defined in) the Existing PropCo Credit Agreement or (y) any Event of Default (as defined in any Existing OpCo Credit Agreement) shall occur under any Existing OpCo Credit Agreement that is not subject to a forbearance or waiver by the Required Lenders under (and as defined in) the Existing OpCo Credit Agreement, in each case, other than as a result of the filing of the Bankruptcy Cases;

13.     a Change in Control shall occur;

14.     the Liens created by the DIP Order (if the Obligors have filed Bankruptcy Cases) and the Security Documents shall at any time not constitute a valid and perfected Liens (with the priorities thereof as required under the Intercreditor Agreements) on the collateral intended to be covered thereby (other than any Collateral released under Section 9.10) in favor of the Collateral Agents, free and clear of all other Liens (other than Permitted OpCo Encumbrances (in the case of property owned by any OpCo Obligor) or Permitted PropCo Encumbrances (in the case of property owned by any PropCo Obligor)), or any of the Loan Documents shall for whatever reason be terminated or cease to be in full force and effect, or enforceability thereof shall be contested by any Obligor, or any Borrower or any Person acting by or on behalf of any Borrower shall deny or disaffirm any Borrower's obligations under Section 10.23;

15.     (i) any Obligor shall fail to pay Base Rent (as defined in the Master Lease Agreement) when due under the Master Lease Agreement and said Base Rent remains unpaid for ten (10) Business Days; (ii) any Obligor shall fail to pay any other material amount when due under the Master Lease Agreement and said failure continues for thirty (30) days; or (iii) any Obligor shall fail to perform any of their respective other covenants, agreements, or

obligations under the Master Lease Agreement that are material to the interests of the Lenders, which failure continues for thirty (30) days;

16.    except as permitted by <u>Section 6.03</u> or <u>Section 7.03</u>, any Obligor or any Subsidiary thereof voluntarily or involuntarily dissolves or is dissolved, liquidates or is liquidated or files a motion with the Bankruptcy Court seeking (or supports or consents to any Person seeking) authorization to so dissolve or liquidate (including, without limitation, under any Debtor Relief Law);

17.    any of the Obligors pursues a sale under section 363 of the Bankruptcy Code or otherwise for a material portion of ownership or the business of such Obligor other than pursuant to the Sale Process, or any order is entered by the Bankruptcy Court approving a sale under section 363 of the Bankruptcy Code or otherwise, other than a 363 Sale, without the prior written consent of the Agents (at the direction of the Required Lenders);

18.    if the Obligors have filed any of the Bankruptcy Cases, any of the following occurs:

18.1    an order with respect to any of the Bankruptcy Cases shall be entered by the Bankruptcy Court (or any of the Obligors shall file an application or motion or pleading for entry of or in support of an order) (i) appointing a Chapter 7 trustee, or a Chapter 11 trustee under section 1104 of the Bankruptcy Code, (ii) appointing an examiner (other than a fee examiner) or receiver with enlarged powers (beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business under section 1106(b) of the Bankruptcy Code, (iii) dismissing any of the Bankruptcy Cases or converting any of the Bankruptcy Cases under section 1112 of the Bankruptcy Code or otherwise to a case under chapter 7 of the Bankruptcy Code or (iv) providing for the disposition without the Administrative Agent's prior written consent of all or material portion of any of the assets of any Obligor or any other Subsidiary of the Borrowers, any Equity Interest of any Obligor or any other Subsidiary of the Borrowers, or any material business line of the Obligors and their Subsidiaries either through a sale under section 363 of the Bankruptcy Code, through a confirmed plan of reorganization in the Bankruptcy Cases or otherwise except (I) as permitted by this Agreement (subject to any mandatory prepayment obligations) and the DIP Order; or (II) with the prior written consent of the Agents (at the direction of the Required Lenders); or (III) pursuant to a transaction that provides for the Full Satisfaction of all Obligations and the payment in full in cash of all obligations under the Existing Credit Agreements;

18.2    any Obligor or any Subsidiary of the Borrowers fails to comply in all respects with any provision of the DIP Order;

18.3    the period pursuant to section 1121 of the Bankruptcy Code during which the Obligors have the exclusive right to file a plan of reorganization or solicit acceptance thereof expires or an order shall have been entered by the Bankruptcy Court terminating or reducing such period, unless such termination or reduction is consented to by the Administrative Agent (or in each case any of the Obligors shall seek to, or shall support (whether by way of motion or other pleadings filed with the Bankruptcy Court or any other writing executed

by any Obligor) any other Person's motion to, have such an order entered, in each case unless the Administrative Agent consents to such action);

18.4    an order with respect to any of the Bankruptcy Cases shall be entered by the Bankruptcy Court, or any of the Obligors or any other Subsidiary of Borrowers shall have filed or supported a motion or other pleading for entry of an order, (i) to revoke, reverse, stay, vacate, terminate, extend, rescind or seek reconsideration of any provision of the Cash Management Order, (ii) to revoke, reverse, stay, vacate, terminate, modify, supplement or amend any provision of the Interim DIP Order, the Final DIP Order or this Agreement without the prior written consent of the Administrative Agent and the affected Lenders, or (iii) to permit any administrative expense or any claim (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to any of the Obligors, equal or superior to the priority of the Lenders in respect of the Obligations, subject only to the Carve-Out, or (iv) to grant or permit the grant of a Lien on the Collateral (other than a Permitted OpCo Encumbrance (in the case of property owned by any OpCo Obligor) or a Permitted PropCo Encumbrance (in the case of property owned by any PropCo Obligor)), (v) to permit charging of any of the Collateral under section 506(c) of the Bankruptcy Code against the Secured Parties or the Existing Secured Parties, (vi) without the prior written consent of the Required Lenders, to authorize the use of Cash Collateral under Section 363 of the Bankruptcy Code or to obtain financing for any of the Obligors under Section 364 of the Bankruptcy Code (other than the transactions contemplated by the Loan Documents or any such financing that provides for the payment in full in cash of the Obligations and the obligations under the Existing OpCo Credit Agreements and the Existing PropCo Credit Agreement); or (vii) to take any other action or actions materially adverse to any of the Secured Parties or the Existing Secured Parties or their rights and remedies hereunder or under any of the Loan Documents, the Existing Credit Agreements or the DIP Order, or any Secured Party's or Existing Secured Party's interest in any of the Collateral;

18.5    an order shall be entered by the Bankruptcy Court confirming a plan of reorganization or liquidation in any of the Bankruptcy Cases (or an order shall be entered by the Bankruptcy Court approving a disclosure statement related to such plan) other than an Acceptable Plan or a chapter 11 plan that contemplates the payment in full in cash of the Obligations and all obligations under the Existing OpCo Credit Agreements and the Existing PropCo Credit Agreement, or any of the Obligors or any of their Subsidiaries shall file, propose, support, or fail to contest in good faith the filing or confirmation of such a plan;

18.6    the Bankruptcy Court shall enter an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to a holder or holders of any Lien (other than a holder or holders of a Lien ranking senior in priority to the Liens securing the Loans) or a Lien on any part of the Collateral securing the Loans to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any such Collateral or the Equity Interests in any Obligor or any Subsidiary whose Equity Interest (or portion thereof) has been pledged as security for the Obligations (unless constituting a sale or other disposition permitted by Section 6.04 and Section 7.04) or permit any such third parties to exercise other remedies that would have a Material Adverse Effect);

18.7    any termination of the use of Cash Collateral pursuant to the DIP Order;

18.8    any material provision of the DIP Order shall for any reason cease to be valid or binding or enforceable against any of the Obligors, or any of the Obligors or any other Subsidiary of the Borrowers shall so state in writing; or any of the Obligors or any other Subsidiary of Borrowers shall commence or join in any legal proceeding to contest in any manner that the DIP Order constitutes a valid and enforceable agreement, or to assert that it has no further obligation or liability under the DIP Order;

18.9    any of the Obligors or any other Subsidiary of Borrowers shall seek to, join or support (whether by way of motion or other pleadings filed with the Bankruptcy Court or any other writing executed by any Obligor or by oral argument) any other person in seeking to: (i) contest or disallow in whole or in part any of the Obligations arising under this Agreement or any other Loan Document (or any such order is entered), or any Existing Credit Agreement or (ii) challenge the validity, enforceability or perfection of the Liens or security interests granted or confirmed herein or in the Interim DIP Order or the Final DIP Order and the other Security Documents in favor of the Secured Parties or the Liens of the Existing Secured Parties in respect of the Obligors' obligations under the Existing Credit Agreements;

18.10    any of Borrowers or any of their Subsidiary shall make any payment (as adequate protection or otherwise), or application for authority to pay, on account of any claim or debt arising prior to the Petition Date other than payments expressly authorized by the Bankruptcy Court in the Interim DIP Order, the Final DIP Order or by any other orders entered by the Bankruptcy Court in amounts consistent with the Approved Budget (subject to variances permitted under Section 5.11(c));

18.11    if any Obligor is enjoined, restrained or in any way prevented by an order of a court of competent jurisdiction (other than an order of the Bankruptcy Court approved by the Required Lenders) from continuing to conduct all or any material part of its business or affairs for a period exceeding five (5) consecutive Business Days;

18.12    any Obligor or any other Subsidiary of Borrowers shall consolidate or combine with any other Person except to the extent expressly permitted by Section 6.03 and Section 7.03 or pursuant to a confirmed Acceptable Plan; or

18.13    the Bankruptcy Court does not approve in the Interim DIP Order or Final DIP Order, as applicable, or any determination is made by the Bankruptcy Court at any time, that it will not approve the "roll-up" of any of the Existing Loans into Roll-Up Term Loans under this Agreement in accordance with Section 2.01(b);

19.    the resignation of the Borrowers' interim Chief Executive Officer;

20.    the resignation or termination of AlixPartners as financial advisor to the Company; or

21.    the termination of an Acceptable Third Party APA (if any);

then, in every such event (other than an event described in clause (h) or (i) of this Section 8.01), and at any time thereafter during the continuance of such event, the Administrative Agent may with the consent of the Required Lenders, and at the request of the Required Lenders shall, take

any or all of the following actions, at the same or different times:  (i) terminate the New Term Loan Commitments, and thereupon the New Term Loan Commitments and obligations shall terminate immediately, (ii) declare the Loans then outstanding to be due and payable in whole (or in part, in which case any principal not so declared to be due and payable may thereafter be declared to be due and payable), and thereupon the principal of the Loans so declared to be due and payable, together with accrued interest thereon and all fees and other obligations of the Obligors accrued hereunder and under the other Loan Documents, shall become due and payable immediately, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration or other notice of any kind, all of which are hereby waived by each Obligor, and (iii) subject to the provisions of the DIP Order if the Bankruptcy Cases are filed, exercise (or direct the relevant Collateral Agent to exercise) on behalf of the Agents and the Lenders all rights and remedies available to the Agents and the Lenders under the Loan Documents and applicable law; and, in case of any event described in clause (h) or (i) of this Section 8.01, the New Term Loan Commitments shall automatically terminate and the principal of the Loans then outstanding, together with accrued interest thereon and all fees and other obligations of the Obligors accrued hereunder and under the other Loan Documents, shall automatically become due and payable, without presentment, demand, protest, notice of intent to accelerate, notice of acceleration, or other notice of any kind, all of which are hereby waived by each Obligor.  In addition, if any Event of Default shall exist, Administrative Agent may (or may direct the relevant Collateral Agent to) foreclose or otherwise enforce any Lien granted to the Agents (including any Lien granted in the DIP Order), for the benefit of the Secured Parties, to secure payment and performance of the Obligations in accordance with the terms of the Loan Documents and exercise any and all rights and remedies afforded by applicable law, by any of the Loan Documents, by equity, or otherwise.

"*Loan Documents*":

under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition Bridge Credit Agreement, means, collectively, the Prepetition Bridge Credit Agreement, the Guaranty Agreements, the Security Documents, the Environmental Indemnity Agreements, all Assignments of Crop Insurance, the Fee Letters, each Notice of Acceptance, all Borrowing Requests, all Interest Election Requests, the Post-Closing Letter Agreement, the Lease Subordination Agreement, each Approved Budget, each Approved Budget Variance Report, the Interim DIP Order (if applicable) (and, on and after the Final DIP Order Date, the Final DIP Order (if applicable)) and all other documents, instruments, certificates, and agreements executed, delivered, or acknowledged by an Obligor (other than Organizational Documents) in connection with or contemplated by this Agreement.

under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition PropCo Credit Agreement (as defined in the Interim Order), means, collectively, the Prepetition PropCo Credit Agreement, the Guaranty Agreements, the Security Documents, the Environmental Indemnity Agreements, the Fee Letter, the Lease Subordination Agreement, the Post-Closing Letter Agreement, the Intercreditor Agreements, the First Amendment, all Borrowing Requests, all Interest Election Requests, all Incremental Facility Notices, and all other documents, instruments, certificates, and agreements executed, delivered, or acknowledged by an Obligor (other than Organizational Documents) in connection with or contemplated by this Agreement.

under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition OpCo Credit Agreement (as defined in the Interim Order), means, collectively, the Prepetition OpCo Credit Agreement, the Letter of Credit Documents, the Guaranty Agreements, the Security Documents, the Environmental Indemnity Agreements, all Assignments of Crop Insurance, the Fee Letter, all Borrowing Requests, all Interest Election Requests, all Incremental Facility Notices, the Post-Closing Letter Agreement, the Intercreditor Agreements, the First Amendment, all requests for the issuance of Letters of Credit, all Collateral Access Agreements, and all other documents, instruments, certificates, and agreements executed, delivered, or acknowledged by an Obligor (other than Organizational Documents) in connection with or contemplated by this Agreement.

"***Master Lease Agreement***," means that certain Amended and Restated Master Lease Agreement between Wawona, the Maverick Entities (as defined in the Prepetition Bridge Credit Agreement) and PropCo, dated as of September 13, 2019, as amended or supplemented prior to the Effective Date and as further amended or supplemented from time to time in accordance with <u>Section 6.09</u> of the Prepetition Bridge Credit Agreement.

"***Mortgages***," as defined in the Prepetition PropCo Credit Agreement, means each mortgage, deed to secure debt, deed of trust, and similar agreement executed by any Obligor on or after the Effective Date, for the benefit of the Administrative Agent and the Secured Parties, providing to Administrative Agent, subject to the Senior Intercreditor Agreement, a first priority Lien on the Mortgaged Property and the rents, leases and rights of Borrower under the Master Lease Agreement, in each case in form and substance reasonably satisfactory to Administrative Agent, including any such mortgage, deed to secure debt, deed of trust, or similar agreement delivered by any Obligor in connection with the Existing Credit Agreement.

"***Obligations***" means all of the obligations, indebtedness and liabilities of the Obligors to the Lenders and Administrative Agent under this Agreement or any of the other Loan Documents, including principal, interest, fees, prepayment premiums (if any), expenses, reimbursements and indemnification obligations and other amounts, and including interests, fees and expenses that accrue after the Effective Date.

"***Prepetition Agents***" means The Prepetition OpCo Agent and the Prepetition PropCo Agent, together.

"***Prepetition Bridge Agents***" means the Administrative Agent, the OpCo Collateral Agent and the PropCo Collateral Agent.

"***Prepetition Bridge Facility***" means the credit facility provided under the Prepetition Bridge Credit Agreement.

"***Prepetition Facilities***" means, collectively, the Prepetition PropCo Facility (as defined in the Interim Order), the Prepetition OpCo Facility (as defined in the Interim Order), and the Prepetition Bridge Facility.

"***Prepetition Loans***" means, collectively, the Prepetition Bridge Loans (as defined in the Interim Order), the Prepetition PropCo Loans, and the Prepetition OpCo Loans.

"***Prepetition OpCo Loan Documents***" means, collectively, the Prepetition OpCo Credit Agreements, the Prepetition OpCo Guaranty, the Prepetition OpCo Security Documents, and the other Loan Documents under (and as defined in) the Prepetition OpCo Credit Agreements, in each case, as amended, restated, supplemented, or modified.

"***Prepetition Secured Parties***" means the Prepetition PropCo Secured Parties and the Prepetition OpCo Secured Parties, together.

"***Required Lenders***":

under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition Bridge Credit Agreement, means, at any time, Lenders having more than 50% of the sum of the (a) total outstanding Loans at such time and (b) aggregate unused New Term Loan Commitments; *provided* the portion of the outstanding Loans and unused New Term Loan Commitments held, or deemed held, by any Defaulting Lender shall be excluded for purposes of making a determination of Required Lenders.

under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition OpCo Credit Agreement, means, at any time, Lenders having Revolving Credit Exposures, outstanding Term Loans, and unused Commitments representing more than 50% of the sum of the total Revolving Credit Exposures, total outstanding Term Loans and unused Commitments at such time; *provided* that the Commitments of, and the portion of the Revolving Credit Exposure and outstanding Term Loans held or deemed held by, any Defaulting Lender shall be excluded for purposes of making a determination of Required Lenders.

under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) Prepetition PropCo Credit Agreement, means, at any time, Lenders having outstanding Term Loans and unused Commitments representing more than 50% of the sum of the total outstanding Term Loans and unused Commitments at such time.

"***Responsible Officer***" means the chief executive officer, president, chief financial officer, principal accounting officer, treasurer, vice president of finance or controller of any Person.  Any document delivered hereunder that is signed by a Responsible Officer of any Person shall be conclusively presumed to have been authorized by all necessary corporate, partnership and/or other action on the part of such Person.

"***Security Documents***":

as defined in the Prepetition Bridge Credit Agreement, means, and in each case as amended, restated, supplemented, or modified (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in Prepetition Bridge Credit Agreement), (a) the Security Agreement, (b) the Intercreditor Agreements, (c) the Pledge Agreement, (d) from and after the Petition Date, the DIP Order, (e) each other agreement, instrument, mortgage, deed of trust or document that creates or purports to create a Lien securing the Obligations in favor of any of the Collateral Agents pursuant to or in connection with the Security Agreement, the Pledge Agreement and/or this Agreement and all UCC financing statements and fixture filings, or such other agreement, instrument, or document to be filed with respect to the Liens created pursuant

thereto and each other security agreement or other document executed and delivered on or after the Effective Date to secure any of the Obligations and (f) any amendments, supplements, modifications, renewals, restatements, replacements, consolidations, substitutions and extensions of any of the foregoing in accordance with their respective terms.

as defined in the Prepetition PropCo Credit Agreement, means, in each case as amended, restated, supplemented, or modified (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in Prepetition PropCo Credit Agreement), the Security Agreement, the Pledge Agreement, each Mortgage, the Control Agreements, and each other agreement, instrument, or document that creates or purports to create a Lien securing the Obligations in favor of Administrative Agent and all UCC financing statements and fixture filings required by the Security Agreement or any Mortgage, or such other agreement, instrument, or document to be filed with respect to the Liens created pursuant thereto and each other security agreement or other document executed and delivered after the Effective Date to secure any of the Obligations.

as defined in the Prepetition OpCo Credit Agreement, means, in each case as amended, restated, supplemented, or modified (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in Prepetition OpCo Credit Agreement), (a) the Security Agreement, each Mortgage, the Control Agreements, and each other agreement, instrument, or document that creates or purports to create a Lien securing the Obligations in favor of Administrative Agent pursuant to or in connection with this Agreement and all UCC financing statements and fixture filings required by the Security Agreement or any Mortgage, or such other agreement, instrument, or document to be filed with respect to the Liens created pursuant thereto and each other security agreement or other document executed and delivered after the Effective Date to secure any of the Obligations and (b) any amendments, supplements, modifications, renewals, restatements, replacements, consolidations, substitutions and extensions of any of the foregoing in accordance with their respective terms.

"*Secured Parties*":

under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition OpCo Credit Agreement means the Administrative Agent, the Lenders, Issuing Lender, Swingline Lender, and each Bank Product Provider.

under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition PropCo Credit Agreement means the Administrative Agent, the Lenders, and each Bank Product Provider.

under (and unless otherwise defined in the Interim Order or any Annex thereof (including this Annex 4), as defined in) the Prepetition Bridge Credit Agreement means the holders of the Obligations from time to time and shall include (i) each Lender in respect of its Loans, (ii) the Administrative Agent, the Collateral Agents and the Lenders in respect of all other present and future obligations and liabilities of Borrowers and each Obligor of every type and description arising under or in connection with the Prepetition Bridge Credit Agreement or any other Loan Document, (iii) each indemnified party under Section 10.03 of the Prepetition Bridge Credit Agreement in respect of the obligations and liabilities of Borrowers to such Person hereunder and

under the other Loan Documents, and (iv) their respective successors and (in the case of a Lender and the Agents, permitted) transferees and assigns.

"***Steering Committee***" or "***SteerCo***" means Rabobank, RBC, Compeer Financial, PCA, Metropolitan Life Insurance Company, and AgCountry Farm Credit Services.

"***Subsidiary Guarantors***," as defined in the Prepetition Bridge Credit Agreement, means each Subsidiary that has executed a Guaranty Agreement.

"***Tested Net Cash Flow***" shall mean, in each case referring to the respective line item in the in the applicable Approved Budget, Receipts, less Total Operating Disbursements, less Debt Service less Debtor Restructuring Fees Reserve.

"***Variance Testing Date***" means the third Friday following the Petition Date and the Friday of each calendar week thereafter.

"***Variance Testing Period***" means the periods commencing on the first calendar day of the period covered by the applicable Approved Budget and ending as of any Variance Testing Date.  By way of example: (i) the first Variance Testing Period shall cover the period commencing with the Petition Date through the Variance Testing Date occurring on November 3, 2023; (ii) the second Variance Testing Period shall cover the period commencing with the Petition Date through the Variance Testing Date occurring on November 10, 2023; (iii) the third Variance Testing Period shall cover the period commencing with the Petition Date through the Variance Testing Date occurring on November, 17, 2023; (iv) the fourth Variance Testing Period shall cover the period commencing with the Petition Date through the Variance Testing Date occurring on November 24, 2023; (v) the fifth Variance Testing Period shall cover the period commencing with the Petition Date through the Variance Testing Date occurring on December 1, 2023; (vi) the sixth Variance Testing Period shall cover the period commencing with the Petition Date through the Variance Testing Date occurring on December 8, 2023; and (vii) the seventh Variance Testing Period shall cover the period commencing with the Petition Date through the Variance Testing Date occurring on December 15, 2023.

**Exhibit A**

Initial Approved Budget

**Prima Wawona**
**Cash Collateral Budget**
*$'s in 000's*

| ($000s)<br>Week #<br>Week Beginning<br>Week Ending | Q4<br>Week 1<br>10/14/2023<br>10/20/2023 | Q4<br>Week 2<br>10/21/2023<br>10/27/2023 | Q4<br>Week 3<br>10/28/2023<br>11/3/2023 | Q4<br>Week 4<br>11/4/2023<br>11/10/2023 | Q4<br>Week 5<br>11/11/2023<br>11/17/2023 | Q4<br>Week 6<br>11/18/2023<br>11/24/2023 | Q4<br>Week 7<br>11/25/2023<br>12/1/2023 | Q4<br>Week 8<br>12/2/2023<br>12/8/2023 | Q4<br>Week 9<br>12/9/2023<br>12/15/2023 |
|---|---|---|---|---|---|---|---|---|---|
| **Receipts** | | | | | | | | | |
| Total Receipts | 6,313 | 5,186 | 3,952 | 8,124 | 6,484 | 5,839 | 5,487 | 4,612 | 3,180 |
| **Disbursements** | | | | | | | | | |
| Payroll Disbursements | 2,465 | 3,067 | 1,379 | 994 | 1,556 | 699 | 1,881 | 1,081 | 2,005 |
| Operating Disbursements | 4,480 | 2,952 | 3,472 | 2,042 | 1,192 | 918 | 3,034 | 2,221 | 4,953 |
| **Total Operating Disbursements** | **6,945** | **6,019** | **4,851** | **3,035** | **2,748** | **1,617** | **4,916** | **3,302** | **6,958** |
| *Debt Service* | - | - | - | - | 309 | - | - | - | 309 |
| *Debtor Restructuring Fees Reserve* | - | 4,284 | 534 | 458 | 128 | 458 | 458 | 458 | 631 |
| *Other Restructuring Fees* | 305 | 105 | 105 | 105 | 1,045 | 105 | 105 | 105 | 105 |
| **Non-Operating Disbursements** | **305** | **4,389** | **639** | **563** | **1,482** | **563** | **563** | **563** | **1,045** |
| **Total Disbursements** | **7,250** | **10,408** | **5,490** | **3,598** | **4,230** | **2,180** | **5,479** | **3,865** | **8,003** |
| **Net Cash Flow** | **(937)** | **(5,222)** | **(1,538)** | **4,525** | **2,254** | **3,659** | **8** | **747** | **(4,823)** |
| **Cash Rollforward** | | | | | | | | | |
| Beginning Cash[1] | 22,000 | 21,063 | 15,842 | 14,304 | 18,829 | 21,082 | 24,741 | 24,749 | 25,496 |
| *Receipts* | 6,313 | 5,186 | 3,952 | 8,124 | 6,484 | 5,839 | 5,487 | 4,612 | 3,180 |
| *Disbursements* | (7,250) | (10,408) | (5,490) | (3,598) | (4,230) | (2,180) | (5,479) | (3,865) | (8,003) |
| **Ending Cash** | **21,063** | **15,842** | **14,304** | **18,829** | **21,082** | **24,741** | **24,749** | **25,496** | **20,673** |
| *Cumulative Net Cash Flow Subject to Variance Testing* | | | *(7,181)* | *(2,551)* | *747* | *4,511* | *4,624* | *5,476* | *758* |
| Memo: Restructuring Fees Reserve | - | 4,284 | 4,818 | 5,276 | 5,404 | 5,862 | 6,320 | 6,778 | 7,409 |

*Note:*
1. Week 1 beginning cash balance is estimated