## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-11721 (LSS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## MOTION OF DEBTORS FOR ENTRY
## OF AN ORDER (I) APPROVING BIDDING
## PROCEDURES IN CONNECTION WITH THE
## SALE OF SUBSTANTIALLY ALL OF THE DEBTORS'
## ASSETS, (II) APPROVING THE FORM AND MANNER OF
## NOTICE THEREOF, (III) SCHEDULING AN AUCTION AND SALE
## HEARING, (IV) APPROVING PROCEDURES FOR THE ASSUMPTION
## AND ASSIGNMENT OF CONTRACTS, (V) APPROVING THE SALE OF THE
## DEBTORS' ASSETS FREE AND CLEAR, AND (VI) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

respectfully state as follows in support of this motion:[2]

### Preliminary Statement

1.     The Debtors commenced these chapter 11 cases to pursue and consummate one or

more value-maximizing sale transactions (the "Sale Transaction"). The Debtors file these

proposed bidding procedures with the support of their prepetition lenders in hand in the form of a

support agreement among lenders (the "LSA" and the lenders party thereto, the "LSA Parties").

Importantly, the LSA contemplates that the LSA Parties will support a marketing and sale

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 937.

[2]   A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of John Boken, Interim Chief Executive Officer of MVK FarmCo LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not defined in this motion have the meanings ascribed to them in the First Day Declaration.

process for the sale of some or all of the Debtors' assets (collectively, the "<u>Assets</u>") in one or more transactions, collectively, as a going-concern (the "<u>WholeCo Sale</u>"), with an opening bid for such collective Assets of $275 million.

2.      To that end, as described more fully in the First Day Declaration, the Debtors intend to pursue and consummate one or more value-maximizing sale transactions or, in the alternative, to negotiate and effectuate an equitization transaction with the Debtors' prepetition secured lenders pursuant to a plan of reorganization. To implement the transaction process, the Debtors intend to pursue a dual-track sale and confirmation process. The Debtors intend to file a proposed chapter 11 plan in the coming weeks that will include a toggle structure to enable the Debtors with flexibility to pivot to either the Sale Transaction or the Plan Transaction— whichever path represents the value-maximizing resolution to these chapter 11 cases. The proposed timeline for the sale process provides sufficient time to continue canvassing the market for potential bidders and is appropriate under the circumstances. Given that the timeline and procedures contemplated herein were heavily negotiated with the LSA Parties and that by late-December, liquidity forecasts project the Debtors' cash flow will turn from collecting receivables to investing in next season's harvest, it is essential that the Debtors pursue the Sale Transaction as quickly as possible.

3.      The key dates associated with the sale process follow, provided the Debtors may pursue confirmation of a chapter 11 plan in parallel with the competitive sale process.

- **<u>November 14, 2023</u>**: Stalking Horse Bidder Designation

- **<u>November 17, 2023</u>**: Bid Deadline

- **<u>November 21, 2023</u>**: Sale Transaction Objection Deadline

- **<u>November 22, 2023</u>**: Cure Notice Objection Deadline

- **<u>November 28, 2023</u>**: Auction

- **December 1, 2023**:  Adequate Assurance Objection Deadline

- **December 6, 2023**:  Sale and, in the event of a sale of all or substantially all of the Debtors' Assets, Confirmation Hearing

4.      If approved, the proposed Bidding Procedures (as defined below) will enable the Debtors to expeditiously sell the Assets and emerge from chapter 11 shortly after.  As set forth in further detail below, the Bidding Procedures and the related relief requested in this motion are in the best interests of the Debtors' estates and their stakeholders.  Accordingly, the Debtors respectfully request that the Court grant this motion.

## Relief Requested

5.      The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Bidding Procedures Order"), (a) approving the Bidding Procedures attached to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures"),[3] (b) approving the manner of the notice of the Auction (as defined below), if any, and Sale Transaction (the "Sale Notice") attached to the Bidding Procedures Order as Exhibit 2, (c) establishing certain dates and deadlines, including the Bid Deadline and Auction Date (each as defined below), (d) approving the assumption and assignment procedures, including the cure notice (the "Cure Notice") attached to the Bidding Procedures Order as Exhibit 3; (e) approving the form of the notice of successful bidder (the "Successful Bidder Notice") attached to the Bidding Procedures Order as Exhibit 4; and (f) granting related relief.

6.      Additionally, the Debtors intend to seek entry of an order (the "Sale Order") at the conclusion of the Sale Hearing (as defined below) (a) approving the Sale Transaction and entry into that certain asset purchase agreement with the Successful Bidder (as defined below),

---

[3]     Capitalized terms used herein but not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures.

30866585.1

(b) authorizing the sale of all or substantially all of the Assets free and clear of liens, claims, encumbrances, and other interest to the extent set forth in the Successful Bid (as defined below), (c) authorizing and approving assumptions and assignment of the Debtors' applicable executory contracts and unexpired leases, and (d) granting related relief.  The Debtors will file a proposed form of Sale Order in advance of the Sale Hearing.

## Jurisdiction and Venue

7.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

8.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

9.    The bases for the relief requested herein are sections 105(a), 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rules 2002, 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 2002-1, 6004-1, and 9013-1.

## Background

10.    The Debtors are the United States' largest provider of stone fruit, operating an integrated network of farms, ranches, and packaging facilities.    Founded in 1999 and

30866585.1

headquartered in Fresno, California, the Debtors cultivate approximately 18,000 acres of land nestled throughout the San Joaquin Valley. Each year, the Debtors employ over 8,000 farmers, harvesters, warehousers, packers, and shippers who, together, grow, harvest, and sell premium-quality, fresh stone fruits and tree fruit, including peaches, nectarines, plums, and unique hybrids, such as pluots. The Debtors' reputation for quality has allowed it to establish strong partnerships with blue chip customers throughout the United States and internationally, and its products can be found in brand name grocery stores, supermarkets, and specialty markets worldwide.

11.     On October 13, 2023 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Concurrently with the filing of this motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

## Sale Process Overview

### I.      Prepetition Sale and Marketing Process.

12.     The Debtors ran an extensive sale and marketing process prior to the Petition Date. Houlihan Lokey, Inc. ("Houlihan Lokey"), the Debtors' investment banker, initiated outreach to 136 potential counterparties beginning on March 1, 2023, through the Petition Date. These included forty-two strategic purchasers, eighty-one financial purchasers, and thirteen sale leaseback parties. Seventy-six parties executed nondisclosure agreements ("NDAs") and were

provided access to the confidential information memorandum, a data room, and the bid process letter during this period.  Thirteen parties involved in the initial sale process submitted letters of interest ("<u>LOIs</u>," and such parties, the "<u>LOI Parties</u>") on or before April 19, 2023.  Certain of the LOIs contemplated a purchase of the entire Company and others contemplated a purchase of various subsets of the Assets.

13.     In the intervening weeks, the LOI Parties received access to substantial diligence, including extensive, in-person and subsequent telephonic meetings with the Debtors' executive management team and financial advisors, tours of the Debtors' facilities and farming operations, evaluation of the Company's historical financial performance and current year's financial performance, analysis of detailed block / ranch level historical and projected yield information and projected capital expenditure requirements.  In some cases, the LOI Parties negotiated with the Debtors and their advisors, including Houlihan Lokey, on the terms of potential sale transactions, including structures which contemplated a purchase of the entire Company and/or various structured transaction alternatives.  In some cases, such negotiations included input from or direct discussions with the Debtors' prepetition secured lenders and their advisors.

14.     Notwithstanding the Debtors' better-than-expected sales and revenue and the interest expressed in the Debtors' businesses, by the middle of June 2023, each of the LOI Parties determined not to pursue a purchase of all or a portion of the Debtors' assets at that time, though some LOI Parties indicated continuing interest as the stone fruit season progressed toward its conclusion.  At that point in the season, the Debtors had exceeded performance projections significantly enough to obviate an urgent need to access additional near-term liquidity.  By the week of July 10, 2023, due to the onset of the harvest season, the Debtors had

become cash flow positive and were able to both operate the Debtors' business and to service their obligations under the Bridge Facility in the ordinary course.

15.     In light of ongoing interest from certain of the LOI Parties and increased interest from certain other parties, the Debtors determined to continue their sale and marketing processes later in the season.  To that end, Houlihan Lokey contacted or re-contacted parties, many of which actively conducted diligence related to a potential transaction and engaged in management presentations.  In the second round of outreach, the Debtors received four additional written indications of interest from such interested parties and several other verbal indications of interest concerning participation in a court-administered 363 sale process.  In consultation with the Consultation Parties, the Debtors and their advisors determined that the value maximizing path at this juncture, based on market feedback and third-party interest, is to initiate these chapter 11 cases to implement an in-court sale process or, alternatively, an equitization transaction whereby the Debtors' prepetition secured lenders take ownership of the Debtors' businesses.  In either scenario, the Debtors intend to confirm a chapter 11 plan that represents a value-maximizing outcome.

16.     In total, since initiating outreach to potential sale parties in early March 2023, of the 136 parties that were contacted by Houlihan Lokey or contacted Houlihan Lokey and/or the Debtors, seventy-six parties executed NDAs and eighteen parties submitted LOIs for all of the Assets or subsets of the Assets.  Given the universe of potential bidders that have been contacted and that engaged in the Debtors' extensive prepetition marketing process, a post-petition marketing process beyond what is requested in the Bidding Procedures Motion is unlikely to yield higher value and may actually reduce recovery due to the timing of the 2024 season and cash flow constraints.

30866585.1

## II.    Key Dates and Deadlines.

17.    Below is a summary of the proposed key dates and deadlines showing an illustrative timeline assuming a November 3, 2023 Bidding Procedures Hearing.[4]

| Event | Date | Description |
|---|---|---|
| Bidding Procedures Objection Deadline | October 27, 2023 at 4:00 p.m., prevailing Eastern Time | Deadline by which objections to the Bidding Procedures must be filed with the Court and served so as to be **_actually received_** by the appropriate notice parties (the "Objection Deadline"). |
| Bidding Procedures Hearing | November 3, 2023 | Date for the hearing to consider the approval of the Bidding Procedures. |
| Deadline to Serve the Sale Notice and Publish the Publication Notice | November 7, 2023 (or as soon as reasonably practicable thereafter) | Deadline by which the Debtors shall serve the Sale Notice by first-class mail upon the parties specified in this Motion and publish the Publication Note in _The Packer_ and _USA Today_ (national edition). |
| Deadline to Serve the Cure Notice | November 8, 2023 (or as soon as reasonably practicable thereafter) | Deadline by which the Debtors shall file and serve the initial Cure Notice. |
| Stalking Horse Bidder Designation | November 14, 2023 at 5:00 p.m., prevailing Eastern Time | Deadline by which the Debtors must designate a Stalking Horse Bidder (if the Debtors so choose to designate a Stalking Horse Bidder). |
| Stalking Horse Objection Deadline | No later than 1 day after the filing of the Stalking Horse Notice (as defined below) at 4:00 p.m., prevailing Eastern Time | If a Stalking Horse Bidder is designated, deadline by which objections to the bid protections set forth in the Stalking Horse Notice or the form of Stalking Horse Order must be filed with the Court and served so as to be **_actually received_** by the appropriate notice parties (the "Stalking Horse Objection Deadline"). |
| Bid Deadline | November 17, 2023 at 5:00 p.m., prevailing Eastern Time | Deadline for when the Debtors must **_actually receive_** binding bids from parties. |

---

[4]4 This timeline is illustrative and subject in all respects to the Court's availability.

| Event | Date | Description |
|---|---|---|
| Sale Transaction Objection Deadline | November 21, 2023 at 4:00 p.m., prevailing Eastern Time | Deadline by which general objections to the sale must be filed with the Court and served so as to be ***actually received*** by the appropriate notice parties (the "<u>Sale Transaction Objection Deadline</u>"). |
| Assumption and Assignment Objection Deadline | November 22, 2023 | Deadline for parties to object to a proposed assumption and assignment (the "<u>Assumption and Assignment Objection</u>"). |
| Auction (if Necessary) | November 28, 2023 at 9:00 a.m., prevailing Central Time / 10:00 a.m., prevailing Eastern Time | Date for when an Auction for the Assets will be conducted, if necessary. The Auction will be conducted at the office of Kirkland & Ellis LLP, 300 N. LaSalle Dr., Chicago, IL 60654 or via remote video at the Debtors' election. |
| Deadline to file Successful Bidder Notice | November 29, 2023 at 4:00 p.m., prevailing Eastern Time (or as soon as reasonably practicable after the close of the Auction) | Deadline by which the Debtors will file with the Court the Successful Bidder Notice. |
| Adequate Assurance Objection Deadline | December 1, 2023, at 4:00 p.m., prevailing Eastern Time | Deadline for parties to object to the Sale Transaction, but solely as to the adequate assurance of future performance of the Successful Bidder(s) (the "<u>Adequate Assurance Objection Deadline</u>"). |
| Sale Transaction Reply Deadline | December 4, 2023 at 12:00 p.m., prevailing Eastern Time | Deadline for the Debtors and any other parties supporting the Sale Transaction to file replies to Sale Transaction Objections or statements in support of the Sale Transaction. |
| Sale and, in the event of a sale of all or substantially all of the Debtors' Assets, Confirmation Hearing | December 6, 2023 | Date for a hearing (the "<u>Sale Hearing</u>") at which the Court will consider approving the sale of the Assets to one or more prospective purchasers, pursuant to a sale order or a chapter 11 plan. |

18.     The Debtors believe that the proposed timeline maximizes the prospect of receiving the highest or otherwise best offer(s) without unduly prejudicing these chapter 11 estates.  To further ensure that the Debtors' proposed sale process maximizes value to the benefit of the Debtors' estates, the Debtors will use the time in the lead up to and following the entry of the Bidding Procedures Order to actively market their businesses in an attempt to solicit higher or otherwise better bids.  The Debtors believe the relief requested in this motion is in the best interests of their creditors, their other stakeholders, and all other parties in interest, and should be approved.

## II.     The Bidding Procedures.

19.     To optimally and expeditiously solicit, receive, and evaluate bids in a fair and accessible manner, the Debtors have developed and proposed the Bidding Procedures, attached as Exhibit 1 to the Bidding Procedures Order.  The following describes the salient points of the Bidding Procedures and discloses certain information required pursuant to Local Rule 6004-1:[5]

(a)     **Bid Requirements (Local Bankr. R. 6004-1(c)(i)(A), (B))**.  Any bid by an Acceptable Bidder must be submitted in writing and satisfy the following requirements, in each case, to the satisfaction of the Debtors:

(i)     *Purpose.* All of the Debtors' right, title, and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests"), subject only to the Assumed Liabilities and Permitted Encumbrances (each as defined in the Modified APA (as defined below) of the applicable Successful Bidder), to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale(s) of the Assets with the same validity, force, effect, and priority as such Interests applied against

---

[5]   This summary is qualified in its entirety by the Bidding Procedures attached as Exhibit 1 to the Bidding Procedures Order.  All capitalized terms that are used in this summary but not otherwise defined herein shall have the meanings given to such terms in the Bidding Procedures.  To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

the Assets as of the Petition Date, subject to any rights, claims, and defenses of the Debtors.

(ii)  ***Executed Agreement.***  Each Bid must include (a) an offer letter, signed by an authorized representative of the Bidder, pursuant to which the Bidder offers to consummate the Sale Transaction contemplated by such Bid on the terms set forth in the Modified APA together with (b) an asset purchase agreement, which must be based on the form asset purchase agreement supplied by the Debtors in a designated data room (the "Form APA"), or, if applicable, the Stalking Horse APA (as defined below), signed by an authorized representative of the Bidder, pursuant to which the Bidder agrees to consummate such Transaction for the Assets referenced therein (together with all ancillary documents and schedules contemplated thereby, a "Modified APA").  A Bid must also include a redline of the Modified APA marked against the Form APA (and all applicable ancillary documents and schedules contemplated thereby) to show all changes requested by the Bidder with respect to the Form APA.  Each Modified APA must provide a commitment to close the Sale Transaction contemplated by such Modified APA within a time frame acceptable to the Debtors (determined in consultation with the Consultation Parties) after all closing conditions set forth in such Modified APA are met (other than those which are to be satisfied at the closing of the transactions contemplated by such Modified APA).

(iii)  ***Good Faith Deposit.***  Each Bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the cash purchase price contained in the Modified APA, before any adjustments to the purchase price, to an escrow account to be identified and established by the Debtors (the "Good Faith Deposit").  To the extent a Qualified Bid is modified before, during, or after the Auction in any manner that increases the cash purchase price contemplated by such Qualified Bid, the Debtors reserve the right (in consultation with the Consultation Parties) to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the increased purchase price.

(iv)  ***Good Faith Offer.***  Each Bid must represent an irrevocable, binding, good faith, and *bona fide* offer to purchase some or all of the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Back-Up Bid (each as defined herein).

(v)  ***Minimum Bid***.  Each Bid for all or substantially all of the Assets must consist of cash consideration to be paid at the closing of the transactions contemplated by the Modified APA in an amount

equal to at least $275,000,000. Each Bid must set forth the total purchase price for such Bid.

(vi) **Joint Bids.** The Debtors will be authorized to approve (in consultation with the Consultation Parties) joint Bids in their reasonable discretion on a case-by-case basis.

(vii) **Purchased Assets and Assumed Liabilities.** Each Bid must clearly provide which of the Assets the Bidder seeks to acquire, and which of the Assumed Liabilities the Bidder agrees to assume. With respect to any bids for less than all or substantially all of the Debtors' Assets, the Debtors reserve the right to request an allocation of the purchase price among the Assets the Bidder seeks to acquire and the Assumed Liabilities the Bidder agrees to assume.

(viii) **Designation of Assigned Contracts and Leases.** Subject to the terms of the Modified APA, each Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to be assumed and assigned to the Bidder at the closing of the Sale Transaction contemplated by such Bid.

(ix) **Corporate Authority.** Each Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate or similar governance authorization of the Bidder to consummate the proposed Sale Transaction; *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Sale Transaction by the equity holder(s) of such Bidder and any other governing body of the Bidder that is required to approve the Sale Transaction.

(x) **Disclosure of Identity of Bidder.** Each Bid must fully disclose the identity of each entity (including any equity owners, sponsors, or co-investors) that will be bidding for or purchasing the Assets or otherwise directly or indirectly participating in connection with such Bid.

(xi) **Proof of Financial Ability to Perform.** Each Bid must include written evidence that the Debtors conclude, in consultation with the Consultation Parties, demonstrates that the Bidder has the necessary financial ability to (i) timely close the Sale Transaction contemplated by such Bid within a time frame acceptable to the Debtors (determined in consultation with the Consultation Parties) after all closing conditions set forth in the Modified APA are met and (ii) provide adequate assurance of future performance under all

contracts to be assumed and assigned in such Sale Transaction. Such information must include, *inter alia*, the following:

(A)     Contact names and numbers for verification of financing sources, if any;

(B)     Written evidence of the Bidder's internal financial resources and ability to finance its Bid with cash on hand, available lines of credit, uncalled capital commitments or otherwise available funds (including through the posting of an irrevocable letter of credit or customary debt or equity financing commitment letters that comply with the requirements of this sub-paragraph 19(a)(xi)(B) or sub-paragraph 19(a)(xi)(C) below, as applicable, in each case, from reputable financial institutions (as determined in the Debtors' reasonable discretion in consultation with the Consultation Parties)) in an aggregate amount sufficient to pay the cash purchase price contemplated by such Bid, to pay for cure costs for contracts to be assumed and assigned in the Sale Transaction, and to satisfy all other obligations of the Bidder pursuant to the Modified APA ("Bidder's Obligations"); *provided* that, if the Bidder is an entity that is specially formed for the purpose of effectuating the Sale Transaction or if the Bidder intends to raise any equity financing to fund any portion of Bidder's Obligations, then the Bidder must furnish to the Debtors a fully executed and effective equity commitment letter or guarantee ("Bidder Support") (which Bidder Support shall remain outstanding until at least sixty (60) days after the date of entry of the Sale Order (or the "outside date" in the Modified APA, if later), subject to a potential further extension as set forth herein or therein) from its equity holders or other affiliated entities with respect to the portion of Bidder's Obligations that are not to be paid with cash on hand (which Bidder Support may not be subject to any conditions other than the satisfaction of the conditions set forth in the Modified APA and shall include third party beneficiary language in favor of the Debtors entitling the Debtors to enforce such Bidder Support directly against the counterparties) and provide written evidence that its equity holders or other affiliated entities providing the Bidder Support have the resources and ability to finance such portion of the Bidder's Obligations;

(C)     Without limiting the requirements of sub-paragraph 19(a)(xi)(B) above, if the Bidder intends to raise any debt financing to fund any portion of the Bidder's Obligations,

the Bid must include fully executed and effective debt financing commitment letter(s), which letter(s) shall (i) not be subject to any internal approvals, credit committee approvals or diligence conditions, (ii) be in customary form, and (iii) remain outstanding until sixty (60) days after the date of entry of the Sale Order (subject to a potential further extension as set forth herein); and

(D)     Any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors (in consultation with the Consultation Parties) demonstrating that such Bidder (or, if the Bidder is an entity formed for the purpose of making a Bid, its Bidder Support) has the ability to close the Sale Transaction on the terms set forth in the Modified APA.

(xii)    **_Adherence to Bidding Procedures._**  By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

(xiii)   **_Regulatory and Third-Party Approvals._**  Each Bid must set forth each government, licensing, regulatory, and other third-party approval or filing required to be obtained or made by the Bidder or its Bidder Support, and each waiting period required to have expired or terminated, for the Bidder to consummate the Sale Transaction, and the time period within which the Bidder expects to receive such approvals, to make such filings or such waiting periods to expire or terminate (and in the case that receipt of any such approval, the making of any such filing, or the expiration or termination of any such waiting period is expected to take more than thirty (30) days following execution and delivery of the Modified APA, those actions the Bidder will take to ensure receipt of such approval(s), the making of such filing(s) or the expiration or termination of such waiting period(s) as promptly as possible).

(xiv)    **_Contact Information and Affiliates._**  Each Bid must provide the contact information for the Bidder and full disclosure of any affiliates of the Bidder.

(xv)     **_Contingencies and Other Provisions._**  Each Bid shall not contain any escrow arrangements, indemnities, or adjustments to the purchase price.  Without limiting the immediately preceding sentence, each Bid shall not include any conditions or contingencies relating to financing (including, for the avoidance of doubt, any conditionality, or limitations on specific performance, relating to any financing contemplated by

sub-paragraph 19(a)(xi)(C) above), internal approvals, or the absence of any material adverse effect.

(xvi) **_Contingencies Regarding Due Diligence._** Each Bid shall not include any conditions or contingencies relating to Due Diligence.

(xvii) **_Acknowledgement of Independent Review._** Each Bid must include a written acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the accuracy or completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the Modified APA.

(xviii) **_Irrevocable._** Each Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Bidder is not selected as the Back-Up Bidder;[6] *provided* that if a Bid is accepted as the Successful Bid[7] or the Back-Up Bid,[8] such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

(xix) **_Back-Up Bid._** Each Bid shall provide that the Bidder will serve as back-up bidder if the Bidder's Bid is selected as the next highest and best bid after the Successful Bid (as defined below) and will remain irrevocable in accordance with the terms and conditions of these Bidding Procedures (the "Back-Up Bid").

(xx) **_Consent to Jurisdiction._** Each Bidder and its Bidder Support (if applicable) must (i) consent to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Sale

---

[6] "Back-Up Bidder" means the Qualified Bidder(s) with the next highest and otherwise best Bid to the Successful Bid(s) at the Auction for the applicable Assets, as determined by the Debtors, in the exercise of their reasonable business judgment and after consulting with the Consultation Parties, will be designated as a back-up bidder.

[7] "Successful Bid" means the bid the Debtors shall select, in consultation with the Consultation Parties, that is the best Qualified Bid.

[8] "Back-Up Bid" means the Back-Up Bidder(s) initial Qualified Bid(s) (or if a Back Up Bidder submitted one or more Overbids at the Auction, such Back-Up Bidder's final Overbid).

30866585.1

Transaction, any Modified APA, or the construction and enforcement of documents relating to any Sale Transaction, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Sale Transaction, any Modified APA, or the construction and enforcement of documents relating to any Sale Transaction, and (iii) consent to the entry of a final order or judgment in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Modified APA, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

(xxi) ***Disclaimer of Break-Up Fees and Expense Reimbursement.*** Except as otherwise provided below with respect to a potential Stalking Horse Bidder (as defined below), each Bid must not, and must acknowledge that such Bid shall not, entitle the Bidder to any break-up fee, termination fee or similar type of payment, compensation or expense reimbursement (including legal fees) and, by submitting the Bid, the Bidder waives the right to pursue any administrative expense claim (including under a theory of substantial contribution) under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

(xxii) ***Acknowledgement of Remedies.*** Each Bid shall include a written acknowledgement from the Bidder that, in the event of the Bidders' breach of, or failure to perform under, the Modified APA, the Debtors and their estates shall be entitled to retain the Good Faith Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform, and pursue all other available legal and equitable remedies.

(xxiii) ***Acknowledgement of No Collusion.*** Each Bid shall include a written acknowledgement from the Bidder that it has not (i) engaged in any collusion with respect to the bidding or sale of any of the Assets described herein or (ii) taken any other action to prevent a transparent and competitive auction process.

(b) **The Auction.** If one or more Qualified Bids is received by the Bid Deadline, the Debtors will conduct an auction (the "Auction") to determine the highest and best Qualified Bid. The Auction, if any, will commence on or before **November 28, 2023 at 9:00 a.m. (prevailing Central Time) / 10:00 a.m. (prevailing Eastern Time)** in person at the office of Kirkland & Ellis LLP, 300 N LaSalle Dr., Chicago, IL 60654 or via remote video at the Debtors' election (the "Auction Date"). If held, the Auction proceedings will be transcribed.

(c)    **Bidding Increments (Local Bankr. R. 6004-1(c)(i)(C)).**  Any Overbid after and above the Auction Baseline Bid shall be made in increments valued at not less than $1,500,000.  Any credit bid of an Agent shall be treated as the same as cash (such that each dollar of such obligations that is credit bid shall be treated the same as a dollar of cash).

(d)    **Back-Up Bidder (Local Bankr. R. 6004-1(c)(i)(E)).**  If a Successful Bid is terminated for any reason prior to consummation of the Sale Transaction contemplated thereby (a "Successful Bid Failure"), the Debtors will be authorized, without further order of the Bankruptcy Court, to consummate the Sale Transaction contemplated by the applicable Back-Up Bid with the applicable Back-Up Bidder; *provided* that the Debtors shall provide prompt notice of such Successful Bid Failure to the Consultation Parties and the Debtors shall post a notice on the docket of the Chapter 11 Cases regarding the Successful Bid Failure and the consummation of such Sale Transaction with the applicable Back-Up Bidder.  In the case of a Successful Bid Failure, the Successful Bidder's deposit shall be forfeited to the Debtors or returned to the applicable Successful Bidder in accordance with the terms of the terminated Modified APA.  The Debtors, on their behalf and on behalf of each of their respective estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Back-Up Bidder following a Successful Bid Failure) in accordance with the terms of the Bidding Procedures, the Bidding Procedures Order, or the Modified APA, as applicable.

(e)    **Highest or Otherwise Best Bid.**  The determination of the highest and best Qualified Bid shall take into account any factors the Debtors in their reasonable business judgment, in consultation with the Consultation Parties, deem relevant to the value and certainty of the Qualified Bid to the Debtors' estates and may include, but are not limited to, the following: (i) the amount and nature of the consideration; (ii) the number, type, and nature of any changes to the Form APA requested by each Bidder, including the Assets acquired; (iii) the extent to which such modifications are likely to delay closing of the Sale Transaction contemplated by such Qualified Bid and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtors; (v) any contingencies or conditions to closing the Sale Transaction contemplated by such Qualified Bid; (vi) the likelihood of the Bidder's ability to close the Sale Transaction contemplated by such Qualified Bid and the timing thereof; (vii) the tax consequences of such Qualified Bid; and (viii) any other qualitative or quantitative factor that the Debtors deem reasonably appropriate under the circumstances, in consultation with the Consultation Parties (collectively, the "Bid Assessment Criteria").

(f)    **Reservation of Rights (Local Bankr. R. 6004-1(c)(i)(D)).**  Except as otherwise provided in the Bidding Procedures Order, the Debtors further

30866585.1

reserve the right as the Debtors may reasonably determine in their discretion, after consultation with the Consultation Parties, to be in the best interest of the Debtors' estates to: (i) determine which Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid (or Qualified Bids) is the highest and best bid and which is the next highest and best bid; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) impose additional terms and conditions with respect to all potential bidders; (vii) make non-material modifications to the Bidding Procedures; and (viii) implement additional procedural rules with respect to the conduct of the Auction that the Debtors determine (together with the Bidding Procedures, the "Auction Rules"), in their reasonable business judgment, will better promote the goals of the bidding process and are not inconsistent with any Bankruptcy Court order, the Bankruptcy Code, or any rights of the Prepetition Agents under the Bidding Procedures; *provided* that nothing herein shall limit any party in interest's right to file an objection with the Bankruptcy Court with respect to any Auction Rules (other than the Bidding Procedures).

(g)  **Potential Stalking Horse.**  The Debtors may, pursuant to these Bidding Procedures, with the prior written consent of the Prepetition Agents (at the direction of the Required Lenders under (and as defined in) each of the Prepetition Credit Agreements), (i) designate one or more Qualified Bidders that submit a Qualified Bid for all or any portion of the Assets a stalking horse bidder (the "Stalking Horse Bidder"), whose Qualified Bid shall serve as the stalking horse bid ("Stalking Horse Bid"), and (ii) execute, subject to higher or otherwise better offers consistent with these Bidding Procedures, one or more purchase agreements memorializing the proposed transaction set forth in the Stalking Horse Bid (a "Stalking Horse APA"), which may include a break-up fee of or no more than 3.0% of the total cash consideration payable under such Stalking Horse APA, inclusive of any expense reimbursement (the "Bid Protections") **on or before November 14, 2023 at 5:00 p.m.** (prevailing Eastern Time) (the "Stalking Horse Bidder Designation").  To the extent the Debtors designate more than one Stalking Horse Bidder pursuant to the Bidding Procedures, no two Stalking Horse Bidders will be designated with respect to any of the same Assets.  The Debtors shall not pay Bid Protections to any Stalking Horse Bidder on account of the portion of the purchase price of such Bid that is a credit bid, assumption of liabilities, or other non-cash (or cash-equivalent) consideration, nor provide any Bid Protections to an insider or affiliate of the Debtors.

(i)  To the extent the Debtors, consistent with these Bidding Procedures, determine to offer Bid Protections to any Stalking Horse Bidder, the Debtors shall disclose such Bid Protections in a

corresponding notice designation such Stalking Horse Bidder (the "Stalking Horse Notice"). A Stalking Horse Notice, if filed, shall also include (a) a copy of the Stalking Horse APA; (b) an appropriate declaration in support of the proposed Bid Protections; and (c) a proposed form of an order approving the Bid Protections (the "Stalking Horse Order"). Any objection to (i) the Bid Protections set forth in the Stalking Horse Notice, or (ii) the form of Stalking Horse Order (a "Stalking Horse Objection"), shall be filed **no later than one day after the filing of the Stalking Horse Notice at 4:00 p.m. (prevailing Eastern Time);** *provided*, *however*, any such Stalking Horse Objection shall be limited to whether the Stalking Horse Notice and Stalking Horse Order are consistent with the Bid Protections provided for herein. If a timely Stalking Horse Objection is filed, the Debtors are authorized to seek an expedited hearing with respect to the Stalking Horse Objection on **not less than three (3) calendar days' notice**. Absent any timeline Stalking Horse Objection, the Court may enter the Stalking Horse Order without further hearing.

20.     Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value, and, as such, do not impair the Debtors' ability to consider all Qualified Bids, and, as noted, preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize value for the Debtors' estates.

### III.     Form and Manner of Sale Notice.

21.     Upon entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors will cause the Sale Notice, substantially in the form attached as Exhibit 2 to the Bidding Procedures Order, to be served on the following parties or their respective counsel, if known: (a) the U.S. Trustee; (b) counterparties to the executory contracts and unexpired leases of nonresidential property (the "Contract Counterparties"), if known; (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or interest in the Assets; (d) the Internal Revenue Service; (e) all applicable state and local taxing authorities; (f) all the Debtors' other creditors; (g) each governmental agency that is an interested party with respect to the proposed Sale Transaction; and (h) all

parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002.

22.    Within two business days after entry of the Bidding Procedures Order, or as soon as reasonable practicable thereafter, the Debtors will provide notice of the Sale Hearing through publication of the Sale Notice on their restructuring website, https://cases.stretto.com/primawawona (the "Case Website") and will also publish the Sale Notice, with any modifications necessary for ease of publication (the "Publication Notice"), once in *The Packer* and *USA Today* (national edition), to provide notice to any other potential interested parties.

23.    The Debtors respectfully submit that the Sale Notice and Publication Notice are reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale Transaction, including:   (a) the date, time, and place of the Auction; (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale Transaction and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) a description of the Sale Transaction as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale Transaction proceeds; and (f) notice of the proposed assumption and assignment of the Contracts to the Successful Bidder arising from the Auction, if any.

24.    The Debtors further submit that notice of this motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Notice and the Cure Notice substantially in the form attached as Exhibit 3 to the Bidding Procedures Order (where applicable), as provided for herein, constitutes good and adequate notice of the Sale Transaction and the proceedings with respect thereto in compliance with, and satisfaction of, the

applicable requirements of Bankruptcy Rule 2002.  The Debtors propose that no other or further notice of the Sale Transaction shall be required.  Accordingly, the Debtors request that this Court approve the form and manner of the Sale Notice.

**IV.    Form and Manner of the Successful Bidder Notice.**

25.    The Debtors are seeking approval of the form of the Successful Bidder Notice, as attached to the Bidding Procedures Order as Exhibit 4, to be filed and served by November 29, 2023 at 4:00 p.m. (prevailing Eastern Time), or as soon as reasonably practicable after the close of the Auction.  The Debtors respectfully submit that the Successful Bidder Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale Transaction, including:  (a) the identity of the Successful Bidder and any Back-Up Bidder; and (b) the amount of the Successful Bid and any Back-Up Bids.  The Debtors will also publish the Successful Bidder Notice on the Case Website.

**V.    Summary of the Assumption Procedures.**

26.    The Debtors are also seeking approval of certain procedures to facilitate the fair and orderly assumption and assignment of the Contracts in connection with the Sale Transaction (the "Assumption Procedures").    Because the Bidding Procedures Order sets forth the Assumption Procedures in detail, they are not restated herein.    Generally, however, the Assumption Procedures (a) outline the process by which the Debtors may serve notice to certain Contract Counterparties regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of their right and the procedures to object thereto, and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Contracts to the extent necessary.

## Basis for Relief

**I.      The Relief Sought in the Bidding Procedures Order is in the Best Interests of the Debtors' Estates and Should Be Approved.**

27.      Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [Debtor] to show that a sound business purpose justifies such actions.  If the [Debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale.") (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'" (internal citations omitted)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (quoting *In re Schipper*); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656–7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

28.      The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.  *See In re Adams Res. Expl. Corp.*, No. 17-10866 (KG), at 12 (Bankr. D. Del. 2017) ("The relief requested in the Sale Motion is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate and its creditors."); *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir 2004) (debtor-in-possession "had a fiduciary duty to protect and maximize the estate's assets"); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of

procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564–65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted).

29.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g.*, *In re Dura Auto, Sys.,* 379 B.R. 257, 263 (Bankr. D. Del. 2007); *Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

30.    The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for the Assets.  The proposed Bidding Procedures will allow the Debtors to conduct the sale process in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best package for the Assets and who can demonstrate the ability to close a transaction.  Specifically, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties

with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.

31.     At the same time, the Bidding Procedures provide the Debtors with a robust opportunity to consider competing bids and select the highest or otherwise best offer for the completion of the Sale Transaction.  As such, creditors of the Debtors' estates can be assured that the consideration obtained will be fair and reasonable and at or above market.  Accordingly, for all of the foregoing reasons, the Debtors believe that the Bidding Procedures:  (a) will encourage robust bidding for the Assets; (b) are consistent with other procedures previously approved by courts in this District; and (c) are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings and should be approved.

32.     The Debtors submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with other procedures previously approved by this District.  *See e.g., In re Yellow Corporation,* No. 23-11069 (CTG) (Bankr. D. Del. Sept. 15, 2023); *In re PGX Holdings, Inc.*, No. 23-10718 (CTG) (Bankr. D. Del. Aug. 4, 2023); *In re SiO2 Med. Prods., Inc.*, No. 23-10366 (JTD) (Bankr. D. Del. Apr. 25, 2023); *In re Lucira Health, Inc.*, No. 23-10242 (MFW) (Bankr. D. Del. Mar. 27, 2023); *In re Starry Group Holdings, Inc.*, No. 23-10219 (KBO) (Bankr. D. Del. Mar. 21, 2023).

**II.     The Form and Manner of the Sale Notice Should Be Approved.**

33.     Pursuant to Bankruptcy Rule 2002(a), the Debtors are required to provide creditors with 21 days' notice of the Sale Hearing.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the relief requested herein.

34.     As noted above, by November 7, 2023, or as soon as reasonably practicable thereafter, the Debtors will serve the Sale Notice upon the following parties or their respective counsel, if known: (a) the U.S. Trustee; (b) the Committee; (c) the Contract Counterparties; (d) all parties who have expressed a written interest in some or all of the Assets; (e) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (f) the Internal Revenue Service; (g) all applicable state and local taxing authorities; (h) all the Debtors' other creditors; (i) each governmental agency that is an interested party with respect to the proposed Sale Transaction; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors shall also publish an abbreviated version of the Sale Notice on the Case Website.

35.     In addition, by November 7, 2023, or as soon as reasonable practicable thereafter, the Debtors will provide notice of the Sale Hearing through publication of the Sale Notice on their restructuring website, https://cases.stretto.com/primawawona (the "Case Website") and will also publish the Sale Notice, with any modifications necessary for ease of publication (the "Publication Notice"), in *The Packer* and *USA Today* (national edition), to provide notice to any other potential interested parties.

36.     The Debtors submit that notice of this motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Notice as provided for herein, constitutes good and adequate notice of the Sale Transaction and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  Accordingly, the Debtors request that this Court approve the form and manner of the Sale Notice.

### III.     The Bid Protections Have a Sound Business Purpose and Should Be Approved.

37.     The Debtors are also seeking authority to designate one or more Stalking Horse Bidders and offer Bid Protections to each such Stalking Horse Bidder.  The use of a stalking horse in a public auction process for sales is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by "establish[ing] a framework for competitive bidding and facilitat[ing] a realization of that value."  *Interforum Holding LLC*, No. 11-CV-219, 2011 WL 2671254 at *1 n. 1 (E.D. Wis. July 7, 2011).  As a result, stalking horse bidders virtually always require break-up fees and, in many cases, other forms of bidding protections as an inducement for "setting the floor at auction, exposing [their] bid[s] to competing bidders, and providing other bidders with access to the due diligence necessary to enter into an asset purchase agreement."  *Id*. (citation omitted).  Thus, the use of bidding protections has become an established practice in chapter 11 cases.

38.     Indeed, break-up fees and other forms of bid protections are a normal and, in many cases, necessary component of significant sales conducted in chapter 11:  "Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . .  In fact, because the directors of a corporation have a duty to encourage bidding, break-up fees can be *necessary* to discharge the directors' duties to maximize value."  *Integrated Res.*, 147 B.R. at 659–60 (emphasis in original).  Specifically, bid protections "may be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking."  *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (citation and quotations omitted); *see also Integrated Res.*, 147 B.R. at 660–61 (noting bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid").

39.     As a result, courts routinely approve such bid protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate.  *See In re Energy Future Holdings Corp.*, 904 F.3d 298 (3d Cir. 2018) (holding that "[T]he allowability of break-up fees. . . depends upon the requesting party's ability to show that the fees [a]re actually necessary to preserve the value of the estate.") (citing *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 535 (3d Cir. 1999)) (alterations in original)*; In re Reliant Energy Channelview LP*, 594 F.3d 200, 206 (3d Cir. 2010) (same).   The allowance of the Bid Protections, in the event that the Debtors execute a Stalking Horse APA, is in the best interests of the Debtors' estates and their creditors, as any Stalking Horse APA will establish a floor for further bidding that may increase the consideration given in exchange for the Assets that are the subject of such Stalking Horse APA, which will inure to the benefit of the Debtors' estates.

40.     In the Third Circuit, bid protections, such as those proposed here, are subject to the general standard used for administrative expenses under section 503 of the Bankruptcy Code. *Energy Future*, 904 F.3d at 313 ("[T]ermination fees are subject to the same general standard used for all administrative expenses under 11 U.S.C. § 503."); *Women First Healthcare, Inc.*, 332 B.R. 115, at 121–23 (Bankr. D. Del. 2005) (holding that the general standard used for all administrative expenses applies to bid protections).   Thus, the "allowability of break-up fees, like that of other administrative expenses, depends upon the requesting party's ability to show that the fees were actually necessary to preserve the value of the estate." *Reliant Energy*, 594 F.3d at 206 (internal quotations omitted) (quoting *O'Brien,* 181 F.3d at 535).

41.     Here, the flexibility to offer Bid Protections—which may include a break-up fee that is limited under the Bidding Procedures to no more than 3.0% of the total cash consideration payable under a Stalking Horse APA, inclusive of any expense reimbursement—is a critical

component of the Debtors' ability to obtain the commitment of one or more Stalking Horse Bidders. To qualify as a Stalking Horse Bidder, a Qualified Bidder will need to have expended and will continue to expend time and resources negotiating, drafting, and performing due diligence activities necessitated by the Sale Transaction, despite the fact that its Qualified Bid will be subject not only to Court approval, but also to overbidding by third parties. Any Bid Protections offered to a Stalking Horse Bidder will have been negotiated in good faith and at arm's length and with significant give-and-take with respect to such Bid Protections. As a result, by preserving the flexibility to offer Bid Protections, the Debtors ensure that their estates can realize the benefit of a transaction with a Stalking Horse Bidder without sacrificing the potential for interested parties to submit overbids at the Auction.

42.    The Bid Protections provided to any Stalking Horse Bidder (a) are an actual and necessary cost and expense of preserving the Debtors' estates within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code, (b) are commensurate to the real and material benefits conferred upon the Debtors' estates by the Stalking Horse Bidder, and (c) are fair, reasonable, and appropriate, including in light of the size and nature of the proposed Sale Transaction, the commitments that have been made, and the efforts that have been and will be expended by any Stalking Horse Bidder.

43.    If the Court does not approve Bid Protections, the Debtors may not be able to induce any Qualified Bidders to serve as Stalking Horse Bidders, to the detriment of the Debtors' estates. Further, if the Debtors enter into a Stalking Horse APA with Bid Protections that were ultimately to be paid, it will necessarily be because the Debtors have received higher or otherwise superior offers for the applicable Assets. In short, the proposed Bid Protections constitute a "fair and reasonable percentage of the proposed purchase price" and are "reasonably

related to the risk, effort, and expenses of the prospective purchaser." *Integrated Res.*, 147 B.R. at 662.

44.     The Bid Protections are a sound exercise of the Debtors' business judgment and are in the best interests of the Debtors, their estates, and all stakeholders.  Accordingly, the Court should approve Bid Protections.

## IV.     The Assumption and Assignment Procedures Are Appropriate and Should Be Approved.

45.     As set forth above, the Sale Transactions contemplate the assumption and assignment of contracts to the Successful Bidder arising from the Auctions, if any.  In connection with this process, the Debtors believe it is necessary to establish the Assumption and Assignment Procedures by which:  (a) the Debtors and contract counterparties can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code; and (b) such counterparties can object to the assumption and assignment of contracts and/or related cure amounts.

46.     As set forth in the Bidding Procedures Order, the Debtors also request that any party that fails to object to the proposed assumption and assignment of any contract be deemed to consent to the assumption and assignment of the applicable contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the sale order, along with the cure amounts identified in the contract notice.  *See, e.g.*, *In re Boy Scouts of Am.*, 642 BR 504, 569 (Bankr. D. Del. 2022) ("The lack of objection of a [creditor] is also consensual for purposes of § 363 and, again, permissible under § 363(f)(2)."); *In re Tabone, Inc.*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (same); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

47.     The Debtors believe that the Assumption and Assignment Procedures are fair and reasonable, provide sufficient notice to parties to the executory contracts and leases, and provide

certainty to all parties in interest regarding their obligations and rights in respect thereof. Accordingly, the Debtors request that the Court approve the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

## V.    The Debtors Intend to Seek Approval of the Sale Transaction as an Exercise of Sound Business Judgment at the Sale Hearing.

48.    Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See, e.g., In re Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification' . . . ."); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (same); *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3rd Cir. 1986); *Stephens Indus., Inc. v. McClung*, 789 F. 2d 386, 390 (6th Cir. 1986); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc's, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999); *In re Delaware & Hudson Railway Co.*, 124 B.R. 169, 176 (D. Del. 1991). The *Delaware & Hudson Railway* court rejected the pre-Code "emergency" or "compelling circumstances" standard, finding the "sound business purpose" standard applicable and, discussing the requirements of that test under *McClung* and *Lionel*, observing:

> A non-exhaustive list of factors to consider in determining if there is a sound business purpose for the sale include: the proportionate value of the asset to the estate as a whole; the amount of elapsed time since the filing; the likelihood that a plan of reorganization will be proposed and confirmed in the near future; the effect of the proposed disposition of the future plan of reorganization; the amount of proceeds to be obtained from the sale versus appraised

values of the Property; and whether the asset is decreasing or increasing in value.

124 B.R. at 176.

49.     The *Delaware & Hudson Railway* court further held that "[o]nce a court is satisfied there is a sound business reason or an emergency justifying the pre-confirmation sale, the court must also determine that the trustee has provided the interested parties with adequate and reasonable notice, that the sale price is fair and reasonable and that the Buyer is proceeding in good faith." *Id*.

50.     Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith,' and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *In re Filene's Basement, LLC*, No. 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted); *Integrated Res.*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a debtor's management decisions.").

51.     At the Sale Hearing, the Debtors intend to demonstrate that a sound business purpose exists for the sale free and clear of all encumbrances, due and adequate notice has been provided, the purchase price reflects fair value, and the Sale Transaction has been proposed in good faith without collusion or undue influence, and relief under Bankruptcy Rules 6004(h) and 6004(d), among other things.  The Debtors reserve the right to submit supplemental materials, including declarations, in connection with the Sale Hearing.

## Notice

52.     The Debtors will provide notice of this motion to the following parties or their respective counsel:  (a) the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) Wilmington Trust National Association, as successor to Coöperatieve Rabobank U.A., New York Branch, as Prepetition PropCo Agent and counsel thereto; (d) Coöperatieve Rabobank U.A., New York Branch, as Bridge Administrative Agent and Bridge PropCo Collateral Agent and counsel thereto; (e) Royal Bank of Canada, as Bridge OpCo Collateral Agent and Prepetition OpCo Agent and counsel thereto; (f) Metropolitan Life Insurance Company, in its capacity as Prepetition Lender and a member of the SteerCo and counsel thereto; (g) Compeer Financial, PCA, in its capacity as Prepetition Lender and a member of the SteerCo and counsel thereto; (h) AgCountry Farm Credit Services as a member of the SteerCo and counsel thereto; (i) Paine Schwartz Partners and counsel thereto; (j) the office of the attorney general for each of the states in which the Debtors operate; (k) the United States Attorney's Office for the District of Delaware; (l) the Internal Revenue Service; and (m) any party that has requested notice pursuant to Bankruptcy Rule 2002.  As this motion is seeking "first day" relief, within two (2) business days of the hearing on this motion, the Debtors will serve copies of this motion and any order entered in respect to this motion as required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

53.     No prior request for the relief sought in this motion has been made to this or any other court.

**WHEREFORE**, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested in this motion and such other relief as is just and proper.

| | |
|---|---|
| Dated: October 13, 2023<br>Wilmington, Delaware | */s/ Joseph Barry*<br>Joseph Barry (Del. Bar No. 4221)<br>Kenneth J. Enos (Del. Bar No. 4544)<br>Andrew A. Mark (Del. Bar No. 6861)<br>**YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br>Rodney Square<br>1000 North King Street<br>Wilmington, Delaware 19801<br>Telephone:    (302) 571-6600<br>Facsimile:    (302) 571-1253<br>Email:            jbarry@ycst.com<br>                     kenos@ycst.com<br>                     amark@ycst.com<br><br>-and-<br><br>Ryan Blaine Bennett, P.C. (*pro hac vice* pending)<br>Whitney C. Fogelberg (*pro hac vice* pending)<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:    (312) 862-2200<br>Email:            ryan.bennett@kirkland.com<br>                     whitney.fogelberg@kirkland.com<br><br>*Proposed Co-Counsel for the Debtors and Debtors in Possession* |

**Exhibit A**

**Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | )  | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-11721 (LSS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |
| | ) | **Re: Docket No.** _ |

**ORDER (I) APPROVING BIDDING PROCEDURES
IN CONNECTION WITH THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS, (II) APPROVING THE FORM AND
MANNER OF NOTICE THEREOF, (III) SCHEDULING AN AUCTION AND
SALE HEARING, (IV) APPROVING PROCEDURES FOR THE ASSUMPTION
AND ASSIGNMENT OF CONTRACTS, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (the "Debtors") for the entry of an order (this "Order"), (a) approving the Bidding Procedures attached hereto as **Exhibit 1**, (b) approving the manner of the notice of the Auction, if any, and Sale Transaction (the "Sale Notice") attached hereto as **Exhibit 2**, (c) establishing certain dates and deadlines, including the Bid Deadline and Auction Date, (d) approving the assumption and assignment procedures, including the cure notice (the "Cure Notice") attached hereto as **Exhibit 3**, (e) approving the form and notice of successful bidder (the "Successful Bidder Notice") attached hereto as **Exhibit 4**; and (f) granting related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures or the Motion, as applicable.

*Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that this Court may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

**THE COURT HEREBY FINDS THAT**:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      Good and sufficient notice of the Motion, the Bidding Procedures, and the relief sought in the Motion has been given under the circumstances, and no other or further notice is

required except as set forth herein.  A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.      The bases for the relief requested in the Motion are sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, 11 U.S.C. §§ 101–1532 (the "<u>Bankruptcy Code</u>"), Rules 2002(a)(2), 6004, 6006, and 6007 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and rules 2002-1, 6004-1, and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "<u>Local Rules</u>").

D.      The Debtors have articulated good and sufficient reasons for this Court to: (i) approve the Bidding Procedures in connection with the sale of some or substantially all of the Assets, (b) approve the form and manner of notice thereof, (c) schedule an auction and sale hearing, (d) approve procedures for the assumption and assignment of Contracts, (e) approve the sale of the Assets free and clear, and (f) grant related relief.

E.      The Debtors have articulated good and sufficient business reasons for the Court to approve the bidding procedures attached hereto as **Exhibit 1** (the "<u>Bidding Procedures</u>").  The Bidding Procedures are fair, reasonable, appropriate, and are designed to maximize creditor recoveries from the consummation of the Sale Transaction and enable the Debtors to comply with the Acceptable Bidding Procedures (as defined in the LSA), and are consistent with the Debtors' exercise of their respective fiduciary duties under applicable law.  The Bidding Procedures were negotiated in good faith and at arm's-length and are reasonably designed to promote a competitive and robust bidding process to generate the greatest level of interest in the Assets.

F.      The Debtors have demonstrated a compelling and sound business justification for the Court to enter this Order and thereby:  (a) approve the Bidding Procedures in connection with the sale of some or substantially all of the Assets, (b) approve the form and manner of notice thereof as described in paragraph 7 herein (including the Sale Notice), (c) schedule an Auction and Sale Hearing, (d) approve procedures for the assumption and assignment of Contracts, (e) grant related relief.  Such compelling and sound business justification, which was set forth in the Motion, the First Day Declaration, and on the record at the Hearing, are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

G.      The Sale Notice, substantially in the form attached hereto as **Exhibit 2**, is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale(s), including, without limitation:  (a) the date, time, and place of the Auction (if any); (b) the Bidding Procedures; (c) reasonably specific identification of the Assets to be sold; and (d) a description of the Sale(s) as being free and clear of liens, claims, encumbrances, and other interests (except as set forth in the applicable definitive Sale documentation), with all such liens, claims, encumbrances, and other interests attaching with the same validity and priority to the Sale proceeds, and no other or further notice of the Sale(s) shall be required.

H.      The Debtors have articulated good and sufficient business reasons for the Court to approve the assumption and assignment procedures set forth herein (the "Assumption and Assignment Procedures"), which are fair, reasonable, and appropriate.  The Assumption and Assignment Procedures comply with the provisions of section 365 of the Bankruptcy Code and Bankruptcy Rule 6006.

30866585.1

38

I.      The Cure Notice, the form of which is attached hereto as **Exhibit 3**, is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Assumption and Assignment Procedures, as well as any and all objection deadlines related thereto, and no other or further notice shall be required for the Motion and the procedures described therein, except as expressly required herein.

J.      The Successful Bidder Notice, substantially in the form attached hereto as **Exhibit 4**, is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale(s), including, without limitation:  (a) the Successful Bidder, (b) the Back-Up Bidder, if applicable, (c) the proposed Bid Protections provided to the Successful Bidder, (d) the key terms of the proposed Sale, and (e) the date, time, and place of the Sale Hearing.

K.      Notice of the Motion, the proposed Bidding Procedures, and the Bidding Procedures Hearing was (i) appropriate and reasonably calculated to provide all interested parties with timely and proper notice, (ii) in compliance with all applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and (iii) adequate and sufficient under the circumstances of the Debtors' chapter 11 cases, such that no other or further notice need be provided except as set forth in the Bidding Procedures and the Assumption and Assignment Procedures.  A reasonable opportunity to object and be heard regarding the relief granted herein has been afforded to all parties in interest.

L.      The legal and factual bases set forth in the Motion establish just cause for the relief granted herein.  Entry of this Order is in the best interests of the Debtors and their estates, creditors, interest holders, and all other parties in interest.

M.      The Bidding Procedures comply with the requirements set forth by Local Rule 6004-(1)(c).

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as provided herein.

2.      All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

3.      **Potential Stalking Horse Bidder Designation**.   Pursuant to the Bidding Procedures, the Debtors are authorized, but not directed, with the prior written consent of the Prepetition Agents (at the direction of the Required Lenders under (and as defined in) each of the Prepetition Credit Agreements), to select one or more Qualified Bidders that submit a Qualified Bid for all or any portion of the Assets to act as Stalking Horse Bidders and enter into Stalking Horse APAs with each such Stalking Horse Bidder **no later than November 14, 2023, at 5:00 p.m. (prevailing Eastern Time)** and are further authorized, but not directed, to offer the Bid Protections to such Stalking Horse Bidder(s) provided that the total Bid Protections offered to any Stalking Horse Bidder shall not exceed three percent (3%) of the total cash consideration payable under such Stalking Horse APA, inclusive of any expense reimbursement.

4.      If the Debtors, consistent with the Bidding Procedures, determine to offer Bid Protections to any Stalking Horse Bidder, the Debtors shall file with the Court and serve a notice (a "Stalking Horse Notice") which shall include:  (a) a copy of the Stalking Horse APA; (b) an appropriate declaration in support of the proposed Bid Protections; and (c) a proposed form of an order approving the Bid Protections.  Any objection to (i) the Bid Protections set forth in a Stalking Horse Notice, or (ii) the form of Stalking Horse Order (a "Stalking Horse Objection"), shall be filed **no later than one (1) day after the filing of the Stalking Horse Notice at 4:00 p.m. (prevailing Eastern Time)**; *provided, however*, any such Stalking Horse Objection

shall be limited to whether the Stalking Horse Notice and Stalking Horse Order are consistent with the Bid Protections provided for herein.  If a timely Stalking Horse Objection is filed, the Debtors are authorized to seek an expedited hearing with respect to the Stalking Horse Objection on **not less than three (3) calendar days' notice**.  Absent any timely Stalking Horse Objection, the Court may enter the Stalking Horse Order without further hearing.

5.        **Bid Deadline**.  **November 17, 2023, at 5:00 p.m. (prevailing Eastern Time)**, is the deadline by which all Bids for a Sale Transaction (as well as the Good Faith Deposit and other documentation required under the Bidding Procedures for a Bid to be considered a Qualified Bid) must be submitted in accordance with the terms of the Bidding Procedures.  The Debtors may extend such deadline in accordance with the Bidding Procedures without any further notice to or motion in this Court.

6.        **Auction**.  No later than **November 28, 2023 at 9:00 a.m. (prevailing Central Time) / 10:00 a.m. (prevailing Eastern Time)** in person at the office of Kirkland & Ellis LLP, 300 N LaSalle Dr., Chicago, IL 60654 or via remote video at the Debtors' election (the "Auction Date").  If held, the Auction proceedings will be transcribed.  In the event the Debtors determine an Auction shall be held, the Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than one business day before such Auction (email shall suffice), and will post notice of the date, time, and place of the Auction no later than one business day before such Auction on their restructuring website, https://cases.stretto.com/primawawona (the "Case Website").

7.        **Sale Transaction Objections**.  All general objections to the Sale Transaction, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court and served so as to be *actually received* by no later than **November 21, 2023**

**at 4:00 p.m.** (prevailing Eastern Time) on (i) the Debtors, 7700 N. Palm Ave., Suite 206, Fresno, CA 93711; (ii) counsel to the Debtors, (a) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Ryan Blaine Bennett P.C. (ryan.bennett@kirkland.com), Whitney C. Fogelberg (whitney.fogelberg@kirkland.com), Rob Jacobson (rob.jacobson@kirkland.com), and Dave Gremling (dave.gremling@kirkland.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Delaware, Wilmington, Delaware 19801, Attn: Joseph M. Barry (jbarry@ycst.com), Kenneth J. Enos (kenos@ycst.com), and Andrew A. Mark (amark@ycst.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); and (iv) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").

8.      Following service of the Successful Bidder Notice, parties may object to the adequate assurance of future performance of the Successful Bidder(s) (each such objection, an "Adequate Assurance Objection").   Any Adequate Assurance Objection must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court and served so as to be *actually received* by no later than **December 1, 2023 at 4:00 p.m.** (prevailing Eastern Time) on the Objection Notice Parties.

**I.      Auction, Bidding Procedures, and Related Relief.**

9.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are incorporated herein and are hereby approved in their entirety.  The Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any Sale Transaction.  Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Order.

The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures and the Debtors and their professionals shall direct and preside over the Auction.

10. **Noticing Procedures**.  The noticing procedures as set forth in this Order and the Motion, including the Sale Notice attached hereto as **Exhibit 2**, are hereby approved.  Within two business days after entry of this Order, or as soon as reasonably practicable thereafter, the Debtors shall serve the Sale Notice by first-class mail upon the parties that received notice of the Motion.  On or about the same date, the Debtors will publish the Sale Notice on the Debtors' Case Website and will also publish a notice substantially similar to the Sale Notice in *The Packer* and *USA Today* (national edition) (the "Publication Notice").  Service of the Sale Notice and publication thereof in the manner described in this Order constitutes good and sufficient notice of the Auction and the Sale Hearing.  No other or further notice is required.

11. **Cancellation of Auction**.  If one Qualified Bid or no Qualified Bid (or Bid that may be remedied into a Qualified Bid pursuant to these Bidding Procedures and is actually remedied into a Qualified Bid prior to the Auction) is received by the Bid Deadline, the Debtors shall (a) notify the Court in writing that the Auction is cancelled and (b) file a notice of cancellation of the Auction.  The Debtors may also cancel the Auction if they determine to implement the Sale Transaction through a chapter 11 plan of reorganization in advance of the Bid Deadline.

12. **Sale Hearing**.  The Sale Hearing shall be held in the United States Bankruptcy Court for the District of Delaware, Courtroom [●], 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801, on **December 6, 2023, at [10:00] [a.m.]** (prevailing Eastern Time) or such other date and time that the Court may later direct; *provided* that the Sale Hearing may be adjourned, from time to time, in accordance with the Bidding Procedures without further

notice to creditors or parties in interest other than by filing a notice on the Court's docket.

II.     **Approval of the Assumption and Assignment Procedures.**

13.     The assumption and assignment procedures as set forth in this Order and the Motion, including the Cure Notice and Successful Bidder Notice attached hereto as **Exhibit 3 and Exhibit 4**, are hereby approved.  No later than three business days (or as soon as reasonably practicable thereafter) after the entry of this Order, the Debtors shall file a cure notice, substantially in the form attached hereto as **Exhibit 3** (the "Cure Notice"), and service such notice (a) by overnight delivery service upon the applicable contract counterparties (the "Contract Counterparties") at the address set forth in the notice provision of the applicable contract (and their counsel, if known) and (b) by first class mail, email, or fax upon the Notice Parties.  The Cure Notice shall notify the Contract Counterparties that the applicable executory contracts and unexpired leases are subject to potential assumption and assignment and of the Debtors' proposed cure amounts relating to such executory contracts and unexpired leases.

14.     Following the Bid Deadline, upon request by any contract counterparty of the Debtors, the Debtors will send such party evidence that any Qualified Bidder that included such contract or lease in its Bid has the ability to perform thereunder and otherwise complies with the requirements of adequate assurance of future performance under section 365(b)(1) on a confidential basis for all nonpublic information.  No later than **November 29, 2023**, or as soon as reasonably practicable following the Auction, the Debtors will serve the Successful Bidder Notice, substantially in the form attached hereto as **Exhibit 4**, to each successful bidder or notice of cancellation, as applicable, (a) by overnight delivery service upon the Contract Counterparties at the address set forth in the notice provision of the applicable contract (and their counsel, if known) and (b) by first class mail, email, or fax upon the Notice Parties.

30866585.1

15.     Parties objecting to a proposed assumption and assignment (other than with respect to cure amounts) must file a written objection with the Court by fourteen (14) days after serving the Cure Notice, and serve such objection on the Notice Parties (such deadline, the "Assumption and Assignment Objection Deadline").

16.     If an objection to the Debtors' proposed cure amounts is timely filed and not withdrawn or resolved by the Sale Hearing (or Confirmation Hearing, as applicable), such cure objections will not be heard at the Sale Hearing (or Confirmation Hearing, as applicable) but will be heard at a subsequent hearing later set by the Court.  The Debtors shall proceed with the assumption and assignment of a particular contract at the Sale Hearing (or Confirmation Hearing, as applicable), and the pendency of a dispute relating to cure amounts shall not prevent or delay the assumption and assignment of a contract.  Any dispute regarding the cure amounts will either be resolved consensually, if possible, or, if the parties are unable to resolve, at a later date as set by the Court.  To the extent an objection relates solely to a disputed cure amount, the Court may approve the assumption and assignment subject to (a) the Contract Counterparty's right to be heard at a later hearing date on the cure and (b) the below requirements regarding payment of the cure amount.  The Debtors shall file and serve a notice for a hearing for the Court to consider the unresolved cure objection(s) at the next scheduled omnibus hearing which shall be set fourteen days after the Sale Hearing (or Confirmation Hearing, as applicable), subject to Court availability, unless the Debtors and the objecting parties agree to a different time and subject to the Court's schedule.  The Debtors reserve the right to reject, and not assume and assign, any contract depending on the ultimate resolution of any cure amount dispute; provided that, in the case of an unexpired lease of non-residential real property, such determination shall be prior to the expiration of the applicable deadline to assume or reject unexpired leases under

section 365(d)(4) of the Bankruptcy Code.  Upon the effective date of the assumption and assignment of the contract (the "Assignment Date"), the Successful Bidder shall pay all undisputed cure amounts (excepting any undisputed amounts already paid) pending resolution of the dispute, and any disputed cure amounts shall be reserved pending the subsequent hearing to resolve same.  For the avoidance of doubt, if the Successful Bidder determines, in its sole discretion, that the cure dispute is too material, the Successful Bidder may delay the assignment of such contract or unexpired lease until the resolution of the cure amount; *provided* that, in such case, if any, the Successful Bidder shall be responsible for any and all costs arising under such contract or unexpired lease during the pendency of the dispute.

17.    If no objection to the assumption of any contract is timely filed, each contract shall be assumed as of the Assignment Date set forth in the applicable Successful Bidder Notice or such other date as the Debtors and the Contract Counterparty agree and the proposed cure amount shall be binding on all Contract Counterparties and the Contract Counterparties will be forever barred from asserting any other claims related to the contract against the Debtors.

18.    The inclusion of a contract on the Successful Bidder Notice shall not:  (a) obligate the Debtors to assume or assign any contracts listed thereon or (b) constitute any admission or agreement of the Debtors that such contract is an executory contract.  Only those contracts that are included on a schedule of assumed and acquired contracts attached to a final asset purchase agreement will be assumed and assigned.

III.    **Miscellaneous.**

19.    The failure to include or reference a particular provision of the Bidding Procedures specifically in this Order shall not diminish or impair the effectiveness or enforceability of such a provision.

30866585.1

20.     In the event of any inconsistencies between this Order and the Motion and/or the Bidding Procedures, this Order shall govern in all respects.

21.     Notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a), and such notice satisfies the applicable Local Rules.

22.     To the extent the dates and deadlines herein are modified pursuant to the Bidding Procedures and such modification is inconsistent with the requirements of Local Rule 9006-1(b), such requirements shall be deemed satisfied.

23.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order are immediately effective and enforceable upon its entry.

24.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

25.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.  This Court has the authority to fashion appropriate relief, on an emergency basis or otherwise, for any violations of this Order or the Bidding Procedures.

**<u>Exhibit 1</u>**

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-11721 (LSS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) | **Re: Docket No. __** |

## BIDDING PROCEDURES

On October 13, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases").  As described more fully in the *Declaration of John Boken, Interim Chief Executive Officer of MVK FarmCo LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") and the Debtors' *Motion for Entry of An Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors Assets, (II) Approving the Form and Manner of Notice Thereof, (III) Scheduling An Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Contracts, (V) Approving the Sale of the Debtors' Assets Free and Clear, and (IV) Granting Related Relief* (the "Bidding Procedures Motion") [Docket No. [●]] the Debtors are pursuing one or more value maximizing sale transactions, or, in the alternative, an equitization transaction with the Debtors' Prepetition Lenders (as defined below) via confirmation of a chapter 11 plan (the "Equitization Restructuring").

On [●], 2023, the Bankruptcy Court entered an order (the "Bidding Procedures Order") [2] [Docket No. [●]] approving the bidding procedures set forth below (the "Bidding Procedures"). The Bidding Procedures set forth the process to determine the highest and best offer (or offers) for a sale (or sales) (each, a "Sale Transaction") of all or substantially all of the assets of the Debtors (collectively, the "Assets") by providing interested parties with the opportunity to qualify for and participate in an auction (the "Auction") to be conducted by the Debtors and to submit competing bids for all or part of the Assets.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion or the Bidding Procedures Order, as applicable.

> **COPIES OF THE BIDDING PROCEDURES ORDER OR ANY OTHER DOCUMENTS IN THE DEBTORS' CHAPTER 11 CASES ARE AVAILABLE UPON REQUEST TO STRETTO, INC., BY CALLING (888) 405-4599 (TOLL FREE) AND (949) 385-6774 (INTERNATIONAL) OR BY VISITING THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://CASES.STRETTO.COM/PRIMAWAWONA.**

### Assets to Be Sold "Free and Clear"

Except as otherwise provided in a Modified APA (as defined below) submitted by a Successful Bidder (as defined below), all of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests"), subject only to the Assumed Liabilities and Permitted Encumbrances (each as defined in the Modified APA of the applicable Successful Bidder), to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale(s) of the Assets with the same validity, force, effect, and priority as such Interests applied against the Assets as of the date the Debtors' commenced these Chapter 11 Cases, subject to any rights, claims, and defenses of the Debtors.

A party may participate in the bidding process by submitting a bid for (a) all or substantially all of the Assets and/or (b) one or more, or any combination of, Assets of one or more Debtors, as that party may desire.

### Submission of Bid

**Any interested bidder should contact, as soon as practicable:**

**Houlihan Lokey Capital, Inc.**
111 S Wacker Dr., Floor 37
Chicago, IL 60606
Attn:

| | | |
|---|---|---|
| Ryan Sandahl | Steve Balash | Dane Lewis |
| RSandahl@HL.com | SBalash@HL.com | DGLewis@HL.com |
| (tel.) +1 (312) 456-4796 | (tel.) +1 (312) 462-6455 | (tel.) +1 (312) 462-6459 |

## Key Dates and Deadlines

The key dates and deadlines for the sale process are as follows:

| Deadline | Item |
|---|---|
| **Two business days (or as soon as reasonably practicable thereafter) after the entry of the Bidding Procedures Order** | Deadline for the Debtors to file and serve the Sale Notice[3] and publish the Publication Notice[4] |
| **Three business days (or as soon as reasonably practicable thereafter) after the entry of the Bidding Procedures Order** | Deadline for the Debtors to file and serve the initial Cure Notice. |
| **November 14, 2023 at 5:00 p.m. (prevailing Eastern Time)** | Stalking Horse Bidder Designation (as defined below) (if the Debtors so choose to designate a Stalking Horse Bidder (as defined below)). |
| **No later than one (1) day after the filing of the Stalking Horse Notice (as defined below) at 4:00 p.m. (prevailing Eastern Time)** | Stalking Horse Objection Deadline (if the Debtors so choose to designate a Stalking Horse Bidder). |
| **November 17, 2023 at 5:00 p.m. (prevailing Eastern Time)** | Bid Deadline |
| **November 21, 2023 at 4:00 p.m. (prevailing Eastern Time)** | Sale Transaction Objection Deadline |
| **November 28, 2023 at 9:00 a.m. (prevailing Central Time) / 10:00 a.m. (prevailing Eastern Time)** | Auction Date |

---

[3]  "Sale Notice" shall mean the notice the Debtors will file with the Bankruptcy Court and cause to be published on the Debtors' claims and noticing agent website setting forth (A) a description of the Assets available for sale in accordance with these Bidding Procedures; (B) the date, time, and location of the Auction and proposed Sale Hearing; (C) the Sale Transaction Objection Deadline and the procedures for filing such objections; and, if applicable, (D) a summary of the material terms of any Stalking Horse APA, including the terms and conditions of any Bid Protections to be provided thereunder, if applicable.

[4]  "Publication Notice" shall mean a notice which the Debtors shall cause to be published in *The Packer* and the national edition of *USA Today* which shall include the information contained in the Sale Notice.

| Deadline | Item |
|---|---|
| **November 29, 2023 at 4:00 p.m. (prevailing Eastern Time) (or as soon as reasonably practicable)** | Deadline for the Debtors to file with the Bankruptcy Court the Notice of Bid Results and the proposed Sale Order(s) (each as defined below) |
| **December 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** | Adequate Assurance Objection Deadline |
| **December 4, 2023 at 12:00 p.m. (prevailing Eastern Time)** | Sale Transaction Reply Deadline |
| **December 6, 2023** | Sale Hearing (as defined below) |

The Debtors may, with the consent of the Consultation Parties (as defined below), adjourn any of the key dates or deadlines herein without further order of the Bankruptcy Court; *provided* that the Debtors shall promptly file a notice with the Bankruptcy Court of any changes to the key dates or deadlines herein. Any such adjournment shall not itself modify any of the Milestones under (and as defined in) the orders approving the use of cash collateral approved by the Bankruptcy Court.

## Consultation Parties

Throughout the sale process, the Debtors and their advisors will regularly and timely consult with the following parties (collectively, the "Consultation Parties"): (i) the advisors to the steering committee of the Prepetition Agents and certain Prepetition Lenders (each as defined below) (the "SteerCo") (including White & Case LLP; Sidley Austin LLP; Moore & Van Allen, PLLC; Morgan Lewis & Bockius LLP; and FTI Consulting) and (ii) any appointed statutory committee under 11 U.S.C. § 1102 in the Chapter 11 Cases. For the avoidance of doubt, unless approved by the Bankruptcy Court, no amendment or other modification to these Bidding Procedures shall be made by the Debtors without the consent of the Consultation Parties.

## Qualifications to Submit Bids and Participate in Auction

### A.    Diligence Materials

To participate in the bidding process for a Sale Transaction and to receive access to due diligence materials (the "Diligence Materials"), a party must submit to the Debtors (i) an executed confidentiality agreement, which must be based on the form confidentiality agreement supplied by the Debtors in a designated data room and in form and substance satisfactory to the Debtors (in consultation with the Consultation Parties) and (ii) reasonable evidence demonstrating the party's financial capability to consummate a Sale Transaction with respect to those Assets in which the party is preliminarily interested as determined by the Debtors in their reasonable business judgment (in consultation with the Consultation Parties). The Debtors shall consult with the Consultation Parties with respect to any determination that a

party has not provided the information required in clause (ii) in the immediately preceding sentence. ***No party will be permitted to conduct any due diligence without entering into a confidentiality agreement described in clause (i).***

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Investor." The Debtors will afford any Preliminary Interested Investor the time and opportunity to conduct due diligence within the deadlines set forth in these Bidding Procedures. Until the Bid Deadline (as defined below), in addition to granting access to the Diligence Materials, the Debtors will provide Preliminary Interested Investors with due diligence access and additional information, as may be requested by a Preliminary Interested Investor, to the extent that the Debtors determine (in consultation with the Consultation Parties) that such requests are reasonable and appropriate under the circumstances. All due diligence requests shall be directed to Houlihan Lokey Capital, Inc. ("Houlihan") (Attn: Ryan Sandahl (RSandahl@HL.com), Steve Balash (SBalash@HL.com), and Dane Lewis (DGLewis@HL.com)). The Debtors, with the assistance of Houlihan, will coordinate all reasonable requests for additional information and due diligence access from Preliminary Interested Investors.

The Debtors reserve the right (in consultation with the Consultation Parties) to withhold or modify any Diligence Materials that the Debtors determine in good faith are business-sensitive or otherwise not appropriate for disclosure to a Preliminary Interested Investor who is a competitor, vendor, or customer of the Debtors or is directly or indirectly affiliated with any competitor, vendor, or customer of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any party that is not determined to be a Preliminary Interested Investor.

### B.    Due Diligence from Bidders

Each Preliminary Interested Investor and Bidder (as defined below) shall comply with all reasonable requests with respect to information and due diligence access by the Debtors or their advisors regarding such Preliminary Interested Investor or Bidder, as applicable, and its contemplated Sale Transaction. Failure by a potential bidder (including any Qualified Bidder (as defined below)) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine (in consultation with the Consultation Parties) that such Bidder is no longer a Qualified Bidder or that a bid made by such Bidder is not a Qualified Bid (as defined below).

### C.    Bid Deadline and Auction Qualification Process

To be eligible to participate in the Auction, a party must be a Preliminary Interested Investor and must submit a written offer for a Sale Transaction (each, a "Bid" and the Preliminary Interested Investor that submits a Bid, a "Bidder") that must (i) be determined by the Debtors to satisfy each of the conditions set forth in this section and (ii) be ***actually received*** by (a) counsel to the Debtors, Kirkland & Ellis LLP, 300 N La Salle St., Chicago, IL 60654 Attn: Ryan Bennett (ryan.bennett@kirkland.com) and (b) the Debtors' investment banker, Houlihan, 111 S Wacker Dr., Floor 37, Chicago, IL 60606, Attn: Ryan Sandahl (RSandahl@HL.com) **on or before November 17, 2023 at 5:00 p.m.** (prevailing Eastern Time)

(the "<u>Bid Deadline</u>").  The Debtors shall provide counsel to the Consultation Parties copies of any Bid received within one (1) Business Day (as defined in the Bankruptcy Code) of receipt; *provided*, *however*, that during any period in which a Consultation Party has submitted a Qualified Bid (other than a credit bid) and has become a Qualified Bidder, such Consultation Party shall no longer be considered a Consultation Party under these Bidding Procedures solely for so long as such Consultation Party's Bid remains a Qualified Bid and is not disqualified or withdrawn.

A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

1. <u>Executed Agreement</u>:  Each Bid must include (a) an offer letter, signed by an authorized representative of the Bidder, pursuant to which the Bidder offers to consummate the Sale Transaction contemplated by such Bid on the terms set forth in the Modified APA (as defined below) together with (b) an asset purchase agreement, which must be based on the form asset purchase agreement supplied by the Debtors in a designated data room (the "<u>Form APA</u>") or, if applicable, the Stalking Horse APA (as defined below), signed by an authorized representative of the Bidder, pursuant to which the Bidder agrees to consummate such Sale Transaction for the Assets referenced therein (together with all ancillary documents and schedules contemplated thereby, a "<u>Modified APA</u>").  A Bid must also include a redline of the Modified APA marked against the Form APA (and all applicable ancillary documents and schedules contemplated thereby) to show all changes requested by the Bidder with respect to the Form APA.  Each Modified APA must provide a commitment to close the Sale Transaction contemplated by such Modified APA within a time frame acceptable to the Debtors (determined in consultation with the Consultation Parties) after all closing conditions set forth in such Modified APA are met (other than those which are to be satisfied at the closing of the transactions contemplated by such Modified APA).

2. <u>Good Faith Deposit</u>:  Each Bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the cash purchase price contained in the Modified APA, before any adjustments to the purchase price, to an escrow account to be identified and established by the Debtors (the "<u>Good Faith Deposit</u>").  To the extent a Qualified Bid is modified before, during, or after the Auction in any manner that increases the cash purchase price contemplated by such Qualified Bid, the Debtors reserve the right (in consultation with the Consultation Parties) to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the increased purchase price.

3. <u>Good Faith Offer</u>:  Each Bid must represent an irrevocable, binding, good faith, and *bona fide* offer to purchase some or all of the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Back-Up Bid (each as defined herein).

4. <u>Minimum Bid</u>:  Each Bid for all or substantially all of the Debtors' assets must consist of cash consideration to be paid at the closing of the transactions contemplated by the Modified APA in an amount equal to at least $275,000,000.  Each Bid must set forth the total purchase price for such Bid.

5. <u>Joint Bids</u>:  The Debtors will be authorized to approve (in consultation with the Consultation Parties) joint Bids in their reasonable discretion on a case-by-case basis.

6. <u>Purchased Assets and Assumed Liabilities</u>:  Each Bid must clearly provide which of the Assets the Bidder seeks to acquire, and which of the Assumed Liabilities (as defined in the Modified APA) the Bidder agrees to assume.  With respect to any bids for less than all or substantially all of the Debtors' assets, the Debtors reserve the right to request an allocation of the purchase price among the Assets the Bidder seeks to acquire and the Assumed Liabilities the Bidder agrees to assume.

7. <u>Designation of Assigned Contracts and Leases</u>:  Subject to the terms of the Modified APA, each Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to be assumed and assigned to the Bidder at the closing of the Sale Transaction contemplated by such Bid.

8. <u>Corporate Authority</u>:  Each Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate or similar governance authorization of the Bidder to consummate the proposed Sale Transaction; *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Sale Transaction by the equity holder(s) of such Bidder and any other governing body of the Bidder that is required to approve the Sale Transaction.

9. <u>Disclosure of Identity of Bidder</u>:  Each Bid must fully disclose the identity of each entity (including any equity owners, sponsors, or co-investors) that will be bidding for or purchasing the Assets or otherwise directly or indirectly participating in connection with such Bid.

10. <u>Proof of Financial Ability to Perform</u>:  Each Bid must include written evidence that the Debtors conclude, in consultation with the Consultation Parties, demonstrates that the Bidder has the necessary financial ability to (i) timely close the Sale Transaction contemplated by such Bid within a time frame acceptable to the Debtors (determined in consultation with the Consultation Parties) after all closing conditions set forth in the Modified APA are met and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Sale Transaction.  Such information must include, *inter alia*, the following:

    a. Contact names and numbers for verification of financing sources, if any;

    b. Written evidence of the Bidder's internal financial resources and ability to finance its Bid with cash on hand, available lines of credit, uncalled capital commitments or otherwise available funds (including through the posting of an irrevocable letter of credit or customary debt or equity financing commitment letters that comply with the requirements of this sub-paragraph 10.b or sub-paragraph 10.c below, as applicable, in each case, from reputable financial institutions (as determined in the Debtors' reasonable discretion in consultation with the Consultation Parties)) in an

aggregate amount sufficient to pay the cash purchase price contemplated by such Bid, to pay for cure costs for contracts to be assumed and assigned in the Sale Transaction, and to satisfy all other obligations of the Bidder pursuant to the Modified APA ("Bidder's Obligations"); *provided* that, if the Bidder is an entity that is specially formed for the purpose of effectuating the Sale Transaction or if the Bidder intends to raise any equity financing to fund any portion of Bidder's Obligations, then the Bidder must furnish to the Debtors a fully executed and effective equity commitment letter or guarantee ("Bidder Support") (which Bidder Support shall remain outstanding until at least sixty (60) days after the date of entry of the Sale Order (or the "outside date" in the Modified APA, if later), subject to a potential further extension as set forth herein or therein) from its equity holders or other affiliated entities with respect to the portion of Bidder's Obligations that are not to be paid with cash on hand (which Bidder Support may not be subject to any conditions other than the satisfaction of the conditions set forth in the Modified APA and shall include third party beneficiary language in favor of the Debtors entitling the Debtors to enforce such Bidder Support directly against the counterparties) and provide written evidence that its equity holders or other affiliated entities providing the Bidder Support have the resources and ability to finance such portion of the Bidder's Obligations;

c.  Without limiting the requirements of sub-paragraph 10.b above, if the Bidder intends to raise any debt financing to fund any portion of the Bidder's Obligations, the Bid must include fully executed and effective debt financing commitment letter(s), which letter(s) shall (i) not be subject to any internal approvals, credit committee approvals or diligence conditions, (ii) be in customary form, and (iii) remain outstanding until sixty (60) days after the date of entry of the Sale Order (subject to a potential further extension as set forth herein); and

d.  Any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors (in consultation with the Consultation Parties) demonstrating that such Bidder (or, if the Bidder is an entity formed for the purpose of making a Bid, its Bidder Support) has the ability to close the Sale Transaction on the terms set forth in the Modified APA.

11. Adherence to Bidding Procedures:  By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

12. Regulatory and Third-Party Approvals:  Each Bid must set forth each government, licensing, regulatory, and other third-party approval or filing required to be obtained or made by the Bidder or its Bidder Support, and each waiting period required to have expired or terminated, for the Bidder to consummate the Sale Transaction, and the time

period within which the Bidder expects to receive such approvals, to make such filings or such waiting periods to expire or terminate (and in the case that receipt of any such approval, the making of any such filing, or the expiration or termination of any such waiting period is expected to take more than thirty (30) days following execution and delivery of the Modified APA, those actions the Bidder will take to ensure receipt of such approval(s), the making of such filing(s) or the expiration or termination of such waiting period(s) as promptly as possible).

13. <u>Contact Information and Affiliates</u>:  Each Bid must provide the contact information for the Bidder and full disclosure of any affiliates of the Bidder.

14. <u>Contingencies and Other Provisions</u>:  Each Bid shall not contain any escrow arrangements, indemnities, or adjustments to the purchase price.  Without limiting the immediately preceding sentence, each Bid shall not include any conditions or contingencies relating to financing (including, for the avoidance of doubt, any conditionality, or limitations on specific performance, relating to any financing contemplated by sub-paragraph 10.c above), internal approvals, or the absence of any material adverse effect.

15. <u>Contingencies Regarding Due Diligence</u>:  Each Bid shall not include any conditions or contingencies relating to due diligence.

16. <u>Acknowledgement of Independent Review</u>:  Each Bid must include a written acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the accuracy or completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the Modified APA.

17. <u>Irrevocable</u>:  Each Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Bidder is not selected as the Back-Up Bidder (as defined below); *provided* that if a Bid is accepted as the Successful Bid or the Back-Up Bid, such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

18. <u>Compliance with Diligence Requests</u>:  The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Debtors to the satisfaction of the Debtors.

19. <u>Back-Up Bid</u>:  Each Bid shall provide that the Bidder will serve as back-up bidder if the Bidder's Bid is selected as the next highest and best bid after the Successful Bid and will remain irrevocable in accordance with the terms and conditions of these Bidding Procedures.

20. <u>Consent to Jurisdiction</u>:    Each Bidder and its Bidder Support (if applicable) must (i) consent to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Sale Transaction, any Modified APA, or the construction and enforcement of documents relating to any Sale Transaction, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Sale Transaction, any Modified APA, or the construction and enforcement of documents relating to any Sale Transaction, and (iii) consent to the entry of a final order or judgment in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Modified APA, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

21. <u>Disclaimer of Break-Up Fees and Expense Reimbursement</u>:    Except as otherwise provided below with respect to a potential Stalking Horse Bidder (as defined below), each Bid must not, and must acknowledge that such Bid shall not, entitle the Bidder to any break-up fee, termination fee or similar type of payment, compensation or expense reimbursement (including legal fees) and, by submitting the Bid, the Bidder waives the right to pursue any administrative expense claim (including under a theory of substantial contribution) under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

22. <u>Acknowledgement of Remedies</u>:    Each Bid shall include a written acknowledgement from the Bidder that, in the event of the Bidders' breach of, or failure to perform under, the Modified APA, the Debtors and their estates shall be entitled to retain the Good Faith Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform, and pursue all other available legal and equitable remedies.

23. <u>Acknowledgement of No Collusion</u>:    Each Bid shall include a written acknowledgement from the Bidder that it has not (i) engaged in any collusion with respect to the bidding or sale of any of the Assets described herein or (ii) taken any other action to prevent a transparent and competitive auction process.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "<u>Qualified Bid</u>," as determined by the Debtors, in their reasonable business judgment, and such Bidder shall constitute a "<u>Qualified Bidder</u>;" *provided* that, if the Debtors receive a Bid that is not a Qualified Bid, the Debtors (in consultation with the Consultation Parties) may provide (but shall not be obligated to provide) the Bidder with the opportunity to remedy any deficiencies prior to the Auction; *provided*, *further*, that if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtors to the satisfaction of the Debtors, then the Debtors may disqualify any such Qualified Bidder and Qualified Bid, in the Debtors' sole discretion, and such Bidder shall not be entitled to attend or participate in the Auction.  The Debtors may (in consultation with the Consultation Parties) accept a single Qualified Bid or multiple Bids for non-overlapping material portions of

the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bid; *provided* that the Debtors also reserve the right, in consultation with the Consultation Parties, to conduct more than one sale process or Auction with respect to non-overlapping material portions of the Assets).  The Debtors shall consult with the Consultation Parties regarding whether (i) a Bid is or is not a Qualified Bid or (ii) any Qualified Bid or Qualified Bidder should be disqualified.  The Debtors, in consultation with the Consultation Parties, shall have the right to deem a Bid a Qualified Bid even if such Bid does not conform to one or more of the requirements above; *provided* that any Bid for all or substantially all of the Debtors' Assets that does not include cash consideration of at least $275,000,000 may only be deemed a Qualified Bid with the prior written consent of the Required Lenders under (and as defined in) each of the Prepetition Bridge Credit Agreement,[5] the Prepetition PropCo Credit Agreement[6] and the Prepetition OpCo Credit Agreement[7] secured by the Assets contemplated to be purchased.  Any Bidder that does not submit a Bid before the Bid Deadline will not be permitted to submit a Bid after the Bid Deadline or to participate in the Auction.

## Credit Bidding

---

[5]  Wawona Packing Co. LLC ("OpCo"), Wawona Farm Co. LLC ("PropCo"), and MVK Intermediate Holdings LLC ("GroupCo"), as borrowers, Coöperatieve Rabobank U.A., New York Branch ("Rabobank"), as administrative agent and as collateral agent with respect to certain PropCo collateral (in such capacities, the "Prepetition Bridge Agent"), Royal Bank of Canada ("RBC"), as collateral agent with respect to certain OpCo collateral, the lenders party thereto, Rabobank and RBC, as joint lead arrangers and joint bookrunners, and the lenders party thereto (the "Prepetition Bridge Lenders") are parties to that certain Senior Secured Credit Agreement, dated April 3, 2023 (as amended, restated, supplemented or modified, the "Prepetition Bridge Credit Agreement").

[6]  PropCo, as borrower, Wilmington Trust, National Association, as successor to Rabobank, as administrative agent and collateral agent (in such capacities, the "Prepetition PropCo Agent") and the lenders party thereto (the "Prepetition PropCo Lenders") are parties to that certain Amended and Restated Credit Agreement, dated as of September 13, 2019 (as further amended, restated, supplemented or modified, including pursuant to that certain First Amendment to Amended and Restated Credit Agreement, dated April 3, 2023, the "Prepetition PropCo Credit Agreement").

[7]  OpCo and GroupCo, as borrowers, RBC, as administrative agent and collateral agent (in such capacities, the "Prepetition OpCo Agent" and, collectively with the Prepetition Bridge Agent and the Prepetition PropCo Agent, the "Prepetition Agents") and the lenders party thereto (the "Prepetition OpCo Lenders" and, collectively with the Prepetition Bridge Lenders and the Prepetition PropCo Lenders, the "Prepetition Lenders") are parties to that certain Incremental Revolving Credit Agreement, dated as of September 13, 2019 (as amended, restated, supplemented or modified, including pursuant to that certain First Amendment to Credit Agreement dated April 3, 2023, the "Prepetition OpCo Credit Agreement" and, collectively with the Prepetition Bridge Credit Agreement and the Prepetition PropCo Credit Agreement, the "Prepetition Credit Agreements").

The Prepetition Bridge Agent, the Prepetition OpCo Agent and the Prepetition PropCo Agent (together, the "Prepetition Agents") together have liens on all Assets being sold in the Auction, and reserve the right (at the direction of the Required Lenders under, and as defined in, each Prepetition Credit Agreement) to credit bid for any or all of the Assets securing their respective facilities. The Prepetition Agents shall be permitted, pursuant to section 363(k) of the Bankruptcy Code, to credit bid all or any portion of the Obligations, under (and as defined in) each of the Prepetition Credit Agreements, as applicable, to acquire the Assets (each dollar of such obligations that is credit bid shall be treated the same as a dollar of cash). Any such credit bid will be deemed a Qualified Bid regardless of whether it meets the specified requirements herein, and the Prepetition Agents shall not be required to provide any additional diligence information to participate in a credit bid.

## Potential Stalking Horse

The Debtors may, pursuant to these Bidding Procedures, with the prior written consent of the Prepetition Agents (at the direction of the Required Lenders under (and as defined in) each of the Prepetition Credit Agreements), (i) designate one or more Qualified Bidders that submit a Qualified Bid for all or any portion of the Assets a stalking horse bidder (the "Stalking Horse Bidder"), whose Qualified Bid shall serve as the stalking horse bid ("Stalking Horse Bid"), and (ii) execute, subject to higher or otherwise better offers consistent with these Bidding Procedures, one or more purchase agreements memorializing the proposed transaction set forth in the Stalking Horse Bid (a "Stalking Horse APA"), which may include a break-up fee of or no more than 3.0% of the total cash consideration payable under such Stalking Horse APA, inclusive of any expense reimbursement (the "Bid Protections") **on or before November 14, 2023 at 5:00 p.m. (prevailing Eastern Time)** (the "Stalking Horse Bidder Designation"). To the extent the Debtors designate more than one Stalking Horse Bidder pursuant to the Bidding Procedures, no two Stalking Horse Bidders will be designated with respect to any of the same Assets. The Debtors shall not pay Bid Protections to any Stalking Horse Bidder on account of the portion of the purchase price of such Bid that is a credit bid, assumption of liabilities, or other non-cash (or cash-equivalent) consideration, nor provide any Bid Protections to an insider or affiliate of the Debtors.

To the extent the Debtors, consistent with these Bidding Procedures, determine to offer Bid Protections to any Stalking Horse Bidder, the Debtors shall disclose such Bid Protections in a corresponding notice designation such Stalking Horse Bidder (the "Stalking Horse Notice"). A Stalking Horse Notice, if filed, shall also include (a) a copy of the Stalking Horse APA; (b) an appropriate declaration in support of the proposed Bid Protections; and (c) a proposed form of an order approving the Bid Protections (the "Stalking Horse Order"). Any objection to (i) the Bid Protections set forth in the Stalking Horse Notice, or (ii) the form of Stalking Horse Order (a "Stalking Horse Objection"), shall be filed **no later than one day after the filing of the Stalking Horse Notice at 4:00 p.m. (prevailing Eastern Time)**; *provided, however*, any such Stalking Horse Objection shall be limited to whether the Stalking Horse Notice and Stalking Horse Order are consistent with the Bid Protections provided for herein. If a timely Stalking Horse Objection is filed, the Debtors are authorized to seek an expedited hearing with respect to the Stalking Horse Objection on **not less than three (3) calendar days' notice**. Absent any

timeline Stalking Horse Objection, the Court may enter the Stalking Horse Order without further hearing.

If a Stalking Horse Order is entered, the Modified APA to be submitted by Qualified Bidders, if for the same Assets, shall be based on the Stalking Horse APA rather than the Form APA.

## Auction

If one or more Qualified Bids are received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest and best Qualified Bid.  The determination of the highest and best Qualified Bid shall take into account any factors the Debtors in their reasonable business judgment, in consultation with the Consultation Parties, deem relevant to the value and certainty of the Qualified Bid to the Debtors' estates and may include, but are not limited to, the following: (i) the amount and nature of the consideration; (ii) the number, type, and nature of any changes to the Form APA requested by each Bidder, including the Assets acquired; (iii) the extent to which such modifications are likely to delay closing of the Sale Transaction contemplated by such Qualified Bid and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtors; (v) any contingencies or conditions to closing the Sale Transaction contemplated by such Qualified Bid; (vi) the likelihood of the Bidder's ability to close the Sale Transaction contemplated by such Qualified Bid and the timing thereof; (vii) the tax consequences of such Qualified Bid; and (viii) any other qualitative or quantitative factor that the Debtors deem reasonably appropriate under the circumstances, in consultation with the Consultation Parties (collectively, the "Bid Assessment Criteria").

If one Qualified Bid or no Qualified Bid (or Bid that may be remedied into a Qualified Bid pursuant to these Bidding Procedures and is actually remedied into a Qualified Bid prior to the Auction) is received by the Bid Deadline, the Debtors shall cancel the Auction.

### A.    Location and Date of Auction

The Auction, if any, shall take place **on or before November 28, 2023 at 9:00 a.m. (prevailing Central Time) / 10:00 a.m. (prevailing Eastern Time)** in person at the office of Kirkland & Ellis LLP, 300 N LaSalle Dr., Chicago, IL 60654 or via remote video at the Debtors' election.  If held, the Auction proceedings will be transcribed.

### B.    Attendees and Participants

Except as otherwise determined by the Debtors, only the following parties, and their respective representatives and counsel, shall attend the Auction: (i) the Debtors, (ii) the United States Trustee, (iii) any Qualified Bidder, and (iv) each Consultation Party.  The Debtors shall provide the Consultation Parties and all Qualified Bidders with notice of all participants attending the Auction at least one (1) day prior to the Auction.  Only Qualified Bidders and the Prepetition Agents will be entitled to make any Bids at the Auction.

Bidders and their representatives may not communicate or coordinate with one another for purposes of submitting a Bid or Bids or participating in the Auction without the prior consent of the Debtors. All parties are prohibited from (i) engaging in any collusion with respect to the bidding or sale of any of the Assets described herein or (ii) taking any other action to prevent a transparent and competitive auction process.

Each Qualified Bidder participating in the Auction must confirm on the record at the commencement of the Auction that (i) it has not engaged in any of the prohibited actions set forth in the immediately preceding paragraph, (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the Sale Transaction contemplated by such Qualified Bid if selected as the Successful Bidder, (iii) it has reviewed, understands and accepts the Bidding Procedures, and (iv) it has consented to the core jurisdiction of the Bankruptcy Court with respect to the Sale Transaction, including the Bidding Procedures, the Auction, any Sale Transaction, any Modified APA, or the construction and enforcement of documents relating to any Sale Transaction (as described more fully below).

All parties attending the Auction must comply with their applicable confidentiality agreements; *provided* that the advisors to the SteerCo may speak with members of the SteerCo that are not in attendance at the Auction so long as such individuals are advised of this restriction.

## C.    Conducting the Auction

The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed and shall be conducted openly. Other than as expressly set forth herein, the Debtors (in consultation with the Consultation Parties) may conduct the Auction in the manner they determine will result in the highest and best offer for the Assets so long as such conduct is not inconsistent in any material respect with the other terms and provisions of these Bidding Procedures.

## D.    Auction Baseline Bid

The Debtors will notify any other Qualified Bidder participating in the Auction, and the Consultation Parties of the highest and best Qualified Bid received before the Bid Deadline for purposes of constituting the opening Bid at the Auction (the "Auction Baseline Bid"), and shall provide copies of the Modified APA and Modified Sale Order (each a "Modified Sale Order") associated with the Auction Baseline Bid as soon as practicable (together with the redline copies of such documents, as described in paragraph C.1 above) prior to the commencement of the Auction.

## E.    Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid. To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

1.    <u>Minimum Overbid Increments</u>: Any Overbid for all or substantially all of the Debtors' Assets after and above the Auction Baseline Bid (and, if a Stalking Horse Bid has been designated, any Bid Protections granted to such Stalking Horse Bidder) shall be made in increments valued at not less than $1,500,000.  The Debtors shall determine (in consultation with the Consultation Parties) the minimum bid increments for any particular assets, if applicable.  Any credit bid of a Prepetition Agent shall be treated as the same as cash (such that each dollar of such obligations that is credit bid shall be treated the same as a dollar of cash).

2.    <u>Remaining Terms Are the Same as for Qualified Bids</u>: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; *provided*, *however*, that the Prepetition Agents shall not be required to comply with such conditions.  Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Modified APA or Modified Sale Order in connection therewith.  Any Overbid must remain open and binding on the Bidder until (a) the Debtors announce that they have received a higher and better Overbid and (b) such Overbid is not selected as the Back-Up Bid.  To the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) reasonably demonstrating such Bidder's ability to satisfy the Bidder's Obligations as set forth in the Qualified Bid requirements set forth in paragraph C.10.b.  Further, Bidders submitting Overbids may be required to promptly top up their Good Faith Deposits to equal ten percent (10%) of the cash purchase price contained in such Overbids.

## F.    **Announcement and Consideration of Overbids**

1.   <u>Announcement of Overbids</u>: All Overbids shall be made and received on an open basis.  The Debtors shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, and the basis for calculating such total consideration.  The Debtors shall, after submission of each Overbid, promptly inform each participant in the Auction which Overbid reflects the highest and best Bid, and the Debtors shall clarify any and all questions that any Qualified Bidder may have regarding such Overbid.

2.    <u>Consideration of Overbids</u>: Subject to the deadlines set forth herein, the Debtors reserve the right, in their own reasonable business judgment and in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; or give Qualified Bidders the opportunity to provide the Debtors with additional evidence that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

### G.      No Round-Skipping

To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit an Overbid with respect to such round of bidding and (ii) to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction.

### H.      Closing the Auction

The Auction shall continue until there is only one (1) Qualified Bid for the Assets (or one or more Qualified Bids for discrete portions of the Assets) that the Debtors determine, in their reasonable business judgment and in consultation with the Consultation Parties, is (or are) the highest and best Qualified Bid (or Qualified Bids) at the Auction.  Thereafter, the Debtors shall select such Qualified Bid(s), in consultation with the Consultation Parties, that is the best Qualified Bid (each such Qualified Bid, a "Successful Bid," and the Qualified Bidder submitting any such Successful Bid, the "Successful Bidder"), taking into account any factors the Debtors reasonably deem (in consultation with the Consultation Parties) relevant to the value and certainty of the Qualified Bid(s) to the Debtors' estates and may include, but are not limited to, the Bid Assessment Criteria, as the winner of the Auction and, at the time of such selection, shall announce the identity of each Successful Bidder and the amount and material terms of each Successful Bid to all attendees at the Auction.  Notwithstanding anything to the contrary herein, no Qualified Bid (other than a credit bid by one or more Prepetition Agents) may be the Successful Bid unless such Qualified Bid (which can be a combination of Bids as described above) provides for payment of cash consideration at the closing of the Sale Transaction contemplated by such Qualified Bid in an amount equal to or greater than the aggregate amount of Obligations as defined in the applicable Prepetition Credit Agreement that have been credit bid by, or on behalf of, the Prepetition Bridge Agent, Prepetition OpCo Agent, or the Prepetition PropCo Agent, as applicable.

The Auction shall not conclude until the Successful Bidder(s) submit(s) fully executed sale and transaction documents memorializing the terms of the Successful Bid(s).

Promptly following the Debtors' selection of the Successful Bid(s) and the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court notice of the Successful Bid(s) and Successful Bidder(s), along with the Modified APA and Modified Sale Order reflecting the Successful Bid(s).  The Debtors shall not consider any Bids or Overbids submitted after the Auction has closed, and any and all Bids or Overbids submitted after the conclusion of the Auction shall be deemed untimely and shall under no circumstances constitute a Bid or Overbid.

### I.      Back-Up Bidder

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder(s) with the next highest and otherwise best Bid to the Successful Bid(s) at the Auction for the applicable Assets, as determined by the Debtors, in the exercise of their reasonable business judgment and after consulting with the Consultation Parties, will be designated as a back-up bidder (each a "Back-Up Bidder").   The identity of the Back-Up

Bidder(s) and the amount and material terms of the Back-Up Bid(s) shall be announced by the Debtors at the same time the Debtors announce the identity of the Successful Bidder(s).

The Back-Up Bidder(s) shall be required to keep its (or their) initial Qualified Bid(s) (or if a Back-Up Bidder submitted one or more Overbids at the Auction, such Back-Up Bidder's final Overbid) (each a "Back-Up Bid") open and irrevocable until the earlier of (i) the closing of the Sale Transaction contemplated by the applicable Successful Bid and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of entry of the Sale Order, which date will be extended for an additional thirty (30) days if the only condition to closing the applicable Successful Bid on the sixtieth (60th) day after entry of the Sale Order is satisfaction of regulatory approvals required under the applicable Modified APA.

If a Successful Bid is terminated for any reason prior to consummation of the Sale Transaction contemplated thereby (a "Successful Bid Failure"), the Debtors will be authorized, without further order of the Bankruptcy Court, to consummate the Sale Transaction contemplated by the applicable Back-Up Bid with the applicable Back-Up Bidder; *provided* that the Debtors shall provide prompt notice of such Successful Bid Failure to the Consultation Parties and the Debtors shall post a notice on the docket of the Chapter 11 Cases regarding the Successful Bid Failure and the consummation of such Sale Transaction with the applicable Back-Up Bidder.  In the case of a Successful Bid Failure, the Successful Bidder's deposit shall be forfeited to the Debtors or returned to the applicable Successful Bidder in accordance with the terms of the terminated Modified APA.  The Debtors, on their behalf and on behalf of each of their respective estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Back-Up Bidder following a Successful Bid Failure) in accordance with the terms of the Bidding Procedures, the Bidding Procedures Order, or the Modified APA, as applicable.

**J.    Notice of Bid Results**

Absent further order or direction of the Court, the Debtors shall file copies of the following: (a) a notice designating each Successful Bid and the Back-Up Bid, if any, and the terms of each such bid (the "Successful Bidder Notice") and (b) final form(s) of order(s) approving the Sale Transaction(s) as agreed upon between the Debtors (in consultation with the Consultation Parties) and the Successful Bidder(s) (the "Sale Order(s)").

**K.    Sale Hearing and Approval of the Sale Transaction**

A hearing to consider the approval of the Sale Transaction (the "Sale Hearing"), is currently scheduled to take place on **December 6, 2023 at [10:00] [a.m.] (prevailing Eastern Time)**, before Honorable [●], at the United States Bankruptcy Court for the District of Delaware, 824 N Market Street, Wilmington, Delaware 19801, or conducted consistent with the procedures established pursuant to the Bankruptcy Court.

At the Sale Hearing, certain findings will be sought from the Bankruptcy Court, including, among other things, that: (1) the Auction was conducted (if held) and each Successful Bidder was selected, in each case in accordance with the Bidding Procedures; (2) the Auction

(if held) was fair in substance and procedure; (3) the Successful Bid(s) and Back-Up Bid(s) were Qualified Bids as defined in the Bidding Procedures; and (4) consummation of any Sale Transaction as contemplated by the Successful Bid(s) in the Auction will provide the highest and best offer for the Assets and is in the best interests of the Debtors and their estates. **The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice prior to, or making an announcement at, the Sale Hearing (subject in all cases to approval of the Bankruptcy Court).**

All general objections to the Sale Transaction and entry of any Sale Order must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Bankruptcy Court; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Bankruptcy Court and served **so as to be actually received by the Debtors and counsel to the Debtors on November 21, 2023 at 4:00 p.m. (prevailing Eastern Time)**.

All Adequate Assurance Objections must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Bankruptcy Court; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Bankruptcy Court and served **so as to be actually received by no later than December 1, 2023 at 4:00 p.m. (prevailing Eastern Time)** on the Objection Notice Parties.

**L.    Additional Procedures**

The Debtors, after consulting with the Consultation Parties, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures and do not impose additional requirements on the Prepetition Agents; *provided* that any Qualified Bidder shall have the right to request a telephonic hearing before the Bankruptcy Court in the event the Qualified Bidder disputes that the proposed additional rule is reasonable or not inconsistent in any material respect with the Bidding Procedures or does not impose additional requirements on the Prepetition Agents.

<u>**Consent to Jurisdiction and Authority as Condition to Bidding**</u>

All Qualified Bidders shall be deemed to have (1) consented to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, any Modified APA, the Auction, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction, (2) **WAIVED ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THE DEBTORS, THESE CHAPTER 11 CASES, THE BIDDING PROCEDURES, THE AUCTION, ANY MODIFIED APA, ANY SALE TRANSACTION, OR THE CONSTRUCTION AND ENFORCEMENT OF DOCUMENTS RELATING TO ANY SALE TRANSACTION**, and (3) consented to entry of a final order or judgment in any way related to the Debtors, these Chapter 11 Cases, the Bidding

Procedures, the Auction, any Modified APA, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

## Sale Is As Is/Where Is

Except as may be set forth in the Modified APA, the Assets sold pursuant to the Bidding Procedures shall be conveyed at the closing of such sale in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**."

## Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court or as set forth below.  The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Back-Up Bidder shall be returned to such Qualified Bidder not later than five (5) Business Days after consummation of the Sale Transaction or upon the permanent withdrawal of the proposed Sale Transaction.  The Good Faith Deposit of a Back-Up Bidder, if any, shall be returned to such Back-Up Bidder (or retained by the estates) upon the termination of such Back-Up Bidder's Bid in accordance with its terms.  If a Successful Bidder timely closes the Sale Transaction contemplated in the Successful Bid, its Good Faith Deposit shall be credited towards the purchase price and become property of the estate.  If a Successful Bidder (or, if the Sale Transaction is to be consummated with the applicable Back-Up Bidder, then such Back-Up Bidder) fails to consummate the Sale Transaction because of a breach or failure to perform on the part of such Bidder, then the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale Transaction is to be consummated with a Back-Up Bidder, then such Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform.  For the avoidance of doubt, the Debtors' retention of a Good Faith Deposit shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or a Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.

## Reservation of Rights of the Debtors and Modifications

Except as otherwise provided in the Bidding Procedures Order, the Debtors further reserve the right as the Debtors may reasonably determine in their discretion, after consultation with the Consultation Parties, to be in the best interest of the Debtors' estates to: (i) determine which Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid (or Qualified Bids) is the highest and best bid and which is the next highest and best bid; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) impose additional terms and conditions with respect to all potential bidders; (vii) make non-material modifications to the Bidding Procedures; and (viii) implement additional procedural rules with respect to the conduct of the Auction that the Debtors determine (together with the Bidding Procedures, the "Auction Rules"), in their reasonable business judgment, will better promote the goals of the bidding process and are not inconsistent with any Bankruptcy Court order, the Bankruptcy Code or any rights of the Prepetition Agents under these Bidding Procedures; *provided* that nothing herein shall limit any party in interest's right to file an objection with the Bankruptcy Court with respect to any Auction Rules (other than the Bidding Procedures).

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require the Debtors to take any action or to refrain from taking any action related to any Sale Transaction to the extent taking or failing to take such action would be inconsistent with applicable law or the Debtors' fiduciary obligations, if any, under applicable law; *provided*, *however*, that the Debtors shall promptly provide the Consultation Parties and any Qualified Bidders with notice of such action or inaction and, to the extent any such action or inaction would constitute a material change from the Bidding Procedures, the Debtors shall first seek approval from the Bankruptcy Court for such action or inaction.

**<u>Exhibit 2</u>**

**Form of Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
|  | ) |
| MVK FARMCO LLC, *et al.*,[1] | ) Case No. 23-11721 (LSS) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |
|  | ) **Re: Docket No. __** |

### NOTICE OF
### BIDDING PROCEDURES,
### AUCTION, AND SALE HEARING

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware (the "Court") on October 13, 2023 (the "Petition Date").

**PLEASE TAKE FURTHER NOTICE** that, on October 13, 2023, the Debtors filed a motion [Docket No. [●]] (the "Bidding Procedures Motion")[2] with the Court seeking entry of an order, (a) approving the Bidding Procedures in connection with the sale of substantially all of the Assets, as attached to the Bidding Procedures Order as Exhibit 1, (b) approving the form and manner of this notice, the Bid Deadline, the Auction, and the Sale Hearing, substantially in the form attached to the Bidding Procedures Order as Exhibit 2, (c) scheduling an Auction and Sale Hearing to consider approval of the proposed Sale Transaction, (d) approving procedures for the assumption and assignment of Contracts, (e) approving the sale of the Assets free and clear, and (f) granting related relief.

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2023, the Court entered an order [Docket No. [●]] (the "Bidding Procedures Order") approving, among other things, the Bidding Procedures, which establish the key dates and times related to the Sale Transaction and the Auction, if necessary, to determine the Successful Bidder. All interested parties should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.[3]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201). The location of the Debtors' service address is: 7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures or Bidding Procedures Motion, as applicable.

[3] To the extent of any inconsistencies between the Bidding Procedures and the summary descriptions of the Bidding Procedures in this notice, the terms of the Bidding Procedures shall control in all respects.

## Contact Information for Parties Interested in Submitting a Bid

The Bidding Procedures set forth the requirements for submitting a Qualified Bid, and any person interested in acting as a Bidder must comply strictly with the Bidding Procedures. The Debtors, in accordance with the Bidding Procedures, will consider only Qualified Bids.

**Any interested party should contact, as soon as practicable:**

**Houlihan Lokey Capital, Inc.**
111 S Wacker Dr., Floor 37
Chicago, IL 60606
Attn:

| Ryan Sandahl | Steve Balash | Dane Lewis |
|---|---|---|
| RSandahl@HL.com | SBalash@HL.com | DGLewis@HL.com |
| (tel.) +1 (312) 456-4796 | (tel.) +1 (312) 462-6455 | (tel.) +1 (312) 462-6459 |

## Obtaining Additional Information

Copies of the Bidding Procedures Motion, the Bidding Procedures, and the Bidding Procedures Order, as well as all related exhibits, including all other documents filed with the Court, are available free of charge on the Debtors' restructuring website, https://cases.stretto.com/primawawona.

## Important Dates and Deadlines[4]

1. **Stalking Horse Bidder Designation**.  The deadline for the Debtors to designate a Stalking Horse is **November 14, 2023**.

2. **Stalking Horse Objection Deadline**.  The deadline to file an objection with the Court to object to the bid protections set forth in the Stalking Horse Notice or the form of Stalking Horse Order, if the Debtors choose to designate a Stalking Horse Bidder, is **no later than one (1) day after the filing of the Stalking Horse Notice at 5:00 p.m. (prevailing Eastern Time)**.

3. **Bid Deadline**.  The deadline to submit a Qualified Bid is **November 17, 2023 at 5:00 p.m. (prevailing Eastern Time)**.

4. **Sale Transaction Objection Deadline**.  The deadline to file an objection with the Court to the Sale Transaction (if any) (collectively, the "Sale Transaction Objections") is **November 21, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "Sale Transaction Objection Deadline").

---

[4]    The following dates and deadlines may be extended by the Debtors or the Court pursuant to the terms of the Bidding Procedures and the Bidding Procedures Order.

30866585.1

5. **Assumption and Assignment Objection Deadline**.  The deadline to file an objection with the Court to object to the proposed assumption and assignment (if any) (collectively, the "<u>Assumption and Assignment Objection</u>") is **November 22, 2023 at 4:00 p.m. (prevailing Eastern Time)** (the "<u>Assumption and Assignment Objection Deadline</u>").

6. **Auction**.  If the Debtors receive multiple Qualified Bids prior to the Bid Deadline, and subject to the satisfaction of any further conditions set forth in the Bidding Procedures, the Debtors intend to conduct an Auction to determine the Successful Bidder.  Only (a) Qualified Bidders and each of their respective legal and financial advisors and (b) the Consultation Parties shall be entitled to attend the Auction and the Qualified Bidders shall appear at the Auction in person and may speak or bid themselves or through duly authorized representatives.  Only Qualified Bidders are eligible to bid at the Auction. The Auction, if one is held, will commence on **November 28, 2023 at 9:00 a.m. (prevailing Central Time) / 10:00 a.m. (prevailing Eastern Time)** in person at the office of Kirkland & Ellis LLP, 300 N LaSalle Dr., Chicago, IL 60654 or via remote video at the Debtors' election, or such later date and time as selected by the Debtors, who shall notify all Qualified Bidders.

7. **Time for Debtors to Provide Notice of Results of Auction**.  On **November 29, 2023 at 4:00 p.m. (prevailing Eastern Time)**, or as soon as reasonably practicable after the close of the Auction, the Debtors shall (a) file the Successful Bidder Notice with the Court (which notice shall identify the Successful Bidder, the amount of the Successful Bid, the Back-Up Bid, and the amount of the Back-Up Bid(s)) and (b) cause the Successful Bidder Notice to be published on the Debtors' restructuring website, https://cases.stretto.com/primawawona.

8. **Adequate Assurance Objection Deadline**.  The deadline to object to the Sale, but solely as to the adequate assurance of future performance of the Successful Bidder(s) is **December 1, 2023 at 4:00 p.m.** (the "<u>Adequate Assurance Objection Deadline</u>").

9. **Sale Transaction Reply Deadline**.  The deadline for the Debtors and any other parties supporting the Sale Transaction to file with the Court replies to Sale Transaction Objections or other statements in support of the Sale Transaction is **December 4, 2023 at 12:00 p.m. (prevailing Eastern Time)**.

10. **Sale Hearing**.  A hearing to consider the proposed Sale Transaction will be held before the Court no later than **December 6, 2023**, or such other date as determined by the Court, at 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

## <u>Filing Objections</u>

Sale Transaction Objections, Assumption and Assignment Objections, and Adequate Assurance Objections, if any, must (a) be in writing, (b) state, with specificity, the legal and factual bases thereof, (c) be filed with the Court and served on (i) the Debtors, 7700 N. Palm Ave., Suite 206, Fresno, CA 93711; (ii) counsel to the Debtors, (a) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Ryan Blaine Bennett P.C.

(ryan.bennett@kirkland.com), Whitney C. Fogelberg (whitney.fogelberg@kirkland.com), Rob Jacobson (rob.jacobson@kirkland.com), and Dave Gremling (dave.gremling@kirkland.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Delaware, Wilmington, Delaware 19801, Attn: Joseph M. Barry (jbarry@ycst.com), Kenneth J. Enos (kenos@ycst.com), and Andrew A. Mark (amark@ycst.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 Attn:  Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); and (iv) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").

Sale Transaction Objections must be filed with the Court and served so as to be *actually received* by no later than **November 21, 2023 at 4:00 p.m.** (prevailing Eastern Time).

Cure Notice Objections must be filed with the Court and served so as to be *actually received* by no later than **November 22, 2023 at 4:00 p. m.** (prevailing Eastern Time).

Adequate Assurance Objections must be filed with the Court and served so as to be *actually received* by no later than **December 1, 2023 at 4:00 p.m.** (prevailing Eastern Time).

## CONSEQUENCES OF FAILING TO TIMELY ASSERT AN OBJECTION

**Except as otherwise ordered by the Court, any party or entity who fails to timely make an objection to the Sale Transaction on or before the applicable Objection Deadline in accordance with the Bidding Procedures Order and this notice shall be forever barred from asserting any objection to the Sale Transaction, including with respect to the transfer of the Assets free and clear of all liens, claims, encumbrances and other interests**.

Dated:  [●], 2023
Wilmington, Delaware

/s/ _____
Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:     (302) 571-1253
Email:         jbarry@ycst.com
               kenos@ycst.com
               amark@ycst.com

-and-

Ryan Blaine Bennett, P.C. (*pro hac vice* pending)
Whitney C. Fogelberg (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:     (312) 862-2200
Email:         ryan.bennett@kirkland.com
               whitney.fogelberg@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

30866585.1

**Exhibit 3**

**Form of Cure Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MVK FARMCO LLC, *et al.*,[22] | ) | Case No. 23-11721 (LSS) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

## NOTICE TO CONTRACT PARTIES TO POTENTIALLY
## ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU
OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO
AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR
MORE OF THE DEBTORS AS SET FORTH ON EXHIBIT A ATTACHED HERETO.**

---

**PLEASE TAKE NOTICE** that on [●], 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Approving the Form and Manner of Notice Thereof, (III) Scheduling an Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Contracts, and (V) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"),[23] authorizing the Debtors[24] to conduct an auction (the "Auction") to select the party to purchase the Assets. The Auction will be governed by the bidding procedures approved pursuant to the Bidding Procedures Order (attached to the Bidding Procedures Order as Exhibit 1, the "Bidding Procedures").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid, the Debtors **may** assume and assign to the Successful Bidder the contract or agreement listed on **Exhibit A** (each, an "Assigned Contract") to which you are a counterparty, upon approval of the Sale Transaction. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on **Exhibit A** attached hereto (the "Cure Amounts").

---

[22] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[23] All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or the Bidding Procedures Motion, as applicable.

[24] This relief granted in the Bidding Procedures Order is solely limited to the Debtors.

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Amounts, object to a proposed assignment to a Successful Bidder of any Assigned Contract, or object to the ability of a Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, your objection must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed Cure Amounts, state the correct cure amount alleged to be owed to the objecting Contract Counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served and **actually received no later than November 22, 2023, at 4:00 p.m. (prevailing Eastern Time)** (the "**Assumption and Assignment Objection Deadline**") by the Court and the following parties: (i) the Debtors, 7700 N. Palm Ave., Suite 206, Fresno, CA 93711; (ii) counsel to the Debtors, (a) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Ryan Blaine Bennett P.C. (ryan.bennett@kirkland.com), Whitney C. Fogelberg (whitney.fogelberg@kirkland.com), Rob Jacobson (rob.jacobson@kirkland.com), and Dave Gremling (dave.gremling@kirkland.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Delaware, Wilmington, Delaware 19801, Attn: Joseph M. Barry (jbarry@ycst.com), Kenneth J. Enos (kenos@ycst.com), and Andrew A. Mark (amark@ycst.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); and (iv) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").

**PLEASE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Amounts(s), (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of a Successful Bidder's ability to perform is filed by the Assumption and Assignment Objection Deadline, then (i) you will be deemed to have stipulated that the Cure Amounts as determined by the Debtors are correct, (ii) you will be forever barred, estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to a Successful Bidder on the grounds that such Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that any objection to the proposed assumption and assignment of an Assigned Contract or related Cure Amounts in connection with the Successful Bid that otherwise complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date as may be fixed by the Court.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such executory contracts and/or unexpired leases are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code and in accordance with the procedures allowing the Debtors and/or a Successful Bidder, as applicable, to designate any Assigned Contract as either rejected or assumed on a post-closing basis.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein (i) alters in any way the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) creates a postpetition contract or agreement, or (iii) elevates to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

**PLEASE TAKE FURTHER NOTICE** that you may obtain additional information concerning the above-captioned chapter 11 cases at the website maintained in these chapter 11 cases at https://cases.stretto.com/primawawona.

*[Remainder of page intentionally left blank]*

Dated: [●], 2023
Wilmington, Delaware

/s/ _____

Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:    jbarry@ycst.com
         kenos@ycst.com
         amark@ycst.com

-and-

Ryan Blaine Bennett, P.C. (*pro hac vice* pending)
Whitney C. Fogelberg (*pro hac vice* pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    ryan.bennett@kirkland.com
         whitney.fogelberg@kirkland.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

## Exhibit A

## Potentially Assumed Contracts[1]

---

[1]   The inclusion of a Contract on this list does not constitute an admission as to the executory or non-executory nature of the Contract, or as to the existence or validity of any claims held by the counterparty or counterparties to such Contract.  The Debtors reserve all rights with respect to assumption or rejection of any Contract included on this list.

## <u>Exhibit 4</u>

**Form of Successful Bidder Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-11721 (LSS) |
|  | ) |  |
| Debtors. | ) | (Joint Administration Requested) |
|  | ) |  |

### NOTICE OF SUCCESSFUL BIDDER

**PLEASE TAKE NOTICE** that, on October 13, 2023, each of the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed a petition with this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**PLEASE TAKE FURTHER NOTICE** that, on [●], 2023, the United States Bankruptcy Court for the District of Delaware (the "Court") entered the *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Approving the Form and Manner of Notice Thereof, (III) Scheduling an Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Contracts, and (V) Granting Related Relief* [Docket No. [●]] (the "Bidding Procedures Order"), authorizing the Debtors to solicit and select the highest or otherwise best offer(s) for a sale (or sales) (each, a "Sale Transaction") of (a) all or substantially all of the assets or (b) one or more, or any combination of, assets of one or more Debtors (collectively, the "Assets").[2]

**PLEASE TAKE FURTHER NOTICE** that, on November 28, 2023 at 9:00 a.m. (prevailing Central Time) / 10:00 a.m. (prevailing Eastern Time), pursuant to the Bidding Procedures Order, the Debtors conducted the Auction with respect to the Assets at the office of Kirkland & Ellis LLP, 300 N. LaSalle Dr., Chicago, IL 60654 or via remote video at the Debtors' election.

**PLEASE TAKE FURTHER NOTICE** that, upon the conclusion of the Auction, the Debtors, in the exercise of their reasonable, good-faith business judgement, and in consultation with the Consultation Parties, have selected (a) [●] as a Successful Bidder (the "Purchaser"), and (b) [●] as a Back-Up Bidder.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201). The location of the Debtors' service address is: 7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, the Debtors (collectively, the "Sellers") and [●] (as Purchaser) entered into that certain purchase and sale agreement (the "Purchase Agreement") to effectuate the Sale Transaction on the terms set forth in the Purchase Agreement, filed contemporaneously herewith.

**PLEASE TAKE FURTHER NOTICE** that the Debtors have determined to effectuate the Sale Transaction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the Sale Transaction of these Assets to the Purchaser at the Sale Hearing scheduled to commence on *December 6, 2023, at [10:00] a.m. (prevailing Eastern Time)* before the Honorable [●], United States Bankruptcy Judge for the Bankruptcy Court for the District of Delaware, at 824 North Market Street, [●] Floor, Courtroom No. [●], Wilmington, Delaware 19801. The Sale Hearing may be adjourned by announcement in open Court or on the Court's calendar without any further notice required.

**PLEASE TAKE FURTHER NOTICE** that objections specific to the Auction or a Successful Bidder must be made on or before *December 1, 2023 at 4:00 p.m. (prevailing Eastern Time)* (the "Auction Objection Deadline"). Objections must be made in writing, state the basis of such objection with specificity, and shall be filed with the Court, with a courtesy copy to chambers, and must be filed no later than the Auction Objection Deadline, as applicable, and must be served on the following parties (the "Notice Parties"): (i) the Debtors, 7700 N. Palm Ave., Suite 206, Fresno, CA 93711; (ii) counsel to the Debtors, (a) Kirkland & Ellis LLP, 300 North LaSalle Street, Chicago, Illinois 60654, Attn: Ryan Blaine Bennett P.C. (ryan.bennett@kirkland.com), Whitney C. Fogelberg (whitney.fogelberg@kirkland.com), Rob Jacobson (rob.jacobson@kirkland.com), and Dave Gremling (dave.gremling@kirkland.com) and (b) Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Delaware, Wilmington, Delaware 19801, Attn: Joseph M. Barry (jbarry@ycst.com), Kenneth J. Enos (kenos@ycst.com), and Andrew A. Mark (amark@ycst.com); (iii) the Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801 Attn: Rosa Sierra-Fox (rosa.sierra-fox@usdoj.gov); and (iv) any other party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Objection Notice Parties").

**PLEASE TAKE FURTHER NOTICE**, that at the Sale Hearing, the Debtors will seek the Court's approval of the Successful Bid by the Purchaser. Unless the Court orders otherwise, the Sale Hearing shall be an evidentiary hearing on matters relating to the Sale Transaction, and there will be no further bidding at the Sale Hearing.

**PLEASE TAKE FURTHER NOTICE** that this Successful Bidder Notice is subject to the terms and conditions of the Bidding Procedures Motion and the Bidding Procedures Order, with such Bidding Procedures Order controlling in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety.

**PLEASE TAKE FURTHER NOTICE** that you may obtain additional information concerning the above-captioned chapter 11 cases at the website maintained in these chapter 11 cases at https://cases.stretto.com/primawawona.

Dated:  [●], 2023                            /s/
Wilmington, Delaware                         _____
                                             Joseph Barry (Del. Bar No. 4221)
                                             Kenneth J. Enos (Del. Bar No. 4544)
                                             Andrew A. Mark (Del. Bar No. 6861)
                                             **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
                                             Rodney Square
                                             1000 North King Street
                                             Wilmington, Delaware 19801
                                             Telephone:    (302) 571-6600
                                             Facsimile:    (302) 571-1253
                                             Email:        jbarry@ycst.com
                                                           kenos@ycst.com
                                                           amark@ycst.com

                                             -and-

                                             Ryan Blaine Bennett, P.C. (*pro hac vice* pending)
                                             Whitney C. Fogelberg (*pro hac vice* pending)
                                             **KIRKLAND & ELLIS LLP**
                                             **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                             300 North LaSalle Street
                                             Chicago, Illinois 60654
                                             Telephone:    (312) 862-2000
                                             Facsimile:    (312) 862-2200
                                             Email:        ryan.bennett@kirkland.com
                                                           whitney.fogelberg@kirkland.com


                                             *Proposed Co-Counsel for the Debtors and Debtors in Possession*

30866585.1                                   4