# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-11721 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## JOINT CHAPTER 11 PLAN OF
## MVK FARMCO LLC AND ITS DEBTOR AFFILIATES

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Whitney C. Fogelberg (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    ryan.bennett@kirkland.com
    whitney.fogelberg@kirkland.com

Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:    jbarry@ycst.com
    kenos@ycst.com
    amark@ycst.com

*Proposed Co-Counsel for the Debtors and Debtors in Possession*        *Proposed Co-Counsel for the Debtors and Debtors in Possession*

Dated: November 21, 2023

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201). The location of the Debtors' service address is: 7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

## TABLE OF CONTENTS

## CONTENTS

INTRODUCTION....................................................................................................1

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ................................................................1**
A.    Defined Terms. .............................................................................................1
B.    Rules of Interpretation. ...............................................................................17
C.    Computation of Time.....................................................................................18
D.    Governing Law. .............................................................................................18
E.    Reference to Monetary Figures. ...................................................................19
F.    Reference to the Debtors, the Reorganized Debtors, or the Wind-Down Debtors. ...........19
G.    No Substantive Consolidation; Limited Administrative Consolidation. ..........................19
H.    Controlling Document. ...................................................................................19

**ARTICLE II ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS ..............................................................................19**
A.    Administrative Claims and Priority Tax Claims.............................................19
B.    Professional Fee Claims.................................................................................20
C.    Statutory Fees.................................................................................................22
D.    Restructuring Expenses..................................................................................22

**ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ....................................................................................................22**
A.    Classification of Claims and Interests............................................................22
B.    Summary of Classification.............................................................................22
C.    Treatment of Claims and Interests.................................................................23
D.    Special Provision Governing Unimpaired Claims.........................................30
E.    Elimination of Vacant Classes. .....................................................................30
F.    Voting Classes; Presumed Acceptance by Non-Voting Classes.....................30
G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ...30
H.    Subordinated Claims.......................................................................................31
I.    Controversy Concerning Impairment. ...........................................................31
J.    Intercompany Interests....................................................................................31

**ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN.....................31**
A.    General Settlement of Claims and Interests....................................................31
B.    Equitization Restructuring. ............................................................................32
C.    Asset Sales. ....................................................................................................35
D.    Wind-Down.....................................................................................................35
E.    Corporate Action.............................................................................................40
F.    Vesting of Assets in the Reorganized Debtors or the Wind-Down Debtors....................41
G.    Cancellation of Securities and Agreements. ..................................................41

H.    Effectuating Documents; Further Transactions. ...............................................42
I.    Exemption from Certain Taxes and Fees..........................................................42
J.    Preservation of Causes of Action....................................................................43

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................................................................................................................44**
A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ....................44
B.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases..............................................................................................46
C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases.......................46
D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ...................47
E.    Insurance Policies. ...........................................................................................48
F.    D&O Liability Insurance Policies......................................................................49
G.    Indemnification Obligations. ............................................................................49
H.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. ...........50
I.    Reservation of Rights.......................................................................................50
J.    Nonoccurrence of Effective Date......................................................................50

**ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS ...........................................50**
A.    Timing and Calculation of Amounts to Be Distributed. ....................................50
B.    Disbursing Agent. ............................................................................................51
C.    Rights and Powers of the Disbursing Agent. ....................................................51
D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ......................52
E.    Compliance with Tax Requirements/Allocations. ..............................................53
F.    Allocation of Plan Distributions Between Principal and Interest. ......................54
G.    Setoffs and Recoupment. .................................................................................54
H.    No Postpetition Interest on Claims. ..................................................................54
I.    Foreign Currency Exchange Rate. ....................................................................54
J.    Claims Paid or Payable by Third Parties. ..........................................................54
K.    Indefeasible Distributions. ...............................................................................55

**ARTICLE VII PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS ..................................................................55**
A.    Allowance of Claims and Interests. ..................................................................55
B.    Claims and Interests Administration Responsibilities. .......................................56
C.    Estimation of Claims and Interests. ..................................................................56
D.    Adjustment to Claims or Interests without Objection.........................................56
E.    Disallowance of Claims. ..................................................................................57
F.    Amendments to Claims. ...................................................................................57
G.    No Distributions Pending Allowance. ..............................................................57
H.    Distributions After Allowance. ........................................................................57
I.    Single Satisfaction of Claims...........................................................................58

**ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS...............................................................................................................58**
A.    Discharge of Claims and Termination of Interests. ...........................................58
B.    Term of Injunctions or Stays............................................................................59

C.      Release of Liens. ..................................................................................59
D.      Releases by the Debtors ......................................................................60
E.      Releases by Holders of Claims and Interests. ....................................61
F.      Exculpation. .........................................................................................63
G.      No Discharge of the Wind-Down Debtors...........................................63
H.      Injunction. ...........................................................................................63
I.      Protection Against Discriminatory Treatment. ...................................64
J.      Recoupment. ........................................................................................65
K.      Subordination Rights. ..........................................................................65
L.      Document Retention. ............................................................................65
M.      Reimbursement or Contribution. .........................................................65

**ARTICLE IX CONDITIONS PRECEDENT TO CONFIRMATION AND THE
EFFECTIVE DATE..........................................................................................65**
A.      Conditions Precedent to the Effective Date. .......................................65
B.      Waiver of Conditions............................................................................67
C.      Substantial Consummation. .................................................................67
D.      Effect of Non-Occurrence of Conditions to the Effective Date...........67

**ARTICLE X MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE
PLAN.................................................................................................................67**
A.      Modifications and Amendments............................................................67
B.      Effect of Confirmation on Modifications. ............................................68
C.      Revocation or Withdrawal of the Plan.................................................68

**ARTICLE XI RETENTION OF JURISDICTION ....................................................68**

**ARTICLE XII MISCELLANEOUS PROVISIONS ....................................................70**
A.      Immediate Binding Effect.....................................................................70
B.      Additional Documents...........................................................................71
C.      Dissolution of Statutory Committees....................................................71
D.      Reservation of Rights............................................................................71
E.      Successors and Assigns.........................................................................71
F.      Service of Documents............................................................................72
G.      Enforcement of Confirmation Order.....................................................72
H.      Compensation and Benefits Programs..................................................72
I.      Entire Agreement. ................................................................................73
J.      Exhibits. ...............................................................................................73
K.      Nonseverability of Plan Provisions......................................................73
L.      Votes Solicited in Good Faith...............................................................73
M.      Waiver...................................................................................................73

## INTRODUCTION

MVK FarmCo LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases propose this joint chapter 11 plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.  For the avoidance of doubt, the Plan does not contemplate substantive consolidation of any of the Debtors.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, risk factors, as well as a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.  Reference is also made to that certain Lender Support Agreement, by and among the Bridge Agents, the OpCo Agent, the PropCo Agent, and the Required Lenders.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings and effect ascribed to them below.

1.    "*Administrative Claim*" means a Claim against any of the Debtors for costs and expenses of administration of the Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' business; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code and; (d) Adequate Protection Superpriority Claims (as defined in the Cash Collateral Order).

2.    "*Administrative Claims Bar Date*" means the applicable deadline by which all requests for Administrative Claims must be Filed and served on the Debtors, which shall be 30 days after the Effective Date; *provided* that Filing a request for payment of Administrative Claims is not required where the Plan, Bankruptcy Code, or a Final Order does not require such Filing.

3.    "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such entity was a debtor in a case under the Bankruptcy Code.

4.      "*Allowed*" means, with respect to any Claim against or Interest in a Debtor, except as otherwise provided herein:  (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Claims Bar Date or a request for payment of an Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; (c) a Claim or Interest allowed pursuant to the Plan or a Final Order; *provided* that with respect to a Claim described in clause (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except for any Claim or Interest that is Secured by property of a value in excess of the principal amount of such Claim, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date. Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "*Allow*" and "*Allowing*" shall have correlative meanings.

5.      "*Asset Purchase Agreement*" means the definitive purchase agreement(s) to effectuate an Asset Sale, including all exhibits and schedules thereto, and as may be amended, modified, or supplemented in accordance with the terms thereof, substantially in the form to be attached to the applicable Sale Order.

6.      "*Asset Sale*" means a Credit Bid Sale and/or a Third Party Sale.

7.      "*Avoidance Actions*" means any and all Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors arising under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related Law.

8.      "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101--1532, as amended.

9.      "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

10.      "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States

Code, as applicable to the Chapter 11 Cases, and the general, local, and chambers' rules of the Bankruptcy Court.

11.    "*Bar Date Order*" means that certain *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 240].

12.    "*Bidding Procedures Order*" means the order of the Bankruptcy Court approving, among other things, the bidding procedures governing submission and evaluation of bids to purchase some or all of the Debtors' assets [Docket No. 252].

13.    "*Bridge Administrative Agent*" means Rabobank in its capacity as administrative agent under the Bridge Credit Agreement.

14.    "*Bridge Agents*" means the Bridge Administrative Agent, the Bridge PropCo Collateral Agent, and the Bridge OpCo Collateral Agent.

15.    "*Bridge Credit Agreement*" means that certain multi-draw senior secured superpriority priming credit agreement dated as of April 3, 2023, by and among the OpCo, PropCo, and GroupCo, as borrowers, the guarantors party thereto, the Bridge Lenders, and the Bridge Agents, as may be amended, restated, supplemented, or otherwise modified from time to time.

16.    "*Bridge Lenders*" means the lender parties to the Bridge Credit Agreement.

17.    "*Bridge New Money Term Loan Claims*" means the Claims arising from or in connection with the Bridge New Money Term Loans and any adequate protection claims granted on account of Bridge New Money Term Loan Claims under the Cash Collateral Order.

18.    "*Bridge New Money Term Loans*" means the outstanding term loans issued under the Bridge Credit Agreement.

19.    "*Bridge OpCo Collateral Agent*" means RBC, in its capacity as collateral agent with respect to the OpCo Collateral under (and as defined in) the Bridge Credit Agreement.

20.    "*Bridge OpCo Roll-Up Equitization Consideration*" means the consideration, including (i) Reorganized OpCo Equity distributed to Holders of Bridge OpCo Roll-Up Term Loan Claims as set forth in the Plan and the Plan Supplement, consistent with the Lender Support Agreement and (ii) the promissory note described in the Lender Support Agreement, if applicable, in each case in an Equitization Restructuring.

21.    "*Bridge OpCo Roll-Up Term Loan Claims*" means the Claims arising from or in connection with the Bridge OpCo Roll-Up Term Loans and any adequate protection claims granted on account of Bridge OpCo Roll-Up Term Loans under the Cash Collateral Order.

22.    "*Bridge OpCo Roll-Up Term Loans*" means the term loans issued under the Bridge Credit Agreement that resulted from the conversion of one dollar of the outstanding principal

amount of OpCo Loans into Bridge OpCo Roll-Up Term Loans for every dollar of committed Bridge New Money Term Loans, once drawn.

23. "*Bridge PropCo Collateral Agent*" means Rabobank, in its capacity as collateral agent with respect to the PropCo Collateral under the Bridge Credit Agreement.

24. "*Bridge Required Lenders*" means the Required Lenders under (and as defined in) the Bridge Credit Agreement.

25. "*Bridge Secured Claims*" means the Bridge New Money Term Loan Claims and the Bridge OpCo Roll-Up Term Loan Claims.

26. "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

27. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

28. "*Cash Collateral*" has the meaning ascribed to it under section 363(a) of the Bankruptcy Code.

29. "*Cash Collateral Order*" means the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, And 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 108], the Second *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, And 552 And Fed. R. Bankr. P. 2002, 4001, 6003, 6004, And 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 250], or a final order entered in the Chapter 11 Cases authorizing the use of Cash Collateral, as applicable.

30. "*Causes of Action*" means any and all actions, Claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, controversies, demands, rights, actions, Liens, indemnities, interests, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "Causes of Action" includes: (a) any rights of setoff, counterclaims, or recoupments, and any Claims for breach of contract or for breach of duties imposed by Law or in equity; (b) any and all Claims based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law, or breach of any duty imposed by Law or in equity, including Securities laws, negligence, and gross negligence; (c) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate, or disallow Claims or Interests; (d) any and all Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any and all Claims or defenses, including fraud, mistake,

duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any and all state or foreign Law fraudulent transfer or similar Claims; and (g) any Avoidance Action.

31.     "*Chapter 11 Cases*" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

32.     "*Claim*" has the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

33.     "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed with respect to Claims other than Administrative Claims allowable under sections 503(b) or 507(a)(2) of the Bankruptcy Code as an expense of administration incurred in the ordinary course, as established by the Bar Date Order or the Plan; provided that if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

34.     "*Claims Register*" means the official register of Claims against the Debtors maintained by the clerk of the Bankruptcy Court or the Notice, Claims, and Solicitation Agent.

35.     "*Class*" means a category of Holders of Claims or Interests as set forth in Article III of the Plan under section 1122 of the Bankruptcy Code.

36.     "*Collateral*" means any property or interest in property of the Estate of any Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance of any such Lien, charge, or other encumbrance.

37.     "*Committee*" means the statutory committee of unsecured creditors, appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 123].

38.     "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

39.     "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

40.     "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code at which the Debtors shall seek entry of the Confirmation Order.

41.     "*Confirmation Objection Deadline*" means the deadline by which any objections to Confirmation of the Plan must be Filed.

42.     "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Required Lenders.

43.    "*Consummation*" means the occurrence of the Effective Date.

44.    "*Credit Bid Sale*" means a sale of all or substantially all of the assets of the Debtors not otherwise sold in a Third Party Sale to the applicable Lender Purchaser pursuant to section 363(k) and/or section 1123(a)(5)(D) of the Bankruptcy Code free and clear of all Liens, Claims, charges, and other encumbrances pursuant to section 363(f) of the Bankruptcy Code.

45.    "*Credit Bid Sale Consideration*" means the consideration, including (i) equity in the applicable Lender Purchaser, to be distributed to Holders of Bridge OpCo Roll-Up Term Loans, OpCo Loans and/or PropCo Loans as and to the extent applicable pursuant to the terms of the applicable Credit Bid Sale and in accordance with the Lender Support Agreement Allocation and (ii) solely with respect to Holders of Bridge OpCo Roll-Up Term Loan Claims and Holders of OpCo Secured Claims, the promissory note described in the Lender Support Agreement, if applicable.

46.    "*Cure*" or "*Cure Claim*" means a monetary Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's default under any Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

47.    "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include:  (a) procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; (c) procedures for resolution by the Bankruptcy Court of any related disputes; and (d) represents that the proposed assignee (if applicable) has demonstrated its ability to comply with the requirements of adequate assurance of future performance, including the assignee's financial wherewithal and willingness to perform under such Executory Contract or Unexpired Lease.

48.    "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued at any time to any of the Debtors as a first named insured providing directors', members', trustees', officers', or managers' liability coverage.

49.    "*Debtor*" means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

50.    "*Debtors*" means, collectively:  MVK FarmCo LLC, MVK Intermediate Holdings LLC, Gerawan Farming LLC, Gerawan Supply, Inc., Gerawan Farming Partners LLC, Gerawan Farming Services LLC, PropCo, OpCo, and GFP LLC.

51.    "*Disbursing Agent*" means the Entity or Entities selected by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, to make or facilitate distributions contemplated under the Plan, which will be identified in the Plan Supplement.

52.    "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules attached thereto, and as amended, modified, or supplemented from time to time in accordance with the terms thereof.

53.    "*Disclosure Statement Order*" means the order of the Bankruptcy Court approving the Disclosure Statement.

54.    "*Disputed*" means, with respect to a Claim or Interest, a Claim or Interest, or any portion thereof, that is not yet Allowed or disallowed.

55.    "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which shall be the later of (a) 30 days after the Effective Date or (b) such other date as designated in a Final Order.

56.    "*Effective Date*" means, with respect to the Plan and any applicable Debtors, the date that is the first Business Day after the Confirmation Date on which all conditions precedent set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

57.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

58.    "*Equitization Restructuring*" means, in the event the applicable Required Lenders elect to consummate a restructuring transaction by receiving equity in the applicable Reorganized Debtor(s) through the Plan rather than pursuant to section 363 of the Bankruptcy Code, a restructuring transaction pursuant to which the Bridge Lenders (in respect of their Bridge OpCo Roll-Up Term Loans), the OpCo Lenders and the PropCo Lenders, as the case may be, shall receive (among the other consideration set forth in Article III) equity in the applicable Reorganized Debtor(s) pursuant to the Plan and consistent with the Lender Support Agreement.

59.    "*Estate*" means, as to each Debtor, the estate created for such Debtor pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

60.    "*Excess Sale Proceeds*" means, in the event of a Third Party Sale, an amount equal to (a) the aggregate net cash proceeds of such Third Party Sale, less (b) the aggregate amount required (i) to pay in full in Cash all Allowed Claims that are senior to General Unsecured Claims in priority of payment under the Bankruptcy Code (including the satisfaction in full of the Bridge Secured Claims, the PropCo Secured Claims, the OpCo Secured Claims and all Administrative Claims (including any and all transaction costs related to the Third Party Sale)) or applicable nonbankruptcy law and (ii) if such Third Party Sale is not combined with an Equitization Restructuring, to fund the Wind-Down Budget.

61.    "*Exculpated Party*" means, collectively, and, in each case, solely in their respective capacities as such: (a) the Debtors; (b) the independent directors of any Debtor; (c) the Committee and each of its members; (d) each current and former Affiliate of each Entity in clause (a) through the following clause (e); and (e) each Related Party of each Entity in clause (a) through this clause

(e) that served in such capacity between the Petition Date and the Effective Date, each in their capacity as such.

62.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code, including, without limitation, the Master Lease Agreement.

63.    "*Existing Equity Interests*" means, collectively, all Interests in MVK FarmCo LLC outstanding immediately prior to the Effective Date.

64.    "*Exit Bridge Credit Agreement*" means the definitive credit agreement governing the Exit Bridge Facility, a form of which shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the Bridge Required Lenders.

65.    "*Exit Bridge Facility*" means a credit facility provided for under the Exit Bridge Credit Agreement in the amount of outstanding Bridge New Money Term Loans and with the Reorganized Debtors as obligors, which shall be secured as provided in the Plan Supplement.

66.    "*Exit Bridge Facility Term Loans*" means the loans issued under the Exit Bridge Credit Agreement

67.    "*Exit OpCo Credit Agreement*" means the definitive credit agreement governing the Exit OpCo Facility, a form of which shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the OpCo Required Lenders.

68.    "*Exit OpCo Facility*" means a credit facility provided for under the Exit OpCo Credit Agreement with the Reorganized Debtors that are the successor to the obligors under the OpCo Facility, which credit facility may provide for (i) new money loans that are senior to the Exit Bridge Facility (if acceptable to the Bridge Required Lenders) and/or (ii) loans exchanged for Bridge OpCo Roll-Up Term Loans and OpCo Loans that are junior to the Exit Bridge Facility, and which shall be secured as provided in the Plan Supplement.

69.    "*Exit OpCo Facility Term Loans*" means the loans issued under the Exit OpCo Credit Agreement.

70.    "*Exit PropCo Credit Agreement*" means the definitive credit agreement governing the Exit PropCo Facility, a form of which shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the PropCo Required Lenders.

71.    "*Exit PropCo Facility*" means a credit facility provided for under the Exit PropCo Credit Agreement with the Reorganized Debtors that are the successor to the obligors under the PropCo Facility, which credit facility may provide for (i) new money loans that are senior to the Exit Bridge Facility (if acceptable to the Bridge Required Lenders) and/or (ii) loans exchanged for PropCo Loans that are junior to the Exit Bridge Facility, and which shall be secured as provided in the Plan Supplement.

72.    "*Exit PropCo Facility Term Loans*" means the loans issued under the Exit PropCo Credit Agreement.

73.    "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in the 1961 Judicial Code.

74.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice, Claims, and Solicitation Agent or the Bankruptcy Court.

75.    "*Final Order*" means an order of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, that is not stayed, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order could be appealed or from which certiorari could be sought or the new trial, re-argument, or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

76.    "*General Unsecured Claim*" means any Claim that is not:  (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a Priority Claim; (c) an Other Priority Claim; (d) a Secured Claim; (e) an Other Secured Claim; (f) an Intercompany Claim; (g) a Professional Fee Claim; or (h) a Section 510(b) Claim.

77.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

78.    "*GroupCo*" means MVK Intermediate Holdings LLC.

79.    "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

80.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

81.    "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor.

82.    "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor.

83.    "*Interest*" means the common stock, preferred stock, limited liability company interests, equity Security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other Securities or agreements to acquire the common stock (including convertible debt), preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement).

84.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly

adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

85.     "*Lender Purchaser*" means, in the event the Secured Lenders collectively or separately acquire all, or one or more assets pursuant to a sale in lieu of an Equitization Restructuring, the applicable Secured Lender(s) or one or more new Delaware limited liability companies, corporations, or other entities that will be organized and formed at the direction of the applicable Required Lenders to make such acquisition.

86.     "*Lender Support Agreement*" means that certain support agreement among lenders, made and entered into as of October 12, 2023, by and among the Bridge Lenders signatory thereto, the PropCo Lenders signatory thereto, the OpCo Lenders signatory thereto, the PropCo Agent, the OpCo Agent, and the Bridge Agents, including all exhibits thereto, by and among the parties thereto, as may be amended, modified, or supplemented from time to time, in accordance with its terms.

87.     "*Lender Support Agreement Allocation*" means the allocation of consideration of any Asset Sale, as follows: [●].[2]

88.     "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

89.     "*Master Lease Agreement*" means that certain Amended and Restated Master Lease Agreement dated as of September 13, 2019, by and among OpCo, Gerawan Farming Partners LLC, Gerawan Farming LLC, Gerawan Farming Services LLC, GFP LLC, and Gerawan Supply, Inc., as tenants, and PropCo, as landlord.

90.     "*New Organizational Documents*" means the documents providing for corporate governance of the Reorganized Debtors, which shall be in form and substance satisfactory to the applicable Required Lenders.

91.     "*Notice, Claims, and Solicitation Agent*" means Stretto, Inc., solely in its capacity as notice, claims, and solicitation agent for the Debtors in the Chapter 11 Cases.

92.     "*OpCo*" means Wawona Packing Co. LLC.

93.     "*OpCo Agent*" means RBC in its capacity as administrative agent under the OpCo Credit Agreements.

94.     "*OpCo Collateral*" means all Collateral securing the OpCo Secured Claims.

95.     "*OpCo Credit Agreements*" means that OpCo Term Loan Credit Agreement and the OpCo Incremental Credit Agreement.

---

[2]    An update to the chapter 11 plan that includes a revised definition of "Lender Support Agreement Allocation" and certain other related changes will be filed by the Debtors as promptly as practicable following the conclusion of the Auction (as defined in the Bidding Procedures Order), if any, and prior to any hearing before the Bankruptcy Court to consider the adequacy of the Disclosure Statement.

96. "*OpCo Credit Parties*" means OpCo, GroupCo, Gerawan Supply, Inc., Gerawan Farming LLC, Gerawan Farming Services LLC, GFP LLC, Gerawan Farming Partners LLC.

97. "*OpCo Equitization Consideration*" means the consideration, including (i) Reorganized OpCo Equity distributed to Holders of OpCo Secured Claims as set forth in the Plan and the Plan Supplement, consistent with the Lender Support Agreement and (ii) the promissory note described in the Lender Support Agreement, if applicable, in each case in an Equitization Restructuring.

98. "*OpCo Facility*" means that secured credit facility provided for under the OpCo Credit Agreements.

99. "*OpCo Incremental Credit Agreement*" means that certain incremental revolving credit agreement dated May 26, 2020 (as amended, restated, supplemented, or otherwise modified), by and among GroupCo and OpCo, as borrowers, the OpCo Lenders, and the OpCo Agent.

100. "*OpCo Lenders*" means the lender parties to the OpCo Credit Agreements.

101. "*OpCo Loans*" means the outstanding loans issued under the OpCo Credit Agreements.

102. "*OpCo Required Lenders*" means the Required Lenders under (and as defined in) the OpCo Credit Agreements.

103. "*OpCo Secured Claims*" means Claims arising from or in connection with the OpCo Loans and any adequate protection claims granted on account of OpCo Loans under the Cash Collateral Order.

104. "*OpCo Term Loan Credit Agreement*" means that certain term loan credit agreement dated as of September 13, 2019, as amended, restated, supplemented, or otherwise modified from time to time, by and among, inter alia, GroupCo and OpCo as borrowers, the guarantor parties thereto, the OpCo Lenders, and the OpCo Agent.

105. "*Ordinary Course Professional*" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with an order of the Bankruptcy Court establishing procedures for the employment of Entities (other than Professionals) in the ordinary course of the Debtors' business.

106. "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

107. "*Other Secured Claim*" means any Secured Claim (including secured tax claims) against any of the Debtors, other than the Bridge Secured Claims, the PropCo Secured Claims, and the OpCo Secured Claims.

108. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

109.    "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

110.    "*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified, or supplemented from time to time in accordance with the terms hereof).

111.    "*Plan Administrator*" means the Person or Entity, or any successor thereto, designated by the Debtors to have all powers and authorities set forth in the Plan and the Plan Administrator Agreement.

112.    "*Plan Administrator Agreement*" means that certain agreement by and among the Debtors, the Plan Administrator, and the Wind-Down Debtors, which shall be included in the Plan Supplement.

113.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed at least seven days prior to the deadline to object to Confirmation of the Plan, as set forth in the Disclosure Statement Order or such later date as may be approved by the Bankruptcy Court, and additional documents or amendments to previously Filed documents, Filed before the Confirmation Date as amendments to the Plan Supplement, or such later date as may be approved by the Bankruptcy Court, including the following, as applicable: (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) Schedule of Retained Causes of Action; (c) the Wind-Down Budget, if applicable; (d) the Plan Administrator Agreement, if applicable; (e) the Exit Bridge Credit Agreement, if applicable; (f) the Exit OpCo Credit Agreement, if applicable; (g) the Exit PropCo Credit Agreement, if applicable; (h) the New Organizational Documents; (i) the Restructuring Transaction Memorandum; and (j) any other necessary documentation related to the Restructuring Transactions.

114.    "*Priority Claims*" means, collectively, Administrative Claims and Priority Tax Claims.

115.    "*Priority Tax Claim*" means any Claim against the Debtors of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

116.    "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

117.    "*Professional*" means an Entity (other than an Ordinary Course Professional): (a) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

118.    "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of this Plan.

119.    "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

120.    "*Professional Fee Escrow Account*" means an account funded by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, on the Effective Date in an amount equal to the total Professional Fee Amount.

121.    "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

122.    "*PropCo*" means Wawona Farm Co. LLC.

123.    "*PropCo Agent*" means Wilmington Trust, as successor to Rabobank in its capacity as administrative agent under the PropCo Credit Agreement.

124.    "*PropCo Collateral*" means all Collateral securing the PropCo Secured Claims.

125.    "*PropCo Credit Agreement*" means that certain amended and restated credit agreement dated as of September 13, 2019, as amended, restated, supplemented or otherwise modified from time to time, by and among, inter alia, PropCo, as borrower, the lender parties thereto, and the PropCo Agent.

126.    "*PropCo Credit Parties*" means PropCo.

127.    "*PropCo Equitization Consideration*" means the Reorganized PropCo Equity distributed to Holders of PropCo Secured Claims as set forth in the Plan and the Plan Supplement, consistent with the Lender Support Agreement, in an Equitization Restructuring.

128.    "*PropCo Facility*" means that secured credit facility provided for under the PropCo Credit Agreement.

129.    "*PropCo Lenders*" means the lender parties to the PropCo Credit Agreement.

130.    "*PropCo Loans*" means the outstanding loans issued under the PropCo Credit Agreement.

131.    "*PropCo Required Lenders*" means the Required Lenders under (and as defined in) the PropCo Credit Agreement.

132. "*PropCo Secured Claims*" means Claims arising from or in connection with the PropCo Loans and any adequate protection claims granted on account of PropCo Loans under the Cash Collateral Order.

133. "*Purchaser*" means the Entity or Entities that purchase the Debtors' assets pursuant to the applicable Asset Purchase Agreement as set forth in the applicable Sale Order.

134. "*Rabobank*" means Coöperatieve Rabobank U.A., New York Branch.

135. "*RBC*" means Royal Bank of Canada.

136. "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

137. "*Related Party*" means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

138. "*Released Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable; (b) the Plan Administrator; (c) the Committee, and each of its members; (d) each Bridge Agent; (e) each Bridge Lender; (f) the OpCo Agent; (g) each OpCo Lender; (h) the PropCo Agent; (i) each PropCo Lender; (j) each current and former Affiliate of each Entity in clause (a) through the following clause (k); and (k) each Related Party of each Entity in clause (a) through this clause (k), each in their capacity as such (unless any such Entity or Related Party has opted out of the releases contained in Article VIII of the Plan, in which case such Entity or Related Party, as applicable, shall not be a Released Party).

139. "*Releasing Party*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable; (b) the Plan Administrator; (c) all Holders of Claims or Interests who vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to accept the Plan; (e) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases contained in Article VIII of the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (f) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases contained in Article VIII of the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (g) each current and

former Affiliate of each Entity in clause (a) through the following clause (h); and (h) each Related Party of each Entity in clause (a) through this clause (h), each in their capacity as such.

140.    "*Reorganized Debtor*" means, in the case of an Equitization Restructuring, any post-equitization Debtor.

141.    "*Reorganized Debtor Equity*" means the common stock, common shares, ordinary shares, or other common Interest or unit, as applicable, of Reorganized OpCo or Reorganized PropCo, as applicable.

142.    "*Reorganized OpCo*" means, as applicable, (a) MVK Intermediate Holdings LLC or (b) another Reorganized Debtor or newly formed entity that holds 100% of the equity of the OpCo Credit Parties.

143.    "*Reorganized OpCo Equity*" means, in the event of the Equitization Restructuring, the equity interest in Reorganized OpCo, to be authorized, issued, or reserved on the Effective Date pursuant to the Plan.

144.    "*Reorganized PropCo*" means, as applicable, a Reorganized Debtor or newly formed entity that holds 100% of the equity of the PropCo Credit Parties.

145.    "*Reorganized PropCo Equity*" means, in the event of the Equitization Restructuring, the equity interests in the Reorganized PropCo, to be authorized, issued, or reserved on the Effective Date pursuant to the Plan.

146.    "*Required Lenders*" means, collectively, the Bridge Required Lenders, the OpCo Required Lenders, and the PropCo Required Lenders.

147.    "*Residual Assets*" means the assets described in Article IV.D.3(c).

148.    "*Restructuring Expenses*" means the reasonable and documented prepetition and postpetition fees and out-of-pocket expenses incurred by each of the following advisors: (a) White & Case LLP, (b) Sidley Austin LLP, (c) Morgan Lewis & Bockius LLP, (d) Moore & Van Allen, PLLC, (e) Richards, Layton & Finger, P.A., (f) Robinson & Cole LLP, (g) Burr & Forman LLP, (h) Covington & Burling LLP, (i) Troutman Pepper Hamilton Sanders LLP, (j) FTI Consulting, Inc., and (k) ACM Management Company, LLC to the extent set forth in the letter agreement, dated October 12, 2023, by and among the Agents and ACM Management Company, LLC.

149.    "*Restructuring Transactions*" means the transactions described in Article IV.B and Article IV.D.

150.    "*Restructuring Transactions Memorandum*" means the document that sets forth certain steps to be carried out to implement the Restructuring Transactions in accordance with this Plan, which shall be included in the Plan Supplement and which shall be in form and substance satisfactory to the Required Lenders.

151.    "*Retained Causes of Action*" means those Causes of Action that shall vest in the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, on the Effective

Date.  For the avoidance of doubt, Retained Causes of Action shall not include any Causes of Action that are settled, released, or exculpated under the Plan or that are assigned to any Purchaser, as set forth in the applicable Asset Purchase Agreement, pursuant to the applicable Sale Order.

152.    "*Sale Order*" means the Final Order of the Bankruptcy Court approving a Third Party Sale and/or a Credit Bid Sale pursuant to the applicable Asset Purchase Agreement, which shall be in form and substance reasonably acceptable to the Required Lenders.

153.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed, or assumed and assigned, by the Reorganized Debtors or the Wind-Down Debtors on behalf of the applicable Debtor pursuant to the Plan.

154.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be rejected by the Reorganized Debtors or the Wind-Down Debtors on behalf of the applicable Debtor pursuant to the Plan.

155.    "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action, as the same may be amended, modified, or supplemented from time to time.

156.    "*Schedules*" means, collectively, the schedules of assets and liabilities, Schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code.

157.    "*Section 510(b) Claim*" means any Claim that is subordinated under section 510(b) of the Bankruptcy Code.

158.    "*Secured*" or "*Secured Claim*" means, when referring to a Claim, a Claim that is: (a) secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the value of such right of setoff, including, for the avoidance of doubt, the Bridge Secured Claims, the OpCo Secured Claims, and the PropCo Secured Claims.

159.    "*Secured Lenders*" means the Bridge Lenders, the PropCo Lenders, and the OpCo Lenders.

160.    "*Securities Act*" means the U.S. Securities Act of 1933.

161.    "*Security*" or "*Securities*" has the meaning set forth in section 2(a)(1) of the Securities Act.

162.    "*Third Party Sale*" means a sale by the Debtors of some, all, or substantially all of the Debtors' assets to a third party, excluding a Credit Bid Sale, free and clear of all Liens, Claims, charges, and other encumbrances (other than any such Claims that are assumed by such third party as set forth in the applicable Asset Purchase Agreement) pursuant to section 363 of the Bankruptcy Code, as contemplated by the Bidding Procedures Order.

163.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

164.    "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

165.    "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

166.    "*Vested Causes of Action*" means the Causes of Action vesting in the Wind-Down Debtors pursuant to Article IV.J of the Plan and enumerated on the Schedule of Retained Causes of Action, which shall be included in the Plan Supplement.

167.    "*Voting Deadline*" means January 26, 2024 at 4:00 p.m. (prevailing Eastern Time).

168.    "*Wilmington Trust*" means Wilmington Trust, National Association.

169.    "*Wind-Down*" means, in the event of one or more Asset Sales that are not combined with an Equitization Restructuring, the wind down, liquidation, and dissolution of the Debtors' Estates following the Effective Date as set forth in Article IV.C hereof.

170.    "*Wind-Down Budget*" means, in the event of a Wind-Down, a budget for the reasonable activities and expenses to be incurred in winding down and liquidating and dissolving the Debtors' Estates, which budget shall be in form and substance acceptable to the Debtors and the Required Lenders, and as set forth in the Plan Supplement.

171.    "*Wind-Down Debtors*" means in the case of one or more Asset Sales that are not combined with an Equitization Restructuring, the post-sale Debtors on or after the Effective Date.

172.    "*Wind-Down Debtors' Assets*" means all of the Debtors' assets, which shall vest in the Wind-Down Debtors not earlier than one (1) Business Day before such assets are to be distributed to Allowed Claims pursuant to this Plan and the Confirmation Order and as further set forth in the Plan Administrator Agreement.

173.    "*Wind-Down Debtors' Expenses*" means all actual and necessary costs and expenses incurred by the Wind-Down Debtors or Plan Administrator, as applicable, in connection with carrying out the obligations of the Wind-Down Debtors pursuant to the terms of the Plan and the Plan Administrator Agreement.

174.    "*Wind-Down Reserve*" means the amount set forth in the Wind-Down Budget to fund the Wind-Down Debtors.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender;

(ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified; (iv) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections of the Plan, respectively, hereof or hereto; (v) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation;" (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (x) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xi) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xii) any effectuating provisions may be interpreted by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors and Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; (xiii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (xiv) except as otherwise provided in the Plan, any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (xv) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (xvi) on and after the Effective Date, all references to the Debtors in this Plan shall be deemed references to the Reorganized Debtors or Wind-Down Debtors, as applicable.

*C.     Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

*D.     Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of

Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); *provided* that corporate, limited liability company, or partnership governance matters relating to the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor, Reorganized Debtor, or Wind-Down Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors, the Reorganized Debtors, or the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors, to the Reorganized Debtors, or to the Wind-Down Debtors, means the Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.      *No Substantive Consolidation; Limited Administrative Consolidation.*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

H.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan, the Disclosure Statement, and the Plan Supplement, the relevant Plan provision shall control (unless stated otherwise in such document or in the Confirmation Order). In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II
## ADMINISTRATIVE CLAIMS,
## PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

A.      *Administrative Claims and Priority Tax Claims.*

Except as otherwise provided in this Article II.A, and except with respect to (i) Administrative Claims that are Professional Fee Claims or subject to section 503(b)(1)(D) of

the Bankruptcy Code and (ii) Restructuring Expenses, unless previously Filed, requests for payment of Administrative Claims must be made no later than the applicable Administrative Claims Bar Date or in compliance with the Bar Date Order. **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date without the need for any objection from the Reorganized Debtors or the Wind-Down Debtors, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity**. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.

Except with respect to (i) Administrative Claims that are Professional Fee Claims and (ii) Restructuring Expenses, and except to the extent that an Administrative Claim has already been paid in full during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim agrees to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash the unpaid portion of its Allowed Administrative Claim on the latest of: (i) the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (ii) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (iii) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable, or with respect to a Holder of a Priority Tax Claim, treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other documents relating to such transactions (and no requests for payment of such Administrative Claims must be Filed or served).

Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

B.    *Professional Fee Claims.*

1.    Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims incurred for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date. All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount. To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall pay the full unpaid amount of such Allowed Administrative Claim in Cash.

2.  Professional Fee Escrow Account.

On the Effective Date, the Reorganized Debtors or the Wind-Down Debtors, as applicable, shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded by the Reorganized Debtors or the Wind-Down Debtors using Cash on hand.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by the Reorganized Debtors or the Wind-Down Debtors from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtors or the Wind-Down Debtors without any further action or order of the Bankruptcy Court.

3.  Professional Fee Amount.

The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five Business Days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount estimated as of the Effective Date shall be utilized by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, if applicable, to determine the amount to be funded to the Professional Fee Escrow Account.

4.  Post-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5.  Substantial Contribution.

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors, the Committee, and as otherwise required

by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Voting Deadline.

C.      *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the United States Code before the Effective Date shall be paid by the Debtors.  On and after the Effective Date, to the extent applicable, the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall pay or cause to be paid any and all such fees when due and payable, and shall File with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the U.S. Trustee. Each Debtor shall remain obligated to pay quarterly fees to the U.S. Trustee until the earliest of the applicable Debtor's Chapter 11 Case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first.

D.      *Restructuring Expenses.*

On the Effective Date, the Debtors or the Reorganized Debtors shall pay in full in Cash any outstanding Restructuring Expenses without the requirement for the filing of retention applications, fee applications, Proofs of Claim or any other applications in the Chapter 11 Cases and without any requirement for further notice or Bankruptcy Court review or approval.  Such Restructuring Expenses shall be Allowed as Administrative Claims upon incurrence and shall not be subject to any offset, defense, counter-claim, reduction, or credit.


# ARTICLE III
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests.*

Except for the Claims addressed in Article II of the Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class.  A Claim or an Interest is in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise settled prior to the Effective Date.

B.      *Summary of Classification.*

A summary of the classification of Claims against and Interests in each Debtor pursuant to the Plan is set forth in the following chart.  This Plan constitutes a separate chapter 11 plan for each Debtor, and accordingly, the classification of Claims and Interests set forth below applies separately to each of the Debtors.  Except for the Claims addressed in Article II (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for

each of the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, and Professional Fee Claims as described in Article II.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims or Interests shall be treated as set forth in Article III.E hereof.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Bridge New Money Term Loan Claims | Unimpaired / Impaired | If Third Party Sales Result in Payment in Full, Not Entitled to Vote; Otherwise, Entitled to Vote. |
| 4 | Bridge OpCo Roll-Up Term Loan Claims | Impaired | Entitled to Vote |
| 5 | PropCo Secured Claims | Impaired | Entitled to Vote |
| 6 | OpCo Secured Claims | Impaired | Entitled to Vote |
| 7 | General Unsecured Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 8 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 10 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

*C.*     *Treatment of Claims and Interests.*

Except to the extent that the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, and a Holder of an Allowed Claim or Allowed Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of and in exchange for such Holder's Allowed Claim or Allowed Interest.  Unless otherwise indicated, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of (i) the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, and (ii) the date on which such Holder's Claim or Interest becomes Allowed.  In no event shall any Holder of a Claim receive more than such Holder's Allowed amount on account of such Claim.

1.   Class 1 – Other Secured Claims

(a)   *Classification*:  Class 1 consists of all Other Secured Claims.

(b)   *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor, Reorganized Debtor, or Wind-Down Debtor:

(i)   payment in full in Cash;

        (ii)      Reinstatement of such Claim; or

        (iii)     other treatment rendering such Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired.  Each Holder of a Class 1 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of a Class 1 Other Secured Claim is not entitled to vote to accept or reject the Plan.

2.   Class 2 – Other Priority Claims

(a)    *Classification*:  Class 2 consists of all Other Priority Claims.

(b)    *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor, Reorganized Debtor, or Wind-Down Debtor.

        (i)       payment in full in Cash;

        (ii)      Reinstatement of such Claim; or

        (iii)     such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)    *Voting*:  Class 2 is Unimpaired.  Each Holder of a Class 2 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of a Class 2 Other Priority Claim is not entitled to vote to accept or reject the Plan.

3.   Class 3 – Bridge New Money Term Loan Claims

(a)    *Classification*:  Class 3 consists of the Bridge New Money Term Loan Claims.

(b)    *Allowance*:  On the Effective Date, the Bridge New Money Term Loan Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the Bridge Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date.

(c)    *Treatment*:  The recovery to Holders of Bridge New Money Term Loan Claims depends on whether the Restructuring Transactions are implemented through one or more Third Party Sales, a Credit Bid Sale, the Equitization Restructuring, or a combination of any of the foregoing, as set forth in the Restructuring Transactions Memorandum.  Each Holder of a Bridge New Money Term Loan Claim shall receive:

(i)     to the extent a Third Party Sale occurs, its *Pro Rata* share of the net proceeds of Collateral from such sale up to the Allowed amount of such Holder's Bridge New Money Term Loan Claim; or

(ii)    if a Credit Bid Sale or the Equitization Restructuring occurs and a Third Party Sale does not (or a Third Party Sale does not result in all Bridge New Money Term Loan Claims being paid in full), its *Pro Rata* share of the Exit Bridge Facility Term Loans in an amount equal to all Bridge New Money Term Loans outstanding at such time.

(d)    *Voting*:

(i)     If one or more Third Party Sales occurs and results in payment in full of the Bridge New Money Term Loan Claims, Class 3 is Unimpaired and each Holder of a Class 3 Bridge New Money Term Loan Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, in that scenario, each Holder of a Class 3 Bridge New Money Term Loan Claim is not entitled to vote to accept or reject the Plan.

(ii)    If a Credit Bid Sale or the Equitization Restructuring occurs or Third Party Sales do not result in payment in full of the Bridge New Money Term Loan Claims, Class 3 is Impaired. Holders of Bridge New Money Term Loan Claims are entitled to vote to accept or reject the Plan.

4. Class 4 – Bridge OpCo Roll-Up Term Loan Claims

(a)    *Classification*: Class 4 consists of the Bridge OpCo Roll-Up Term Loan Claims.

(b)    *Allowance*: On the Effective Date, the Bridge OpCo Roll-Up Term Loan Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the Bridge Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date.

(c)    *Treatment*: The recovery to Holders of Bridge OpCo Roll-Up Term Loan Claims depends on whether the Restructuring Transactions are implemented through a Third Party Sale, a Credit Bid Sale, the Equitization Restructuring, or a combination of any of the foregoing, as set forth in the Restructuring Transactions Memorandum. Each Holder of a Bridge OpCo Roll-Up Term Loan Claim shall receive:

(i)     to the extent one or more Third Party Sales occurs, its *Pro Rata* share of (i) the net proceeds of any OpCo Collateral sold thereby, after Bridge New Money Term Loan Claims have been paid in full, to the

25

extent the Lender Support Agreement Allocation does not apply and (ii) the net proceeds of any Collateral sold thereby in an amount in accordance with the Lender Support Agreement Allocation if the Lender Support Agreement Allocation applies;

(ii)     to the extent a Credit Bid Sale occurs, (A) for any Bridge OpCo Roll-Up Term Loan Claims that are credit bid, its *Pro Rata* share of Credit Bid Sale Consideration up to the Allowed amount of such Holder's Bridge OpCo Roll-Up Term Loan Claim and (B) its allocated share of Exit OpCo Facility Term Loans, if any, for any Bridge OpCo Roll-Up Term Loan Claims that are not credit bid;

(iii)    to the extent the Equitization Restructuring occurs, (i) its *Pro Rata* share of Bridge OpCo Roll-Up Equitization Consideration and (ii) its allocated share of Exit OpCo Facility Term Loans; and/or

(iv)     any funds payable in accordance with Article IV .D. (c), including Cash and proceeds of any assets not included in a Third Party Sale, Credit Bid Sale, and/or Equitization Restructuring up to the Allowed amount of such Holder's Bridge OpCo Roll-Up Term Loan Claim.

(d)     *Voting*: Class 4 is Impaired.  Holders of Bridge OpCo Roll-Up Term Loan Claims are entitled to vote to accept or reject the Plan.

5.  <u>Class 5 – PropCo Secured Claims</u>

(a)     *Classification*:  Class 5 consists of the PropCo Secured Claims.

(b)     *Allowance*:  On the Effective Date, the PropCo Secured Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the PropCo Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date.

(c)     *Treatment*:  The recovery to Holders of PropCo Secured Claims depends on whether the Restructuring Transactions are implemented through a Third Party Sale, a Credit Bid Sale, the Equitization Restructuring, or a combination of any of the foregoing, as set forth in the Restructuring Transactions Memorandum.  Each Holder of a PropCo Secured Claim shall receive:

(i)      to the extent one or more Third Party Sales occurs, its *Pro Rata* share of (i) the net proceeds of any PropCo Collateral sold thereby, after Bridge New Money Term Loan Claims have been paid in full, to the extent the Lender Support Agreement Allocation does not apply and (ii) the net proceeds of any Collateral sold thereby in an amount in accordance with the Lender Support Agreement Allocation

(including any cap applicable to such Holder's PropCo Secured Claim) if the Lender Support Agreement Allocation applies;

(ii)   to the extent a Credit Bid Sale occurs, (A) for any PropCo Secured Claims that are credit bid, its *Pro Rata* share of Credit Bid Sale Consideration up to the Allowed amount of such Holder's PropCo Secured Claim and (B) its allocated share of Exit PropCo Facility Term Loans, if any, for any PropCo Secured Claims that are not credit bid;

(iii)  to the extent the Equitization Restructuring occurs, (i) its *Pro Rata* share of PropCo Equitization Consideration and (ii) its allocated share of Exit PropCo Facility Term Loans, if any; and/or

(iv)   any funds payable in accordance with Article IV .D. (c), including Cash and proceeds of any assets not included in a Third Party Sale, Credit Bid Sale, and/or Equitization Restructuring up to the Allowed amount of such Holder's PropCo Secured Claim.

(d)   *Voting*:  Class 5 is Impaired.  Holders of PropCo Secured Claims are entitled to vote to accept or reject the Plan.

6.   Class 6 – OpCo Secured Claims

(a)   *Classification*:  Class 6 consists of the OpCo Secured Claims.

(b)   *Allowance*:  On the Effective Date, the OpCo Secured Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the OpCo Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date.

(c)   *Treatment*:  The recovery to Holders of OpCo Secured Claims depends on whether the Restructuring Transactions are implemented through a Third Party Sale, a Credit Bid Sale, the Equitization Restructuring, or a combination of any of the foregoing, as set forth in the Restructuring Transactions Memorandum.  Each Holder of an OpCo Secured Claim shall receive:

(i)   to the extent one or more Third Party Sales occurs, its *Pro Rata* share of (i) the net proceeds of any OpCo Collateral sold thereby, after Bridge New Money Term Loan Claims and Bridge OpCo Roll-Up Term Loans have been paid in full, to the extent the Lender Support Agreement Allocation does not apply and (ii) the net proceeds of any Collateral sold thereby in an amount in accordance with the Lender Support Agreement Allocation if the Lender Support Agreement Allocation applies;

  (ii)  to the extent a Credit Bid Sale occurs, (A) for any OpCo Secured Claims that are credit bid, its *Pro Rata* share of Credit Bid Sale Consideration taking into account distributions on account of Bridge OpCo Roll-Up Term Loan Claims up to the Allowed amount of such Holder's OpCo Secured Claim and (B) its allocated share of Exit OpCo Facility Term Loans, if any, for any OpCo Secured Claims that are not credit bid;

  (iii)  to the extent the Equitization Restructuring occurs, (i) its *Pro Rata* share of OpCo Equitization Consideration and (ii) its allocated share of Exit OpCo Facility Term Loans, if any, in each case taking into account distributions on account of Bridge OpCo Roll-Up Term Loan Claims; and/or

  (iv)  any funds payable in accordance with Article IV .D. (c), including Cash and proceeds of any assets not included in a Third Party Sale, Credit Bid Sale, and/or Equitization Restructuring after Bridge OpCo Roll-Up Term Loan Claims have been paid in full, up to the Allowed amount of such Holder's OpCo Secured Claim.

 (d) *Voting*: Class 6 is Impaired. Holders of OpCo Secured Claims are entitled to vote to accept or reject the Plan.

7. Class 7 – General Unsecured Claims

 (a) *Classification*: Class 7 consists of the General Unsecured Claims.

 (b) *Treatment*:

  (i)  If one or more Third Party Sales occurs, each Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive the following treatment: (A) if the amount of Excess Sale Proceeds is greater than zero, each Holder of an Allowed General Unsecured Claim shall receive its *Pro Rata* share of the Excess Sale Proceeds; and (B) otherwise, each General Unsecured Claim shall be released, and each Holder of a General Unsecured Claim shall not receive or retain any distribution, property, or other value on account of such General Unsecured Claim.

  (ii)  If a Credit Bid Sale or the Equitization Restructuring occurs and a Third Party Sale does not also occur, each Holder of a General Unsecured claim shall not receive or retain any distribution, property, or other value on account of such General Unsecured Claim.

 (c) *Voting*: Class 7 is Impaired. Holders of General Unsecured Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the

Bankruptcy Code.  Therefore, Holders of General Unsecured Claims are not entitled to vote to accept or reject the Plan.

8.  <u>Class 8 – Intercompany Claims.</u>

(a)    *Classification*:  Class 8 consists of all Intercompany Claims.

(b)    *Treatment*:  Each Allowed Intercompany Claim shall be cancelled and released, and no distributions shall be made on account of any Intercompany Claims.

(c)    *Voting*:  Holders of Allowed Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

9.  <u>Class 9 – Intercompany Interests.</u>

(a)    *Classification*:  Class 9 consists of all Intercompany Interests.

(b)    *Treatment*:  Each Intercompany Interest shall be Reinstated, distributed, contributed, set off, settled, cancelled, and released, or otherwise addressed at the option of the Reorganized Debtors or the Wind-Down Debtors, as applicable, and as set forth in the Restructuring Transactions Memorandum.

(c)    *Voting*:  Holders of Allowed Intercompany Interests conclusively presumed to have accepted the Plan pursuant section 1126(f) or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

10. <u>Class 10 – Existing Equity Interests.</u>

(a)    *Classification*:  Class 10 consists of all Existing Equity Interests.

(b)    *Treatment*:  On the Effective Date, and without the need for any further corporate or limited liability company action or approval of any board of directors, board of managers, members, shareholders or officers of any Debtor, Reorganized Debtor, or Wind-Down Debtor, as applicable, all Existing Equity Interests shall be cancelled, released, and extinguished without any distribution, and will be of no further force or effect, and each Holder of an Existing Equity Interest shall not receive or retain any distribution, property, or other value on account of such Existing Equity Interest.

(c)    *Voting*:  Class 10 is Impaired.  Holders of Existing Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the

Bankruptcy Code.  Therefore, Holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

11. <u>Class 11 – Section 510(b) Claims.</u>

(a)    *Classification*:  Class 11 consists of all Section 510(b) Claims.

(b)    *Treatment*:  On the Effective Date, all Section 510(b) Claims shall be discharged, cancelled, released, and extinguished and each Holder of a Section 510(b) Claim shall not receive or retain any distribution, property, or other value on account of its Section 510(b) Claim.

(c)    *Voting*:  Class 11 is Impaired.  Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

D.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

E.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.    *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

G.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.  The Debtors reserve the right to modify the Plan in accordance with Article X to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or

Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.    *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

I.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

J.    *Intercompany Interests.*

To the extent Reinstated under the Plan, the Intercompany Interests shall be Reinstated for the ultimate benefit of the holders of the Reorganized Debtor Equity and/or in exchange for the Debtors', Reorganized Debtors', and Plan Administrator's (as applicable) agreement under the Plan to make certain distributions to the Holders of Allowed Claims.  Distributions on account of the Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure.  For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall be owned by the same Reorganized Debtor or Wind-Down Debtor that corresponds with the Debtor that owned such Intercompany Interests prior to the Effective Date, unless otherwise set forth in the Restructuring Transactions Memorandum.

**ARTICLE IV**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

A.    *General Settlement of Claims and Interests.*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, to the extent provided for by the Bankruptcy Code and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Plan.  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and

compromise is fair, equitable, reasonable, and in the best interests of the Debtors, their Estates, and Holders of Claims and Interests.  All distributions made to Holders of Allowed Claims and Allowed Interests, as applicable, in any Class, are intended to be and shall be final.

B.      *Equitization Restructuring.*

If the Equitization Restructuring occurs, the provisions set forth in this Article IV.B shall govern for any of the Debtors' assets not subject to an Asset Sale in lieu of the provisions set forth in Article IV.D.

1. Equitization Restructuring Transactions.

On or before the Effective Date, the Debtors or Reorganized Debtors, as applicable, shall take all applicable actions set forth in the Restructuring Transactions Memorandum and may take any additional action as may be necessary or appropriate to effectuate the Equitization Restructuring, and any transaction described in, approved by, contemplated by, or necessary to effectuate the Equitization Restructuring that are consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Transactions Memorandum, which transactions may include, as applicable: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Transactions Memorandum and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Transactions Memorandum and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other certificates or documentation pursuant to applicable law; (d) the issuance of the Reorganized Debtor Equity; (e) the execution and delivery of the New Organizational Documents of each Reorganized Debtor; and (f) all other actions that the applicable Reorganized Debtors determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan. All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors, with the consent of the Required Lenders, determine are necessary or advisable to effectuate the provisions and intent of the Plan.

The Debtors, the Bridge Agents, the OpCo Agent, the PropCo Agent, and the Required Lenders shall cooperate in good faith to structure and implement the Restructuring Transactions in a tax efficient manner reasonably acceptable to each such party.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions, including, for the avoidance of doubt, any and all actions required to be taken under applicable

nonbankruptcy law. The Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

2.    Sources of Consideration for Plan Distributions Under the Equitization Restructuring.

The Debtors shall fund distributions under the Plan pursuant to the Equitization Restructuring, as applicable, with (1) the issuance of the Reorganized Debtor Equity, (2) proceeds of all Third Party Sales (if any), (3) Cash on hand, and (4) the issuance of the Exit Bridge Facility Term Loans, Exit OpCo Facility Term Loans, and Exit PropCo Facility Term Loans (in each case, if and to the extent applicable). Each distribution and issuance referred to in Article IV of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

On the Effective Date, the applicable Reorganized Debtors shall issue the Reorganized Debtor Equity pursuant to the Plan. The issuance of the Reorganized Debtor Equity by the applicable Reorganized Debtors shall be authorized without the need for any further corporate or other action by the Debtors or Reorganized Debtors or by Holders of any Claims or Interests.

All of the shares (or comparable units) of Reorganized Debtor Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable and not to have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law. Each distribution and issuance of Reorganized Debtor Equity shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than the applicable Reorganized Debtor(s). Any Entity's acceptance of Reorganized Debtor Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms. The Reorganized Debtor Equity will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the Depository Trust Company.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the Reorganized Debtor Equity in respect of eligible Allowed Claims pursuant to the Plan shall be exempt from, among other things, the registration and/or prospectus delivery requirements of section 5 of the Securities Act and any other applicable federal, state, local or other law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, or sale of Securities. Such Reorganized Debtor Equity, (a) will not constitute "restricted securities" as defined in rule 144(a)(3) under the Securities Act and (b) will be freely tradable and transferable in the United States by each recipient thereof that (i) is an entity that is not an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code, (ii) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (iii) has not been such an "affiliate" within 90

days of the time of the transfer, and (iv) has not acquired such securities from an "affiliate" within one year of the time of transfer. Notwithstanding the foregoing, such Reorganized Debtor Equity shall remain subject to compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Reorganized Debtor Equity and subject to any restrictions in the New Organizational Documents.

Confirmation of the Plan shall be deemed approval of (a) the Exit Bridge Credit Agreement, the Exit OpCo Credit Agreement, the Exit PropCo Credit Agreement and all related loan documents, in each case as applicable, and (b) all transactions contemplated thereby, and all actions to be taken and undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, expenses and other payments provided for therein and authorization of the Reorganized Debtors to enter into and execute the Exit Bridge Credit Agreement, the Exit OpCo Credit Agreement, the Exit PropCo Credit Agreement and such other documents as may be required to effectuate the Exit Bridge Facility, Exit OpCo Facility and Exit PropCo Facility, as applicable.

On the Effective Date, all of the liens and security interests to be granted in accordance with the Exit Bridge Credit Agreement, the Exit OpCo Credit Agreement, the Exit PropCo Credit Agreement and all related loan documents, in each case as applicable, (a) shall be deemed to be granted, (b) shall be legal, binding and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the Exit Bridge Credit Agreement, the Exit OpCo Credit Agreement, the Exit PropCo Credit Agreement and all related loan documents, in each case as applicable, (c) shall be deemed automatically perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Bridge Credit Agreement, the Exit OpCo Credit Agreement, the Exit PropCo Credit Agreement, in each case as applicable, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

3. New Organizational Documents.

On or immediately prior to the Effective Date, the New Organizational Documents shall be automatically adopted by the applicable Reorganized Debtors. To the extent required under the Plan or applicable non-bankruptcy law, each of the Reorganized Debtors will file its New Organizational Documents with the applicable authorities in its respective jurisdiction of organization. The New Organizational Documents will prohibit the issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or after the Effective Date, the Reorganized Debtors may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and the Reorganized Debtors may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of their respective jurisdictions of incorporation or formation and the New Organizational Documents.

      4.   <u>Directors and Officers of the Reorganized Debtors.</u>

As of the Effective Date, the terms of the existing board of directors or managers, as applicable, of the Debtors shall expire and the new directors and officers of the Reorganized Debtors shall be appointed by the applicable Required Lenders.  Corporate governance for Reorganized Debtors, including charters, bylaws, operating agreements, or other organization documents, as applicable, shall be consistent with section 1123(a)(6) of the Bankruptcy Code and the New Organizational Documents.

*C.*   *Asset Sales.*

The implementation of any Asset Sales shall be addressed in the applicable Sale Order and any such Asset Sale will be subject to the terms of the applicable Asset Purchase Agreement.

*D.*   *Wind-Down*

If the Wind-Down occurs, the provisions set forth in this Article IV.D shall govern.

      1.   <u>Wind-Down Transactions.</u>

On or before the Effective Date, the Debtors or the Wind-Down Debtors and Plan Administrator, as applicable, shall take all applicable actions set forth in the Restructuring Transactions Memorandum and may take any additional action as may be necessary or appropriate to effectuate the Wind-Down, and any transaction described in, approved by, contemplated by, or necessary to effectuate the Wind-Down that are consistent with and pursuant to the terms and conditions of the Plan and Restructuring Transactions Memorandum, which transactions may include, as applicable:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and Restructuring Transactions Memorandum and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan, the Restructuring Transactions Memorandum, and (if applicable) any Asset Purchase Agreement and having other terms to which the applicable parties agree; and (c) all other actions that the applicable Wind-Down Debtor or the Plan Administrator determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan.

All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors determine are necessary or advisable to effectuate the provisions and intent of the Plan.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by,

contemplated by, or necessary to effectuate the Plan, including the Wind-Down, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.

2.    Sources of Consideration for Plan Distributions Under the Wind-Down.

The Plan Administrator shall fund distributions under the Plan pursuant to the Wind-Down with, as applicable: (a) Cash on hand, (b) any consideration received by the Debtors in any Third Party Sale, and (c) any Residual Assets.

3.    Wind-Down Debtors.

(a)    Wind-Down Debtors.

At least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtor for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtors after the Effective Date, (2) performing the Debtors' obligations under any Asset Purchase Agreement and any related agreements entered into in connection therewith (to the extent agreed by the Wind-Down Debtors), (3) resolving any Disputed Claims, (4) making distributions on account of Allowed Claims in accordance with the Plan, (5) filing appropriate tax returns, and (6) administering the Plan. The Wind-Down Debtors shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court, and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to a prior order or the Plan, the Wind-Down Debtors specifically retain and reserve the right to assert, after the Effective Date, any and all of the Vested Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan.

(b)    Wind-Down Debtors' Assets.

On the Effective Date, the Wind-Down Debtors shall become successors to the Debtors' rights, title and interests to any Estate assets remaining, which shall vest in the Wind-Down Debtors for the purpose of liquidating the Estates and consummation of the Plan. The Wind-Down Debtors will not conduct business operations other than as necessary to wind down such operations and will be charged with winding down the Debtors' Estates. The Wind-Down Debtors shall be managed by the Plan Administrator. The Wind-Down Debtors shall be administered in accordance with the terms of the Plan Administrator Agreement and shall be subject to the Wind-Down Budget. Any distributions to be made under the Plan from such assets shall be made by the Plan Administrator or its designee. The Wind-Down Debtors and the Plan Administrator shall be deemed to be fully bound by the terms of the Plan, the Confirmation Order, and the Plan Administrator Agreement.

For the avoidance of doubt, pursuant to 11 U.S.C. § 362(c)(1), the automatic stay of an act against property of the estate will continue until such property is no longer property of the estate, and pursuant to 11 U.S.C. § 362(c)(2), the stay of any other act described in 11 U.S.C. § 362(a)

continues until the earlier of the closure or dismissal of these Chapter 11 Cases. Pursuant to 11 U.S.C. § 1141(b), this Plan and the Confirmation Order shall both provide that all property of the estate shall remain in the estate until one (1) business day before such assets are to be distributed to Holders of Allowed Claims pursuant to this Plan and the Confirmation Order, and at that point, shall vest in the Wind-Down Debtors.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-Down Debtors and the Plan Administrator shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Plan Administrator Agreement, compromise or settle any Wind-Down Debtors' Assets remaining with the Wind-Down Debtors as a successor to the Debtors. On and after the Effective Date, the Wind-Down Debtors and the Plan Administrator may, without further Bankruptcy Court approval, commence, litigate, and settle any Vested Causes of Action or Claims relating to any Wind-Down Debtors' Assets remaining with the Wind-Down Debtors as a successor to the Debtors or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtors and the Plan Administrator on or after the Effective Date, except as otherwise expressly provided for herein and in the Plan Administrator Agreement. All of the Wind-Down Debtors' activities shall be subject to the Wind-Down Budget. The Wind-Down Debtors shall be entitled to enforce all defenses and counterclaims to any and all Claims asserted against the Debtors and their Estates, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

The Wind-Down Debtors shall be deemed to be substituted as plaintiff, defendant, or in any other capacity for the Debtors and the Committee, as applicable, in any Causes of Action pending before the Bankruptcy Court or any other court that relates to a Wind-Down Debtors' Asset without the need for filing any motion for such relief. On the Effective Date, the Debtors and the Plan Administrator shall execute the Plan Administrator Agreement and shall have established the Wind-Down Debtors pursuant hereto. In the event of any conflict between the terms of this Article IV.D.3 and the terms of the Plan Administrator Agreement, the terms of the Plan Administrator Agreement shall control.

Notwithstanding any prohibition on assignability under applicable non-bankruptcy Law, on the Effective Date and thereafter, if additional Wind-Down Debtors' Assets become available, such additional Wind-Down Debtors' Assets, subject to this Plan, the Confirmation Order, and the Plan Administrator Agreement, as applicable, shall be treated as if they were transferred to (as applicable) and vested in the applicable Wind-Down Debtor as a successor to the Debtors with all of attendant rights, title, and interests in and to all of the Wind-Down Debtors' Assets, in accordance with section 1141 of the Bankruptcy Code. At such time when any of the Wind-Down Debtors' Assets vest in the Wind-Down Debtors, all such assets shall automatically vest in the Wind-Down Debtors free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Interests as set forth herein and the Wind-Down Debtors' Expenses as set forth herein and in the Plan Administrator Agreement.

(c)    Residual Assets.

Any contrary provision hereof notwithstanding, following the occurrence of the Effective Date and the making of distributions on the Effective Date pursuant hereto, (i) any Cash held by the Wind-Down Debtors in excess of the aggregate amounts set forth in the Wind-Down Budget,

(ii) any amounts remaining in the Professional Fee Escrow Account after payment in full of all Allowed Professional Fee Claims, (iii) any amounts remaining in the Wind-Down Reserve after entry of a final decree closing the last of the Chapter 11 Cases, and (iv) the proceeds of any non-Cash Estate assets vested in the Wind-Down Debtors, shall be payable to Holders of Secured Claims in accordance with the Lender Support Agreement Allocation, and the liens and security interest held by the Holders of Secured Claims shall continue to encumber such residual assets, until such claims are paid in full.  The Wind-Down Debtors and/or the Plan Administrator shall make such distributions in Cash in accordance with Article III.

(d)    Appointment of Plan Administrator.

The Plan Administrator shall be appointed by the Debtors in consultation with the Bridge Agents, the OpCo Agent, the PropCo Agent, and the Required Lenders.  The appointment of the Plan Administrator shall be approved in the Confirmation Order, and the Plan Administrator's duties shall commence as of the Effective Date.  The Plan Administrator shall administer the distributions to Holders of Allowed Claims or Allowed Interests to the extent provided under the Plan and shall serve as a representative of the Estates under section 1123(b) of the Bankruptcy Code for the purpose of pursuing Vested Causes of Action belonging to the Estates that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan.

As set forth below, the Plan Administrator shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the Wind-Down and as otherwise provided in the Confirmation Order.  On the Effective Date, the authority, power, and incumbency of the Persons acting as managers, directors, and officers of the Debtors and/or Wind-Down Debtors, as applicable, shall be deemed to have resigned, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors, and shall succeed to the powers of the Debtors' and/or Wind-Down Debtors', as applicable, managers, directors, and officers.

In accordance with the Plan Administrator Agreement, the Plan Administrator shall serve in such capacity through the earlier of (i) the date on which the Wind-Down Debtors are dissolved in accordance with the Plan Administrator Agreement, and (ii) the date on which a Plan Administrator resigns, is terminated, or is otherwise unable to serve.

(e)    Responsibilities of Plan Administrator.

The rights, powers, privileges, obligations, and compensation of the Plan Administrator shall be set forth in the Plan Administrator Agreement, which shall be filed as part of the Plan Supplement.

(f)    Dissolution of Boards of the Debtors.

As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtors shall be dissolved without any further action required on the part of the Debtors or the

Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor. Subject in all respects to the terms of this Plan, the Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtors and/or the Wind-Down Debtors, as applicable, with respect to its affairs. Subject to the foregoing and in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind-down and dissolve any of the Debtors and/or the Wind-Down Debtors, as applicable, and shall: (a) file a certificate of dissolution for any of the Debtors and/or the Wind-Down Debtors, as applicable, together with all other necessary corporate and company documents, to effect the dissolution of any of the Debtors and/or the Wind-Down Debtors, as applicable, under the applicable laws of each applicable Debtor's and/ or Wind-Down Debtor's state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Debtors or their Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (c) represent the interests of the Debtors or the Estates before any taxing authority in all tax matters, including any action, suit, proceeding, or audit.

The filing by the Plan Administrator of any of the Debtors' and/or the Wind-Down Debtors', as applicable, certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of the Debtors and/or the Wind-Down Debtors, as applicable, or any of their Affiliates.

(g)     Wind-Down Debtors' Expenses.

The Wind-Down Debtors' Expenses shall be paid from the Wind-Down Debtors' Assets subject to the Wind-Down Budget.

(h)     Insurance.

The Plan Administrator may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the Plan Administrator.

To the extent any directors or officers provide assistance to the Wind-Down Debtors after the Effective Date of the Plan, the Wind-Down Debtors will provide such directors and officers with reasonable and customary indemnification, exculpation, and insurance coverage with respect to such services, consistent with the indemnification, exculpation, and insurance coverage provided to the Plan Administrator.

(i)        Fiduciary Duties of the Plan Administrator.

Pursuant hereto and the Plan Administrator Agreement, the Plan Administrator shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive distributions pursuant to Plan.

(j)        Termination of the Wind-Down Debtors.

The Wind-Down Debtors will terminate on the earlier of:  (i) (A) the final liquidation, administration, and distribution of the Wind-Down Debtors' Assets in accordance with the terms of the Plan Administrator Agreement and the Plan, and the full performance of all other duties and functions as set forth herein or in the Plan Administrator Agreement and (B) the Chapter 11 Cases of the Debtors have been closed; or (ii) the Plan Administrator determines in its reasonable judgment that the Wind-Down Debtors lack sufficient assets and financial resources, after reasonable collection efforts, to complete the duties and powers assigned to him or her under the Plan, the Confirmation Order and/or the Plan Administrator Agreement.  After (i) the final distributions pursuant hereto, (ii) the Filing by or on behalf of the Wind-Down Debtors of a certification of dissolution with the Bankruptcy Court, and (iii) any other action deemed appropriate by the Plan Administrator, the Wind-Down Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions.

(k)        No Liability of the Wind-Down Debtors.

On and after the Effective Date, the Wind-Down Debtors shall have no liability on account of any Claims or Interests except as set forth herein and in the Plan Administrator Agreement.  All payments and all distributions made by the Plan Administrator hereunder shall be in exchange for all Claims or Interests against the Debtors.

E.      *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including implementation of the Restructuring Transactions and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  On the Effective Date, all matters provided for in the Plan involving the corporate or organizational structure of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable and any corporate, partnership, limited liability company, or other governance action required by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the equityholders, members, directors, or officers of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable.  On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtors or the Wind-Down Debtors, as applicable.  The authorizations and approvals

contemplated by this Article IV.E shall be effective notwithstanding any requirements under nonbankruptcy Law.

F.    *Vesting of Assets in the Reorganized Debtors or the Wind-Down Debtors.*

Except as otherwise provided in the Confirmation Order or in the Plan (including the Restructuring Transactions Memorandum), on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in each respective Reorganized Debtor or Wind-Down Debtor.

On and after the Effective Date, except as otherwise provided in the Plan, each Reorganized Debtor or Wind-Down Debtor may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

G.    *Cancellation of Securities and Agreements.*

Except as otherwise specifically provided for in the Plan (or to the extent otherwise assigned to a Purchaser, as set forth in the applicable Asset Purchase Agreement, pursuant to the applicable Sale Order) on the Effective Date: (i) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other Securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled and deemed surrendered as to the Debtors, and the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be fully released, settled, and compromised. Notwithstanding the foregoing, no Executory Contract or Unexpired Lease that (x) has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (y) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date. For the avoidance of doubt, the Lender Support Agreement and all rights, obligations, and liabilities thereunder shall not be affected by Consummation and shall survive the Effective Date.

Notwithstanding the foregoing, the Bridge Credit Agreement, OpCo Credit Agreement and PropCo Credit Agreement shall survive as necessary to (a) enforce the rights, claims and interests

of the Bridge Agents, the OpCo Agent and the PropCo Agent, respectively, and any predecessor thereof against parties other than the Released Parties; (b) allow the receipt and making of distributions under the Plan in accordance with the terms of the Bridge Credit Agreement, OpCo Credit Agreement, and PropCo Credit Agreement, as applicable; (c) preserve any rights of the Bridge Agents, the OpCo Agent and the PropCo Agent and any predecessor thereof as against any money or property distributable to Holders of Bridge Secured Claims, OpCo Secured Claims and PropCo Secured Claims, as applicable, including any priority in respect of payment and the right to exercise any charging liens; and (d) permit the OpCo Agent to enforce rights against OpCo Lenders under Section 2.5(e) of the OpCo Credit Agreements with respect to LC Disbursements (as defined in the OpCo Credit Agreements).

H.    *Effectuating Documents; Further Transactions.*

On and after the Effective Date, the Reorganized Debtors or the Wind-Down Debtors, as applicable, and their respective officers, directors, members, and managers (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of the Reorganized Debtors or the Wind-Down Debtors, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

I.    *Exemption from Certain Taxes and Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to a Reorganized Debtor, Wind-Down Debtor, as applicable, or to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors, Reorganized Debtors, or the Wind-Down Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; or (5) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the imposition or collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any

of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

J.    *Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan or pursuant to a Final Order, and any applicable Asset Purchase Agreement, each Reorganized Debtor and Wind-Down Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Reorganized Debtors' and Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article VIII of the Plan or pursuant to a Final Order (including the Cash Collateral Order), or as assigned and transferred pursuant to any applicable Asset Purchase Agreement, which, in each case, shall be deemed released and waived by the Debtors, the Reorganized Debtors, and the Wind-Down Debtors as of the Effective Date.

The Reorganized Debtors and the Wind-Down Debtors may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of the Reorganized Debtors and the Wind-Down Debtors. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. Except as specifically released or as assigned or transferred under the Plan or pursuant to a Final Order (including the Cash Collateral Order) or as assigned or transferred pursuant to any applicable Asset Purchase Agreement, the Debtors, the Reorganized Debtors, and the Wind-Down Debtors expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan or pursuant to a Final Order (including the Cash Collateral Order), or as assigned and transferred pursuant to any applicable Asset Purchase Agreement. Unless otherwise agreed upon in writing by the parties to the applicable Causes of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date. Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against any Reorganized Debtor or Wind-Down Debtor, without the need for any objection or responsive pleading by the Reorganized Debtors, the Wind-Down Debtors, or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.** The Reorganized Debtors and the Wind-Down Debtors may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, and the objection party for thirty days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the Cash Collateral Order), the Reorganized Debtors and Wind-Down

Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Reorganized Debtors and the Wind-Down Debtors, as applicable, reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order (including the Cash Collateral Order), any Causes of Action that a Debtor may hold against any Entity shall vest in the Reorganized Debtors and the Wind-Down Debtors, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.  The applicable Reorganized Debtors and Wind-Down Debtors, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtors and the Wind-Down Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

If the Equitization Restructuring occurs, on the Effective Date and except as otherwise provided herein, all Executory Contracts or Unexpired Leases not otherwise assumed, assumed and assigned, or rejected will be deemed assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, other than those that:  (a) are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (b) have previously expired or terminated pursuant to their own terms or agreement of the parties thereto; (c) have been previously assumed, assumed and assigned, or rejected by the Debtors pursuant to a Final Order; (d) are, as of the Effective Date, the subject of (i) a motion to reject that is pending or (ii) an order of the Bankruptcy Court that is not yet a Final Order; or (e) are to be assumed by the Debtors and assigned to a third party in connection with any Asset Sale, including any purchaser as set forth in the applicable Asset Purchase Agreement approved pursuant to the applicable Sale Order.

If the Wind-Down occurs, on the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, (ii)  is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (iii) is subject to a motion to assume (or assume and assign) such Unexpired Lease or

Executory Contract as of the Effective Date; (iv) is to be assumed by the Debtors and assigned to another third party, as applicable, in connection with any Asset Sale, including any Purchaser as set forth in the applicable Asset Purchase Agreement approved pursuant to the applicable Sale Order; (v) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (vi) is a D&O Liability Insurance Policy.

If an Equitization Restructuring or Credit Bid Sale occurs, the Required Lenders will work in good faith with the Debtors with respect to the assumption, assignment, rejection or modification of the Master Lease Agreement as appropriate; *provided* that no payments or distributions will be made on account of any obligations incurred under the Master Lease Agreement prior to the Effective Date.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan, the Schedule of Assumed Executory Contracts and Unexpired Leases, or the Schedule of Rejected Executory Contracts and Unexpired Leases, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date. Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized Debtor or Wind-Down Debtor, as applicable, in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by the Reorganized Debtors or Wind-Down Debtors, as applicable.

If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan. Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must File a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable. For the avoidance of doubt, nothing herein shall be construed to reject any Asset Purchase Agreement approved pursuant to the applicable Sale Order.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, reserve the right to alter, amend, modify, or

supplement the Schedule of Assumed Executory Contracts and Unexpired Leases and the Schedule of Rejected Executory Contracts and Unexpired Leases at any time up to forty-five (45) days after the Effective Date.

B.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, under such Executory Contract or Unexpired Lease. Without limiting the general nature of the foregoing, and notwithstanding any non-bankruptcy law to the contrary, the Debtors, the Reorganized Debtors, and the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, any Proof of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be Filed with the Bankruptcy Court and served on the Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable, no later than thirty (30) days after the Effective Date of the rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served on the Debtors no later than seven (7) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim were not timely Filed in accordance with the Bar Date Order shall not (i) be treated as a creditor with respect to such Claim, (ii) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (iii) participate in any distribution in the Chapter 11 Cases on account of such Claim. Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, the Reorganized Debtors, the Wind-Down Debtors, or the property for any of the foregoing without the need for any objection by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection by any Debtor of any of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor in accordance with Article III.C of the Plan, except as otherwise provided by order of the Bankruptcy Court.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan (it being understood that the assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Assumption Procedures set forth and defined in the Bidding Procedures Order shall be authorized and governed by the Sale Order, and, in the event of any inconsistency between this Plan and Sale Order concerning the assumption and assignment of any such Executory Contract or Unexpired Lease, the terms of the Sale Order shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Bankruptcy Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree. In the event of a dispute regarding:  (i) the amount of any Cure Claim; (ii) the ability of the Reorganized Debtors, or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or the assumption and assignment, the Cure Claims shall be made following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment.  Notwithstanding the foregoing, nothing herein shall prevent the Reorganized Debtors, as applicable, from settling any Cure Claim without further notice to or action, order, or approval of the Bankruptcy Court.

Unless otherwise provided by an order of the Bankruptcy Court, including the Bidding Procedures Order, by the later of (i) if a Third Party Sale occurs, the date that is three days after the Bidding Procedures Order, if any, is entered, or (ii) if a Credit Bid Sale and/or the Equitization Restructuring occurs, at least fourteen days before the Confirmation Hearing, the Debtors shall distribute, or cause to be distributed, Cure Notices to the applicable third parties. **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment pursuant to the Plan, or related Cure Claim must be Filed, served, and *actually received*, by the Debtors by the later of:  (i) if the Third Party Sale(s) occur, the deadline established in the Bidding Procedures Order, or (ii) if a Credit Bid Sale and/or the Equitization Restructuring occurs, at least seven days before the Confirmation Hearing.** Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure Claim.  To the extent that the Debtors seek to assume and assign an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee in the applicable Cure Notice and/or Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned.

In the event of a dispute regarding: (i) the amount of any Cure Claim, (ii) the ability of the Debtors, the Reorganized Debtors, the Wind-Down Debtors, the Purchaser, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned, as applicable), or (iii) any other matter pertaining to assumption or assignment, then

any disputed Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made as soon as reasonably practicable following, and in accordance with, the entry of a Final Order of the Bankruptcy Court resolving such dispute or as may be agreed upon by the Debtors, the Reorganized Debtors, the Wind-Down Debtors, or the Purchaser, as applicable, and the counterparty to the Executory Contract or Unexpired Lease, and any such unresolved dispute shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Insurance Policies.*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, shall be treated as Executory Contracts hereunder.  Unless otherwise provided in the Plan, on the Effective Date, in connection with an Equitization Restructuring, solely to the extent explicitly provided in the Schedule of Assumed Executory Contracts and Unexpired Leases, (1) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (2) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Reorganized Debtors.

Unless otherwise provided in the Plan, on the Effective Date, in connection with a Third Party Sale, the Debtors shall be deemed to have assumed or assumed and assigned to the Purchaser, solely to the extent set forth in the Asset Purchase Agreement, and explicitly provided in the Schedule of Assumed Executory Contracts and Unexpired Leases, all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims; *provided* that any insurance policies that are not assumed and assigned to the Purchaser shall be assumed by the Debtors for the sole purpose of resolving any Claims covered by such insurance policies, resolving any Causes of Action retained in connection with such insurance policies, and collecting any and all outstanding deposits, restricted cash, and letters of credit related thereto to the extent reasonably necessary to implement the Wind-Down in accordance with the Plan.

Nothing in this Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Order, or any other Final Order (including any other provision that purports to be preemptory or supervening), (1) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any of such insurance policies or (2) alters or modifies the duty, if any, that the insurers or third party administrators have to pay claims covered by such insurance policies and their right to seek payment or reimbursement from the Debtors (or the Purchaser, solely to the

extent assumed and assigned to the Purchaser under an Asset Purchase Agreement) or draw on any collateral or security therefor.  For the avoidance of doubt, insurers and third party administrators shall not need to nor be required to file or serve a cure objection or a request, application, claim, Proof of Claim, or motion for payment and shall not be subject to any claims bar date or similar deadline governing cure amounts or Claims.

F.      *D&O Liability Insurance Policies.*

The D&O Liability Insurance Policies shall be assumed by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, effective as of the Effective Date, pursuant to sections 105, 365, and 1123 of the Bankruptcy Code, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Liability Insurance Policies, including the coverage for defense and indemnity under any of the D&O Liability Insurance Policies which shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date. For the avoidance of doubt, the D&O Liability Insurance Policies will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, subject to the terms and conditions of the D&O Liability Insurance Policies.  In addition, after the Effective Date, none of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall terminate or otherwise reduce coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect or purchased as of the Petition Date.

G.      *Indemnification Obligations.*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action that arose prior to the Effective Date under any indemnification provisions or applicable law, including any tail policies (whether in the by-laws, certificates of incorporation of formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise), shall (a) survive on the Effective Date on terms no less favorable to such individuals than the indemnification provisions in place prior to the Effective Date, (b) be deemed and treated as an Executory Contract that has been assumed by the Reorganized Debtors or Wind-Down Debtors on behalf of the applicable Debtor, (c) and remain in effect, intact, and irrevocable after the Effective Date.  None of the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, shall amend and/or restate their respective charters, bylaws, operating agreements, or other organizational documents (as applicable) on or after the Effective Date to terminate, reduce, discharge, impair, or adversely affect any of the obligations referred to in the preceding sentence. Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, no Proof of Claim, Administrative Claim, or Cure Claim need be Filed with respect to any such indemnification obligation.

*H.     Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

*I.     Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

*J.     Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

*A.     Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interest (as applicable), shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class from the Debtors or the Disbursing Agent on behalf of the Debtors, as applicable.  Distributions of Residual Assets and any other assets of the Wind-Down Debtors will be made in accordance with the timing and procedures set forth in the Plan Administrator Agreement.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the

making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent.*

Distributions under the Plan shall be made by the Disbursing Agent. The Debtors, Reorganized Debtors, the Wind-Down Debtors, and the Disbursing Agent, as applicable, shall not be required to give any bond or surety or other Security for the performance of their duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the Disbursing Agent is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash by the Debtors.

C.      *Rights and Powers of the Disbursing Agent.*

1.      Powers of the Debtors and the Disbursing Agent.

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Fees of Disbursing Agent and Expenses Incurred on or After the Effective Date.

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes), and any reasonable compensation and expense reimbursement claims (including reasonable attorney fees and expenses), made by the Disbursing Agent, in each case directly related to distributions under the Plan, shall be paid in Cash by the Reorganized Debtors or the Wind-Down Debtors, as applicable, in the ordinary course of business. In the event that the Reorganized Debtors or the Wind-Down Debtors object to all or any portion of the amounts requested to be reimbursed in a Disbursing Agent's invoice, the Reorganized Debtors or the Wind-Down Debtors and such Disbursing Agent shall endeavor, in good faith, to reach mutual agreement on the amount of the appropriate payment of such disputed fees and/or expenses. In the event that the Reorganized Debtors or the Wind-Down Debtors and a Disbursing Agent are unable to resolve any differences regarding disputed fees or expenses, either party shall be authorized to move to have such dispute heard by the Bankruptcy Court.

*D.*    *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.    Record Date for Distributions.

Except as provided herein, on the Distribution Record Date, the Claims Register shall be closed, and the Debtors, and the Disbursing Agent, or any other party responsible for making distributions, shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

2.    Delivery of Distributions in General.

(a)    Payments and Distributions on Disputed Claims.

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims or Disputed Interests that are not Allowed Interests, as applicable, as of the Effective Date but which later become Allowed Claims or Allowed Interests, as applicable, shall, in the reasonable discretion of the Disbursing Agent, be deemed to have been made on the Effective Date unless the Disbursing Agent and the Holder of such Claim or Interest agree otherwise.

(b)    Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors, the Reorganized Debtors, the Wind-Down Debtors, or the Disbursing Agent, as applicable, on the one hand, and the Holder of a Disputed Claim or Disputed Interest, as applicable, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Disputed Interest, other than with respect to Professional Fee Claims, until all Disputed Claims or Disputed Interests held by the Holder of such Disputed Claim or Disputed Interest have become Allowed Claims or Allowed Interests or have otherwise been resolved by settlement or Final Order.

(c)    Delivery of Distributions.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests on the Effective Date at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided*, *further*, *however*, that the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in, as applicable, any Proof of Claim or Proof of Interest Filed by such Holder, or, if no Proof of Claim or Proof of Interest has been filed, the address set forth in the Schedules.

3. <u>Minimum Distributions.</u>

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of less than $100 in value (whether Cash or otherwise), and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claim against the Reorganized Debtors, the Wind-Down Debtors, or their property.

4. <u>Undeliverable Distributions and Unclaimed Property.</u>

With respect to any undeliverable distribution, no distribution to the relevant Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary) to the Reorganized Debtors or the Wind-Down Debtors, as applicable, and shall become distributable to Holders of Claims pursuant to Article IV D. (c), automatically and without need for a further order by the Bankruptcy Court and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

5. <u>Manner of Payment Pursuant to the Plan.</u>

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent, by check, Automated Clearing House, credit card, or wire transfer, or as otherwise provided in the applicable agreements, at the sole and exclusive discretion of the Disbursing Agent.

E.    *Compliance with Tax Requirements/Allocations.*

In connection with the Plan, to the extent applicable, the Debtors, the Reorganized Debtors, the Wind-Down Debtors, the Disbursing Agent, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, delaying distributions pending receipt of information or forms necessary to facilitate such distributions (including the determination of any withholding in connection therewith), or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the applicable Disbursing Agent an IRS Form W-9 or (if the payee is a foreign Person) an appropriate IRS Form W-8, as applicable.

F.     *Allocation of Plan Distributions Between Principal and Interest.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed therein.

G.     *Setoffs and Recoupment.*

Except as otherwise expressly provided herein, the Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors, the Reorganized Debtors, or the Wind-Down Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the Holder of such Claim.

H.     *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in a Final Order, the Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

I.     *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition*, on the Petition Date.

J.     *Claims Paid or Payable by Third Parties.*

1.     Claims Paid by Third Parties.

The Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of

such Claim as of the date of any such distribution under the Plan. The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14)-day grace period specified above until the amount is repaid.

2.    Claims Payable by Insurance, Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies, including the D&O Liability Insurance Policies, other non-Debtor payment agreements, or Collateral held by a third party, until the Holder of such Claim has exhausted all remedies with respect to such insurance policy, other non-Debtor payment agreement, or Collateral, as applicable. To the extent that one or more of the Debtors' insurers or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), or such Collateral or proceeds from such Collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Applicability of Insurance Policies.

Notwithstanding anything to the contrary in this Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party of any of the Debtor's insurance policies with respect to such policies (including the D&O Liability Insurance Policies), nor shall anything contained herein (a) constitute or be deemed a waiver by such insurers of any rights or defenses, including coverage defenses, held by such insurers under any insurance policy, applicable law, equity, or otherwise, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any insurer.

K.    *Indefeasible Distributions.*

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS**

A.    *Allowance of Claims and Interests.*

On and after the Effective Date, and except with respect to Claims and Interests that are Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, the Debtors, the Reorganized Debtors, and the Wind-Down Debtors, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a

Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases Allowing such Claim or Interest.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, and without further notice to any party or action, approval, or order of the Bankruptcy Court.

B.      *Claims and Interests Administration Responsibilities.*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, by order of the Bankruptcy Court, shall have the sole authority with regard to all Claims and Interests that are not Allowed:  (i) to File, withdraw, or litigate to judgment objections to Claims and Interests; (ii) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval of the Bankruptcy Court; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.

C.      *Estimation of Claims and Interests.*

Before, on, or after the Effective Date, the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection.  Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and the relevant Reorganized Debtor or Wind-Down Debtor may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim or Interest.

D.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded may be adjusted or expunged on the Claims Register by the Reorganized Debtors or the Wind-Down Debtors without the Reorganized Debtors or Wind-Down Debtors having to File an application, motion, complaint, objection, or any other legal proceeding seeking

to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims.*

Other than with respect to Claims Allowed under the Plan or a Final Order of the Bankruptcy Court, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors.  All Proofs of Claim Filed on account of an indemnification obligation to a director, manager, officer, or employee shall automatically be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the Claims Bar Date and any and all requests for Administrative Claims filed after the Administrative Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Claim has been deemed timely Filed by a Final Order.**

F.      *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors and any such new or amended Claim or Interest Filed shall automatically be deemed disallowed in full and expunged without any further action; *provided* that a Claim may be Filed after the Effective Date if the Bankruptcy Court enters an order permitting such late Filing.

G.      *No Distributions Pending Allowance.*

If an objection to a Claim or Interest or any portion thereof is Filed as set forth in the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or any portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions, if any, shall be made to the Holder of such Allowed Claim

or Allowed Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy Law or as otherwise provided in Article III.C of the Plan.

I.     *Single Satisfaction of Claims.*

Holders of Allowed Claims may assert such Claims against the applicable Debtor or Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Discharge of Claims and Termination of Interests.*

To the maximum extent provided by section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created or executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors performed prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan. Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.

B.    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

C.    *Release of Liens.*

**Except as otherwise specifically provided in the Plan, the Plan Supplement or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Claim (and the applicable agents for such Holder) shall be authorized and directed to release any Collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, to evidence the release of such Lien pursuant to this section, including the execution, delivery, and filing or recording of such releases.  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, mortgages, deeds of trust, Liens, pledges, and other security interests pursuant to this section and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.  In addition, upon the Effective Date, each of the Bridge Agents, the OpCo Agent, and the PropCo Agent shall be authorized to execute and deliver all documents reasonably requested by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.**

**To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall, at the sole cost and expense of the Reorganized Debtors or the Wind-Down Debtors, as applicable, take any and all steps reasonably requested by the Debtors, the Reorganized Debtors, or the Wind-Down Debtors, as applicable, that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and the Reorganized Debtors**

59

or the Wind-Down Debtors, as applicable, shall be entitled to make any such filings or recordings on such Holder's behalf.

D.      *Releases by the Debtors*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, the Reorganized Debtors, the Wind-Down Debtors, and any person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, the Reorganized Debtors, the Wind-Down Debtors, including any successors to the Debtors or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Asset Sale(s), the Asset Purchase Agreement(s), the Sale Order(s), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, the Asset Sale(s), the Asset Purchase Agreement(s), the Sale Order(s), the Filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or the business or contractual arrangements between any Debtor and any Released Party,

and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan or Confirmation Order, the releases contained in the Plan do not (i) release any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, the Asset Purchase Agreement(s), the Sale Order(s), or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' releases herein, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtors' releases herein are:  (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtors' releases herein; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtors' releases herein against any of the Released Parties.

E.      *Releases by Holders of Claims and Interests.*

Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Debtor and Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in Law, equity, contract, tort, or otherwise, including any derivative Claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among

a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Asset Sale(s), the Asset Purchase Agreement(s), the Sale Order(s), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, the Asset Sale(s), the Asset Purchase Agreement(s), the Sale Order(s), the Filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan or Confirmation Order, the releases set forth above do not (i) release any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, the Asset Purchase Agreement(s), the Sale Order(s), the Lender Support Agreement, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party, or (iv) affect any rights and claims of the OpCo Agent against the OpCo Lenders under Section 2.5(e) of the OpCo Credit Agreements with respect to LC Disbursements (as defined in the OpCo Credit Agreements).

Except to the extent a third-party has opted out of the third-party releases in accordance with the terms of the Disclosure Statement Order, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the third-party releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Releasing Parties; (v) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (vi) fair, equitable, and reasonable; (vii) given and made after notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party releases.

F.      *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claims and Cause of Action for any Claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or Filing of the Disclosure Statement, the Plan, the Plan Supplement, the Asset Sale(s), the Asset Purchase Agreement(s), the Sale Order(s), or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Asset Sale(s), the Asset Purchase Agreement(s), the Sale Order(s), created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  Notwithstanding anything to the contrary herein, nothing in this Article VIII.F shall release or exculpate any Exculpated Party for any act or omission arising before the Petition Date.

G.      *No Discharge of the Wind-Down Debtors.*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Wind-Down Debtors.  Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors (except as set forth in Article IV.D.3(c)).  As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan.  All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

H.      *Injunction.*

Except as provided in the foregoing Article VIIIG of the Plan, or as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid or delivered pursuant to the Plan or the Confirmation Order,

all Entities that have held, hold, or may hold Claims or Interests that have been released, satisfied, or discharged pursuant to the Plan or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Reorganized Debtors, the Released Parties, or the Exculpated Parties (to the extent of the exculpation provided pursuant to the Plan with respect to the Exculpated Parties):  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise, except to the extent that a right of setoff, subrogation, or recoupment is asserted in connection with a timely Filed Proof of Claim or arises from any right of setoff, subrogation, or recoupment that a party to an Unexpired Lease may have under applicable bankruptcy or non-bankruptcy law; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Debtors until the closing of these Chapter 11 Cases.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.

I.    *Protection Against Discriminatory Treatment.*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have

been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any Claim, right, or Cause of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Subordination Rights.*

The classification and treatment of Claims under the Plan shall conform to the respective contractual, legal, and equitable subordination rights of such Claims, and any such rights shall be settled, compromised, and released pursuant to the Plan.

L.      *Document Retention.*

On and after the Effective Date, the Reorganized Debtors, the Wind-Down Debtors, or the Debtors, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors, subject to the applicable provisions of the Plan Administrator Agreement.

M.      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

A.      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX hereof:

      a.    the Bankruptcy Court shall have entered the Confirmation Order, Filed in a manner consistent in all material respects with the Plan, and such order shall have become a Final Order;

b. the Debtors shall not be in default under the Cash Collateral Order (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived or cured in a manner consistent with the Cash Collateral Order);

c. the Debtors shall have paid in full in Cash (or the Debtors shall pay in full in Cash substantially contemporaneously with consummation of the Restructuring Transactions) all Restructuring Expenses incurred or estimated to be incurred, through the Effective Date;

d. the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

e. all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been funded into the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

f. no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing or prohibiting the consummation of the Plan;

g. in the event of an Asset Sale, the conditions to effectiveness to each Asset Purchase Agreement shall have been duly satisfied or waived;

h. in the event of an Asset Sale, each Asset Purchase Agreement shall have been executed and remain in full force and effect;

i. in the event of the Equitization Restructuring, the Reorganized Debtor Equity shall have been issued by the applicable Reorganized Debtor(s);

j. the following documents shall be in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions (including shall not be stayed, modified, revised, or vacated, or subject to any pending appeal), and shall not have been terminated prior to the Effective Date: (a) if applicable, the New Organizational Documents; (b) if applicable, any Sale Order; (c) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by this Plan; (d) the Exit Bridge Credit Agreement, the Exit OpCo Credit Agreement, the Exit PropCo Credit Agreement, and all related loan documents, each as applicable; (e) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring Transactions; and (f) all other material customary documents delivered in connection with transactions of this type (including any and all other documents implementing, achieving, contemplated by or relating to the Restructuring Transactions); and

k. the Debtors shall have otherwise substantially consummated the applicable Restructuring Transactions in a manner consistent in all respects with the Plan.

B.      *Waiver of Conditions.*

The conditions precedent to the Effective Date set forth in Article IX.A may be waived by the Debtors with the consent of the Required Lenders at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan or consummate the Plan.

C.      *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.      *Effect of Non-Occurrence of Conditions to the Effective Date.*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) release any Liens, mortgages, deeds of trust, pledges, or other security interests against property of the Estates; (iii) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity;  or (iv) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect.  Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of any Third Party Sale under the Asset Purchase Agreement or the revocation of the Debtors' authority under the Sale Order to consummate such Third Party Sale.

# ARTICLE X
# MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modifications and Amendments.*

Subject to the limitations contained in the Plan, and subject to the consent of the Required Lenders, the Debtors reserve the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.

*B.      Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.      Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan (and not assumed in connection with an Asset Purchase Agreement and pursuant to the Sale Order), and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the maximum extent permitted under applicable law, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to

Article X of the Plan, any Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including any sale of the Debtors' real property, to the extent the Plan Administrator asks the Bankruptcy Court to approve such sale pursuant to section 363 of the Bankruptcy Code;

10.      Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.      Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.      Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

14.      Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.      Enter an order or final decree concluding or closing any of the Chapter 11 Cases;

16.      Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.      Adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

18.      Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

19.      Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

20.      Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan; *provided, however*, that the Bankruptcy Court shall not have exclusive jurisdiction with respect to the interpretation and enforcement of the Exit Bridge Credit Agreement, the Exit OpCo Credit Agreement, the Exit PropCo Credit Agreement, or any other loan or security documentation executed in connection with each of the foregoing;

21.      Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

22.      Hear and determine matters concerning section 1145 of the Bankruptcy Code;

23.      Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

24.      Hear and determine all disputes related to any Asset Sale;

25.      Enforce all orders previously entered by the Bankruptcy Court;

26.      Hear any other matter not inconsistent with the Bankruptcy Code; and

27.      Enter an order concluding or closing the Chapter 11 Cases.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

*A.      Immediate Binding Effect.*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or

Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.     *Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, the Reorganized Debtors, the Wind-Down Debtors, and all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.     *Dissolution of Statutory Committees.*

On the Effective Date, the Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

Following the Effective Date, and notwithstanding the foregoing, the Committee shall remain in place solely for the limited purpose of addressing (i) all final fee applications for all Professionals, and (ii) the resolution of any appeals of the Confirmation Order.  Upon the dissolution of the Committee, the members of the Committee and their respective professionals will cease to have any duty, obligation or role arising from or related to the Debtors' Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases.  The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Effective Date, except for those fees and expenses incurred by such committee's professionals in connection with the matters identified in clauses (i) and (ii) in the forgoing sentence.

D.     *Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect until the Bankruptcy Court enters the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

E.     *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

F.      *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served, including via email in addition to any other method of service, on the parties listed below:

> <u>If to the Debtors:</u>
>
> MVK FarmCo LLC
> 7700 N. Palm Ave. Suite 206
> Fresno, CA 93711
> Attention:  John Boken, Interim Chief Executive Officer
> Email address:  jboken@alixpartners.com
>
> with copies to:
>
> Kirkland & Ellis LLP
> 300 N. LaSalle
> Chicago, Illinois 60654
> Attention:  Ryan Blaine Bennett and Whitney Fogelberg
> Email addresses:  ryan.bennett@kirkland.com
>                           whitney.fogelberg@kirkland.com

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (which may be by email), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received and telephonically confirmed.  After the Effective Date, the Debtors shall have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.      *Enforcement of Confirmation Order.*

On and after the Effective Date, the Debtors, the Reorganized Debtors, and the Wind-Down Debtors and Plan Administrator, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement).

H.      *Compensation and Benefits Programs.*

On the Effective Date, in the event of a Equitization Restructuring, any agreement with respect to employee compensation and benefits plans and programs applicable to any of the Debtors' employees and retirees will be set forth in the Plan Supplement.

I.      *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.      *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at cases.stretto.com/primawawona or the Bankruptcy Court's website at deb.uscourts.gov.

K.      *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided* that at the request of the Debtors, with the consent of the Required Lenders, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided*, *further*, that any such alteration or interpretation shall be acceptable to the Debtors and the Required Lenders.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (iii) nonseverable and mutually dependent.

L.      *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

M.      *Waiver.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

Respectfully submitted,

Dated:  November 21, 2023          MVK FarmCo LLC
                                  on behalf of itself and all other Debtors

                                  /s/ *John Boken*
                                  _____
                                  Name:        John Boken
                                  Title:       Chief Executive Officer
                                  Company:   MVK FarmCo LLC