**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
|  | ) |
| MVK FARMCO LLC, *et al.*,[1] | ) Case No. 23-11721 (LSS) |
|  | ) |
| Debtors. | ) (Jointly Administered) |
|  | ) |

## NOTICE OF FILING OF UNREDACTED VERSION OF THE LENDER SUPPORT AGREEMENT

    **PLEASE TAKE NOTICE** that, on October 13, 2023 (the "Petition Date"), MVK FarmCo LLC and certain of its direct and indirect subsidiaries, as debtors and debtors and possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").

    **PLEASE TAKE FURTHER NOTICE** that, on the Petition Date, the Debtors filed a redacted version of the Lender Support Agreement as Exhibit B to the *Declaration of John Boken, Interim Chief Executive Officer of MVK FarmCo LLC, in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 13].

    **PLEASE TAKE FURTHER NOTICE** that the Debtors hereby file an unredacted version of the Lender Support Agreement, attached hereto as **Exhibit A**.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201). The location of the Debtors' service address is: 7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

Dated:  December 13, 2023
Wilmington, Delaware

/s/ Joseph Barry

Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:    jbarry@ycst.com
    kenos@ycst.com
    amark@ycst.com

-and-

Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Whitney C. Fogelberg (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    ryan.bennett@kirkland.com
    whitney.fogelberg@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

31072205.1

**<u>Exhibit A</u>**

**Lender Support Agreement**

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

**THIS SUPPORT AGREEMENT AMONG LENDERS DOES NOT CONSTITUTE, AND SHALL NOT BE DEEMED, AN OFFER WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OR REJECTIONS AS TO ANY CHAPTER 11 PLAN WITHIN THE MEANING OF SECTIONS 1125 OR 1126 OF THE BANKRUPTCY CODE.  ANY SUCH OFFER OR SOLICITATION WILL COMPLY WITH ALL APPLICABLE SECURITIES LAWS AND/OR PROVISIONS OF THE BANKRUPTCY CODE.  NOTHING CONTAINED IN THIS SUPPORT AGREEMENT AMONG LENDERS SHALL BE AN ADMISSION OF FACT OR LIABILITY OR, UNTIL THE OCCURRENCE OF THE EFFECTIVE DATE ON THE TERMS DESCRIBED HEREIN, DEEMED BINDING ON THE PARTIES HERETO.  THIS SUPPORT AGREEMENT AMONG LENDERS IS CONFIDENTIAL AND SUBJECT TO CONFIDENTIALITY AGREEMENTS AND HAS BEEN PRODUCED FOR DISCUSSION AND SETTLEMENT PURPOSES ONLY AND IS SUBJECT TO THE PROVISIONS OF RULE 408, AND ITS STATE AND FEDERAL EQUIVALENTS.**

## SUPPORT AGREEMENT AMONG LENDERS

This Support Agreement Among Lenders is made and entered into as of October 12, 2023 (as amended, restated or otherwise modified from time to time in accordance with the terms hereof, and including the exhibits hereto, this "**Agreement**"), among (a) the PropCo Lenders (as defined below) signatory hereto, (b) the OpCo Lenders (as defined below) signatory hereto, (c) the Bridge Lenders (as defined below) signatory hereto, (d) the PropCo Agent (as defined below), (e) the OpCo Agent (as defined below), and (f) the Bridge Agents (as defined below) (each, a "**Party**" and collectively, the "**Parties**").

**WHEREAS**, reference is made to that certain Amended and Restated Credit Agreement, dated as of September 13, 2019 (as amended, restated, supplemented or modified, including pursuant to that certain First Amendment to Amended and Restated Credit Agreement, dated April 3, 2023, the "**PropCo Credit Agreement**"), among Wawona Farm Co. LLC ("**PropCo**"), as borrower, each lender party thereto (the "**PropCo Lenders**"), and Coöperatieve Rabobank U.A., New York Branch[1] ("**Rabobank**"), as administrative and collateral agent (in such capacities, including any successor thereto, the "**PropCo Agent**");

**WHEREAS**, reference is made to that certain Credit Agreement, dated as of September 13, 2019 (as amended, restated, supplemented or modified, including pursuant to that certain First Amendment to Credit Agreement dated April 3, 2023, the "**OpCo Credit Agreement**") among Wawona Packing Co. LLC (together with its affiliates other than PropCo, "**OpCo**") and MVK Intermediate Holdings LLC ("**GroupCo**"), as borrowers, each lender party thereto (the "**OpCo Lenders**"), and Royal Bank of Canada ("**RBC**"), as administrative and collateral agent (in such capacities, including any successor thereto, the "**OpCo Agent**");

---

[1]    Rabobank has resigned as administrative agent under the PropCo Credit Agreement.  *See* paragraph 10 below.

1

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

**WHEREAS**, reference is made to that certain Senior Secured Credit Agreement, dated as of March 31, 2023 (as amended, restated, supplemented or modified, the "**Bridge Credit Agreement**" and, collectively with the PropCo Credit Agreement and the OpCo Credit Agreement, the "**Credit Agreements**"), among PropCo, OpCo and GroupCo, as borrowers, each lender party thereto (the "**Bridge Lenders**" and, collectively with the PropCo Lenders and the OpCo Lenders, the "**Lenders**"), RBC, as OpCo collateral agent (in such capacity, including any successor thereto, the "**Bridge OpCo Collateral Agent**") and Rabobank, as administrative agent and PropCo collateral agent (in such capacities, including any successor thereto, the "**Bridge Administrative Agent**" and the "**Bridge PropCo Collateral Agent**", respectively, and together with the Bridge OpCo Collateral Agent, the "**Bridge Agents**");

**WHEREAS**, (i) the PropCo Lenders party hereto constitute the Required Lenders under (and as defined in) the PropCo Credit Agreement, (ii) the OpCo Lenders party hereto constitute the Required Lenders under (and as defined in) the OpCo Credit Agreement, and (iii) the Bridge Lenders party hereto constitute the Required Lenders under (and as defined in) the Bridge Credit Agreement;

**WHEREAS**, OpCo, PropCo, GroupCo and certain of their affiliates (collectively, the "**Debtors**") intend to file voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**"), thereby commencing chapter 11 cases (the "**Chapter 11 Cases**"); and

**WHEREAS**, the parties hereto desire to set forth their understanding with respect to certain matters regarding the Chapter 11 Cases, including (a) proposed bidding procedures for a sale of the Debtors' assets, (b) an allocation of net cash proceeds of any sale of the Debtors' assets,[2] and (c) their mutual support and commitment in respect of the matters discussed in this Agreement.

**NOW THEREFORE**, in consideration of the foregoing and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned hereby agree as follows:

## I.    Bidding Procedures/Credit Bid

1.    Each of the Parties hereby agrees to a sale and marketing process to be run by the Debtors in the Chapter 11 Cases for substantially all of the Debtors' assets subject to the terms and conditions set forth in the form of bidding procedures attached as **Exhibit A** hereto (the "**Acceptable Bidding Procedures**").

---

[2]    Any reference herein to "net cash proceeds" means Net Cash Proceeds (as defined in the Credit Agreements), that remain after repayment of any outstanding obligations under the Bridge Credit Agreement other than the Roll-Up Term Loans (as defined in the Bridge Credit Agreement). It is the Parties' intention that net cash proceeds allocated to OpCo will be used to satisfy some or all of the Roll-Up Term Loans consistent with the terms of this Agreement.

AMERICAS 120093744

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

2.     The Acceptable Bidding Procedures provide (among other things), and the Parties hereby agree, that:

(i)     the Debtors will market the assets of all Debtors collectively (i.e., WholeCo), and will inform third parties of their ability to submit bids for any assets of the Debtors in any combination so desired by such third party (i.e., WholeCo, PropCo only, OpCo only, and/or certain assets of PropCo and/or Opco);

(ii)     the Parties will support the Debtors' marketing of the assets of all Debtors collectively (i.e., WholeCo) with an opening bid for such assets of $275 million; *provided* that the PropCo Lenders, the Bridge Lenders (in respect of the Roll-Up Term Loans (as defined in the Bridge Credit Agreement)), and the OpCo Lenders each reserve their rights to credit bid separately for their respective collateral, subject to the terms set forth in paragraphs 2(iii) and 2(iv) of this Agreement;

(iii)     for any bid or bids for all or substantially all assets of both PropCo and OpCo (such sale or sales, a "**WholeCo Sale**") to be accepted, (i) such bid or bids must be for at least $275 million of gross cash proceeds and (ii) the Required Lenders under (and as defined in) each of the PropCo Credit Agreement and the OpCo Credit Agreement must have accepted such bid or bids, in each case in their sole discretion; *provided* that the Parties hereby agree to accept a bid or bids for, and to consent to, a WholeCo Sale in an amount that will result in gross cash proceeds of at least $320 million, and the proceeds of such a sale or sales will be allocated consistent with the terms of paragraph 4 of this Agreement; *provided*, *further*, that, for the avoidance of doubt, no Party shall support a WholeCo Sale for gross proceeds of less than $275 million; and

(iv)     the PropCo Lenders, with respect to the loans under the PropCo Credit Agreement, and the Bridge Lenders and OpCo Lenders, with respect to the Roll-Up Term Loans under (and as defined in) the Bridge Agreement and the loans under the OpCo Credit Agreement, each reserve the right to separately credit bid for their respective collateral (the assets of PropCo that comprise the PropCo Lenders' collateral, the "**PropCo Collateral**", and the assets of OpCo that comprise the OpCo Lenders' collateral, the "**OpCo Collateral**"), or to equitize their respective claims pursuant to a plan of reorganization (an "**Acceptable Plan**") that is consistent with the terms of this Agreement and provides for the separate ownership of the PropCo Collateral by the PropCo Lenders and the OpCo Collateral by the Bridge Lenders and the OpCo Lenders, and is otherwise in form and substance reasonably acceptable to the Required Lenders under (and as defined in) each of the applicable Credit Agreements; *provided* that the Parties will not credit bid (or direct any of the OpCo Agent, the PropCo Agent or the Bridge Agents to credit bid) if the Debtors have obtained a bid or bids for a WholeCo Sale that will result in gross cash proceeds of at least $320 million.

3.     Any modifications to the Acceptable Bidding Procedures (including any bidding procedures approved by the Bankruptcy Court but excluding any modifications by the Debtors that are permitted under the Acceptable Bidding Procedures without consent) must be agreed by each of the Parties, acting reasonably.

EXECUTION VERSION

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

## II.    Allocation of Sale Proceeds and Costs of Chapter 11 Cases

4.      Each of the Parties agrees that: (i) with respect to the first $300 million of net cash proceeds of any WholeCo Sale to a third party, 83.333333333% of such proceeds will be paid to the PropCo Agent for distribution to the PropCo Lenders, and 16.666666667% of such proceeds will be paid to the Bridge Agents and/or the OpCo Agent for distribution to the Bridge Lenders in respect of the Roll-Up Term Loans (as defined in the Bridge Credit Agreement) and/or the OpCo Lenders in respect of the Obligations (as defined in the OpCo Credit Agreement), in each case consistent with the Loan Documents (as defined in the applicable Credit Agreements); and (ii) with respect to any net cash proceeds of a WholeCo Sale to a third party in excess of $300 million, (A) 50% of such excess proceeds will be paid to the PropCo Agent for distribution to the PropCo Lenders and (B) 50% of such excess proceeds will be paid to the Bridge Agents and/or the OpCo Agent for distribution to the Bridge Lenders in respect of the Roll-Up Term Loans (as defined in the Bridge Credit Agreement) and/or the OpCo Lenders in respect of the Obligations (as defined in the OpCo Credit Agreement), in each case consistent with the Loan Documents (as defined in the applicable Credit Agreements), until such time as all principal outstanding under the PropCo Credit Agreement (as of the date of commencement of the Chapter 11 Cases and after application of cash on hand at PropCo) is paid in full, at which time all remaining net cash proceeds will be distributed exclusively to the Bridge Agents and/or the OpCo Agent for distribution to the Bridge Lenders in respect of the Roll-Up Term Loans (as defined in the Bridge Credit Agreement) and/or the OpCo Lenders in respect of the Obligations (as defined in the OpCo Credit Agreement), in each case consistent with the Loan Documents (as defined in the applicable Credit Agreements), until such time as the Roll-Up Term Loans (as defined in the Bridge Credit Agreement) and the Obligations (as defined in the OpCo Credit Agreement) are paid in full.

5.      If the winning bid or bids are for PropCo Collateral but are not a WholeCo Sale, then the Bridge Agents and/or the OpCo Agent shall be entitled to receive (i) $30 million (the "**OpCo Value Amount**") to be paid to the Bridge Agents and/or the OpCo Agent for distribution to the Bridge Lenders in respect of the Roll-Up Term Loans (as defined in the Bridge Credit Agreement) and/or the OpCo Lenders in respect of the Obligations (as defined in the OpCo Credit Agreement), in each case consistent with the Loan Documents (as defined in the applicable Credit Agreements) from the proceeds of such sale immediately upon consummation of such sale or (ii) if the winning bid for the PropCo Collateral is a credit bid, (a) the OpCo Value Amount shall not be immediately payable in connection with such credit bid and shall instead be payable from 50% of the net proceeds of any subsequent sale(s) of any PropCo Collateral actually received by PropCo (or such other recipient of such net proceeds, as the case may be) until the OpCo Agent receives the OpCo Value Amount and (b) such obligation to pay the OpCo Value Amount as such net proceeds are received shall be memorialized pursuant to a promissory note from the owner of the PropCo Collateral (and, for the avoidance of doubt, not the PropCo Lenders) agreed to by the Parties, acting reasonably; *provided* that, if the winning bid or bids are for PropCo Collateral and OpCo Collateral but are not a WholeCo Sale and if gross proceeds of any such sale(s) are at least $320 million, the allocation set forth in paragraph 4 shall apply in lieu of the payover obligations of this paragraph 5.

6.      Any determination of (i) a winning bid solely for the OpCo Collateral (i.e., not a

4

EXECUTION VERSION

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

WholeCo Sale and in lieu of a credit bid of the Roll-Up Term Loans under (and as defined in) the Bridge Credit Agreement or Obligations under (and as defined in) the OpCo Credit Agreement) and (ii) in the event the winning bid solely for the OpCo Collateral is a credit bid, any determinations regarding any subsequent sale(s) of such OpCo Collateral, in each case will be made by the Parties in a commercially reasonable manner.

7.     During the Chapter 11 Cases, the Parties agree that they shall not seek to enforce any payment obligation of the Debtors under the Master Lease Agreement (as defined in the Credit Agreements) and that the Debtors shall not be required to make any such payments.

8.     During the Chapter 11 Cases, there will be no surcharge or other value transfer among the Debtors to compensate for funding the operations of the Debtors' business or the preservation or disposal of any OpCo Collateral or PropCo Collateral (whether before, on or after the filing of the Chapter 11 Cases), and each Party shall not assert or otherwise support any such surcharge or other value transfer.

## III.     Lender Support Commitments

9.     Each of the Parties severally and not jointly agrees, subject to the terms and conditions contained in this Agreement, to:

(i)     consent to, support and not object to, delay, impede or take any other action to interfere with the marketing and sale of the Debtors' assets in accordance with the milestones contained in a cash collateral order acceptable to the Required Lenders of each of the applicable Credit Agreements (the "**Acceptable Cash Collateral Order**") and the Acceptable Bidding Procedures, and the consummation of any sale of the Debtors' assets that complies with the Acceptable Bidding Procedures and this Agreement;

(ii)     act in good faith and take (and cause its controlled affiliates and their respective representatives, agents and employees to take) all actions reasonably necessary, or as may be required by order of the Bankruptcy Court, to support and not object to, delay, impede or take any other action to interfere with the Debtors' marketing and sale of the Debtors' assets that complies with the Acceptable Cash Collateral Order and the Acceptable Bidding Procedures, and the consummation of any sale of the Debtors' assets that complies with the Acceptable Bidding Procedures and this Agreement.

(iii)     not agree to any amendment or modification to, or replacement of, the Acceptable Cash Collateral Order that would adversely and materially impact any other Party; and

(iv)     not pursue or support any Cash Collateral use by the Debtors or any marketing of the Debtors' assets in a manner inconsistent with the Acceptable Cash Collateral Order and Acceptable Bidding Procedures, respectively (subject to paragraph 9(iii)).

10.     The PropCo Lenders party hereto, the OpCo Lenders party hereto and the Bridge

5

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

**EXECUTION VERSION**

Lenders party hereto, which collectively constitute Required Lenders under (and as defined in) each of the Credit Agreements, hereby directs the PropCo Agent, the OpCo Agent and the Bridge Agents, as applicable, to enter into and perform its obligations under this Agreement.  Upon the effectiveness of the resignation of Rabobank as PropCo Agent, (i) any successor agent shall be bound by the terms of this Agreement and (ii) Rabobank's rights and obligations under this Agreement solely in its capacity as PropCo Agent will automatically terminate. For the avoidance of doubt, nothing in this Agreement shall alter the rights and obligations of any of the PropCo Agent, the OpCo Agent or the Bridge Agents under their respective Credit Agreements and related Loan Documents (as defined in such Credit Agreements), including, without limitation, any obligation of such Party to act or refrain from acting pursuant to the direction of the requisite PropCo Lenders, OpCo Lenders, or Bridge Lenders, as the case may be, in accordance with the applicable Loan Documents (as defined in the corresponding Credit Agreements).

## IV.     Representations

11.     <u>Authority</u>.  Each Party represents and warrants to each other Party that: (a) such Party is duly organized, validly existing, and in good standing under the laws of the jurisdiction of its organization and has all the requisite corporate, partnership, limited liability company, or other power and authority to execute and deliver this Agreement and perform its obligations under this Agreement; and (b) the execution, delivery, and performance of by such Party under this Agreement have been duly authorized by all necessary action on its part, and no other actions or proceedings on its part are necessary to authorize it to enter into this Agreement.

12.     <u>Enforceability</u>.  Each Party represents and warrants to each other Party that this Agreement has been duly executed and delivered by such Party and constitutes the binding obligation of such Party, enforceable in accordance with its terms.

13.     <u>No Conflict</u>.  Each Party represents and warrants to each other Party that the execution and delivery of this Agreement does not and will not (a) conflict with any provision of the organizational documents of such Party or (b) violate any contract, agreement, document, judgment, license, or order applicable to or binding upon such Party.

14.     <u>Holdings</u>.  Each Party represents and warrants to each other Party that it has, with respect to the beneficial owner(s) of the relevant holdings (i) sole investment or voting discretion with respect to such holdings, (ii) full power and authority to vote on and consent to matters concerning such holdings or to exchange, assign, and transfer such holdings, and (iii) full power and authority to bind or act on the behalf of such beneficial owner(s).

## V.     Miscellaneous

15.     <u>Effectiveness</u>.  This Agreement shall become effective and fully binding on the Parties once Required Lenders under (and as defined in) each of the Credit Agreements have executed and delivered to each other Party a signed counterpart to this Agreement and shall remain effective until the earliest to occur of (i) the consummation of a sale of substantially all of the

AMERICAS 120093744

EXECUTION VERSION

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

Debtors' assets, (ii) the consummation of a plan of reorganization or plan of liquidation for the Debtors and (iii) the Termination Date.

16.    Termination.  This Agreement may be terminated with respect to all Parties upon three (3) business days' written notice by delivery of the terminating Party to the other Parties (the conclusion of such three (3) business day period, the "**Termination Date**") upon the breach by any Party of any material term of this Agreement, other than the terminating Party's own breach. Paragraphs 17 through 25 hereof shall survive the termination of this Agreement.

17.    Specific Performance.  It is understood and agreed by each of the Parties that money damages would be an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach on shortened notice, including an order of the Bankruptcy Court or other court of competent jurisdiction requiring any Party to comply promptly with any of its obligations under this Agreement.

18.    Entire Agreement.  This Agreement constitutes the entire agreement among the Parties relating to the subject matter hereof and supersedes any and all previous agreements and understandings, oral or written, relating to the subject matter hereof.  The Parties agree that the Credit Agreements and the other Loan Documents (as defined in each of the Credit Agreements) remain in full force and effect as written; *provided* that to the extent there is an inconsistency between the provisions of this Agreement and the provisions of the Credit Agreements and the other Loan Documents, the provisions of this Agreement shall, as between the Parties, be controlling.  The Parties have not entered, and will not enter, into any agreements that conflict with the terms of this Agreement.

19.    Governing Law; Submission to Jurisdiction; Forum Selection.  This Agreement shall be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York, without giving effect to the conflicts of law principles thereof.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement, to extent possible, either the United States District Court for the Southern District of New York, or any New York State court located in New York County (collectively, the "**Chosen Courts**"), and solely in connection with claims arising under this Agreement: (a) irrevocably submits to the exclusive jurisdiction of the Chosen Courts; (b) waives any objection to laying venue in any such action or proceeding in the Chosen Courts; and (c) waives any objection that the Chosen Courts are an inconvenient forum or do not have jurisdiction over any Party hereto; *provided* that, if the Debtors commence the Chapter 11 Cases, then the Bankruptcy Court (or court of proper appellate jurisdiction) shall be the exclusive jurisdiction rather than any Chosen Court, to the extent possible.

20.    Trial by Jury Waiver.  Each Party hereto irrevocably waives any and all right to trial by jury in any legal proceeding arising out of or related to this Agreement or the transactions contemplated hereby.

**EXECUTION VERSION**

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

21.     <u>Execution of Agreement</u>.  This Agreement may be executed and delivered in any number of counterparts and by way of electronic signature and delivery, each such counterpart, when executed and delivered, shall be deemed an original, and all of which together shall constitute the same agreement.

22.     <u>Interpretation and Rules of Construction</u>.  This Agreement is the product of negotiations among the Parties, and the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement or any portion hereof, shall not be effective in regard to the interpretation hereof.

23.     <u>Successors and Assigns</u>.  This Agreement is intended to bind and inure to the benefit of each of the Parties and each of their respective permitted successors, assigns, heirs, executors, administrators, and representatives.  Each Party hereto agrees not to sell, assign or otherwise transfer any of its claims or holdings to any other party unless such transferee is party to this Agreement or otherwise executes a joinder or other agreement acknowledging that it is bound by the terms and conditions of this Agreement.

24.     <u>No Third-Party Beneficiaries</u>.  Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties and no other person or entity shall be a third-party beneficiary of this Agreement.

25.     <u>Notices</u>.  All notices under this Agreement shall be delivered as provided in, and such notices shall be subject to, Sections 5.02 and 10.01 of the Bridge Credit Agreement.

*     *     *     *     *

AMERICAS 120093744

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

COÖPERATIEVE RABOBANK U.A., NEW YORK BRANCH, as                PropCo Agent, Bridge Administrative Agent, Bridge PropCo Collateral Agent and a Lender

By: _____
     Name: Jeffrey Case
     Title: Executive Director

By: _____
     Name: Jasvir Sihra
     Title: Vice President

AMERICAS 120093744

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

ROYAL BANK OF CANADA, as OpCo Agent and Bridge OpCo Collateral Agent

By: _____

     Name: Yvonne Brazier
     Title:   Manager, Agency Services

[Prima Wawona – Lender Support Agreement]

PRIVILEGED & CONFIDENTIAL
SUBJECT TO COMMON INTEREST AND FRE 408

ROYAL BANK OF CANADA, as a Lender

By: _MHodgkinson_____

　　　Name:  Mari J. Hodgkinson
　　　Title:    Authorized Signatory

METROPOLITAN LIFE INSURANCE COMPANY,
a New York corporation, as a Lender

By:     MetLife Investment Management, LLC,
        Its investment manager

By:     *Douglas A. Gibson*
        Name: Douglas A. Gibson
        Title: Authorized Signatory and Director

COMPEER FINANCIAL, PCA, as a Lender

By: _____

Name: Kevin Buente
Title: Principal Credit Officer

COMPEER FINANCIAL, FLCA, as a Lender

By: _____

Name: Kevin Buente
Title: Principal Credit Officer

AGCOUNTRY FARM CREDIT SERVICES PCA, as a Lender

By:    _____
        Name:  Erik Knight
        Title: VP Credit Officer

AGFIRST FARM CREDIT BANK, as a Lender

By: _____
Name: Steven J. O'Shea
Title: Senior Vice President

FARM CREDIT BANK OF TEXAS, as a Lender

By: _____

       Name: Ria Estrada
       Title: SVP Credit Analysis

FARM CREDIT SERVICES OF AMERICA, PCA, as a Lender

By: _____
Name: J. Ryan Torpy
Title: Vice President

FARM CREDIT MID-AMERICA, PCA, as a Lender

By: _____
    Name: Joe Beiting
    Title:  Director Credit Food and Agribusiness

AMERICAN AGCREDIT, PCA, as a Lender

By: _____
       Name:  Daniel K. Hansen
       Title:    Managing Director

GREENSTONE FARM CREDIT SERVICES, FLCA, as a Lender

By: _____
       Name: Mark Strebel
       Title: Vice President of Risk Assets

**Exhibit A**

Acceptable Bidding Procedures

[see attached]

*K&E Draft 10/12/2023 – Privileged & Confidential – Attorney Work Product*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-[_____] (___) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | **Re: Docket No. __** |

### BIDDING PROCEDURES

On October [●], 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), commencing the above-captioned chapter 11 cases (the "Chapter 11 Cases"). As described more fully in the *Declaration of John Boken, Interim Chief Executive Officer of MVK FarmCo LLC, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") and the Debtors' *Motion for Entry of An Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors Assets, (II) Approving the Form and Manner of Notice Thereof, (III) Scheduling An Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Contracts, (V) Approving the Sale of the Debtors' Assets Free and Clear, and (IV) Granting Related Relief* (the "Bidding Procedures Motion") [Docket No. [●]] the Debtors are pursuing one or more value maximizing sale transactions, or, in the alternative, an equitization transaction with the Debtors' Prepetition Lenders (as defined below) via confirmation of a chapter 11 plan (the "Equitization Restructuring").

On [●], 2023, the Bankruptcy Court entered an order (the "Bidding Procedures Order") [2] [Docket No. [●]] approving the bidding procedures set forth below (the "Bidding Procedures"). The Bidding Procedures set forth the process to determine the highest and best offer (or offers) for a sale (or sales) (each, a "Sale Transaction") of all or substantially all of the assets of the Debtors (collectively, the "Assets") by providing interested parties with the opportunity to qualify for and participate in an auction (the "Auction") to be conducted by the Debtors and to submit competing bids for all or part of the Assets.

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201). The location of the Debtors' service address is: 7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion or the Bidding Procedures Order, as applicable.

COPIES OF THE BIDDING PROCEDURES ORDER OR ANY OTHER DOCUMENTS IN THE DEBTORS' CHAPTER 11 CASES ARE AVAILABLE UPON REQUEST TO STRETTO, INC., BY CALLING (888) 405-4599 (TOLL FREE) AND (949) 385-6774 (INTERNATIONAL) OR BY VISITING THE DEBTORS' RESTRUCTURING WEBSITE AT HTTPS://CASES.STRETTO.COM/PRIMAWAWONA.

### Assets to Be Sold "Free and Clear"

Except as otherwise provided in a Modified APA (as defined below) submitted by a Successful Bidder (as defined below), all of the Debtors' right, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "Interests"), subject only to the Assumed Liabilities and Permitted Encumbrances (each as defined in the Modified APA of the applicable Successful Bidder), to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale(s) of the Assets with the same validity, force, effect, and priority as such Interests applied against the Assets as of the date the Debtors' commenced these Chapter 11 Cases, subject to any rights, claims, and defenses of the Debtors.

A party may participate in the bidding process by submitting a bid for (a) all or substantially all of the Assets and/or (b) one or more, or any combination of, Assets of one or more Debtors, as that party may desire.

### Submission of Bid

**Any interested bidder should contact, as soon as practicable:**

**Houlihan Lokey Capital, Inc.**
111 S Wacker Dr., Floor 37
Chicago, IL 60606
Attn:

| | | |
|---|---|---|
| Ryan Sandahl | Steve Balash | Dane Lewis |
| RSandahl@HL.com | SBalash@HL.com | DGLewis@HL.com |
| (tel.) +1 (312) 456-4796 | (tel.) +1 (312) 462-6455 | (tel.) +1 (312) 462-6459 |

**Key Dates and Deadlines**

The key dates and deadlines for the sale process are as follows:

| Deadline | Item |
|---|---|
| **Two business days (or as soon as reasonably practicable thereafter) after the entry of the Bidding Procedures Order** | Deadline for the Debtors to file and serve the Sale Notice[3] and publish the Publication Notice[4] |
| **Three business days (or as soon as reasonably practicable thereafter) after the entry of the Bidding Procedures Order** | Deadline to file Initial Assumption and Assignment Notice[5] |
| **November 14, 2023 at 5:00 p.m. (prevailing Eastern Time)** | Stalking Horse Bidder Designation (as defined below) (if the Debtors so choose to designate a Stalking Horse Bidder (as defined below)). |
| **No later than one (1) day after the filing of the Stalking Horse Notice (as defined below) at 5:00 p.m. (prevailing Eastern Time)** | Stalking Horse Objection Deadline (if the Debtors so choose to designate a Stalking Horse Bidder). |
| **November 17, 2023 at 5:00 p.m. (prevailing Eastern Time)** | Bid Deadline |
| **November 28, 2023 at 9:00 a.m. (prevailing Central Time)/10:00 a.m. (prevailing Eastern Time)** | Auction Date |
| **November 29, 2023 at 5:00 p.m.** | Deadline for the Debtors to file with the |

---

[3] "Sale Notice" shall mean the notice the Debtors will file with the Bankruptcy Court, serve on the Consultation Parties, and cause to be published on the Debtors' claims and noticing agent website setting forth (A) a description of the Assets available for sale in accordance with these Bidding Procedures; (B) the date, time, and location of the Auction and proposed Sale Hearing; (C) the Sale Objection Deadline and the procedures for filing such objections; and, if applicable, (D) a summary of the material terms of any Stalking Horse APA, including the terms and conditions of any Bid Protections to be provided thereunder, if applicable.

[4] "Publication Notice" shall mean a notice which the Debtors shall cause to be published in *The Packer* and the national edition of *USA Today* which shall include the information contained in the Sale Notice.

[5] "Initial Assumption and Assignment Notice" shall mean the deadline for the Debtors to file one or more notice(s) on the Bankruptcy Court's docket of initial list of executory contracts and non-residential real estate leases to be assumed as part of each Sale Transaction.

3

| Deadline | Item |
|---|---|
| (prevailing Eastern Time) | Bankruptcy Court the Notice of Bid Results and the proposed Sale Order(s) (each as defined below) |
| November 29, 2023 at 5:00 p.m. (prevailing Eastern Time) | Deadline to object to the Sale Transaction(s) to the Successful Bidder(s) and Assumption and Assignment Objection Deadline |
| December 6, 2023 at [10:00 a.m.] (prevailing Eastern Time) | Sale Hearing (as defined below) |

The Debtors may, with the consent of the Consultation Parties (as defined below), adjourn any of the key dates or deadlines herein without further order of the Bankruptcy Court; *provided* that the Debtors shall promptly file a notice with the Bankruptcy Court of any changes to the key dates or deadlines herein.  Any such adjournment shall not itself modify any of the Milestones under (and as defined in) the orders approving the use of cash collateral approved by the Bankruptcy Court.

## Consultation Parties

Throughout the sale process, the Debtors and their advisors will regularly and timely consult with the following parties (collectively, the "Consultation Parties"): (i) the advisors to the steering committee of the Prepetition Agents and certain Prepetition Lenders (each as defined below) (the "SteerCo") (including White & Case LLP; Sidley Austin LLP; Moore & Van Allen, PLLC; Morgan Lewis & Bockius LLP; and FTI Consulting) and (ii) any appointed statutory committee under 11 U.S.C. § 1102 in the Chapter 11 Cases.  For the avoidance of doubt, unless approved by the Bankruptcy Court, no amendment or other modification to these Bidding Procedures shall be made by the Debtors without the consent of the Consultation Parties.

## Qualifications to Submit Bids and Participate in Auction

### A.    Diligence Materials

To participate in the bidding process for a Sale Transaction and to receive access to due diligence materials (the "Diligence Materials"), a party must submit to the Debtors (i) an executed confidentiality agreement, which must be based on the form confidentiality agreement supplied by the Debtors in a designated data room and in form and substance satisfactory to the Debtors (in consultation with the Consultation Parties) and (ii) reasonable evidence demonstrating the party's financial capability to consummate a Sale Transaction with respect to those Assets in which the party is preliminarily interested as determined by the Debtors in their reasonable business judgment (in consultation with the Consultation Parties). The Debtors shall consult with the Consultation Parties with respect to any determination that a party has not provided the information required in clause (ii) in the immediately preceding sentence.  ***No party will be permitted to conduct any due diligence without entering into a confidentiality agreement described in clause (i).***

4

A party who qualifies for access to Diligence Materials shall be a "Preliminary Interested Investor." The Debtors will afford any Preliminary Interested Investor the time and opportunity to conduct due diligence within the deadlines set forth in these Bidding Procedures. Until the Bid Deadline (as defined below), in addition to granting access to the Diligence Materials, the Debtors will provide Preliminary Interested Investors with due diligence access and additional information, as may be requested by a Preliminary Interested Investor, to the extent that the Debtors determine (in consultation with the Consultation Parties) that such requests are reasonable and appropriate under the circumstances. All due diligence requests shall be directed to Houlihan Lokey Capital, Inc. ("Houlihan") (Attn: Ryan Sandahl (RSandahl@HL.com), Steve Balash (SBalash@HL.com), and Dane Lewis (DGLewis@HL.com)). The Debtors, with the assistance of Houlihan, will coordinate all reasonable requests for additional information and due diligence access from Preliminary Interested Investors.

The Debtors reserve the right (in consultation with the Consultation Parties) to withhold or modify any Diligence Materials that the Debtors determine in good faith are business-sensitive or otherwise not appropriate for disclosure to a Preliminary Interested Investor who is a competitor, vendor, or customer of the Debtors or is directly or indirectly affiliated with any competitor, vendor, or customer of the Debtors. Neither the Debtors nor their representatives shall be obligated to furnish information of any kind whatsoever to any party that is not determined to be a Preliminary Interested Investor.

## B.    Due Diligence from Bidders

Each Preliminary Interested Investor and Bidder (as defined below) shall comply with all reasonable requests with respect to information and due diligence access by the Debtors or their advisors regarding such Preliminary Interested Investor or Bidder, as applicable, and its contemplated Sale Transaction. Failure by a potential bidder (including any Qualified Bidder (as defined below)) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine (in consultation with the Consultation Parties) that such Bidder is no longer a Qualified Bidder or that a bid made by such Bidder is not a Qualified Bid (as defined below).

## C.    Bid Deadline and Auction Qualification Process

To be eligible to participate in the Auction, a party must be a Preliminary Interested Investor and must submit a written offer for a Sale Transaction (each, a "Bid" and the Preliminary Interested Investor that submits a Bid, a "Bidder") that must (i) be determined by the Debtors to satisfy each of the conditions set forth in this section and (ii) be **_actually received_** by (a) counsel to the Debtors, Kirkland & Ellis LLP, 300 N La Salle St., Chicago, IL 60654 Attn: Ryan Bennett (ryan.bennett@kirkland.com) and (b) the Debtors' investment banker, Houlihan, 111 S Wacker Dr., Floor 37, Chicago, IL 60606, Attn: Ryan Sandahl (RSandahl@HL.com) **on or before November 17, 2023 at 5:00 p.m.** (prevailing Eastern Time) (the "Bid Deadline"). The Debtors shall provide counsel to the Consultation Parties copies of any Bid received within one (1) Business Day (as defined in the Bankruptcy Code) of receipt; _provided_, _however_, that during any period in which a Consultation Party has submitted a Qualified Bid (other than a credit bid) and has become a Qualified Bidder, such Consultation Party shall no longer be considered a Consultation Party under these Bidding Procedures solely

for so long as such Consultation Party's Bid remains a Qualified Bid and is not disqualified or withdrawn.

A Bid will not be considered qualified for the Auction if such Bid does not satisfy each of the following conditions:

1.    <u>Executed Agreement</u>:  Each Bid must include (a) an offer letter, signed by an authorized representative of the Bidder, pursuant to which the Bidder offers to consummate the Sale Transaction contemplated by such Bid on the terms set forth in the Modified APA (as defined below) together with (b) an asset purchase agreement, which must be based on the form asset purchase agreement supplied by the Debtors in a designated data room (the "<u>Form APA</u>") or, if applicable, the Stalking Horse APA (as defined below), signed by an authorized representative of the Bidder, pursuant to which the Bidder agrees to consummate such Sale Transaction for the Assets referenced therein (together with all ancillary documents and schedules contemplated thereby, a "<u>Modified APA</u>").  A Bid must also include a redline of the Modified APA marked against the Form APA (and all applicable ancillary documents and schedules contemplated thereby) to show all changes requested by the Bidder with respect to the Form APA.  Each Modified APA must provide a commitment to close the Sale Transaction contemplated by such Modified APA within a time frame acceptable to the Debtors (determined in consultation with the Consultation Parties) after all closing conditions set forth in such Modified APA are met (other than those which are to be satisfied at the closing of the transactions contemplated by such Modified APA).

2.    <u>Good Faith Deposit</u>:  Each Bid must be accompanied by a cash deposit in the amount of ten percent (10%) of the cash purchase price contained in the Modified APA, before any adjustments to the purchase price, to an escrow account to be identified and established by the Debtors (the "<u>Good Faith Deposit</u>").  To the extent a Qualified Bid is modified before, during, or after the Auction in any manner that increases the cash purchase price contemplated by such Qualified Bid, the Debtors reserve the right (in consultation with the Consultation Parties) to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the increased purchase price.

3.    <u>Good Faith Offer</u>:  Each Bid must represent an irrevocable, binding, good faith, and *bona fide* offer to purchase some or all of the Assets identified in such Bid if such Bid is selected as the Successful Bid or the Back-Up Bid (each as defined herein).

4.    <u>Minimum Bid</u>:  Each Bid for all or substantially all of the Debtors' assets must consist of cash consideration to be paid at the closing of the transactions contemplated by the Modified APA in an amount equal to at least $275,000,000.  Each Bid must set forth the total purchase price for such Bid.

5.    <u>Joint Bids</u>:  The Debtors will be authorized to approve (in consultation with the Consultation Parties) joint Bids in their reasonable discretion on a case-by-case basis.

6.    <u>Purchased Assets and Assumed Liabilities</u>:  Each Bid must clearly provide which of the Assets the Bidder seeks to acquire, and which of the Assumed Liabilities (as defined in the Modified APA) the Bidder agrees to assume.  With respect to any bids for

less than all or substantially all of the Debtors' assets, the Debtors reserve the right to request an allocation of the purchase price among the Assets the Bidder seeks to acquire and the Assumed Liabilities the Bidder agrees to assume.

7.    Designation of Assigned Contracts and Leases:    Subject to the terms of the Modified APA, each Bid must identify any and all executory contracts and unexpired leases of the Debtors that the Bidder wishes to be assumed and assigned to the Bidder at the closing of the Sale Transaction contemplated by such Bid.

8.    Corporate Authority:    Each Bid must include written evidence reasonably acceptable to the Debtors demonstrating appropriate corporate or similar governance authorization of the Bidder to consummate the proposed Sale Transaction; *provided* that, if the Bidder is an entity specially formed for the purpose of effectuating the Sale Transaction, then the Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the Sale Transaction by the equity holder(s) of such Bidder and any other governing body of the Bidder that is required to approve the Sale Transaction.

9.    Disclosure of Identity of Bidder:    Each Bid must fully disclose the identity of each entity (including any equity owners, sponsors, or co-investors) that will be bidding for or purchasing the Assets or otherwise directly or indirectly participating in connection with such Bid.

10.    Proof of Financial Ability to Perform:    Each Bid must include written evidence that the Debtors conclude, in consultation with the Consultation Parties, demonstrates that the Bidder has the necessary financial ability to (i) timely close the Sale Transaction contemplated by such Bid within a time frame acceptable to the Debtors (determined in consultation with the Consultation Parties) after all closing conditions set forth in the Modified APA are met and (ii) provide adequate assurance of future performance under all contracts to be assumed and assigned in such Sale Transaction.    Such information must include, *inter alia*, the following:

   a.    Contact names and numbers for verification of financing sources, if any;

   b.    Written evidence of the Bidder's internal financial resources and ability to finance its Bid with cash on hand, available lines of credit, uncalled capital commitments or otherwise available funds (including through the posting of an irrevocable letter of credit or customary debt or equity financing commitment letters that comply with the requirements of this sub-paragraph 10.b or sub-paragraph 10.c below, as applicable, in each case, from reputable financial institutions (as determined in the Debtors' reasonable discretion in consultation with the Consultation Parties)) in an aggregate amount sufficient to pay the cash purchase price contemplated by such Bid, to pay for cure costs for contracts to be assumed and assigned in the Sale Transaction, and to satisfy all other obligations of the Bidder pursuant to the Modified APA ("Bidder's Obligations"); *provided* that, if the Bidder is an entity that is specially formed for the purpose of effectuating the Sale Transaction or if the Bidder intends to raise any

equity financing to fund any portion of Bidder's Obligations, then the Bidder must furnish to the Debtors a fully executed and effective equity commitment letter or guarantee ("<u>Bidder Support</u>") (which Bidder Support shall remain outstanding until at least sixty (60) days after the date of entry of the Sale Order (or the "outside date" in the Modified APA, if later), subject to a potential further extension as set forth herein or therein) from its equity holders or other affiliated entities with respect to the portion of Bidder's Obligations that are not to be paid with cash on hand (which Bidder Support may not be subject to any conditions other than the satisfaction of the conditions set forth in the Modified APA and shall include third party beneficiary language in favor of the Debtors entitling the Debtors to enforce such Bidder Support directly against the counterparties) and provide written evidence that its equity holders or other affiliated entities providing the Bidder Support have the resources and ability to finance such portion of the Bidder's Obligations;

c. Without limiting the requirements of sub-paragraph 10.b above, if the Bidder intends to raise any debt financing to fund any portion of the Bidder's Obligations, the Bid must include fully executed and effective debt financing commitment letter(s), which letter(s) shall (i) not be subject to any internal approvals, credit committee approvals or diligence conditions, (ii) be in customary form, and (iii) remain outstanding until sixty (60) days after the date of entry of the Sale Order (subject to a potential further extension as set forth herein); and

d. Any such other form of financial disclosure or credit-quality support information or enhancement reasonably requested by the Debtors (in consultation with the Consultation Parties) demonstrating that such Bidder (or, if the Bidder is an entity formed for the purpose of making a Bid, its Bidder Support) has the ability to close the Sale Transaction on the terms set forth in the Modified APA.

11.   <u>Adherence to Bidding Procedures</u>:  By submitting its Bid, each Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Auction after conclusion of the Auction.

12.   <u>Regulatory and Third-Party Approvals</u>:   Each Bid must set forth each government, licensing, regulatory, and other third-party approval or filing required to be obtained or made by the Bidder or its Bidder Support, and each waiting period required to have expired or terminated, for the Bidder to consummate the Sale Transaction, and the time period within which the Bidder expects to receive such approvals, to make such filings or such waiting periods to expire or terminate (and in the case that receipt of any such approval, the making of any such filing, or the expiration or termination of any such waiting period is expected to take more than thirty (30) days following execution and delivery of the Modified APA, those actions the Bidder will take to ensure receipt of such approval(s), the making of such filing(s) or the expiration or termination of such waiting period(s) as promptly as possible).

13.    <u>Contact Information and Affiliates</u>:    Each Bid must provide the contact information for the Bidder and full disclosure of any affiliates of the Bidder.

14.    <u>Contingencies and Other Provisions</u>:    Each Bid shall not contain any escrow arrangements, indemnities or adjustments to the purchase price.  Without limiting the immediately preceding sentence, each Bid shall not include any conditions or contingencies relating to financing (including, for the avoidance of doubt, any conditionality, or limitations on specific performance, relating to any financing contemplated by sub-paragraph 10.c above), internal approvals, or the absence of any material adverse effect.

15.    <u>Contingencies Regarding Due Diligence</u>:    Each Bid shall not include any conditions or contingencies relating to due diligence.

16.    <u>Acknowledgement of Independent Review</u>:    Each Bid must include a written acknowledgement and representation that the Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its Bid; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties, express, implied, statutory or otherwise, regarding the Assets, the financial performance of the Assets or the physical condition of the Assets, or the accuracy or completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bidding Procedures or the Modified APA.

17.    <u>Irrevocable</u>:    Each Bid must be irrevocable unless and until the Debtors accept a higher Bid and such Bidder is not selected as the Back-Up Bidder (as defined below); *provided* that if a Bid is accepted as the Successful Bid or the Back-Up Bid, such Bid shall continue to remain irrevocable, subject to the terms and conditions of these Bidding Procedures.

18.    <u>Compliance with Diligence Requests</u>: The Bidder submitting the Bid must have complied with reasonable requests for additional information and due diligence access from the Debtors to the satisfaction of the Debtors.

19.    <u>Back-Up Bid</u>: Each Bid shall provide that the Bidder will serve as backup bidder if the Bidder's Bid is selected as the next highest and best bid after the Successful Bid and will remain irrevocable in accordance with the terms and conditions of these Bidding Procedures.

20.    <u>Consent to Jurisdiction</u>: Each Bidder and its Bidder Support (if applicable) must (i) consent to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Sale Transaction, any Modified APA, or the construction and enforcement of documents relating to any Sale Transaction, (ii) waive any right to a jury trial in connection with any disputes relating to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Sale Transaction, any Modified APA, or the construction and enforcement of documents relating to any Sale

Transaction, and (iii) consent to the entry of a final order or judgment in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Modified APA, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

21.    <u>Disclaimer of Break-Up Fees and Expense Reimbursement</u>: Except as otherwise provided below with respect to a potential Stalking Horse Bidder (as defined below), each Bid must not, and must acknowledge that such Bid shall not, entitle the Bidder to any break-up fee, termination fee or similar type of payment, compensation or expense reimbursement (including legal fees) and, by submitting the Bid, the Bidder waives the right to pursue any administrative expense claim (including under a theory of substantial contribution) under 11 U.S.C. § 503 related in any way to the submission of its Bid or participation in any Auction.

22.    <u>Acknowledgement of Remedies</u>:    Each Bid shall include a written acknowledgement from the Bidder that, in the event of the Bidders' breach of, or failure to perform under, the Modified APA, the Debtors and their estates shall be entitled to retain the Good Faith Deposit as part of the damages resulting to the Debtors and their estates for such breach or failure to perform, and pursue all other available legal and equitable remedies.

23.    <u>Acknowledgement of No Collusion</u>:    Each Bid shall include a written acknowledgement from the Bidder that it has not (i) engaged in any collusion with respect to the bidding or sale of any of the Assets described herein or (ii) taken any other action to prevent a transparent and competitive auction process.

A Bid received from a Bidder before the Bid Deadline that meets the above requirements shall constitute a "<u>Qualified Bid</u>," as determined by the Debtors, in their reasonable business judgment, and such Bidder shall constitute a "<u>Qualified Bidder</u>;" *provided* that, if the Debtors receive a Bid that is not a Qualified Bid, the Debtors (in consultation with the Consultation Parties) may provide (but shall not be obligated to provide) the Bidder with the opportunity to remedy any deficiencies prior to the Auction; *provided*, *further*, that if any Qualified Bidder fails to comply with reasonable requests for additional information and due diligence access from the Debtors to the satisfaction of the Debtors, then the Debtors may disqualify any such Qualified Bidder and Qualified Bid, in the Debtors' sole discretion, and such Bidder shall not be entitled to attend or participate in the Auction.  The Debtors may (in consultation with the Consultation Parties) accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the Assets such that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bid; *provided* that the Debtors also reserve the right, in consultation with the Consultation Parties, to conduct more than one sale process or Auction with respect to non-overlapping material portions of the Assets).  The Debtors shall consult with the Consultation Parties regarding whether (i) a Bid is or is not a Qualified Bid or (ii) any Qualified Bid or Qualified Bidder should be disqualified.  The Debtors, in consultation with the Consultation Parties, shall have the right to deem a Bid a Qualified Bid even if such Bid

does not conform to one or more of the requirements above; *provided* that any Bid for all or substantially all of the Debtors' Assets that does not include cash consideration of at least $275,000,000 may only be deemed a Qualified Bid with the prior written consent of the Required Lenders under (and as defined in) each of the Prepetition Bridge Credit Agreement,[6] the Prepetition PropCo Credit Agreement[7] and the Prepetition OpCo Credit Agreement[8] secured by the Assets contemplated to be purchased.  Any Bidder that does not submit a Bid before the Bid Deadline will not be permitted to submit a Bid after the Bid Deadline or to participate in the Auction.

## Credit Bidding

The Prepetition Bridge Agent, the Prepetition OpCo Agent and the Prepetition PropCo Agent (together, the "Prepetition Agents") together have liens on all Assets being sold in the Auction, and reserve the right (at the direction of the Required Lenders under, and as defined in, each Prepetition Credit Agreement) to credit bid for any or all of the Assets securing their respective facilities.  The Prepetition Agents shall be permitted, pursuant to section 363(k) of the Bankruptcy Code, to credit bid all or any portion of the Obligations, under (and as defined in) each of the Prepetition Credit Agreements, as applicable, to acquire the Assets (each dollar of such obligations that is credit bid shall be treated the same as a dollar of cash).  Any such credit bid will be deemed a Qualified Bid regardless of whether it meets the specified requirements herein, and the Prepetition Agents shall not be required to provide any additional diligence information to participate in a credit bid.

## Potential Stalking Horse

The Debtors may, pursuant to these Bidding Procedures, with the prior written consent of the Prepetition Agents (at the direction of the Required Lenders under (and as defined in) each of

---

[6]  Wawona Packing Co. LLC ("OpCo"), Wawona Farm Co. LLC ("PropCo"), and MVK Intermediate Holdings LLC ("GroupCo"), as borrowers, Coöperatieve Rabobank U.A., New York Branch ("Rabobank"), as administrative agent and as collateral agent with respect to certain PropCo collateral (in such capacities, the "Prepetition Bridge Agent"), Royal Bank of Canada ("RBC"), as collateral agent with respect to certain OpCo collateral, the lenders party thereto, Rabobank and RBC, as joint lead arrangers and joint bookrunners, and the lenders party thereto (the "Prepetition Bridge Lenders") are parties to that certain Senior Secured Credit Agreement, dated April 3, 2023 (as amended, restated, supplemented or modified, the "Prepetition Bridge Credit Agreement").

[7]  PropCo, as borrower, Rabobank, as administrative agent and collateral agent (in such capacities, the "Prepetition PropCo Agent") and the lenders party thereto (the "Prepetition PropCo Lenders") are parties to that certain Amended and Restated Credit Agreement, dated as of September 13, 2019 (as further amended, restated, supplemented or modified, including pursuant to that certain First Amendment to Amended and Restated Credit Agreement, dated April 3, 2023, the "Prepetition PropCo Credit Agreement").

[8]  OpCo and GroupCo, as borrowers, RBC, as administrative agent and collateral agent (in such capacities, the "Prepetition OpCo Agent" and, collectively with the Prepetition Bridge Agent and the Prepetition PropCo Agent, the "Prepetition Agents") and the lenders party thereto (the "Prepetition OpCo Lenders" and, collectively with the Prepetition Bridge Lenders and the Prepetition PropCo Lenders, the "Prepetition Lenders") are parties to that certain Incremental Revolving Credit Agreement, dated as of September 13, 2019 (as amended, restated, supplemented or modified, including pursuant to that certain First Amendment to Credit Agreement dated April 3, 2023, the "Prepetition OpCo Credit Agreement" and, collectively with the Prepetition Bridge Credit Agreement and the Prepetition PropCo Credit Agreement, the "Prepetition Credit Agreements").

the Prepetition Credit Agreements), (i) designate one or more Qualified Bidders that submit a Qualified Bid for all or any portion of the Assets a stalking horse bidder (the "Stalking Horse Bidder"), whose Qualified Bid shall serve as the stalking horse bid ("Stalking Horse Bid"), and (ii) execute, subject to higher or otherwise better offers consistent with these Bidding Procedures, one or more purchase agreements memorializing the proposed transaction set forth in the Stalking Horse Bid (a "Stalking Horse APA"), which may include a break-up fee of or no more than 3.0% of the total cash consideration payable under such Stalking Horse APA, inclusive of any expense reimbursement (the "Bid Protections") **on or before November 14, 2023 at 5:00 p.m.** (prevailing Eastern Time) (the "Stalking Horse Bidder Designation"). To the extent the Debtors designate more than one Stalking Horse Bidder pursuant to the Bidding Procedures, no two Stalking Horse Bidders will be designated with respect to any of the same Assets. The Debtors shall not pay Bid Protections to any Stalking Horse Bidder on account of the portion of the purchase price of such Bid that is a credit bid, assumption of liabilities, or other non-cash (or cash-equivalent) consideration, nor provide any Bid Protections to an insider or affiliate of the Debtors.

To the extent the Debtors, consistent with these Bidding Procedures, determine to offer Bid Protections to any Stalking Horse Bidder, the Debtors shall disclose such Bid Protections in a corresponding notice designation such Stalking Horse Bidder (the "Stalking Horse Notice"). A Stalking Horse Notice, if filed, shall also include (a) a copy of the Stalking Horse APA; (b) an appropriate declaration in support of the proposed Bid Protections; and (c) a proposed form of an order approving the Bid Protections (the "Stalking Horse Order"). Any objection to (i) the Bid Protections set forth in the Stalking Horse Notice, or (ii) the form of Stalking Horse Order (a "Stalking Horse Objection"), shall be filed **no later than one day after the filing of the Stalking Horse Notice at 5:00 p.m. (prevailing Eastern Time)**; *provided, however,* any such Stalking Horse Objection shall be limited to whether the Stalking Horse Notice and Stalking Horse Order are consistent with the Bid Protections provided for herein. If a timely Stalking Horse Objection is filed, the Debtors are authorized to seek an expedited hearing with respect to the Stalking Horse Objection on **not less than three (3) calendar days' notice**. Absent any timeline Stalking Horse Objection, the Court may enter the Stalking Horse Order without further hearing.

If a Stalking Horse Order is entered, the Modified APA to be submitted by Qualified Bidders, if for the same Assets, shall be based on the Stalking Horse APA rather than the Form APA.

## Auction

If one or more Qualified Bids are received by the Bid Deadline, the Debtors will conduct the Auction to determine the highest and best Qualified Bid. The determination of the highest and best Qualified Bid shall take into account any factors the Debtors in their reasonable business judgment, in consultation with the Consultation Parties, deem relevant to the value and certainty of the Qualified Bid to the Debtors' estates and may include, but are not limited to, the following: (i) the amount and nature of the consideration; (ii) the number, type, and nature of any changes to the Form APA requested by each Bidder, including the Assets acquired; (iii) the extent to which such modifications are likely to delay closing of the Sale Transaction

contemplated by such Qualified Bid and the cost to the Debtors of such modifications or delay; (iv) the total consideration to be received by the Debtors; (v) any contingencies or conditions to closing the Sale Transaction contemplated by such Qualified Bid; (vi) the likelihood of the Bidder's ability to close the Sale Transaction contemplated by such Qualified Bid and the timing thereof; (vii) the tax consequences of such Qualified Bid; and (viii) any other qualitative or quantitative factor that the Debtors deem reasonably appropriate under the circumstances, in consultation with the Consultation Parties (collectively, the "Bid Assessment Criteria").

If one Qualified Bid or no Qualified Bid (or Bid that may be remedied into a Qualified Bid pursuant to these Bidding Procedures and is actually remedied into a Qualified Bid prior to the Auction) is received by the Bid Deadline, the Debtors shall cancel the Auction.

## A.      Location and Date of Auction

The Auction, if any, shall take place **on or before November 28, 2023 at 9:00 a.m. (prevailing Central Time) 10:00 a.m. (prevailing Eastern Time)** in person at the office of Kirkland & Ellis LLP, 300 N LaSalle Dr., Chicago, IL 60654 or via remote video at the Debtors' election.  If held, the Auction proceedings will be transcribed.

## B.      Attendees and Participants

Except as otherwise determined by the Debtors, only the following parties, and their respective representatives and counsel, shall attend the Auction: (i) the Debtors, (ii) the United States Trustee, (iii) any Qualified Bidder, and (iv) each Consultation Party.  The Debtors shall provide the Consultation Parties and all Qualified Bidders with notice of all participants attending the Auction at least one (1) day prior to the Auction.  Only Qualified Bidders and the Prepetition Agents will be entitled to make any Bids at the Auction.

Bidders and their representatives may not communicate or coordinate with one another for purposes of submitting a Bid or Bids or participating in the Auction without the prior consent of the Debtors.  All parties are prohibited from (i) engaging in any collusion with respect to the bidding or sale of any of the Assets described herein or (ii) taking any other action to prevent a transparent and competitive auction process.

Each Qualified Bidder participating in the Auction must confirm on the record at the commencement of the Auction that (i) it has not engaged in any of the prohibited actions set forth in the immediately preceding paragraph, (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the Sale Transaction contemplated by such Qualified Bid if selected as the Successful Bidder, (iii) it has reviewed, understands and accepts the Bidding Procedures, and (iv) it has consented to the core jurisdiction of the Bankruptcy Court with respect to the Sale Transaction, including the Bidding Procedures, the Auction, any Sale Transaction, any Modified APA, or the construction and enforcement of documents relating to any Sale Transaction (as described more fully below).

All parties attending the Auction must comply with their applicable confidentiality agreements; *provided* that the advisors to the SteerCo may speak with members of the SteerCo

that are not in attendance at the Auction so long as such individuals are advised of this restriction.

## C.    Conducting the Auction

The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed and shall be conducted openly.  Other than as expressly set forth herein, the Debtors (in consultation with the Consultation Parties) may conduct the Auction in the manner they determine will result in the highest and best offer for the Assets so long as such conduct is not inconsistent in any material respect with the other terms and provisions of these Bidding Procedures.

## D.    Auction Baseline Bid

The Debtors will notify any other Qualified Bidder participating in the Auction, and the Consultation Parties of the highest and best Qualified Bid received before the Bid Deadline for purposes of constituting the opening Bid at the Auction (the "Auction Baseline Bid"), and shall provide copies of the Modified APA and Modified Sale Order (each a "Modified Sale Order") associated with the Auction Baseline Bid as soon as practicable (together with the redline copies of such documents, as described in paragraph C.1 above) prior to the commencement of the Auction.

## E.    Terms of Overbids

An "Overbid" is any bid made at the Auction subsequent to the Debtors' announcement of the Auction Baseline Bid.  To submit an Overbid for purposes of this Auction, a Bidder must comply with the following conditions:

1.    Minimum Overbid Increments: Any Overbid for all or substantially all of the Debtors' Assets after and above the Auction Baseline Bid (and, if a Stalking Horse Bid has been designated, any Bid Protections granted to such Stalking Horse Bidder) shall be made in increments valued at not less than $1,500,000.  The Debtors shall determine (in consultation with the Consultation Parties) the minimum bid increments for any particular assets, if applicable.  Any credit bid of a Prepetition Agent shall be treated as the same as cash (such that each dollar of such obligations that is credit bid shall be treated the same as a dollar of cash).

2.    Remaining Terms Are the Same as for Qualified Bids: Except as modified herein, an Overbid at the Auction must comply with the conditions for a Qualified Bid set forth above; provided, however, that the Prepetition Agents shall not be required to comply with such conditions.  Any Overbid must include, in addition to the amount and the form of consideration of the Overbid, a description of all changes requested by the Bidder to the Modified APA or Modified Sale Order in connection therewith.  Any Overbid must remain open and binding on the Bidder until (a) the Debtors announce that they have received a higher and better Overbid and (b) such Overbid is not selected as the Back-Up Bid.  To the extent not previously provided, a Bidder submitting an Overbid at the Auction must submit, as part of its Overbid, written evidence (in the form of financial

disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors) reasonably demonstrating such Bidder's ability to satisfy the Bidder's Obligations as set forth in the Qualified Bid requirements set forth in paragraph C.10.b. Further, Bidders submitting Overbids may be required to promptly top up their Good Faith Deposits to equal ten percent (10%) of the cash purchase price contained in such Overbids.

**F.    Announcement and Consideration of Overbids**

1.    <u>Announcement of Overbids</u>: All Overbids shall be made and received on an open basis.  The Debtors shall announce at the Auction the material terms of each Overbid, the total amount of consideration offered in each such Overbid, and the basis for calculating such total consideration.  The Debtors shall, after submission of each Overbid, promptly inform each participant in the Auction which Overbid reflects the highest and best Bid, and the Debtors shall clarify any and all questions that any Qualified Bidder may have regarding such Overbid.

2.    <u>Consideration of Overbids</u>: Subject to the deadlines set forth herein, the Debtors reserve the right, in their own reasonable business judgment and in consultation with the Consultation Parties, to make one or more continuances of the Auction to, among other things: facilitate discussions between the Debtors and individual Qualified Bidders; allow individual Qualified Bidders to consider how they wish to proceed; or give Qualified Bidders the opportunity to provide the Debtors with additional evidence that the Qualified Bidder has sufficient internal resources, or has received sufficient non-contingent debt and/or equity funding commitments, to consummate the proposed Sale Transaction at the prevailing Overbid amount.

**G.    No Round-Skipping**

To remain eligible to participate in the Auction, in each round of bidding, (i) each Qualified Bidder must submit an Overbid with respect to such round of bidding and (ii) to the extent a Qualified Bidder fails to submit an Overbid with respect to such round of bidding, such Qualified Bidder shall be disqualified from continuing to participate in the Auction.

**H.    Closing the Auction**

The Auction shall continue until there is only one (1) Qualified Bid for the Assets (or one or more Qualified Bids for discrete portions of the Assets) that the Debtors determine, in their reasonable business judgment and in consultation with the Consultation Parties, is (or are) the highest and best Qualified Bid (or Qualified Bids) at the Auction.  Thereafter, the Debtors shall select such Qualified Bid(s), in consultation with the Consultation Parties, that is the best Qualified Bid (each such Qualified Bid, a "<u>Successful Bid</u>," and the Qualified Bidder submitting any such Successful Bid, the "<u>Successful Bidder</u>"), taking into account any factors the Debtors reasonably deem (in consultation with the Consultation Parties) relevant to the value and certainty of the Qualified Bid(s) to the Debtors' estates and may include, but are not limited to, the Bid Assessment Criteria, as the winner of the Auction and, at the time of such selection, shall announce the identity of each Successful Bidder and the amount and material terms of each

Successful Bid to all attendees at the Auction. Notwithstanding anything to the contrary herein, no Qualified Bid (other than a credit bid by one or more Prepetition Agents) may be the Successful Bid unless such Qualified Bid (which can be a combination of Bids as described above) provides for payment of cash consideration at the closing of the Sale Transaction contemplated by such Qualified Bid in an amount equal to or greater than the aggregate amount of Obligations as defined in the applicable Prepetition Credit Agreement that have been credit bid by, or on behalf of, the Prepetition Bridge Agent, Prepetition OpCo Agent, or the Prepetition PropCo Agent, as applicable.

The Auction shall not conclude until the Successful Bidder(s) submit(s) fully executed sale and transaction documents memorializing the terms of the Successful Bid(s).

Promptly following the Debtors' selection of the Successful Bid(s) and the conclusion of the Auction, the Debtors shall file with the Bankruptcy Court notice of the Successful Bid(s) and Successful Bidder(s), along with the Modified APA and Modified Sale Order reflecting the Successful Bid(s). The Debtors shall not consider any Bids or Overbids submitted after the Auction has closed, and any and all Bids or Overbids submitted after the conclusion of the Auction shall be deemed untimely and shall under no circumstances constitute a Bid or Overbid.

## I.    Back-Up Bidder

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder(s) with the next highest and otherwise best Bid to the Successful Bid(s) at the Auction for the applicable Assets, as determined by the Debtors, in the exercise of their reasonable business judgment and after consulting with the Consultation Parties, will be designated as a backup bidder (each a "Back-Up Bidder"). The identity of the Back-Up Bidder(s) and the amount and material terms of the Back-Up Bid(s) shall be announced by the Debtors at the same time the Debtors announce the identity of the Successful Bidder(s).

The Back-Up Bidder(s) shall be required to keep its (or their) initial Qualified Bid(s) (or if a Back-Up Bidder submitted one or more Overbids at the Auction, such Back-Up Bidder's final Overbid) (each a "Back-Up Bid") open and irrevocable until the earlier of (i) the closing of the Sale Transaction contemplated by the applicable Successful Bid and (ii) 5:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the date of entry of the Sale Order, which date will be extended for an additional thirty (30) days if the only condition to closing the applicable Successful Bid on the sixtieth (60th) day after entry of the Sale Order is satisfaction of regulatory approvals required under the applicable Modified APA.

If a Successful Bid is terminated for any reason prior to consummation of the Sale Transaction contemplated thereby (a "Successful Bid Failure"), the Debtors will be authorized, without further order of the Bankruptcy Court, to consummate the Sale Transaction contemplated by the applicable Back-Up Bid with the applicable Back-Up Bidder; *provided* that the Debtors shall provide prompt notice of such Successful Bid Failure to the Consultation Parties and the Debtors shall post a notice on the docket of the Chapter 11 Cases regarding the Successful Bid Failure and the consummation of such Sale Transaction with the applicable Back-Up Bidder. In the case of a Successful Bid Failure, the Successful Bidder's deposit shall be forfeited to the Debtors or returned to the applicable Successful Bidder in accordance with the

terms of the terminated Modified APA.  The Debtors, on their behalf and on behalf of each of their respective estates, specifically reserve the right to seek all available damages, including specific performance, from any defaulting Successful Bidder (including any Back-Up Bidder following a Successful Bid Failure) in accordance with the terms of the Bidding Procedures, the Bidding Procedures Order, or the Modified APA, as applicable.

**J.**     **Notice of Bid Results**

Absent further order or direction of the Court, the Debtors shall file copies of the following: (a) a notice designating each Successful Bid and the Back-Up Bid, if any, and the terms of each such bid (the "Notice of Bid Results") and (b) final form(s) of order(s) approving the Sale Transaction(s) as agreed upon between the Debtors (in consultation with the Consultation Parties) and the Successful Bidder(s) (the "Sale Order(s)").

**K.**     **Sale Hearing and Approval of the Sale Transaction**

A hearing to consider the approval of the Sale Transaction (the "Sale Hearing"), is currently scheduled to take place on December 6, 2023 at [10:00] [a.m.] (prevailing Eastern Time), before Honorable [●], at the United States Bankruptcy Court for the District of Delaware, 824 N Market Street, Wilmington, Delaware 19801, or conducted consistent with the procedures established pursuant to the Bankruptcy Court.

At the Sale Hearing, certain findings will be sought from the Bankruptcy Court, including, among other things, that: (1) the Auction was conducted (if held) and each Successful Bidder was selected, in each case in accordance with the Bidding Procedures; (2) the Auction (if held) was fair in substance and procedure; (3) the Successful Bid(s) and Back-Up Bid(s) were Qualified Bids as defined in the Bidding Procedures; and (4) consummation of any Sale Transaction as contemplated by the Successful Bid(s) in the Auction will provide the highest and best offer for the Assets and is in the best interests of the Debtors and their estates.  **The Sale Hearing may be continued to a later date by the Debtors, in consultation with the Consultation Parties, by sending notice prior to, or making an announcement at, the Sale Hearing (subject in all cases to approval of the Bankruptcy Court).**

Objections to the Sale Transaction and entry of any Sale Order must (i) be in writing; (ii) comply with the Bankruptcy Code, Bankruptcy Rules, Local Rules, and all orders of the Bankruptcy Court; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) be filed with the Bankruptcy Court and served **so as to be actually received by the Debtors and counsel to the Debtors at least one (1) day prior to the Sale Hearing 5:00 p.m. (prevailing Eastern Time)**.

**L.**     **Additional Procedures**

The Debtors, after consulting with the Consultation Parties, may announce at the Auction additional procedural rules that are reasonable under the circumstances for conducting the Auction so long as such rules are not inconsistent in any material respect with the Bidding Procedures and do not impose additional requirements on the Prepetition Agents; *provided* that any Qualified Bidder shall have the right to request a telephonic hearing before the Bankruptcy

Court in the event the Qualified Bidder disputes that the proposed additional rule is reasonable or not inconsistent in any material respect with the Bidding Procedures or does not impose additional requirements on the Prepetition Agents.

### Consent to Jurisdiction and Authority as Condition to Bidding

All Qualified Bidders shall be deemed to have (1) consented to the jurisdiction of the Bankruptcy Court to enter an order or orders, which shall be binding in all respects, in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, any Modified APA, the Auction, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction, (2) **WAIVED ANY RIGHT TO A JURY TRIAL IN CONNECTION WITH ANY DISPUTES RELATING TO THE DEBTORS, THESE CHAPTER 11 CASES, THE BIDDING PROCEDURES, THE AUCTION, ANY MODIFIED APA, ANY SALE TRANSACTION, OR THE CONSTRUCTION AND ENFORCEMENT OF DOCUMENTS RELATING TO ANY SALE TRANSACTION**, and (3) consented to entry of a final order or judgment in any way related to the Debtors, these Chapter 11 Cases, the Bidding Procedures, the Auction, any Modified APA, any Sale Transaction, or the construction and enforcement of documents relating to any Sale Transaction if it is determined that the Bankruptcy Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

### Sale Is As Is/Where Is

Except as may be set forth in the Modified APA, the Assets sold pursuant to the Bidding Procedures shall be conveyed at the closing of such sale in their then-present condition, "**AS IS, WITH ALL FAULTS, AND WITHOUT ANY WARRANTY WHATSOEVER, EXPRESS OR IMPLIED**."

### Return of Good Faith Deposits

The Good Faith Deposits of all Qualified Bidders shall be held in one or more escrow accounts by the Debtors, but shall not become property of the Debtors' estates absent further order of the Bankruptcy Court or as set forth below. The Good Faith Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Back-Up Bidder shall be returned to such Qualified Bidder not later than five (5) Business Days after consummation of the Sale Transaction or upon the permanent withdrawal of the proposed Sale Transaction. The Good Faith Deposit of a Back-Up Bidder, if any, shall be returned to such Back-Up Bidder (or retained by the estates) upon the termination of such Back-Up Bidder's Bid in accordance with its terms. If a Successful Bidder timely closes the Sale Transaction contemplated in the Successful Bid, its Good Faith Deposit shall be credited towards the purchase price and become property of the estate. If a Successful Bidder (or, if the Sale Transaction is to be consummated with the applicable Back-Up Bidder, then such Back-Up Bidder) fails to consummate the Sale Transaction because of a breach or failure to perform on the part of such Bidder, then the Debtors and their estates shall be entitled to retain the Good Faith Deposit of such Successful Bidder (or, if the Sale Transaction is to be consummated with a Back-Up Bidder, then such Back-Up Bidder) as part of the damages resulting to the Debtors and their estates for such breach or failure to perform. For the avoidance of doubt, the Debtors' retention of a Good Faith Deposit

shall not constitute a waiver of any of the Debtors' legal or equitable rights relating to a Successful Bidder's or a Back-Up Bidder's breach or failure to perform, and all such rights and remedies are preserved.

## <u>Reservation of Rights of the Debtors and Modifications</u>

Except as otherwise provided in the Bidding Procedures Order, the Debtors further reserve the right as the Debtors may reasonably determine in their discretion, after consultation with the Consultation Parties, to be in the best interest of the Debtors' estates to: (i) determine which Bidders are Qualified Bidders; (ii) determine which Bids are Qualified Bids; (iii) determine which Qualified Bid (or Qualified Bids) is the highest and best bid and which is the next highest and best bid; (iv) reject any Bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code or (c) contrary to the best interests of the Debtors and their estates; (v) impose additional terms and conditions with respect to all potential bidders; (vii) make non-material modifications to the Bidding Procedures; and (viii) implement additional procedural rules with respect to the conduct of the Auction that the Debtors determine (together with the Bidding Procedures, the "<u>Auction Rules</u>"), in their reasonable business judgment, will better promote the goals of the bidding process and are not inconsistent with any Bankruptcy Court order, the Bankruptcy Code or any rights of the Prepetition Agents under these Bidding Procedures; *provided* that nothing herein shall limit any party in interest's right to file an objection with the Bankruptcy Court with respect to any Auction Rules (other than the Bidding Procedures).

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require the Debtors to take any action or to refrain from taking any action related to any Sale Transaction to the extent taking or failing to take such action would be inconsistent with applicable law or the Debtors' fiduciary obligations, if any, under applicable law; *provided*, *however*, that the Debtors shall promptly provide the Consultation Parties and any Qualified Bidders with notice of such action or inaction and, to the extent any such action or inaction would constitute a material change from the Bidding Procedures, the Debtors shall first seek approval from the Bankruptcy Court for such action or inaction.