IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>MVK FARMCO LLC, *et al.*, [1]<br><br><br><br>Debtors. | Chapter 11<br><br>Case No. 23-11721 (LSS)<br><br>(Jointly Administered)<br><br>Re: D.I. 432<br><br>**Hearing Date**: February 28, 2024, at 10:00 a.m. ET<br><br>**Objection Deadline**: January 31, 2024, at 4:00 p.m. ET (for U.S. Trustee) |

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION OF JOINT CHAPTER 11 PLAN OF LIQUIDATION OF MVK FARMCO LLC AND ITS DEBTOR AFFILIATES**

Andrew R. Vara, the United States Trustee for Region 3 ("U.S. Trustee"), through his counsel, files this objection (the "Objection") to confirmation of *Joint Chapter 11 Plan Of Liquidation Of MVK Farmco LLC And Its Debtor Affiliates* ("Plan") [D.I. 432], and in support of his Objection, states:

**PRELIMINARY STATEMENT**

1.      The U.S. Trustee objects to confirmation of the Plan because it imposes a broad Third-Party Release on creditors deemed to reject the Plan, it purports to be a general settlement

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201). The location of the Debtors' service address is: 7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

1

of claims, it exculpates non-fiduciaries, and it calls for a discharge where the Debtors are not entitled to one. For the reasons that follow, the U.S. Trustee requests that this Court deny confirmation of the Plan.

### JURISDICTION, VENUE, STANDING

2. This Court has jurisdiction over the above-captioned cases pursuant to 28 U.S.C. § 1334. This Court is authorized to hear and determine the confirmation of the Plan and the Objection pursuant to 28 U.S.C. § 157(a, b), and the amended standing order of reference issued by the United States District Court for the District of Delaware dated February 29, 2012. Venue of the cases is proper in this District pursuant to 28 U.S.C. § 1408(1).

3. Pursuant to 28 U.S.C. § 586, the U. S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U. S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.)*, 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that UST has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest); *Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U. S. Trustee as a "watchdog").

4. Pursuant to 28 U.S.C. § 586(a)(3)(B), the U.S. Trustee has the duty to monitor plans and disclosure statements filed in chapter 11 cases, and to comment on such plans and disclosure statements.

5. Pursuant to 11 U.S.C. § 307, the U. S. Trustee has standing to be heard with regard to confirmation of the Plan and this Objection.

## FACTS

6. The above-captioned Debtors filed voluntary petitions for relief under chapter 11 in this Court on October 13, 2023 (the "Petition Date").

7. On October 23, 2023, the U.S. Trustee appointed an official committee of unsecured creditors (the "Committee"). D.I. 123.

### *Release-Related Plan Provisions*

8. The Debtors filed the Plan on December 28, 2023, and this Court entered an order approving certain solicitation procedures in connection with the Plan on the same date. Under the framework of the Plan, the exit strategy for the "PropCo" side of the Debtors' business will be an Equitization Transaction, and the "OpCo" side will liquidate and winddown. Plan Art. IV. Although the Debtors estimate that the final amount of allowed general unsecured claims can be up to $40 million, Discl. Stmt. Art. III, the Plan provides that class 7 (consisting of general unsecured claims) is fully impaired, not entitled to vote, and receiving nothing under the Plan. *Id.* The Debtors recently filed a 9019 Motion at D.I. 542 which requests approval of a settlement with the Committee, the Debtors, and various non-Debtors which will obligate the Sponsor (as defined in the 9019 Motion) "to contribute cash in the amount of $2,200,000" payable to the GUC Trust. 9019 Mot. ¶ 41. As of this filing, a revised Plan has not been filed reflecting the settlement embodied in the 9019 Motion. Accordingly, without any indication of a possible distribution to their class, general unsecured creditors were asked to return an "opt-out" form by January 26, 2024, to avoid the imposition of the Plan's third-party release provision, which reads:

> E. Releases by Holders of Claims and Interests.
>
> Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, ***each Released Party*** is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, ***released and discharged by each Releasing Party from any and all Causes of***

> ***Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in Law, equity, contract, tort, or otherwise, including any derivative Claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof)***, any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, or the Plan Supplement, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.

Plan Art. VIII E (emphasis added).

9. Under the Plan, the Released Parties are defined as

collectively, and in each case, solely in their respective capacities as such: (a) the Debtors, Post-Effective Date PropCo, and the Wind-Down Debtors, as applicable; (b) the Plan Administrator; (c) the Committee, and each of its members; (d) each Bridge Agent; (e) each Bridge Lender; (f) the OpCo Agent; (g) each OpCo Lender; (h) the PropCo Agent; (i) each PropCo Lender; (j) each DIP Agent; (k) each DIP Lender; (l) each Exit Facility Agent; (m) each Exit Facility Lender; (n) each current and former Affiliate of each Entity in clause (a) through the following clause (m);

4

and (n) each Related Party of each Entity in clause (a) through this clause (k), each in their capacity as such (unless any such Entity or Related Party has opted out of the releases contained in Article VIII of the Plan, in which case such Entity or Related Party, as applicable, shall not be a Released Party).

Plan Art. I A 153.

10. A Related Party is defined as

each of, and in each case solely in its capacity as such, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

*Id*. Art. I A 152.

11. The 9019 Motion provides that the Plan shall be amended so that, on the Effective Date of the Plan, the Sponsor, the Required Lender Group, and McKinsey are deemed to be Released Parties. 9019 Mot. Ex. 2.

12. The Plan defines a Releasing Party as

collectively, and in each case, solely in their respective capacities as such: (a) the Debtors, Post-Effective Date PropCo, and the Wind-Down Debtors, as applicable; (b) the Plan Administrator; (c) all Holders of Claims or Interests who vote to accept the Plan; (d) all Holders of Claims or Interests that are deemed to accept the Plan and do not affirmatively opt out of the releases contained in Article VIII by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; ***(e) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases contained in Article VIII of the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan; (f) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases contained in Article VIII of the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan;*** (g) each current and former

5

Affiliate of each Entity in clause (a) through the following clause (h); and (h) each Related Party of each Entity in clause (a) through this clause (h), each in their capacity as such; provided, however, that a Related Party of an entity in clauses (a) through (h) is a Releasing Party solely to the extent such Related Party would be obligated to grant a release under principles of agency if it were so directed by the Person or Entity in the foregoing clauses (a) through (h) to whom they are related.

Plan Art. I A 154 (emphasis added).

### *Plan Provisions on Exculpation, General Settlement of Claims and Discharge*

13. The Plan purports to be a general settlement of claims and interests through a provision in Article IV. A which states that "pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan."

14. The Plan also purports to discharge all claims and terminate all interests through the following provision:

> To the maximum extent provided by section 1141(d) of the Bankruptcy Code and except as otherwise specifically provided in the Plan, *or in any contract, instrument, or other agreement or document created or executed pursuant to the Plan*, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date), Interests, and Causes of Action of any nature whatsoever, *including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors performed prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date*, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the

6

Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan. ***Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) on the Effective Date. The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the occurrence of the Effective Date.***

Plan Art. VIII A (emphasis added).

15. Lastly, the Plan purports to insulate the following parties from liability from certain acts and omissions:

> "Exculpated Party" means, collectively, and, in each case, solely in their respective capacities as such: (a) the Debtors; (b) the independent directors of any Debtor; (c) the Committee and each of its members; and (d) with respect to the Entities in clause (a) through this (c), each of their respective current and former directors, managers, officers, attorneys, financial advisors, consultants, or other professionals or advisors that served in such capacity between the Petition Date and Effective Date.

*Id.* Art. I A 63.

## ARGUMENT

### I. The Third-Party Release Should Not Apply to Deemed Rejecting Creditors.

16. General unsecured claimants who are deemed to reject the Plan should not have the Third-Party Release imposed on them because they are not receiving any distribution under this Plan. Even if general unsecured claimants receive a recovery on their claims from the proposed settlement in the 9019 Motion, the percentage recovery is insignificant, and it does not warrant imposing the broad Third-Party Release on them.

17. Some judges of this Court have determined that third party releases of non-debtors should be allowed only to the extent the releasing parties have given affirmative consent. *See In re Washington Mutual, Inc.*, 442 B.R. 314 (Bankr. D. Del. 2011). In *Washington Mutual*, the Court held that "any third party release is effective only with respect to those who affirmatively consent

to it by voting in favor of the Plan and not opting out of the third party releases." *Id*. at 355 (emphasis added). Moreover, the Court clarified that merely having an opt-out mechanism is not enough, holding that an "opt out mechanism is not sufficient to support the third party releases . . . particularly with respect to parties who do not return a ballot (or are not entitled to vote in the first place). Failing to return a ballot is not a sufficient manifestation of consent to a third party release." *Id*. (emphasis added, citing *In re Zenith Elecs. Corp*., 241 B.R. 92, 111 (Bankr. D. Del. 1999)).

18.     In *Emerge Energy Services LP*, Case No. 19-11563, 2019 WL 7634308 (Bankr. D. Del, Dec. 5, 2019), the Court ruled that consent to a third party release "cannot be inferred by the failure of a creditor or equity holder to return a ballot or Opt-Out Form." *Id*. at *52. The Court reached this conclusion even though the Opt-Out Forms provided conspicuous notice of how to opt out and the consequences of not doing so. The Court also rejected the debtor's argument that inferring consent from "silence" should be approved as typical, customary, and routine. *Id*. The Court held that it could not, "on the record before it, find that the failure of a creditor or equity holder to return a ballot or Opt-Out Form manifested their intent to provide a release. Carelessness, inattentiveness, or mistake are three reasonable alternative explanations." *Id*. at *53; *accord In re Coram Healthcare Corp*., 315 B.R. 321, 335 (Bankr. D. Del. 2004) (holding that the "Trustee (and the Court) do not have the power to grant a release of the Noteholders on behalf of third parties," and that such release must be based on consent of the releasing party); *In re Exide Technologies*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (approving releases which were binding only on those creditors and equity holders who accepted the terms of the plan); *In re Zenith Elecs. Corp*., 241 B.R. 92, 111 (Bankr. D. Del. 1999) (identifying release provision had to be modified to permit third-party releases of non-debtors only for those creditors who voted in favor of the plan); *see*

8

*also Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 688 (E.D. Va., 2022) (holding that "the Bankruptcy Court erred both factually and legally in finding the Third-Party Releases to be consensual. Failure to opt out, without more, cannot form the basis of consent to the release of a claim."); *In re SunEdison, Inc.*, 576 B.R. 453 (Bankr, S.D.N.Y. 2017) (stating under principles of New York contract law, a creditor could not be deemed to consent to third-party releases merely by failing to object to the plan, even when the disclosure statement made it clear that such a consequence would result); *In re Chassix Holdings*, 533 B.R. 64, 79-80 (Bankr. S.D.N.Y. 2015) (limiting third-party releases to those who voted to accept the plan, or affirmatively elected to provide releases).

19. Some decisions of this Court have not required affirmative consent for third party releases. However, such decisions are (i) distinguishable from the present cases and/or (ii) support the view that such releases cannot be imposed on parties who will not receive any distribution under a plan. In *In re Indianapolis Downs, LLC*, 486 B. R. 286 (Bankr. D. Del. 2013), this Court reached a different conclusion than that of Washington Mutual and Emerge concerning the need for affirmative consent to third party releases, and allowed for an opt-out process to be used. In so doing, however, the Court pointed out that, "the third party release provision ***does not apply to any party that is deemed to reject the Plan***." *Id*. at 305 (emphasis added).

20. In *In re Spansion, Inc.*, 426 B.R. 114 (Bankr. D. Del 2010), the Court held that affirmative consent was not required, but only as to releases being given by unimpaired classes, who were "being paid in full." *Id*. at 144. In contrast, the Court held that non-consensual releases that were being deemed to be given by parties who were not receiving any distribution under the plan did "not pass muster under Continental." *Id*. at 145 (emphasis added), referencing *Gillman v.*

9

*Continental Airlines (In re Continental Airlines)*, 203 F.3d 203 (3d Cir. 2000). The same is true here.

21. In *In re Mallinckrodt*, 639 B.R. 837 (Bankr. D. Del. 2022), this Court allowed third-party releases to be imposed on mass tort claimants without the opportunity to opt out, as well as on certain other classes of creditors and equity holders who were provided the ability to opt out, holding that the imposition of such releases was permissible under *Continental* because of the mass tort context of that matter. See 639 B.R. at 873, 881; *see also In re Boy Scouts of America*, 642 B.R. 504, at 674-75 (Bankr. D. Del. 2022) (approving an opt-out process for third-party releases in a mass tort case, but noting that the definition of parties giving such releases did not include any "claimant who abstains from voting"). Unlike *Mallinckrodt* and *Boy Scouts*, the above-captioned cases are not mass tort cases.

22. Here, silence and the failure to return an opt-out form, regardless of how conspicuous the opt-out notice may have been, is insufficient to support a finding that the Third-Party Release as applied to the deemed rejecting general unsecured creditors is consensual. The Debtors solicited the Third-Party Release from these parties without any consideration or distribution attendant to the extraction of this release, which benefits numerous non-debtors who appear to have contributed nothing under this Plan. Notwithstanding the participation of the Committee, general unsecured creditors have likely not been engaged in these cases once a sale with a meaningful recovery to unsecured creditors was impossible. Accordingly, silence or the failure to return an opt-out form is likely the result of lack of engagement in this process – and not evidence of consent by creditors to a release of non-Debtor parties with whom they have had no dealings. Similarly, the non-return of an opt-out form could be caused by a number of factors – e.g., the opt-out notice being wrongly addressed, misdelivered, or other mail failures.

23. Although the settlement embodied in the 9019 Motion presents the possibility that general unsecured creditors might receive a recovery in these cases, it does not follow that this possibility warrants the imposition of the Third-Party Release. The proposed $2.2 million recovery is, at best, close to a 5.5% recovery, assuming a total estimated allowed claims pool of $40 million. Further, it is unclear if the $2.2 million recovery will be reduced by expenses. Under the proposed settlement, the Third-Party Release must now explicitly include the Required Lender Group, McKinsey, and the Sponsor for the Sponsor to make the proposed contribution, thereby substantively changing the scope of the Third-Party Release *after* the deadline to opt out of the release. Absent further notice, general unsecured claimants would not have the information necessary to decide whether to opt out of the Third-Party Release.

24. Where, as here, a proposed third-party release is non-consensual, the release must, at a minimum, meet the exacting "hallmarks of permissible non-consensual releases[,]" which were described as "fairness, necessity to the reorganization, and special factual findings to support these conclusions." *Gillman v. Continental Airlines (In re Continental Airlines)*, 203 F.3d 203, 214 (3d Cir. 2000). In *Continental*, the Third Circuit surveyed cases from various circuits as to when, if ever, a non-consensual third party release is permissible. The court acknowledged that a number of circuits do not allow such non-consensual releases under any circumstances. *See id*. at 212. Other circuits, the court found, "have adopted a more flexible approach, albeit in the context of extraordinary cases." *Id*. at 212-13 (citing Second Circuit cases where releases were upheld for "widespread claims against co-liable parties" and a Fourth Circuit mass tort case). "A central focus of these three reorganizations was the global settlement of massive liabilities against the debtors and co-liable parties. Substantial debtor co-liable parties provided compensation to claimants in exchange for the release of their liabilities and made these reorganizations feasible." *Id*. at 213;

*see also In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 141 (2d Cir. 2005) (noting a third party release may be granted "only in rare cases").

25. The Third Circuit in *Continental* ultimately determined that the proposed releases in that case did "not pass muster under even the most flexible test for the validity of non-debtor releases." 203 F.3d at 214. Therefore, the Court determined that it "need not speculate on whether there are circumstances under which we might validate a non-consensual release that is both necessary and given in exchange for fair consideration." *Id*. at 214, n.11.

26. The Third Circuit Court of Appeals referenced Continental in *In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126 (3d Cir. 2019), *cert. denied sub nom. ISL Loan Tr. v. Millennium Lab Holdings*, 19-1152, 2020 WL 2621797 (May 26, 2020), as one of the precedents, along with *In re Global Industrial Technologies, Inc.*, 645 F.3d 201, 206 (3d Cir. 2011), regarding nonconsensual third-party releases. The Third Circuit indicated that these decisions "set forth ***exacting standards*** that must be satisfied if such releases and injunctions are to be permitted." 945 F.3d at 139 (emphasis added).[2]

27. In *In re Genesis Health Ventures, Inc.*, 266 B.R. 591 (Bankr. D. Del. 2001), the Court held that a clause in the plan which released claims of any creditors or equity holders against the senior lenders for any act or omission in connection with the bankruptcy cases and reorganization process required factual showings under *Continental* – that the releases were necessary for the reorganization and were given in exchange for fair consideration. *Id*. at 607. The Court elaborated that "necessity" under Continental requires a showing: (a) that the success of the debtors' reorganization bears a relationship to the release of the non-consensual non-debtor parties

---

[2] The Third Circuit in *Millennium Lab* ultimately did not address whether the non-consensual third-party releases in that case met the standards of Continental or Global, because the Court held the appeal to be equitably moot. 945 F. 3d at 144.

and (b) that the non-debtor parties being released from liability have provided "a critical financial contribution to the debtors' plan" in exchange for the receipt of the release. *Id*. at 607. A financial contribution is considered "critical" if without the contribution, the debtors' plan would be infeasible. *Id*. Fairness of a release is determined by examining "whether nonconsenting creditors [are being] given reasonable consideration in exchange for the release." *Id*. at 608 (citing *Continental*, 203 F.3d at 215). In most instances, this will entail examining the proposed dividend that non-consenting creditors or shareholders will receive under a plan with the releases compared to what they would receive under a plan without the releases. *See id*.; *see also In re Spansion, Inc*., 426 B.R. 114, 144 (Bankr. D. Del. 2010) (applying same factors).

28.     The *Genesis* Court found that the senior lenders had made a financial contribution to the plan, which allowed the debtors to make the 7.34% distribution to the unsecured creditors, who otherwise would be "out of the money." *Id*. at 608. Ultimately, though, the Court found that such contribution was not enough, because "even if the threshold Continental criteria of fairness and necessity for approval of non-consensual third-party releases were marginally satisfied by these facts . . . . [the] financial restructuring plan under consideration here would not present the ***extraordinary circumstances*** required to meet even the most flexible test for third-party releases." *Id*. (emphasis added).

29.     The Debtors' Plan does not comply with *Continental* or *Genesis*. There is nothing in the record to indicate "extraordinary circumstances," or that the high threshold necessary for approval of non-consensual third-party releases has been met with respect to each of the non-Debtor parties benefitting from the release. As a liquidating Plan, this Plan does not contemplate a reorganization. The Debtors also cannot meet the second *Continental* requirement that the releases be given "in exchange for fair consideration," because either the general unsecured

claimants are receiving no recovery under this Plan, and even if they receive all or part of the $2.2 million settlement amount, that recovery is but a small fraction of the outstanding claims pool.

30. Thus, both the "exchange for fair consideration" and "necessity to the reorganization" elements specified in Continental are absent here. Therefore, the Plan cannot be confirmed with the inclusion of the non-consensual third-party releases. *See Continental*, 203 F.3d at 214 and n. 11.

31. For these reasons, the Court should deny confirmation of the Plan.

## II.   The Plan Is Not a General Settlement Of Claims.

32. The Bankruptcy Code allows a plan proponent to "provide for [] the settlement or adjustment of any claim or interest belonging to the debtor or to the estate." 11 U.S.C. § 1123(b)(3)(A). Thus, section 1123(b)(3) only allows a debtor to settle claims it has against others; it does not allow a debtor to settle claims other parties may have against it. *See Varela v. Dynamic Brokers, Inc. (In re Dynamic Brokers, Inc.)*, 293 B.R. 409, 496 (B.A.P. 9th Cir. 2003) ("The only reference in [section 1123(b)] to adjustments of claims is the authorization for a plan to provide for 'the settlement or adjustment of any claim or interest belonging to the debtor or to the estate. It is significant that there is no parallel authorization regarding claims against the estate.") omitted). The resolution of claims against the Debtor is governed by sections 1129 and 1141.

33. In addition, while a plan may incorporate one or more negotiated settlements, a plan is not itself a settlement. A "settlement" is "an agreement ending a dispute or lawsuit." BLACK'S LAW DICTIONARY (10th ed. 2014). An "agreement" is "a mutual understanding between two or more persons about their relative rights and duties regarding past or future performances; a manifestation of mutual assent by two or more persons." *Id.*

34. Approval of settlements is governed by Federal Rule of Bankruptcy Procedure 9019, which provides that, "[o]n motion by the trustee [or chapter 11 debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." But, because a "settlement" requires an agreement between the settling parties, Rule 9019 governs only parties that have entered into an express settlement agreement; it is not a blanket provision allowing general "settlements" to be unilaterally imposed upon broad swaths of claimants that have no formal agreement with any party to "settle" their claims.

35. The decision of whether to approve a settlement under Rule 9019 is left to the sound discretion of the bankruptcy court, which "must determine whether 'the compromise is fair, reasonable, and in the best interest of the estate.'" *Wash. Mut., Inc.*, 442 B.R. at 338 (*quoting In re Louise's, Inc.,* 211 B.R. 798, 801 (D. Del. 1997)). In contrast, plans are subject to the many requirements of Bankruptcy Code sections 1123 and 1129.

36. Here, as stated above, the Plan purports to be a general settlement of claims and interests through a provision in Article IV. A. Because this provision is not limited to the settlement of claims belonging to the Debtors or the estates, it proposes a settlement that cannot be approved under section 1123(b)(3)(A). Simply put, the Debtors cannot sidestep the law applicable to confirmation of plans by describing the entire Plan as a settlement or avoid the standards for approval of third-party releases by arguing that the releases are part of some undocumented settlement.

37. For this reason, the Court should deny confirmation of the Plan.

### III. The Exculpation Provision Protects Non-Fiduciaires.

38. The Plan's definition of Exculpated Parties is inconsistent with controlling case law because it is not limited to estate fiduciaries. In *In re PWS Holding Corp.*, the Third Circuit considered whether an official committee of unsecured creditors could be exculpated and held that 11 U.S.C. § 1103(c) implies both a fiduciary duty and a limited grant of immunity to members of the unsecured creditors' committee. 228 F.3d 224, 246 (3d Cir. 2000). This Court has repeatedly interpreted PWS as requiring a party's exculpation to be based upon its status as an estate fiduciary. *See In re Indianapolis Downs, LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013); *Tribune*, 464 B.R. at 189; *Wash. Mut.*, 442 B.R. at 350-51 ("[An] exculpation clause must be limited to the fiduciaries who have served during the chapter 11 proceeding: estate professionals, the Committees and their members, and the Debtors' directors and officers.").; *In re PTL Holdings LLC*, No. 11-12676 (BLS), 2011 WL 5509031, at *12 (Bankr. D. Del. Nov. 10, 2011).

39. Here, the definition of Exculpated Parties, through its clause (d), appears to include more than just those parties enumerated in *Washington Mutual*, like non-estate-retained professionals and the directors and officers of the Committee members. These entities are not entitled to exculpation under the law of this district.

40. For this reason, the Court should deny confirmation of the Plan.

### IV. No Debtor Is Entitled to a Discharge Under 1141(d).

41. The Court should deny confirmation because the Plan does not comply with Section 1141(d)(3) and, by extension, does not satisfy Section 1129(a)(1).

42. Section 1129(a)(1) of the Bankruptcy Code provides that the Court shall confirm a plan only if the plan "complies with the applicable provisions of this title." 11 U.S.C. § 1129(a)(1).

43. Section 1141(d)(3) of the Bankruptcy Code provides:

16

> The confirmation of a plan does not discharge a debtor if—
>
> > (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
> > (B) the debtor does not engage in business after consummation of the plan; and
> > (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

U.S.C. § 1141.

44. Here, the Plan is titled a Plan of "Liquidation." The OpCo side of the business is winding down and not engaging in business. *See* Plan Art. IV C. 3 ("At least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtor for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtors after the Effective Date, (2) resolving any Disputed Claims, (3) making distributions on account of Allowed Claims in accordance with the Plan, (4) filing appropriate tax returns, and (5) administering the Plan."). On the PropCo side, although more convolutedly presented, it also appears that there will not be a reorganized entity engaged in business, but rather an entity holding equity. *See* Art. 128 (defining the Post Effective Date PropCo as "a post-equitization Debtor or newly formed entity that holds 100% of the equity of PropCo."). The Debtors, as corporations, would not be eligible for a discharge if they were chapter 7 debtors pursuant to Section 727(a)(1), which provides that the Court shall grant a debtor a discharge unless the debtor is not an individual. *See, e.g., In re Flintkote Co.*, 486 B.R. at 129 n.80 ("Section 1141(d)(3)(C) is always satisfied for corporate debtors, as they cannot receive discharges in chapter 7."). Nonetheless, the Plan purports to allow a general discharge of claims and an injunction to protect that discharge. *See* Plan Art. VIII A, H. The Debtors are not entitled to such a discharge nor the corresponding injunction.

45. For this reason, the Court should deny confirmation of the Plan.

## RESERVATION OF RIGHTS

46.     The U.S. Trustee leaves the Debtors to their burden of proof and reserves any and all rights, remedies and obligations to, *inter alia*, complement, supplement, augment, alter and/or modify this Objection, file an appropriate Motion and/or conduct any and all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery. The U.S. Trustee likewise reserves the right to raise additional objections to the Plan formally or orally at the confirmation hearing to the extent a revised Plan is filed and the Debtors do not extend the objection deadline for same.

| | |
|---|---|
| Dated: January 31, 2024.<br>Wilmington, Delaware | Respectfully submitted,<br><br>**ANDREW R. VARA**<br>**UNITED STATES TRUSTEE, REGION 3**<br><br>By: /s/ *Rosa Sierra-Fox*<br>    Rosa Sierra-Fox<br>    Trial Attorney<br>    United States Department of Justice<br>    Office of the United States Trustee<br>    J. Caleb Boggs Federal Building<br>    844 King Street, Suite 2207, Lockbox35<br>    Wilmington, Delaware 19801<br>    Phone: (302) 573-6492<br>    Fax:    (302) 573-6497<br>Email: rosa.sierra-fox@usdoj.gov |

**CERTIFICATE OF SERVICE**

I, Rosa Sierra-Fox, hereby attest that on January 31, 2024, I caused to be served a copy of this Reservation by electronic service on the registered parties via the Court's CM/ECF system and upon the following parties:

| **Counsel to the Debtors**<br><br>Joseph Barry<br>Kenneth J. Enos<br>Andrew A. Mark<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>Email: jbarry@ycst.com<br>kenos@ycst.com<br>amark@ycst.com | **Counsel to the Debtors**<br><br>Ryan Blaine Bennett, P.C<br>Whitney C. Fogelberg<br>KIRKLAND & ELLIS LLP<br>KIRKLAND & ELLIS INTERNATIONAL LLP<br>Email: ryan.bennett@kirkland.com<br>whitney.fogelberg@kirkland.com |
|---|---|
| **Counsel to the Committee**<br><br>GELLERT SCALI BUSENKELL & BROWN, LLC<br>Michael Busenkell<br>E-mail: mbusenkell@gsbblaw.com | **Counsel to the Committee**<br><br>LOWENSTEIN SANDLER LLP<br>Bruce S. Nathan<br>Email: bnathan@lowenstein.com<br>Jeffrey D. Prol<br>Andrew D. Behlmann<br>Colleen M. Restel<br>Email: jprol@lowenstein.com<br>abehlmann@lowenstein.com<br>crestel@lowenstein.com |

*/s/Rosa Sierra-Fox, Esq.*
Rosa Sierra-Fox