IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| MVK FARMCO LLC, *et al.*,[1] | ) Case No. 23-11721 (LSS) |
| Debtors. | ) (Jointly Administered) |

**DEBTORS' MOTION FOR ENTRY OF
AN ORDER (I) AUTHORIZING AND APPROVING THE
SALE OF CERTAIN NONRESIDENTIAL REAL PROPERTY
FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES
AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), respectfully state the following in support of this motion:[2]

**Relief Requested**

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Sale Order"), (a) approving the Debtors' entry into purchase and sale agreements for certain nonresidential real property (each, a "Property," and collectively, the "Properties") located in or around Fresno, California, by and between Debtor Wawona FarmCo. LLC ("PropCo") those certain purchasers (each, a "Purchaser," and collectively, the "Purchasers") as further specified in Exhibit 1 to the Sale Order, substantially in the form attached as Exhibit 2

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201). The location of the Debtors' service address is: 7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2] Capitalized terms used but not defined in this motion have the meanings ascribed to them in the *Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and Its Debtor Affiliates* [Docket No. 432] (together with any chapter 11 plan subsequently filed by the Debtors, the "Plan") or the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and Its Debtor Affiliates* [Docket No. 430] (the "Disclosure Statement"), as applicable.

through Exhibit 24 to the Sale Order (each, a "Purchase Agreement," and collectively, the "Purchase Agreements"); (b) authorizing the Debtors to sell each Property to the applicable Purchaser, as described in the applicable Purchase Agreement, free and clear of liens, claims, encumbrances, and other interests pursuant to section 363(f) of the Bankruptcy Code (as defined herein) and the terms set forth in the Purchase Agreements; and (c) granting related relief.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28. U.S.C. § 157(b)(2), and the Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Court in connection with this motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), rule 6004(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 6004-1.

## Proposed Sale

5. As described further in the Disclosure Statement, prior to initiating these chapter 11 cases, the Debtors ran an extensive sale and marketing process over the course of eight months. On October 13, 2023, the Debtors commenced these chapter 11 cases and filed a bidding procedures motion requesting that the Court enter an order establishing bidding procedures to

market the Debtors' assets, which the Court approved on November 17, 2023 [Docket No. 253] (the "<u>Bidding Procedures Order</u>").  The Bidding Procedures Order made clear that bidders were entitled to submit a bid for some or all of the Debtors' assets.  *See, e.g.*, Bidding Procedures Order, <u>Ex. 1</u>, § D ("To be eligible to participate in the Auction, a party must be a Preliminary Interested Investor and submit a written offer for a Sale Transaction of some or all of the Debtors' Assets . . . .").  The Debtors received multiple bids, both for substantially all of their assets and for certain subsets of their assets.  The only bids that the Debtors ultimately determined to be Qualified Bids (as defined in the Bidding Procedures Order), however, were credit bids individually submitted by the PropCo Agent and the OpCo Agent at the direction of the respective requisite Lenders.  The Debtors subsequently cancelled the auction and stated their intention to pursue the credit bid transactions.  The PropCo Agent submitted a credit bid for $229,166,666.67 (the "<u>PropCo Agent Credit Bid Amount</u>").

6. Since the completion of the marketing process, the Debtors turned their focus towards confirming a chapter 11 plan that will:  (a) transition ownership of the real estate and other assets owned by PropCo to the PropCo Lenders; and (b) cost-effectively wind down their operating business entities for the benefit of their creditors.  Recently, in consultation with the DIP Lenders—who hold more than (i) 70% by amount of the indebtedness under the Bridge Facility, (ii) 50% by amount of the indebtedness under the OpCo Facility, and (iii) 95% by amount of the indebtedness under the PropCo Facility—the Debtors began to evaluate which, if any, of their assets could be monetized in the near-term, rather than waiting until the Debtors' emergence from these chapter 11 cases to take advantage of certain opportunities to sell or lease their real estate assets.

7. The Debtors, in consultation with the DIP Lenders, negotiated the sales contemplated herein with the Purchasers, including certain Purchasers who had expressed an interest in the Properties during the prepetition sale process and the Court-approved sales process, regarding their interest in purchasing any of the Properties.

8. The aggregate purchase price for all the Properties is approximately $122.7 million, all but approximately $2.3 million of which shall be paid in cash and all of which are the highest and best offer received for the applicable Property. The Debtors believe that the purchase price is the best available price for each Property and do not believe that the cost and expense of running an additional auction process would increase the sale proceeds, especially in light of the nearly year-long marketing process for the Debtors' assets, including the Properties. The Debtors have negotiated the applicable sale transactions (each, a "Sale Transaction," and collective, the "Sale Transactions"), including the terms and conditions of the applicable Purchase Agreement, with the applicable Purchaser at arm's length and in good faith. As such, the Debtors believe that entering into the Purchase Agreements and consummating the sale of the Properties is fair, reasonable, and represents a sound exercise of the Debtors' business judgment.

9. To the extent that the Sale Transactions are consummated prior to the effective date of the Plan, the PropCo Agent Credit Bid Amount will be reduced on a dollar-for-dollar basis by the net sale proceeds of each Sale Transaction.

**Summary of Key Sale Terms**

10. The following is a summary of the material terms of the Purchase Agreements:[3]

---

[3] This summary is provided for the convenience of the Court and parties in interest and describes, generally, the provisions of the Purchase Agreements. For the avoidance of doubt, though the Purchase Agreements are substantially similar to each other, each Purchase Agreement may contain certain modifications specific to the applicable Sales Transaction. To the extent there is any conflict between this summary and the applicable Purchase Agreement, the applicable Purchase Agreement shall govern in all respects. All references to schedules or sections in the following summary shall refer to schedules or sections of the applicable Purchase Agreement.

| Provision | Summary Description |
|---|---|
| **Seller**<br><br>**Purchase Agreement § 1.01** | Wawona Farm Co. LLC, a Delaware limited liability company, and if the Closing occurs after the Effective Date (as defined in the Plan), then "Seller" shall mean Wawona Farm Co. LLC, a Delaware limited liability company, as reorganized pursuant to the Plan |
| **Purchaser**<br><br>**Purchase Agreement § 1.02** | The Purchaser for each Property is identified in Exhibit 1 to the Sale Order and section 1.02 of the applicable Purchase Agreement. |
| **Property**<br><br>**Purchase Agreement § 1.03** | Each property to be sold is identified in Exhibit B to the Sale Order and section 1.03 of the applicable Purchase Agreement. |
| **Proposed Purchase Price**<br><br>**Purchase Agreement § 1.04**<br><br>**Local Bankr. R. 6004-1(b)(iv)(N)** | The purchase price for each Property is identified in Exhibit 1 to the Sale Order and section 1.04 of the applicable Purchase Agreement. |
| **Releases**<br><br>**Purchase Agreement § 8.02**<br><br>**Local Bankr. R. 6004-1(b)(iv)(C)** | The Purchase Agreements contain certain releases regarding the applicable Purchaser's right to recover from PropCo or any member of Seller Group (as defined in the applicable Purchase Agreement), any and all damages, losses, liabilities, costs or expenses whatsoever, and claims therefor, whether direct or indirect, known or unknown, or foreseen or unforeseen, which may arise from or be related to: (i) the physical condition or state of repair of the applicable Property; and, (ii) the applicable Property's compliance, or lack of compliance with any applicable laws, including, without limitation, laws relating to environmental matters. The Purchasers further expressly waive the benefits of California Civil Code Section 1542. |
| **Private Sale / No Competitive Bidding**<br><br>**Local Bankr. R. 6004-1(b)(iv)(D)** | The Properties will be sold via private sale. There will not be an auction. |
| **Closing and Other Deadlines**<br><br>**Local Bankr. R. 6004-1(b)(iv)(E)** | As early as March 1, 2024 or fourteen (14) days after the Agreement Effective Date (as defined in the applicable Purchase Agreement), though some Purchase Agreements provide for a later Closing. |
| **Good Faith Deposit** | The "Deposit" specified in Section 1.05 of the applicable Purchase Agreement shall be deposited by each applicable Purchaser with Escrow Holder (as named in Section 1.07 of the applicable Purchase Agreement) within five (5) days following the Agreement Effective Date. In the event that a Purchaser elects to proceed with the |

---

Capitalized terms used in this summary description that are not defined herein shall have the meanings ascribed to them in the applicable Purchase Agreement.

| | |
|---|---|
| **Purchase Agreement §§ 1.05, 2.04(a)**<br><br>**Local Bankr. R. 6004-1(b)(iv)(F)** | purchase of the applicable Property at the conclusion of the "Inspection Period" (as specified in Section 1.10 of the applicable Purchase Agreement), the applicable Deposit shall then be non-refundable. Upon Close of Escrow, Escrow Holder shall apply the Deposit against the Purchase Price for the applicable Property. |
| **Tax Exemption**<br><br>**Purchase Agreement §§ 4.01, 7.03**<br><br>**Local Bankr. R. 6004-1(b)(iv)(I)** | Other than transfer taxes, each Purchaser shall accept title to the applicable Property subject to any lien for current real property taxes and water district taxes and assessments, if any, not yet due and any lien for supplemental taxes and assessments resulting from the change in ownership created by the sale of the applicable Property to such Purchaser.<br><br>The parties shall use their good faith efforts to estimate prorated supplemental assessments or reassessments, real and personal property taxes or assessments relating to the Real Property, including water district charges and assessments, to the extent attributable to any period prior to the Closing Date (the "Pre-Closing Assessments"). PropCo shall be responsible for the Pre-Closing Assessments (which shall reduce the Purchase Price proceeds payable to PropCo), and the applicable Purchaser shall be responsible for all other such items. |
| **Requested Findings as to Successor Liabilities**<br><br>**Sale Order ¶ G**<br><br>**Local Bankr. R. 6004-1(b)(iv)(L)** | The Parties intend that, to the fullest extent permitted by applicable Law (including under Section 363 of the Bankruptcy Code), effective as of the Closing, that neither the applicable Purchaser nor any of its affiliates or equityholders will have any derivative, successor, transferee or vicarious liability of any kind or character, whether fixed or contingent, for liabilities of PropCo (whether under federal or state law or otherwise), including on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the business prior to the Closing (except for as set forth in Sections 4.01 and 4.02 of the applicable Purchase Agreement). |
| **Sale Free and Clear**<br><br>**Sale Order ¶ 6**<br><br>**Local Bankr. R. 6004-1(b)(iv)(M)** | The Properties shall be sold free and clear of liens, encumbrances, claims and interests (except for any such liens, encumbrances, claims or interests described in Section 4.01 of the applicable Purchase Agreement) pursuant to the Court Order and effective upon the Closing (as defined in Section 7.06 of the applicable Purchase Agreement); *provided* that to the extent the Closing is to occur after the Effective Date (as defined in the Plan), PropCo shall remove all the deeds of trust, mechanics' liens and any other liquidated monetary liens against the Properties created by or against PropCo from and after the Effective Date (as defined in the Plan). |

## Basis for Relief

**I.   The Sale Transactions are a Sound Exercise of the Debtors' Business Judgment, are Appropriate Pursuant to Bankruptcy Rule 6004(f), and Should Be Approved.**

11.   Section 363(b) of the Bankruptcy Code provides that "[t]he [debtor-in-possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In determining whether to authorize the use, sale, or lease of property of the estates under section 363 of the Bankruptcy Code, "courts require the

debtor to show that a sound business purpose justifies such actions." *The Dai-Ichi Kangyo Bank Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *see, e.g., In re ICL Holding Co., Inc.*, 802 F.3d 547, 551 (3d Cir. 2015); *In re Lionel Corp.*, 722 F.2d 1063, 1070–71 (2d Cir. 1983). The "sound business purpose" test requires a debtor to establish that: "(1) a sound business purpose [for the sale] exists; (2) the [total consideration] is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith." *In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)). The Debtors submit that the Sale Transactions satisfy each of these elements.

12. Once a debtor articulates a valid business justification, then the burden of rebutting the "strong presumption . . . that the agreement at issue was negotiated in good faith and in the best interests of the estate" falls to parties opposing the transaction. *In re Filene's Basement*, No. 11-13511 (KJC), 2014 WL 1713416; *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Thus, if a debtor satisfies the business judgment rule, the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

13. Moreover, Bankruptcy Rule 6004(f)(1) authorizes a debtor to sell estate property outside of the ordinary course of its business by private sale or public auction. Fed. R. Bankr. P. 6004(f)(1). Courts generally afford debtors in possession broad discretion in determining the manner in which estate property is sold. *See, e.g., In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998). Private sales by a debtor outside of the ordinary course of business are appropriate where the debtor demonstrates that the sale is permissible pursuant to section 363 of the Bankruptcy Code. *See In re Stephens Indus., Inc.*, 789 F.2d 386, 390 (6th Cir. 1986) (holding

a debtor may sell property via private sale "when a sound business purpose dictates such action); *In re Schipper*, 933 F.2d 513 (7th Cir. 1991) (approving private real estate sale by debtor when purchase price was the same as independent appraisal); *In re Blue Coal Corp.*, 67 B.R. 798 (Bankr. M.D. Penn. 1986) (permitting the private sale of certain of the debtor's assets); *In re Paper Corp. of Am.*, 138 F.Supp. 29 (S.D.N.Y. 1956) (holding that the trustee's inability to sell the property after "many months . . . was sufficient to warrant the private sale."); *see also In re Blue Coal Corp.*, 168 B.R. 553, 564 (M.D. Penn. 1994) ("[A] larger measure of discretion is available to the court in considering whether a private bid should be approved or confirmed.").

14. Selling the Properties is in the best interests of the Debtors' estates and should be approved. *First*, the Debtors marketed the Properties for almost a year, including both through Debtors' the eight-month prepetition marketing process and as part of the Debtors' Court-approved sale process. As part of these processes, the Debtors contacted more than 130 potential counterparties regarding the sale of all or a portion of the Debtors' assets, and more than seventy-five parties executed non-disclosure agreements. The Debtors received four whole company bids and three bids for select assets through their Court-approved sale process, but no third parties submitted an actionable bid for the Properties during such process that would have provided a better or higher recovery for the Debtors as compared to the PropCo Agent Credit Bid Amount. *Second*, after engaging in good-faith, arms' length negotiations with each Purchaser, the parties agreed on the applicable purchase price in cash for the Property, which totals approximately $122.7 million in the aggregate. In light of the circumstances, the Debtors and their advisors, in consultation with the PropCo Lenders, concluded that the sale price for each Property is fair and reasonable. *Third*, the proposed sales will maximize the value of the Debtors' estates by monetizing the Properties, bringing in cash in the near term to improve the Debtors' liquidity.

A public auction would require the Debtors' estates to incur substantial additional costs and, in light of the Debtors' extensive prepetition and postpetition marketing efforts, the Debtors do not believe an auction would result in additional value sufficient to justify the incurrence of such costs. For these reasons, the sale of each Property is a sound exercise of the Debtors' business judgment and should be approved.

15. Courts in this and other jurisdictions have routinely authorized private sales pursuant to section 363 of the Bankruptcy Code. *See, e.g.*, *In re Armstrong Flooring, Inc.*, No. 22-10426 (MFW) (Bankr. D. Del. Mar. 27, 2023) (authorizing a private sale of certain of the debtors' assets without bidding procedures or an auction); *In re Indep. Pet Partners Holdings, LLC*, No. 23-10153 (LSS) (Bankr. D. Del. Feb. 24, 2023); *In re Boy Scouts of Am.*, No. 20-10343 (LSS) (Bankr. D. Del. Apr. 22, 2022) (same); *In re RTI Holding Co., LLC*, No. 20-12456 (JTD) (Bankr. D. Del. Feb. 1, 2021) (same); *In re Comcar Indus., Inc.*, No. 20-11120 (LSS) (Bankr. D. Del. July 21, 2020) (same).

**II.    The Sale Free and Clear of Liens and Other Interests Is Authorized by Section 363(f) of the Bankruptcy Code.**

16. Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of liens, claims, interests, and encumbrances if:

> (1)    applicable non-bankruptcy law permits sale of such property free and clear of such interests;
>
> (2)    such entity consents;
>
> (3)    such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)    such interest is in bona fide dispute; or
>
> (5)    such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Because these requirements are listed in the disjunctive, the Debtors only need to satisfy one of the five requirements to permit the Property to be sold "free and clear" of liens and interests. *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002). The Debtors submit that each lien or interest in the Property (other than an Assumed Liability or Permitted Encumbrance) satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code.

17. Specifically, the PropCo Lenders, who will be the ultimate owners of PropCo's assets post-confirmation, do not object to the proposed Sale Transactions (and indeed support the Sale Transactions), satisfying section 363(f)(2). To the extent any other prepetition secured lenders have a prepetition security interest in and liens upon the Properties, these creditors can be compelled to accept a monetary satisfaction of their interests or are adequately protected by having their claims that constitute interests in the Properties, if any, attached to the proceeds of the Sale Transactions with the same priority that existed immediately prior to the Closing (as defined in the Purchase Agreements). Thus, section 363(f)(5) of the Bankruptcy Code is satisfied and any existing interests in the Properties will be adequately protected through attachment to the proceeds of the sale. *See In re Katy Indus.*, No. 17-11101 (KJC), 2017 WL 5434578, at *5 (Bankr. D. Del. 2017) (finding that holders of liens against property sold free and clear of all liens are "adequately protected by having their Encumbrances, if any, attach to the cash proceeds of the Sale attributable to the Purchased Assets in which such holder alleges an Encumbrance"); *see also MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."). Accordingly, the Debtors request that the Properties be transferred to each applicable Purchaser free and clear of

liens, claims, and encumbrances, with any such liens, claims, and encumbrances attaching to the net sale proceeds realized from the private sale.

### III. Each Purchaser Is a Good-Faith Purchaser and Is Entitled to the Full Protection of Section 363(m) of the Bankruptcy Code.

18. Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith[.]" 11 U.S.C. § 363(m). Although good faith is not specifically defined in the Bankruptcy Code, one court has stated that the "[g]ood faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings . . . A purchaser's good faith is lost by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Gucci*, 126 F.3d 380, 390 (2d Cir. 1997) (internal quotations omitted). Within the Third Circuit, a good faith purchaser is one who purchases assets for value and in good faith. "The requirement that a purchaser act in good faith . . . speaks to the integrity of his conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa.*, 788 F.2d 143, 147 (3d Cir. 1986).

19. The Purchase Agreements and their terms are the product of good-faith, arm's-length negotiations. There is no indication of fraud or any improper insider dealing. Further, the consideration to be received by PropCo for each Property is fair and reasonable, and the Debtors are not aware of any other actionable competing offers. The PropCo Lenders' support for this transaction further supports the conclusion that this sale has been done without any insider

11

dealing or collusion. Accordingly, the Debtors request that the Court enter an order entitling each Purchaser to the full protections of section 363(m) of the Bankruptcy Code.

## Waiver of Bankruptcy Rule 6004(h)

20. To implement the foregoing successfully, the Debtors seek a waiver of the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

21. The Debtors will provide notice of this motion to the following parties or their respective counsel: (a) the U.S. Trustee for the District of Delaware; (b) the Committee and counsel thereto; (c) Wilmington Trust National Association, as successor to Coöperatieve Rabobank U.A., New York Branch, as Prepetition PropCo Agent and counsel thereto; (d) Coöperatieve Rabobank U.A., New York Branch, as Bridge Administrative Agent and Bridge PropCo Collateral Agent and counsel thereto; (e) Royal Bank of Canada, as Bridge OpCo Collateral Agent and Prepetition OpCo Agent and counsel thereto; (f) Metropolitan Life Insurance Company, in its capacity as Prepetition Lender and a member of the SteerCo and counsel thereto; (g) Compeer Financial, PCA, in its capacity as Prepetition Lender and a member of the SteerCo and counsel thereto; (h) AgCountry Farm Credit Services as a member of the SteerCo and counsel thereto; (i) Paine Schwartz Partners and counsel thereto; (j) the office of the attorney general for each of the states in which the Debtors operate; (k) the United States Attorney's Office for the District of Delaware; (l) the Internal Revenue Service; (m) all parties who have expressed a written interest in some or all of the Properties; (n) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Properties; (o) all applicable state and local taxing authorities; (p) each governmental agency that is an interested party with respect to the proposed Sale Transactions; and (q) any party that has

requested notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

22. No prior request for the relief sought in this motion has been made to this or any other court.


[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as is just and proper.

Dated: February 13, 2024
Wilmington, Delaware

*/s/ Andrew A. Mark*
Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:    jbarry@ycst.com
    kenos@ycst.com
    amark@ycst.com

-and-

Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    ryan.bennett@kirkland.com
    jaimie.fedell@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*