**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| MVK FARMCO LLC, *et al.*,[1] | Case No. 23-11721 (LSS) |
| Debtors. | (Jointly Administered) |
| | Ref Docket Nos. 270, 390, 414, 432, 640, 675, & 696 |

**NOTICE OF FILING FURTHER AMENDED
(I) JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
MVK FARMCO LLC AND ITS DEBTOR AFFILIATES;
AND (II) BLACKLINE THEREOF**

**PLEASE TAKE NOTICE** that on November 21, 2023, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), filed the *Joint Chapter 11 Plan of MVK FarmCo LLC and Its Debtor Affiliates* [Docket No. 270] (the "Plan") with the United States Bankruptcy Court for the District of Delaware (the "Court").

**PLEASE TAKE FURTHER NOTICE** that on December 18, 2023, the Debtors filed the *Amended Joint Chapter 11 Plan of MVK FarmCo LLC and Its Debtor Affiliates; and (II) Blackline Thereof* [Docket No. 390] (the "First Amended Plan").

**PLEASE TAKE FURTHER NOTICE** that on December 23, 2023, the Debtors filed a further amended chapter 11 plan [Docket No. 414] (the "Second Amended Plan"), and subsequently filed further amended plans on December 28, 2023 [Docket No. 432] (the "Third Amended Plan"), February 14, 2024 [Docket No. 640] (the "Fourth Amended Plan"), and February 21, 2024 [Docket No. 675] (the "Fifth Amended Plan").

**PLEASE TAKE FURTHER NOTICE** that on February 23, 2024, the Debtors filed a further revised plan constituting the solicitation of version of the chapter 11 plan [Docket No. 696] (the "Sixth Amended Plan").

**PLEASE TAKE FURTHER NOTICE** that the Debtors have further amended the Sixth Amended Plan, a copy of which is attached hereto as Exhibit 1 (the "Further Amended Plan").

**PLEASE TAKE FURTHER NOTICE** that, for the convenience of the Court and parties in interest, a blackline comparing the Further Amended Plan to the Sixth Amended Plan is attached

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201). The location of the Debtors' service address is: 7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

hereto as <u>Exhibit 2</u>.  The Debtors reserve their rights to further amend, supplement, or modify the Further Amended Plan.

Dated:  March 25, 2024
Wilmington, Delaware

/s/ Andrew A. Mark
Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:        jbarry@ycst.com
              kenos@ycst.com
              amark@ycst.com

-and-

Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        ryan.bennett@kirkland.com
              jaimie.fedell@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

31085530.8

# **EXHIBIT 1**

## **Further Amended Plan**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-11721 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
## MVK FARMCO LLC AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200
Email:     ryan.bennett@kirkland.com
     jaimie.fedell@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Facsimile:     (302) 571-1253
Email:     jbarry@ycst.com
     kenos@ycst.com
     amark@ycst.com

*Co-Counsel for the Debtors and Debtors in Possession*

Dated:  March 25, 2024

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

31481411.1

# TABLE OF CONTENTS

**Page**

**INTRODUCTION**................................................................................................1

**ARTICLE I . DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW** .......................................1
A.    Defined Terms. ................................................................................1
B.    Rules of Interpretation. .................................................................25
C.    Computation of Time. ...................................................................25
D.    Governing Law. .............................................................................26
E.    Reference to Monetary Figures. ...................................................26
F.    Reference to the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors. ........................................................26
G.    No Substantive Consolidation; Limited Administrative Consolidation. ...........................26
H.    Controlling Document. ..................................................................26

**ARTICLE II . ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS** ............................................................27
A.    Administrative Claims and Priority Tax Claims............................27
B.    Professional Fee Claims. ...............................................................28
C.    Statutory Fees.................................................................................29
D.    Restructuring Expenses..................................................................30
E.    DIP Claims .....................................................................................30

**ARTICLE III . CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS** ...........................................................................................30
A.    Classification of Claims and Interests............................................30
B.    Summary of Classification..............................................................31
C.    Treatment of Claims and Interests. ................................................31
D.    Special Provision Governing Unimpaired Claims.........................37
E.    Elimination of Vacant Classes. ......................................................37
F.    Voting Classes; Presumed Acceptance by Non-Voting Classes.....37
G.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .........................................37
H.    Subordinated Claims.......................................................................38
I.    Controversy Concerning Impairment. ............................................38
J.    Intercompany Interests....................................................................38

**ARTICLE IV . MEANS FOR IMPLEMENTATION OF THE PLAN**.....................38
A.    General Settlement of Claims and Interests....................................38
B.    Plan Settlement. .............................................................................39
C.    Deemed Consolidation of Class 7A................................................44
D.    PropCo Equitization Transaction....................................................44
E.    OpCo Wind-Down Transactions.....................................................47
F.    GUC Trust.......................................................................................54

G.      Tax Treatment of Liquidating Trust and GUC Trust......................................................56
H.      Corporate Action..........................................................................................................59
I.      Vesting of Assets in Reorganized PropCo or the Wind-Down Debtors.........................60
J.      Cancellation of Securities and Agreements. ................................................................60
K.      Effectuating Documents; Further Transactions. ..........................................................61
L.      Exemption from Certain Taxes and Fees......................................................................61
M.      Preservation of Causes of Action.................................................................................62
N.      Release of Avoidance Actions ......................................................................................63
O.      Exit Facilities. ..............................................................................................................63
P.      Deemed Assignment of Certain Claims Against the OpCo Credit Parties and/or
        the Wind-Down Debtors ...............................................................................................64

**ARTICLE V . TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES .................................................................................................................................65**
A.      Assumption and Rejection of Executory Contracts and Unexpired Leases. ....................65
B.      Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired
        Leases............................................................................................................................66
C.      Claims Based on Rejection of Executory Contracts or Unexpired Leases......................66
D.      Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ..................67
E.      Insurance Contracts.......................................................................................................68
F.      D&O Liability Insurance Policies..................................................................................69
G.      Indemnification Obligations. ........................................................................................70
H.      Modifications, Amendments, Supplements, Restatements, or Other Agreements. ..........70
I.      Reservation of Rights.....................................................................................................71
J.      Nonoccurrence of Effective Date...................................................................................71

**ARTICLE VI . PROVISIONS GOVERNING DISTRIBUTIONS .........................................71**
A.      Timing and Calculation of Amounts to Be Distributed. .................................................71
B.      Disbursing Agent. .........................................................................................................72
C.      Rights and Powers of the Disbursing Agent(s)..............................................................72
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions. .....................72
E.      Compliance with Tax Requirements/Allocations. ...........................................................74
F.      Allocation of Plan Distributions Between Principal and Interest. ...................................74
G.      Setoffs and Recoupment. ...............................................................................................74
H.      No Postpetition Interest on Claims.................................................................................74
I.      Foreign Currency Exchange Rate. .................................................................................75
J.      Claims Paid or Payable by Third Parties. .....................................................................75
K.      Indefeasible Distributions. ............................................................................................76

**ARTICLE  VII  .  PROCEDURES  FOR  RESOLVING  CONTINGENT,
UNLIQUIDATED, AND DISPUTED CLAIMS ....................................................................76**
A.      Allowance of Claims and Interests. ...............................................................................76
B.      Claims and Interests Administration Responsibilities.....................................................76
C.      Estimation of Claims and Interests. ...............................................................................77
D.      Adjustment to Claims or Interests without Objection......................................................77
E.      Disallowance of Claims. ...............................................................................................77
F.      Amendments to Claims...................................................................................................78

G.      No Distributions Pending Allowance. ..........................................................78
H.      Distributions After Allowance. ....................................................................78
I.      Single Satisfaction of Claims. .....................................................................78

**ARTICLE VIII . SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ............................................................................................**79**
A.      Satisfaction of Claims and Termination of Interests .....................................79
B.      Term of Injunctions or Stays. ......................................................................79
C.      Release of Liens. .........................................................................................79
D.      Releases by the Debtors ...............................................................................80
E.      Releases by Holders of Claims and Interests. ..............................................82
F.      Exculpation. ................................................................................................83
G.      No Discharge of the Debtors. .......................................................................84
H.      Injunction. ..................................................................................................84
I.      Protection Against Discriminatory Treatment. .............................................86
J.      Recoupment. ...............................................................................................87
K.      Subordination Rights. ..................................................................................87
L.      Document Retention. ...................................................................................87
M.      Reimbursement or Contribution. ..................................................................87

**ARTICLE IX . CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE.** .....................................................................................**87**
A.      Conditions Precedent to the Effective Date. .................................................87
B.      Waiver of Conditions. ..................................................................................89
C.      Substantial Consummation. ..........................................................................89
D.      Effect of Non-Occurrence of Conditions to the Effective Date. .....................89

**ARTICLE X . MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ...........................................................................................................**89**
A.      Modifications and Amendments. ...................................................................89
B.      Effect of Confirmation on Modifications. .....................................................90
C.      Revocation or Withdrawal of the Plan. .........................................................90

**ARTICLE XI . RETENTION OF JURISDICTION** ...........................................**90**

**ARTICLE XII . MISCELLANEOUS PROVISIONS** ..........................................**93**
A.      Immediate Binding Effect. ...........................................................................93
B.      Additional Documents. .................................................................................93
C.      Dissolution of Statutory Committees. ...........................................................93
D.      Reservation of Rights. ..................................................................................93
E.      Successors and Assigns. ...............................................................................94
F.      Service of Documents. .................................................................................94
G.      Enforcement of Confirmation Order. ............................................................94
H.      Compensation and Benefits Programs. ..........................................................95
I.      Entire Agreement. ........................................................................................95
J.      Exhibits. ......................................................................................................95
K.      Nonseverability of Plan Provisions. ..............................................................95

31481411.1

L.    Votes Solicited in Good Faith. ..............................................................................................95
M.    Waiver. ..............................................................................................................................96
N.    Closing of Chapter 11 Case. ..............................................................................................96

## INTRODUCTION

MVK FarmCo LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases propose this joint chapter 11 plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code.  Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article I.A of this Plan.  Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code.  Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.  The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable.  For the avoidance of doubt, the Plan does not contemplate substantive consolidation of any of the Debtors.  Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, risk factors, as well as a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings and effect ascribed to them below.

1.    "*1970 Group*" means 1970 Group, Inc.

2.    "*1970 Group Agreement*" means that certain Substitute Insurance Collateral Facility Agreement, dated as of December 7, 2021, by and between 1970 Group, Inc. and Wawona Packing Co., LLC (as amended, restated, and otherwise supplemented).

3.    "*9019 Motion*" means the *Debtors' Motion for Entry of an Order (I) Approving the Settlement Agreement Among the Debtors, the Creditors' Committee, the Sponsor, the Required Lender Group, and McKinsey, (II) Authorizing the Debtors to Take Any and All Actions Necessary to Effectuate the Terms Thereto, and (III) Granting Related Relief* [Docket No. 542].

4.    "*9019 Motion Settlement*" means the settlement by and among the 9019 Motion Settlement Parties, which settlement is incorporated into the terms of this Plan and filed with the Bankruptcy Court pursuant to the Settlement Stipulation.

5.    "*9019 Motion Settlement Parties"* means (a) the Debtors, (b) the Committee, (c) the Sponsor, (d) McKinsey, and (e) the Required Lender Group.

6.      "*9019 Order*" means an order entered by the Bankruptcy Court approving the 9019 Motion, which may be the Confirmation Order.

7.      "*Administrative Claim*" means a Claim against any of the Debtors for costs and expenses of administration of the Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' business; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code and; (d) Adequate Protection Superpriority Claims (as defined in the Cash Collateral Order).

8.      "*Administrative Claims Bar Date*" means the applicable deadline by which all requests for Administrative Claims must be Filed and served on the Debtors, which shall be 30 days after the Effective Date; *provided* that Filing a request for payment of Administrative Claims is not required where the Plan, Bankruptcy Code, or a Final Order does not require such Filing.

9.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code as if such entity was a debtor in a case under the Bankruptcy Code.

10.     "*Agent*" means any of the Bridge Agents, the OpCo Agent, the PropCo Agent, and/or, as applicable, any agent appointed under or in connection with the DIP Credit Agreement.

11.     "*Allowed*" means, with respect to any Claim against or Interest in a Debtor, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Claims Bar Date or a request for payment of an Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; (c) a Claim or Interest allowed pursuant to the Plan or a Final Order; *provided* that with respect to a Claim described in clause (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except as provided in sections 506(b) or 511 of the Bankruptcy Code, an Allowed Claim shall not, for purposes of computing distributions under this Plan, include interest on such Claim from and after the Petition Date.  Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under  sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity or transferee has paid the amount, or turned over any such property,  for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, following an objection to a claim filed on such grounds.  For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date, or a request for payment of an Administrative Claim Filed after the

Administrative Claims Bar Date, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim. "*Allow*" and "*Allowing*" shall have correlative meanings.

12.    "*Avoidance Actions*" means any and all Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors arising under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related Law.

13.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended.

14.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

15.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases, and the general, local, and chambers' rules of the Bankruptcy Court.

16.    "*Bar Date Order*" means that certain *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 240].

17.    "*Bidding Procedures Order*" means the order of the Bankruptcy Court approving, among other things, the bidding procedures governing submission and evaluation of bids to purchase some or all of the Debtors' assets [Docket No. 252].

18.    "*Bridge Administrative Agent*" means Rabobank in its capacity as administrative agent under the Bridge Credit Agreement.

19.    "*Bridge Agents*" means the Bridge Administrative Agent, the Bridge PropCo Collateral Agent, and the Bridge OpCo Collateral Agent.

20.    "*Bridge Credit Agreement*" means that certain multi-draw senior secured superpriority priming credit agreement dated as of April 3, 2023, by and among OpCo, PropCo, and GroupCo, as borrowers, the guarantors party thereto, the Bridge Lenders, and the Bridge Agents, as may be amended, restated, supplemented, or otherwise modified from time to time.

21.    "*Bridge Lenders*" means the lender parties to the Bridge Credit Agreement.

22.    "*Bridge New Money Term Loan Claims*" means the Claims arising from or in connection with the Bridge New Money Term Loans and any adequate protection claims granted on account of Bridge New Money Term Loan Claims under the Cash Collateral Order or any DIP Order.

23. "*Bridge New Money Term Loans*" means the outstanding term loans issued under the Bridge Credit Agreement.

24. "*Bridge OpCo Collateral Agent*" means RBC, in its capacity as collateral agent with respect to the OpCo Collateral under (and as defined in) the Bridge Credit Agreement.

25. "*Bridge OpCo Roll-Up Term Loan Claim Distribution*" means (a) the amount of any Pre-Effective Date Sale Proceeds remaining after satisfying in full any Allowed Secured Claims with Liens senior to the Liens of the Bridge OpCo Roll-Up Term Loan Claims on such Pre-Effective Date Sale Proceeds and in accordance with the Pre-Effective Date Sale Proceeds Priority, and (b) any proceeds of the Liquidating Trust Assets in excess of the amounts necessary to satisfy in full: (i) the Wind-Down Debtors' Expenses and (ii) the Post-Effective Date PropCo Liquidating Trust Distribution Amount.

26. "*Bridge OpCo Roll-Up Term Loan Claims*" means the Claims arising from or in connection with the Bridge OpCo Roll-Up Term Loans and any adequate protection claims granted on account of Bridge OpCo Roll-Up Term Loans under the Cash Collateral Order or any DIP Order.

27. "*Bridge OpCo Roll-Up Term Loans*" means the term loans issued under the Bridge Credit Agreement that resulted from the conversion of one dollar of the outstanding principal amount of OpCo Loans into Bridge OpCo Roll-Up Term Loans for every dollar of committed Bridge New Money Term Loans, once drawn.

28. "*Bridge PropCo Collateral Agent*" means Rabobank, in its capacity as collateral agent with respect to the PropCo Collateral under the Bridge Credit Agreement.

29. "*Bridge Required Lenders*" means the Required Lenders under (and as defined in) the Bridge Credit Agreement.

30. "*Bridge Secured Claims*" means the Bridge New Money Term Loan Claims and the Bridge OpCo Roll-Up Term Loan Claims.

31. "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

32. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

33. "*Cash Collateral*" has the meaning ascribed to it under section 363(a) of the Bankruptcy Code.

34. "*Cash Collateral Order*" means the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, And 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 108], the Second *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, and 552 and Fed. R. Bankr. P. 2002, 4001, 6003,*

*6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 250], the *Third Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, and 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 381], the *Fourth Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, and 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 421], the Fifth Interim Cash Collateral Order, or a final order entered in the Chapter 11 Cases authorizing the use of Cash Collateral, as applicable.

35.    "*Causes of Action*" means any and all actions, Claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, controversies, demands, rights, actions, Liens, indemnities, interests, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  For the avoidance of doubt, "Causes of Action" includes:  (a) any rights of setoff, counterclaims, or recoupments, and any Claims for breach of contract or for breach of duties imposed by Law or in equity; (b) any and all Claims based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law, or breach of any duty imposed by Law or in equity, including Securities laws, negligence, and gross negligence; (c) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate, or disallow Claims or Interests; (d) any and all Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any and all Claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any and all state or foreign Law fraudulent transfer or similar Claims; and (g) any Avoidance Action.

36.    "*Chapter 11 Cases*" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

37.    "*Chubb Agribusiness Policy*" means policy no.  PAC1100269 issued by Pacific Employers Insurance Company for the period of September 30, 2023 to September 30, 2024, which, for the avoidance of doubt, is an Insurance Contract.

38.    "*Claim*" has the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

39.    "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed with respect to Claims other than Administrative Claims allowable under sections 503(b) or 507(a)(2) of the Bankruptcy Code as an expense of administration incurred in the ordinary

course, as established by the Bar Date Order or the Plan; provided that if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

40.    "*Claims Objection Deadline*" means the date that is 120 days after the Effective Date, as may be extended from time to time by motion of the Liquidating Trustee or GUC Administrator, as applicable.

41.    "*Claims Register*" means the official register of Claims against the Debtors maintained by the clerk of the Bankruptcy Court or the Notice, Claims, and Solicitation Agent.

42.    "*Class*" means a category of Holders of Claims or Interests as set forth in Article III of the Plan under section 1122 of the Bankruptcy Code.

43.    "*Class 7 Distribution Amount*" means the Sponsor Contribution Amount and the Gerawan Settlement Amount.

44.    "*Class 7A Distribution Amount*" means the *pro rata* portion of the Class 7 Distribution Amount allocable to Allowed Class 7A General Unsecured Claims, before giving effect to the GUC Required Lender Allocation.

45.    "*Class 7B Distribution Amount*" means the *pro rata* portion of the Class 7 Distribution Amount allocable to Allowed Class 7B Prepetition Credit Agreement Deficiency Claims, before giving effect to the GUC Required Lender Allocation.

46.    "*Collateral*" means any property or interest in property of the Estate of any Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance of any such Lien, charge, or other encumbrance.

47.    "*Committee*" means the statutory committee of unsecured creditors, appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 123].

48.    "*Committee Designated Account*" means a bank account designated by the Committee prior to the Effective Date to hold the Sponsor Contribution Amount and the Gerawan Settlement Amount until all Class 7A General Unsecured Claims have been reconciled and the *Pro Rata* allocation of the Class 7 Distribution Amount between the Class 7A Distribution Amount and the Class 7B Distribution Amount can be calculated.

49.    "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

50.    "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

51.    "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code at which the Debtors shall seek entry of the Confirmation Order.

52.    "*Confirmation Objection Deadline*" means the deadline by which any objections to Confirmation of the Plan must be Filed.

53.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Required Lender Group.

54.    "*Consummation*" means the occurrence of the Effective Date.

55.    "*Consummation Date Crop Value*" means an amount equal to $2,829 per acre for each acre that PropCo or Reorganized PropCo owns as of the Effective Date of the Plan that (i) is not under lease, (ii) is not subject to an early possession agreement, (iii) is not part of Raisin City, and (iv) has trees that were planted before January 1, 2020; *provided* that, with respect to any acres that are under contract for sale but not the subject of an early possession agreement pursuant to which the corresponding purchaser has agreed to the cultural costs it is required to pay to the Debtors, the amount that such purchaser has agreed to pay the Debtors in respect of cultural costs shall apply to such acres.

56.    "*Cure*" or "*Cure Claim*" means a monetary Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's default under any Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

57.    "*Cure Notice*" means that *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 258], which the Debtors Filed and caused to be served upon counterparties to such Executory Contracts or Unexpired Leases, and which included:  (a) procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

58.    "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued to or provide coverage at any time to any of the Debtors or their predecessors providing directors', members', trustees', officers', or managers' liability coverage and all agreements, documents, or instruments relating thereto.

59.    "*Debtor*" means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

60.    "*Debtors*" means, collectively:  MVK FarmCo LLC, MVK Intermediate Holdings LLC, Gerawan Farming LLC, Gerawan Supply, Inc., Gerawan Farming Partners LLC, Gerawan Farming Services LLC, PropCo, OpCo, and GFP LLC.

61.     "*Derivative Action*" shall have the meaning set forth in the Disclosure Statement.

62.     "*DIP Agent*" means the administrative agent under any DIP Facility.

63.     "*DIP Claims*" means any claims arising under or in connection with any DIP Facility.

64.     "*DIP Credit Agreement*" means the definitive credit agreement governing any DIP Facility.

65.     "*DIP Facility*" means any debtor-in-possession financing credit facility approved by the Bankruptcy Court and provided to any of the Debtors during the Chapter 11 Cases.

66.     "*DIP Lenders*" means the lenders party to any DIP Credit Agreement.

67.     "*DIP Loan Documents*" means the DIP Credit Agreement, the Interim DIP Order, the Final DIP Order, the DIP Budget, the DIP Security Documents, and all other documents related to the DIP Facility.

68.     "*DIP Order*" means the interim or final order, as applicable, of the Bankruptcy Court authorizing any of the Debtors' entry into any DIP Facility.

69.     "*DIP Required Lenders*" means the "Required Lenders" under and as defined in the DIP Credit Agreement.

70.     "*DIP Security Documents*" means the "Security Documents" under and as defined in the DIP Credit Agreement.

71.     "*Disbursing Agent*" means, as applicable, the Liquidating Trustee, the GUC Administrator, or any other Entity or Entities selected by the Liquidating Trustee, the GUC Administrator, the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, to make or facilitate distributions as contemplated under the Plan.

72.     "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules attached thereto, and as amended, modified, or supplemented from time to time in accordance with the terms thereof.

73.     "*Disclosure Statement Order*" means the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 433] (entered on December 28, 2023).

74.     "*Disputed*" means, with respect to a Claim or Interest, a Claim or Interest, or any portion thereof, that is not yet Allowed or disallowed.

75.     "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to

receive distributions under the Plan, which shall be the later of (a) 30 days after the Effective Date or (b) such other date as designated in a Final Order.

76.    "*Effective Date*" means, with respect to the Plan and any applicable Debtors, the date that is the first Business Day after the Confirmation Date on which all conditions precedent set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

77.    "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

78.    "*Estate*" means, as to each Debtor, the estate created for such Debtor pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

79.    "*Exculpated Party*" means, collectively, and, in each case, solely in their respective capacities as such and solely to the extent they served in such capacity between the Petition Date and the Effective Date:  (a) the Debtors; (b) the Debtors' Professionals; (c) directors and officers of the Debtors who served during the case; (d) the Committee and each member thereof, solely in its capacity as such; and (e) the Committee's Professionals.

80.    "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code, including, without limitation, the Master Lease Agreement.

81.    "*Existing Equity Interests*" means, collectively, all Interests in MVK FarmCo LLC outstanding immediately prior to the Effective Date.

82.    "*Exit Bridge Agent*" means the administrative agent under the Exit Bridge Credit Agreement.

83.    "*Exit Bridge Credit Agreement*" means the definitive credit agreement governing the Exit Bridge Facility, a form of which shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the Bridge Required Lenders.

84.    "*Exit Bridge Facility*" means a credit facility provided for under the Exit Bridge Credit Agreement in the amount of outstanding Bridge New Money Term Loans, after giving effect to the application of any Pre-Effective Date Sale Proceeds applied to the Bridge New Money Term Loans, and with Reorganized PropCo, as borrower, and Post-Effective Date PropCo, as guarantor, which shall be secured as provided in the Plan Supplement.

85.    "*Exit Bridge Lenders*" means the lenders party to the Exit Bridge Credit Agreement.

86.    "*Exit Bridge Facility Term Loans*" means the loans issued under the Exit Bridge Credit Agreement.

87.    "*Exit Credit Agreement*" or "*Exit Credit Agreements*" mean, collectively, the Exit Termed Out DIP Credit Agreement (if any), the Exit Bridge Credit Agreement, and the Exit PropCo Credit Agreement (if any).

88.     "*Exit Facility*" or "*Exit Facilities*" mean, collectively, the Exit Termed Out DIP Facility (if any), the Exit Bridge Facility, and the Exit PropCo Facility (if any).

89.     "*Exit Facility Agent*" or "*Exit Facility Agents*" mean, collectively, the Exit Termed Out DIP Agent (if any), the Exit Bridge Agent, and (if any) the Exit PropCo Agent.

90.     "*Exit Facility Lenders*" means, collectively, the Exit Termed Out DIP Lenders (if any), the Exit Bridge Lenders, and (if any) the Exit PropCo Lenders.

91.     "*Exit Intercreditor Term Sheet*" means that certain term sheet that summarizes selected terms of an intercreditor agreement to be entered into among the Exit PropCo Agent, the Exit Bridge Agent, and the Exit Termed Out DIP Agent setting forth the relative priority of their respective Liens on the assets of Post-Effective Date PropCo and Reorganized PropCo under the Exit PropCo Facility, the Exit Termed Out DIP Facility and the Exit Bridge Facility, as applicable, and other related matters.

92.     "*Exit PropCo Agent*" means the administrative agent under the Exit PropCo Credit Agreement.

93.     "*Exit PropCo Credit Agreement*" means the definitive credit agreement governing the Exit PropCo Facility, to be provided if determined by the PropCo Required Lenders, Reorganized PropCo, and Post-Effective Date PropCo to be in the best interest of Reorganized PropCo and Post-Effective Date PropCo, a form of which shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the PropCo Required Lenders.

94.     "*Exit PropCo Facility*" means any credit facility provided for under the Exit PropCo Credit Agreement and with Reorganized PropCo, as borrower, and Post-Effective Date PropCo, as the guarantor, which shall be secured as provided in the Plan Supplement.

95.     "*Exit PropCo Lenders*" means the lenders party to the Exit PropCo Credit Agreement.

96.     "*Exit Termed Out DIP Agent*" means the administrative agent under the Exit Termed Out DIP Credit Agreement.

97.     "*Exit Termed Out DIP Credit Agreement*" means the definitive credit agreement governing the Exit Termed Out DIP Facility, a form of which shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the DIP Required Lenders.

98.     "*Exit Termed Out DIP Facility*" means a credit facility provided for under the Exit Termed Out DIP Credit Agreement in the amount of outstanding DIP Claims, after giving effect to the application of any Pre-Effective Date Sale Proceeds applied to the DIP Claims, and with Reorganized PropCo, as borrower, and Post-Effective Date PropCo, as guarantor, which shall be secured as provided in the Plan Supplement.

99.     "*Exit Termed Out DIP Lenders*" means the lenders party to the Exit Termed Out DIP Facility.

100. "*Exit Termed Out DIP Facility Term Loans*" means the loans issued under the Exit Termed Out DIP Credit Agreement.

101. "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in the 1961 Judicial Code.

102. "*Fifth Interim Cash Collateral Order*" means *Fifth Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, and 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 456].

103. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice, Claims, and Solicitation Agent or the Bankruptcy Court.

104. "*Final DIP Order*" means that means that certain final order entered by the Bankruptcy Court authorizing, inter alia, the Debtors to enter into the DIP Facility and incur postpetition obligations thereunder, in each case on a final basis.

105. "*Final Order*" means an order of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, that is not stayed, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order could be appealed or from which certiorari could be sought or the new trial, re-argument, or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

106. "*General Unsecured Claim*" means any Claim that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a Priority Claim; (c) an Other Priority Claim; (d) a Secured Claim; (e) an Other Secured Claim; (f) an Intercompany Claim; (g) a Prepetition Loan Claim; (h) a Professional Fee Claim; (i) a Section 510(b) Claim; or (j) a Prepetition Credit Agreement Deficiency Claim.

107. "*General Unsecured Claim Liquidating Trust Distribution*" means any proceeds of the Liquidating Trust Assets in excess of the amounts necessary to satisfy in full: (i) the Wind-Down Debtors' Expenses; (ii) the Post-Effective Date PropCo Liquidating Trust Distribution Amount; (iii) the Bridge OpCo Roll-Up Term Loan Claim Distribution; and (iv) the OpCo Secured Claim Distribution, if any, after giving effect to each of the foregoing.

108. "*General Unsecured Claims Reconciliation Process*" means the reconciliation of General Unsecured Claims, which shall be the responsibility of the GUC Administrator.

109.    "*Gerawan Interested Parties*" means (a) Daniel J. Gerawan, (b) Negocios Libertad LLC, and (c) with respect to (a) and (b), any Affiliates thereof, excluding, for the avoidance of doubt, the Debtors and any other Released Parties.

110.    "*Gerawan Interested Parties' Plan Objection*" means the *Limited Objection and Reservation of Rights of Negocios Libertad LLC and Daniel Gerawan to Confirmation of the Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 535].

111.    "*Gerawan Litigation Claims*" means any and all Claims and Causes of Action held by the Debtors that could be asserted against the Gerawan Interested Parties.

112.    "*Gerawan Settlement Amount*" means $250,000 in Cash, in the aggregate, to be paid or caused to be paid to the Committee Designated Account by Negocios Libertad on behalf of the Gerawan Interested Parties on the Effective Date.

113.    "*Gerawan Settlement Parties*" means the Debtors and the Gerawan Interested Parties.

114.    "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

115.    "*GroupCo*" means MVK Intermediate Holdings LLC.

116.    "*GUC Administrator*" means the Person or Entity, or any successor thereto, selected by the Committee to hold, distribute, and otherwise administer the GUC Trust, to object to, settle, or otherwise reconcile General Unsecured Claims, and to make distributions from the GUC Trust to Holders of Allowed General Unsecured Claims pursuant to this Plan. For the avoidance of doubt, the Liquidating Trustee, and not the GUC Administrator, shall be responsible for reconciling any Claims other than General Unsecured Claims, including, but not limited to, Claims alleging entitlement to treatment under section 503(b)(9) of the Bankruptcy Code.

117.    "*GUC Required Lender Allocation*" means the *pro rata* portion of the Class 7B Distribution Amount allocable to each member of the Required Lender Group on account of their respective Allowed Class 7B Prepetition Credit Agreement Deficiency Claims (including but not limited to amounts payable in respect of additional Allowed Class 7B Prepetition Credit Agreement Deficiency Claims purchased or otherwise acquired by the Required Lenders at any time), which amounts shall be deemed contributed to the GUC Trust by each member of the Required Lender Group solely for the ratable benefit of Holders of Allowed Class 7A General Unsecured Claims so long as Class 7A votes to accept the Plan.

118.    "*GUC Trust*" means the liquidating trust established on the Effective Date in accordance with the Plan to hold and distribute the GUC Trust Assets and otherwise administer General Unsecured Claims.

119.    "*GUC Trust Advisory Committee*" means the committee formed in accordance with Article IV.F.3. herein, which shall be comprised of members of the Committee and/or any other entities appointed by the Committee, and which shall direct the GUC Administrator to carry out its powers in accordance with the Plan and Confirmation Order.

120. "*GUC Trust Agreement*" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the GUC Trust, which shall (a) be drafted by the Committee in consultation with (i) the Debtors and the Required Lender Group, and (ii) the Sponsor, but solely to confirm the terms thereof are not inconsistent with the 9019 Settlement, and (b) be in form and substance reasonably acceptable to (i) the Debtors and the Required Lender Group and (ii) the Sponsor, but solely to confirm the terms thereof are not inconsistent with the 9019 Settlement.

121. "*GUC Trust Assets*" means the Class 7A Distribution Amount and, if applicable, the GUC Required Lender Allocation.

122. "*GUC Trust Fees and Expenses*" means the reasonable and documented fees and expenses incurred on or after the Effective Date by the GUC Trust and any professionals retained by the GUC Administrator in administering the GUC Trust, including, without limitation, the fees and expenses incurred on or after the Effective Date in reconciling, objecting to, and paying General Unsecured Claims.

123. "*GUC Trust Beneficial Interests*" means a non-certified beneficial interest in the GUC Trust granted to each beneficiary of the GUC Trust, which shall entitle such Holder to the treatment set forth in Article III.C.7 of the Plan.

124. "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

125. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

126. "*Insurance Contract*" means any insurance policy that has been issued at any time to or provide coverage to any of the Debtors or their predecessors and any agreements, documents, or instruments relating thereto, including, without limitation, all D&O Liability Insurance Policies, but, for the avoidance of doubt, does not include the 1970 Group Agreement.

127. "*Insurer*" means any company or entity that issued or entered into an Insurance Contract (including any third-party administrator) and/or any respective predecessors and/or affiliates thereof.

128. "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor. For the avoidance of doubt, none of the Post-Petition Rent Entitlement, the OpCo Contribution Amount, or the Post-Effective Date PropCo Assigned Claims shall be considered Intercompany Claims.

129. "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor.

130. "*Interest*" means the common stock, preferred stock, limited liability company interests, equity Security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other Securities or agreements to acquire the common stock (including convertible debt), preferred

stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement).

131.    "*Interim DIP Order*" means one or more interim orders entered by the Bankruptcy Court authorizing, inter alia, any of the Debtors to enter into the DIP Facility and incur postpetition obligations thereunder.

132.    "*Inter-Lender Settlement Term Sheet*" means that certain term sheet by and among the Inter-Lender Settlement Parties.

133.    "*Inter-Lender Settlement Parties*" means the signatories to the Inter-Lender Settlement Term Sheet.

134.    "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

135.    "*Lender Support Agreement*" means that certain support agreement among lenders, made and entered into as of October 12, 2023, by and among the Bridge Lenders signatory thereto, the PropCo Lenders signatory thereto, the OpCo Lenders signatory thereto, the PropCo Agent, the OpCo Agent and the Bridge Agents, including all exhibits thereto, as may be amended, modified, or supplemented from time to time in accordance with its terms, a copy of which was filed with the Bankruptcy Court at [Docket No. 371].

136.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

137.    "*Liquidation Analysis*" means that certain hypothetical liquidation analysis included in the Plan Supplement.

138.    "*Liquidating Trust*" means that liquidating trust established by the Debtors or the Wind-Down Debtors, as applicable, to receive, administer, liquidate, and distribute the proceeds of the Liquidating Trust Assets.

139.    "*Liquidating Trustee*" means the Person or Entity, or any successor thereto, selected by the Debtors in consultation with the Required Lender Group under the Bridge Credit Agreement and the Committee, to have all the powers and authorities set forth in the Plan and the Liquidating Trust Agreement.

140.    "*Liquidating Trust Agreement*" means that certain agreement by and among the Liquidating Trustee and the Wind-Down Debtors, which shall be included in the Plan Supplement.

141.    "*Liquidating Trust Assets*" means any and all Wind-Down Debtors' Assets except for the GUC Trust Assets.

142.    "*Master Lease Agreement*" means that certain Amended and Restated Master Lease Agreement dated as of September 13, 2019, by and among OpCo, Gerawan Farming Partners LLC,

Gerawan Farming LLC, Gerawan Farming Services LLC, GFP LLC, and Gerawan Supply, Inc., as tenants, and PropCo, as landlord.

143.    "*McKinsey*" means McKinsey & Company, Inc. United States.

144.    "*New Organizational Documents*" means the documents providing for corporate governance of Reorganized PropCo and Post-Effective Date PropCo, which shall be in form and substance satisfactory to the PropCo Required Lenders.

145.    "*Notice, Claims, and Solicitation Agent*" means Stretto, Inc., solely in its capacity as notice, claims, and solicitation agent for the Debtors in the Chapter 11 Cases.

146.    "*OpCo*" means Wawona Packing Co. LLC.

147.    "*OpCo Agent*" means RBC in its capacity as administrative agent under the OpCo Credit Agreements.

148.    "*OpCo Collateral*" means all Collateral securing the OpCo Secured Claims.

149.    "*OpCo Contribution Amount*" means an amount to be paid by the Wind-Down Debtors or the Liquidating Trustee to Post-Effective Date PropCo in exchange for the Post-Effective Date PropCo Assigned Claims, equal to the product of (a) 0.20 and (b) the sum of (i) $23,494,304.60 plus (ii) the lesser of (A) the aggregate amount of Borrowings (as defined in the DIP Credit Agreement) made pursuant to the DIP Facility, and (B) $43,000,000, (iii) minus the amount of any payments made by the OpCo Credit Parties on or after March 22, 2024 that are applied to any of the DIP Facility, the Bridge Facility, the Exit Termed Out DIP Facility, and/or the Exit Bridge Facility.

150.    "*OpCo Credit Agreements*" means the OpCo Term Loan Credit Agreement and the OpCo Incremental Credit Agreement.

151.    "*OpCo Credit Parties*" means OpCo, GroupCo, Gerawan Supply, Inc., Gerawan Farming LLC, Gerawan Farming Services LLC, GFP LLC, and Gerawan Farming Partners LLC.

152.    "*OpCo Incremental Credit Agreement*" means that certain incremental revolving credit agreement dated May 26, 2020 (as amended, restated, supplemented, or otherwise modified), by and among GroupCo and OpCo, as borrowers, the OpCo Lenders, and the OpCo Agent.

153.    "*OpCo Lenders*" means the lender parties to the OpCo Credit Agreements.

154.    "*OpCo Loans*" means the outstanding loans issued under the OpCo Credit Agreements.

155.    "*OpCo Required Lenders*" means the Required Lenders under (and as defined in) the OpCo Credit Agreements.

156.    "*OpCo Secured Claim Distribution*" means (a) the amount of any Pre-Effective Date Sale Proceeds remaining after satisfying in full any Allowed Secured Claims with Liens senior to the Liens of the OpCo Secured Claims on such Pre-Effective Date Sale Proceeds and in accordance with the Pre-Effective Date Sale Proceeds Priority, and (b) any proceeds of the Liquidating Trust Assets (including, without limitation, the Residual Assets), in excess of the amounts necessary to satisfy in full: (i) the Wind-Down Debtors' Expenses; (ii) the Post-Effective Date PropCo Liquidating Trust Distribution Amount; and (iii) the Bridge OpCo Roll-Up Term Loan Claim Distribution, if any, after giving effect to each of the foregoing.

157.    "*OpCo Secured Claims*" means Claims arising from or in connection with the OpCo Loans and any adequate protection claims granted on account of OpCo Loans under the Cash Collateral Order or any DIP Order.

158.    "*OpCo Term Loan Credit Agreement*" means that certain term loan credit agreement dated as of September 13, 2019, as amended, restated, supplemented, or otherwise modified from time to time, by and among, inter alia, GroupCo and OpCo as borrowers, the guarantor parties thereto, the OpCo Lenders, and the OpCo Agent.

159.    "*OpCo Wind-Down*" means the wind down, liquidation, and dissolution of each of the Wind-Down Debtors following the Effective Date as set forth in Article IV.E hereof.

160.    "*Ordinary Course Professional*" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with an order of the Bankruptcy Court establishing procedures for the employment of Entities (other than Professionals) in the ordinary course of the Debtors' business.

161.    "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

162.    "*Other Secured Claim*" means any Secured Claim (including secured tax claims) against any of the Debtors, other than the Bridge Secured Claims, the PropCo Secured Claims, and the OpCo Secured Claims.

163.    "*Pending 363 Sale Contract*" means any executory contract for the sale of Debtor assets constituting Collateral of the DIP Agent, the DIP Lenders, any Prepetition Agent, or any of the Prepetition Lenders, which contract has been executed by the applicable Debtor prior to the Effective Date but the sale transaction(s) in respect of which have not been consummated as of the Effective Date.

164.    "*Permitted Transfer*" means a transfer of all or a portion of the assets of the Wind-Down Debtors to the Liquidating Trust in accordance with Article IV.E.3 herein.

165.    "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

166.    "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

167.    "*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified, or supplemented from time to time in accordance with the terms hereof).

168.    "*Plan Settlements*" means the settlements by and among the Settlement Parties (including the settlement set forth in the Inter-Lender Settlement Term Sheet), which settlements are incorporated into the terms of this Plan.

169.    "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed at least seven days prior to the deadline to object to Confirmation of the Plan, as set forth in the Disclosure Statement Order or such later date as may be approved by the Bankruptcy Court, and additional documents or amendments to previously Filed documents, Filed before the Confirmation Date as amendments to the Plan Supplement, or such later date as may be approved by the Bankruptcy Court, including the following, as applicable:  (a) Schedule of Assumed Executory Contracts and Unexpired Leases;  (b) Schedule of Retained Causes of Action; (c)  the Liquidating Trust Agreement; (d) the identity of the Liquidating Trustee; (e) the Exit Bridge Credit Agreement; (f) if applicable, the Exit Termed Out DIP Credit Agreement; (g) if applicable, the Exit PropCo Credit Agreement; (h) the Promissory Note, (i) the New Organizational Documents; (j) the Restructuring Transaction Memorandum; (k) the Liquidation Analysis; (l) the GUC Trust Agreement; (m) the Exit Intercreditor Term Sheet; (n) a list of all claims, including their amounts, to be paid pursuant to section 503(b)(9) of the Bankruptcy Code on the Effective Date; and (o) any other necessary documentation related to the Restructuring Transactions.

170.    "*Post-Effective Date PropCo*" means, as set forth in the Plan Supplement, a newly formed entity that holds 100% of the equity of PropCo.

171.    "*Post-Effective Date PropCo Assigned Claims*" means all Allowed Claims against the OpCo Credit Parties and/or the Wind-Down Debtors, held by the Holders of DIP Claims (solely in their capacities as such) and Bridge New Money Term Loan Claims (solely in their capacities as such), which shall be deemed to be assigned by such Holders to Post-Effective Date PropCo on the Effective Date, and which shall then immediately be deemed transferred by Post-Effective Date PropCo to the Wind-Down Debtors in exchange for the OpCo Contribution Amount automatically.  Such assignment (i) is limited to such Allowed Claims against the OpCo Credit Parties and/or the Wind-Down Debtors which, prior to the Effective Date, are jointly and severally liable with PropCo in respect of the Allowed DIP Claims and the Allowed Bridge New Money Term Loan Claims, (ii) is being given as partial consideration for PropCo repaying the Allowed DIP Claims and the Allowed Bridge New Money Term Loan Claims through the issuance by Reorganized PropCo of the Exit Termed Out DIP Facility and the Exit Bridge Facility without the OpCo Credit Parties, the Wind-Down Debtors, or the Liquidating Trust being co-obligors thereunder, (iii) resolves and settles any contribution claim PropCo, Post-Effective Date PropCo, or Reorganized PropCo may have against the OpCo Credit Parties, the Wind-Down Debtors, or the Liquidating Trust in respect of such repayment, and (iv) shall not reduce the amount of the Exit Termed Out DIP Facility or the Exit Bridge Facility.

172. "*Post-Effective Date PropCo Equity*" means the equity interests in Post-Effective Date PropCo, to be authorized, issued, or reserved on the Effective Date pursuant to the Plan.

173. "*Post-Effective Date PropCo Liquidating Trust Distribution Amount*" means an amount equal to: (a) the sum of (i) the OpCo Contribution Amount and (ii) the Post-Petition Rent Entitlement, less (b) the Consummation Date Crop Value, which net amount is to be received by Post-Effective Date PropCo on a first-priority basis (subject only to the Wind-Down Debtors' Expenses) from the Liquidating Trust.

174. "*Post-Petition Rent Entitlement*" means an amount equal to $8,500,000.00, which shall be deemed to be payable by OpCo to PropCo upon the rejection of the Master Lease Agreement, in settlement of all claims for rejection damages or otherwise thereunder, on the Effective Date.

175. "*Pre-Effective Date Cultural Cost Payments*" means all reimbursable cultural costs received by the Debtors prior to the Effective Date.

176. "*Pre-Effective Date Sale Proceeds*" means the net proceeds (other than Pre-Effective Date Cultural Cost Payments) of any sale of Debtor assets constituting Collateral of the DIP Agent, the DIP Lenders, any Prepetition Agent, or any of the Prepetition Lenders, which contract was executed and the transaction(s) in respect of which consummated during the period commencing February 1, 2024 and ending immediately prior to the Effective Date.

177. "*Pre-Effective Date Sale Proceeds Priority*" means, in respect of any Pre-Effective Date Sale Proceeds, the Lien priority in respect of such Collateral proceeds, as provided in the DIP Order and the Intercreditor Agreements (as defined in the Disclosure Statement).

178. "*Prepetition Agents*" means any of the Bridge Agents, the OpCo Agent, or the PropCo Agent.

179. "*Prepetition Credit Agreement Deficiency Claims*" means the portions of the Bridge OpCo Roll-Up Term Loan Claims and the OpCo Secured Claims that are unsecured pursuant to section 506(a) of the Bankruptcy Code, if any.

180. "*Prepetition Credit Agreements*" means, collectively, the Bridge Credit Agreement, the OpCo Credit Agreements, and the PropCo Credit Agreement.

181. "*Prepetition Lenders*" means, collectively, the Bridge Lenders, the OpCo Lenders, and the PropCo Lenders.

182. "*Prepetition Lender Preserved Claims*" means any and all Causes of Action held by the Required Lender Group against Rabobank, RBC, the Bridge Agents and/or the OpCo Agent arising in connection with any of the following: (a) any breach or violation of the Intercreditor Agreements (as defined in the Disclosure Statement); (b) any breach or violation of the Lender Support Agreement; and (c) any breach or violation of any of the Prepetition Credit Agreements or the related loan documents, including without limitation, any gross negligence or willful misconduct by any such Prepetition Agent in performing (or failing to perform) its obligations thereunder.

183. "*Prepetition Loan Claim*" means any claim by the Prepetition Agents or the Prepetition Lenders under the Prepetition Credit Agreements.

184. "*Priority Claims*" means, collectively, Administrative Claims and Priority Tax Claims.

185. "*Priority Tax Claim*" means any Claim against the Debtors of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

186. "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

187. "*Promissory Note*" means that certain promissory note between Reorganized PropCo and the Bridge Administrative Agent memorializing the obligation of Reorganized PropCo to pay, subject to the terms of the Lender Support Agreement, $30,000,000 to the Bridge Administrative Agent for distribution to the Bridge Lenders in respect of the Bridge OpCo Roll-Up Term Loan Claims and, if applicable, the OpCo Agent for distribution to the OpCo Lenders in respect of the OpCo Secured Claims, the form of which will be included in the Plan Supplement.

188. "*Professional*" means an Entity (other than an Ordinary Course Professional): (a) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

189. "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of this Plan.

190. "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court. To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

191. "*Professional Fee Escrow Account*" means an account funded in Cash by the Debtors or Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust, as applicable, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date in an amount equal to the total Professional Fee Amount.

192. "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

193.    "*Proof of Interest*" means a written proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

194.    "*PropCo*" means (a) Wawona Farm Co. LLC, as a Debtor, and (b) Reorganized PropCo, as context requires.

195.    "*PropCo Agent*" means Wilmington Trust, as successor to Rabobank in its capacity as administrative agent under the PropCo Credit Agreement.

196.    "*PropCo Collateral*" means all Collateral securing the PropCo Secured Claims.

197.    "*PropCo Credit Agreement*" means that certain amended and restated credit agreement dated as of September 13, 2019, as amended, restated, supplemented, or otherwise modified from time to time, by and among, inter alia, PropCo, as borrower, the lender parties thereto, and the PropCo Agent.

198.    "*PropCo Equitization Consideration*" means the Post-Effective Date PropCo Equity distributed to Holders of PropCo Secured Claims as set forth in the Plan and the Plan Supplement in the PropCo Equitization Transaction.

199.    "*PropCo Equitization Transaction*" means the restructuring transaction pursuant to which the PropCo Lenders shall receive equity in Post-Effective Date PropCo pursuant to this Plan.

200.    "*PropCo Lenders*" means the lender parties to the PropCo Credit Agreement.

201.    "*PropCo Loans*" means the outstanding loans issued under the PropCo Credit Agreement.

202.    "*PropCo Required Lenders*" means the Required Lenders under (and as defined in) the PropCo Credit Agreement.

203.    "*PropCo Secured Claims*" means Claims arising from or in connection with the PropCo Loans and any adequate protection claims granted on account of PropCo Loans under the Cash Collateral Order or any DIP Order.

204.    "*Quarterly Fees*" means all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code.

205.    "*Rabobank*" means Coöperatieve Rabobank U.A., New York Branch.

206.    "*RBC*" means Royal Bank of Canada.

207.    "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

208.    "*Related Party*" means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

209.    "*Released Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable; (b) the Liquidating Trustee; (c) the Committee and each of its members; (d) the GUC Administrator; (e) each member of the Required Lender Group; (f) each Bridge Agent; (g) each Bridge Lender; (h) the OpCo Agent; (i) each OpCo Lender; (j) the PropCo Agent; (k) each PropCo Lender; (l) each DIP Agent; (m) each DIP Lender; (n) each Exit Facility Agent; (o) each Exit Facility Lender; (p) the Sponsor; (q) McKinsey; (r) subject to the penultimate sentence of this definition, the Gerawan Interested Parties; (s) each current and former Affiliate of each Entity in clause (a) through the following clause (t); and (t) each Related Party of each Entity in clause (a) through this clause (t), each in their capacity as such (unless any such Entity or Related Party has opted out of the releases contained in Article VIII of the Plan, in which case such Entity or Related Party, as applicable, shall not be a Released Party).  For the avoidance of doubt, each of the Gerawan Interested Parties shall be a Released Party under the Plan so long as the Gerawan Interested Parties honor their obligations in the applicable Plan Settlement to (i) withdraw the Gerawan Interested Parties' Plan Objection, (ii) withdraw any and all discovery requests that have been served on the Debtors, the Sponsor, or any other Settlement Party, (iii) withdraw the Derivative Action, (iv) vote in favor of the Plan; (v) not opt out of the releases contained in Article VIII of the Plan, (vi) use commercially reasonable efforts to support the 9019 Motion and Confirmation of the Plan to the extent the 9019 Motion is heard by the Court, and so long as the Gerawan Settlement Amount is timely paid in full pursuant to the Plan.  Notwithstanding the foregoing, unless (A) Classes 3, 4, and 6 vote to accept the Plan and (B) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan, any and all Prepetition Lender Preserved Claims are expressly reserved and shall not be released hereunder.

210.    "*Releasing Party*" means, collectively, and in each case, solely in their respective capacities as such:  (a) the Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable; (b) the Liquidating Trustee; (c) the GUC Administrator; (d) the Committee and each of its members; (e) each member of the Required Lender Group; (f) the Sponsor; (g) McKinsey; (h) the Gerawan Interested Parties; (i) all Holders of Claims or Interests who vote to accept the Plan; (j) all Holders of Claims or Interests that are deemed to accept the Plan and do not affirmatively opt out of the releases contained in Article VIII by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan or by filing a timely objection to the releases contained in Article VIII with the Bankruptcy Court and such objection is not withdrawn before the Confirmation Hearing; (k) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases contained in

Article VIII of the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan or by filing a timely objection to the releases contained in Article VIII with the Bankruptcy Court and such objection is not withdrawn before the Confirmation Hearing; (l) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases contained in Article VIII of the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan or by filing a timely objection to the releases contained in Article VIII with the Bankruptcy Court and such objection is not withdrawn before the Confirmation Hearing; (m) each current and former Affiliate of each Entity in clause (a) through the following clause (n); and (n) each Related Party of each Entity in clause (a) through this clause (n), each in their capacity as such; provided, however, that a Related Party of an entity in clauses (a) through (n) is a Releasing Party solely to the extent such Related Party would be obligated to grant a release under principles of agency if it were so directed by the Person or Entity in the foregoing clauses (a) through (n) to whom they are related.  Notwithstanding the foregoing, unless (A) Classes 3, 4, and 6 vote to accept the Plan and (B) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan, any and all Prepetition Lender Preserved Claims are expressly reserved and shall not be released hereunder.

211.    "*Reorganized PropCo*" means Wawona Farm Co. LLC on and after the Effective Date.

212.    "*Required Lenders*" means, collectively, the Bridge Required Lenders, the OpCo Required Lenders, and the PropCo Required Lenders.

213.    "*Required Lender Group*" means (a) Metropolitan Life Insurance Company, (b) Compeer Financial, PCA, (c) Compeer Financial, FLCA, (d) AgCountry Farm Credit Services PCA, (e) AgFirst Farm Credit Bank, (f) Farm Credit Bank of Texas, (g) Farm Credit Services of America, PCA, (h) Farm Credit Mid-America, PCA, (i) American AgCredit, PCA, and (j) Greenstone Farm Credit Services, FLCA.  For the avoidance of doubt, the Required Lender Group collectively represents the Required Lenders under the OpCo Credit Agreements, the PropCo Credit Agreement, and the Bridge Credit Agreement.

214.    "*Residual Assets*" means the assets described in Article IV.E.2(c).

215.    "*Restructuring Expenses*" means the reasonable and documented prepetition and postpetition fees and out-of-pocket expenses incurred by each of the following advisors: (a) White & Case LLP, solely in its capacity as counsel to the Bridge Administrative Agent and the Bridge PropCo Collateral Agent, (b) Sidley Austin LLP, solely in its capacity as counsel to the OpCo Agent and the Bridge OpCo Collateral Agent, (c) Morgan Lewis & Bockius LLP, (d) Moore & Van Allen, PLLC, (e) Richards, Layton & Finger, P.A., (f) Robinson & Cole LLP, (g) Burr & Forman LLP, (h) Covington & Burling LLP, (i) Troutman Pepper Hamilton Sanders LLP, (j) FTI Consulting, Inc., and (k) ACM Management Company, LLC to the extent set forth in the letter agreement, dated October 12, 2023, by and among the Agents and ACM Management Company, LLC.

216.    "*Restructuring Transactions*" means the transactions described in Article IV.D and Article IV.E.

217. "*Restructuring Transactions Memorandum*" means the document that sets forth certain steps to be carried out to implement the Restructuring Transactions in accordance with this Plan, which shall be included in the Plan Supplement, and which shall be in form and substance satisfactory to the Required Lender Group.

218. "*Retained Causes of Action*" means those Causes of Action (except for the Waived Avoidance Actions, the Gerawan Litigation Claims, and any Causes of Action that may be asserted against the Sponsor or McKinsey and their Related Parties) that shall vest in Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, on the Effective Date. For the avoidance of doubt, Retained Causes of Action shall not include any Causes of Action that are settled, released, or exculpated under the Plan, whether pursuant to the Plan Settlements or otherwise.

219. "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed, or assumed and assigned, by Reorganized PropCo or the Wind-Down Debtors on behalf of the applicable Debtor pursuant to the Plan.

220. "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action, as the same may be amended, modified, or supplemented from time to time.

221. "*Schedules*" means, collectively, the schedules of assets and liabilities, Schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code [Docket Nos. 198–215].

222. "*Section 510(b) Claim*" means any Claim that is subordinated under section 510(b) of the Bankruptcy Code.

223. "*Secured*" or "*Secured Claim*" means, when referring to a Claim, a Claim that is: (a) secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the value of such right of setoff.

224. "*Securities Act*" means the U.S. Securities Act of 1933.

225. "*Security*" or "*Securities*" has the meaning set forth in section 2(a)(1) of the Securities Act.

226. "*Settlement Parties*" means the (a) 9019 Motion Settlement Parties, (b) Gerawan Settlement Parties, and (c) Inter-Lender Settlement Parties.

227. "*Settlement Releasing Parties*" means the Settlement Parties, on behalf of themselves and their Related Parties. For the avoidance of doubt, (i) the Gerawan Interested Parties shall be considered Settlement Releasing Parties so long as the Gerawan Settlement Amount is timely paid in full pursuant to the Plan, (ii) the Sponsor shall be considered a Settlement Releasing Party so long as the Sponsor Contribution Amount is timely paid in full pursuant to the Plan, and (iii) unless (A) Classes 3, 4, and 6 vote to accept the Plan and (B) neither of the Bridge

Agents nor the OpCo Agent objects to the Confirmation of this Plan, nothing herein shall release any Prepetition Lender Preserved Claim.

228. "*Settlement Stipulation*" means that certain Stipulation of Settlement by and among the 9019 Motion Settlement Parties, which reflects the terms of the 9019 Motion Settlement [Docket No. 542].

229. "*Sponsor*" means, collectively, Paine Schwartz Partners, LLC and Wawona Delaware Holdings, LLC.

230. "*Sponsor Contribution Amount*" means $2,200,000.00 in Cash to be contributed by the Sponsor, payable on the Effective Date to the Committee Designated Account. For tax purposes, the Sponsor Contribution Amount shall be deemed to be (1) first paid by the Sponsor to the Debtors, then (2) distributed in accordance with the tax treatment set forth in Article IV.G(a).

231. "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

232. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

233. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

234. "*Voting Deadline*" means March 20, 2024 at 4:00 p.m. (prevailing Eastern Time) (except as modified by agreement of the Debtors as specified in the *Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates*).

235. "*Waived Avoidance Actions*" means any and all Avoidance Actions.

236. "*Wilmington Trust*" means Wilmington Trust, National Association.

237. "*Wind-Down Debtors*" means each of the OpCo Credit Parties and MVK FarmCo LLC on the Effective Date. For the avoidance of doubt, PropCo shall not be a Wind-Down Debtor.

238. "*Wind-Down Debtors' Assets*" means all of the Debtors' assets, except the assets of PropCo, which shall vest in the Wind-Down Debtors not earlier than one (1) Business Day before such assets are to be transferred to (a) the Liquidating Trust pursuant to this Plan, the Confirmation Order, and the Liquidating Trust Agreement or (b) the GUC Trust pursuant to this Plan, the Confirmation Order, and the GUC Trust Agreement, as applicable. The Wind-Down Debtors' Assets shall include (among other things): (i) the Pre-Effective Date Cultural Cost Payments, (ii) the Consummation Date Crop Value, and (iii) title to all mobile farm equipment (e.g., tractors, trucks, vehicles) held by PropCo, in each case pursuant to the terms of this Plan.

239. "*Wind-Down Debtors' Expenses*" means all actual and necessary costs and expenses incurred by the Wind-Down Debtors or Liquidating Trustee, as applicable, in connection

31481411.1

24

with carrying out the obligations of the Wind-Down Debtors pursuant to the terms of the Plan and the Liquidating Trust Agreement.

B.    *Rules of Interpretation.*

For purposes of this Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified; (iv) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections of the Plan, respectively, hereof or hereto; (v) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (ix) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (x) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xi) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xii) any effectuating provisions may be interpreted by the Debtors, Reorganized PropCo, or the Wind-Down Debtors and Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; (xiii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (xiv) except as otherwise provided in the Plan, any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (xv) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (xvi) on and after the Effective Date, all references to the Debtors in this Plan shall be deemed references to Reorganized PropCo or the Wind-Down Debtors, as applicable.

C.    *Computation of Time.*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a

transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); *provided* that corporate, limited liability company, or partnership governance matters relating to the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor, Post-Effective Date PropCo, Reorganized PropCo, or Wind-Down Debtor, as applicable.

E.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the currency of the United States of America, unless otherwise expressly provided.

F.      *Reference to the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors, to Post-Effective Date PropCo, to Reorganized PropCo, or to the Wind-Down Debtors, means the Debtors, Post-Effective Date PropCo, Reorganized PropCo, and the Wind-Down Debtors, as applicable, to the extent the context requires.

G.      *No Substantive Consolidation; Limited Administrative Consolidation.*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

H.      *Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan, the Disclosure Statement, and the Plan Supplement, the relevant Plan provision shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS,
## PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

A.     *Administrative Claims and Priority Tax Claims.*

Except as otherwise provided in this Article II.A, and except with respect to (i) Administrative Claims that are Professional Fee Claims or subject to section 503(b)(1)(D) of the Bankruptcy Code and (ii) Restructuring Expenses, unless previously Filed, requests for payment of Allowed Administrative Claims must be made no later than the applicable Administrative Claims Bar Date or in compliance with the Bar Date Order. **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date without the need for any objection from Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity.** After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order. Per Local Rule 3002-1, notwithstanding any provision of a plan of reorganization, any motion, notice, or court order in a specific case, the government shall not be required to file any proof of claim or application for allowance for any claims covered by section 503(b)(1)(B), (C), or (D).

Except with respect to (i) Administrative Claims that are Professional Fee Claims and (ii) Restructuring Expenses, and except to the extent that an Administrative Claim has already been paid in full during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim agrees to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash the unpaid portion of its Allowed Administrative Claim on the latest of: (i) the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (ii) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (iii) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable, or with respect to a Holder of a Priority Tax Claim, treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other documents relating to such transactions (and no requests for payment of such Administrative Claims must be Filed or served).

Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

31481411.1

27

B.      *Professional Fee Claims.*

      1.      Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims incurred for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Debtors, Reorganized PropCo, and the Wind-Down Debtors shall be jointly and severally liable to pay the full unpaid amount of such Allowed Administrative Claim in Cash.

      2.      Professional Fee Escrow Account.

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors, the Wind-Down Debtors, the Liquidating Trust, and/or Reorganized PropCo, as applicable, shall establish the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded with Cash by the Debtors or Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates of the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable.  The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by Reorganized PropCo from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the Liquidating Trust, Reorganized PropCo, or the Wind-Down Debtors, as applicable, without any further action or order of the Bankruptcy Court.

      3.      Professional Fee Amount.

The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five Business Days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.  If a Professional does not provide an estimate, the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount estimated as of the Effective Date shall be utilized by the Debtors, Reorganized PropCo, or the Wind-Down Debtors, if applicable, to determine the amount to be funded to the Professional Fee Escrow Account.

4.   <u>Post-Confirmation Date Fees and Expenses</u>.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5.   <u>Substantial Contribution</u>.

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors, the Committee, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Voting Deadline.

C.   *Statutory Fees.*

All Quarterly Fees prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors, Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust, as applicable, shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable.  Within two business days of the Effective Date, Reorganized PropCo, the Wind-Down Debtors, the GUC Trust, or the Liquidating Trustee, as applicable, and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, each of the Wind-Down Debtors, Reorganized PropCo, the GUC Trust, and the Liquidating Trust, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors, Reorganized PropCo, the Wind-Down Debtors, the GUC Trust, and the Liquidating Trust, as applicable, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.  The Debtors, Reorganized PropCo, the Wind-Down Debtors, the GUC Trust, and the Liquidating Trust agree and acknowledge that they are only responsible for fees based on their respective disbursements; *provided*, *however*, that the agreement set forth in the foregoing clause is not binding on the U.S. Trustee.

*D.      Restructuring Expenses*

On the Effective Date, and prior to the consummation of the Equitization Transaction and the transfer of any Liquidating Trust Assets to the Liquidating Trust, the Debtors shall pay in full in Cash any outstanding Restructuring Expenses without the requirement for the filing of retention applications, fee applications, Proofs of Claim, or any other applications in the Chapter 11 Cases and without any requirement for further notice or Bankruptcy Court review or approval. Such Restructuring Expenses shall be Allowed as Administrative Claims upon incurrence and shall not be subject to any offset, defense, counterclaim, reduction, or credit.

*E.      DIP Claims*

Prior to the Effective Date, any Pre-Effective Date Sale Proceeds realized by any Debtor shall be applied to the DIP Claims in accordance with the Pre-Effective Date Sale Proceeds Priority until such time as the DIP Claims are paid in full. As of the Effective Date, to the extent any DIP Claims remain outstanding, all such DIP Claims shall be deemed Allowed in an amount equal to: (i) the principal amount outstanding under any DIP Facility on such date; (ii) all accrued and unpaid interest thereon to the Effective Date, if any; (iii) all accrued and unpaid fees, expenses, and noncontingent indemnification obligations payable under the DIP Credit Agreement and the DIP Order, if any; and (iv) any other obligations under any DIP Credit Agreement, other than any contingent obligations for which no claim has been made. Each Holder of an Allowed DIP Claim has agreed to exchange such Allowed DIP Claim for a Pro Rata share of the Exit Termed Out DIP Facility.

In addition, all Post-Effective Date PropCo Assigned Claims held by each Holder of an Allowed DIP Claim on the Effective Date shall be deemed assigned to Post-Effective Date PropCo by each Holder of an Allowed DIP Claim on the Effective Date. Post-Effective Date PropCo will then immediately be deemed to transfer the Post-Effective Date PropCo Assigned Claims to the Wind-Down Debtors in exchange for the OpCo Contribution Amount. Upon such transfer to the Wind-Down Debtors, the Post-Effective Date PropCo Assigned Claims will be deemed immediately discharged, cancelled, released, and extinguished.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

*A.      Classification of Claims and Interests.*

Except for the Claims addressed in Article II of the Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise settled prior to the Effective Date.

31481411.1

B.    *Summary of Classification.*

A summary of the classification of Claims against and Interests in each Debtor pursuant to the Plan is set forth in the following chart.  This Plan constitutes a separate chapter 11 plan for each Debtor, and accordingly, the classification of Claims and Interests set forth below applies separately to each of the Debtors.  Except for the Claims addressed in Article II (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors.  In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, and Professional Fee Claims as described in Article II.  Certain of the Debtors may not have Holders of Claims or Interests in a particular Class or Classes, and such Claims or Interests shall be treated as set forth in Article III.E hereof.

| Class | Claim or Interest | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Bridge New Money Term Loan Claims | Impaired | Entitled to Vote |
| 4 | Bridge OpCo Roll-Up Term Loan Claims | Impaired | Entitled to Vote |
| 5 | PropCo Secured Claims | Impaired | Entitled to Vote |
| 6 | OpCo Secured Claims | Impaired | Entitled to Vote |
| 7A | General Unsecured Claims | Impaired | Entitled to Vote |
| 7B | Prepetition Credit Agreement Deficiency Claims | Impaired | Entitled to Vote |
| 8 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 10 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

C.    *Treatment of Claims and Interests.*

Except to the extent that the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, and a Holder of an Allowed Claim or Allowed Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of and in exchange for such Holder's Allowed Claim or Allowed Interest.  Unless otherwise indicated, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of (i) the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, and (ii) the date on which such Holder's Claim or Interest becomes Allowed.  In no event shall any Holder of a Claim receive more than such Holder's Allowed amount on account of such Claim.

1.  Class 1 – Other Secured Claims

    (a)  *Classification*:  Class 1 consists of all Other Secured Claims.

    (b)  *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor, Reorganized PropCo, or Wind-Down Debtor:

        (i)   payment in full in Cash;

        (ii)  Reinstatement of such Claim; or

        (iii) other treatment rendering such Claim Unimpaired.

    (c)  *Voting*:  Class 1 is Unimpaired.  Each Holder of a Class 1 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of a Class 1 Other Secured Claim is not entitled to vote to accept or reject the Plan.

2.  Class 2 – Other Priority Claims

    (a)  *Classification*:  Class 2 consists of all Other Priority Claims.

    (b)  *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor, Reorganized PropCo, or Wind-Down Debtor.

        (i)   payment in full in Cash;

        (ii)  Reinstatement of such Claim; or

        (iii) such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

    (c)  *Voting*:  Class 2 is Unimpaired.  Each Holder of a Class 2 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of a Class 2 Other Priority Claim is not entitled to vote to accept or reject the Plan.

3.  Class 3 – Bridge New Money Term Loan Claims

    (a)  *Classification*:  Class 3 consists of the Bridge New Money Term Loan Claims.

    (b)  *Allowance*:  On the Effective Date, the Bridge New Money Term Loan Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the Bridge Credit Agreement as of the

Effective Date plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date.

(c)     *Treatment*:  Each Holder of a Bridge New Money Term Loan Claim shall receive:

   (i)     its *Pro Rata* share of any Pre-Effective Date Sale Proceeds remaining after satisfying in full any Allowed Secured Claims with Liens senior to the Liens of the Bridge New Money Term Loan Claims on such Pre-Effective Date Sale Proceeds and in accordance with the Pre-Effective Date Sale Proceeds Priority; and

   (ii)    its *Pro Rata* share of the Exit Bridge Facility Term Loans in an aggregate amount equal to all Bridge New Money Term Loan Claims outstanding as of the Effective Date (after giving effect to any Pre-Effective Date Sale Proceeds applied to the Bridge New Money Term Loan Claims pursuant to the immediately foregoing clause (c)(i)).

   In addition, all Post-Effective Date PropCo Assigned Claims held by such Holder on the Effective Date shall be deemed assigned to Post-Effective Date PropCo by such Holder on the Effective Date.  Post-Effective Date PropCo will then immediately be deemed to transfer the Post-Effective Date PropCo Assigned Claims to the Wind-Down Debtors in exchange for the OpCo Contribution Amount.  Upon such transfer to the Wind-Down Debtors, the Post-Effective Date PropCo Assigned Claims will be deemed immediately discharged, cancelled, released, and extinguished.

(d)     *Voting*: Class 3 is Impaired.  Holders of Bridge New Money Term Loan Claims are entitled to vote to accept or reject the Plan.

4.   <u>Class 4 – Bridge OpCo Roll-Up Term Loan Claims</u>

(a)     *Classification*:  Class 4 consists of the Bridge OpCo Roll-Up Term Loan Claims.

(b)     *Allowance*:  On the Effective Date, the Bridge OpCo Roll-Up Term Loan Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the Bridge Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date, solely to the extent constituting a Secured Claim.

(c)     *Treatment*:  Each Holder of a Bridge OpCo Roll-Up Term Loan Claim shall receive:

31481411.1

(i)    its *Pro Rata* share of the Bridge OpCo Roll-Up Term Loan Claim Distribution up to the amount of such Holder's Bridge OpCo Roll-Up Term Loan Claim,

(ii)    so long as the Lender Support Agreement remains in effect, and subject to the terms and conditions of the Lender Support Agreement, and only so long as Class 4 and Class 6 have voted to accept this Plan, its *Pro Rata* share of the proceeds of the Promissory Note, payable in accordance with the priorities, timeline, and other terms contained therein, and

(d)    *Voting*:  Class 4 is Impaired.  Holders of Bridge OpCo Roll-Up Term Loan Claims are entitled to vote to accept or reject the Plan.

5.   Class 5 – PropCo Secured Claims

(a)    *Classification*:  Class 5 consists of the PropCo Secured Claims.

(b)    *Allowance*:  On the Effective Date, the PropCo Secured Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the PropCo Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date.

(c)    *Treatment*:  Each Holder of a PropCo Secured Claim shall receive

(i)    its *Pro Rata* share of any Pre-Effective Date Sale Proceeds remaining after satisfying in full any Allowed Secured Claims with Liens senior to the Liens of the PropCo Secured Claims on such Pre-Effective Date Sale Proceeds and in accordance with the Pre-Effective Date Sale Proceeds Priority; and

(ii)    its *Pro Rata* share of PropCo Equitization Consideration.

(d)    *Voting*:  Class 5 is Impaired.  Holders of PropCo Secured Claims are entitled to vote to accept or reject the Plan.

6.   Class 6 – OpCo Secured Claims

(a)    *Classification*:  Class 6 consists of the OpCo Secured Claims.

(b)    *Allowance*:  On the Effective Date, the OpCo Secured Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the OpCo Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date, solely to the extent constituting a Secured Claim.

31481411.1

(c)     *Treatment*:  Each Holder of an OpCo Secured Claim shall receive:

(i)     its *Pro Rata* share of the OpCo Secured Claim Distribution up to the Allowed amount of such Holder's OpCo Secured Claim,

(ii)    so long as the Lender Support Agreement remains in effect, and subject to the terms and conditions of the Lender Support Agreement, and only so long as Class 4 and Class 6 have voted to accept this Plan, its *Pro Rata* share of the proceeds of the Promissory Note, payable in accordance with the priorities, timeline, and other terms contained therein, and

(d)     *Voting*:  Class 6 is Impaired.  Holders of OpCo Secured Claims are entitled to vote to accept or reject the Plan.

7.   Class 7A – General Unsecured Claims

(a)     *Classification*:  Class 7A consists of the General Unsecured Claims.  For the avoidance of doubt, Prepetition Credit Agreement Deficiency Claims are not included in Class 7A.

(b)     *Treatment*:  Each Holder of an Allowed General Unsecured Claim shall receive its *Pro Rata* share of the GUC Trust Beneficial Interests entitling such Holder to (in the aggregate, up to the Allowed amount of such Holder's General Unsecured Claim) its *Pro Rata* share of the following, after the costs incurred by the GUC Administrator in the administration of the GUC Trust:

(i)     the General Unsecured Claim Liquidating Trust Distribution, if any,

(ii)    the Class 7A Distribution Amount, and

(iii)   if Class 7A votes to accept the Plan, the GUC Required Lender Allocation.

(c)     *Voting*:  Class 7A is Impaired.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

8.   Class 7B – Prepetition Credit Agreement Deficiency Claims

(a)     *Classification*:  Class 7B consists of any Prepetition Credit Agreement Deficiency Claims.

(b)     *Treatment*:  Subject to the GUC Required Lender Allocation (if applicable), each Holder of a Prepetition Credit Agreement Deficiency Claim shall receive its *Pro Rata* share of the Class 7B Distribution Amount.

31481411.1

    (c)    *Voting*: Class 7B is Impaired.  Holders of Prepetition Credit Agreement Deficiency Claims are entitled to vote to accept or reject the Plan.

9.   Class 8 – Intercompany Claims

    (a)    *Classification*:  Class 8 consists of all Intercompany Claims.

    (b)    *Treatment*:  Each Allowed Intercompany Claim shall be cancelled and released, and no distributions shall be made on account of any Intercompany Claims.

    (c)    *Voting*:  Holders of Allowed Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

10.  Class 9 – Intercompany Interests

    (a)    *Classification*:  Class 9 consists of all Intercompany Interests.

    (b)    *Treatment*:  Each Intercompany Interest shall be Reinstated, distributed, contributed, set off, settled, cancelled, and released, or otherwise addressed at the option of Reorganized PropCo or the Wind-Down Debtors, as applicable, and as set forth in the Restructuring Transactions Memorandum.

    (c)    *Voting*:  Holders of Allowed Intercompany Interests conclusively presumed to have accepted the Plan pursuant section 1126(f) or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

11.  Class 10 – Existing Equity Interests

    (a)    *Classification*:  Class 10 consists of all Existing Equity Interests.

    (b)    *Treatment*:  On the Effective Date, and without the need for any further corporate or limited liability company action or approval of any board of directors, board of managers, members, shareholders or officers of any Debtor, Reorganized PropCo, or any Wind-Down Debtor, as applicable, all Existing Equity Interests shall be cancelled, released, and extinguished without any distribution, and will be of no further force or effect, and each Holder of an Existing Equity Interest shall not receive or retain any distribution, property, or other value on account of such Existing Equity Interest.

    (c)    *Voting*:  Class 10 is Impaired.  Holders of Existing Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the

Bankruptcy Code. Therefore, Holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

12. Class 11 – Section 510(b) Claims

(a)    *Classification*: Class 11 consists of all Section 510(b) Claims.

(b)    *Treatment*: On the Effective Date, all Section 510(b) Claims shall be discharged, cancelled, released, and extinguished and each Holder of a Section 510(b) Claim shall not receive or retain any distribution, property, or other value on account of its Section 510(b) Claim.

(c)    *Voting*: Class 11 is Impaired. Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

D.    *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

E.    *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.    *Voting Classes; Presumed Acceptance by Non-Voting Classes.*

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

G.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims. The Debtors reserve the right to modify the Plan in accordance with Article X to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or

Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.    *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

I.    *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

J.    *Intercompany Interests.*

To the extent Reinstated under the Plan, the Intercompany Interests shall be Reinstated for the ultimate benefit of the holders of Post-Effective Date PropCo Equity and/or in exchange for the Debtors', Reorganized PropCo's, and Liquidating Trustee's (as applicable) agreement under the Plan to make certain distributions to the Holders of Allowed Claims.  Distributions on account of the Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure.  For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall be owned by Post-Effective Date PropCo, Reorganized PropCo, or the same Wind-Down Debtor that corresponds with the Debtor that owned such Intercompany Interests prior to the Effective Date, in each case, unless otherwise set forth in the Restructuring Transactions Memorandum.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests.*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan.  All distributions made to Holders of Allowed Claims and Allowed Interests, as applicable, in any Class, are intended to be and shall be final.

31481411.1

B.      *Plan Settlements.*

Each of the Settlement Parties agreed to the terms of the applicable Plan Settlements to be implemented through this Plan and to be approved by the Bankruptcy Court in connection with confirmation thereof.  The Plan incorporates and implements the Plan Settlements, a good-faith compromise and settlement of numerous issues and disputes between and among the Settlement Parties.  The Plan Settlements are designed to achieve a reasonable and effective resolution of the Chapter 11 Cases.  Except as otherwise expressly set forth herein or in the Confirmation Order, the Plan Settlements constitute a settlement of all potential issues and claims between and among the Settlement Parties.

Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, the Settlement Parties have agreed to the terms of the Plan Settlements, which provide for, among other things: (a) Cash contributions and claims waivers that fund and maximize creditor recoveries hereunder, (b) establishment of the GUC Trust and appointment of a GUC Administrator, (c) the waiver of any and all Waived Avoidance Actions, and (d) support for Confirmation, all as described in more detail in the Plan, in exchange for the releases and other consideration set forth herein.  Confirmation shall be deemed approval of the Plan Settlements (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors, Post-Effective Date PropCo, or the Wind-Down Debtors in connection therewith), to the extent not approved by the Bankruptcy Court previously, and the Debtors, Post-Effective Date PropCo, or the Wind-Down Debtors are authorized to execute and deliver any and all documents necessary or appropriate to consummate the Plan Settlements, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all Claims, Interests, and controversies of the Settlement Parties pursuant to Bankruptcy Rule 9019 as and to the extent provided herein, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates.

1.  GUC Trust.

The GUC Trust shall be established on the Effective Date and distribute the GUC Trust Assets and otherwise administer General Unsecured Claims.  The GUC Trust Agreement establishing and delineating the terms and conditions for the creation and operation of the GUC Trust shall: (a) be drafted by the Committee in consultation with the (i) Debtors and the Required Lender Group, and (ii) the Sponsor, but solely to confirm the terms thereof are not inconsistent with the Plan Settlements; (b) be included in an amendment to the Plan Supplement; (c) provide for the appointment of the GUC Administrator who shall be selected by the Committee; and (d) be in form and substance reasonably acceptable to (i) the Debtors and the Required Lender Group and (ii) the Sponsor, but solely to confirm the terms thereof are not inconsistent with the Plan Settlements.  On the Effective Date, the Debtors, Post-Effective Date PropCo, or the Wind-Down Debtors, as applicable, shall transfer to the GUC Trust the GUC Trust Assets.

2.  <u>The Sponsor Contribution Amount</u>.

The Sponsor shall contribute the Sponsor Contribution Amount, payable to the Committee Designated Account on the Effective Date.

On the Effective Date, other than with respect to their obligations under the Plan Settlements and the Plan, each of the Settlement Releasing Parties shall be deemed to have forever released, waived, and discharged each of the other Settlement Releasing Parties from any and all claims and/or remedies that could be asserted by a Settlement Releasing Party against a Settlement Releasing Party, including without limitation, such claims and/or remedies that are actions, Causes of Action, lawsuits, suits, claims, counterclaims, cross-claims, liabilities, interests, judgments, obligations, rights, demands, debts, damages, losses, grievances, promises, remedies, liens, attachments, garnishments, prejudgment and post-judgment interest, costs and expenses (including attorneys' fees and costs incurred or to be incurred), including unknown claims to the maximum extent allowed under the law, whether pled or unpled, identified or unidentified, fixed or contingent, choate or inchoate, matured or unmatured, foreseen or unforeseen, accrued or unaccrued, past, present or future for fraudulent transfer, fraudulent conveyance, preference, turnover, breach of fiduciary duty, negligence, gross negligence, mismanagement, civil conspiracy, aiding and abetting, unjust enrichment, constructive trust, equitable subordination, equitable disallowance, agency, joint venture, alter ego, corporate veil piercing, usurpation of corporate opportunity, successor liability, breach of contract, fraud, intentional, reckless or negligent misrepresentation, contribution, indemnify, and all other such claims and/or remedies including, for the avoidance of doubt, the Derivative Action, all to the extent such claims and/or remedies are based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Settlement Releasing Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Plan Settlements, the Settlement Stipulation, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Settlement Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlements, or the Settlement Stipulation, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Settlement Releasing Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing; provided, notwithstanding the foregoing or anything to the contrary in this Plan, no Prepetition Lender Preserved Claim is released unless (i) Classes 3, 4, and 6 vote to accept the

Plan for each Debtor and (ii) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan.

Effective as of the Effective Date, the Sponsor waives any and all claims against the Debtors, whether or not heretofore asserted, and consents to the disallowance and expungement through the Confirmation Order of all claims it has asserted against the Debtors.  For the avoidance of doubt, any potential claims held by the Sponsor against the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors (but not against any other third party) for indemnification or contribution pursuant to an Executory Contract which is assumed pursuant to and subject to Article V.G hereof are not waived.  For the avoidance of doubt, the preceding sentence does not alter nor modify Article V.G hereof.

The 9019 Settlement constitutes a final settlement pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code of alleged Claims and Causes of Action against the Sponsor.

Notwithstanding anything to the contrary, the Plan Supplement shall be deemed modified to remove any and all claims and causes of action of the Debtors and their estates that may be asserted against the Sponsor, McKinsey, or the Gerawan Interested Parties and their respective Related Parties (as defined in the Plan).

3. <u>Gerawan Litigation Claims.</u>

This Plan constitutes a settlement of the Gerawan Litigation Claims pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code.  Upon the Effective Date, each of the Gerawan Interested Parties shall be deemed to have irrevocably waived, released, and settled any and all claims against the Debtors, and all proofs of claim filed by each of the Gerawan Interested Parties shall be deemed disallowed and expunged.  For the avoidance of doubt, any potential claims held by the Gerawan Interested Parties against the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors (but not against any other third party) for indemnification or contribution pursuant to an Executory Contract which is assumed pursuant to and subject to Article V.G hereof are not waived.  For the avoidance of doubt, the preceding sentence does not alter nor modify Article V.G hereof.  On the Effective Date, Negocios Libertad, on behalf of the Gerawan Interested Parties, shall pay or cause to be paid the Gerawan Settlement Amount by wire transfer to the Committee Designated Account.  In exchange for and subject to timely payment in full of the Gerawan Settlement Amount, the Gerawan Litigation Claims shall be deemed settled, waived, and released, and each of the Gerawan Interested Parties shall be a Released Party and a Releasing Party.  In further consideration for each of the Gerawan Interested Parties constituting a Released Party and a Releasing Party, the Gerawan Interested Parties agree to: (a) withdraw the Gerawan Interested Parties' Plan Objection; (b) withdraw any and all discovery requests that have served on the Debtors, the Sponsor, or any other Settlement Party; (c) withdraw the Derivative Action; (d) vote in favor of the Plan; (e) not opt out of the releases contained in Article VIII of the Plan; and (f) use commercially reasonable efforts to support the 9019 Motion, to the extent the 9019 Motion is heard by the Court, and Confirmation of the Plan. For the avoidance of doubt, if any of the Gerawan Interested Parties fail to do any of the foregoing (a) through (f), then none of the Gerawan Interested Parties will be Released Parties under the Plan

or receive the release provided by the other Settlement Releasing Parties pursuant to Article IV.B.2 of the Plan.

### 4. Class 7B Distribution; General Unsecured Claims Recovery.

The Class 7 Distribution Amount shall be held in the Committee Designated Account until the Allowed amounts of all Class 7A General Unsecured Claims have been determined. At that time, the Class 7 Distribution Amount shall be allocated *Pro Rata* between (a) the Class 7A Distribution Amount, which shall be released to the GUC Trust for the ratable benefit of Holders of Allowed Class 7A General Unsecured Claims, and (b) the Class 7B Distribution Amount, which shall be released *Pro Rata* to the Holders of Allowed Class 7B Prepetition Credit Agreement Deficiency Claims (subject to the GUC Required Lender Allocation). If Class 7A votes to accept the Plan, the GUC Required Lender Allocation shall be released to the GUC Trust for the ratable benefit of Holders of Allowed Class 7A General Unsecured Claims instead of to the Required Lenders.

On the Effective Date or as soon thereafter as its General Unsecured Claim becomes Allowed, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Trust Beneficial Interests. The GUC Trust Beneficial Interests shall be reserved for the sole and exclusive purpose of (i) satisfying Allowed General Unsecured Claims in accordance with the Plan, which Allowed General Unsecured Claims against each of the Debtors shall be consolidated for purposes of allowance and distribution but shall not include any intercompany claims or claims by Prepetition Lenders, and (ii) paying the expenses of administering the GUC Trust (including but not limited to fees and expenses incurred on and after the Effective Date in reconciling, objecting to, and paying General Unsecured Claims).

For the avoidance of doubt, (a) no Prepetition Lender and (b) no intercompany claims of any Debtors, will share in the Class 7A Distribution Amount.

### 5. Master Lease Agreement.

On the Effective Date, the Master Lease Agreement shall be deemed rejected by each of OpCo and PropCo. OpCo and PropCo, as applicable, shall fully and irrevocably waive any rejection damages claims that they may hold arising from or in connection with the rejection damages claims on account of the rejection of the Master Lease Agreement other than the Post-Petition Rent Entitlement. On the Effective Date, as a settlement for any claims or causes of action related to the Master Lease Agreement: (a) the Post-Petition Rent Entitlement shall be deemed to be assigned by Reorganized PropCo to Post-Effective Date PropCo; (b) all mobile farm equipment owned by PropCo shall be deemed to have been transferred to OpCo for no additional consideration free and clear of any interest in such mobile farm equipment (and shall be included in the Liquidating Trust Assets); and (c) Reorganized PropCo will be deemed to have purchased from the OpCo Credit Parties any and all interest of the OpCo Credit Parties in and to trees and crops located on any real property owned by PropCo, including without limitation any and all rights to reimbursement in respect of cultural costs from any purchaser or lessee of such real property, in exchange for payment to the OpCo Credit Parties of the Consummation Date Crop Value, and such sale shall be free and clear of any Lien, encumbrance, or other interest in such trees and crops other than the Liens thereon securing the Exit Facilities in accordance with the

terms thereof. For the avoidance of doubt, any lien on the foregoing transferred assets securing any obligation in respect of the Prepetition Credit Agreements or the DIP Credit Agreement shall be deemed released upon such transfer. The Wind-Down Debtors, the Liquidating Trustee, Reorganized PropCo, and/or Post-Effective Date PropCo, as applicable, shall, and shall be authorized to, execute such documents or take such other action as may be reasonably necessary to evidence the foregoing transactions. The Debtors will share with the Agents and the Required Lender Group the projected Pre-Effective Date Cultural Cost Payments and Consummation Date Crop Value three business days prior to the Effective Date.

6. <u>McKinsey Waiver and Release</u>.

On the Effective Date, McKinsey will irrevocably waive and release any and all claims against the Debtors' estates and consents to the disallowance and expungement through the Confirmation Order of all claims it has asserted against the Debtors. In exchange for the foregoing, McKinsey is a "Released Party" and will receive the releases contained in Articles IV and VIII of the Plan.

7. <u>Reserved</u>.

8. <u>Plan Support</u>.

The Settlement Parties agree to use commercially reasonable efforts to support the Debtors' pursuit of entry of an order approving the Plan Settlements and confirmation of the Plan and shall not object to or otherwise hinder or delay the Debtors' efforts to consummate the terms thereof.

To the extent entitled to vote with respect to the Plan, the Settlement Parties and the individual members of the Committee shall vote in favor of the Plan. The Settlement Parties and the individual members of the Committee shall <u>not</u> opt out of the releases contained in Article VIII of the Plan and, to the extent any Settlement Party or individual member of the Committee has heretofore submitted an opt-out election, the Plan will deem such election withdrawn.

The Committee agrees it will (i) not directly or indirectly oppose any attempt by the Debtors to shorten the notice or objection period with respect to a hearing on confirmation of the Plan or the Plan Settlements, (ii) solely to the extent consistent with the Committee's fiduciary duties, not oppose any motions or other pleadings filed by the Debtors in the chapter 11 cases, so long as such motion or pleading is not inconsistent with and does not derogate from the Plan Settlements and does not otherwise materially affect the rights of the Holders of General Unsecured Claims, and (iii) recommend (via written support letter distributed by the Debtors to all Holders of General Unsecured Claims) that unsecured creditors vote to accept the Plan.

The Settlement Parties agree to take all reasonable actions to support any motions to extend the exclusive periods for filing and soliciting a chapter 11 plan, to the extent required. So long as each of the Settlement Parties are not in default of their obligations under the Plan Settlements, the Settlement Parties will not (i) file any motion to convert or dismiss the Debtors' chapter 11 cases; *provided* that the Required Lender Group shall be permitted to file a motion to convert or dismiss the Chapter 11 Case of any Debtor for which the Plan is not Confirmed at the Confirmation hearing

or (ii) file any motion to appoint a trustee or an examiner in the Debtors' chapter 11 cases, and the Settlement Parties agree not to support any such motions filed by any other party in interest.

Each Settlement Party agrees to use commercially reasonable efforts to support entry of the Confirmation Order and, to the extent the 9019 Motion is heard by the Court, the 9019 Order, including Bankruptcy Court approval of the Plan Settlements.

C.    *Deemed Consolidation of Class 7A.*

Pursuant to the Plan Settlements and limited solely for the purposes of Holders of Allowed General Unsecured Claims receiving distributions from the GUC Trust under the Plan Settlements, (a) all General Unsecured Claims against all of the Debtors shall be deemed General Unsecured Claims against Debtor Wawona Farm Co. LLC, (b) all guarantees or responsibility of one Debtor for the obligations of any other Debtor shall be deemed eliminated, and all guarantees or responsibility executed by multiple Debtors for the obligations of any other Entity shall be deemed consolidated into a single obligation, and (c) solely for purposes of distribution from the GUC Trust and no other purpose, each General Unsecured Claim Filed or to be Filed in the Chapter 11 Case of any Debtor shall be deemed Filed against, and shall be a single obligation of, Debtor Wawona Farm Co. LLC with respect to any distribution from the GUC Trust to the Holder of such General Unsecured Claim.

D.    *PropCo Equitization Transaction.*

On or before the Effective Date, the Debtors, Post-Effective Date PropCo or Reorganized PropCo, as applicable, shall take all applicable actions set forth in the Restructuring Transactions Memorandum and may take any additional action as may be necessary or appropriate to effectuate the PropCo Equitization Transaction, and any transaction described in, approved by, contemplated by, or necessary to effectuate the PropCo Equitization Transaction that are consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Transactions Memorandum, which transactions may include, as applicable: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Transactions Memorandum and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Transactions Memorandum and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other certificates or documentation pursuant to applicable law; (d) the issuance of Post-Effective Date PropCo Equity; (e) the execution and delivery of the Promissory Note; (f) the execution and delivery of the New Organizational Documents of Post-Effective Date PropCo and Reorganized PropCo; (g) the execution and delivery of the Exit Facilities; and (h) all other actions that Post-Effective Date PropCo or Reorganized PropCo, as applicable, determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan. All Holders of Claims and Interests receiving distributions pursuant to

31481411.1

the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors, with the consent of the Required Lender Group, determine are necessary or advisable to effectuate the provisions and intent of the Plan.

The Debtors, the Bridge Agents, the OpCo Agent, the PropCo Agent, and the Required Lender Group shall cooperate in good faith to structure and implement the Restructuring Transactions in a tax efficient manner reasonably acceptable to each such party.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.  The Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

    1.    <u>Sources of Consideration for Plan Distributions Under the PropCo Equitization Transaction; Exit Facilities</u>.

The Debtors shall fund distributions under the Plan pursuant to the PropCo Equitization Transaction, as applicable, with (1) the issuance of the Post-Effective Date PropCo Equity and (2) the issuance of the Exit Facilities.  Each distribution and issuance referred to in Article IV of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

On the Effective Date, GroupCo shall contribute 100% of the equity of PropCo to Post-Effective Date PropCo, and Post-Effective Date PropCo shall then issue the Post-Effective Date PropCo Equity pursuant to the Plan.  The issuance of the Post-Effective Date PropCo Equity by Post-Effective Date PropCo shall be authorized without the need for any further corporate or other action by the Debtors or Post-Effective Date PropCo or by Holders of any Claims or Interests.

All of the shares (or comparable units) of Post-Effective Date PropCo Equity issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non-assessable and not to have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law.  Each distribution and issuance of Post-Effective Date PropCo Equity shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than Post-Effective Date PropCo.  Any Entity's acceptance of Post-Effective Date PropCo Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms.  The Post-Effective Date PropCo Equity will not be registered under the Securities Act or

listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the Depository Trust Company.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the Post-Effective Date PropCo Equity in respect of eligible Allowed Claims pursuant to the Plan shall be exempt from, among other things, the registration and/or prospectus delivery requirements of section 5 of the Securities Act and any other applicable federal, state, local or other law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, or sale of Securities. Such Post-Effective Date PropCo Equity, (a) will not constitute "restricted securities" as defined in rule 144(a)(3) under the Securities Act and (b) will be freely tradable and transferable in the United States by each recipient thereof that (i) is an entity that is not an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code, (ii) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (iii) has not been such an "affiliate" within 90 days of the time of the transfer, and (iv) has not acquired such securities from an "affiliate" within one year of the time of transfer. Notwithstanding the foregoing, such Post-Effective Date PropCo Equity shall remain subject to compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Post-Effective Date PropCo Equity and subject to any restrictions in the New Organizational Documents.

Confirmation of the Plan shall be deemed approval of (a) the Exit Credit Agreements and all related loan documents, and (b) all transactions contemplated thereby, and all actions to be taken and undertakings to be made, and obligations to be incurred by Post-Effective Date PropCo and Reorganized PropCo, as applicable, in connection therewith, including the payment of all fees, indemnities, expenses and other payments provided for therein and authorization of Post-Effective Date PropCo and Reorganized PropCo, as applicable, to enter into and execute such Exit Credit Agreements and such other documents as may be required to effectuate any Exit Facility.

On the Effective Date, all of the liens and security interests to be granted in accordance with any Exit Credit Agreement, and all related loan documents, in each case, as applicable: (a) shall be deemed to be granted; (b) shall be legal, binding and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of such Exit Credit Agreement and all related loan documents, in each case as applicable; (c) shall be deemed automatically perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Credit Agreements, in each case, as applicable; and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

2. <u>New Organizational Documents</u>.

On the Effective Date, the New Organizational Documents shall be automatically adopted by Post-Effective Date PropCo and Reorganized PropCo, as applicable. To the extent required under the Plan or applicable non-bankruptcy law, Post-Effective Date PropCo and Reorganized PropCo will file their respective New Organizational Documents with the applicable authorities in its respective jurisdiction of organization. The New Organizational Documents will prohibit the

issuance of non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or after the Effective Date, Post-Effective Date PropCo and Reorganized PropCo may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and Post-Effective Date PropCo and Reorganized PropCo may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of their respective jurisdictions of incorporation or formation and the New Organizational Documents.

### 3. Directors and Officers of Post-Effective Date PropCo and Reorganized PropCo.

As of the Effective Date, the terms of the existing board of directors or managers, as applicable, of PropCo shall expire and the new directors and officers of Post-Effective Date PropCo shall be appointed by the applicable Required Lenders.  Corporate governance for Post-Effective Date PropCo and Reorganized PropCo, including their respective charters, bylaws, operating agreements, or other organization documents, as applicable, shall be consistent with section 1123(a)(6) of the Bankruptcy Code and the New Organizational Documents.

### E.    OpCo Wind-Down Transactions.

On or before the Effective Date, the Debtors or the Wind-Down Debtors and Liquidating Trustee, as applicable, shall take all applicable actions set forth in the Restructuring Transactions Memorandum and may take any additional action as may be necessary or appropriate to effectuate the OpCo Wind-Down, and any transaction described in, approved by, contemplated by, or necessary to effectuate the OpCo Wind-Down that are consistent with and pursuant to the terms and conditions of the Plan and Restructuring Transactions Memorandum, which transactions may include, as applicable:   (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and Restructuring Transactions Memorandum and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Transactions Memorandum, and having other terms to which the applicable parties agree; and (c) all other actions that the applicable Wind-Down Debtor or the Liquidating Trustee determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan.

All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors determine are necessary or advisable to effectuate the provisions and intent of the Plan.

31481411.1

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the OpCo Wind-Down, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.

1.    Sources of Consideration for Plan Distributions Under the OpCo Wind-Down.

The Liquidating Trustee shall fund distributions under the Plan pursuant to the OpCo Wind-Down with, as applicable: (a) Cash on hand; (b) the Wind-Down Debtors' Assets and the Liquidating Trust Assets, as applicable, and any proceeds thereof; and (c) any Residual Assets.

2.    Wind-Down Debtors.

(a)    Wind-Down Debtors.

At least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtor for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtors after the Effective Date, (2) filing appropriate tax returns, to the extent necessary, and (3) administering the Plan. The Liquidating Trustee may perform some or all of these actions on behalf of such Wind-Down Debtor in accordance with the other provisions of the Plan and the Liquidating Trust Agreement. For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to a prior order or the Plan, the Wind-Down Debtors (and their assignee, the Liquidating Trust) specifically retain and reserve the right to assert, after the Effective Date, any and all of the Retained Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan and the Liquidating Trust Agreement.

(b)    Wind-Down Debtors' Assets.

On the Effective Date, the Wind-Down Debtors shall become successors to the OpCo Credit Parties' and MVK FarmCo LLC's rights, title, and interests to any assets remaining assets of such Debtors' Estates, which shall vest in the Wind-Down Debtors for the purpose of liquidating the Wind-Down Debtors and consummation of the Plan.  The Wind-Down Debtors will not conduct business operations other than as necessary to wind down such operations and will be charged with winding down the OpCo Credit Parties' and MVK FarmCo LLC's Estates.  The Wind-Down Debtors shall be managed by the Liquidating Trustee.  The Wind-Down Debtors shall be administered in accordance with the terms of the Liquidating Trust Agreement.  Any distributions to be made under the Plan from such assets shall be made by the Liquidating Trustee or its designee.  The Wind-Down Debtors and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

For the avoidance of doubt, pursuant to 11 U.S.C. § 362(c)(1), the automatic stay of an act against property of the estate will continue until such property is no longer property of the estate, and pursuant to 11 U.S.C. § 362(c)(2), the stay of any other act described in 11 U.S.C. § 362(a)

continues until the earlier of the closure or dismissal of these Chapter 11 Cases.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-Down Debtors and the Liquidating Trustee shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Liquidating Trust Agreement, compromise or settle any Retained Causes of Action On and after the Effective Date, the Wind-Down Debtors and the Liquidating Trustee may, without further Bankruptcy Court approval, commence, litigate, and settle any Retained Causes of Action relating to any Wind-Down Debtors' Assets remaining with the Wind-Down Debtors as a successor to the Debtors or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtors and the Liquidating Trustee on or after the Effective Date, except as otherwise expressly provided for herein and in the Liquidating Trust Agreement. The Wind-Down Debtors or the Liquidating Trustee, as applicable, shall be entitled to enforce all defenses and counterclaims to any and all Claims asserted against the Debtors and their Estates, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall have established the Liquidating Trust pursuant hereto. In the event of any conflict between the terms of this Article IV.E.2 and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

Notwithstanding any prohibition on assignability under applicable non-bankruptcy Law, on the Effective Date and thereafter, if additional Wind-Down Debtors' Assets become available, such additional Wind-Down Debtors' Assets, subject to this Plan, the Confirmation Order, and the Liquidating Trust Agreement, as applicable, shall be treated as if they were transferred to (as applicable) and vested in the applicable Wind-Down Debtor as a successor to the Debtors with all of attendant rights, title, and interests in and to all of the Wind-Down Debtors' Assets, in accordance with section 1141 of the Bankruptcy Code. At such time when any of the Wind-Down Debtors' Assets vest in the Wind-Down Debtors, all such assets shall automatically vest in the Wind-Down Debtors free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Interests as set forth herein and the Wind-Down Debtors' Expenses as set forth herein and in the Liquidating Trust Agreement.

(c)    Residual Assets.

Following the occurrence of the Effective Date and the making of distributions on the Effective Date pursuant hereto, (i) any Cash or other asset received by and properly belonging to the Wind-Down Debtors, that is not otherwise addressed in the Plan, shall be transferred to the Liquidating Trust (or, if such asset properly belongs to PropCo, such asset shall be transferred to Reorganized PropCo), and (ii) any amounts remaining in the Professional Fee Escrow Account shall be remitted therefrom to the Liquidating Trust, Reorganized PropCo, and/or Wind-Down

Debtors, as applicable, after payment in full of all Allowed Professional Fee Claims in accordance with Article II.B.2.

(d)    Dissolution of Boards of the Debtors.

As of the Effective Date, the existing board of directors or managers, as applicable, of the Wind-Down Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or members of any other Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor. Subject in all respects to the terms of this Plan, the Wind-Down Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, the Liquidating Trustee shall act as the sole officer, director, and manager, as applicable, of the Wind-Down Debtors with respect to their affairs. Subject to the foregoing and in all respects to the terms of this Plan, the Liquidating Trustee shall have the power and authority to take any action necessary to wind-down and dissolve any of the Wind-Down Debtors, as applicable, and shall: (a) file a certificate of dissolution for any of the Wind-Down Debtors, as applicable, together with all other necessary corporate and company documents, to effect the dissolution of any of the Wind-Down Debtors, as applicable, under the applicable laws of each applicable Debtor's and/ or Wind-Down Debtor's state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Wind-Down Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Wind-Down Debtors or their respective Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (c) represent the interests of the Wind-Down Debtors or their Estates, as applicable, before any taxing authority in all tax matters, including any action, suit, proceeding, or audit.

The filing by the Liquidating Trustee of any of the Wind-Down Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors and/or the Wind-Down Debtors, as applicable, or any of their Affiliates.

(e)    Wind-Down Debtors' Expenses.

The Wind-Down Debtors' Expenses shall be paid from the Liquidating Trust Assets, subject to the Wind-Down Budget.

(f)    Insurance.

The Liquidating Trustee may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the Liquidating Trustee.

To the extent any directors or officers provide assistance to the Wind-Down Debtors or the Liquidating Trust after the Effective Date of the Plan, the Wind-Down Debtors or the Liquidating Trust will provide such directors and officers with reasonable and customary indemnification, exculpation, and insurance coverage with respect to such services, consistent with the indemnification, exculpation, and insurance coverage provided to the Liquidating Trustee.

(g)    Dissolution of the Wind-Down Debtors.

The Wind-Down Debtors will be dissolved on the earlier of:  (i) (A) the final liquidation, administration, and distribution of the Liquidating Trust Assets in accordance with the terms of the Liquidating Trust Agreement and the Plan, and the full performance of all other duties and functions as set forth herein or in the Liquidating Trust Agreement and (B) the Chapter 11 Cases of the Debtors have been closed; or (ii) the Liquidating Trustee determines in his or her reasonable judgment that the Wind-Down Debtors and the Liquidating Trust lack sufficient assets and financial resources, after reasonable collection efforts, to complete the duties and powers assigned to him or her under the Plan, the Confirmation Order and/or the Liquidating Trust Agreement.  In addition, consistent with the Liquidating Trust Agreement, the Liquidating Trustee may dissolve any of the Wind-Down Debtors on or after the Effective Date if the Liquidating Trustee determines in his or her reasonable judgment that such dissolution would not interfere with duties and powers assigned to him or her under the Plan, the Confirmation Order, and/or the Liquidating Trust Agreement.  Upon the filing by or on behalf of a Wind-Down Debtor of a certification of dissolution with the Bankruptcy Court, such Wind-Down Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions.

(h)    No Liability of the Wind-Down Debtors.

On and after the Effective Date, the Wind-Down Debtors shall have no liability on account of any Claims or Interests except as set forth herein and in the Liquidating Trust Agreement.  All payments and all distributions made by the Liquidating Trustee hereunder shall be in exchange for all Claims or Interests against the Wind-Down Debtors.

3.    Liquidating Trust.

Notwithstanding anything to the contrary herein, on the Effective Date, the Wind-Down Debtors shall transfer the Liquidating Trust Assets to the Liquidating Trust.  As described further below, it is expected that the Debtors and the Liquidating Trustee will treat the Liquidating Trust as a "liquidating trust" as that term is used under section 301.7701-4(d) of the Treasury Regulations that is owned for U.S. federal income tax purposes by Holders of the applicable Claims.  For the avoidance of doubt, in the event of a Permitted Transfer, the provisions set forth in Article IV.M herein shall continue to govern all matters associated with the prosecution, settlement, or collection upon any Retained Causes of Action transferred to the Liquidating Trust.  Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Wind-Down Debtors will have no reversionary or further interest in or with respect to the assets of the Liquidating Trust.  To the extent beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests.

31481411.1

(a)    Governance.

The Liquidating Trust shall be formed on the Effective Date.  The Liquidating Trust will be governed by the Liquidating Trust Agreement, which will be Filed as part of the Plan Supplement and administered by the Liquidating Trustee.  In the event of any conflict between the terms of the Plan and the terms of the Liquidating Trust Agreement, the terms of the Plan shall govern.

The Liquidating Trust Agreement shall provide for the appointment of the Liquidating Trustee and shall be drafted by the Required Lender Group subject to the consent of the Debtors. The Liquidating Trustee shall be selected by the Required Lenders under the Bridge Credit Agreement, with approval (not to be unreasonably withheld) of the Debtors and the Committee. The Debtors will disclose the identity of the initial Liquidating Trustee in the Plan Supplement. The retention of the Liquidating Trustee shall be approved in the Confirmation Order.

The Liquidating Trustee shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the OpCo Wind-Down and as otherwise provided in the Confirmation Order.  On the Effective Date, the authority, power, and incumbency of the Persons acting as managers, directors, and officers of the Wind-Down Debtors shall be deemed to have resigned, and the Liquidating Trustee shall be appointed as the sole manager, sole director, and sole officer of the Wind-Down Debtors, and shall succeed to the powers of the Wind-Down Debtors' managers, directors, and officers.

Pursuant hereto and the Liquidating Trust Agreement, and subject to any limitations contained in this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive distributions pursuant to Plan and shall have in place under the Liquidating Trust Agreement applicable indemnity, limitation of liabilities, and waiver provisions to protect the Liquidating Trustee from being personally liable for any claims or causes of action asserted by the Liquidating Trust beneficiaries, except for any clams of fraud, gross negligence, or willful misconduct.

The Liquidating Trustee shall have the power to administer the assets of the Liquidating Trust in accordance with the Liquidating Trust Agreement.  The Liquidating Trustee shall be the Estate representative designated to prosecute Retained Causes of Action belonging to the Estates that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Without limiting the generality of the foregoing, the Liquidating Trustee shall (a) hold, administer, and prosecute the assets of the Liquidating Trust and any proceeds thereof, (b) have the power and authority to retain, as an expense of the Liquidating Trust, attorneys, advisors, other professionals, and employees as may be appropriate to perform the duties required of the Liquidating Trustee under the Liquidating Trust Agreement, (c) make distributions as provided in the Liquidating Trust Agreement, and (d) provide periodic reports and updates regarding the status of the administration of the Liquidating Trust.

31481411.1

(b)     Initial Contributions.

On the Effective Date, the Wind-Down Debtors shall transfer the Liquidating Trust Assets to the Liquidating Trust and, together with the Liquidating Trustee, take all steps necessary to establish the Liquidating Trust in accordance with and pursuant to the terms of the Plan and the Liquidating Trust Agreement.  Under no circumstances shall the Debtors or the Wind-Down Debtors or any other party be required to contribute any additional assets to the Liquidating Trust other than the Liquidating Trust Assets.  In no event shall the Liquidating Trustee have any authority to pursue Claims or Causes of Action against any Released Party and the Liquidating Trust Agreement shall also so stipulate.

If the Liquidating Trustee determines to assign, sell, or otherwise transfer any of the Retained Causes of Action, any such assignment, sale, or transfer will be subject in all respects to the Plan, the Plan Settlements (including, for the avoidance of doubt, all contractual limitations on recovery related to such claims) and the Liquidating Trust Agreement.

The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made, as provided herein, for the benefit of the Liquidating Trust beneficiaries.  Upon the transfer of the Liquidating Trust Assets, the Debtors, or the Wind-Down Debtors, as the case may be, shall have no interest in or with respect to the Liquidating Trust Assets, or the Liquidating Trust.  To the extent that any Liquidating Trust Assets cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidating Trust Assets shall be deemed to have been retained by the Wind-Down Debtors and the Liquidating Trustee shall be deemed to have been designated as a representative of the Wind-Down Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Liquidating Trust Assets on behalf of the Wind-Down Debtors.  Notwithstanding the foregoing, all net proceeds of such Liquidating Trust Assets shall be transferred to the Liquidating Trust to be distributed consistent with the terms of the Plan and the Liquidating Trust Agreement.

The Wind-Down Debtors shall make reasonable best efforts to retain and transfer all documents relating to the Liquidating Trust Assets to the Liquidating Trust; *provided* that the Wind-Down Debtors shall not be liable to the Liquidating Trust for non-compliance with this provision unless such liability is decided by the Bankruptcy Court.

(c)     Claims.

Subject to Article IV.F.2 hereof, the Liquidating Trust shall have the primary authority to (a) File, withdraw, or litigate to judgment any objections to Claims or Interests (except for General Unsecured Claims); (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to such Claims and Interests (except for General Unsecured Claims); (c) settle, compromise, or resolve any Disputed Claim (except for General Unsecured Claims) without any further notice to or action, order, or approval by the Bankruptcy Court; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; *provided, further*, that the GUC Administrator shall have the right to prosecute and resolve objections to Disputed General Unsecured Claims as Provided in Article IV.F.2.

(d)    Disbursements.

Following the Effective Date, the proceeds from the Liquidating Trust Assets shall be disbursed pursuant to and in accordance with the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall make an initial distribution of any excess Cash on hand (excluding any amounts reserved by the Liquidating Trustee in her discretion in accordance with the Liquidating Trust Agreement) within thirty days of the Liquidating Trust's receipt of the Liquidating Trust Assets.

F.    *GUC Trust.*

On or prior to the Effective Date, the Debtors, the GUC Administrator, and the GUC Trust Advisory Committee shall execute the GUC Trust Agreement and shall take all steps necessary to establish the GUC Trust, which shall be a liquidating trust, in accordance with the Plan. In the event of any conflict between the terms of the Plan and the terms of the GUC Trust Agreement, the terms of the GUC Trust Agreement shall govern. Additionally, on the Effective Date, or at such later date as provided herein, the Debtors shall transfer and shall be deemed to transfer to the GUC Trust all of its rights, title, and interest in and to all of the GUC Trust Assets and, in accordance with section 1141 of the Bankruptcy Code, the GUC Trust Assets shall automatically vest in the GUC Trust free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax. The GUC Administrator shall be the exclusive administrator of the assets of the GUC Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the GUC Administrator's duties under the GUC Trust Agreement. The GUC Trust shall be governed by the GUC Trust Agreement and administered by the GUC Administrator. The powers, rights, and responsibilities of the GUC Administrator shall be specified in the GUC Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this section. The GUC Administrator shall hold and distribute the GUC Trust Assets in accordance with the provisions of the Plan and the GUC Trust Agreement. Other rights and duties of the GUC Administrator shall be as set forth in the GUC Trust Agreement. After the Effective Date, the Debtors, Post-Effective Date PropCo, the Wind-Down Debtors, and the Liquidating Trustee shall have no interest in the GUC Trust Assets except as set forth in the Plan, the Confirmation Order, or the GUC Trust Agreement.

1.    GUC Trust Agreement.

The GUC Trust Agreement will be Filed with the Plan Supplement and generally will provide for, among other things: (i) the transfer of the GUC Trust Assets to the GUC Trust; (ii) the payment of certain reasonable expenses of the GUC Trust from the GUC Trust Assets; and (iii) distributions to Holders of Allowed General Unsecured Claims, as provided herein and in the GUC Trust Agreement. For the avoidance of doubt, the GUC Trust Agreement also will identify: (a) the identity of the GUC Administrator; (b) the terms of the GUC Administrator's engagement; (c) the identity of any parties who will supervise the fees of the GUC Administrator; and (d) whether the GUC Administrator shall be bonded. The GUC Trust Agreement may include reasonable and customary provisions that allow for indemnification by the GUC Trust. Any such

31481411.1

indemnification shall be the sole responsibility of the GUC Trust and payable solely from the GUC Trust Assets.

2.  GUC Administrator.

In furtherance of, and consistent with, the purposes of the GUC Trust and the Plan, the GUC Administrator shall (i) have the power and authority to hold, manage, sell, invest, and distribute to the Holders of General Unsecured Claims the GUC Trust Assets, (ii) hold the GUC Trust Assets for the benefit of the Holders of General Unsecured Claims, (iii) have the power and authority to prosecute and resolve objections to Disputed General Unsecured Claims, (iv) file tax returns for the GUC Trust (as described in Article IV.G below), and (v) have the power and authority to perform such other functions as are provided for in the Plan and the GUC Trust Agreement.

The GUC Administrator shall have the primary responsibility for General Unsecured Claims Reconciliation Process; *provided that* the Debtors, Post-Effective Date PropCo, the Wind-Down Debtors, and the Liquidating Trustee, as applicable, solely with the consent of the GUC Administrator, shall have the right to object to and prosecute such objections to General Unsecured Claims not Allowed under the Plan.

3.  GUC Trust Advisory Committee

The GUC Trust Advisory Committee shall be a committee established under the GUC Trust Agreement.  The members of the GUC Trust Advisory Committee shall be designated by the Committee.  The GUC Trust Advisory Committee shall provide input to the GUC Administrator on certain matters, and shall have certain rights and authority as set forth in the GUC Trust Agreement.  All fees and expenses incurred by the GUC Trust Advisory Committee shall be paid from the GUC Trust Assets, in accordance with the GUC Trust Agreement.  The GUC Trust Advisory Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities hereunder and under the GUC Trust Agreement have concluded.  Unless already dissolved, the GUC Trust Advisory Committee shall be dissolved as of the date the Chapter 11 Cases are closed.

4.  GUC Trust Fees and Expenses.

From and after the Effective Date, the GUC Administrator, on behalf of the GUC Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the GUC Trust Fees and Expenses exclusively from the GUC Trust Assets and in the manner provided herein.  Subject to the provisions of the Plan concerning the allocation of the GUC Trust Assets, the GUC Administrator is authorized to allocate such expenses (including, without limitation, any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets and professional fees) to, and pay them from, the GUC Trust Assets, as the GUC Administrator may determine in good faith is fair (such as based upon the GUC Administrator's good faith determination of the nature or purpose of the fee or expense, the relative amount of General Unsecured Claims, the relative estimated value of the GUC Trust Assets or such other matters as the GUC Administrator deems relevant); *provided* that the GUC Administrator (i) shall reasonably attribute the expenses (including, without limitation, any taxes

imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets and professional fees) of the liquidation, defense, or resolution of General Unsecured Claims to the GUC Trust Assets and pay them therefrom, and (ii) shall reasonably attribute the expenses (including, without limitation, any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets and professional fees) of calculating, disseminating, and administering distributions (e.g., accounting and mailing costs) on General Unsecured Claims to the GUC Trust Assets and pay them therefrom. None of Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust shall be responsible for any costs, fees, or expenses of the GUC Trust.

    5.    GUC Trust Treatment.

The GUC Trust shall continue to have all of the rights and powers granted to the GUC Trust as set forth in this Plan and applicable non-bankruptcy law, and the GUC Administrator shall also have the rights, powers, and obligations set forth in the GUC Trust Agreement.

    6.    The GUC Trust Beneficial Interests.

Any and all GUC Trust Beneficial Interests shall be transferrable by will, intestate succession, or otherwise by operation of law. In addition, any and all GUC Trust Beneficial Interests will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law. However, if it should be determined that any such interests constitute "securities," the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer, issuance, and distribution under the Plan of the GUC Trust Beneficial Interests will be exempt from registration under the Securities Act and all applicable state and local securities laws and regulations.

    7.    Dissolution of the GUC Trust.

After the final distribution of the balance of the GUC Trust Assets pursuant to the Plan and the GUC Trust Agreement, the GUC Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

    8.    Single Satisfaction of Allowed General Unsecured Claims.

Notwithstanding anything to the contrary herein, in no event shall Holders of Allowed General Unsecured Claims recover more than the full amount of their Allowed General Unsecured Claims from the GUC Trust.

G.    *Tax Treatment of Liquidating Trust and GUC Trust.*

        (a)    "Liquidating Trust" Treatment.

Subject to any applicable law or definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Debtors expect to treat each of the Liquidating Trust and GUC Trust as a "liquidating trust" under section 301.7701-4(d) of the Treasury Regulations and a grantor trust under section 671 of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and, subject to the last sentence of this paragraph, the Liquidating Trustee or GUC

Administrator (as applicable) will take a position on the Liquidating Trust's or GUC Trust's (as applicable) tax returns accordingly (including, without limitation, filing the statements required under section 1.671-4(a) of the Treasury Regulations).  The Liquidating Trust and GUC Trust shall be established for the primary purpose of liquidating the Liquidating Trust Assets or GUC Trust Assets (as applicable), reconciling claims asserted against the Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, such primary purpose, and is otherwise intended to comply with the ruling guidelines set forth in Revenue Procedure 94-45, 1994-2 C.B. 684. For U.S. federal income tax purposes, the Debtors, the Liquidating Trustee, and the GUC Administrator will treat the transfer of assets to the Liquidating Trust or the GUC Trust (as applicable) as (a) a first-step transfer of the Liquidating Trust Assets or GUC Trust Assets (as applicable) to the Holders of the applicable Claims (including, in the case of the Liquidating Trust, Post-Effective Date PropCo on account of the Post-Effective Date PropCo Liquidating Trust Distribution Amount), and (b) a second-step transfer by such Holders to the Liquidating Trust or GUC Trust (as applicable).  The Wind-Down Debtors, the Liquidating Trustee, and the GUC Administrator accordingly will treat such Holders as the grantors and deemed owners of the Liquidating Trust property and the GUC Trust property under Tax Code section 671.  If, however, it is determined based on applicable law or definitive guidance from the IRS or a court of competent jurisdiction that such treatment is not available (and subject to the application to any portion of the Liquidating Trust or the GUC Trust of disputed ownership fund treatment as described in Article IV.G.(b) below), the Liquidating Trustee and the GUC Administrator may instead treat the Liquidating Trust and the GUC Trust for federal income tax purposes as a partnership (and if so will not treat the Liquidating Trust or the GUC Trust as publicly traded partnership taxable as a corporation under Tax Code section 7704).

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust or GUC Trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust or GUC Trust.  If the IRS were to successfully challenge the classification of the Liquidating Trust or GUC Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust or GUC Trust (as applicable) and the Liquidating Trust or GUC Trust beneficiaries (as applicable) could vary from those discussed in the Plan (including the potential for an entity-level tax).  For example, the IRS could characterize the Liquidating Trust or GUC Trust as a so-called "complex trust" subject to a separate entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfers of the Liquidating Trust Assets to the Liquidating Trust or GUC Trust Assets to the GUC Trust (as applicable), the Liquidating Trustee or the GUC Administrator (as applicable) shall make a good faith valuation of the Liquidating Trust Assets or GUC Trust Assets (as applicable).  This valuation will be made available from time to time, as relevant for tax reporting purposes.  Each of the Debtors, Liquidating Trustee or GUC Administrator (as applicable), and the holders of Claims receiving interests in the Liquidating Trust or the GUC Trust (as applicable) shall take consistent positions with respect to the valuation of the Liquidating Trust Assets or GUC Trust Assets (as applicable), and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income and loss of the Liquidating Trust or GUC Trust (as applicable) among the applicable beneficiaries shall be determined, as closely as possible, by

reference to the amount of distributions that would be received by each such beneficiary if the Liquidating Trust or GUC Trust (as applicable) had sold all of the Liquidating Trust Assets or GUC Trust Assets (as applicable) at their tax book value and distributed the proceeds to the applicable beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust or GUC Trust (as applicable). The tax book value of the Liquidating Trust Assets or GUC Trust Assets (as applicable) shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust or GUC Trust Assets to the GUC Trust (as applicable), adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust and GUC Trust will distribute at least annually to the Holders of the applicable Claims its net proceeds from the sale of assets and any other income realized by the Liquidating Trust or GUC Trust (as applicable, and to the extent such net proceeds are available for distribution), net of expenses and such reserves as are determined by the Liquidating Trustee or GUC Administrator (as applicable) to be reasonably necessary to maintain the value of the Liquidating Trust Assets or GUC Trust Assets (as applicable) or to meet claims and contingent liabilities (including disputed claims), as more fully set forth in the Liquidating Trust Agreement or GUC Trust Agreement (as applicable). The Liquidating Trustee and GUC Administrator will make continuing efforts to dispose of the Liquidating Trust Assets or GUC Trust Assets (as applicable), will make timely distributions, and will not unduly prolong the duration of the Liquidating Trust or GUC Trust (as applicable).

The Liquidating Trustee, GUC Administrator, Liquidating Trust, and GUC Trust shall be discharged or dissolved, as the case may be, on the earlier of (a) such time as (i) all of the Liquidating Trust Assets or GUC Trust Assets (as applicable) have been liquidated and (ii) all distributions required to be made by the Liquidating Trustee or GUC Administrator (as applicable) under the Plan, Liquidating Trust Agreement and the GUC Trust Agreement have been made, and (b) five (5) years after the Effective Date, unless the Bankruptcy Court, upon motion of the Liquidating Trustee or GUC Administrator (as applicable) within the six (6) months prior to the fifth (5th) anniversary hereof (or within six (6) months prior to the end of an extension period), determines that a fixed-period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee or GUC Administrator (as applicable) that any further extension would not adversely affect the status of the trust as a grantor trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery of the Liquidating Trust Assets or GUC Trust Assets (as applicable). Upon the filing of such a motion, the term of the Liquidating Trust or GUC Trust (as applicable) shall be automatically extended through entry of a final order thereon, unless the extension would adversely affect the status of the Liquidating Trust or GUC Trust (as applicable) as a liquidating trust for federal income tax purposes.

The Liquidating Trustee or GUC Administrator (as applicable) shall file or cause to be filed annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets or GUC Trust Assets (as applicable) (e.g., income, gain, loss, deduction, and credit). Each Liquidating Trust beneficiary or GUC Trust beneficiary holding a beneficial interest in such trust will receive a copy of the

information returns for such trust and must report on its federal income tax return its share of all such items.  The information provided by such trust will pertain to the beneficiaries of such trust who receive their interests in such trust in connection with the Plan.

(b)    Disputed Ownership Fund Treatment.

With respect to any of the assets of the Liquidating Trust or GUC Trust (as applicable) that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust or GUC Trust (as applicable), the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes.  Under such treatment, a separate federal income tax return shall be filed with the IRS for any such account.  Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes).  In the event, and to the extent, that any cash in the Liquidating Trust or GUC Trust (as applicable) is insufficient to pay the portion of any taxes attributable to taxable income arising from the Liquidating Trust Assets or GUC Trust Assets (as applicable), the Liquidating Trust Assets or GUC Trust Assets (as applicable) (including those otherwise distributable) may be sold to pay such taxes.  The undisputed portion of the Liquidating Trust Assets or GUC Trust Assets (as applicable) will be treated as held in a grantor trust, with deemed distribution to and contribution from the applicable Holders of Allowed Claims to the Liquidating Trust or GUC Trust (as applicable), as described above.

H.    *Corporate Action.*

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including implementation of the Restructuring Transactions and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  On the Effective Date, all matters provided for in the Plan involving the corporate or organizational structure of the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable and any corporate, partnership, limited liability company, or other governance action required by the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the equityholders, members, directors, or officers of the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable.  On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of Post-Effective Date PropCo or the Wind-Down Debtors, as applicable.  The authorizations and approvals contemplated by this Article IV.H shall be effective notwithstanding any requirements under nonbankruptcy Law.

31481411.1

I.      *Vesting of Assets in Reorganized PropCo or the Wind-Down Debtors.*

Except as otherwise provided in the Confirmation Order or in the Plan (including the Restructuring Transactions Memorandum), on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan (with the exception of the GUC Trust Assets transferred or issued to the GUC Trust) shall vest in Reorganized PropCo or each respective Wind-Down Debtor.

On and after the Effective Date, except as otherwise provided in the Plan, Reorganized PropCo or each Wind-Down Debtor may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

J.      *Cancellation of Securities and Agreements.*

Except as otherwise specifically provided for in the Plan on the Effective Date: (i) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other Securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled and deemed surrendered as to the Debtors, and the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be fully released, settled, and compromised.  Notwithstanding the foregoing, no Executory Contract or Unexpired Lease that (x) has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (y) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

Notwithstanding the foregoing, the Bridge Credit Agreement, OpCo Credit Agreement, PropCo Credit Agreement, and DIP Credit Agreement shall survive as necessary to (a) enforce the rights, claims and interests of any Agent and any predecessor thereof against parties other than the Released Parties; (b) allow the receipt and making of distributions under the Plan in accordance with the terms of any such note or agreement, as applicable; (c) preserve any rights of any Agent and any predecessor thereof as against any money or property distributable to Holders of Bridge Secured Claims, OpCo Secured Claims, PropCo Secured Claims, and DIP Claims, as applicable,

including any priority in respect of payment and the right to exercise any charging liens; and (d) permit the OpCo Agent to enforce rights against OpCo Lenders under Section 2.5(e) of the OpCo Credit Agreements with respect to LC Disbursements (as defined in the OpCo Credit Agreements).

K.      *Effectuating Documents; Further Transactions.*

On and after the Effective Date, Post-Effective Date PropCo, Reorganized PropCo the Wind-Down Debtors, or the Liquidating Trust, as applicable, and their respective officers, directors, trustees, members, managers, and Liquidating Trustee (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

L.      *Exemption from Certain Taxes and Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to Post-Effective Date PropCo, Reorganized PropCo, or a Wind-Down Debtor, or the Liquidating Trust, or from a Wind-Down Debtor to the Liquidating Trust, as applicable, or to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the entrance into, delivery of, and performance under the Exit Facilities; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the imposition or collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

*M.       Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan or pursuant to a Final Order, Reorganized PropCo and each Wind-Down Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and Reorganized PropCo's and Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Articles IV and VIII of the Plan or pursuant to a Final Order (including the Cash Collateral Order and any DIP Order), which, in each case, shall be deemed released and waived by the Debtors, Reorganized PropCo, and the Wind-Down Debtors as of the Effective Date. For the avoidance of doubt, all Claims and Causes of Action that may be asserted against the Sponsor, McKinsey, or the Gerawan Interested Parties and their respective Related Parties are hereby waived and may not be enforced by Reorganized PropCo, any of the Wind-Down Debtors, or the Liquidating Trust.

Reorganized PropCo and the Wind-Down Debtors, as applicable, may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of Reorganized PropCo and the Wind-Down Debtors, respectively. **No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trustee, as applicable, will not pursue any and all available Causes of Action of the Debtors against it. Except as specifically released or as assigned or transferred under the Plan or pursuant to a Final Order (including the Cash Collateral Order and any DIP Order), the Debtors, Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan or pursuant to a Final Order (including the Cash Collateral Order and any DIP Order). Unless otherwise agreed upon in writing by the parties to the applicable Causes of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date. Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against Reorganized PropCo, any Wind-Down Debtor, and the Liquidating Trust, without the need for any objection or responsive pleading by Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.** Reorganized PropCo and the Wind-Down Debtors, with respect to other Causes of Action may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court. If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, and the objection party for thirty days, such objection shall be resolved by the Bankruptcy Court. Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the Cash Collateral Order and any DIP Order), Reorganized PropCo, the Wind-Down Debtors, the

Liquidating Trust, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order (including the Cash Collateral Order and any DIP Order), any Causes of Action that a Debtor may hold against any Entity shall vest in Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.  Reorganized PropCo and the Wind-Down Debtors, as applicable, reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  Reorganized PropCo and the Wind-Down Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

N.    *Release of Avoidance Actions*

On the Effective Date, the Debtors, on behalf of themselves and their Estates, shall release any and all Waived Avoidance Actions, and the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trust, the GUC Trust, and any of their successors or assigns, and any Entity acting on behalf of the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trust, or the GUC Trust, shall be deemed to have waived the right to pursue any and all Waived Avoidance Actions.

O.    *Exit Facilities.*

On the Effective Date, Post-Effective Date PropCo and Reorganized PropCo shall: (a) enter into the Exit Bridge Facility and (b) solely to the extent the Holders of Allowed DIP Claims agree to receive a *Pro Rata* share of an Exit Termed Out DIP Facility in lieu of receiving payment in full in Cash in respect of their Allowed DIP Claim, enter into the Exit Termed Out DIP Facility.  Additionally, on the Effective Date, solely to the extent Post-Effective Date PropCo, Reorganized PropCo, and the PropCo Required Lenders determine that entry is in the best interest of Post-Effective Date PropCo, and Reorganized PropCo, Post-Effective Date PropCo and Reorganized PropCo shall enter into the Exit PropCo Facility.  The terms of the Exit Bridge Facility, any Exit Termed Out DIP Facility, any Exit PropCo Credit Agreement, and the respective documents related thereto, shall be set forth in the Plan Supplement.

To the extent applicable, Confirmation of the Plan shall be deemed: (a) approval of each Exit Facility (including the respective transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, obligations to be incurred, and fees and

expenses to be paid by the Debtors, Reorganized PropCo and Post-Effective Date PropCo, as applicable, in connection therewith), to the extent not approved by the Bankruptcy Court previously, and (b) authorization for the Debtors, Reorganized PropCo, or Post-Effective Date PropCo, as applicable, to, without further notice to or order of the Bankruptcy Court: (i) execute and deliver those documents and agreements necessary or appropriate to pursue or obtain each applicable Exit Facility, including the Exit Termed Out DIP Credit Agreement, the Exit Bridge Credit Agreement, and the Exit PropCo Credit Agreement and all respective related documents, and incur and pay any fees and expenses in connection therewith, and (ii) act or take action under applicable Law, regulation, order, rule, vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors, Reorganized PropCo, or Post-Effective Date PropCo, as applicable, may deem to be necessary or appropriate to consummate each Exit Facility; provided that such modifications are acceptable to the applicable Exit Facility Lenders.

As of the Effective Date, upon the granting of Liens in accordance with each Exit Facility, such Liens shall constitute valid, binding, enforceable, and automatically perfected Liens in the collateral specified in each Exit Facility.  To the extent provided in each Exit Facility, the applicable Exit Facility Agent or Holder(s) of Liens under the Exit Facilities are authorized to file with the appropriate authorities mortgages, financing statements, and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests.  The guarantees, mortgages, pledges, Liens, and other security interests granted to secure the obligations arising under the Exit Facilities shall be granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the Exit Facility Lenders to extend credit thereunder shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination, and the priorities of such Liens and security interests shall be set forth respectively in the Exit Termed Out DIP Credit Agreement, the Exit Bridge Credit Agreement, and the Exit PropCo Credit Agreement, and the respective documents related thereto.

P.    *Settlement of Certain Claims Against the OpCo Credit Parties and/or the Wind-Down Debtors*

As set forth in Article II.E and Article III.C.3, as a settlement of intercompany claims between PropCo and the OpCo Credit Parties, on the Effective Date, immediately following the creation of Post-Effective Date PropCo, all Allowed DIP Claims and Allowed Bridge New Money Term Loan Claims against the OpCo Credit Parties and the Wind-Down Debtors shall be discharged, cancelled, released, and extinguished.  In exchange, Post-Effective Date PropCo shall be entitled to the OpCo Contribution Amount.  For the avoidance of doubt, (i) the foregoing shall not reduce the amount of the Exit Termed Out DIP Facility or the Exit Bridge Facility and (ii) to the extent that the Wind-Down Debtors or the Liquidating Trust are unable to fully satisfy the Post-Effective Date PropCo Liquidating Trust Distribution Amount, Post-Effective Date PropCo and Reorganized PropCo shall have no recourse to the OpCo Agent, any of the Bridge Agents, the OpCo Lenders, or the Bridge Lenders, including (but not limited to) any recourse to the Promissory Note.

## ARTICLE V.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, (ii) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (iii) is subject to a motion to assume (or assume and assign) such Unexpired Lease or Executory Contract as of the Effective Date; (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (v) is a Pending 363 Sale Contract; or (vi) is a D&O Liability Insurance Policy.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan and the Schedule of Assumed Executory Contracts and Unexpired Leases, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized PropCo or Wind-Down Debtor, as applicable, in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by Reorganized PropCo or the Wind-Down Debtors, as applicable.

If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan.  Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must File a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any "change of control" provision), then such provision shall be deemed modified such that the

transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time up to forty-five days after the Effective Date.

B.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, under such Executory Contract or Unexpired Lease. Without limiting the general nature of the foregoing, and notwithstanding any non-bankruptcy law to the contrary, the Debtors, Reorganized PropCo, and the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, any Proof of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be Filed with the Bankruptcy Court and served on the Debtors, Post-Effective Date PropCo, Reorganized PropCo, and the Wind-Down Debtors, as applicable, no later than thirty (30) days after the effective date of the rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served on the Debtors no later than seven (7) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim were not timely Filed in accordance with the Bar Date Order shall not (i) be treated as a creditor with respect to such Claim, (ii) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (iii) participate in any distribution in the Chapter 11 Cases on account of such Claim. Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, or the property for any of the foregoing without the need for any objection by the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** All Allowed Claims arising from the rejection by any Debtor of any of the Debtors' Executory Contracts or Unexpired Leases shall be classified as

General Unsecured Claims against the applicable Debtor in accordance with Article III.C of the Plan, except as otherwise provided by order of the Bankruptcy Court.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Bankruptcy Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree. In the event of a dispute regarding:   (i) the amount of any Cure Claim; (ii) the ability of Reorganized PropCo, or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or the assumption and assignment, the Cure Claims shall be made following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment.   Notwithstanding the foregoing, nothing herein shall prevent Reorganized PropCo from settling any Cure Claim without further notice to or action, order, or approval of the Bankruptcy Court.

As set in the Bidding Procedures Order, the deadline to object to, among other things, the Debtors' proposed cure amount with respect to an Unexpired Lease or Executory Contract that was included on a Notice of Potentially Assumed Executory Contracts and Unexpired Leases (as defined in the Bidding Procedures Order), was December 1, 2023.  Notwithstanding that deadline having passed, counterparties to Executory Contracts and Unexpired Leases will retain the right to object to the assumption of an Executory Contract or Unexpired Lease on the basis of events occurring after December 1, 2023, including additional cure amounts that arise from defaults occurring after December 1, 2023, adequate assurance of performance in light of the transactions contemplated in the Plan, and/or the identity of any entity (or direct or indirect owner of such entity) that the Debtors designate as assuming or becoming the assignor under an Executory Contract or Unexpired Lease.   To the extent that the Debtors seek to assume and assign an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee in the applicable Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned.

In the event of a dispute regarding (i) the ability of the Debtors, Reorganized PropCo, the Wind-Down Debtors, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned, as applicable), or (ii) any other matter pertaining to assumption or assignment, then any disputed Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made as soon as reasonably practicable following, and in accordance with, the entry of a Final Order of the Bankruptcy Court resolving such dispute or as may be agreed upon by the Debtors, Reorganized PropCo, the Wind-Down Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease, and any such

unresolved dispute shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any bankruptcy-related defaults, arising at any time prior to the effective date of assumption.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

E.    *Insurance Contracts.*

1.    <u>Insurance Contracts</u>. Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, the Exit Credit Agreement, any bar date notice or claim objection, or any other document related to any of the foregoing (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or discharge, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases): (a) nothing alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any Insurance Contracts, nor (1) any Insurer's right to seek payment or reimbursement from the Debtors (or after the Effective Date, Reorganized PropCo, or the Liquidating Trustee on behalf of the Wind-Down Debtors, as applicable), or draw on any Collateral or security therefor, or (2) any Insurer's subrogation rights under the Insurance Contracts and applicable non-bankruptcy law, and for the avoidance of doubt, Insurers shall not need to nor be required to file or serve an objection to a Cure Notice or a request, application, claim, Cure Claim, Proof of Claim, or motion for payment or allowance of any Administrative Claim, or any notice of recoupment, and Insurers shall not be subject to any claims bar date or similar deadline governing Cure amounts, Proofs of Claim, or Administrative Claims; and (c) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or

31481411.1

Post-Effective Date PropCo or the Wind-Down Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and Post-Effective Date PropCo or the Wind-Down Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and Post-Effective Date PropCo or the Wind-Down Debtors, as applicable) under the applicable Insurance Contracts, in such order as the applicable Insurer may determine; and (IV) the Insurers to cancel any Insurance Contracts, and take other actions relating to the Insurance Contracts (including effectuating a setoff or recoupment), to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the applicable Insurance Contracts.

2.    <u>Chubb Agribusiness Policy</u>.

On and after the Effective Date, Reorganized PropCo shall replace the existing first named insured under the Chubb Agribusiness Policy, and shall thereafter be liable in full for all amounts due and owing thereunder in accordance with and subject to the terms thereof, including, but not limited to, with respect to payment for any outstanding or not-yet-owed premium installments owed thereunder and shall properly issue payment before the applicable installment due date for each installment owed under the Chubb Agribusiness Policy in accordance with the terms of any such invoice in full dollars; and, for the avoidance of doubt, and in addition to the treatment provided in this paragraph V.E.2, the Chubb Agribusiness Policy shall be entitled to the treatment set forth in Article V.E.1(a) of this Plan as though PropCo had been the first named insured thereunder on the Confirmation Date.

3.    <u>1970 Group</u>.

For the avoidance of doubt, nothing in the Disclosure Statement, this Plan, the Plan Supplement, or the Confirmation Order shall alter, modify, or otherwise amend the (i) the terms and conditions of the 1970 Group Agreement or (ii) any right that 1970 Group may have to seek reimbursement or other payment from the Debtors, including pursuant to the doctrine of subrogation or assignment, (or any of the Debtors' successors in interest, as and to the extent applicable) in accordance with the terms and conditions of the 1970 Group Agreement (to the extent applicable); provided that all parties, including the Debtors, (or any of the Debtors' successors in interest, as and to the extent applicable ) reserve the right to dispute any assertion of such right; provided further that no such right which would not otherwise exist is created by this Article V.E.3.

F.    *D&O Liability Insurance Policies.*

Notwithstanding anything to the contrary herein, the D&O Liability Insurance Policies shall be assumed by the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, effective as of the Effective Date, pursuant to sections 105, 365, and 1123 of the Bankruptcy Code, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Liability Insurance Policies, including the coverage for defense and indemnity under any of the D&O Liability Insurance Policies which shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies in accordance with and subject to the terms and conditions thereof regardless of whether

31481411.1

69

such officers, directors, trustees, managers, or members remain in such position after the Effective Date. For the avoidance of doubt, the D&O Liability Insurance Policies will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, in accordance with and subject to the terms and conditions of the D&O Liability Insurance Policies. In addition, after the Effective Date, none of the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall terminate or otherwise reduce coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect or purchased as of the Petition Date.

G.      *Indemnification Obligations.*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action that arose prior to the Effective Date under any indemnification provisions or applicable law, including any tail policies (whether in the by-laws, certificates of incorporation of formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise), in each case that may exist, shall (a) survive on the Effective Date on terms no less favorable to such individuals than the indemnification provisions in place prior to the Effective Date, (b) be deemed and treated as an Executory Contract that has been assumed by Reorganized PropCo or Wind-Down Debtors on behalf of the applicable Debtor, (c) and remain in effect, intact, and irrevocable after the Effective Date; *provided* that, notwithstanding anything herein to the contrary, (x) any such obligation of Reorganized PropCo to indemnify, defend, reimburse, or limit liability shall be limited to the extent of coverage available to it to satisfy any such obligation under any applicable insurance policy originally issued to PropCo, including any D&O Liability Insurance Policy assigned to Reorganized PropCo, (y) any such obligation of a Wind-Down Debtor to indemnify, defend, reimburse, or limit liability shall be limited to the extent of coverage available to it to satisfy such obligation under any applicable insurance policy originally issued to any Debtor other than PropCo, including any D&O Liability Insurance Policy assigned to the Wind-Down Debtors, and (z) no claim for any indemnity, defense, reimbursement, or limitation of liability referred to in this paragraph will attach to any asset sold or otherwise disposed of by the Wind-Down Debtors, the Liquidating Trust, or Reorganized PropCo after the Effective Date. Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, no Proof of Claim, Administrative Claim, or Cure Claim need be Filed with respect to any such indemnification obligation.

H.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

31481411.1

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

I.      *Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

J.      *Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interest (as applicable), shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class from the Debtors or the Disbursing Agent on behalf of the Debtors, as applicable.  Distributions of Residual Assets and any other assets of the Wind-Down Debtors will be made in accordance with the timing and procedures set forth in the Liquidating Trust Agreement.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall

not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent.*

Distributions under the Plan shall be made by the Disbursing Agent(s).  The Debtors, Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, and the Disbursing Agent(s), as applicable, shall not be required to give any bond or surety or other Security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

C.      *Rights and Powers of the Disbursing Agent(s).*

1.      Powers of the Debtors and the Disbursing Agent(s).

The Disbursing Agent(s) shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

1.      Record Date for Distributions.

Except as provided herein, on the Distribution Record Date, the Claims Register shall be closed, and the Debtors, and the Disbursing Agent(s), or any other party responsible for making distributions, shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

2.      Delivery of Distributions in General.

(a)      Payments and Distributions on Disputed Claims.

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims or Disputed Interests that are not Allowed Interests, as applicable, as of the Effective Date but which later become Allowed Claims or Allowed Interests, as applicable, shall, in the reasonable discretion of the Disbursing Agent, be deemed to have been made on the Effective Date unless the Disbursing Agent and the Holder of such Claim or Interest agree otherwise.

31481411.1

(b)        Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors, Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, or the Disbursing Agent, as applicable, on the one hand, and the Holder of a Disputed Claim or Disputed Interest, as applicable, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Disputed Interest, other than with respect to Professional Fee Claims, until all Disputed Claims or Disputed Interests held by the Holder of such Disputed Claim or Disputed Interest have become Allowed Claims or Allowed Interests or have otherwise been resolved by settlement or Final Order.

(c)        Delivery of Distributions.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests on the Effective Date at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided*, *further*, *however*, that the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in, as applicable, any Proof of Claim or Proof of Interest Filed by such Holder, or, if no Proof of Claim or Proof of Interest has been filed, the address set forth in the Schedules.

3.      <u>Minimum Distributions</u>.

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of less than $100 in value (whether Cash or otherwise), and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claim against Reorganized PropCo, the Wind-Down Debtors, or their property.

4.      <u>Undeliverable Distributions and Unclaimed Property</u>.

With respect to any undeliverable distribution, no distribution to the relevant Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary) to Reorganized PropCo or the Wind-Down Debtors, as applicable, and shall become distributable to Holders of Claims pursuant to Article IV.E.2(c), automatically and without need for a further order by the Bankruptcy Court and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

5.      <u>Manner of Payment Pursuant to the Plan</u>.

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent, by check, Automated Clearing House, credit card, or wire transfer, or as

otherwise provided in the applicable agreements, at the sole and exclusive discretion of the Disbursing Agent.

E.      *Compliance with Tax Requirements/Allocations.*

In connection with the Plan, to the extent applicable, the Debtors, Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, the Disbursing Agent, the GUC Administrator, and any applicable withholding agent shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, delaying distributions pending receipt of information or forms necessary to facilitate such distributions (including the determination of any withholding in connection therewith), or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, Post-Effective Date PropCo, Reorganized PropCo, and the Wind-Down Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or other applicable withholding agent an IRS Form W-9 or (if the payee is a foreign Person) an appropriate IRS Form W-8, as applicable.

F.      *Allocation of Plan Distributions Between Principal and Interest.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed therein.

G.      *Setoffs and Recoupment.*

Except as otherwise expressly provided herein, the Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors, Reorganized PropCo, or the Wind-Down Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the Holder of such Claim.

H.      *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in a Final Order, the Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition

Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

I.     *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition*, on the Petition Date.

J.     *Claims Paid or Payable by Third Parties.*

1.   Claims Paid by Third Parties.

The Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor; *provided*, *however*, that a notice of satisfaction shall be filed as applicable by the Debtor, Reorganized PropCo, or the Wind-Down Debtors reflecting that a particular proof of claim has been satisfied.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen-day grace period specified above until the amount is repaid.

2.   Claims Payable by Insurance, Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' Insurance Contracts, or other non-Debtor payment agreements, until the Holder of such Claim has exhausted all remedies with respect to such Insurance Contracts, or other non-Debtor payment agreement.  To the extent that one or more of the Debtors' Insurers or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), or Collateral held by such Insurers or non-Debtor payors or proceeds from such Collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that a notice of satisfaction shall be filed as applicable by the Debtor, Reorganized PropCo, or the Wind-Down Debtors reflecting that a particular proof of claims has been satisfied; *provided, further* that, to the extent that the satisfaction of a Claim pursuant to this Article VI.J.2 gives rise to a right for reimbursement or other payment (pursuant to the doctrine of subrogation or otherwise), such right shall not be impaired solely on the basis of the preceding Claim having been satisfied.

      3.   <u>Applicability of Insurance Contracts</u>.

Notwithstanding anything to the contrary in this Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any third-party beneficiary or other covered party of any of the Debtor's Insurance Contracts with respect to such Insurance Contracts in accordance with and subject to the terms thereof, nor shall anything contained herein (a) constitute or be deemed a waiver by any Insurers of any rights or defenses, including coverage defenses, held by such Insurers under any Insurance Contracts, applicable non-bankruptcy law, equity, or otherwise, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any Insurer.

*K.*    *Indefeasible Distributions.*

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

*A.*    *Allowance of Claims and Interests.*

On and after the Effective Date, and except with respect to Claims and Interests that are Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trustee, and the GUC Administrator, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases Allowing such Claim or Interest.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, as applicable, and without further notice to any party or action, approval, or order of the Bankruptcy Court.

*B.*    *Claims and Interests Administration Responsibilities.*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, as applicable, by order of the Bankruptcy Court, shall have the sole authority with regard to all Claims and Interests that are not Allowed:  (i) to File, withdraw, or litigate to judgment objections to Claims and Interests prior to the Claims Objection Deadline;  (ii) to settle

or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval of the Bankruptcy Court prior to the Claims Objection Deadline; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court prior to the Claims Objection Deadline.

C.      *Estimation of Claims and Interests.*

Before, on, or after the Effective Date, the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and Reorganized PropCo or the relevant Wind-Down Debtor may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim or Interest.

D.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded (whether by virtue of the substantive consolidation of Class 7A General Unsecured Claims provided for under the Plan Settlements, this Plan, or otherwise), or any Claim or Interest that was filed after the Claims Bar Date may be adjusted or expunged on the Claims Register by Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, as applicable, without Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims.*

Other than with respect to Claims Allowed under the Plan or a Final Order of the Bankruptcy Court, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action

against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors. All Proofs of Claim Filed on account of an indemnification obligation to a director, manager, officer, or employee shall automatically be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

F.      *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors and any such new or amended Claim or Interest Filed shall automatically be deemed disallowed in full and expunged without any further action; *provided* that a Claim may be Filed after the Effective Date if the Bankruptcy Court enters an order permitting such late Filing.

G.      *No Distributions Pending Allowance.*

If an objection to a Claim or Interest or any portion thereof is Filed as set forth in the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or any portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

H.      *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions, if any, shall be made to the Holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy Law or as otherwise provided in Article III.C of the Plan.

I.      *Single Satisfaction of Claims.*

Holders of Allowed Claims may assert such Claims against the applicable Debtor or Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims. Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Satisfaction of Claims and Termination of Interests.*

As of the Effective Date, except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created or executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall constitute the exclusive treatment, and be in complete satisfaction, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors performed prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (i) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) on the Effective Date.  The Confirmation Order shall be a judicial determination of the exclusive treatment and satisfaction of all Claims and Interests subject to the occurrence of the Effective Date.

B.      *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

C.      *Release of Liens.*

**Except as otherwise specifically provided in the Plan, the Plan Supplement or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any**

property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Claim (and the applicable agents for such Holder) shall be authorized and directed to release any Collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, to evidence the release of such Lien pursuant to this section, including the execution, delivery, and filing or recording of such releases  (in each case, at the sole cost and expense of the Debtors, Post-Effective Date PropCo, Reorganized PropCo or the Wind-Down Debtors, as applicable, and without recourse, representation or warranty of any kind).  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, mortgages, deeds of trust, Liens, pledges, and other security interests pursuant to this section and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.  In addition, upon the Effective Date, each of the Bridge Agents, the OpCo Agent, and the PropCo Agent shall be authorized to execute and deliver all documents reasonably requested by the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto (in each case, at the sole cost and expense of the Debtors, Post-Effective Date PropCo, Reorganized PropCo or the Wind-Down Debtors, as applicable, and without recourse, representation or warranty of any kind).

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall, at the sole cost and expense of Reorganized PropCo or the Wind-Down Debtors, as applicable, take any and all steps reasonably requested by the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall be entitled to make any such filings or recordings on such Holder's behalf.

D.    *Releases by the Debtors*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, Reorganized PropCo, the Wind-Down Debtors, and any person seeking to exercise the rights of the Debtors or their

Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, Reorganized PropCo, or the Wind-Down Debtors, including any successors to the Debtors or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Plan Settlements, Settlement Stipulation, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlements, or the Settlement Stipulation, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or the business or contractual arrangements between any Debtor and any Released Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, including all Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  For the avoidance of doubt, nothing in these "Releases by the Debtors" releases any direct claims or causes of actions of a third party against the Released Parties.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan or Confirmation Order, the releases contained in the Plan do not (i) release any

post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-Released Party.

Entry of the Confirmation Order shall, if entered as proposed by the Debtors, constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' releases herein, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtors' releases herein are:  (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtors' releases herein; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtors' releases herein against any of the Released Parties.

E.      *Releases by Holders of Claims and Interests.*

Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-contingent, in Law, equity, contract, tort, or otherwise, including any derivative Claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Plan Settlements, the Settlement Stipulation, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlements, or the Settlement Stipulation, before or during

the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan or Confirmation Order, the releases set forth above do not (i) release any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, (iii) release any Claims or Causes of Action against any non-Released Party, (iv) affect any rights and claims of the OpCo Agent against the OpCo Lenders under Section 2.5(e) of the OpCo Credit Agreements with respect to LC Disbursements (as defined in the OpCo Credit Agreements), or (v) release any of the Prepetition Lender Preserved Claims unless (A) Classes 3, 4, and 6 vote to accept the Plan and (B) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan.

Except to the extent a third-party has opted out of the third-party releases in accordance with the terms of the Disclosure Statement Order, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, if entered as proposed by the Debtors, pursuant to Bankruptcy Rule 9019, of the third-party releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Releasing Parties; (v) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (vi) fair, equitable, and reasonable; (vii) given and made after notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the third-party releases.

F.    *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claims and Cause of Action for any Claim related to any act or omission occurring between the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation,

dissemination, negotiation or Filing of the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlements, the Settlement Stipulation, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlements, the Settlement Stipulation, created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.   Notwithstanding anything to the contrary herein, nothing in this Article VIII.F shall release or exculpate any Exculpated Party for any act or omission arising before the Petition Date.

G.    *No Discharge of the Debtors.*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the Debtors, the Wind-Down Debtors, Post-Effective Date PropCo, or Reorganized PropCo. Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors (except as set forth in Article IV.E.2(c)).  As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan.  All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

H.    *Injunction.*

1.    <u>Temporary Injunction for the Wind-Down Debtors, Post-Effective Date PropCo, and Reorganized PropCo.</u>

Except as provided in the foregoing Article VIII.G of the Plan, or as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released, satisfied, or discharged pursuant to the Plan or are subject to exculpation pursuant to the Plan, are enjoined, from and after the Effective Date, from taking any of the following actions

against, as applicable, the Wind-Down Debtors (including the Liquidating Trust), Post-Effective Date PropCo and Reorganized PropCo: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise, except to the extent that a right of setoff, subrogation, or recoupment is asserted in connection with a timely Filed Proof of Claim or arises from any right of setoff, subrogation, or recoupment that a party to an Unexpired Lease may have under applicable bankruptcy or non-bankruptcy law; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan, in each case through and until the date upon which all remaining property vested in Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Plan and the Plan has been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Wind-Down Debtors until the closing of these Chapter 11 Cases.  For the avoidance of doubt, nothing herein enjoins any action by any member of the Required Lender Group in respect of any Prepetition Lender Preserved Claim unless (i) Classes 3, 4, and 6 vote to accept the Plan and (ii) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.

2.    Injunction Protecting Exculpated Parties and Release Parties.

Except as provided in the foregoing Article VIII.G of the Plan, or as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid or delivered pursuant to the Plan or the Confirmation Order,

31481411.1

**all Entities that have held, hold, or may hold Claims or Interests that have been released, satisfied, or discharged pursuant to the Plan or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Released Parties or the Exculpated Parties (to the extent of the exculpation provided pursuant to the Plan with respect to the Exculpated Parties, and to the extent of the releases provided pursuant to the Plan with respect to the Released Parties): (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise, except to the extent that a right of setoff, subrogation, or recoupment is asserted in connection with a timely Filed Proof of Claim or arises from any right of setoff, subrogation, or recoupment that a party to an Unexpired Lease may have under applicable bankruptcy or non-bankruptcy law; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Wind-Down Debtors until the closing of these Chapter 11 Cases. For the avoidance of doubt, nothing herein enjoins any action by any member of the Required Lender Group in respect of any Prepetition Lender Preserved Claim unless (i) Classes 3, 4, and 6 accept this Plan for each Debtor and (ii) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.**

I.      *Protection Against Discriminatory Treatment.*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit,

charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

*J.    Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any Claim, right, or Cause of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

*K.    Subordination Rights.*

The classification and treatment of Claims under the Plan shall conform to the respective contractual, legal, and equitable subordination rights of such Claims, and any such rights shall be settled, compromised, and released pursuant to the Plan.

*L.    Document Retention.*

On and after the Effective Date, Reorganized PropCo, the Wind-Down Debtors, or the Debtors, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors, subject to the applicable provisions of the Liquidating Trust Agreement.

*M.    Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date:  (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE

*A.    Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX hereof:

a.  the Bankruptcy Court shall have entered the Confirmation Order, Filed in a manner consistent in all material respects with the Plan and the Plan Settlements, and such order shall have become a Final Order;

b.  the Debtors shall have paid all professional and advisory fees required to be paid under the DIP Order in full and in cash and not otherwise be in default under the DIP Order (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived or cured in a manner consistent with the DIP Order);

c.  Negocios Libertad shall have paid or caused to be paid the Gerawan Settlement Amount to the Committee Designated Account pursuant to the Plan;

d.  the Sponsor shall have paid the Sponsor Contribution Amount to the Committee Designated Account pursuant to the Plan;

e.  the Debtors shall have paid in full in Cash (or the Debtors shall pay in full in Cash substantially contemporaneously with consummation of the Restructuring Transactions) all Restructuring Expenses incurred or estimated to be incurred, through the Effective Date;

f.  the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

g.  all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been funded into the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

h.  no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-appealable order making illegal or otherwise restricting, preventing, or prohibiting the consummation of the Plan;

i.  the Pre-Effective Date Sale Proceeds, if any, shall have been distributed and applied to the applicable Allowed Claims in accordance with the terms of this Plan;

j.  the Post-Effective Date PropCo Equity shall have been issued by Post-Effective Date PropCo;

k.  the following documents shall be in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions (including shall not be stayed, modified, revised, or vacated, or subject to any pending appeal), and shall not have been terminated prior to the Effective Date: (a) if applicable, the New Organizational Documents; (b) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by this Plan; (c) the Exit Bridge Credit Agreement, the Exit Termed Out DIP Credit Agreement (if any), the Exit PropCo Credit Agreement (if any), and all related loan documents, each as applicable; (d) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring

Transactions; and (e) subject to the terms and conditions of the Lender Support Agreement, and the acceptance by Class 4 and Class 6 of this Plan, the Promissory Note; and (f) all other material customary documents delivered in connection with transactions of this type (including any and all other documents implementing, achieving, contemplated by or relating to the Restructuring Transactions); and

l.   the Debtors shall have otherwise substantially consummated the applicable Restructuring Transactions in a manner consistent in all respects with the Plan.

B.   *Waiver of Conditions.*

The conditions precedent to the Effective Date set forth in Article IX.A may be waived by the Debtors with the consent of the Required Lender Group at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan or consummate the Plan.

C.   *Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

D.   *Effect of Non-Occurrence of Conditions to the Effective Date.*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) release any Liens, mortgages, deeds of trust, pledges, or other security interests against property of the Estates; (iii) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity; or (iv) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.   *Modifications and Amendments.*

Subject to the limitations contained in the Plan, and subject to the consent of the Required Lender Group, the Debtors (including the Liquidating Trust and Reorganized PropCo, as applicable) reserve the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in

such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.

B.      *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

## ARTICLE XI.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the maximum extent permitted under applicable law, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other

matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article X of the Plan, any Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including any sale of the Debtors' real property, to the extent the Liquidating Trustee asks the Bankruptcy Court to approve such sale pursuant to section 363 of the Bankruptcy Code;

10.     Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     Enforce the terms of the Plan Settlements and any definitive documentation relating thereto, and to enter such other relief as the Bankruptcy Court deems appropriate;

12.     Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

14.     Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

15.     Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16.     Enter an order or final decree concluding or closing any of the Chapter 11 Cases;

17.     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

18.     Adjudicate any and all disputes arising from or relating to distributions under the Plan, or any transactions contemplated therein;

19.     Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.     Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.     Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan; *provided, however*, that the Bankruptcy Court shall not have exclusive jurisdiction with respect to the interpretation and enforcement of the Exit Bridge Credit Agreement, the Exit Termed Out DIP Credit Agreement, the Exit PropCo Credit Agreement, or any other loan or security documentation executed in connection with each of the foregoing;

22.     Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23.     Hear and determine matters concerning section 1145 of the Bankruptcy Code;

24.     Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

25.     Enforce all orders previously entered by the Bankruptcy Court;

26.     Hear any other matter not inconsistent with the Bankruptcy Code; and

27.     Enter an order concluding or closing the Chapter 11 Cases.

31481411.1

# ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.    Immediate Binding Effect.*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

*B.    Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, and all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C.    Dissolution of Statutory Committees.*

On the Effective Date, the Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

Following the Effective Date, and notwithstanding the foregoing, the Committee shall remain in place solely for the limited purpose of addressing (i) all final fee applications for all Professionals, and (ii) the resolution of any appeals of the Confirmation Order.  Upon the dissolution of the Committee, the members of the Committee and their respective professionals will cease to have any duty, obligation or role arising from or related to the Debtors' Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases.  The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Effective Date, except for those fees and expenses incurred by such committee's professionals in connection with the matters identified in clauses (i) and (ii) in the forgoing sentence.

*D.    Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect until the Bankruptcy Court enters the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or

shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

E.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

F.      *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served, including via email in addition to any other method of service, on the parties listed below:

> If to the Debtors:
>
> MVK FarmCo LLC
> 7700 N. Palm Ave. Suite 206
> Fresno, CA 93711
> Attention:  John Boken, Interim Chief Executive Officer
> Email address:  jboken@alixpartners.com
>
> with copies to:
>
> Kirkland & Ellis LLP
> 300 N. LaSalle
> Chicago, Illinois 60654
> Attention:  Ryan Blaine Bennett and Jaimie Fedell
> Email addresses:  ryan.bennett@kirkland.com
>                           jaimie.fedell@kirkland.com

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (which may be by email), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received and telephonically confirmed.  After the Effective Date, the Debtors shall have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.      *Enforcement of Confirmation Order.*

On and after the Effective Date, the Debtors, Post-Effective Date PropCo, Reorganized PropCo, and the Wind-Down Debtors and Liquidating Trustee, as applicable, shall be entitled to

enforce the terms of the Confirmation Order and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement).

**H.** *Compensation and Benefits Programs.*

On the Effective Date, any agreement with respect to employee compensation and benefits plans and programs applicable to any of the Debtors' employees and retirees will be set forth in the Plan Supplement.

**I.** *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**J.** *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at <u>cases.stretto.com/primawawona</u> or the Bankruptcy Court's website at <u>deb.uscourts.gov</u>.

**K.** *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided* that at the request of the Debtors, with the consent of the Required Lender Group, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided*, *further*, that any such alteration or interpretation shall be acceptable to the Debtors and the Required Lender Group.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (iii) nonseverable and mutually dependent.

**L.** *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy

Code, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

M.      *Waiver.*

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

N.      *Closing of Chapter 11 Case.*

The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 cases.

Respectfully submitted,

Dated:  March 25, 2024                MVK FarmCo LLC
                                      on behalf of itself and all other Debtors


                                      /s/ *John Boken*
                                      ─────────────────────────────────
                                      Name:       John Boken
                                      Title:      Chief Executive Officer
                                      Company:    MVK FarmCo LLC

**<u>EXHIBIT 2</u>**

**Blackline**

*Solicitation Version*

*As Filed at Docket No. 696*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-11721 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## FIRST AMENDED JOINT CHAPTER 11 PLAN
## OF LIQUIDATION OF
## MVK FARMCO LLC AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)

> **NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER,
> ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION
> OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST, AND THIS PLAN IS
> SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY
> CONDITIONS.  THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:    ryan.bennett@kirkland.com
    jaimie.fedell@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:    jbarry@ycst.com
    kenos@ycst.com
    amark@ycst.com

*Co-Counsel for the Debtors and Debtors in Possession*

Dated:  ~~February~~March 2~~3~~5, 2024

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

i

*Solicitation Version*

*As Filed at Docket No. 696*

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................... 1

ARTICLE I . DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ......................................... 1
A.      Defined Terms. ............................................................................................. 1
B.      Rules of Interpretation. ............................................................................... 2~~3~~4
C.      Computation of Time. ................................................................................. 2~~4~~5
D.      Governing Law. ........................................................................................... 2~~4~~5
E.      Reference to Monetary Figures. ................................................................. 2~~4~~6
F.      Reference to the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors. ......................................................... 2~~4~~6
G.      No Substantive Consolidation; Limited Administrative Consolidation. ... 2~~4~~6
H.      Controlling Document. ................................................................................ 2~~4~~6

ARTICLE II . ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS ..................................................... **2**~~5~~**6**
A.      Administrative Claims and Priority Tax Claims. ...................................... 2~~5~~6
B.      Professional Fee Claims. ............................................................................ 2~~6~~7
C.      Statutory Fees. ............................................................................................ 2~~7~~9
D.      Restructuring Expenses .............................................................................. 2~~7~~9
E.      DIP Claims .................................................................................................. 2~~8~~9

ARTICLE III . CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................................................................................ ~~28~~**30**
A.      Classification of Claims and Interests. ....................................................... ~~28~~30
B.      Summary of Classification. ........................................................................ ~~28~~30
C.      Treatment of Claims and Interests. ............................................................ ~~29~~31
D.      Special Provision Governing Unimpaired Claims. .................................... 3~~4~~6
E.      Elimination of Vacant Classes. .................................................................. 3~~5~~6
F.      Voting Classes; Presumed Acceptance by ~~Non-Voting~~Non-Voting Classes. .. 3~~5~~7
G.      Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. ...................................................................................... 3~~5~~7
H.      Subordinated Claims. .................................................................................. 3~~5~~7
I.      Controversy Concerning Impairment. ........................................................ 3~~5~~7
J.      Intercompany Interests. .............................................................................. 3~~5~~7

ARTICLE IV . MEANS FOR IMPLEMENTATION OF THE PLAN ................ **36**~~8~~
A.      General Settlement of Claims and Interests. .............................................. 3~~6~~8
B.      Plan Settlement. .......................................................................................... 3~~6~~8
C.      Deemed Consolidation of Class 7A. .......................................................... 4~~1~~3
D.      PropCo Equitization Transaction. .............................................................. 4~~1~~3
E.      OpCo ~~Wind-Down~~Wind-Down Transactions. ......................................... 4~~4~~6
F.      GUC Trust. .................................................................................................. 5~~1~~3

G.    Tax Treatment of Liquidating Trust and GUC Trust. ................................ 5~~3~~6
H.    Corporate Action. ................................................................................ 5~~6~~8
I.    Vesting of Assets in Reorganized PropCo or the Wind-Down Debtors. ... 5~~7~~9
J.    Cancellation of Securities and Agreements. ........................................... 5~~7~~9
K.    Effectuating Documents; Further Transactions. ...................................... 5~~8~~60
L.    Exemption from Certain Taxes and Fees. ............................................... 5~~8~~60
M.    Preservation of Causes of Action. ......................................................... 5~~9~~61
N.    Release of Avoidance Actions .............................................................. 60~~2~~
O.    Exit Facilities. .................................................................................... 60~~2~~
P.    Deemed Assignment of Certain Claims Against the OpCo Credit Parties and/or the Wind-Down Debtors ....................................................................... 63

**ARTICLE V . TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................................................................................................... 6~~1~~4
A.    Assumption and Rejection of Executory Contracts and Unexpired Leases. ... 6~~1~~4
B.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases ................................................................................................... 6~~2~~5
C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases. ... 6~~3~~5
D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases. ... 6~~3~~6
E.    Insurance Contracts. ............................................................................ 6~~5~~7
F.    D&O Liability Insurance Policies. ......................................................... 6~~6~~9
G.    Indemnification Obligations. ................................................................ 6~~6~~9
H.    Modifications, Amendments, Supplements, Restatements, or Other Agreements. ... 6~~7~~0
I.    Reservation of Rights. ......................................................................... 6~~7~~0
J.    Nonoccurrence of Effective Date. ......................................................... 6~~7~~0

**ARTICLE VI . PROVISIONS GOVERNING DISTRIBUTIONS** ....................... 6~~7~~0
A.    Timing and Calculation of Amounts to Be Distributed. ......................... 6~~7~~0
B.    Disbursing Agent. ............................................................................... 6~~8~~71
C.    Rights and Powers of the Disbursing Agent(s). ..................................... 6~~8~~71
D.    Delivery of Distributions and Undeliverable or Unclaimed Distributions. ... 6~~8~~71
E.    Compliance with Tax Requirements/Allocations. ................................... 7~~0~~3
F.    Allocation of Plan Distributions Between Principal and Interest. ............. 7~~0~~3
G.    Setoffs and Recoupment. ..................................................................... 7~~1~~4
H.    No Postpetition Interest on Claims. ...................................................... 7~~1~~4
I.    Foreign Currency Exchange Rate. ........................................................ 7~~1~~4
J.    Claims Paid or Payable by Third Parties. .............................................. 7~~1~~4
K.    Indefeasible Distributions. ................................................................... 7~~2~~5

**ARTICLE VII . PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS** ............................................... 7~~2~~5
A.    Allowance of Claims and Interests. ....................................................... 7~~2~~5
B.    Claims and Interests Administration Responsibilities. ............................ 7~~3~~6
C.    Estimation of Claims and Interests. ....................................................... 7~~3~~6
D.    Adjustment to Claims or Interests without Objection. ............................. 7~~3~~6
E.    Disallowance of Claims. ...................................................................... 7~~4~~7
F.    Amendments to Claims. ....................................................................... 7~~4~~7

*Solicitation Version*

*As Filed at Docket No. 696*

G.     No Distributions Pending Allowance. ....................................................................... 74~~7~~

H.     Distributions After Allowance. ................................................................................ 74~~7~~

I.     Single Satisfaction of Claims. .................................................................................. 75~~8~~

**ARTICLE VIII . SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS** ........................................................................................................................ **75~~8~~**

A.     ~~Discharge~~Satisfaction of Claims and Termination of Interests. ............................ 75~~8~~

B.     Term of Injunctions or Stays. .................................................................................. 75~~8~~

C.     Release of Liens. ...................................................................................................... 76~~9~~

D.     Releases by the Debtors .......................................................................................... 76~~9~~

E.     Releases by Holders of Claims and Interests. ........................................................ 78~~1~~

F.     Exculpation. ............................................................................................................. 80~~3~~

G.     No Discharge of the ~~Wind-Down~~ Debtors. ......................................................... 80~~3~~

H.     Injunction. ................................................................................................................ 80~~3~~

I.     Protection Against Discriminatory Treatment. ....................................................... 83~~6~~

J.     Recoupment. ............................................................................................................. 83~~6~~

K.     Subordination Rights. .............................................................................................. 83~~6~~

L.     Document Retention. ............................................................................................... 83~~6~~

M.     Reimbursement or Contribution. ............................................................................. 83~~6~~

**ARTICLE IX . CONDITIONS PRECEDENT TO CONFIRMATION AND THE EFFECTIVE DATE** ................................................................................................................. **83~~6~~**

A.     Conditions Precedent to the Effective Date. ........................................................... 84~~7~~

B.     Waiver of Conditions. ............................................................................................. 85~~8~~

C.     Substantial Consummation. ..................................................................................... 85~~8~~

D.     Effect of Non-Occurrence of Conditions to the Effective Date. ............................. 85~~8~~

**ARTICLE X . MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN** ..................................................................................................................................... **85~~8~~**

A.     Modifications and Amendments. ............................................................................. 85~~8~~

B.     Effect of Confirmation on Modifications. ............................................................... 86~~9~~

C.     Revocation or Withdrawal of the Plan. ................................................................... 86~~9~~

**ARTICLE XI . RETENTION OF JURISDICTION** ....................................................... **86~~9~~**

**ARTICLE XII . MISCELLANEOUS PROVISIONS** ...................................................... **89~~2~~**

A.     Immediate Binding Effect. ...................................................................................... 89~~2~~

B.     Additional Documents. ............................................................................................ 89~~2~~

C.     Dissolution of Statutory Committees. ..................................................................... 89~~2~~

D.     Reservation of Rights. ............................................................................................. 89~~2~~

E.     Successors and Assigns. .......................................................................................... 90~~3~~

F.     Service of Documents. ............................................................................................. 90~~3~~

G.     Enforcement of Confirmation Order. ...................................................................... 90~~3~~

H.     Compensation and Benefits Programs. ................................................................... 91~~4~~

I.     Entire Agreement. .................................................................................................... 91~~4~~

J.     Exhibits. ................................................................................................................... 91~~4~~

K.     Nonseverability of Plan Provisions. ....................................................................... 91~~4~~

*Solicitation Version*

*As Filed at Docket No. 696*

L.    Votes Solicited in Good Faith. .................................................................... 914

M.    Waiver. ....................................................................................................... 925

N.    Closing of Chapter 11 Case. ....................................................................... 925

## INTRODUCTION

MVK FarmCo LLC and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases propose this joint chapter 11 plan for the resolution of the outstanding Claims against and Interests in the Debtors pursuant to chapter 11 of the Bankruptcy Code. Capitalized terms used herein and not otherwise defined have the meanings ascribed to such terms in Article ~~I~~I.A of this Plan. Although proposed jointly for administrative purposes, the Plan constitutes a separate Plan for each Debtor for the resolution of outstanding Claims and Interests pursuant to the Bankruptcy Code. Each Debtor is a proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code. The classifications of Claims and Interests set forth in Article III of the Plan shall be deemed to apply separately with respect to each Plan proposed by each Debtor, as applicable. For the avoidance of doubt, the Plan does not contemplate substantive consolidation of any of the Debtors. Reference is made to the Disclosure Statement for a discussion of the Debtors' history, business, properties and operations, risk factors, as well as a summary and analysis of this Plan, the Restructuring Transactions, and certain related matters.

ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings and effect ascribed to them below.

1.    "*1970 Group*" means 1970 Group, Inc.

2.    "*1970 Group Agreement*" means that certain Substitute Insurance Collateral Facility Agreement, dated as of December 7, 2021, by and between 1970 Group, Inc. and Wawona Packing Co., LLC (as amended, restated, and otherwise supplemented).

3.    ~~1.~~ "*9019 Motion*" means the *Debtors' Motion for Entry of an Order (I) Approving the Settlement Agreement Among the Debtors, the Creditors' Committee, the Sponsor, the Required Lender Group, and McKinsey, (II) Authorizing the Debtors to Take Any and All Actions Necessary to Effectuate the Terms Thereto, and (III) Granting Related Relief* [Docket No. 542].

4.    "*9019 Motion Settlement*" means the settlement by and among the 9019 Motion Settlement Parties, which settlement is incorporated into the terms of this Plan and filed with the Bankruptcy Court pursuant to the Settlement Stipulation.

1

5.    *"9019 Motion Settlement Parties"* means (a) the Debtors, (b) the Committee, (c) the Sponsor, (d) McKinsey, and (e) the Required Lender Group.

6.    2.  *"9019 Order"* means an order entered by the Bankruptcy Court approving the 9019 Motion, which may be the Confirmation Order.

7.    3.  *"Administrative Claim"* means a Claim against any of the Debtors for costs and expenses of administration of the Estates pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the Debtors' business; (b) Allowed Professional Fee Claims; (c) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code and; (d) Adequate Protection Superpriority Claims (as defined in the Cash Collateral Order).

8.    4.  *"Administrative Claims Bar Date"* means the applicable deadline by which all requests for Administrative Claims must be Filed and served on the Debtors, which shall be 30 days after the Effective Date; *provided* that Filing a request for payment of Administrative Claims is not required where the Plan, Bankruptcy Code, or a Final Order does not require such Filing.

9.    5.  *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code as if such entity was a debtor in a case under the Bankruptcy Code.

10.    6.  *"Agent"* means any of the Bridge Agents, the OpCo Agent, the PropCo Agent, and/or, as applicable, any agent appointed under or in connection with the DIP Credit Agreement.

11.    7.  *"Allowed"* means, with respect to any Claim against or Interest in a Debtor, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Claims Bar Date or a request for payment of an Administrative Claim timely Filed by the Administrative Claims Bar Date (or for which Claim a Proof of Claim or request for payment of Administrative Claim is not or shall not be required to be Filed under the Plan, the Bankruptcy Code, or pursuant to a Final Order); (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no contrary or superseding Proof of Claim, as applicable, has been timely Filed; (c) a Claim or Interest allowed pursuant to the Plan or a Final Order; *provided* that with respect to a Claim described in clause (a) or (b) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof is interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest has been allowed by a Final Order. Except as otherwise specified in the Plan or any Final Order, and except as provided in sections 506(b) or 511 of the Bankruptcy Code, an Allowed Claim shall not, for purposes of computing distributions under this Plan, include interest on such Claim from and after the Petition Date. Notwithstanding anything to the contrary herein, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under

sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, following an objection to a claim filed on such grounds. For the avoidance of doubt, a Proof of Claim Filed after the Claims Bar Date, or a request for payment of an Administrative Claim Filed after the Administrative Claims Bar Date, shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such ~~late-Filed~~late-Filed Claim. "*Allow*" and "*Allowing*" shall have correlative meanings.

12. ~~8.~~ "*Avoidance Actions*" means any and all Causes of Action to avoid a transfer of property or an obligation incurred by any of the Debtors arising under sections 542, 544, 545, and 547 through and including 553 of the Bankruptcy Code or other similar or related Law.

13. ~~9.~~ "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended.

14. ~~10.~~ "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware.

15. ~~11.~~ "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as applicable to the Chapter 11 Cases, and the general, local, and chambers' rules of the Bankruptcy Court.

16. ~~12.~~ "*Bar Date Order*" means that certain *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Under Section 503(B)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(B)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 240].

17. ~~13.~~ "*Bidding Procedures Order*" means the order of the Bankruptcy Court approving, among other things, the bidding procedures governing submission and evaluation of bids to purchase some or all of the Debtors' assets [Docket No. 252].

18. ~~14.~~ "*Bridge Administrative Agent*" means Rabobank in its capacity as administrative agent under the Bridge Credit Agreement.

19. ~~15.~~ "*Bridge Agents*" means the Bridge Administrative Agent, the Bridge PropCo Collateral Agent, and the Bridge OpCo Collateral Agent.

20. ~~16.~~ "*Bridge Credit Agreement*" means that certain multi-draw senior secured superpriority priming credit agreement dated as of April 3, 2023, by and among OpCo, PropCo, and GroupCo, as borrowers, the guarantors party thereto, the Bridge Lenders, and the Bridge Agents, as may be amended, restated, supplemented, or otherwise modified from time to time.

21. ~~17.~~ "*Bridge Lenders*" means the lender parties to the Bridge Credit Agreement.

22.    18. "*Bridge New Money Term Loan Claims*" means the Claims arising from or in connection with the Bridge New Money Term Loans and any adequate protection claims granted on account of Bridge New Money Term Loan Claims under the Cash Collateral Order or any DIP Order.

23.    19. "*Bridge New Money Term Loans*" means the outstanding term loans issued under the Bridge Credit Agreement.

24.    20. "*Bridge OpCo Collateral Agent*" means RBC, in its capacity as collateral agent with respect to the OpCo Collateral under (and as defined in) the Bridge Credit Agreement.

25.    21. "*Bridge OpCo Roll-Up Term Loan Claim Distribution*" means (a) the amount of any Pre-Effective Date Sale Proceeds remaining after satisfying in full any Allowed Secured Claims with Liens senior to the Liens of the Bridge OpCo Roll-Up Term Loan Claims on such Pre-Effective Date Sale Proceeds and in accordance with the Pre-Effective Date Sale Proceeds Priority, and (b) any proceeds of the Liquidating Trust Assets in excess of the amounts necessary to satisfy in full: (i) the Wind-Down Debtors' Expenses; and (ii) if applicable, the Exit Termed Out DIP Facility; and (iii) the Exit Bridge Facility, if any, after giving effect to each of the foregoing the Post-Effective Date PropCo Liquidating Trust Distribution Amount.

26.    22. "*Bridge OpCo Roll-Up Term Loan Claims*" means the Claims arising from or in connection with the Bridge OpCo Roll-Up Term Loans and any adequate protection claims granted on account of Bridge OpCo Roll-Up Term Loans under the Cash Collateral Order or any DIP Order.

27.    23. "*Bridge OpCo Roll-Up Term Loans*" means the term loans issued under the Bridge Credit Agreement that resulted from the conversion of one dollar of the outstanding principal amount of OpCo Loans into Bridge OpCo Roll-Up Term Loans for every dollar of committed Bridge New Money Term Loans, once drawn.

28.    24. "*Bridge PropCo Collateral Agent*" means Rabobank, in its capacity as collateral agent with respect to the PropCo Collateral under the Bridge Credit Agreement.

29.    25. "*Bridge Required Lenders*" means the Required Lenders under (and as defined in) the Bridge Credit Agreement.

30.    26. "*Bridge Secured Claims*" means the Bridge New Money Term Loan Claims and the Bridge OpCo Roll-Up Roll-Up Term Loan Claims.

31.    27. "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

32.    28. "*Cash*" means the legal tender of the United States of America or the equivalent thereof, including bank deposits and checks.

33. ~~29.~~ "*Cash Collateral*" has the meaning ascribed to it under section 363(a) of the Bankruptcy Code.

34. ~~30.~~ "*Cash Collateral Order*" means the *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, And 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 108], the Second *Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, and 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 250], the *Third Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, and 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 381], the *Fourth Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, and 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 421], the Fifth Interim Cash Collateral Order, or a final order entered in the Chapter 11 Cases authorizing the use of Cash Collateral, as applicable.

35. ~~31.~~ "*Causes of Action*" means any and all actions, Claims (as such term is defined in section 101(5) of the Bankruptcy Code), causes of action, controversies, demands, rights, actions, Liens, indemnities, interests, guaranties, suits, obligations, liabilities, damages, judgments, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known, unknown, contingent or non-~~non~~-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or undisputed, Secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "Causes of Action" includes:  (a) any rights of setoff, counterclaims, or recoupments, and any Claims for breach of contract or for breach of duties imposed by Law or in equity; (b) any and all Claims based on or relating to, or in any manner arising from, in whole or in part, tort, breach of contract, breach of fiduciary duty, violation of state or federal Law, or breach of any duty imposed by Law or in equity, including Securities laws, negligence, and gross negligence; (c) any and all rights to dispute, object to, compromise, or seek to recharacterize, reclassify, subordinate, or disallow Claims or Interests; (d) any and all Claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (e) any and all Claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; (f) any and all state or foreign Law fraudulent transfer or similar Claims; and (g) any Avoidance Action.

36. ~~32.~~ "*Chapter 11 Cases*" means, when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy

Court, and when used with reference to all of the Debtors, the procedurally consolidated and jointly administered chapter 11 cases pending for the Debtors in the Bankruptcy Court.

37.    ~~33.~~ "*Chubb Agribusiness Policy*" means policy no.  PAC1100269 issued by Pacific Employers Insurance Company for the period of September 30, 2023 to September 30, 2024, which, for the avoidance of doubt, is an Insurance Contract.

38.    ~~34.~~ "*Claim*" has the meaning ascribed to it in section 101(5) of the Bankruptcy Code.

39.    ~~35.~~ "*Claims Bar Date*" means the applicable bar date by which Proofs of Claim must be Filed with respect to Claims other than Administrative Claims allowable under sections 503(b) or 507(a)(2) of the Bankruptcy Code as an expense of administration incurred in the ordinary course, as established by the Bar Date Order or the Plan; provided that if there is a conflict relating to the bar date for a particular Claim, the Plan shall control.

40.    ~~36.~~ "*Claims Objection Deadline*" means the date that is 120 days after the Effective Date, as may be extended from time to time by motion of the Liquidating Trustee or GUC Administrator, as applicable.

41.    ~~37.~~ "*Claims Register*" means the official register of Claims against the Debtors maintained by the clerk of the Bankruptcy Court or the Notice, Claims, and Solicitation Agent.

42.    ~~38.~~ "*Class*" means a category of Holders of Claims or Interests as set forth in Article III of the Plan under section 1122 of the Bankruptcy Code.

43.    ~~39.~~ "*Class 7 Distribution Amount*" means the Sponsor Contribution Amount and the Gerawan Settlement Amount.

44.    ~~40.~~ "*Class 7A Distribution Amount*" means the *pro rata* portion of the Class 7 Distribution Amount allocable to Allowed Class 7A General Unsecured Claims, before giving effect to the GUC Required Lender Allocation.

45.    ~~41.~~ "*Class 7B Distribution Amount*" means the *pro rata* portion of the Class 7 Distribution Amount allocable to Allowed Class 7B Prepetition Credit Agreement Deficiency Claims, before giving effect to the GUC Required Lender Allocation.

46.    ~~42.~~ "*Collateral*" means any property or interest in property of the Estate of any Debtor subject to a Lien, charge, or other encumbrance to secure the payment or performance of a Claim, which Lien, charge, or other encumbrance is not subject to a Final Order ordering the remedy of avoidance of any such Lien, charge, or other encumbrance.

47.    ~~43.~~ "*Committee*" means the statutory committee of unsecured creditors, appointed by the U.S. Trustee in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code [Docket No. 123].

48.    ~~44.~~ "*Committee Designated Account*" means a bank account designated by the Committee prior to the Effective Date to hold the Sponsor Contribution Amount and the

Gerawan Settlement Amount until all Class 7A General Unsecured Claims have been reconciled and the *Pro Rata* allocation of the Class 7 Distribution Amount between the Class 7A Distribution Amount and the Class 7B Distribution Amount can be calculated.

49.  45.  "*Confirmation*" means entry of the Confirmation Order on the docket of the Chapter 11 Cases.

50.  46.  "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

51.  47.  "*Confirmation Hearing*" means the hearing(s) before the Bankruptcy Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code at which the Debtors shall seek entry of the Confirmation Order.

52.  48.  "*Confirmation Objection Deadline*" means the deadline by which any objections to Confirmation of the Plan must be Filed.

53.  49.  "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Required Lender Group.

54.  50.  "*Consummation*" means the occurrence of the Effective Date.

55.  "*Consummation Date Crop Value*" means an amount equal to $2,829 per acre for each acre that PropCo or Reorganized PropCo owns as of the Effective Date of the Plan that (i) is not under lease, (ii) is not subject to an early possession agreement, (iii) is not part of Raisin City, and (iv) has trees that were planted before January 1, 2020; *provided* that, with respect to any acres that are under contract for sale but not the subject of an early possession agreement pursuant to which the corresponding purchaser has agreed to the cultural costs it is required to pay to the Debtors, the amount that such purchaser has agreed to pay the Debtors in respect of cultural costs shall apply to such acres.

56.  51.  "*Cure*" or "*Cure Claim*" means a monetary Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's default under any Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to section 365(b)(2) of the Bankruptcy Code.

57.  52.  "*Cure Notice*" means that *Notice to Contract Parties to Potentially Assumed Executory Contracts and Unexpired Leases* [Docket No. 258], which the Debtors Filed and caused to be served upon counterparties to such Executory Contracts or Unexpired Leases, and which included:  (a) procedures for objecting to the proposed assumption or assumption and assignment of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of any related disputes.

58.   53. "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy" or run-off endorsement) that have been issued to or provide coverage at any time to any of the Debtors or their predecessors providing directors', members', trustees', officers', or managers' liability coverage and all agreements, documents, or instruments relating thereto.

59.   54. "*Debtor*" means one or more of the Debtors, as debtors and debtors in possession, each in its respective individual capacity as a debtor and debtor in possession in the Chapter 11 Cases.

60.   55. "*Debtors*" means, collectively:  MVK FarmCo LLC, MVK Intermediate Holdings LLC, Gerawan Farming LLC, Gerawan Supply, Inc., Gerawan Farming Partners LLC, Gerawan Farming Services LLC, PropCo, OpCo, and GFP LLC.

61.   56. "*Derivative Action*" shall have the meaning set forth in the Disclosure Statement.

62.   57. "*DIP Agent*" means the administrative agent under any DIP Facility.

63.   58. "*DIP Claims*" means any claims arising under or in connection with any DIP Facility.

64.   59. "*DIP Credit Agreement*" means the definitive credit agreement governing any DIP Facility.

65.   60. "*DIP Facility*" means any debtor-in-possession financing credit facility approved by the Bankruptcy Court and provided to any of the Debtors during the Chapter 11 Cases.

66.   61. "*DIP Lenders*" means the lenders party to any DIP Credit Agreement.

67.   62. "*DIP Loan Documents*" means the DIP Credit Agreement, the Interim DIP Order, the Final DIP Order, the DIP Budget, the DIP Security Documents, and all other documents related to the DIP Facility.

68.   63. "*DIP Order*" means the interim or final order, as applicable, of the Bankruptcy Court authorizing any of the Debtors' entry into any DIP Facility.

69.   64. "*DIP Required Lenders*" means the "Required Lenders" under and as defined in the DIP Credit Agreement.

70.   65. "*DIP Security Documents*" means the "Security Documents" under and as defined in the DIP Credit Agreement.

71.   66. "*Disbursing Agent*" means, as applicable, the Liquidating Trustee, the GUC Administrator, or any other Entity or Entities selected by the Liquidating Trustee, the GUC Administrator, the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the

Wind-Down Debtors, as applicable, to make or facilitate distributions as contemplated under the Plan.

72. 67. "*Disclosure Statement*" means the disclosure statement for the Plan, including all exhibits and schedules attached thereto, and as amended, modified, or supplemented from time to time in accordance with the terms thereof.

73. 68. "*Disclosure Statement Order*" means the o*Order* of the Bankruptcy Court approving the *(I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 433] (entered on December 28, 2023).

74. 69. "*Disputed*" means, with respect to a Claim or Interest, a Claim or Interest, or any portion thereof, that is not yet Allowed or disallowed.

75. 70. "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims against or Allowed Interests in the Debtors are eligible to receive distributions under the Plan, which shall be the later of (a) 30 days after the Effective Date or (b) such other date as designated in a Final Order.

76. 71. "*Effective Date*" means, with respect to the Plan and any applicable Debtors, the date that is the first Business Day after the Confirmation Date on which all conditions precedent set forth in Article IX.A of the Plan have been satisfied or waived in accordance with Article IX.B of the Plan.

77. 72. "*Entity*" has the meaning set forth in section 101(15) of the Bankruptcy Code.

78. 73. "*Estate*" means, as to each Debtor, the estate created for such Debtor pursuant to sections 301 and 541 of the Bankruptcy Code upon the commencement of the applicable Debtor's Chapter 11 Case.

79. 74. "*Exculpated Party*" means, collectively, and, in each case, solely in their respective capacities as such and solely to the extent they served in such capacity between the Petition Date and the Effective Date: (a) the Debtors; (b) the Debtors' Professionals; (c) directors and officers of the Debtors who served during the case; (d) the Committee and each member thereof, solely in its capacity as such; and (e) the Committee's Professionals.

80. 75. "*Executory Contract*" means a contract to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 or 1123 of the Bankruptcy Code, including, without limitation, the Master Lease Agreement.

81. 76. "*Existing Equity Interests*" means, collectively, all Interests in MVK FarmCo LLC outstanding immediately prior to the Effective Date.

82. 77. "*Exit Bridge Agent*" means the administrative agent under the Exit Bridge Credit Agreement.

83. 78. "*Exit Bridge Credit Agreement*" means the definitive credit agreement governing the Exit Bridge Facility, a form of which shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the Bridge Required Lenders.

84. 79. "*Exit Bridge Facility*" means a credit facility provided for under the Exit Bridge Credit Agreement in the amount of outstanding Bridge New Money Term Loans, after giving effect to the application of any Pre-Effective Date Sale Proceeds applied to the Bridge New Money Term Loans, and with Reorganized PropCo and the Liquidating Trust, as borrowers, and Post-Effective Date PropCo, and, if still existing, the Wind Down Debtors, as guarantors, which shall be secured as provided in the Plan Supplement.

85. 80. "*Exit Bridge Lenders*" means the lenders party to the Exit Bridge Credit Agreement.

86. 81. "*Exit Bridge Facility Term Loans*" means the loans issued under the Exit Bridge Credit Agreement.

87. 82. "*Exit Credit Agreement*" or "*Exit Credit Agreements*" mean, collectively, the Exit Termed Out DIP Credit Agreement (if any), the Exit Bridge Credit Agreement, and the Exit PropCo Credit Agreement (if any).

88. 83. "*Exit Facility*" or "*Exit Facilities*" mean, collectively, the Exit Termed Out DIP Facility (if any), the Exit Bridge Facility, and the Exit PropCo Facility (if any).

89. 84. "*Exit Facility Agent*" or "*Exit Facility Agents*" mean, collectively, the Exit Termed Out DIP Agent (if any), the Exit Bridge Agent, and (if any) the Exit PropCo Agent.

90. 85. "*Exit Facility Lenders*" means, collectively, the Exit Termed Out DIP Lenders (if any), the Exit Bridge Lenders, and (if any) the Exit PropCo Lenders.

91. 86. "*Exit Intercreditor Term Sheet*" means that certain term sheet that summarizes selected terms of an intercreditor agreement to be entered into among the Exit PropCo Agent, the Exit Bridge Agent, and the Exit Termed Out DIP Agent setting forth the relative priority of their respective Liens on the assets of Post-Effective Date PropCo and Reorganized PropCo, and the Liquidating Trust securing the obligations under the Exit PropCo Facility, the Exit Termed Out DIP Facility and the Exit Bridge Facility, as applicable, and other related matters.

92. 87. "*Exit PropCo Agent*" means the administrative agent under the Exit PropCo Credit Agreement.

93. 88. "*Exit PropCo Credit Agreement*" means the definitive credit agreement governing the Exit PropCo Facility, to be provided if determined by the PropCo Required Lenders, Reorganized PropCo, and Post-Effective Date PropCo to be in the best interest of Reorganized PropCo and Post-Effective Date PropCo, a form of which shall be included in the

Plan Supplement, and which shall be in form and substance acceptable to the PropCo Required Lenders.

94. 89. "*Exit PropCo Facility*" means any credit facility provided for under the Exit PropCo Credit Agreement and with Reorganized PropCo, as borrower, and Post- Post-Effective Date PropCo, as the guarantor, which shall be secured as provided in the Plan Supplement.

95. 90. "*Exit PropCo Lenders*" means the lenders party to the Exit PropCo Credit Agreement.

96. 91. "*Exit Termed Out DIP Agent*" means the administrative agent under the Exit Termed Out DIP Credit Agreement.

97. 92. "*Exit Termed Out DIP Credit Agreement*" means the definitive credit agreement governing the Exit Termed Out DIP Facility, a form of which shall be included in the Plan Supplement, and which shall be in form and substance acceptable to the DIP Required Lenders.

98. 93. "*Exit Termed Out DIP Facility*" means a credit facility provided for under the Exit Termed Out DIP Credit Agreement in the amount of outstanding DIP Claims, after giving effect to the application of any Pre-Effective Date Sale Proceeds applied to the DIP Claims, and with Reorganized PropCo and the Liquidating Trust, as borrowers, and Post-Effective Date PropCo, and, if still existing, the Wind-Down Debtors, as guarantors, which shall be secured as provided in the Plan Supplement.

99. 94. "*Exit Termed Out DIP Lenders*" means the lenders party to the Exit Termed Out DIP Facility.

100. 95. "*Exit Termed Out DIP Facility Term Loans*" means the loans issued under the Exit Termed Out DIP Credit Agreement.

101. 96. "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in the 1961 Judicial Code.

102. 97. "*Fifth Interim Cash Collateral Order*" means *Fifth Interim Order Pursuant to 11 U.S.C. §§ 105, 361, 362, 363, 503, 506, 507, and 552 and Fed. R. Bankr. P. 2002, 4001, 6003, 6004, and 9014 (I) Authorizing the Debtors to Use Cash Collateral, (II) Providing Adequate Protection to Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Docket No. 456].

103. 98. "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Cases with the Bankruptcy Court or, with respect to the filing of a Proof of Claim, the Notice, Claims, and Solicitation Agent or the Bankruptcy Court.

104. 99. "*Final DIP Order*" means that means that certain final order entered by the Bankruptcy Court authorizing, inter alia, the Debtors to enter into the DIP Facility and incur postpetition obligations thereunder, in each case on a final basis.

105.    ~~100.~~ "*Final Order*" means an order of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter that has not been reversed, modified, or amended, that is not stayed, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order could be appealed or from which certiorari could be sought or the new trial, re-argument, or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice; *provided* that the possibility that a motion under rule 60 of the Federal Rules of Civil Procedure or any comparable Bankruptcy Rule may be filed relating to such order or judgment shall not cause such order or judgment to not be a Final Order.

106.    ~~101.~~ "*General Unsecured Claim*" means any Claim that is not: (a) paid in full prior to the Effective Date pursuant to an order of the Bankruptcy Court; (b) a Priority Claim; (c) an Other Priority Claim; (d) a Secured Claim; (e) an Other Secured Claim; (f) an Intercompany Claim; (g) a Prepetition Loan Claim; (h) a Professional Fee Claim; (i) a Section 510(b) Claim; or (j) a Prepetition Credit Agreement Deficiency Claim.

107.    ~~102.~~ "*General Unsecured Claim Liquidating Trust Distribution*" means any proceeds of the Liquidating Trust Assets in excess of the amounts necessary to satisfy in full: (i) the Wind-Down Debtors' Expenses; (ii) ~~if applicable, the Exit Termed Out DIP Facility; (iii) the Exit Bridge Facility; (iv) the~~ the Post-Effective Date PropCo Liquidating Trust Distribution Amount; (iii) the Bridge OpCo Roll-Up Term Loan Claim~~s~~ Distribution; and (~~v~~iv) the OpCo Secured Claim~~s~~ Distribution, if any, after giving effect to each of the foregoing.

108.    ~~103.~~ "*General Unsecured Claims Reconciliation Process*" means the reconciliation of General Unsecured Claims, which shall be the responsibility of the GUC Administrator.

109.    ~~104.~~ "*Gerawan Interested Parties*" means (a) Daniel J. Gerawan, (b) Negocios Libertad LLC, and (c) with respect to (a) and (b), any Affiliates thereof, excluding, for the avoidance of doubt, the Debtors and any other Released Parties.

110.    ~~105.~~ "*Gerawan Interested Parties' Plan Objection*" means the *Limited Objection and Reservation of Rights of Negocios Libertad LLC and Daniel Gerawan to Confirmation of the Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 535].

111.    ~~106.~~ "*Gerawan Litigation Claims*" means any and all Claims and Causes of Action held by the Debtors that could be asserted against the Gerawan Interested Parties.

112.    ~~107.~~ "*Gerawan Settlement Amount*" means $250,000 in Cash, in the aggregate, to be paid or caused to be paid to the Committee Designated Account by Negocios Libertad on behalf of the Gerawan Interested Parties on the Effective Date.

113.    "*Gerawan Settlement Parties*" means the Debtors and the Gerawan Interested Parties.

114. ~~108.~~ "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

115. ~~109.~~ "*GroupCo*" means MVK Intermediate Holdings LLC.

116. ~~110.~~ "*GUC Administrator*" means the Person or Entity, or any successor thereto, selected by the Committee to hold, distribute, and otherwise administer the GUC Trust, to object to, settle, or otherwise reconcile General Unsecured Claims, and to make distributions from the GUC Trust to Holders of Allowed General Unsecured Claims pursuant to this Plan. For the avoidance of doubt, the Liquidating Trustee, and not the GUC Administrator, shall be responsible for reconciling any Claims other than General Unsecured Claims, including, but not limited to, Claims alleging entitlement to treatment under section 503(b)(9) of the Bankruptcy Code.

117. ~~111.~~ "*GUC Required Lender Allocation*" means the *pro rata* portion of the Class 7B Distribution Amount allocable to each member of the Required Lender Group on account of their respective Allowed Class 7B Prepetition Credit Agreement Deficiency Claims (including but not limited to amounts payable in respect of additional Allowed Class 7B Prepetition Credit Agreement Deficiency Claims purchased or otherwise acquired by the Required Lenders at any time), which amounts shall be deemed contributed to the GUC Trust by each member of the Required Lender Group solely for the ratable benefit of Holders of Allowed Class 7A General Unsecured Claims so long as Class 7A votes to accept the Plan.

118. ~~112.~~ "*GUC Trust*" means the liquidating trust established on the Effective Date in accordance with the Plan to hold and distribute the GUC Trust Assets and otherwise administer General Unsecured Claims.

119. ~~113.~~ "*GUC Trust Advisory Committee*" means the committee formed in accordance with Article IV.F.3. herein, which shall be comprised of members of the Committee and/or any other entities appointed by the Committee, and which shall direct the GUC Administrator to carry out its powers in accordance with the Plan and Confirmation Order.

120. ~~114.~~ "*GUC Trust Agreement*" means the trust agreement establishing and delineating the terms and conditions for the creation and operation of the GUC Trust, which shall (a) be drafted by the Committee in consultation with (i) the Debtors and the Required Lender Group, and (ii) the Sponsor, but solely to confirm the terms thereof are not inconsistent with the ~~Plan~~9019 Settlement, and (b) be in form and substance reasonably acceptable to (i) the Debtors and the Required Lender Group and (ii) the Sponsor, but solely to confirm the terms thereof are not inconsistent with the ~~Plan~~9019 Settlement.

121. ~~115.~~ "*GUC Trust Assets*" means the Class 7A Distribution Amount and, if applicable, the GUC Required Lender Allocation.

122. ~~116.~~ "*GUC Trust Fees and Expenses*" means the reasonable and documented fees and expenses incurred on or after the Effective Date by the GUC Trust and any professionals retained by the GUC Administrator in administering the GUC Trust, including, without

limitation, the fees and expenses incurred on or after the Effective Date in reconciling, objecting to, and paying General Unsecured Claims.

123. ~~117.~~ "*GUC Trust Beneficial Interests*" means a non-~~non~~ certified beneficial interest in the GUC Trust granted to each beneficiary of the GUC Trust, which shall entitle such Holder to the treatment set forth in Article III.C.7 of the Plan.

124. ~~118.~~ "*Holder*" means an Entity holding a Claim against or an Interest in a Debtor, as applicable.

125. ~~119.~~ "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

126. ~~120.~~ "*Insurance Contract*" means any insurance policy that has been issued at any time to or provide coverage to any of the Debtors or their predecessors and any agreements, documents, or instruments relating thereto, including, without limitation, all D&O Liability Insurance Policies, but, for the avoidance of doubt, does not include the 1970 Group Agreement.

127. ~~121.~~ "*Insurer*" means any company or entity that issued or entered into an Insurance Contract (including any third-party administrator)~~, any assignee of such Insurance Contract by virtue of subrogation or otherwise, including, but not limited to, any collateral provider under an Insurance Contract,~~ and/or any respective predecessors and/or affiliates thereof.

128. ~~122.~~ "*Intercompany Claim*" means any Claim against a Debtor held by another Debtor. For the avoidance of doubt, none of the Post-Petition Rent Entitlement, the OpCo Contribution Amount, or the Post-Effective Date PropCo Assigned Claims shall be considered Intercompany Claims.

129. ~~123.~~ "*Intercompany Interest*" means any Interest held by a Debtor in another Debtor.

130. ~~124.~~ "*Interest*" means the common stock, preferred stock, limited liability company interests, equity Security (as defined in section 101(16) of the Bankruptcy Code), and any other equity, ownership, or profits interests of any Debtor, and options, warrants, rights, or other Securities or agreements to acquire the common stock (including convertible debt), preferred stock, limited liability company interests, or other equity, ownership, or profits interests of any Debtor (whether or not arising under or in connection with any employment agreement).

131. ~~125.~~ "*Interim DIP Order*" means one or more interim orders entered by the Bankruptcy Court authorizing, inter alia, any of the Debtors to enter into the DIP Facility and incur postpetition obligations thereunder.

132. "*Inter-Lender Settlement Term Sheet*" means that certain term sheet by and among the Inter-Lender Settlement Parties.

133.    "*Inter-Lender Settlement Parties*" means the signatories to the Inter-Lender Settlement Term Sheet.

134.    ~~126.~~ "*Law*" means any federal, state, local, or foreign law (including common law), statute, code, ordinance, rule, regulation, order, ruling, or judgment, in each case, that is validly adopted, promulgated, issued, or entered by a governmental authority of competent jurisdiction (including the Bankruptcy Court).

135.    ~~127.~~ "*Lender Support Agreement*" means that certain support agreement among lenders, made and entered into as of October 12, 2023, by and among the Bridge Lenders signatory thereto, the PropCo Lenders signatory thereto, the OpCo Lenders signatory thereto, the PropCo Agent, the OpCo Agent and the Bridge Agents, including all exhibits thereto, as may be amended, modified, or supplemented from time to time in accordance with its terms, a copy of which was filed with the Bankruptcy Court at [Docket No. 371].

136.    ~~128.~~ "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

137.    ~~129.~~ "*Liquidation Analysis*" means that certain hypothetical liquidation analysis included in the Plan Supplement.

138.    ~~130.~~ "*Liquidating Trust*" means that liquidating trust established by the Debtors or the ~~Wind-Down~~Wind-Down Debtors, as applicable, to receive, administer, liquidate, and distribute the proceeds of the Liquidating Trust Assets.

139.    ~~131.~~ "*Liquidating Trustee*" means the Person or Entity, or any successor thereto, selected by the Debtors in consultation with the Required Lender Group under the Bridge Credit Agreement and the Committee, to have all the powers and authorities set forth in the Plan and the Liquidating Trust Agreement.

140.    ~~132.~~ "*Liquidating Trust Agreement*" means that certain agreement by and among the Liquidating Trustee and the Wind-Down Debtors, which shall be included in the Plan Supplement.

141.    ~~133.~~ "*Liquidating Trust Assets*" means any and all Wind-Down Debtors' Assets except for the GUC Trust Assets.

142.    ~~134.~~ "*Master Lease Agreement*" means that certain Amended and Restated Master Lease Agreement dated as of September 13, 2019, by and among OpCo, Gerawan Farming Partners LLC, Gerawan Farming LLC, Gerawan Farming Services LLC, GFP LLC, and Gerawan Supply, Inc., as tenants, and PropCo, as landlord.

143.    ~~135.~~ "*McKinsey*" means McKinsey & Company, Inc. United States.

144.    ~~136.~~ "*New Organizational Documents*" means the documents providing for corporate governance of Reorganized PropCo and Post-Effective Date PropCo, which shall be in form and substance satisfactory to the PropCo Required Lenders.

145. ~~137.~~ "*Notice, Claims, and Solicitation Agent*" means Stretto, Inc., solely in its capacity as notice, claims, and solicitation agent for the Debtors in the Chapter 11 Cases.

146. ~~138.~~ "*OpCo*" means Wawona Packing Co. LLC.

147. ~~139.~~ "*OpCo Agent*" means RBC in its capacity as administrative agent under the OpCo Credit Agreements.

148. ~~140.~~ "*OpCo Collateral*" means all Collateral securing the OpCo Secured Claims.

149. "*OpCo Contribution Amount*" means an amount to be paid by the Wind-Down Debtors or the Liquidating Trustee to Post-Effective Date PropCo in exchange for the Post-Effective Date PropCo Assigned Claims, equal to the product of (a) 0.20 and (b) the sum of (i) $23,494,304.60 plus (ii) the lesser of (A) the aggregate amount of Borrowings (as defined in the DIP Credit Agreement) made pursuant to the DIP Facility, and (B) $43,000,000, (iii) minus the amount of any payments made by the OpCo Credit Parties on or after March 22, 2024 that are applied to any of the DIP Facility, the Bridge Facility, the Exit Termed Out DIP Facility, and/or the Exit Bridge Facility.

150. ~~141.~~ "*OpCo Credit Agreements*" means ~~that~~the OpCo Term Loan Credit Agreement and the OpCo Incremental Credit Agreement.

151. ~~142.~~ "*OpCo Credit Parties*" means OpCo, GroupCo, Gerawan Supply, Inc., Gerawan Farming LLC, Gerawan Farming Services LLC, GFP LLC, and Gerawan Farming Partners LLC.

152. ~~143.~~ "*OpCo Incremental Credit Agreement*" means that certain incremental revolving credit agreement dated May 26, 2020 (as amended, restated, supplemented, or otherwise modified), by and among GroupCo and OpCo, as borrowers, the OpCo Lenders, and the OpCo Agent.

153. ~~144.~~ "*OpCo Lenders*" means the lender parties to the OpCo Credit Agreements.

154. ~~145.~~ "*OpCo Loans*" means the outstanding loans issued under the OpCo Credit Agreements.

155. ~~146.~~ "*OpCo Required Lenders*" means the Required Lenders under (and as defined in) the OpCo Credit Agreements.

156. ~~147.~~ "*OpCo Secured Claim Distribution*" means (a) the amount of any Pre-Effective Date Sale Proceeds remaining after satisfying in full any Allowed Secured Claims with Liens senior to the Liens of the OpCo Secured Claims on such Pre-Effective Date Sale Proceeds and in accordance with the Pre-Effective Date Sale Proceeds Priority, and (b) any proceeds of the Liquidating Trust Assets (including, without limitation, the Residual Assets), in excess of the amounts necessary to satisfy in full: (i) the Wind-Down Debtors' Expenses; (ii) ~~if applicable, the Exit Termed Out DIP Facility; (iii) the Exit Bridge Facility~~the Post-Effective

Date PropCo Liquidating Trust Distribution Amount; and (ivviii) the Bridge OpCo Roll-Up Term Loan Claims Distribution, if any, after giving effect to each of the foregoing.

157. 148. "*OpCo Secured Claims*" means Claims arising from or in connection with the OpCo Loans and any adequate protection claims granted on account of OpCo Loans under the Cash Collateral Order or any DIP Order.

158. 149. "*OpCo Term Loan Credit Agreement*" means that certain term loan credit agreement dated as of September 13, 2019, as amended, restated, supplemented, or otherwise modified from time to time, by and among, inter alia, GroupCo and OpCo as borrowers, the guarantor parties thereto, the OpCo Lenders, and the OpCo Agent.

159. 150. "*OpCo Wind-Down*" means the wind down, liquidation, and dissolution of each of the Wind-Down Debtors following the Effective Date as set forth in Article IV.E hereof.

160. 151. "*Ordinary Course Professional*" means an Entity (other than a Professional) retained and compensated by the Debtors in accordance with an order of the Bankruptcy Court establishing procedures for the employment of Entities (other than Professionals) in the ordinary course of the Debtors' business.

161. 152. "*Other Priority Claim*" means any Claim against any of the Debtors other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

162. 153. "*Other Secured Claim*" means any Secured Claim (including secured tax claims) against any of the Debtors, other than the Bridge Secured Claims, the PropCo Secured Claims, and the OpCo Secured Claims.

163. 154. "*Pending 363 Sale Contract*" means any executory contract for the sale of Debtor assets constituting Collateral of the DIP Agent, the DIP Lenders, any Prepetition Agent, or any of the Prepetition Lenders, which contract has been executed by the applicable Debtor prior to the Effective Date but the sale transaction(s) in respect of which have not been consummated as of the Effective Date.

164. 155. "*Permitted Transfer*" means a transfer of all or a portion of the assets of the Wind-Down Debtors to the Liquidating Trust in accordance with Article IV.E.3 herein.

165. 156. "*Person*" has the meaning set forth in section 101(41) of the Bankruptcy Code.

166. 157. "*Petition Date*" means the date on which the Debtors commenced the Chapter 11 Cases.

167. 158. "*Plan*" means this chapter 11 plan, including all exhibits, supplements (including the Plan Supplement), appendices, and schedules (as amended, modified, or supplemented from time to time in accordance with the terms hereof).

168.   159.  "*Plan Settlements*" means the settlements by and among the Settlement Parties (including the settlement set forth in the Inter-Lender Settlement Term Sheet), which settlements isare incorporated into the terms of this Plan and filed with the Bankruptcy Court pursuant to the Settlement Stipulation.

169.   160.  "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules) to be Filed at least seven days prior to the deadline to object to Confirmation of the Plan, as set forth in the Disclosure Statement Order or such later date as may be approved by the Bankruptcy Court, and additional documents or amendments to previously Filed documents, Filed before the Confirmation Date as amendments to the Plan Supplement, or such later date as may be approved by the Bankruptcy Court, including the following, as applicable:  (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) Schedule of Retained Causes of Action; (c)  the Liquidating Trust Agreement; (d) the identity of the Liquidating Trustee; (e) the Exit Bridge Credit Agreement; (f) if applicable, the Exit Termed Out DIP Credit Agreement; (g) if applicable, the Exit PropCo Credit Agreement; (h) the Promissory Note, (i) the New Organizational Documents; (j) the Restructuring Transaction Memorandum; (k) the Liquidation Analysis; (l) the GUC Trust Agreement; (m) the Exit Intercreditor Term Sheet; (n) a list of all claims, including their amounts, to be paid pursuant to section 503(b)(9) of the Bankruptcy Code on the Effective Date; and (o) any other necessary documentation related to the Restructuring Transactions.

161.  "*Post-Effective Date PropCo Equity*" means the equity interests in Post-Effective Date PropCo, to be authorized, issued, or reserved on the Effective Date pursuant to the Plan.

170.   162.  "*Post-Effective Date PropCo*" means, as set forth in the Plan Supplement, a newly formed entity that holds 100% of the equity of PropCo.

171.                                 "*Post-Effective Date PropCo Assigned Claims*" means all Allowed Claims against the OpCo Credit Parties and/or the Wind-Down Debtors, held by the Holders of DIP Claims (solely in their capacities as such) and Bridge New Money Term Loan Claims (solely in their capacities as such), which shall be deemed to be assigned by such Holders to Post-Effective Date PropCo on the Effective Date, and which shall then immediately be deemed transferred by Post-Effective Date PropCo to the Wind-Down Debtors in exchange for the OpCo Contribution Amount automatically.  Such assignment (i) is limited to such Allowed Claims against the OpCo Credit Parties and/or the Wind-Down Debtors which, prior to the Effective Date, are jointly and severally liable with PropCo in respect of the Allowed DIP Claims and the Allowed Bridge New Money Term Loan Claims, (ii) is being given as partial consideration for PropCo repaying the Allowed DIP Claims and the Allowed Bridge New Money Term Loan Claims through the issuance by Reorganized PropCo of the Exit Termed Out DIP Facility and the Exit Bridge Facility without the OpCo Credit Parties, the Wind-Down Debtors, or the Liquidating Trust being co-obligors thereunder, (iii) resolves and settles any contribution claim PropCo, Post-Effective Date PropCo, or Reorganized PropCo may have against the OpCo Credit Parties, the Wind-Down Debtors, or the Liquidating Trust in respect of

such repayment, and (iv) shall not reduce the amount of the Exit Termed Out DIP Facility or the Exit Bridge Facility.

172.                      "*Post-Effective Date PropCo Equity*" means the equity interests in Post-Effective Date PropCo, to be authorized, issued, or reserved on the Effective Date pursuant to the Plan.

173.    "*Post-Effective Date PropCo Liquidating Trust Distribution Amount*" means an amount equal to: (a) the sum of (i) the OpCo Contribution Amount and (ii) the Post-Petition Rent Entitlement, less (b) the Consummation Date Crop Value, which net amount is to be received by Post-Effective Date PropCo on a first-priority basis (subject only to the Wind-Down Debtors' Expenses) from the Liquidating Trust.

174.    "*Post-Petition Rent Entitlement*" means an amount equal to $8,500,000.00, which shall be deemed to be payable by OpCo to PropCo upon the rejection of the Master Lease Agreement, in settlement of all claims for rejection damages or otherwise thereunder, on the Effective Date.

175.    "*Pre-Effective Date Cultural Cost Payments*" means all reimbursable cultural costs received by the Debtors prior to the Effective Date.

176.    ~~163.~~ "*Pre-Effective Date Sale Proceeds*" means the net proceeds (other than Pre-Effective Date Cultural Cost Payments) of any sale of Debtor assets constituting Collateral of the DIP Agent, the DIP Lenders, any Prepetition Agent, or any of the Prepetition Lenders, which contract was executed and the transaction(s) in respect of which consummated during the period commencing February 1, 2024 and ending immediately prior to the Effective Date.

177.    ~~164.~~ "*Pre-Effective Date Sale Proceeds Priority*" means, in respect of any Pre-Effective Date Sale Proceeds, the Lien priority in respect of such Collateral proceeds, as provided in the DIP Order and the Intercreditor Agreements (as defined in the Disclosure Statement).

178.    ~~165.~~ "*Prepetition Agents*" means any of the Bridge Agents, the OpCo Agent, or the PropCo Agent.

179.    ~~166.~~ "*Prepetition Credit Agreement Deficiency Claims*" means the portions of the Bridge OpCo Roll-Up Term Loan Claims and the OpCo Secured Claims that are unsecured pursuant to section 506(a) of the Bankruptcy Code, if any.

180.    ~~167.~~ "*Prepetition Credit Agreements*" means, collectively, the Bridge Credit Agreement, the OpCo Credit Agreements, and the PropCo Credit Agreement.

181.    ~~168.~~ "*Prepetition Lenders*" means, collectively, the Bridge Lenders, the OpCo Lenders, and the PropCo Lenders.

182.    ~~169.~~ "*Prepetition Lender Preserved Claims*" means any and all Causes of Action held by the Required Lender Group against Rabobank, RBC, the Bridge Agents and/or the OpCo Agent arising in connection with any of the following: (a) any breach or violation of the

Intercreditor Agreements (as defined in the Disclosure Statement); (b) any breach or violation of the Lender Support Agreement; and (c) any breach or violation of any of the Prepetition Credit Agreements or the related loan documents, including without limitation, any gross negligence or willful misconduct by any such Prepetition Agent in performing (or failing to perform) its obligations thereunder.

183.    170.  "*Prepetition Loan Claim*" means any claim by the Prepetition Agents or the Prepetition Lenders under the Prepetition Credit Agreements.

184.    171.  "*Priority Claims*" means, collectively, Administrative Claims and Priority Tax Claims.

185.    172.  "*Priority Tax Claim*" means any Claim against the Debtors of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

186.    173.  "*Pro Rata*" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Interests in that Class.

187.    174.  "*Promissory Note*" means that certain promissory note between Reorganized PropCo and the Bridge Administrative Agent memorializing the obligation of Reorganized PropCo to pay, subject to the terms of the Lender Support Agreement, $30,000,000 to the Bridge Administrative Agent for distribution to the Bridge Lenders in respect of the Bridge OpCo Roll-UpRoll-Up Term Loan Claims and, if applicable, the OpCo Agent for distribution to the OpCo Lenders in respect of the OpCo Secured Claims, the form of which will be included in the Plan Supplement.

188.    175.  "*Professional*" means an Entity (other than an Ordinary Course Professional): (a) employed, or proposed to be employed prior to the Confirmation Date, in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to or on the Confirmation Date pursuant to sections 327, 328, 329, 330, and 331 of the Bankruptcy Code; or (b) for which compensation and reimbursement has been Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

189.    176.  "*Professional Fee Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtors prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtors as set forth in Article II.B of this Plan.

190.    177.  "*Professional Fee Claim*" means any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been paid pursuant to an order of the Bankruptcy Court.  To the extent the Bankruptcy Court denies or reduces by a Final Order any amount of a Professional's requested fees and expenses, then the amount by which such fees or expenses are reduced or denied shall reduce the applicable Professional Fee Claim.

191.    ~~178.~~ "*Professional Fee Escrow Account*" means an account funded in Cash by the Debtors or Reorganized PropCo, the ~~Wind Down~~Wind-Down Debtors, and the Liquidating Trust, as applicable, as soon as reasonably practicable after the Confirmation Date and no later than the Effective Date in an amount equal to the total Professional Fee Amount.

192.    ~~179.~~ "*Proof of Claim*" means a proof of Claim Filed against any of the Debtors in the Chapter 11 Cases.

193.    ~~180.~~ "*Proof of Interest*" means a written proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

194.    ~~181.~~ "*PropCo*" means (a) Wawona Farm Co. LLC, as a Debtor, and (b) Reorganized PropCo, as context requires.

195.    ~~182.~~ "*PropCo Agent*" means Wilmington Trust, as successor to Rabobank in its capacity as administrative agent under the PropCo Credit Agreement.

196.    ~~183.~~ "*PropCo Collateral*" means all Collateral securing the PropCo Secured Claims.

197.    ~~184.~~ "*PropCo Credit Agreement*" means that certain amended and restated credit agreement dated as of September 13, 2019, as amended, restated, supplemented, or otherwise modified from time to time, by and among, inter alia, PropCo, as borrower, the lender parties thereto, and the PropCo Agent.

198.    ~~185.~~ "*PropCo Equitization Consideration*" means the Post-Effective Date PropCo Equity distributed to Holders of PropCo Secured Claims as set forth in the Plan and the Plan Supplement in the PropCo Equitization Transaction.

199.    ~~186.~~ "*PropCo Equitization Transaction*" means the restructuring transaction pursuant to which the PropCo Lenders shall receive equity in Post-Effective Date PropCo pursuant to this Plan.

200.    ~~187.~~ "*PropCo Lenders*" means the lender parties to the PropCo Credit Agreement.

201.    ~~188.~~ "*PropCo Loans*" means the outstanding loans issued under the PropCo Credit Agreement.

202.    ~~189.~~ "*PropCo Required Lenders*" means the Required Lenders under (and as defined in) the PropCo Credit Agreement.

203.    ~~190.~~ "*PropCo Secured Claims*" means Claims arising from or in connection with the PropCo Loans and any adequate protection claims granted on account of PropCo Loans under the Cash Collateral Order or any DIP Order.

204.    ~~191.~~ "*Quarterly Fees*" means all fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code.

205.    ~~192.~~ "*Rabobank*" means Coöperatieve Rabobank U.A., New York Branch.

206.    ~~193.~~ "*RBC*" means Royal Bank of Canada.

207.    ~~194.~~ "*Reinstate*," "*Reinstated*," or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

208.    ~~195.~~ "*Related Party*" means, each of, and in each case solely in its capacity as such, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees.

209.    ~~196.~~ "*Released Parties*" means, collectively, and in each case, solely in their respective capacities as such: (a) the Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable; (b) the Liquidating Trustee; (c) the Committee and each of its members; (d) the GUC Administrator; (e) each member of the Required Lender Group; (f) each Bridge Agent; (g) each Bridge Lender; (h) the OpCo Agent; (i) each OpCo Lender; (j) the PropCo Agent; (k) each PropCo Lender; (l) each DIP Agent; (m) each DIP Lender; (n) each Exit Facility Agent; (o) each Exit Facility Lender; (p) the Sponsor; (q) McKinsey; (r) subject to the penultimate sentence of this definition, the Gerawan Interested Parties; (s) each current and former Affiliate of each Entity in clause (a) through the following clause (t); and (t) each Related Party of each Entity in clause (a) through this clause (t), each in their capacity as such (unless any such Entity or Related Party has opted out of the releases contained in Article VIII of the Plan, in which case such Entity or Related Party, as applicable, shall not be a Released Party). For the avoidance of doubt, each of the Gerawan Interested Parties shall be a Released Party under the Plan so long as the Gerawan Interested Parties honor their obligations in the applicable Plan Settlement to (i) withdraw the Gerawan Interested Parties' Plan Objection, (ii) withdraw any and all discovery requests that have been served on the Debtors, the Sponsor, or any other Settlement Party, (iii) withdraw the Derivative Action, (iv) vote in favor of the Plan; (v) not opt out of the releases contained in Article VIII of the Plan, (vi) use commercially reasonable efforts to support the 9019 Motion and Confirmation of the Plan to the extent the 9019 Motion is heard by the Court, and so long as the Gerawan Settlement Amount is timely paid in full pursuant to the Plan. Notwithstanding the foregoing, unless (A) ~~this Plan is Confirmed for each Debtor~~Classes 3, 4, and 6 vote to accept the Plan and (B) neither of the Bridge Agents nor the

OpCo Agent objects to the Confirmation of this Plan, any and all Prepetition Lender Preserved Claims are expressly reserved and shall not be released hereunder.

210.  ~~197.~~ "*Releasing Party*" means, collectively, and in each case, solely in their respective capacities as such:  (a) the Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable; (b) the Liquidating Trustee; (c) the GUC Administrator; (d) the Committee and each of its members; (e) each member of the Required Lender Group; (f) the Sponsor; (g) McKinsey; (h) the Gerawan Interested Parties; (i) all Holders of Claims or Interests who vote to accept the Plan; (j) all Holders of Claims or Interests that are deemed to accept the Plan and do not affirmatively opt out of the releases contained in Article VIII by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan or by filing a timely objection to the releases contained in Article VIII with the Bankruptcy Court and such objection is not withdrawn before the Confirmation Hearing; (k) all Holders of Claims or Interests that abstain from voting on the Plan and who do not affirmatively opt out of the releases contained in Article VIII of the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan or by filing a timely objection to the releases contained in Article VIII with the Bankruptcy Court and such objection is not withdrawn before the Confirmation Hearing; (l) all Holders of Claims or Interests that vote to reject the Plan or are deemed to reject the Plan and who do not affirmatively opt out of the releases contained in Article VIII of the Plan by checking the box on the applicable form indicating that they opt not to grant the releases provided in the Plan or by filing a timely objection to the releases contained in Article VIII with the Bankruptcy Court and such objection is not withdrawn before the Confirmation Hearing; (m) each current and former Affiliate of each Entity in clause (a) through the following clause (n); and (n) each Related Party of each Entity in clause (a) through this clause (n), each in their capacity as such; provided, however, that a Related Party of an entity in clauses (a) through (n) is a Releasing Party solely to the extent such Related Party would be obligated to grant a release under principles of agency if it were so directed by the Person or Entity in the foregoing clauses (a) through (n) to whom they are related. Notwithstanding the foregoing, unless (A) ~~this Plan is Confirmed for each Debtor~~Classes 3, 4, and 6 vote to accept the Plan and (B) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan, any and all Prepetition Lender Preserved Claims are expressly reserved and shall not be released hereunder.

211.  ~~198.~~ "*Reorganized PropCo*" means Wawona Farm Co. LLC on and after the Effective Date.

212.  ~~199.~~ "*Required Lenders*" means, collectively, the Bridge Required Lenders, the OpCo Required Lenders, and the PropCo Required Lenders.

213.  ~~200.~~ "*Required Lender Group*" means (a) Metropolitan Life Insurance Company, (b) Compeer Financial, PCA, (c) Compeer Financial, FLCA, (d) AgCountry Farm Credit Services PCA, (e) AgFirst Farm Credit Bank, (f) Farm Credit Bank of Texas, (g) Farm Credit Services of America, PCA, (h) Farm Credit Mid-~~Mid~~America, PCA, (i) American AgCredit, PCA, and (j) Greenstone Farm Credit Services, FLCA.  For the avoidance of doubt, the Required Lender Group collectively represents the Required Lenders under the OpCo Credit Agreements, the PropCo Credit Agreement, and the Bridge Credit Agreement.

214.   ~~201.~~ "*Residual Assets*" means the assets described in Article IV.E.2(c).

215.   ~~202.~~ "*Restructuring Expenses*" means the reasonable and documented prepetition and postpetition fees and ~~out-of-pocket~~out-of-pocket expenses incurred by each of the following advisors: (a) White & Case LLP, solely in its capacity as counsel to the Bridge Administrative Agent and the Bridge PropCo Collateral Agent, (b) Sidley Austin LLP, solely in its capacity as counsel to the OpCo Agent and the Bridge OpCo Collateral Agent, (c) Morgan Lewis & Bockius LLP, (d) Moore & Van Allen, PLLC, (e) Richards, Layton & Finger, P.A., (f) Robinson & Cole LLP, (g) Burr & Forman LLP, (h) Covington & Burling LLP, (i) Troutman Pepper Hamilton Sanders LLP, (j) FTI Consulting, Inc., and (k) ACM Management Company, LLC to the extent set forth in the letter agreement, dated October 12, 2023, by and among the Agents and ACM Management Company, LLC.

216.   ~~203.~~ "*Restructuring Transactions*" means the transactions described in Article IV.D and Article IV.E.

217.   ~~204.~~ "*Restructuring Transactions Memorandum*" means the document that sets forth certain steps to be carried out to implement the Restructuring Transactions in accordance with this Plan, which shall be included in the Plan Supplement, and which shall be in form and substance satisfactory to the Required Lender Group.

218.   ~~205.~~ "*Retained Causes of Action*" means those Causes of Action (except for the Waived Avoidance Actions, the Gerawan Litigation Claims, and any Causes of Action that may be asserted against the Sponsor or McKinsey and their Related Parties) that shall vest in Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, on the Effective Date.  For the avoidance of doubt, Retained Causes of Action shall not include any Causes of Action that are settled, released, or exculpated under the Plan, whether pursuant to the Plan Settlements or otherwise.

219.   ~~206.~~ "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed, or assumed and assigned, by Reorganized PropCo or the Wind-Down Debtors on behalf of the applicable Debtor pursuant to the Plan.

220.   ~~207.~~ "*Schedule of Retained Causes of Action*" means the schedule of Retained Causes of Action, as the same may be amended, modified, or supplemented from time to time.

221.   ~~208.~~ "*Schedules*" means, collectively, the schedules of assets and liabilities, Schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code [Docket Nos. 198–215].

222.   ~~209.~~ "*Section 510(b) Claim*" means any Claim that is subordinated under section 510(b) of the Bankruptcy Code.

223.   ~~210.~~ "*Secured*" or "*Secured Claim*" means, when referring to a Claim, a Claim that is:  (a) secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code; or (b) subject to a valid

right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of the value of such right of setoff.

224.  211. "*Securities Act*" means the U.S. Securities Act of 1933.

225.  212. "*Security*" or "*Securities*" has the meaning set forth in section 2(a)(1) of the Securities Act.

226.  213. "*Settlement Parties*" means the (a) ~~Debtors, (b) the Committee, (c) the Sponsor, (d) McKinsey, (e) the Required Lender Group,~~ and ~~(f) the Gerawan Interested~~9019 Motion Settlement Parties, (b) Gerawan Settlement Parties, and (c) Inter-Lender Settlement Parties.

227.  214. "*Settlement Releasing Parties*" means the Settlement Parties, on behalf of themselves and their Related Parties.  For the avoidance of doubt, (i) the Gerawan Interested Parties shall be considered Settlement Releasing Parties so long as the Gerawan Settlement Amount is timely paid in full pursuant to the Plan, (ii) the Sponsor shall be considered a Settlement Releasing Party so long as the Sponsor Contribution Amount is timely paid in full pursuant to the Plan, and (iii) unless (A) ~~this Plan is Confirmed for each Debtor~~Classes 3, 4, and 6 vote to accept the Plan and (B) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan, nothing herein shall release any Prepetition Lender Preserved Claim.

228.  215. "*Settlement Stipulation*" means that certain Stipulation of Settlement by and among the 9019 Motion Settlement Parties, which reflects the terms of the ~~Plan~~9019 Motion Settlement [Docket No. 542].

229.  216. "*Sponsor*" means, collectively, Paine Schwartz Partners, LLC and Wawona Delaware Holdings, LLC.

230.  217.  "*Sponsor Contribution Amount*" means $2,200,000.00 in Cash to be contributed by the Sponsor, payable on the Effective Date to the Committee Designated Account. For tax purposes, the Sponsor Contribution Amount shall be deemed to be (1) first paid by the Sponsor to the Debtors, then (2) distributed in accordance with the tax treatment set forth in Article IV.G(a).

231.  218. "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

232.  219. "*Unexpired Lease*" means a lease of nonresidential real property to which one or more of the Debtors is a party that is subject to assumption, assumption and assignment, or rejection under section 365 of the Bankruptcy Code.

233.  220. "*Unimpaired*" means a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

234.  221. "*Voting Deadline*" means ~~January~~March 2~~6~~0, 2024 at 4:00 p.m. (prevailing Eastern Time)~~.~~ (except as modified by agreement of the Debtors as specified in the *Declaration*

*of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates).*

235. 222. "*Waived Avoidance Actions*" means any and all Avoidance Actions.

236. 223. "*Wilmington Trust*" means Wilmington Trust, National Association.

237. 224. "~~*Wind-Down*~~ "*Wind-Down Debtors*" means each of the OpCo Credit Parties and MVK FarmCo LLC on the Effective Date. For the avoidance of doubt, PropCo shall not be a Wind-Down Debtor.

238. 225. "~~*Wind-Down*~~ "*Wind-Down Debtors' Assets*" means all of the Debtors' assets, except the assets of PropCo, which shall vest in the ~~Wind-Down~~ Wind-Down Debtors not earlier than one (1) Business Day before such assets are to be transferred to (a) the Liquidating Trust pursuant to this Plan, the Confirmation Order, and the Liquidating Trust Agreement or (b) the GUC Trust pursuant to this Plan, the Confirmation Order, and the GUC Trust Agreement, as applicable. The Wind-Down Debtors' Assets shall include (among other things): (i) the Pre-Effective Date Cultural Cost Payments, (ii) the Consummation Date Crop Value, and (iii) title to all mobile farm equipment (e.g., tractors, trucks, vehicles) held by PropCo, in each case pursuant to the terms of this Plan.

239. 226. "~~*Wind-Down*~~ "*Wind-Down Debtors' Expenses*" means all actual and necessary costs and expenses incurred by the ~~Wind-Down~~ Wind-Down Debtors or Liquidating Trustee, as applicable, in connection with carrying out the obligations of the ~~Wind-Down~~ Wind-Down Debtors pursuant to the terms of the Plan and the Liquidating Trust Agreement.

*B.      Rules of Interpretation.*

For purposes of this Plan:  (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed, or to be Filed shall mean that document, schedule, or exhibit, as it may have been or may be amended, restated, supplemented, or otherwise modified; (iv) unless otherwise specified, all references herein to "Articles" and "Sections" are references to Articles and Sections of the Plan, respectively, hereof or hereto; (v) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (vi) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (ix) any term used in

capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable; (x) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (xi) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (xii) any effectuating provisions may be interpreted by the Debtors, Reorganized PropCo, or the Wind-Down Debtors and Liquidating Trustee in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall control; (xiii) references to "shareholders," "directors," and/or "officers" shall also include "members" and/or "managers," as applicable, as such terms are defined under the applicable state limited liability company Laws; (xiv) except as otherwise provided in the Plan, any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (xv) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (xvi) on and after the Effective Date, all references to the Debtors in this Plan shall be deemed references to Reorganized PropCo or the Wind-Down Debtors, as applicable.

## C.    Computation of Time.

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

## D.    Governing Law.

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan and any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, documents, instruments, or contracts, in which case the governing law of such agreement shall control); *provided* that corporate, limited liability company, or partnership governance matters relating to the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall be governed by the laws of the jurisdiction of incorporation or formation of the relevant Debtor, Post-Effective Date PropCo, Reorganized PropCo, or Wind-Down Debtor, as applicable.

*E.     Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to the currency of the United States of America, unless otherwise expressly provided.

*F.     Reference to the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors.*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors, to Post-Effective Date PropCo, to Reorganized PropCo, or to the Wind-Down Debtors, means the Debtors, Post-Effective Date PropCo, Reorganized PropCo, and the Wind-Down Debtors, as applicable, to the extent the context requires.

*G.     No Substantive Consolidation; Limited Administrative Consolidation.*

Although for purposes of administrative convenience and efficiency the Plan has been filed as a joint plan for each of the Debtors and presents together Classes of Claims against and Interests in the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

*H.     Controlling Document.*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan, the Disclosure Statement, and the Plan Supplement, the relevant Plan provision shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

**ARTICLE II.**
**ADMINISTRATIVE CLAIMS,**
**PROFESSIONAL FEE CLAIMS, AND**
**PRIORITY TAX CLAIMS**

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims set forth in Article III of the Plan.

*A.     Administrative Claims and Priority Tax Claims.*

Except as otherwise provided in this Article II.A, and except with respect to (i) Administrative Claims that are Professional Fee Claims or subject to section 503(b)(1)(D) of the Bankruptcy Code and (ii) Restructuring Expenses, unless previously Filed, requests for payment of Allowed Administrative Claims must be made no later than the applicable Administrative Claims Bar Date or in compliance with the Bar Date Order.  **Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their**

28

**property, and such Administrative Claims shall be deemed satisfied, settled, and released as of the Effective Date without the need for any objection from Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, or any notice to or action, order, or approval of the Bankruptcy Court or any other Entity**.  After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with, an order of the Bankruptcy Court that becomes a Final Order.  Per Local Rule 3002-~~1~~-1, notwithstanding any provision of a plan of reorganization, any motion, notice, or court order in a specific case, the government shall not be required to file any proof of claim or application for allowance for any claims covered by section 503(b)(1)(B), (C), or (D).

Except with respect to (i) Administrative Claims that are Professional Fee Claims and (ii) Restructuring Expenses, and except to the extent that an Administrative Claim has already been paid in full during the Chapter 11 Cases or a Holder of an Allowed Administrative Claim agrees to less favorable treatment, each Holder of an Allowed Administrative Claim shall be paid in full in Cash the unpaid portion of its Allowed Administrative Claim on the latest of:  (i) the Effective Date if such Administrative Claim is Allowed as of the Effective Date; (ii) the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter; and (iii) the date such Allowed Administrative Claim becomes due and payable, or as soon thereafter as is reasonably practicable, or with respect to a Holder of a Priority Tax Claim, treated in accordance with section 1129(a)(9)(C) of the Bankruptcy Code; *provided* that Allowed Administrative Claims that arise in the ordinary course of the Debtors' business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements and/or arrangements governing, instruments evidencing, or other documents relating to such transactions (and no requests for payment of such Administrative Claims must be Filed or served).

Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim previously Allowed by Final Order.

B.    *Professional Fee Claims.*

1.    Final Fee Applications and Payment of Professional Fee Claims.

All final requests for payment of Professional Fee Claims incurred for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than forty-five (45) days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Debtors, Reorganized PropCo, and the Wind-Down

Debtors shall be jointly and severally liable to pay the full unpaid amount of such Allowed Administrative Claim in Cash.

2.  <u>Professional Fee Escrow Account</u>.

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors, the Wind-Down Debtors, the Liquidating Trust, and/or Reorganized PropCo, as applicable, shall establish the Professional Fee Escrow Account with Cash equal to the Professional Fee Amount, which shall be funded with Cash by the Debtors or Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals. Such funds shall not be considered property of the Estates of the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable. The amount of Allowed Professional Fee Claims shall be paid in Cash to the Professionals by Reorganized PropCo from the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed. When such Allowed Professional Fee Claims have been paid in full, any remaining amount held in the Professional Fee Escrow Account shall promptly be paid to the Liquidating Trust, Reorganized PropCo, or the ~~Wind-Down~~<u>Wind-Down</u> Debtors, as applicable, without any further action or order of the Bankruptcy Court.

3.  <u>Professional Fee Amount</u>.

The Professionals shall deliver to the Debtors a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date, and shall deliver such estimate to the Debtors no later than five Business Days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Debtors, Reorganized PropCo, or the ~~Wind-Down~~<u>Wind-Down</u> Debtors, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount estimated as of the Effective Date shall be utilized by the Debtors, Reorganized PropCo, or the ~~Wind-Down~~<u>Wind-Down</u> Debtors, if applicable, to determine the amount to be funded to the Professional Fee Escrow Account.

4.  <u>Post</u>-~~Post~~-Confirmation Date Fees and Expenses.

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331, 363, and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

5. <u>Substantial Contribution</u>.

Except as otherwise specifically provided in the Plan, any Entity that requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code must File an application and serve such application on counsel for the Debtors, the Committee, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, and the Bankruptcy Rules, on or before the Voting Deadline.

C.    *Statutory Fees.*

All Quarterly Fees prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors, Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust, as applicable, shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable.  Within two business days of the Effective Date, Reorganized PropCo, the Wind-Down Debtors, the GUC Trust, or the Liquidating Trustee, as applicable, and any other authorized parties who have been charged with administering the confirmed plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, each of the Wind-Down Debtors, Reorganized PropCo, the GUC Trust, and the Liquidating Trust, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors, Reorganized PropCo, the Wind-Down Debtors, the GUC Trust, and the Liquidating Trust, as applicable, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under Chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.  The Debtors, Reorganized PropCo, the Wind-Down Debtors, the GUC Trust, and the Liquidating Trust agree and acknowledge that they are only responsible for fees based on their respective disbursements; *provided, however*, that the agreement set forth in the foregoing clause is not binding on the U.S. Trustee.

D.    *Restructuring Expenses*

On the Effective Date, and prior to the consummation of the Equitization Transaction and the transfer of any Liquidating Trust Assets to the Liquidating Trust, the Debtors shall pay in full in Cash any outstanding Restructuring Expenses without the requirement for the filing of retention applications, fee applications, Proofs of Claim, or any other applications in the Chapter 11 Cases and without any requirement for further notice or Bankruptcy Court review or approval. Such Restructuring Expenses shall be Allowed as Administrative Claims upon incurrence and shall not be subject to any offset, defense, counterclaim, reduction, or credit.

E.    *DIP Claims*

Prior to the Effective Date, any Pre-Effective Date Sale Proceeds realized by any Debtor shall be applied to the DIP Claims in accordance with the Pre-Effective Date Sale Proceeds Priority until such time as the DIP Claims are paid in full.  As of the Effective Date, to the extent

any DIP Claims remain outstanding, all such DIP Claims shall be deemed Allowed in an amount equal to: (i) the principal amount outstanding under any DIP Facility on such date; (ii) all accrued and unpaid interest thereon to the Effective Date, if any; (iii) all accrued and unpaid fees, expenses, and noncontingent indemnification obligations payable under the DIP Credit Agreement and the DIP Order, if any; and (iv) any other obligations under any DIP Credit Agreement, other than any contingent obligations for which no claim has been made. ~~Except to the extent that the~~Each Holder of an Allowed DIP Claim ~~has~~ agree~~s~~d to ~~a less favorable treatment, which less favorable treatment may include~~ exchang~~ing~~e such Allowed DIP Claim for a Pro Rata share of ~~an~~the Exit Termed Out DIP Facility~~, such Holder shall be paid in full in Cash the unpaid portion of its Allowed DIP Claim on the Effective Date~~.

In addition, all Post-Effective Date PropCo Assigned Claims held by each Holder of an Allowed DIP Claim on the Effective Date shall be deemed assigned to Post-Effective Date PropCo by each Holder of an Allowed DIP Claim on the Effective Date. Post-Effective Date PropCo will then immediately be deemed to transfer the Post-Effective Date PropCo Assigned Claims to the Wind-Down Debtors in exchange for the OpCo Contribution Amount. Upon such transfer to the Wind-Down Debtors, the Post-Effective Date PropCo Assigned Claims will be deemed immediately discharged, cancelled, released, and extinguished.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

Except for the Claims addressed in Article II of the Plan, all Claims against and Interests in the Debtors are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. The Plan deems a Claim or Interest to be classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies within the description of such different Class. A Claim or an Interest is in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise settled prior to the Effective Date.

B.    *Summary of Classification.*

A summary of the classification of Claims against and Interests in each Debtor pursuant to the Plan is set forth in the following chart. This Plan constitutes a separate chapter 11 plan for each Debtor, and accordingly, the classification of Claims and Interests set forth below applies separately to each of the Debtors. Except for the Claims addressed in Article II (or as otherwise set forth herein), all Claims against and Interests in a particular Debtor are placed in Classes for each of the Debtors. In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtors have not classified Administrative Claims, Priority Tax Claims, and Professional Fee Claims as described in Article II. Certain of the Debtors may not have Holders of Claims or Interests in a

particular Class or Classes, and such Claims or Interests shall be treated as set forth in Article III.E hereof.

| Class | Claim or Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | Bridge New Money Term Loan Claims | Impaired | Entitled to Vote |
| 4 | Bridge OpCo ~~Roll-Up~~Roll-Up Term Loan Claims | Impaired | Entitled to Vote |
| 5 | PropCo Secured Claims | Impaired | Entitled to Vote |
| 6 | OpCo Secured Claims | Impaired | Entitled to Vote |
| 7A | General Unsecured Claims | Impaired | Entitled to Vote |
| 7B | Prepetition Credit Agreement Deficiency Claims | Impaired | Entitled to Vote |
| 8 | Intercompany Claims | Unimpaired / Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Intercompany Interests | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept or Deemed to Reject) |
| 10 | Existing Equity Interests | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 11 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |

*C.*    *Treatment of Claims and Interests.*

Except to the extent that the Debtors, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, as applicable, and a Holder of an Allowed Claim or Allowed Interest, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of and in exchange for such Holder's Allowed Claim or Allowed Interest.  Unless otherwise indicated, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of (i) the Effective Date (or, if payment is not then due, in accordance with its terms in the ordinary course) or as soon as reasonably practicable thereafter, and (ii) the date on which such Holder's Claim or Interest becomes Allowed.  In no event shall any Holder of a Claim receive more than such Holder's Allowed amount on account of such Claim.

1.    Class 1 – Other Secured Claims

(a)    *Classification*:  Class 1 consists of all Other Secured Claims.

(b)    *Treatment*:  Each Holder of an Allowed Other Secured Claim shall receive, at the option of the applicable Debtor, Reorganized PropCo, or Wind-Down Debtor:

(i)    payment in full in Cash;

(ii)     Reinstatement of such Claim; or

(iii)    other treatment rendering such Claim Unimpaired.

(c)    *Voting*:  Class 1 is Unimpaired.  Each Holder of a Class 1 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of a Class 1 Other Secured Claim is not entitled to vote to accept or reject the Plan.

2.  Class 2 – Other Priority Claims

(a)    *Classification*:  Class 2 consists of all Other Priority Claims.

(b)    *Treatment*:  Each Holder of an Allowed Other Priority Claim shall receive, at the option of the applicable Debtor, Reorganized PropCo, or ~~Wind-Down~~<u>Wind-Down</u> Debtor.

(i)     payment in full in Cash;

(ii)    Reinstatement of such Claim; or

(iii)    such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

(c)    *Voting*:  Class 2 is Unimpaired.  Each Holder of a Class 2 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, each Holder of a Class 2 Other Priority Claim is not entitled to vote to accept or reject the Plan.

3.  Class 3 – Bridge New Money Term Loan Claims

(a)    *Classification*:  Class 3 consists of the Bridge New Money Term Loan Claims.

(b)    *Allowance*:  On the Effective Date, the Bridge New Money Term Loan Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the Bridge Credit Agreement as of the Effective Date plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date.

(c)    *Treatment*:  Each Holder of a Bridge New Money Term Loan Claim shall receive:

(i)     its *Pro Rata* share of any Pre-Effective Date Sale Proceeds remaining after satisfying in full any Allowed Secured Claims with

Liens senior to the Liens of the Bridge New Money Term Loan Claims on such Pre-Effective Date Sale Proceeds and in accordance with the Pre-Effective Date Sale Proceeds Priority; and

(ii)    its *Pro Rata* share of the Exit Bridge Facility Term Loans in an aggregate amount equal to all Bridge New Money Term Loan Claims outstanding as of the Effective Date (after giving effect to any Pre-Effective Date Sale Proceeds applied to the Bridge New Money Term Loan Claims pursuant to the immediately foregoing clause (c)(i)).

In addition, all Post-Effective Date PropCo Assigned Claims held by such Holder on the Effective Date shall be deemed assigned to Post-Effective Date PropCo by such Holder on the Effective Date.  Post-Effective Date PropCo will then immediately be deemed to transfer the Post-Effective Date PropCo Assigned Claims to the Wind-Down Debtors in exchange for the OpCo Contribution Amount.  Upon such transfer to the Wind-Down Debtors, the Post-Effective Date PropCo Assigned Claims will be deemed immediately discharged, cancelled, released, and extinguished.

(d)    *Voting*: Class 3 is Impaired.  Holders of Bridge New Money Term Loan Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 – Bridge OpCo ~~Roll Up~~Roll-Up Term Loan Claims

(a)    *Classification*:   Class 4 consists of the Bridge OpCo ~~Roll Up~~Roll-Up Term Loan Claims.

(b)    *Allowance*:   On the Effective Date, the Bridge OpCo ~~Roll Up~~Roll-Up Term Loan Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the Bridge Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date, solely to the extent constituting a Secured Claim.

(c)    *Treatment*:  Each Holder of a Bridge OpCo ~~Roll Up~~Roll-Up Term Loan Claim shall receive:

(i)    its *Pro Rata* share of the Bridge OpCo Roll-Up Term Loan Claim Distribution up to the amount of such Holder's Bridge OpCo ~~Roll Up~~Roll-Up Term Loan Claim,

(ii)    so long as the Lender Support Agreement remains in effect, and subject to the terms and conditions of the Lender Support Agreement, and only so long as Class 4 and Class 6 have voted to accept this Plan, its *Pro Rata* share of the proceeds of the

Promissory Note, payable in accordance with the priorities, timeline, and other terms contained therein, and

(d)    *Voting*:  Class 4 is Impaired.  Holders of Bridge OpCo ~~Roll-Up~~Roll-Up Term Loan Claims are entitled to vote to accept or reject the Plan.

5.    Class 5 – PropCo Secured Claims

(a)    *Classification*:  Class 5 consists of the PropCo Secured Claims.

(b)    *Allowance*:  On the Effective Date, the PropCo Secured Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the PropCo Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date.

(c)    *Treatment*:  Each Holder of a PropCo Secured Claim shall receive

(i)      its *Pro Rata* share of any Pre-Effective Date Sale Proceeds remaining after satisfying in full any Allowed Secured Claims with Liens senior to the Liens of the PropCo Secured Claims on such Pre-Effective Date Sale Proceeds and in accordance with the Pre-Effective Date Sale Proceeds Priority; and

(ii)     its *Pro Rata* share of PropCo Equitization Consideration.

(d)    *Voting*:  Class 5 is Impaired.  Holders of PropCo Secured Claims are entitled to vote to accept or reject the Plan.

6.    Class 6 – OpCo Secured Claims

(a)    *Classification*:  Class 6 consists of the OpCo Secured Claims.

(b)    *Allowance*:  On the Effective Date, the OpCo Secured Claims shall be deemed Allowed in an amount equal to the sum of the principal amount outstanding under the OpCo Credit Agreement plus all accrued and unpaid interest as of the Petition Date and any postpetition interest owed pursuant to Bankruptcy Code section 506(b) as of such date, solely to the extent constituting a Secured Claim.

(c)    *Treatment*:  Each Holder of an OpCo Secured Claim shall receive:

(i)      its *Pro Rata* share of the OpCo Secured Claim Distribution up to the Allowed amount of such Holder's OpCo Secured Claim,

(ii)     so long as the Lender Support Agreement remains in effect, and subject to the terms and conditions of the Lender Support Agreement, and only so long as Class 4 and Class 6 have voted to

36

accept this Plan, its *Pro Rata* share of the proceeds of the Promissory Note, payable in accordance with the priorities, timeline, and other terms contained therein, and

(d)   *Voting*:   Class 6 is Impaired.   Holders of OpCo Secured Claims are entitled to vote to accept or reject the Plan.

7.   Class 7A – General Unsecured Claims

(a)   *Classification*:  Class 7A consists of the General Unsecured Claims.  For the avoidance of doubt, Prepetition Credit Agreement Deficiency Claims are not included in Class 7A.

(b)   *Treatment*:  Each Holder of an Allowed General Unsecured Claim shall receive its *Pro Rata* share of the GUC Trust Beneficial Interests entitling such Holder to (in the aggregate, up to the Allowed amount of such Holder's General Unsecured Claim) its *Pro Rata* share of the following, after the costs incurred by the GUC Administrator in the administration of the GUC Trust:

(i)   the General Unsecured Claim Liquidating Trust Distribution, if any,

(ii)   the Class 7A Distribution Amount, and

(iii)   if Class 7A votes to accept the Plan, the GUC Required Lender Allocation.

(c)   *Voting*:  Class 7A is Impaired.  Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

8.   Class 7B – Prepetition Credit Agreement Deficiency Claims

(a)   *Classification*: Class 7B consists of any Prepetition Credit Agreement Deficiency Claims.

(b)   *Treatment*: Subject to the GUC Required Lender Allocation (if applicable), each Holder of a Prepetition Credit Agreement Deficiency Claim shall receive its *Pro Rata* share of the Class 7B Distribution Amount.

(c)   *Voting*: Class 7B is Impaired.  Holders of Prepetition Credit Agreement Deficiency Claims are entitled to vote to accept or reject the Plan.

9.   Class 8 – Intercompany Claims

(a)   *Classification*:  Class 8 consists of all Intercompany Claims.

(b)  *Treatment*:  Each Allowed Intercompany Claim shall be cancelled and released, and no distributions shall be made on account of any Intercompany Claims.

(c)  *Voting*:  Holders of Allowed Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

10. Class 9 – Intercompany Interests

(a)  *Classification*:  Class 9 consists of all Intercompany Interests.

(b)  *Treatment*:  Each Intercompany Interest shall be Reinstated, distributed, contributed, set off, settled, cancelled, and released, or otherwise addressed at the option of Reorganized PropCo or the Wind-Down Debtors, as applicable, and as set forth in the Restructuring Transactions Memorandum.

(c)  *Voting*:  Holders of Allowed Intercompany Interests conclusively presumed to have accepted the Plan pursuant section 1126(f) or deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Allowed Intercompany Claims are not entitled to vote to accept or reject the Plan.

11. Class 10 – Existing Equity Interests

(a)  *Classification*:  Class 10 consists of all Existing Equity Interests.

(b)  *Treatment*:  On the Effective Date, and without the need for any further corporate or limited liability company action or approval of any board of directors, board of managers, members, shareholders or officers of any Debtor, Reorganized PropCo, or any Wind-Down Debtor, as applicable, all Existing Equity Interests shall be cancelled, released, and extinguished without any distribution, and will be of no further force or effect, and each Holder of an Existing Equity Interest shall not receive or retain any distribution, property, or other value on account of such Existing Equity Interest.

(c)  *Voting*:  Class 10 is Impaired.  Holders of Existing Equity Interests are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Existing Equity Interests are not entitled to vote to accept or reject the Plan.

12. Class 11 – Section 510(b) Claims

(a)  *Classification*:  Class 11 consists of all Section 510(b) Claims.

(b)     *Treatment*:  On the Effective Date, all Section 510(b) Claims shall be discharged, cancelled, released, and extinguished and each Holder of a Section 510(b) Claim shall not receive or retain any distribution, property, or other value on account of its Section 510(b) Claim.

(c)     *Voting*:  Class 11 is Impaired.  Holders of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, Holders of Section 510(b) Claims are not entitled to vote to accept or reject the Plan.

D.     *Special Provision Governing Unimpaired Claims.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect, diminish, or impair the rights of the Debtors with respect to any Unimpaired Claims, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims.

E.     *Elimination of Vacant Classes.*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

F.     *Voting Classes; Presumed Acceptance by ~~Non-Voting~~ Non-Voting Classes.*

If a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject the Plan, the Plan shall be presumed accepted by the Holders of such Claims in such Class.

G.     *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code is satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims.  The Debtors reserve the right to modify the Plan in accordance with Article X to the extent that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

H.     *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests

in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

*I.      Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

*J.      Intercompany Interests.*

To the extent Reinstated under the Plan, the Intercompany Interests shall be Reinstated for the ultimate benefit of the holders of Post-Effective Date PropCo Equity and/or in exchange for the Debtors', Reorganized PropCo's, and Liquidating Trustee's (as applicable) agreement under the Plan to make certain distributions to the Holders of Allowed Claims. Distributions on account of the Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience and due to the importance of maintaining the corporate structure. For the avoidance of doubt, to the extent Reinstated pursuant to the Plan, on and after the Effective Date, all Intercompany Interests shall be owned by Post- ~~Post~~-Effective Date PropCo, Reorganized PropCo, or the same Wind-Down Debtor that corresponds with the Debtor that owned such Intercompany Interests prior to the Effective Date, in each case, unless otherwise set forth in the Restructuring Transactions Memorandum.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

*A.      General Settlement of Claims and Interests.*

Unless otherwise set forth in the Plan, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and controversies resolved pursuant to the Plan. All distributions made to Holders of Allowed Claims and Allowed Interests, as applicable, in any Class, are intended to be and shall be final.

*B.      Plan Settlements.*

Each of ~~(a)~~ the ~~Debtors, (b) the Committee, (c) the Sponsor, (d) the Required Lender Group, (e) McKinsey, and (f) the Gerawan Interested~~ Settlement Parties agreed to the terms of the applicable Plan Settlements to be implemented through this Plan and to be approved by the Bankruptcy Court in connection with confirmation thereof. The Plan incorporates and implements the Plan Settlements, a good-faith compromise and settlement of numerous issues and disputes between and among the Settlement Parties. The Plan Settlements ~~is~~are designed to

achieve a reasonable and effective resolution of the Chapter 11 Cases.  Except as otherwise expressly set forth herein or in the Confirmation Order, the Plan Settlements constitutes a settlement of all potential issues and claims between and among the Settlement Parties.

Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, consistent with the Settlement Stipulation, the Settlement Parties have agreed to the terms of the Plan Settlements, which provides for, among other things: (a) Cash contributions and claims waivers that fund and maximize creditor recoveries hereunder, (b) establishment of the GUC Trust and appointment of a GUC Administrator, (c) the waiver of any and all Waived Avoidance Actions, and (d) support for Confirmation, all as described in more detail in the Settlement Stipulation and the Plan, in exchange for the releases and other consideration set forth herein. Confirmation shall be deemed approval of the Plan Settlements and the Settlement Stipulation (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors, the Post-Post-Effective Date PropCo, or the Wind-DownWind-Down Debtors in connection therewith), to the extent not approved by the Bankruptcy Court previously, and the Debtors, the Post-Post-Effective Date PropCo, or the Wind-DownWind-Down Debtors are authorized to execute and deliver any and all documents necessary or appropriate to consummate the Plan Settlements, without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person.

The Plan shall be deemed a motion to approve the good faith compromise and settlement of all Claims, Interests, and controversies of the Settlement Parties against each of the other Settlement Parties pursuant to Bankruptcy Rule 9019 as and to the extent provided herein, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable and in the best interests of the Debtors and their Estates.

1. <u>GUC Trust</u>.

The GUC Trust shall be established on the Effective Date and distribute the GUC Trust Assets and otherwise administer General Unsecured Claims.  The GUC Trust Agreement establishing and delineating the terms and conditions for the creation and operation of the GUC Trust shall: (a) be drafted by the Committee in consultation with the (i) Debtors and the Required Lender Group, and (ii) the Sponsor, but solely to confirm the terms thereof are not inconsistent with the Plan Settlements; (b) be included in an amendment to the Plan Supplement; (c) provide for the appointment of the GUC Administrator who shall be selected by the Committee; and (d) be in form and substance reasonably acceptable to (i) the Debtors and the Required Lender Group and (ii) the Sponsor, but solely to confirm the terms thereof are not inconsistent with the Plan Settlements.  On the Effective Date, the Debtors, Post-Post-Effective Date PropCo, or the Wind-Down Debtors, as applicable, shall transfer to the GUC Trust the GUC Trust Assets.

2. <u>The Sponsor Contribution Amount</u>.

The Sponsor shall contribute the Sponsor Contribution Amount, payable to the Committee Designated Account on the Effective Date.

On the Effective Date, other than with respect to their obligations under the Plan Settlements and the Plan, each of the Settlement Releasing Parties shall be deemed to have forever released, waived, and discharged each of the other Settlement Releasing Parties from any and all claims and/or remedies that could be asserted by a Settlement Releasing Party against a Settlement Releasing Party, including without limitation, such claims and/or remedies that are actions, Causes of Action, lawsuits, suits, claims, counterclaims, ~~cross-claims~~<u>cross-claims</u>, liabilities, interests, judgments, obligations, rights, demands, debts, damages, losses, grievances, promises, remedies, liens, attachments, garnishments, prejudgment and <u>post-</u>~~post-~~judgment interest, costs and expenses (including attorneys' fees and costs incurred or to be incurred), including unknown claims to the maximum extent allowed under the law, whether pled or unpled, identified or unidentified, fixed or contingent, choate or inchoate, matured or unmatured, foreseen or unforeseen, accrued or unaccrued, past, present or future for fraudulent transfer, fraudulent conveyance, preference, turnover, breach of fiduciary duty, negligence, gross negligence, mismanagement, civil conspiracy, aiding and abetting, unjust enrichment, constructive trust, equitable subordination, equitable disallowance, agency, joint venture, alter ego, corporate veil piercing, usurpation of corporate opportunity, successor liability, breach of contract, fraud, intentional, reckless or negligent misrepresentation, contribution, indemnify, and all other such claims and/or remedies including, for the avoidance of doubt, the Derivative Action, all to the extent such claims and/or remedies are based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Settlement Releasing Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in~~ or out-of-court~~<u> or out-of-court</u> restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Plan Settlement<u>s</u>, the Settlement Stipulation, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Settlement Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlement<u>s</u>, or the Settlement Stipulation, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Settlement Releasing Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing; provided, notwithstanding the foregoing or anything to the contrary in this Plan,

no Prepetition Lender Preserved Claim is released unless (i) ~~this~~Classes 3, 4, and 6 vote to accept the Plan ~~is Confirmed~~ for each Debtor and (ii) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan.

Effective as of the Effective Date, the Sponsor waives any and all claims against the Debtors, whether or not heretofore asserted, and consents to the disallowance and expungement through the Confirmation Order of all claims it has asserted against the Debtors.  For the avoidance of doubt, any potential claims held by the Sponsor against the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors (but not against any other third party) for indemnification or contribution pursuant to an Executory Contract which is assumed pursuant to and subject to Article V.G hereof are not waived.  For the avoidance of doubt, the preceding sentence does not alter nor modify Article V.G hereof.

The ~~Plan~~9019 Settlement constitutes a final settlement pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code of alleged Claims and Causes of Action against the Sponsor.

~~The Debtors shall file an amended Plan Supplement removing from the schedule of Retained Causes of Action any and all claims and causes of action of the Debtors and their estates that may be asserted against the Sponsor, McKinsey, or the Gerawan Interested Parties and their respective Related Parties (as defined in the Plan).~~  For the avoidance of ~~doubt~~Notwithstanding anything to the contrary, the Plan Supplement ~~for the Debtors' Joint Chapter 11 Plan of Reorganization [Docket No. 514] is~~shall be deemed modified to remove any and all claims and causes of action of the Debtors and their estates that may be asserted against the Sponsor, McKinsey, or the Gerawan Interested Parties and their respective Related Parties (as defined in the Plan).

3.  Gerawan Litigation Claims.

This Plan constitutes a settlement of the Gerawan Litigation Claims pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code.  Upon the Effective Date, each of the Gerawan Interested Parties shall be deemed to have irrevocably waived, released, and settled any and all claims against the Debtors, and all proofs of claim filed by each of the Gerawan Interested Parties shall be deemed disallowed and expunged.  For the avoidance of doubt, any potential claims held by the Gerawan Interested Parties against the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors (but not against any other third party) for indemnification or contribution pursuant to an Executory Contract which is assumed pursuant to and subject to Article V.G hereof are not waived. For the avoidance of doubt, the preceding sentence does not alter nor modify Article V.G hereof.  On the Effective Date, Negocios Libertad, on behalf of the Gerawan Interested Parties, shall pay or cause to be paid the Gerawan Settlement Amount by wire transfer to the Committee Designated Account.  In exchange for and subject to timely payment in full of the Gerawan Settlement Amount, the Gerawan Litigation Claims shall be deemed settled, waived, and released, and each of the Gerawan Interested Parties shall be a Released Party and a Releasing Party.  In further consideration for each of the Gerawan Interested Parties constituting a Released Party and a Releasing Party, the Gerawan Interested Parties agree to: (a) withdraw the Gerawan Interested Parties' Plan Objection; (b) withdraw any and all discovery requests that have served on the

Debtors, the Sponsor, or any other Settlement Party; (c) withdraw the Derivative Action; (d) vote in favor of the Plan; (e) not opt out of the releases contained in Article VIII of the Plan; and (f) use commercially reasonable efforts to support the 9019 Motion, to the extent the 9019 Motion is heard by the Court, and Confirmation of the Plan. For the avoidance of doubt, if any of the Gerawan Interested Parties fail to do any of the foregoing (a) through (f), then none of the Gerawan Interested Parties will be Released Parties under the Plan or receive the release provided by the other Settlement Releasing Parties pursuant to Article IV.B.2 of the Plan.

4. Class 7B Distribution; General Unsecured Claims Recovery.

The Class 7 Distribution Amount shall be held in the Committee Designated Account until the Allowed amounts of all Class 7A General Unsecured Claims have been determined. At that time, the Class 7 Distribution Amount shall be allocated *Pro Rata* between (a) the Class 7A Distribution Amount, which shall be released to the GUC Trust for the ratable benefit of Holders of Allowed Class 7A General Unsecured Claims, and (b) the Class 7B Distribution Amount, which shall be released *Pro Rata* to the Holders of Allowed Class 7B Prepetition Credit Agreement Deficiency Claims (subject to the GUC Required Lender Allocation). If Class 7A votes to accept the Plan, the GUC Required Lender Allocation shall be released to the GUC Trust for the ratable benefit of Holders of Allowed Class 7A General Unsecured Claims instead of to the Required Lenders.

On the Effective Date or as soon thereafter as its General Unsecured Claim becomes Allowed, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Trust Beneficial Interests. The GUC Trust Beneficial Interests shall be reserved for the sole and exclusive purpose of (i) satisfying Allowed General Unsecured Claims in accordance with the Plan, which Allowed General Unsecured Claims against each of the Debtors shall be consolidated for purposes of allowance and distribution but shall not include any intercompany claims or claims by Prepetition Lenders, and (ii) paying the expenses of administering the GUC Trust (including but not limited to fees and expenses incurred on and after the Effective Date in reconciling, objecting to, and paying General Unsecured Claims).

For the avoidance of doubt, (a) no Prepetition Lender and (b) no intercompany claims of any Debtors, will share in the Class 7A Distribution Amount.

5. Master Lease Agreement.

On the Effective Date, the Master Lease Agreement shall be deemed rejected by each of OpCo and PropCo. OpCo and PropCo, as applicable, shall fully and irrevocably waive any rejection damages claims that they may hold arising from or in connection with the rejection damages claims on account of the rejection of the Master Lease Agreement. other than the Post-Petition Rent Entitlement. On the Effective Date, as a settlement for any claims or causes of action related to the Master Lease Agreement: (a) the Post-Petition Rent Entitlement shall be deemed to be assigned by Reorganized PropCo to Post-Effective Date PropCo; (b) all mobile farm equipment owned by PropCo shall be deemed to have been transferred to OpCo for no additional consideration free and clear of any interest in such mobile farm equipment (and shall be included in the Liquidating Trust Assets); and (c) Reorganized PropCo will be deemed to have purchased from the OpCo Credit Parties any and all interest of the OpCo Credit Parties in

and to trees and crops located on any real property owned by PropCo, including without limitation any and all rights to reimbursement in respect of cultural costs from any purchaser or lessee of such real property, in exchange for payment to the OpCo Credit Parties of the Consummation Date Crop Value, and such sale shall be free and clear of any Lien, encumbrance, or other interest in such trees and crops other than the Liens thereon securing the Exit Facilities in accordance with the terms thereof.  For the avoidance of doubt, any lien on the foregoing transferred assets securing any obligation in respect of the Prepetition Credit Agreements or the DIP Credit Agreement shall be deemed released upon such transfer.  The Wind-Down Debtors, the Liquidating Trustee, Reorganized PropCo, and/or Post-Effective Date PropCo, as applicable, shall, and shall be authorized to, execute such documents or take such other action as may be reasonably necessary to evidence the foregoing transactions.  The Debtors will share with the Agents and the Required Lender Group the projected Pre-Effective Date Cultural Cost Payments and Consummation Date Crop Value three business days prior to the Effective Date.

6. <u>McKinsey Waiver and Release</u>.

On the Effective Date, McKinsey will irrevocably waive and release any and all claims against the Debtors' estates and consents to the disallowance and expungement through the Confirmation Order of all claims it has asserted against the Debtors.  In exchange for the foregoing, McKinsey is a "Released Party" and will receive the releases contained in Articles IV and VIII of the Plan.

7. ~~Investigation Budget~~<u>Reserved</u>.

~~The Committee's investigation budget referenced in paragraph 8 of the Fifth Interim Cash Collateral Order shall be increased from $50,000 to $125,000 upon entry of the Final DIP Order (or, to the extent the Final DIP Order is not entered, the Confirmation Order).~~

8. <u>Plan Support</u>.

The Settlement Parties agree to use commercially reasonable efforts to support the Debtors' pursuit of entry of an order approving the Plan Settlements and confirmation of the Plan and shall not object to or otherwise hinder or delay the Debtors' efforts to consummate the terms thereof.

To the extent entitled to vote with respect to the Plan, the Settlement Parties and the individual members of the Committee shall vote in favor of the Plan.  The Settlement Parties and the individual members of the Committee shall <u>not</u> opt out of the releases contained in Article VIII of the Plan and, to the extent any Settlement Party or individual member of the Committee has heretofore submitted an ~~opt out~~opt-out election, the Plan will deem such election withdrawn.

The Committee agrees it will (i) not directly or indirectly oppose any attempt by the Debtors to shorten the notice or objection period with respect to a hearing on confirmation of the Plan or the Plan Settlements, (ii) solely to the extent consistent with the Committee's fiduciary duties, not oppose any motions or other pleadings filed by the Debtors in the chapter 11 cases, so long as such motion or pleading is not inconsistent with and does not derogate from the Plan Settlements and does not otherwise materially affect the rights of the Holders of General

Unsecured Claims, and (iii) recommend (via written support letter distributed by the Debtors to all Holders of General Unsecured Claims) that unsecured creditors vote to accept the Plan.

The Settlement Parties agree to take all reasonable actions to support any motions to extend the exclusive periods for filing and soliciting a chapter 11 plan, to the extent required. So long as each of the Settlement Parties are not in default of their obligations under the Plan Settlements Stipulation, the Settlement Parties will not (i) file any motion to convert or dismiss the Debtors' chapter 11 cases; *provided* that the Required Lender Group shall be permitted to file a motion to convert or dismiss the Chapter 11 Case of any Debtor for which the Plan is not Confirmed at the Confirmation hearing or (ii) file any motion to appoint a trustee or an examiner in the Debtors' chapter 11 cases, and the Settlement Parties agree not to opposesupport any such motions filed by any other party in interest.

Each Settlement Party agrees to use commercially reasonable efforts to support entry of the Confirmation Order and, to the extent the 9019 Motion is heard by the Court, the 9019 Order, including Bankruptcy Court approval of the Plan Settlements.

*C.*     *Deemed Consolidation of Class 7A.*

Pursuant to the Plan Settlements and limited solely for the purposes of Holders of Allowed General Unsecured Claims receiving distributions from the GUC Trust under the Plan Settlements, (a) all General Unsecured Claims against all of the Debtors shall be deemed General Unsecured Claims against Debtor Wawona Farm Co. LLC, (b) all guarantees or responsibility of one Debtor for the obligations of any other Debtor shall be deemed eliminated, and all guarantees or responsibility executed by multiple Debtors for the obligations of any other Entity shall be deemed consolidated into a single obligation, and (c) solely for purposes of distribution from the GUC Trust and no other purpose, each General Unsecured Claim Filed or to be Filed in the Chapter 11 Case of any Debtor shall be deemed Filed against, and shall be a single obligation of, Debtor Wawona Farm Co. LLC with respect to any distribution from the GUC Trust to the Holder of such General Unsecured Claim.

*D.*     *PropCo Equitization Transaction.*

On or before the Effective Date, the Debtors, Post-Effective Date PropCo or Reorganized PropCo, as applicable, shall take all applicable actions set forth in the Restructuring Transactions Memorandum and may take any additional action as may be necessary or appropriate to effectuate the PropCo Equitization Transaction, and any transaction described in, approved by, contemplated by, or necessary to effectuate the PropCo Equitization Transaction that are consistent with and pursuant to the terms and conditions of the Plan and the Restructuring Transactions Memorandum, which transactions may include, as applicable: (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and the Restructuring Transactions Memorandum and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the

terms of the Plan and the Restructuring Transactions Memorandum and having other terms to which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, dissolution, or other certificates or documentation pursuant to applicable law; (d) the issuance of Post-Effective Date PropCo Equity; (e) the execution and delivery of the Promissory Note; (f) the execution and delivery of the New Organizational Documents of Post-Effective Date PropCo and Reorganized PropCo; (g) the execution and delivery of the Exit Facilities; and (h) all other actions that Post-Effective Date PropCo or Reorganized PropCo, as applicable, determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan. All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors, with the consent of the Required Lender Group, determine are necessary or advisable to effectuate the provisions and intent of the Plan.

The Debtors, the Bridge Agents, the OpCo Agent, the PropCo Agent, and the Required Lender Group shall cooperate in good faith to structure and implement the Restructuring Transactions in a tax efficient manner reasonably acceptable to each such party.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law. The Confirmation Order shall, and shall be deemed to, pursuant to sections 1123 and 363 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the Restructuring Transactions.

1.   Sources of Consideration for Plan Distributions Under the PropCo Equitization Transaction; Exit Facilities.

The Debtors shall fund distributions under the Plan pursuant to the PropCo Equitization Transaction, as applicable, with (1) the issuance of the Post-Post-Effective Date PropCo Equity and (2) the issuance of the Exit Facilities. Each distribution and issuance referred to in Article IV of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

On the Effective Date, GroupCo shall contribute 100% of the equity of PropCo to Post-Effective Date PropCo, and Post-Effective Date PropCo shall then issue the Post-Effective Date PropCo Equity pursuant to the Plan. The issuance of the Post-Post-Effective Date PropCo Equity by Post-Effective Date PropCo shall be authorized without the need for any further corporate or other action by the Debtors or Post-Effective Date PropCo or by Holders of any Claims or Interests.

All of the shares (or comparable units) of Post-Effective Date PropCo issued pursuant to the Plan shall be duly authorized, validly issued, fully paid, and non- non-assessable and not to have been issued in violation of any preemptive rights, rights of first refusal or similar rights or any applicable law. Each distribution and issuance of Post- Post-Effective Date PropCo Equity shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance without the need for execution by any party thereto other than Post-Effective Date PropCo. Any Entity's acceptance of Post- Post-Effective Date PropCo Equity shall be deemed as its agreement to the New Organizational Documents, as the same may be amended or modified from time to time following the Effective Date in accordance with their respective terms. The Post- Post-Effective Date PropCo Equity will not be registered under the Securities Act or listed on any exchange as of the Effective Date and will not meet the eligibility requirements of the Depository Trust Company.

Pursuant to section 1145 of the Bankruptcy Code, the offering, issuance, and distribution of the Post- Post-Effective Date PropCo Equity in respect of eligible Allowed Claims pursuant to the Plan shall be exempt from, among other things, the registration and/or prospectus delivery requirements of section 5 of the Securities Act and any other applicable federal, state, local or other law requiring registration and/or delivery of prospectuses prior to the offering, issuance, distribution, or sale of Securities. Such Post- Post-Effective Date PropCo Equity, (a) will not constitute "restricted securities" as defined in rule 144(a)(3) under the Securities Act and (b) will be freely tradable and transferable in the United States by each recipient thereof that (i) is an entity that is not an "underwriter" as defined in section 1145(b)(1) of the Bankruptcy Code, (ii) is not an "affiliate" of the Debtors as defined in Rule 144(a)(1) under the Securities Act, (iii) has not been such an "affiliate" within 90 days of the time of the transfer, and (iv) has not acquired such securities from an "affiliate" within one year of the time of transfer. Notwithstanding the foregoing, such Post- Post-Effective Date PropCo Equity shall remain subject to compliance with applicable securities laws and any rules and regulations of the SEC, if any, applicable at the time of any future transfer of such Post- Post-Effective Date PropCo Equity and subject to any restrictions in the New Organizational Documents.

Confirmation of the Plan shall be deemed approval of (a) the Exit Credit Agreements and all related loan documents, and (b) all transactions contemplated thereby, and all actions to be taken and undertakings to be made, and obligations to be incurred by Post- Post-Effective Date PropCo, and Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust, as applicable, in connection therewith, including the payment of all fees, indemnities, expenses and other payments provided for therein and authorization of Post- Post-Effective Date PropCo, and Reorganized PropCo, the Wind-Down Debtors and the Liquidating Trust, as applicable, to enter into and execute such Exit Credit Agreements and such other documents as may be required to effectuate any Exit Facility.

On the Effective Date, all of the liens and security interests to be granted in accordance with any Exit Credit Agreement, and all related loan documents, in each case, as applicable: (a) shall be deemed to be granted; (b) shall be legal, binding and enforceable liens on, and security interests in, the collateral granted thereunder in accordance with the terms of such Exit Credit Agreement and all related loan documents, in each case as applicable; (c) shall be deemed

automatically perfected on the Effective Date, subject only to such liens and security interests as may be permitted under the Exit Credit Agreements, in each case, as applicable; and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-~~non-~~bankruptcy law.

2.    New Organizational Documents.

On the Effective Date, the New Organizational Documents shall be automatically adopted by Post-~~Post-~~Effective Date PropCo and Reorganized PropCo, as applicable.  To the extent required under the Plan or applicable non-~~non-~~bankruptcy law, Post-~~Post-~~Effective Date PropCo and Reorganized PropCo will file their respective New Organizational Documents with the applicable authorities in its respective jurisdiction of organization.  The New Organizational Documents will prohibit the issuance of ~~non-voting~~non-voting equity Securities, to the extent required under section 1123(a)(6) of the Bankruptcy Code.

On or after the Effective Date, Post-Effective Date PropCo and Reorganized PropCo may amend and restate their respective New Organizational Documents in accordance with the terms thereof, and Post-Effective Date PropCo and Reorganized PropCo may file such amended certificates or articles of incorporation, bylaws, or such other applicable formation documents, and other constituent documents as permitted by the laws of their respective jurisdictions of incorporation or formation and the New Organizational Documents.

3.    Directors and Officers of Post-~~Post-~~Effective Date PropCo and Reorganized PropCo.

As of the Effective Date, the terms of the existing board of directors or managers, as applicable, of PropCo shall expire and the new directors and officers of Post-~~Post-~~Effective Date PropCo shall be appointed by the applicable Required Lenders.  Corporate governance for Post-Effective Date PropCo and Reorganized PropCo, including their respective charters, bylaws, operating agreements, or other organization documents, as applicable, shall be consistent with section 1123(a)(6) of the Bankruptcy Code and the New Organizational Documents.

E.    OpCo ~~Wind-Down~~*Wind-Down* Transactions.

On or before the Effective Date, the Debtors or the Wind-Down Debtors and Liquidating Trustee, as applicable, shall take all applicable actions set forth in the Restructuring Transactions Memorandum and may take any additional action as may be necessary or appropriate to effectuate the OpCo Wind-Down, and any transaction described in, approved by, contemplated by, or necessary to effectuate the OpCo Wind-Down that are consistent with and pursuant to the terms and conditions of the Plan and Restructuring Transactions Memorandum, which transactions may include, as applicable:  (a) the execution and delivery of appropriate agreements or other documents of merger, amalgamation, consolidation, restructuring, reorganization, conversion, disposition, transfer, arrangement, continuance, dissolution, sale, purchase, or liquidation containing terms that are consistent with the terms of the Plan and Restructuring Transactions Memorandum and that satisfy the applicable requirements of applicable law and any other terms to which the applicable parties may agree; (b) the execution

and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and the Restructuring Transactions Memorandum, and having other terms to which the applicable parties agree; and (c) execution and delivery of the applicable Exit Facilities; and (d) all other actions that the applicable Wind-Down Debtor or the Liquidating Trustee determine to be necessary or advisable, including making filings or recordings that may be required by applicable law in connection with the Plan.

All Holders of Claims and Interests receiving distributions pursuant to the Plan and all other necessary parties in interest, including any and all agents thereof, shall prepare, execute, and deliver any agreements or documents, including any subscription agreements, and take any other actions as the Debtors determine are necessary or advisable to effectuate the provisions and intent of the Plan.

The Confirmation Order shall and shall be deemed to authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including the OpCo Wind-Down, including, for the avoidance of doubt, any and all actions required to be taken under applicable nonbankruptcy law.

1.   Sources of Consideration for Plan Distributions Under the OpCo Wind-Down.

The Liquidating Trustee shall fund distributions under the Plan pursuant to the OpCo Wind-Down with, as applicable: (a) Cash on hand; (b) the Wind-Down Debtors in the OpCo Wind-Down Debtors' Assets and the Liquidating Trust Assets, as applicable, and any proceeds thereof; and (c) any Residual Assets.

2.   Wind-Down Debtors.

(a)   Wind-Down Debtors.

At least one Debtor shall continue in existence after the Effective Date as the Wind-DownWind-Down Debtor for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-DownWind-Down Debtors after the Effective Date, (2) filing appropriate tax returns, to the extent necessary, and (3) administering the Plan. The Liquidating Trustee may perform some or all of these actions on behalf of such Wind-Down Debtor in accordance with the other provisions of the Plan and the Liquidating Trust Agreement.  For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to a prior order or the Plan, the Wind-DownWind-Down Debtors (and their assignee, the Liquidating Trust) specifically retain and reserve the right to assert, after the Effective Date, any and all of the Retained Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan and the Liquidating Trust Agreement.

(b)        Wind-Down Debtors' Assets.

On the Effective Date, the Wind-Down Debtors shall become successors to the OpCo Credit Parties' and MVK FarmCo LLC's rights, title, and interests to any assets remaining assets of such Debtors' Estates, which shall vest in the Wind-Down Debtors for the purpose of liquidating the Wind-Down Debtors and consummation of the Plan.  The Wind-Down Debtors will not conduct business operations other than as necessary to wind down such operations and will be charged with winding down the OpCo Credit Parties' and MVK FarmCo LLC's Estates. The Wind-Down Debtors shall be managed by the Liquidating Trustee.  The Wind-Down Debtors shall be administered in accordance with the terms of the Liquidating Trust Agreement. Any distributions to be made under the Plan from such assets shall be made by the Liquidating Trustee or its designee.  The Wind-Down Debtors and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement.

For the avoidance of doubt, pursuant to 11 U.S.C. § 362(c)(1), the automatic stay of an act against property of the estate will continue until such property is no longer property of the estate, and pursuant to 11 U.S.C. § 362(c)(2), the stay of any other act described in 11 U.S.C. § 362(a) continues until the earlier of the closure or dismissal of these Chapter 11 Cases.

Pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, only the Wind-DownWind-Down Debtors and the Liquidating Trustee shall have the right to pursue or not to pursue, or, subject to the terms hereof and the Liquidating Trust Agreement, compromise or settle any Retained Causes of Action On and after the Effective Date, the Wind-DownWind-Down Debtors and the Liquidating Trustee may, without further Bankruptcy Court approval, commence, litigate, and settle any Retained Causes of Action relating to any Wind-DownWind-Down Debtors' Assets remaining with the Wind-DownWind-Down Debtors as a successor to the Debtors or rights to payment or Claims that belong to the Debtors as of the Effective Date or are instituted by the Wind-Down Debtors and the Liquidating Trustee on or after the Effective Date, except as otherwise expressly provided for herein and in the Liquidating Trust Agreement.  The Wind-DownWind-Down Debtors or the Liquidating Trustee, as applicable, shall be entitled to enforce all defenses and counterclaims to any and all Claims asserted against the Debtors and their Estates, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code.

On the Effective Date, the Debtors and the Liquidating Trustee shall execute the Liquidating Trust Agreement and shall have established the Liquidating Trust pursuant hereto. In the event of any conflict between the terms of this Article IV.E.2 and the terms of the Liquidating Trust Agreement, the terms of the Liquidating Trust Agreement shall control.

Notwithstanding any prohibition on assignability under applicable non-non-bankruptcy Law, on the Effective Date and thereafter, if additional Wind-DownWind-Down Debtors' Assets become available, such additional Wind-DownWind-Down Debtors' Assets, subject to this Plan, the Confirmation Order, and the Liquidating Trust Agreement, as applicable, shall be treated as if they were transferred to (as applicable) and vested in the applicable Wind-Down Debtor as a successor to the Debtors with all of attendant rights, title, and interests in and to all of the Wind-DownWind-Down Debtors' Assets, in accordance with section 1141 of the Bankruptcy

Code.  At such time when any of the ~~Wind-Down~~Wind-Down Debtors' Assets vest in the ~~Wind-Down~~Wind-Down Debtors, all such assets shall automatically vest in the Wind-Down Debtors free and clear of all Claims, Liens, and other interests, subject only to the Allowed Claims and Interests as set forth herein and the ~~Wind-Down~~Wind-Down Debtors' Expenses as set forth herein and in the Liquidating Trust Agreement.

(c)     Residual Assets.

Following the occurrence of the Effective Date and the making of distributions on the Effective Date pursuant hereto, (i) any Cash or other asset received by and properly belonging to the Wind-Down Debtors, that is not otherwise addressed in the Plan, shall be transferred to the Liquidating Trust (or, if such asset properly belongs to PropCo, such asset shall be transferred to Reorganized PropCo), and (ii) any amounts remaining in the Professional Fee Escrow Account shall be remitted therefrom to the Liquidating Trust, Reorganized PropCo, and/or ~~Wind-Down~~Wind-Down Debtors, as applicable, after payment in full of all Allowed Professional Fee Claims in accordance with Article II.B.2.

(d)     Dissolution of Boards of the Debtors.

As of the Effective Date, the existing board of directors or managers, as applicable, of the Wind-Down Debtors shall be dissolved without any further action required on the part of the Debtors or the Debtors' officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or members of any other Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtors, the officers, directors, or managers, as applicable, of the Debtors, or the members of any Debtor.  Subject in all respects to the terms of this Plan, the Wind-Down Debtors shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Cases.

As of the Effective Date, the Liquidating Trustee shall act as the sole officer, director, and manager, as applicable, of the Wind-Down Debtors with respect to their affairs.  Subject to the foregoing and in all respects to the terms of this Plan, the Liquidating Trustee shall have the power and authority to take any action necessary to ~~wind-down~~wind-down and dissolve any of the Wind-Down Debtors, as applicable, and shall:  (a) file a certificate of dissolution for any of the Wind-Down Debtors, as applicable, together with all other necessary corporate and company documents, to effect the dissolution of any of the Wind-Down Debtors, as applicable, under the applicable laws of each applicable Debtor's and/ or Wind-Down Debtor's state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for any of the Wind-Down Debtors, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of any of the Wind-Down Debtors or their respective Estates for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (c) represent the interests of the Wind-Down Debtors or their Estates, as applicable, before any taxing authority in all tax matters, including any action, suit, proceeding, or audit.

The filing by the Liquidating Trustee of any of the Wind-Down Debtors' certificate of dissolution shall be authorized and approved in all respects without further action under

applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of any of the Debtors and/or the Wind-Down Debtors, as applicable, or any of their Affiliates.

(e)    ~~Wind-Down~~Wind-Down Debtors' Expenses.

The ~~Wind-Down~~Wind-Down Debtors' Expenses shall be paid from the Liquidating Trust Assets, subject to the Wind-Down Budget.

(f)    Insurance.

The Liquidating Trustee may obtain insurance coverage (in the form of an errors and omissions policy or otherwise) with respect to the liabilities and obligations of the Liquidating Trustee.

To the extent any directors or officers provide assistance to the ~~Wind-Down~~Wind-Down Debtors or the Liquidating Trust after the Effective Date of the Plan, the ~~Wind-Down~~Wind-Down Debtors or the Liquidating Trust will provide such directors and officers with reasonable and customary indemnification, exculpation, and insurance coverage with respect to such services, consistent with the indemnification, exculpation, and insurance coverage provided to the Liquidating Trustee.

(g)    Dissolution of the ~~Wind-Down~~Wind-Down Debtors.

The ~~Wind-Down~~Wind-Down Debtors will be dissolved on the earlier of:  (i) (A) the final liquidation, administration, and distribution of the Liquidating Trust Assets in accordance with the terms of the Liquidating Trust Agreement and the Plan, and the full performance of all other duties and functions as set forth herein or in the Liquidating Trust Agreement and (B) the Chapter 11 Cases of the Debtors have been closed; or (ii) the Liquidating Trustee determines in his or her reasonable judgment that the ~~Wind-Down~~Wind-Down Debtors and the Liquidating Trust lack sufficient assets and financial resources, after reasonable collection efforts, to complete the duties and powers assigned to him or her under the Plan, the Confirmation Order and/or the Liquidating Trust Agreement.  In addition, consistent with the Liquidating Trust Agreement, the Liquidating Trustee may dissolve any of the Wind-Down Debtors on or after the Effective Date if the Liquidating Trustee determines in his or her reasonable judgment that such dissolution would not interfere with duties and powers assigned to him or her under the Plan, the Confirmation Order, and/or the Liquidating Trust Agreement.  Upon the filing by or on behalf of a ~~Wind-Down~~Wind-Down Debtor of a certification of dissolution with the Bankruptcy Court, such ~~Wind-Down~~Wind-Down Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions.

(h)      No Liability of the ~~Wind Down~~Wind-Down Debtors.

On and after the Effective Date, the ~~Wind Down~~Wind-Down Debtors shall have no liability on account of any Claims or Interests except as set forth herein and in the Liquidating Trust Agreement.  All payments and all distributions made by the Liquidating Trustee hereunder shall be in exchange for all Claims or Interests against the Wind-Down Debtors.

3.    Liquidating Trust.

Notwithstanding anything to the contrary herein, on the Effective Date, the ~~Wind Down~~Wind-Down Debtors shall transfer the Liquidating Trust Assets to the Liquidating Trust.  As described further below, it is expected that the Debtors and the Liquidating Trustee will treat the Liquidating Trust as a "liquidating trust" as that term is used under section 301.7701-4-4(d) of the Treasury Regulations that is owned for U.S. federal income tax purposes by Holders of the applicable Claims.  For the avoidance of doubt, in the event of a Permitted Transfer, the provisions set forth in Article IV.M herein shall continue to govern all matters associated with the prosecution, settlement, or collection upon any Retained Causes of Action transferred to the Liquidating Trust.  Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the ~~Wind Down~~Wind-Down Debtors will have no reversionary or further interest in or with respect to the assets of the Liquidating Trust.  To the extent beneficial interests in the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, the Debtors intend that the exemption provisions of section 1145 of the Bankruptcy Code will apply to such beneficial interests.

(a)      Governance.

The Liquidating Trust shall be formed on the Effective Date.  The Liquidating Trust will be governed by the Liquidating Trust Agreement, which will be Filed as part of the Plan Supplement and administered by the Liquidating Trustee.  In the event of any conflict between the terms of the Plan and the terms of the Liquidating Trust Agreement, the terms of the Plan shall govern.

The Liquidating Trust Agreement shall provide for the appointment of the Liquidating Trustee and shall be drafted by the Required Lender Group subject to the consent of the Debtors.  The Liquidating Trustee shall be selected by the Required Lenders under the Bridge Credit Agreement, with approval (not to be unreasonably withheld) of the Debtors and the Committee.  The Debtors will disclose the identity of the initial Liquidating Trustee in the Plan Supplement.  The retention of the Liquidating Trustee shall be approved in the Confirmation Order.

The Liquidating Trustee shall act for the Wind-Down Debtors in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same) and retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan in accordance with the OpCo Wind-Down and as otherwise provided in the Confirmation Order.  On the Effective Date, the authority, power, and incumbency of the Persons acting as managers,

directors, and officers of the Wind-Down Debtors shall be deemed to have resigned, and the Liquidating Trustee shall be appointed as the sole manager, sole director, and sole officer of the ~~Wind-Down~~Wind-Down Debtors, and shall succeed to the powers of the Wind-Down Debtors' managers, directors, and officers.

Pursuant hereto and the Liquidating Trust Agreement, and subject to any limitations contained in this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall act in a fiduciary capacity on behalf of the interests of all Holders of Claims and Interests that will receive distributions pursuant to Plan and shall have in place under the Liquidating Trust Agreement applicable indemnity, limitation of liabilities, and waiver provisions to protect the Liquidating Trustee from being personally liable for any claims or causes of action asserted by the Liquidating Trust beneficiaries, except for any clams of fraud, gross negligence, or willful misconduct.

The Liquidating Trustee shall have the power to administer the assets of the Liquidating Trust in accordance with the Liquidating Trust Agreement. The Liquidating Trustee shall be the Estate representative designated to prosecute Retained Causes of Action belonging to the Estates that are not released, waived, settled, compromised, or transferred pursuant to the Plan and subject to the limitations set forth in the Plan, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. Without limiting the generality of the foregoing, the Liquidating Trustee shall (a) hold, administer, and prosecute the assets of the Liquidating Trust and any proceeds thereof, (b) have the power and authority to retain, as an expense of the Liquidating Trust, attorneys, advisors, other professionals, and employees as may be appropriate to perform the duties required of the Liquidating Trustee under the Liquidating Trust Agreement, (c) make distributions as provided in the Liquidating Trust Agreement, and (d) provide periodic reports and updates regarding the status of the administration of the Liquidating Trust.

(b)    Initial Contributions.

On the Effective Date, the ~~Wind-Down~~Wind-Down Debtors shall transfer the Liquidating Trust Assets to the Liquidating Trust and, together with the Liquidating Trustee, take all steps necessary to establish the Liquidating Trust in accordance with and pursuant to the terms of the Plan and the Liquidating Trust Agreement. Under no circumstances shall the Debtors or the ~~Wind-Down~~Wind-Down Debtors or any other party be required to contribute any additional assets to the Liquidating Trust other than the Liquidating Trust Assets. In no event shall the Liquidating Trustee have any authority to pursue Claims or Causes of Action against any Released Party and the Liquidating Trust Agreement shall also so stipulate.

If the Liquidating Trustee determines to assign, sell, or otherwise transfer any of the Retained Causes of Action, any such assignment, sale, or transfer will be subject in all respects to the Plan, the Plan Settlements (including, for the avoidance of doubt, all contractual limitations on recovery related to such claims)~~,~~ and the ~~terms of the Exit Facilities~~Liquidating Trust Agreement.

The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made, as provided herein, for the benefit of the Liquidating Trust beneficiaries. Upon the transfer of the Liquidating Trust Assets, the Debtors, or the ~~Wind-Down~~Wind-Down Debtors, as the case may

be, shall have no interest in or with respect to the Liquidating Trust Assets, or the Liquidating Trust.  To the extent that any Liquidating Trust Assets cannot be transferred to the Liquidating Trust because of a restriction on transferability under applicable non-non-bankruptcy law that is not superseded or preempted by section 1123 of the Bankruptcy Code or any other provision of the Bankruptcy Code, such Liquidating Trust Assets shall be deemed to have been retained by the Wind-DownWind-Down Debtors and the Liquidating Trustee shall be deemed to have been designated as a representative of the Wind-Down Debtors pursuant to section 1123(b)(3)(B) of the Bankruptcy Code to enforce and pursue such Liquidating Trust Assets on behalf of the Wind-DownWind-Down Debtors.  Notwithstanding the foregoing, all net proceeds of such Liquidating Trust Assets shall be transferred to the Liquidating Trust to be distributed consistent with the terms of the Plan and the Liquidating Trust Agreement.

The Wind-DownWind-Down Debtors shall make reasonable best efforts to retain and transfer all documents relating to the Liquidating Trust Assets to the Liquidating Trust; *provided* that the Wind-Down Debtors shall not be liable to the Liquidating Trust for non-compliance with this provision unless such liability is decided by the Bankruptcy Court.

(c)     Claims.

Subject to Article IV.F.2 hereof, the Liquidating Trust shall have the primary authority to (a) File, withdraw, or litigate to judgment any objections to Claims or Interests (except for General Unsecured Claims); (b) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to such Claims and Interests (except for General Unsecured Claims); (c) settle, compromise, or resolve any Disputed Claim (except for General Unsecured Claims) without any further notice to or action, order, or approval by the Bankruptcy Court; and (d) administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court; *provided, further*, that the GUC Administrator shall have the right to prosecute and resolve objections to Disputed General Unsecured Claims as Provided in Article IV.F.2.

(d)     Disbursements.

Following the Effective Date, the proceeds from the Liquidating Trust Assets shall be disbursed pursuant to and in accordance with the Plan and the Liquidating Trust Agreement. The Liquidating Trustee shall make an initial distribution of any excess Cash on hand (excluding any amounts reserved by the Liquidating Trustee in her discretion in accordance with the Liquidating Trust Agreement) within thirty days of the Liquidating Trust's receipt of the Liquidating Trust Assets.

*F.     GUC Trust.*

On or prior to the Effective Date, the Debtors, the GUC Administrator, and the GUC Trust Advisory Committee shall execute the GUC Trust Agreement and shall take all steps necessary to establish the GUC Trust, which shall be a liquidating trust, in accordance with the Plan.  In the event of any conflict between the terms of the Plan and the terms of the GUC Trust Agreement, the terms of the GUC Trust Agreement shall govern.  Additionally, on the Effective Date, or at such later date as provided herein, the Debtors shall transfer and shall be deemed to

transfer to the GUC Trust all of its rights, title, and interest in and to all of the GUC Trust Assets and, in accordance with section 1141 of the Bankruptcy Code, the GUC Trust Assets shall automatically vest in the GUC Trust free and clear of all Claims and Liens, and such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use, or other similar tax.  The GUC Administrator shall be the exclusive administrator of the assets of the GUC Trust for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representatives of the Estate of each of the Debtors appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code, solely for purposes of carrying out the GUC Administrator's duties under the GUC Trust Agreement.  The GUC Trust shall be governed by the GUC Trust Agreement and administered by the GUC Administrator.  The powers, rights, and responsibilities of the GUC Administrator shall be specified in the GUC Trust Agreement and shall include the authority and responsibility to, among other things, take the actions set forth in this section.  The GUC Administrator shall hold and distribute the GUC Trust Assets in accordance with the provisions of the Plan and the GUC Trust Agreement.  Other rights and duties of the GUC Administrator shall be as set forth in the GUC Trust Agreement.  After the Effective Date, the Debtors, Post-Effective Date PropCo, the ~~Wind-Down~~Wind-Down Debtors, and the Liquidating Trustee shall have no interest in the GUC Trust Assets except as set forth in the Plan, the Confirmation Order, or the GUC Trust Agreement.

1.   GUC Trust Agreement.

The GUC Trust Agreement will be Filed with the Plan Supplement and generally will provide for, among other things: (i) the transfer of the GUC Trust Assets to the GUC Trust; (ii) the payment of certain reasonable expenses of the GUC Trust from the GUC Trust Assets; and (iii) distributions to Holders of Allowed General Unsecured Claims, as provided herein and in the GUC Trust Agreement.  For the avoidance of doubt, the GUC Trust Agreement also will identify: (a) the identity of the GUC Administrator; (b) the terms of the GUC Administrator's engagement; (c) the identity of any parties who will supervise the fees of the GUC Administrator; and (d) whether the GUC Administrator shall be bonded.  The GUC Trust Agreement may include reasonable and customary provisions that allow for indemnification by the GUC Trust.  Any such indemnification shall be the sole responsibility of the GUC Trust and payable solely from the GUC Trust Assets.

2.   GUC Administrator.

In furtherance of, and consistent with, the purposes of the GUC Trust and the Plan, the GUC Administrator shall (i) have the power and authority to hold, manage, sell, invest, and distribute to the Holders of General Unsecured Claims the GUC Trust Assets, (ii) hold the GUC Trust Assets for the benefit of the Holders of General Unsecured Claims, (iii) have the power and authority to prosecute and resolve objections to Disputed General Unsecured Claims, (iv) file tax returns for the GUC Trust (as described in Article IV.G below), and (v) have the power and authority to perform such other functions as are provided for in the Plan and the GUC Trust Agreement.

The GUC Administrator shall have the primary responsibility for General Unsecured Claims Reconciliation Process; *provided that* the Debtors, ~~Post-~~Post-Effective Date PropCo, the ~~Wind-Down~~Wind-Down Debtors, and the Liquidating Trustee, as applicable, solely with the

consent of the GUC Administrator, shall have the right to object to and prosecute such objections to General Unsecured Claims not Allowed under the Plan.

### 3.  GUC Trust Advisory Committee

The GUC Trust Advisory Committee shall be a committee established under the GUC Trust Agreement.  The members of the GUC Trust Advisory Committee shall be designated by the Committee.  The GUC Trust Advisory Committee shall provide input to the GUC Administrator on certain matters, and shall have certain rights and authority as set forth in the GUC Trust Agreement.  All fees and expenses incurred by the GUC Trust Advisory Committee shall be paid from the GUC Trust Assets, in accordance with the GUC Trust Agreement.  The GUC Trust Advisory Committee may authorize its own dissolution by filing with the Bankruptcy Court an appropriate notice that its responsibilities hereunder and under the GUC Trust Agreement have concluded.  Unless already dissolved, the GUC Trust Advisory Committee shall be dissolved as of the date the Chapter 11 Cases are closed.

### 4.  GUC Trust Fees and Expenses.

From and after the Effective Date, the GUC Administrator, on behalf of the GUC Trust, shall, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the GUC Trust Fees and Expenses exclusively from the GUC Trust Assets and in the manner provided herein.  Subject to the provisions of the Plan concerning the allocation of the GUC Trust Assets, the GUC Administrator is authorized to allocate such expenses (including, without limitation, any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets and professional fees) to, and pay them from, the GUC Trust Assets, as the GUC Administrator may determine in good faith is fair (such as based upon the GUC Administrator's good faith determination of the nature or purpose of the fee or expense, the relative amount of General Unsecured Claims, the relative estimated value of the GUC Trust Assets or such other matters as the GUC Administrator deems relevant); *provided* that the GUC Administrator (i) shall reasonably attribute the expenses (including, without limitation, any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets and professional fees) of the liquidation, defense, or resolution of General Unsecured Claims to the GUC Trust Assets and pay them therefrom, and (ii) shall reasonably attribute the expenses (including, without limitation, any taxes imposed on or payable by the GUC Trust or in respect of the GUC Trust Assets and professional fees) of calculating, disseminating, and administering distributions *(e.g.*, accounting and mailing costs) on General Unsecured Claims to the GUC Trust Assets and pay them therefrom.   None of Post-Effective Date PropCo, Reorganized PropCo, the Wind-DownWind-Down Debtors, or the Liquidating Trust shall be responsible for any costs, fees, or expenses of the GUC Trust.

### 5.  GUC Trust Treatment.

The GUC Trust shall continue to have all of the rights and powers granted to the GUC Trust as set forth in this Plan and applicable non-non-bankruptcy law, and the GUC Administrator shall also have the rights, powers, and obligations set forth in the GUC Trust Agreement.

6.    The GUC Trust Beneficial Interests.

Any and all GUC Trust Beneficial Interests shall be transferrable by will, intestate succession, or otherwise by operation of law.  In addition, any and all GUC Trust Beneficial Interests will not constitute "securities" and will not be registered pursuant to the Securities Act or any applicable state or local securities law.  However, if it should be determined that any such interests constitute "securities," the exemption provisions of Section 1145 of the Bankruptcy Code will be satisfied and the offer, issuance, and distribution under the Plan of the GUC Trust Beneficial Interests will be exempt from registration under the Securities Act and all applicable state and local securities laws and regulations.

7.    Dissolution of the GUC Trust.

After the final distribution of the balance of the GUC Trust Assets pursuant to the Plan and the GUC Trust Agreement, the GUC Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

8.    Single Satisfaction of Allowed General Unsecured Claims.

Notwithstanding anything to the contrary herein, in no event shall Holders of Allowed General Unsecured Claims recover more than the full amount of their Allowed General Unsecured Claims from the GUC Trust.

G.    *Tax Treatment of Liquidating Trust and GUC Trust.*

(a)    "Liquidating Trust" Treatment.

Subject to any applicable law or definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Debtors expect to treat each of the Liquidating Trust and GUC Trust as a "liquidating trust" under section 301.7701-4 4(d) of the Treasury Regulations and a grantor trust under section 671 of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and, subject to the last sentence of this paragraph, the Liquidating Trustee or GUC Administrator (as applicable) will take a position on the Liquidating Trust's or GUC Trust's (as applicable) tax returns accordingly (including, without limitation, filing the statements required under section 1.671-4 4(a) of the Treasury Regulations).  The Liquidating Trust and GUC Trust shall be established for the primary purpose of liquidating the Liquidating Trust Assets or GUC Trust Assets (as applicable), reconciling claims asserted against the ~~Wind-Down~~Wind-Down Debtors, and distributing the proceeds thereof in accordance with the Plan, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, such primary purpose, and is otherwise intended to comply with the ruling guidelines set forth in Revenue Procedure 94-45, 1994-2 C.B. 684. For U.S. federal income tax purposes, the Debtors, the Liquidating Trustee, and the GUC Administrator will treat the transfer of assets to the Liquidating Trust or the GUC Trust (as applicable) as (a) a ~~first-step~~first-step transfer of the Liquidating Trust Assets or GUC Trust Assets (as applicable) to the Holders of the applicable Claims~~, and (b) a second-step~~ (including, in the case of the Liquidating Trust, Post-Effective Date PropCo on account of the Post-Effective Date PropCo Liquidating Trust Distribution Amount), and (b) a second-step transfer by such Holders to the Liquidating Trust or GUC Trust (as applicable).  The Wind-Down Debtors, the Liquidating

Trustee, and the GUC Administrator accordingly will treat such Holders as the grantors and deemed owners of the Liquidating Trust property and the GUC Trust property under Tax Code section 671. If, however, it is determined based on applicable law or definitive guidance from the IRS or a court of competent jurisdiction that such treatment is not available (and subject to the application to any portion of the Liquidating Trust or the GUC Trust of disputed ownership fund treatment as described in Article IV.G.(b) below), the Liquidating Trustee and the GUC Administrator may instead treat the Liquidating Trust and the GUC Trust for federal income tax purposes as a partnership (and if so will not treat the Liquidating Trust or the GUC Trust as publicly traded partnership taxable as a corporation under Tax Code section 7704).

No request for a ruling from the IRS will be sought on the classification of the Liquidating Trust or GUC Trust. Accordingly, there can be no assurance that the IRS would not take a contrary position to the classification of the Liquidating Trust or GUC Trust. If the IRS were to successfully challenge the classification of the Liquidating Trust or GUC Trust as a grantor trust, the federal income tax consequences to the Liquidating Trust or GUC Trust (as applicable) and the Liquidating Trust or GUC Trust beneficiaries (as applicable) could vary from those discussed in the Plan (including the potential for an ~~entity level~~entity-level tax). For example, the IRS could characterize the Liquidating Trust or GUC Trust as a ~~so~~ so-called "complex trust" subject to a separate ~~entity level~~entity-level tax on its earnings, except to the extent that such earnings are distributed during the taxable year.

As soon as possible after the transfers of the Liquidating Trust Assets to the Liquidating Trust or GUC Trust Assets to the GUC Trust (as applicable), the Liquidating Trustee or the GUC Administrator (as applicable) shall make a good faith valuation of the Liquidating Trust Assets or GUC Trust Assets (as applicable). This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, Liquidating Trustee or GUC Administrator (as applicable), and the holders of Claims receiving interests in the Liquidating Trust or the GUC Trust (as applicable) shall take consistent positions with respect to the valuation of the Liquidating Trust Assets or GUC Trust Assets (as applicable), and such valuations shall be utilized for all U.S. federal income tax purposes.

Allocations of taxable income and loss of the Liquidating Trust or GUC Trust (as applicable) among the applicable beneficiaries shall be determined, as closely as possible, by reference to the amount of distributions that would be received by each such beneficiary if the Liquidating Trust or GUC Trust (as applicable) had sold all of the Liquidating Trust Assets or GUC Trust Assets (as applicable) at their tax book value and distributed the proceeds to the applicable beneficiaries, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust or GUC Trust (as applicable). The tax book value of the Liquidating Trust Assets or GUC Trust Assets (as applicable) shall equal their fair market value on the date of the transfer of the Liquidating Trust Assets to the Liquidating Trust or GUC Trust Assets to the GUC Trust (as applicable), adjusted in accordance with tax accounting principles prescribed by the Tax Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

The Liquidating Trust and GUC Trust will distribute at least annually to the Holders of the applicable Claims its net proceeds from the sale of assets and any other income realized by the Liquidating Trust or GUC Trust (as applicable, and to the extent such net proceeds are

available for distribution), net of expenses and such reserves as are determined by the Liquidating Trustee or GUC Administrator (as applicable) to be reasonably necessary to maintain the value of the Liquidating Trust Assets or GUC Trust Assets (as applicable) or to meet claims and contingent liabilities (including disputed claims), as more fully set forth in the Liquidating Trust Agreement or GUC Trust Agreement (as applicable).  The Liquidating Trustee and GUC Administrator will make continuing efforts to dispose of the Liquidating Trust Assets or GUC Trust Assets (as applicable), will make timely distributions, and will not unduly prolong the duration of the Liquidating Trust or GUC Trust (as applicable).

The Liquidating Trustee, GUC Administrator, Liquidating Trust, and GUC Trust shall be discharged or dissolved, as the case may be, on the earlier of (a) such time as (i) all of the Liquidating Trust Assets or GUC Trust Assets (as applicable) have been liquidated and (ii) all distributions required to be made by the Liquidating Trustee or GUC Administrator (as applicable) under the Plan, Liquidating Trust Agreement and GUC Trust Agreement have been made, and (b) five (5) years after the Effective Date, unless the Bankruptcy Court, upon motion of the Liquidating Trustee or GUC Administrator (as applicable) within the six (6) months prior to the fifth (5th) anniversary hereof (or within six (6) months prior to the end of an extension period), determines that a ~~fixed period~~fixed-period extension (not to exceed three (3) years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee or GUC Administrator (as applicable) that any further extension would not adversely affect the status of the trust as a grantor trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery of the Liquidating Trust Assets or GUC Trust Assets (as applicable).  Upon the filing of such a motion, the term of the Liquidating Trust or GUC Trust (as applicable) shall be automatically extended through entry of a final order thereon, unless the extension would adversely affect the status of the Liquidating Trust or GUC Trust (as applicable) as a liquidating trust for federal income tax purposes.

The Liquidating Trustee or GUC Administrator (as applicable) shall file or cause to be filed annual information tax returns with the IRS as a grantor trust pursuant to section 1.671-~~4~~-4(a) of the Treasury Regulations that will include information concerning certain items relating to the holding or disposition (or deemed disposition) of the Liquidating Trust Assets or GUC Trust Assets (as applicable) (e.g., income, gain, loss, deduction, and credit).  Each Liquidating Trust beneficiary or GUC Trust beneficiary holding a beneficial interest in such trust will receive a copy of the information returns for such trust and must report on its federal income tax return its share of all such items.  The information provided by such trust will pertain to the beneficiaries of such trust who receive their interests in such trust in connection with the Plan.

(b)     Disputed Ownership Fund Treatment.

With respect to any of the assets of the Liquidating Trust or GUC Trust (as applicable) that are subject to potential disputed claims of ownership or uncertain distributions, or to the extent "liquidating trust" treatment is otherwise unavailable or not elected to be applied with respect to the Liquidating Trust or GUC Trust (as applicable), the Debtors intend that such assets will be subject to disputed ownership fund treatment under section 1.468B-~~-~~9 of the Treasury Regulations, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes.  Under such

treatment, a separate federal income tax return shall be filed with the IRS for any such account. Any taxes (including with respect to interest, if any, earned in the account) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). In the event, and to the extent, that any cash in the Liquidating Trust or GUC Trust (as applicable) is insufficient to pay the portion of any taxes attributable to taxable income arising from the Liquidating Trust Assets or GUC Trust Assets (as applicable), the Liquidating Trust Assets or GUC Trust Assets (as applicable) (including those otherwise distributable) may be sold to pay such taxes. The undisputed portion of the Liquidating Trust Assets or GUC Trust Assets (as applicable) will be treated as held in a grantor trust, with deemed distribution to and contribution from the applicable Holders of Allowed Claims to the Liquidating Trust or GUC Trust (as applicable), as described above.

*H.    Corporate Action.*

On the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including implementation of the Restructuring Transactions and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date). On the Effective Date, all matters provided for in the Plan involving the corporate or organizational structure of the Debtors, Post-~~Post-~~Effective Date PropCo, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, as applicable and any corporate, partnership, limited liability company, or other governance action required by the Debtors, Post-~~Post-~~Effective Date PropCo, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the equityholders, members, directors, or officers of the Debtors, Post-~~Post-~~Effective Date PropCo, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, as applicable. On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors, Post-~~Post-~~Effective Date PropCo, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of Post-~~Post-~~Effective Date PropCo or the ~~Wind-Down~~Wind-Down Debtors, as applicable. The authorizations and approvals contemplated by this ~~Article IVH~~Article IV.H shall be effective notwithstanding any requirements under nonbankruptcy Law.

*I.    Vesting of Assets in Reorganized PropCo or the Wind-Down Debtors.*

Except as otherwise provided in the Confirmation Order or in the Plan (including the Restructuring Transactions Memorandum), on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in each Estate, all Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan (with the exception of the GUC Trust Assets transferred or issued to the GUC Trust) shall vest in Reorganized PropCo or each respective Wind-Down Debtor.

On and after the Effective Date, except as otherwise provided in the Plan, Reorganized PropCo or each Wind-Down Debtor may operate its business and may use, acquire, or dispose of property, enter into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business and execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules in all respects.

*J.        Cancellation of Securities and Agreements.*

Except as otherwise specifically provided for in the Plan on the Effective Date: (i) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other Securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled and deemed surrendered as to the Debtors, and the Debtors, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, as applicable, shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, as applicable, pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be fully released, settled, and compromised.  Notwithstanding the foregoing, no Executory Contract or Unexpired Lease that (x) has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (y) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

Notwithstanding the foregoing, the Bridge Credit Agreement, OpCo Credit Agreement, PropCo Credit Agreement, and DIP Credit Agreement shall survive as necessary to (a) enforce the rights, claims and interests of any Agent and any predecessor thereof against parties other than the Released Parties; (b) allow the receipt and making of distributions under the Plan in accordance with the terms of any such note or agreement, as applicable; (c) preserve any rights of any Agent and any predecessor thereof as against any money or property distributable to Holders of Bridge Secured Claims, OpCo Secured Claims, PropCo Secured Claims, and DIP Claims, as applicable, including any priority in respect of payment and the right to exercise any charging liens; and (d) permit the OpCo Agent to enforce rights against OpCo Lenders under Section 2.5(e) of the OpCo Credit Agreements with respect to LC Disbursements (as defined in the OpCo Credit Agreements).

*K.      Effectuating Documents; Further Transactions.*

On and after the Effective Date, Post-Effective Date PropCo, Reorganized PropCo the Wind-Down Debtors, or the Liquidating Trust, as applicable, and their respective officers, directors, trustees, members, managers, and Liquidating Trustee (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

*L.      Exemption from Certain Taxes and Fees.*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to Post-Effective Date PropCo, Reorganized PropCo, or a Wind-Down Debtor, or the Liquidating Trust, or from a Wind-Down Debtor to the Liquidating Trust, as applicable, or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the entrance into, delivery of, and performance under the Exit Facilities; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment. All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the imposition or collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

*M.      Preservation of Causes of Action.*

In accordance with section 1123(b) of the Bankruptcy Code, but subject to Article VIII of the Plan or pursuant to a Final Order, Reorganized PropCo and each Wind-Down Debtor, as

applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and Reorganized PropCo's and Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Articles IV and VIII of the Plan or pursuant to a Final Order (including the Cash Collateral Order and any DIP Order), which, in each case, shall be deemed released and waived by the Debtors, Reorganized PropCo, and the Wind-Down Debtors as of the Effective Date.  For the avoidance of doubt, all Claims and Causes of Action that may be asserted against the Sponsor, McKinsey, or the Gerawan Interested Parties and their respective Related Parties are hereby waived and may not be enforced by Reorganized PropCo ~~or,~~ any of the Wind-Down Debtors, or the Liquidating Trust.

**Reorganized PropCo and the Wind-Down Debtors, as applicable, may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of Reorganized PropCo and the Wind-Down Debtors, respectively.  No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, or the Liquidating Trustee, as applicable, will not pursue any and all available Causes of Action of the Debtors against it.  Except as specifically released or as assigned or transferred under the Plan or pursuant to a Final Order (including the Cash Collateral Order and any DIP Order), the Debtors, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, and the Liquidating Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article VIII of the Plan or pursuant to a Final Order (including the Cash Collateral Order and any DIP Order).  Unless otherwise agreed upon in writing by the parties to the applicable Causes of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date.  Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against Reorganized PropCo, any Wind-Down Debtor, and the Liquidating Trust, without the need for any objection or responsive pleading by Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.** Reorganized PropCo and the ~~Wind-Down~~Wind-Down Debtors, with respect to other Causes of Action may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court.  If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, and the objection party for thirty days, such objection shall be resolved by the Bankruptcy Court.  Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the Cash Collateral Order and any DIP Order), Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, the Liquidating Trust, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or

otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

In accordance with section 1123(b)(3) of the Bankruptcy Code, and except as expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or pursuant to a Final Order (including the Cash Collateral Order and any DIP Order), any Causes of Action that a Debtor may hold against any Entity shall vest in Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, except as otherwise expressly provided in the Plan, including Article VIII of the Plan.  Reorganized PropCo and the ~~Wind-Down~~Wind-Down Debtors, as applicable, reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action. Reorganized PropCo and the ~~Wind-Down~~Wind-Down Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

*N.    Release of Avoidance Actions*

On the Effective Date, the Debtors, on behalf of themselves and their Estates, shall release any and all Waived Avoidance Actions, and the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trust, the GUC Trust, and any of their successors or assigns, and any Entity acting on behalf of the Debtors, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, the Liquidating Trust, or the GUC Trust, shall be deemed to have waived the right to pursue any and all Waived Avoidance Actions.

*O.    Exit Facilities.*

On the Effective Date ~~(or, as to the Liquidating Trust, the date upon which the Liquidating Trust is formed if after the Effective Date)~~, Post-Effective Date PropCo~~,~~ and Reorganized PropCo~~, the Liquidating Trust, and, if still in existence, the Wind-Down Debtors~~ shall: (a) enter into the Exit Bridge Facility and (b) solely to the extent the Holders of Allowed DIP Claims agree to receive a *Pro Rata* share of an Exit Termed Out DIP Facility in lieu of receiving payment in full in Cash in respect of their Allowed DIP Claim, enter into the Exit Termed Out DIP Facility.  Additionally, on the Effective Date, solely to the extent Post-Effective Date PropCo, Reorganized PropCo, and the PropCo Required Lenders determine that entry is in the best interest of Post-Effective Date PropCo, and Reorganized PropCo, Post-Effective Date PropCo and Reorganized PropCo shall enter into the Exit PropCo Facility.  The terms of the Exit Bridge Facility, any Exit Termed Out DIP Facility, any Exit PropCo Credit Agreement, and the respective documents related thereto, shall be set forth in the Plan Supplement.

To the extent applicable, Confirmation of the Plan shall be deemed: (a) approval of each Exit Facility (including the respective transactions and related agreements contemplated thereby, and all actions to be taken, undertakings to be made, obligations to be incurred, and fees and

expenses to be paid by the Debtors, Reorganized PropCo, ~~and~~ and Post-Effective Date PropCo, ~~the Liquidating Trust, or the Wind-Down Debtors,~~ as applicable, in connection therewith), to the extent not approved by the Bankruptcy Court previously, and (b) authorization for the Debtors, ~~the Wind-Down Debtors, the Liquidating Trust,~~ Reorganized PropCo, or Post-Effective Date PropCo, as applicable, to, without further notice to or order of the Bankruptcy Court: (i) execute and deliver those documents and agreements necessary or appropriate to pursue or obtain each applicable Exit Facility, including the Exit Termed Out DIP Credit Agreement, the Exit Bridge Credit Agreement, and the Exit PropCo Credit Agreement and all respective related documents, and incur and pay any fees and expenses in connection therewith, and (ii) act or take action under applicable Law, regulation, order, rule, vote, consent, authorization, or approval of any Person, subject to such modifications as the Debtors, ~~the Wind-Down Debtors, the Liquidating Trust,~~ Reorganized PropCo, or Post-~~Post~~-Effective Date PropCo, as applicable, may deem to be necessary or appropriate to consummate each Exit Facility; provided that such modifications are acceptable to the applicable Exit Facility Lenders.

As of the Effective Date, upon the granting of Liens in accordance with each Exit Facility, such Liens shall constitute valid, binding, enforceable, and automatically perfected Liens in the collateral specified in each Exit Facility. To the extent provided in each Exit Facility, the applicable Exit Facility Agent or Holder(s) of Liens under the Exit Facilities are authorized to file with the appropriate authorities mortgages, financing statements, and other documents, and to take any other action in order to evidence, validate, and perfect such Liens or security interests. The guarantees, mortgages, pledges, Liens, and other security interests granted to secure the obligations arising under the Exit Facilities shall be granted in good faith, for legitimate business purposes, and for reasonably equivalent value as an inducement to the Exit Facility Lenders to extend credit thereunder shall be deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance, recharacterization, or subordination, and the priorities of such Liens and security interests shall be set forth respectively in the Exit Termed Out DIP Credit Agreement, the Exit Bridge Credit Agreement, and the Exit PropCo Credit Agreement, and the respective documents related thereto.

*P.    Settlement of Certain Claims Against the OpCo Credit Parties and/or the Wind-Down Debtors*

As set forth in Article II.E and Article III.C.3, as a settlement of intercompany claims between PropCo and the OpCo Credit Parties, on the Effective Date, immediately following the creation of Post-Effective Date PropCo, all Allowed DIP Claims and Allowed Bridge New Money Term Loan Claims against the OpCo Credit Parties and the Wind-Down Debtors shall be discharged, cancelled, released, and extinguished. In exchange, Post-Effective Date PropCo shall be entitled to the OpCo Contribution Amount. For the avoidance of doubt, (i) the foregoing shall not reduce the amount of the Exit Termed Out DIP Facility or the Exit Bridge Facility and (ii) to the extent that the Wind-Down Debtors or the Liquidating Trust are unable to fully satisfy the Post-Effective Date PropCo Liquidating Trust Distribution Amount, Post-Effective Date PropCo and Reorganized PropCo shall have no recourse to the OpCo Agent, any of the Bridge Agents, the OpCo Lenders, or the Bridge Lenders, including (but not limited to) any recourse to the Promissory Note.

**ARTICLE V.**
**TREATMENT OF EXECUTORY CONTRACTS**
**AND UNEXPIRED LEASES**

*A.      Assumption and Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, (ii)  is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (iii) is subject to a motion to assume (or assume and assign) such Unexpired Lease or Executory Contract as of the Effective Date; (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (v) is a Pending 363 Sale Contract; or (vi) is a D&O Liability Insurance Policy.

Entry of the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan and the Schedule of Assumed Executory Contracts and Unexpired Leases, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth herein, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall ~~re-vest~~re-vest in and be fully enforceable by the applicable contracting Reorganized PropCo or Wind-Down Debtor, as applicable, in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by Reorganized PropCo or the ~~Wind-Down~~Wind-Down Debtors, as applicable.

If certain, but not all, of a contract counterparty's Executory Contracts and Unexpired Leases are assumed pursuant to the Plan, the Confirmation Order will be a determination that such counterparty's Executory Contracts and Unexpired Leases that are being rejected pursuant to the Plan are severable agreements that are not integrated with those Executory Contracts and Unexpired Leases that are being assumed pursuant to the Plan.  Parties seeking to contest this finding with respect to their Executory Contracts and/or Unexpired Leases must File a timely objection by the Confirmation Objection Deadline on the grounds that their agreements are integrated and not severable.

To the maximum extent permitted by law, to the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption or assumption and assignment of such Executory Contract or Unexpired Lease (including any

"change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the ~~non-Debtor~~non-Debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other ~~default-related~~default-related rights with respect thereto. Notwithstanding anything to the contrary in the Plan, the Debtors, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time up to ~~forty-five (45)~~forty-five days after the Effective Date.

B.    *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, as applicable, under such Executory Contract or Unexpired Lease. Without limiting the general nature of the foregoing, and notwithstanding any non-~~non-~~bankruptcy law to the contrary, the Debtors, Reorganized PropCo, and the Wind-Down Debtors expressly reserve and do not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations on goods previously purchased by the Debtors contracting from ~~non-Debtor~~non-Debtor counterparties to any rejected Executory Contract or Unexpired Lease.

C.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Unless otherwise provided by a Final Order of the Bankruptcy Court, any Proof of Claim based on the rejection of the Debtors' Executory Contracts or Unexpired Leases, pursuant to the Plan or otherwise, must be Filed with the Bankruptcy Court and served on the Debtors, Post-Effective Date PropCo, Reorganized PropCo, and the ~~Wind-Down~~Wind-Down Debtors, as applicable, no later than thirty (30) days after the effective date of the rejection of such Executory Contract or Unexpired Lease. In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be Filed with the Bankruptcy Court and served on the Debtors no later than seven (7) days after service of the Debtors' proposed rejection of such Executory Contract or Unexpired Lease.

**Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claim were not timely Filed in accordance with the Bar Date Order shall not (i) be treated as a creditor with respect to such Claim, (ii) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (iii) participate in any distribution in the Chapter 11 Cases on account of such Claim. Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors, the Debtors' Estates, Post-Effective Date PropCo, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, or the property for any of the foregoing without the need for any objection by the Debtors, Post-~~Post-~~Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory**

**Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.**   All Allowed Claims arising from the rejection by any Debtor of any of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims against the applicable Debtor in accordance with Article III.C of the Plan, except as otherwise provided by order of the Bankruptcy Court.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Bankruptcy Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree.  In the event of a dispute regarding:  (i) the amount of any Cure Claim; (ii) the ability of Reorganized PropCo, or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; or (iii) any other matter pertaining to assumption or the assumption and assignment, the Cure Claims shall be made following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment.  Notwithstanding the foregoing, nothing herein shall prevent Reorganized PropCo from settling any Cure Claim without further notice to or action, order, or approval of the Bankruptcy Court.

As set in the Bidding Procedures Order, the deadline to object to, among other things, the Debtors' proposed cure amount with respect to an Unexpired Lease or Executory Contract that was included on a Notice of Potentially Assumed Executory Contracts and Unexpired Leases (as defined in the Bidding Procedures Order), was December 1, 2023.  Notwithstanding that deadline having passed, counterparties to Executory Contracts and Unexpired Leases will retain the right to object to the assumption of an Executory Contract or Unexpired Lease on the basis of events occurring after December 1, 2023, including additional cure amounts that arise from defaults occurring after December 1, 2023, adequate assurance of performance in light of the transactions contemplated in the Plan, and/or the identity of any entity (or direct or indirect owner of such entity) that the Debtors designate as assuming or becoming the assignor under an Executory Contract or Unexpired Lease.  To the extent that the Debtors seek to assume and assign an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtors will identify the assignee in the applicable Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned.

In the event of a dispute regarding (i) the ability of the Debtors, Reorganized PropCo, the ~~Wind-Down~~ Wind-Down Debtors, or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed (or assumed and assigned, as applicable), or (ii) any other matter pertaining to assumption or assignment, then any disputed Cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made as soon as reasonably practicable

following, and in accordance with, the entry of a Final Order of the Bankruptcy Court resolving such dispute or as may be agreed upon by the Debtors, Reorganized PropCo, the Wind-Down Debtors, as applicable, and the counterparty to the Executory Contract or Unexpired Lease, and any such unresolved dispute shall not prevent or delay implementation of the Plan or the occurrence of the Effective Date.

The assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any nonmonetary defaults arising from or triggered by the filing of these Chapter 11 Cases, including defaults of provisions restricting the change in control or ownership interest composition or any ~~bankruptcy related~~bankruptcy-related defaults, arising at any time prior to the effective date of assumption.  Any and all Proofs of Claim based upon Executory Contracts or Unexpired Leases that have been assumed in the Chapter 11 Cases, including pursuant to the Confirmation Order, shall be deemed disallowed and expunged as of the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such assumption, (2) the effective date of such assumption, or (3) the Effective Date without the need for any objection thereto or any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Insurance Contracts.*

1.　　　<u>Insurance Contracts</u>. ~~On and after the Effective Date, either Reorganized PropCo or the Liquidating Trustee on behalf of the Wind-Down Debtors, as applicable, shall become and remain liable in full for all of their and their respective Debtors' obligations under the Insurance Contracts regardless of whether such obligations arise or become liquidated before, on, or after the Effective Date, and all Insurance Contracts shall revest in either Reorganized PropCo or the Wind-Down Debtors, as applicable, and in each case unaltered;~~<u>Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Confirmation Order, the Exit Credit Agreement, any bar date notice or claim objection, or any other document related to any of the foregoing (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction or discharge, confers Bankruptcy Court jurisdiction, or requires a party to opt out of any releases):</u> (a) nothing ~~(1)~~ alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any Insurance Contracts ~~in accordance with the terms and conditions thereof, nor their~~<u>, nor (1) any Insurer's</u> right to seek payment or reimbursement from the Debtors (or after the Effective Date, Reorganized PropCo, or the Liquidating Trustee on behalf of the Wind-Down Debtors, as applicable), or draw on any Collateral or security therefor, ~~and~~<u>or (2) any Insurer's subrogation rights under the Insurance Contracts and applicable non-bankruptcy law, and</u> for the avoidance of doubt, Insurers shall not need to nor be required to file or serve an objection to a Cure Notice or a request, application, claim, Cure Claim, Proof of Claim, or motion for payment or allowance of any Administrative Claim, or any notice of recoupment, and Insurers shall not be subject to any claims bar date or similar deadline governing Cure amounts, Proofs of Claim, or Administrative Claims; and (~~b~~<u>c</u>) the automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable <u>non-</u>~~non-~~bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable <u>non-</u>~~non-~~bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or <u>Post-</u>~~Post-~~Effective Date PropCo or the ~~Wind-Down~~<u>Wind-Down</u> Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and <u>Post-</u>~~Post-~~Effective Date PropCo or the ~~Wind-Down~~<u>Wind-Down</u> Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and <u>Post-</u>~~Post-~~Effective Date PropCo or the ~~Wind-Down~~<u>Wind-Down</u> Debtors, as applicable) under the applicable Insurance Contracts, in such order as the applicable Insurer may determine~~.~~<u>; and (IV) the Insurers to cancel any Insurance Contracts, and take other actions relating to the</u>

Insurance Contracts (including effectuating a setoff or recoupment), to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the applicable Insurance Contracts.

2.    Chubb Agribusiness Policy.

On and after the Effective Date, Reorganized PropCo shall replace the existing first named insured under the Chubb Agribusiness Policy, and shall thereafter be liable in full for all amounts due and owing thereunder in accordance with and subject to the terms thereof, including, but not limited to, with respect to payment for any outstanding or not-yet-owednot-yet-owed premium installments owed thereunder and shall properly issue payment before the applicable installment due date for each installment owed under the Chubb Agribusiness Policy in accordance with the terms of any such invoice in full dollars; and, for the avoidance of doubt, and in addition to the treatment provided in this paragraph V.E.2, the Chubb Agribusiness Policy shall be entitled to the treatment set forth in Article V.E.1(a) of this Plan as though PropCo had been the first named insured thereunder on the Confirmation Date.

3.    1970 Group.

For the avoidance of doubt, nothing in the Disclosure Statement, this Plan, the Plan Supplement, or the Confirmation Order shall alter, modify, or otherwise amend the (i) the terms and conditions of the 1970 Group Agreement or (ii) any right that 1970 Group may have to seek reimbursement or other payment from the Debtors, including pursuant to the doctrine of subrogation or assignment, (or any of the Debtors' successors in interest, as and to the extent applicable) in accordance with the terms and conditions of the 1970 Group Agreement (to the extent applicable); provided that all parties, including the Debtors, (or any of the Debtors' successors in interest, as and to the extent applicable ) reserve the right to dispute any assertion of such right; provided further that no such right which would not otherwise exist is created by this Article V.E.3.

F.    *D&O Liability Insurance Policies.*

TheNotwithstanding anything to the contrary herein, the D&O Liability Insurance Policies shall be assumed by the Debtors, Reorganized PropCo, or the Wind-DownWind-Down Debtors, as applicable, effective as of the Effective Date, pursuant to sections 105, 365, and 1123 of the Bankruptcy Code, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Liability Insurance Policies, including the coverage for defense and indemnity under any of the D&O Liability Insurance Policies which shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies in accordance with and subject to the terms and conditions thereof regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date. For the avoidance of doubt, the D&O Liability Insurance Policies will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, in accordance with and subject to the terms and conditions of the D&O Liability Insurance Policies.  In addition, after the Effective Date, none of the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall terminate or otherwise

reduce coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect or purchased as of the Petition Date.

G.    *Indemnification Obligations.*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action that arose prior to the Effective Date under any indemnification provisions or applicable law, including any tail policies (whether in the by-laws, certificates of incorporation of formation, limited liability company agreements, other organizational documents, board resolutions, indemnification agreements, other organizational documents, board resolutions, indemnification agreements, employment contracts, or otherwise), in each case that may exist, shall (a) survive on the Effective Date on terms no less favorable to such individuals than the indemnification provisions in place prior to the Effective Date, (b) be deemed and treated as an Executory Contract that has been assumed by Reorganized PropCo or ~~Wind-Down~~ Wind-Down Debtors on behalf of the applicable Debtor, (c) and remain in effect, intact, and irrevocable after the Effective Date; *provided* that, notwithstanding anything herein to the contrary, (x) any such obligation of Reorganized PropCo to indemnify, defend, reimburse, or limit liability shall be limited to the extent of coverage available to it to satisfy any such obligation under any applicable insurance policy originally issued to PropCo, including any D&O Liability Insurance Policy assigned to Reorganized PropCo, (y) any such obligation of a Wind-Down Debtor to indemnify, defend, reimburse, or limit liability shall be limited to the extent of coverage available to it to satisfy such obligation under any applicable insurance policy originally issued to any Debtor other than PropCo, including any D&O Liability Insurance Policy assigned to the Wind-Down Debtors, and (z) no claim for any indemnity, defense, reimbursement, or limitation of liability referred to in this paragraph will attach to any asset sold or otherwise disposed of by the Wind-Down Debtors, the Liquidating Trust, or Reorganized PropCo after the Effective Date.  Notwithstanding anything to the contrary contained in the Plan or the Confirmation Order, no Proof of Claim, Administrative Claim, or Cure Claim need be Filed with respect to any such indemnification obligation.

H.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements.*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired

Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith, absent a Final Order of the Bankruptcy Court to the contrary.

*I.    Reservation of Rights.*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an admission by the Debtors or any other Entity, as applicable, that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that either any Debtor or any other Entity, as applicable, has any liability thereunder.  In the event of a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter the treatment of such contract or lease as otherwise provided in the Plan.

*J.    Nonoccurrence of Effective Date.*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

*A.    Timing and Calculation of Amounts to Be Distributed.*

Unless otherwise provided in the Plan, on the Effective Date (or, if a Claim is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interest (as applicable), shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class from the Debtors or the Disbursing Agent on behalf of the Debtors, as applicable.  Distributions of Residual Assets and any other assets of the ~~Wind-Down~~Wind-Down Debtors will be made in accordance with the timing and procedures set forth in the Liquidating Trust Agreement.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.  If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof.  Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

*B.    Disbursing Agent.*

Distributions under the Plan shall be made by the Disbursing Agent(s).  The Debtors, Post-Effective Date PropCo, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, and the

Disbursing Agent(s), as applicable, shall not be required to give any bond or surety or other Security for the performance of their duties unless otherwise ordered by the Bankruptcy Court.

C.      *Rights and Powers of the Disbursing Agent(s).*

      1.   <u>Powers of the Debtors and the Disbursing Agent(s)</u>.

The Disbursing Agent(s) shall be empowered to:  (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions.*

      1.   <u>Record Date for Distributions</u>.

Except as provided herein, on the Distribution Record Date, the Claims Register shall be closed, and the Debtors, and the Disbursing Agent(s), or any other party responsible for making distributions, shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.  In addition, with respect to payment of any Cure amounts or disputes over any Cure amounts, neither the Debtors nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the ~~non-Debtor~~non-Debtor party to the applicable Executory Contract or Unexpired Lease as of the Effective Date, even if such non-Debtor party has sold, assigned, or otherwise transferred its Claim for a Cure amount.

      2.   <u>Delivery of Distributions in General</u>.

      (a)   Payments and Distributions on Disputed Claims.

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims or Disputed Interests that are not Allowed Interests, as applicable, as of the Effective Date but which later become Allowed Claims or Allowed Interests, as applicable, shall, in the reasonable discretion of the Disbursing Agent, be deemed to have been made on the Effective Date unless the Disbursing Agent and the Holder of such Claim or Interest agree otherwise.

      (b)   Special Rules for Distributions to Holders of Disputed Claims.

Notwithstanding any provision otherwise in the Plan and except as may be agreed to by, as applicable, the Debtors, Post-~~Post-~~Effective Date PropCo, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, or the Disbursing Agent, as applicable, on the one hand, and the Holder of a Disputed Claim or Disputed Interest, as applicable, on the other hand, no partial payments and no partial distributions shall be made with respect to any Disputed Claim or Disputed Interest, other than with respect to Professional Fee Claims, until all Disputed Claims or Disputed Interests held by the Holder of such Disputed Claim or Disputed Interest have

become Allowed Claims or Allowed Interests or have otherwise been resolved by settlement or Final Order.

(c)    Delivery of Distributions.

Except as otherwise provided herein, the Disbursing Agent shall make distributions to Holders of Allowed Claims and Allowed Interests on the Effective Date at the address for each such Holder as indicated on the Debtors' books and records as of the date of any such distribution; *provided*, *however*, that the manner of such distributions shall be determined at the discretion of the Disbursing Agent; *provided*, *further*, *however*, that the address for each Holder of an Allowed Claim or Allowed Interest shall be deemed to be the address set forth in, as applicable, any Proof of Claim or Proof of Interest Filed by such Holder, or, if no Proof of Claim or Proof of Interest has been filed, the address set forth in the Schedules.

3.    <u>Minimum Distributions</u>.

Notwithstanding any other provision of the Plan, the Disbursing Agent will not be required to make distributions of less than $100 in value (whether Cash or otherwise), and each such Claim to which this limitation applies shall be discharged pursuant to Article VIII and its Holder is forever barred pursuant to Article VIII from asserting that Claim against Reorganized PropCo, the Wind-Down Debtors, or their property.

4.    <u>Undeliverable Distributions and Unclaimed Property</u>.

With respect to any undeliverable distribution, no distribution to the relevant Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six (6) months from the date the distribution is made. After such date, all unclaimed property or interests in property shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property Laws to the contrary) to Reorganized PropCo or the ~~Wind-Down~~Wind-Down Debtors, as applicable, and shall become distributable to Holders of Claims pursuant to Article IV.E.2(c), automatically and without need for a further order by the Bankruptcy Court and the Claim of any Holder to such property or interest in property shall be released, settled, compromised, and forever barred.

5.    <u>Manner of Payment Pursuant to the Plan</u>.

Any payment in Cash to be made pursuant to the Plan shall be made at the election of the Disbursing Agent, by check, Automated Clearing House, credit card, or wire transfer, or as otherwise provided in the applicable agreements, at the sole and exclusive discretion of the Disbursing Agent.

E.    *Compliance with Tax Requirements/Allocations.*

In connection with the Plan, to the extent applicable, the Debtors, <u>Post-</u>~~Post-~~Effective Date PropCo, Reorganized PropCo, the ~~Wind-Down~~<u>Wind-Down</u> Debtors, the Disbursing Agent, the GUC Administrator, and any applicable withholding agent shall comply with all tax

withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan. Notwithstanding any provision in the Plan to the contrary, such parties shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, delaying distributions pending receipt of information or forms necessary to facilitate such distributions (including the determination of any withholding in connection therewith), or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, Post-Effective Date PropCo, Reorganized PropCo, and the Wind-Down Debtors, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with all applicable wage garnishments, alimony, child support, and similar spousal awards, Liens, and encumbrances.

Any person entitled to receive any property as an issuance or distribution under the Plan shall, upon request, deliver to the Disbursing Agent or other applicable withholding agent an IRS Form W-9 or (if the payee is a foreign Person) an appropriate IRS Form W-8, as applicable.

F.    *Allocation of Plan Distributions Between Principal and Interest.*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed therein.

G.    *Setoffs and Recoupment.*

Except as otherwise expressly provided herein, the Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable, may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors, Reorganized PropCo, or the Wind-Down Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such Claim it may have against the Holder of such Claim.

H.    *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in a Final Order, the Plan, or the Confirmation Order, or required by applicable bankruptcy and non-bankruptcy law, postpetition interest shall not accrue or be paid on any prepetition Claims against the Debtors, and no Holder of a prepetition Claim against the Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

I.    *Foreign Currency Exchange Rate.*

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to

the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in *The Wall Street Journal, National Edition*, on the Petition Date.

J.    *Claims Paid or Payable by Third Parties.*

1.    Claims Paid by Third Parties.

The Debtors, Reorganized PropCo, and the ~~Wind Down~~Wind-Down Debtors, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment on account of such Claim from a party that is not a Debtor; *provided*, *however*, that a notice of satisfaction shall be filed as applicable by the Debtor, Reorganized PropCo, or the ~~Wind Down~~Wind-Down Debtors reflecting that a particular proof of claim has been satisfied.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the Debtors annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen ~~(14)~~ -day grace period specified above until the amount is repaid.

2.    Claims Payable by Insurance, Third Parties.

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors′    Insurance Contracts, or other ~~non-Debtor~~non-Debtor payment agreements, until the Holder of such Claim has exhausted all remedies with respect to such Insurance Contracts, or other ~~non-Debtor~~non-Debtor payment agreement~~, or Collateral, as applicable~~.  To the extent that one or more of the Debtors′    Insurers or ~~non-Debtor~~non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent finally adjudicated by a court of competent jurisdiction or otherwise settled), or ~~such~~ Collateral held by such Insurers or non-Debtor payors or proceeds from such Collateral is used to satisfy such Claim, then immediately upon such payment, the applicable portion of such Claim shall be expunged without a Claim objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court; *provided*, *however*, that a notice of satisfaction shall be filed as applicable by the Debtor, Reorganized PropCo, or the ~~Wind Down~~Wind-Down Debtors reflecting that a particular proof of claims has been satisfied*; provided, further* that, to the extent that the satisfaction of a Claim pursuant to this Article VI.J.2 gives rise to a right for reimbursement or other payment (pursuant to the doctrine of subrogation or otherwise), such right shall not be impaired solely on the basis of the preceding Claim having been satisfied.

3.    Applicability of Insurance Contracts.

Notwithstanding anything to the contrary in this Plan or Confirmation Order, Confirmation and Consummation of the Plan shall not limit or affect the rights of any

~~third-party~~third-party beneficiary or other covered party of any of the Debtor's Insurance Contracts with respect to such Insurance Contracts in accordance with and subject to the terms thereof, nor shall anything contained herein (a) constitute or be deemed a waiver by ~~such~~any Insurers of any rights or defenses, including coverage defenses, held by such Insurers under any Insurance Contracts, applicable non-bankruptcy law, equity, or otherwise, or (b) establish, determine, or otherwise imply any liability or obligation, including any coverage obligation, of any Insurer.

K.    *Indefeasible Distributions.*

Any and all distributions made under the Plan shall be indefeasible and not subject to clawback.

## ARTICLE VII.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.    *Allowance of Claims and Interests.*

On and after the Effective Date, and except with respect to Claims and Interests that are Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, the Debtors, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, the Liquidating Trustee, and the GUC Administrator, as applicable, shall have and shall retain any and all rights and defenses that the Debtors had with respect to any Claim or Interest immediately before the Effective Date. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases before the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Allowed Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Cases Allowing such Claim or Interest.

Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, or that is not or has not been Allowed by the Plan or a Final Order, is not considered Allowed and shall be expunged without further action by the Debtors, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, as applicable, and without further notice to any party or action, approval, or order of the Bankruptcy Court.

B.    *Claims and Interests Administration Responsibilities.*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, on and after the Effective Date, the Debtors, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, as applicable, by order of the Bankruptcy Court, shall have the sole authority with regard to all Claims and Interests that are not Allowed:  (i) to File,

withdraw, or litigate to judgment objections to Claims and Interests prior to the Claims Objection Deadline;  (ii) to settle or compromise any Disputed Claim or Disputed Interest without any further notice to or action, order, or approval of the Bankruptcy Court prior to the Claims Objection Deadline; and (iii) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court prior to the Claims Objection Deadline.

C.      *Estimation of Claims and Interests.*

Before, on, or after the Effective Date, the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, as applicable, may at any time request that the Bankruptcy Court estimate any Disputed Claim or Interest that is contingent or unliquidated pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party in interest previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the appeal relating to such objection. Notwithstanding any provision otherwise in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim or Interest, that estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions), and Reorganized PropCo or the relevant Wind-Down Debtor may elect to pursue any supplemental proceedings to object to the allowance of, or any ultimate distribution on, such Claim or Interest.

D.      *Adjustment to Claims or Interests without Objection.*

Any duplicate Claim or Interest or any Claim or Interest that has been paid, satisfied, amended, or superseded (whether by virtue of the substantive consolidation of Class 7A General Unsecured Claims provided for under the Plan Settlements, this Plan, or otherwise), or any Claim or Interest that was filed after the Claims Bar Date may be adjusted or expunged on the Claims Register by Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator, as applicable, without Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, the Liquidating Trustee, or the GUC Administrator having to File an application, motion, complaint, objection, or any other legal proceeding seeking to object to such Claim or Interest and without any further notice to or action, order, or approval of the Bankruptcy Court.

E.      *Disallowance of Claims.*

Other than with respect to Claims Allowed under the Plan or a Final Order of the Bankruptcy Court, no Claim of any Entity from which property is recoverable under sections 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer avoidable under sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code shall be deemed Allowed, unless and until such Entity or transferee has paid the amount, or turned over any such property, for which such Entity or transferee is liable under

sections 522(i), 542, 543, 550, or 553 of the Bankruptcy Code, and Holders of such Claims may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Debtors.  All Proofs of Claim Filed on account of an indemnification obligation to a director, manager, officer, or employee shall automatically be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court.

F.     *Amendments to Claims.*

On or after the Effective Date, except as provided in the Plan or the Confirmation Order, a Claim or Interest may not be Filed or amended without the prior authorization of the Debtors and any such new or amended Claim or Interest Filed shall automatically be deemed disallowed in full and expunged without any further action; *provided* that a Claim may be Filed after the Effective Date if the Bankruptcy Court enters an order permitting such late Filing.

G.     *No Distributions Pending Allowance.*

If an objection to a Claim or Interest or any portion thereof is Filed as set forth in the Plan, or if such Claim or Interest is scheduled as Disputed, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest or any portion thereof unless and until such Disputed Claim or Disputed Interest becomes an Allowed Claim or Allowed Interest.

H.     *Distributions After Allowance.*

To the extent that a Disputed Claim or Disputed Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions, if any, shall be made to the Holder of such Allowed Claim or Allowed Interest in accordance with the provisions of the Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution, if any, to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution, if any, that was made on account of the undisputed portion of such Claim or Interest, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy Law or as otherwise provided in Article III.C of the Plan.

I.     *Single Satisfaction of Claims.*

Holders of Allowed Claims may assert such Claims against the applicable Debtor or Debtors obligated with respect to such Claims, and such Claims shall be entitled to share in the recovery provided for the applicable Class of Claims against the applicable Debtor(s) based upon the full Allowed amount of such Claims.  Notwithstanding the foregoing, in no case shall the aggregate value of all property received or retained under the Plan on account of any Allowed Claim exceed 100 percent of the underlying Allowed Claim plus applicable interest, if any.

## ARTICLE VIII.
## SETTLEMENT, RELEASE, INJUNCTION, AND
## RELATED PROVISIONS

A.    *~~Discharge~~Satisfaction of Claims and Termination of Interests.*

~~To the maximum extent provided by section 1141(d) of the Bankruptcy Code and~~As of the Effective Date, except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created or executed pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall constitute the exclusive treatment, and be in complete satisfaction~~, discharge, and release~~, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors performed prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (i) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has voted to accept the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured (and no longer continuing) on the Effective Date.  The Confirmation Order shall be a judicial determination of the ~~discharge~~exclusive treatment and satisfaction of all Claims and Interests subject to the occurrence of the Effective Date.

B.    *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

C.    *Release of Liens.*

**Except as otherwise specifically provided in the Plan, the Plan Supplement or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date and concurrently with the applicable distributions made**

pursuant to the Plan, and, in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns.  Any Holder of such Claim (and the applicable agents for such Holder) shall be authorized and directed to release any Collateral or other property of any Debtor (including any Cash Collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Debtors, Post-Post-Effective Date PropCo, Reorganized PropCo, or the Wind-DownWind-Down Debtors, as applicable, to evidence the release of such Lien pursuant to this section, including the execution, delivery, and filing or recording of such releases (in each case, at the sole cost and expense of the Debtors, Post-Effective Date PropCo, Reorganized PropCo or the Wind-Down Debtors, as applicable, and without recourse, representation or warranty of any kind).  The presentation or filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens, mortgages, deeds of trust, Liens, pledges, and other security interests pursuant to this section and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto.  In addition, upon the Effective Date, each of the Bridge Agents, the OpCo Agent, and the PropCo Agent shall be authorized to execute and deliver all documents reasonably requested by the Debtors, Post-Post-Effective Date PropCo, Reorganized PropCo, or the Wind-DownWind-Down Debtors, as applicable, to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Debtors to file UCC-3 termination statements (to the extent applicable) with respect thereto (in each case, at the sole cost and expense of the Debtors, Post-Effective Date PropCo, Reorganized PropCo or the Wind-Down Debtors, as applicable, and without recourse, representation or warranty of any kind).

To the extent that any Holder of a Secured Claim that has been satisfied or discharged in full pursuant to the Plan, or any agent for such Holder, has filed or recorded publicly any Liens and/or security interests to secure such Holder's Secured Claim, then as soon as practicable on or after the Effective Date, such Holder (or the agent for such Holder) shall, at the sole cost and expense of Reorganized PropCo or the Wind-DownWind-Down Debtors, as applicable, take any and all steps reasonably requested by the Debtors, Post-Post-Effective Date PropCo, Reorganized PropCo, or the Wind-DownWind-Down Debtors, as applicable, that are necessary or desirable to record or effectuate the cancelation and/or extinguishment of such Liens and/or security interests, including the making of any applicable filings or recordings, and Post-Post-Effective Date PropCo, Reorganized PropCo, or the Wind-DownWind-Down Debtors, as applicable, shall be entitled to make any such filings or recordings on such Holder's behalf.

D.    *Releases by the Debtors*

Notwithstanding anything contained in the Plan to the contrary, pursuant to section 1123(b) of the Bankruptcy Code, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtors, their Estates, Reorganized PropCo, the ~~Wind-Down~~Wind-Down Debtors, and any person seeking to exercise the rights of the Debtors or their Estates, including any successors to the Debtors or any Estates or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other Entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, from any and all Claims and Causes of Action, including any derivative Claims, asserted or assertable on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-~~non-~~contingent, in Law, equity, contract, tort or otherwise, that the Debtors, their Estates, Reorganized PropCo, or the ~~Wind-Down~~Wind-Down Debtors, including any successors to the Debtors or any Estate representatives appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, or that any Holder of any Claim against, or Interest in, a Debtor or other Entity could have asserted on behalf of the Debtors or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the Debtors' capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in ~~or out of court~~ or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Plan Settlements, ~~the~~ Settlement Stipulation, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlements, or the Settlement Stipulation, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the Disclosure Statement or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or the business or contractual arrangements between any Debtor and any Released Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, including all

Avoidance Actions or other relief obtained by the Debtors in the Chapter 11 Cases, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.  For the avoidance of doubt, nothing in these "Releases by the Debtors" releases any direct claims or causes of actions of a third party against the Released Parties.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan or Confirmation Order, the releases contained in the Plan do not (i) release any post-post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-non-Released Party.

Entry of the Confirmation Order shall, if entered as proposed by the Debtors, constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtors' releases herein, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtors' releases herein are:  (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtors' releases herein; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtors' releases herein against any of the Released Parties.

E.     *Releases by Holders of Claims and Interests.*

Except as otherwise expressly set forth in this Plan or the Confirmation Order, on and after the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is, and is deemed to be, hereby conclusively, absolutely, unconditionally, irrevocably and forever, released and discharged by each Releasing Party from any and all Causes of Action, whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or hereafter arising, contingent or non-non-contingent, in Law, equity, contract, tort, or otherwise, including any derivative Claims asserted on behalf of the Debtors, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in-or out-of-court or out-of-court restructuring efforts, any Avoidance

Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Plan Settlements, the Settlement Stipulation, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlements, or the Settlement Stipulation, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Released Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing, other than Claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes actual fraud, willful misconduct, or gross negligence, each solely to the extent as determined by a Final Order of a court of competent jurisdiction.

Notwithstanding anything to the contrary in the foregoing or any other provision of the Plan or Confirmation Order, the releases set forth above do not (i) release any post Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transaction, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (ii) affect the rights of Holders of Allowed Claims and Interests to receive distributions under the Plan, or (iii) release any Claims or Causes of Action against any non-non-Released Party, (iv) affect any rights and claims of the OpCo Agent against the OpCo Lenders under Section 2.5(e) of the OpCo Credit Agreements with respect to LC Disbursements (as defined in the OpCo Credit Agreements), or (v) release any of the Prepetition Lender Preserved Claims unless (A) this Plan is Confirmed for each DebtorClasses 3, 4, and 6 vote to accept the Plan and (B) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan.

Except to the extent a third-partythird-party has opted out of the third-partythird-party releases in accordance with the terms of the Disclosure Statement Order, entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, if entered as proposed by the Debtors, pursuant to Bankruptcy Rule 9019, of the third-partythird-party releases of Holders of Claims and Interests, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the third party releases are:  (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Releasing Parties; (v) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (vi) fair,

equitable, and reasonable; (vii) given and made after notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the ~~third-party~~third-party releases.

F.     *Exculpation.*

Except as otherwise specifically provided in the Plan or the Confirmation Order, no Exculpated Party shall have or incur liability for, and each Exculpated Party is hereby released and exculpated from, any Claims and Cause of Action for any Claim related to any act or omission occurring between the Petition Date through the Effective Date in connection with, relating to, or arising out of, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation or Filing of the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlement**s**, the Settlement Stipulation, or any Restructuring Transaction, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlement**s**, the Settlement Stipulation, created or entered into before or during the Chapter 11 Cases, any preference, fraudulent transfer, or other avoidance Claim arising pursuant to chapter 5 of the Bankruptcy Code or other applicable law, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, except for Claims related to any act or omission that is determined in a Final Order by a court of competent jurisdiction to have constituted actual fraud, willful misconduct, or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  Notwithstanding anything to the contrary herein, nothing in this Article VIII.F shall release or exculpate any Exculpated Party for any act or omission arising before the Petition Date.

G.     *No Discharge of the ~~Wind-Down~~Debtors.*

In accordance with Bankruptcy Code section 1141(d)(3), the Plan does not discharge the ~~Wind-Down~~Debtors**, the Wind-Down Debtors, Post-Effective Date PropCo, or Reorganized PropCo**.  Bankruptcy Code section 1141(c) nevertheless provides, among other things, that the property dealt with by the Plan is free and clear of all Claims and Interests against the Debtors (except as set forth in Article IV.E.2(c)).  As such, no Entity holding a Claim against the Debtors may receive any payment from, or seek recourse against, any assets that are to be distributed under the Plan other than assets required to be distributed to that Entity under the Plan.  All parties are precluded from asserting against any property to be distributed under the Plan any Claims, rights, Causes of Action, liabilities, or Interests based upon any act, omission, transaction, or other activity that

occurred before the Effective Date except as expressly provided in the Plan or the Confirmation Order.

H.    *Injunction.*

1.    ~~Discharge~~Temporary Injunction for the Wind-Down Debtors, Post-Effective Date PropCo, and Reorganized PropCo.

**Except as provided in the foregoing Article VIII.G of the Plan, or as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released, satisfied, or discharged pursuant to the Plan or are subject to exculpation pursuant to the Plan, are enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Wind-Down Debtors (including the Liquidating Trust), Post-Effective Date PropCo and Reorganized PropCo: (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise, except to the extent that a right of setoff, subrogation, or recoupment is asserted in connection with a timely Filed Proof of Claim or arises from any right of setoff, subrogation, or recoupment that a party to an Unexpired Lease may have under applicable bankruptcy or non-~~non-~~bankruptcy law; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan, in each case through and until the date upon which all remaining property vested in ~~the~~ Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, has been liquidated and distributed to creditors or otherwise in accordance with the terms of the Plan and the Plan has been fully administered, subject to further extension or reduction by motion on notice, with all parties' rights with respect to such extension or reduction reserved.  Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Wind-Down Debtors until the closing of these Chapter 11 Cases.  For the avoidance of doubt, nothing herein enjoins any action by any member of the Required Lender Group in respect of any Prepetition Lender Preserved Claim unless**

**(i) Classes 3, 4, and 6 vote to accept the Plan and (ii) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan.**

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.

2.    Injunction Protecting Exculpated Parties and Release Parties.

Except as provided in the foregoing Article VIII.G of the Plan, or as otherwise expressly provided in the Plan or the Confirmation Order or for obligations or distributions issued or required to be paid or delivered pursuant to the Plan or the Confirmation Order, all Entities that have held, hold, or may hold Claims or Interests that have been released, satisfied, or discharged pursuant to the Plan or are subject to exculpation pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Released Parties or the Exculpated Parties (to the extent of the exculpation provided pursuant to the Plan with respect to the Exculpated Parties**, and to the extent of the releases provided pursuant to the Plan with respect to the Released Parties**):  (i) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (ii) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (iii) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property or the Estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Entity has timely asserted such setoff right in a document Filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a Claim or Interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable Law or otherwise, except to the extent that a right of setoff, subrogation, or recoupment is asserted in connection with a timely Filed Proof of Claim or arises from any right of setoff, subrogation, or recoupment that a party to an Unexpired Lease may have under applicable bankruptcy or **non-**non-bankruptcy law; and (v) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan. Notwithstanding anything to the contrary in the Plan, the Plan Supplement, or the Confirmation Order, the automatic stay pursuant to section 362 of the Bankruptcy Code shall remain in full force and effect with respect to the Wind-Down Debtors until the closing of these Chapter 11 Cases.  For the avoidance of doubt, nothing herein enjoins any

**action by any member of the Required Lender Group in respect of any Prepetition Lender Preserved Claim unless (i) Classes 3, 4, and 6 accept this Plan ~~is Confirmed~~ for each Debtor and (ii) neither of the Bridge Agents nor the OpCo Agent objects to the Confirmation of this Plan.**

**Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect Affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan. Except as otherwise set forth in the Confirmation Order, each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Plan.**

I.      *Protection Against Discriminatory Treatment.*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Debtors or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Debtors, or another Entity with whom the Debtors have been associated, solely because the Debtors have been debtors under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Cases (or during the Chapter 11 Cases), or have not paid a debt that is dischargeable in the Chapter 11 Cases.

J.      *Recoupment.*

In no event shall any Holder of Claims or Interests be entitled to recoup any Claim against any Claim, right, or Cause of Action of the Debtors, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.      *Subordination Rights.*

The classification and treatment of Claims under the Plan shall conform to the respective contractual, legal, and equitable subordination rights of such Claims, and any such rights shall be settled, compromised, and released pursuant to the Plan.

L.      *Document Retention.*

On and after the Effective Date, Reorganized PropCo, the ~~Wind-Down~~ Wind-Down Debtors, or the Debtors, as applicable, may maintain documents in accordance with their standard document retention policy, as may be altered, amended, modified, or supplemented by the Debtors, subject to the applicable provisions of the Liquidating Trust Agreement.

*M.*      *Reimbursement or Contribution.*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (i) such Claim has been adjudicated as non-contingent; or (ii) the relevant Holder of a Claim has Filed a non- non-contingent Proof of Claim on account of such Claim and a Final Order has been entered before the Confirmation Date determining such Claim as no longer contingent.

**ARTICLE IX.**
**CONDITIONS PRECEDENT TO**
**CONFIRMATION AND THE EFFECTIVE**
**DATE**

*A.*      *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date that the following conditions shall have been satisfied or waived pursuant to the provisions of Article IX hereof:

a.   the Bankruptcy Court shall have entered the Confirmation Order, Filed in a manner consistent in all material respects with the Plan and the Plan Settlements, and such order shall have become a Final Order;

b.   the Debtors shall not have paid all professional and advisory fees required to be paid under the DIP Order in full and in cash and not otherwise be in default under the DIP Order (or, to the extent that the Debtors are in default on the proposed Effective Date, such default shall have been waived or cured in a manner consistent with the DIP Order);

c.   Negocios Libertad shall have paid or caused to be paid the Gerawan Settlement Amount to the Committee Designated Account pursuant to the Plan;

d.   the Sponsor shall have paid the Sponsor Contribution Amount to the Committee Designated Account pursuant to the Plan;

e.   the Debtors shall have paid in full in Cash (or the Debtors shall pay in full in Cash substantially contemporaneously with consummation of the Restructuring Transactions) all Restructuring Expenses incurred or estimated to be incurred, through the Effective Date;

f.   the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

g.   all Professional Fee Amounts that require the approval of the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the

93

Effective Date shall have been funded into the Professional Fee Escrow Account pending the approval of such fees and expenses by the Bankruptcy Court;

h.  no court of competent jurisdiction or other competent governmental or regulatory authority shall have issued a final and non-non-appealable order making illegal or otherwise restricting, preventing, or prohibiting the consummation of the Plan;

i.  the Pre-Effective Date Sale Proceeds, if any, shall have been distributed and applied to the applicable Allowed Claims in accordance with the terms of this Plan;

j.  the Post-Post-Effective Date PropCo Equity shall have been issued by Post-Post-Effective Date PropCo;

k.  the following documents shall be in full force and effect substantially contemporaneous with the consummation of the Restructuring Transactions (including shall not be stayed, modified, revised, or vacated, or subject to any pending appeal), and shall not have been terminated prior to the Effective Date: (a) if applicable, the New Organizational Documents; (b) such other motions, orders, agreements, and documentation necessary or desirable to consummate and document the transactions contemplated by this Plan; (c) the Exit Bridge Credit Agreement, the Exit Termed Out DIP Credit Agreement (if any), the Exit PropCo Credit Agreement (if any), and all related loan documents, each as applicable; (d) to the extent not included in the foregoing, all financing documents needed to effectuate the Restructuring Transactions; and (e) subject to the terms and conditions of the Lender Support Agreement, and the acceptance by Class 4 and Class 6 of this Plan, the Promissory Note; and (f) all other material customary documents delivered in connection with transactions of this type (including any and all other documents implementing, achieving, contemplated by or relating to the Restructuring Transactions); and

l.  the Debtors shall have otherwise substantially consummated the applicable Restructuring Transactions in a manner consistent in all respects with the Plan.

*B.    Waiver of Conditions.*

The conditions precedent to the Effective Date set forth in Article IX.A may be waived by the Debtors with the consent of the Required Lender Group at any time without any notice to any other parties in interest and without any further notice to or action, order, or approval of the Bankruptcy Court, and without any formal action other than a proceeding to confirm the Plan or consummate the Plan.

*C.    Substantial Consummation.*

"Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

*D.*      *Effect of Non-Occurrence of Conditions to the Effective Date.*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects, and nothing contained in the Plan or the Disclosure Statement shall:  (i) constitute a waiver or release of any Claims by or Claims against or Interests in the Debtors; (ii) release any Liens, mortgages, deeds of trust, pledges, or other security interests against property of the Estates; (iii) prejudice in any manner the rights of the Debtors, the Debtors' Estates, any Holders, or any other Entity; or (iv) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, the Debtors' Estates, any Holders, or any other Entity in any respect.

## ARTICLE X.
## MODIFICATION, REVOCATION, OR
## WITHDRAWAL OF THE PLAN

*A.*      *Modifications and Amendments.*

Subject to the limitations contained in the Plan, and subject to the consent of the Required Lender Group, the Debtors (including the Liquidating Trust and Reorganized PropCo, as applicable) reserve the right to modify the Plan whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not resolicit votes on such modified Plan.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 and those restrictions on modifications set forth in the Plan, the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify materially the Plan with respect to the Debtors, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.  Any such modification or supplement shall be considered a modification of the Plan and shall be made in accordance with Article X.

*B.*      *Effect of Confirmation on Modifications.*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof and before the Confirmation Date are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

*C.*      *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans.  If the Debtors revoke or withdraw the Plan, or if Confirmation and Consummation does not occur, then:  (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims or

Interests; (b) prejudice in any manner the rights of the Debtors or any other Entity, including the Holders of Claims; or (c) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtors or any other Entity.

**ARTICLE XI.**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, to the maximum extent permitted under applicable law, the Bankruptcy Court shall retain exclusive jurisdiction over the Chapter 11 Cases and all matters, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      Allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      Decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals authorized pursuant to the Bankruptcy Code or the Plan;

3.      Resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable in any manner and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed and/or assigned; (c) the Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article X of the Plan, any Executory Contracts or Unexpired Leases to the Schedule of Assumed Executory Contracts and Unexpired Leases or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory or expired;

4.      Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of the Plan;

5.      Adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      Adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      Adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

8.      Enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

9.      Enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code, including any sale of the Debtors' real property, to the extent the Liquidating Trustee asks the Bankruptcy Court to approve such sale pursuant to section 363 of the Bankruptcy Code;

10. Resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11. Enforce the terms of the Plan Settlements, the Settlement Stipulation, and any definitive documentation relating thereto, and to enter such other relief as the Bankruptcy Court deems appropriate;

12. Issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

13. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, releases, injunctions, exculpations, and other provisions contained in Article VIII of the Plan and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

14. Resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to the Plan;

15. Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

16. Enter an order or final decree concluding or closing any of the Chapter 11 Cases;

17. Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

18. Adjudicate any and all disputes arising from or relating to distributions under the Plan, or any transactions contemplated therein;

19. Consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20. Determine requests for the payment of Claims and Interests entitled to priority pursuant to section 507 of the Bankruptcy Code;

21. Hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan; *provided, however*, that the Bankruptcy Court shall not have exclusive jurisdiction with respect to the interpretation and enforcement of the Exit Bridge Credit Agreement, the Exit Termed Out DIP Credit Agreement, the Exit PropCo Credit Agreement, or any other loan or security documentation executed in connection with each of the foregoing;

22. Hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

23. Hear and determine matters concerning section 1145 of the Bankruptcy Code;

24. Hear and determine all disputes involving the existence, nature, or scope of the Debtors' release, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

25. Enforce all orders previously entered by the Bankruptcy Court;

26. Hear any other matter not inconsistent with the Bankruptcy Code; and

27. Enter an order concluding or closing the Chapter 11 Cases.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

*A.      Immediate Binding Effect.*

Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all ~~non-Debtor~~non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

*B.      Additional Documents.*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, ~~Post-Post-~~Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, and all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

*C.      Dissolution of Statutory Committees.*

On the Effective Date, the Committee shall dissolve, and the members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases.

Following the Effective Date, and notwithstanding the foregoing, the Committee shall remain in place solely for the limited purpose of addressing (i) all final fee applications for all Professionals, and (ii) the resolution of any appeals of the Confirmation Order.  Upon the dissolution of the Committee, the members of the Committee and their respective professionals will cease to have any duty, obligation or role arising from or related to the Debtors' Chapter 11 Cases and shall be released and discharged from all rights and duties from or related to the Debtors' Chapter 11 Cases.  The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Effective Date, except for those fees and expenses incurred by such committee's professionals in connection with the matters identified in clauses (i) and (ii) in the forgoing sentence.

*D.      Reservation of Rights.*

Except as expressly set forth herein, the Plan shall have no force or effect until the Bankruptcy Court enters the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with

respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

E.    *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, Affiliate, officer, director, manager, trustee, agent, representative, attorney, beneficiaries, or guardian, if any, of each such Entity.

F.    *Service of Documents.*

Any pleading, notice, or other document required by the Plan to be served on or delivered to the Debtors shall be served, including via email in addition to any other method of service, on the parties listed below:

> If to the Debtors:
>
> MVK FarmCo LLC
> 7700 N. Palm Ave. Suite 206
> Fresno, CA 93711
> Attention:  John Boken, Interim Chief Executive Officer
> Email address:  jboken@alixpartners.com
>
> with copies to:
>
> Kirkland & Ellis LLP
> 300 N. LaSalle
> Chicago, Illinois 60654
> Attention:  Ryan Blaine Bennett and Jaimie Fedell
> Email addresses:  ryan.bennett@kirkland.com
>                          jaimie.fedell@kirkland.com

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing (which may be by email), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received and telephonically confirmed.  After the Effective Date, the Debtors shall have authority to send a notice to Entities that to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

G.    *Enforcement of Confirmation Order.*

On and after the Effective Date, the Debtors, Post ~~Post~~ Effective Date PropCo, Reorganized PropCo, and the ~~Wind-Down~~ Wind-Down Debtors and Liquidating Trustee, as applicable, shall be entitled to enforce the terms of the Confirmation Order and the Plan (which shall include, for the avoidance of doubt, the Plan Supplement).

H.    *Compensation and Benefits Programs.*

On the Effective Date, any agreement with respect to employee compensation and benefits plans and programs applicable to any of the Debtors' employees and retirees will be set forth in the Plan Supplement.

I.    *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

J.    *Exhibits.*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the Debtors' restructuring website at cases.stretto.com/primawawona or the Bankruptcy Court's website at deb.uscourts.gov.

K.    *Nonseverability of Plan Provisions.*

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall not alter or interpret such term or provision to make it valid or enforceable, *provided* that at the request of the Debtors, with the consent of the Required Lender Group, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such terms or provision shall then be applicable as altered or interpreted, *provided*, *further*, that any such alteration or interpretation shall be acceptable to the Debtors and the Required Lender Group. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without the consent of the Debtors; and (iii) nonseverable and mutually dependent.

L.    *Votes Solicited in Good Faith.*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section

1125(e) of the Bankruptcy Code, the Debtors and each of their respective Affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code, and, therefore, neither any of such parties or individuals will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan.

M.    Waiver.

Each Holder of a Claim or an Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Entity, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with the Bankruptcy Court before the Confirmation Date.

N.    Closing of Chapter 11 Case.

The Liquidating Trustee shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 cases.

Respectfully submitted,

Dated:  ~~February~~March 2~~3~~5, 2024        MVK FarmCo LLC
                                              on behalf of itself and all other Debtors


                                              /s/  *John Boken*
                                              _____
                                              Name:        John Boken
                                              Title:       Chief Executive Officer
                                              Company:  MVK FarmCo LLC

| **Summary report:** | |
| **Litera Compare for Word 11.4.0.111 Document comparison done on 3/25/2024 10:36:03 AM** | |
|---|---|
| **Style name:** Color (Kirkland Default) | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** iw://dms.kirkland.com/LEGAL/105947096/1 | |
| **Modified DMS:** iw://dms.kirkland.com/LEGAL/105947096/28 | |
| **Changes:** | |
| Add | 762 |
| Delete | 682 |
| Move From | 13 |
| Move To | 13 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 1470 |