**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | )    Chapter 11 |
| | ) |
| MVK FARMCO LLC, *et al.*,[1] | )    Case No. 23-11721 (LSS) |
| | ) |
| Debtors. | )    (Jointly Administered) |
| | ) |
| | )    **Ref Docket Nos. 808, 810, 823 & 840** |
| | ) |

**NOTICE OF FILING OF (I) FURTHER REVISED PROPOSED ORDER CONFIRMING
THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION
OF MVK FARMCO LLC AND ITS DEBTOR AFFILIATES
AND; (II) BLACKLINE THEREOF**

     **PLEASE TAKE NOTICE** that, on March 25, 2024, the above-captioned debtors and debtors in possession (the "Debtors") filed the *First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and Its Debtor Affiliates (Technical Modifications)* [Docket No. 808] (together with all exhibits and supplements thereto and as modified or amended from time to time, the "Plan") and contemporaneously therewith filed a proposed form of order confirming the Plan [Docket No. 810] (the "Proposed Confirmation Order").

     **PLEASE TAKE FURTHER NOTICE** that on March 26, 2024, the Debtors filed a revised proposed order confirming the Plan [Docket No. 823] (the "Revised Proposed Confirmation Order") and a further revised proposed order on March 27, 2024 [Docket No. 840] (the "Second Revised Confirmation Order").

     **PLEASE TAKE FURTHER NOTICE** that on March 27, 2024, the Court held a hearing to consider confirmation of the Plan (the "Confirmation Hearing").

     **PLEASE TAKE FURTHER NOTICE** that at the direction of the Court the Confirmation Hearing was continued to **March 28, 2024 at 2:00 p.m. (ET)** [Docket No. 847].

     **PLEASE TAKE FURTHER NOTICE** that the Debtors have further revised the Second Revised Confirmation Order and hereby file a further revised proposed form of order confirming the Plan attached hereto as Exhibit 1 (the "Further Revised Confirmation Order").

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201). The location of the Debtors' service address is: 7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

**PLEASE TAKE FURTHER NOTICE** that for the convenience of the Court and parties in interest, a changed pages only blackline comparing the Further Revised Confirmation Order to the Second Revised Confirmation Order is attached hereto as <u>Exhibit 2</u>.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to amend, revise, modify, or supplement the Further Revised Confirmation Order prior to, at, or as a result of, the Confirmation Hearing.

Dated: March 28, 2024
Wilmington, Delaware

/s/ Andrew A. Mark
Joseph Barry (Del. Bar No. 4221)
Kenneth J. Enos (Del. Bar No. 4544)
Andrew A. Mark (Del. Bar No. 6861)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253
Email:        jbarry@ycst.com
              kenos@ycst.com
              amark@ycst.com

-and-

Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:        ryan.bennett@kirkland.com
              jaimie.fedell@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

**<u>EXHIBIT 1</u>**

**Further Revised Confirmation Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MVK FARMCO LLC, *et al.*,[1] | ) | Case No. 23-11721 (LSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**FINDINGS OF FACT,
CONCLUSIONS OF LAW, AND ORDER CONFIRMING
THE FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
MVK FARMCO LLC AND ITS DEBTOR AFFILIATES (TECHNICAL MODIFICATIONS)**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

    a.    commenced, on October 13, 2023 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

    b.    continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

    c.    filed, on November 21, 2023, (a) the *Joint Chapter 11 Plan of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 270] (as amended, modified, or supplemented from time to time, the "Initial Plan"), and (b) the *Disclosure Statement for the Joint Chapter 11 Plan of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 271] (as amended, modified, or supplemented from time to time, the "Disclosure Statement");

    d.    filed, on November 21, 2023, the *Motion of Debtors for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the*

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2]    All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings given to them in the *First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo and Its Debtor Affiliates* [*(Technical Modifications)*], attached hereto as **Exhibit A**.  The rules of interpretation set forth in Article I of the Plan shall apply to this Confirmation Order.

*Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 273] (the "Disclosure Statement Motion");

e.      filed, on December 18, 2023, (a) a revised *Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 390], and (b) a revised the *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 391];

f.      filed, on December 23, 2023, (a) a further revised the *Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 414], and (b) a further revised *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 415];

g.      filed, on December 28, 2023, a further revised *Disclosure Statement for the Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 430];

h.      obtained, on December 28, 2023, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement; (II) Approving the Solicitation and Notice Procedures with Respect to Confirmation of the Debtors' Joint Chapter 11 Plan; (III) Approving the Forms of Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief* [Docket No. 433] (the "Disclosure Statement Order"), following a hearing (the "Disclosure Statement Hearing"), which among other things, approved the Disclosure Statement as containing adequate information under section 1125 of the Bankruptcy Code, the tabulation and solicitation procedures (the "Initial Solicitation and Voting Procedures"), non-voting statuses and opt-out forms, the cover letter, and other related forms and ballots (the foregoing materials, collectively, the "Initial Solicitation Packages");

i.      caused the Initial Solicitation Packages and the *Notice of Hearing to Consider Confirmation of the Joint Chapter 11 Plan of Liquidation of MVK FarmCo* (the "Initial Confirmation Hearing Notice") to be distributed on or before December 29, 2023, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 455] (the "Solicitation Affidavit");

j.      filed and caused to be served, on January 3, 2024, the *Notice of Hearing to Consider Confirmation of the Joint Chapter 11 Plan of Liquidation of MVK FarmCo* (the "Confirmation Hearing Notice") [Docket No. 439] and caused the Confirmation Hearing Notice to be published on the Debtors' case website;

k.      caused, on January 3, 2024, the Initial Confirmation Hearing Notice to be published in (a) *The Fresno Bee*, as evidenced by the *Affidavit of Publication Regarding Notice of Hearing to Consider Confirmation of the Joint Chapter 11 Plan of Liquidation of MVK FarmCo in Fresno Bee* [Docket No. 460] and (b) *USA Today*, as evidenced by the *Affidavit of Publication Regarding Notice of Hearing to Consider Confirmation of the Joint Chapter 11 Plan of Liquidation of MVK FarmCo* [Docket No. 461] and in (collectively, the "Publication Affidavits");

l.      filed and caused to be served, on January 19, 2024, the (a) *Plan Supplement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 514] (as amended, modified, or supplemented from time to time, the "Plan Supplement") and (b) *Notice of Filing of Plan Supplement* [Docket No. 514] (the "Notice of Plan Supplement"), as evidenced by the *Certificate of Service* [Docket No. 518];

m.      filed, on February 14, 2024, the *First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 640];

n.      filed, on February 14, 2024, the *Disclosure Statement Supplement for the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 641];

o.      filed, on February 14, 2024, the *Debtors' Motion for Entry of an Order (I) Approving the Debtors' Solicitation of the First Amended Plan and the Adequacy of the Disclosure Statement Supplement in Connection Therewith, (II) Approving Certain Deadlines and Procedures in Connection with Plan Confirmation and Shortening Notice with Respect Thereto, and (III) Granting Related Relief* [Docket No. 642] (the "Disclosure Statement Supplement Motion");

p.      filed on February 20, 2024, a revised *Disclosure Statement Supplement for the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 665];

q.      filed, on February 21, 2024, a revised *First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 675];

r.      filed, on February 21, 2024, a further revised *Disclosure Statement Supplement for the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 677];

s.      filed, on February 22, 2024, a further revised *Disclosure Statement Supplement for the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 688];

t.      filed, on February 23, 2024, a further revised *Disclosure Statement Supplement for the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 697] (as amended, supplemented, or modified from time to time, the "Disclosure Statement Supplement");

u.   obtained, on February 23, 2024, entry of the *Order (I) Approving the Debtors' Solicitation of the First Amended Plan and the Adequacy of the Disclosure Statement Supplement in Connection Therewith, (II) Approving Certain Deadlines and Procedures in Connection with Plan Confirmation and Shortening Notice with Respect Thereto, and (III) Granting Related Relief* [Docket No. 692] (the "Solicitation Order") following a hearing (the "Disclosure Statement Supplement Hearing"), which, among other things, approved the Disclosure Statement Supplement as containing adequate information under section 1125 of the Bankruptcy Code, certain modifications to the Initial Solicitation Procedures (the "Modified Solicitation and Voting Procedures" and together with the Initial Solicitation and Voting Procedures, the "Solicitation and Voting Procedures"), the updated notice of confirmation hearing (the "Updated Confirmation Hearing Notice"), the non-voting statuses and opt-out forms, the cover letter, and other related forms and ballots (the foregoing materials, the "Continued Solicitation Packages");

v.   filed, on February 23, 2024, a further revised *First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 696];

w.   obtained, on February 26, 2024, the entry of the *Order (I) Extending the Debtors' Exclusive Periods to File a Chapter 11 Plan and Solicit Acceptances Thereof Pursuant to Section 1121 of the Bankruptcy Code and (II) Granting Related Relief* [Docket No. 703], extending the Debtors' exclusive period to file a chapter 11 plan and solicit acceptances thereof to May 13, 2024 and July 9, 2024, respectively;

x.   caused the Continued Solicitation Packages and the Updated Confirmation Hearing Notice to be distributed on or before February 26, 2024, in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and the Solicitation Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 743] (the "Resolicitation Affidavit," and together with the Solicitation Affidavit and the Publication Affidavits, the "Affidavits");

y.   filed and caused to be served on March 13, 2024, the (a) *First Amended Plan Supplement for the Debtors' Joint Chapter 11 Plan of Reorganization* [Docket No. 770] (as amended, modified, or supplemented from time to time, the "First Amended Plan Supplement") and (b) *Notice of Filing of First Amended Plan Supplement* [Docket No. 770] (the "Notice of First Amended Plan Supplement"), as evidenced by the *Certificate of Service* [Docket No. 779];

z.   filed, on March 25, 2024, the *First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates (Technical Modifications)* [Docket No. 808] (as amended, modified, or supplemented from time to time the "First Amended Plan" or the "Plan");

aa.   filed and caused to be served on March 25, 2024, the (a) *Second Amended Plan Supplement for the Debtors' Joint Chapter 11 Plan of Liquidation*

[Docket No. 809] and (b) *Notice of Filing of Second Amended Plan Supplement* [Docket No. 809] (the "Notice of Second Amended Plan Supplement");

bb.  filed, on March 25, 2024, the *Debtors' Memorandum of Law in Support of Confirmation of the Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 812] (the "Confirmation Brief");

cc.  filed on March 25, 2024, the *Declaration of Aron Schwartz, Independent Director and Member of the Special Committee of the Board of Directors of MVK FarmCo LLC, in Support of (I) Final Approval of the Disclosure Statement and (II) Confirmation of the First Amended Joint Chapter 11 Plan of MVK FarmCo LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 817] (the "Schwartz Confirmation Declaration"), the *Declaration of John Boken, Chief Executive Officer of MVK FarmCo LLC, in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Liquidation and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 821] (the "Boken Confirmation Declaration"), and the *Declaration of Ryan Sandahl in Support of Confirmation of the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 816] (the "Sandahl Confirmation Declaration");

dd.  caused to be filed on March 26, 2024, the *Amended Declaration of Leticia Sanchez Regarding the Solicitation and Tabulation of Votes on the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates* [Docket No. 819] (as may be amended, modified, or supplemented, the "Voting Report").

ee.  filed, on March 26, 2024, filed and caused to be served on March 26, 2024, the (a) *Third Amended Plan Supplement for the Debtors' Joint Chapter 11 Plan of Liquidation* [Docket No. 822] and (b) *Notice of Filing of Third Amended Plan Supplement* [Docket No. 822] (the "Notice of Third Amended Plan Supplement").

This Bankruptcy Court having:

a.  entered, on December 28, 2023, the Disclosure Statement Order;

b.  entered, on February 23, 2024, the Solicitation Order;

c.  set March 20, 2024, at 4:00 p.m., prevailing Eastern Time (except as modified by agreement of the Debtors as specified in the Voting Report), as the deadline to vote to accept or reject the Plan (the "Voting Deadline");

d.  set March 20, 2024, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Plan (the "Confirmation Objection Deadline");

e.  set March 25, 2024, at 4:00 p.m., prevailing Eastern Time, as the deadline to opt-out of releases under the Plan (the "Opt-Out Deadline");

f.  set March 27, 2024, at 11:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

g.  considered the Plan, the Plan Supplement, the Disclosure Statement, the Disclosure Statement Supplement, the Confirmation Brief, the Schwartz Confirmation Declaration, the Boken Confirmation Declaration, the Sandahl Confirmation Declaration, the Voting Report, the Updated Confirmation Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

h.  held the Confirmation Hearing;

i.  heard the statements and arguments made by counsel in respect of Confirmation of the Plan and the objections thereto;

j.  considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding Confirmation of the Plan and having admitted the same into evidence at the Confirmation Hearing;

k.  overruled any and all objections to the Confirmation of the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

l.  considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented at or with respect to the Confirmation Hearing.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation of the Plan and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

**A.     Findings of Fact and Conclusions of Law**

1.      The findings of fact and the conclusions of law set forth and incorporated in this Confirmation Order and on the record of the Confirmation Hearing (which are incorporated into this Confirmation Order by this reference) constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.   Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

**B.     Jurisdiction, Venue, Core Proceeding**

2.      The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper before the Bankruptcy Court pursuant to sections 1408 and 1409 of the Judicial Code.  Confirmation of the Plan is a core proceeding within the meaning of section 157(b)(2) of the Judicial Code.

**C.     Eligibility for Relief**

3.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On October 17, 2023, the Bankruptcy Court entered the *Order (I) Directing the Joint Administration of Chapter 11 Cases and (II) Granting Related Relief* [Docket No. 97] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.      Committee Appointment**

5.      On October 23, 2023, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 123] pursuant to section 1102 of the Bankruptcy Code.

**F.      Objections**

6.      This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases maintained by the clerk of the Bankruptcy Court, including, without limitation, all pleadings and other documents filed, and orders entered thereon.  Any resolution of objections to Confirmation explained on the record at the Confirmation Hearing is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Confirmation of the Plan are overruled on the merits.

**G.      Plan Supplement**

7.      The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of these

Chapter 11 Cases and was in compliance with the provisions of the Plan, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to and part of the Plan. Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors' right to alter, amend, update, or modify the Plan Supplement through the Effective Date in accordance with the terms of the Plan, this Confirmation Order, the Bankruptcy Code, and the Bankruptcy Rules is reserved.

## H.    Disclosure Statement Order

8.    On December 28, 2023, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, (a) approved the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) approved the Initial Solicitation and Voting Procedures, (c) approved the Initial Solicitation Packages, (d) set January 26, 2024, at 4:00 p.m., prevailing Eastern Time, as the Plan Objection Deadline and the Voting Deadline, and (e) set February 8, 2024, at 10:00 a.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing.

9.    On February 23, 2024, the Bankruptcy Court entered the Solicitation Order, which, among other things, (a) approved the Disclosure Statement Supplement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy

Rule 3017, (b) approved certain deadlines, the Modified Solicitation and Voting Procedures, and the Continued Solicitation Packages in connection therewith, and (c) shortened certain notice with respect thereto.  The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims or Interests in the Voting Classes to have made an informed decision to accept or reject the Plan.

**I.      Solicitation and Notice**

10.      The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

11.      As described in the Voting Report, the Continued Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Disclosure Statement Order, and the Solicitation Order.  The solicitation of votes on the Plan complied with the Solicitation and Voting Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with section 1125, section 1126, and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.      As described in the Voting Report and the Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**J.      Voting Report**

13.      Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Disclosure Statement Order, the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

14.      As set forth in the Plan, Holders of Claims in Classes 3, 4, 5, 6, 7A, and 7B (collectively, the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Voting Procedures.  In addition, Holders of Claims in Classes 1 and 2 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Depending on whether such Claims are reinstated or canceled and released without any distribution on account of such Claims, Holders of Claims in Class 9 are either Unimpaired or Impaired and will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario are not entitled to vote on the Plan.  Holders of Claims and Interests in Classes 8, 10, and 11 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

15.      As evidenced by the Voting Report, each of Classes 3, 4, 5, 6, 7A, and 7B voted to accept the Plan, and no Classes voted to reject the Plan.

**K.      Bankruptcy Rule 3016**

16.      The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**L.      Burden of Proof**

17.     The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.  Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**M.      Modifications to Plan**

18.     Pursuant to section 1127 of the Bankruptcy Code, the modifications to the Plan after solicitation of the Plan, as reflected in the Plan or in this Confirmation Order (including any modifications announced on the record of the Confirmation Hearing) (the "Plan Modifications"), constitute technical or clarifying changes, changes with respect to particular Claims by agreement with Holders of such Claims or their authorized representatives, or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim under the Plan.  After giving effect to the Plan Modifications, the Plan continues to satisfy the requirements of sections 1122 and 1123 of the Bankruptcy Code, and notice of the Plan Modifications was adequate and appropriate under the facts and circumstances of these Chapter 11 Cases.  In accordance with Bankruptcy Rule 3019, the Plan Modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or the resolicitation of votes under section 1126 of the Bankruptcy Code, and they do not require that Holders of Claims be afforded an opportunity to cast new votes on the Plan or change previously cast acceptances or rejections of the Plan.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  Accordingly, the Plan is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to such Plan Modifications shall be binding and shall apply with respect to the Plan.  All Holders of Claims who voted to accept

the Plan or who are conclusively presumed to accept the Plan are deemed to have accepted the Plan as modified, revised, supplemented, or otherwise amended, and all Holders of Claims and Interests who are conclusively deemed to have rejected the Plan are deemed to have rejected the Plan as modified, revised, supplemented, or otherwise amended.

**N.    Compliance with the Bankruptcy Code (11 U.S.C. § 1127)**

19.     The Debtors have complied with section 1127 of the Bankruptcy Code with respect to the Plan. The requirements of section 1127 of the Bankruptcy Code have been satisfied.

**O.    Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)**

20.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

> **a)    Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

21.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

> **i)    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

22.     The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into twelve Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Priority Tax Claims, Professional Fee Claims, payment of U.S. Trustee statutory fees and Restructuring Expenses, and DIP Claims, each of which are addressed in Article II of the Plan, and which are not required to be designated as separate Classes pursuant to section

1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class. The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii)    Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).

23.    The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1 and 2 are Unimpaired.  Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 3, 4, 5, 6, 7A, 7B, 8, 9, 10, and 11.  Holders of Claims and Interests in Classes 8, 10, and 11 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.  Holders of Interests in Class 9 are deemed to accept or deemed to reject the Plan depending on whether such Interests are reinstated or canceled and released without any distribution an account of such Interests.

### iii)    No Discrimination (11 U.S.C. § 1123(a)(4)).

24.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

### iv)    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

25.    The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the Plan Documents provide adequate and proper means for the Plan's implementation, including by providing for, among other things, consummation of the Restructuring Transactions and the appointment of a GUC Administrator and Liquidating Trustee.

v)    **Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).**

26.    The Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code because the New Organizational Documents prohibit the issuance of new non-voting equity securities.  To the extent the beneficial interests in the GUC Trust or the Liquidating Trust are deemed to be "securities" as defined in section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws, such beneficial interests shall not be non-voting equity securities.  Accordingly, the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

vi)    **Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).**

27.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan discharges all of the Debtors' officers, directors, members, and managers from their duties effective as of the Effective Date without any further action.  The Plan further provides for continuation of the Wind-Down Debtors, the appointment of the Liquidating Trustee, the appointment of the GUC Administrator, and the appointment of new directors and officers of Post-Effective Date PropCo.

vii)    **Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).**

28.    The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.  The other provisions of the Plan are appropriate and consistent with the applicable provisions of the Bankruptcy Code.

**b)**      **Executory Contracts and Unexpired Leases (11 U.S.C.  § 1123(b)(2)).**

29.      Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the occurrence of the Effective Date, Article V of the Plan provides that each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan; (ii) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (iii) is subject to a motion to assume (or assume and assign) such Unexpired Lease or Executory Contract as of the Effective Date; (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (v) is a Pending 363 Sale Contract; or (vi) is a D&O Liability Insurance Policy.  Notwithstanding anything to the contrary in the Plan, the Debtors, the Wind-Down Debtors, and the Liquidating Trustee, as applicable, shall have the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases identified in Article V of the Plan and in the Plan Supplement in accordance with Article V of the Plan.

30.      The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests, and other parties in interest in these Chapter 11 Cases.

c)       **Settlement, Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

31.     **Compromise and Settlement.**  To the extent provided for by the Bankruptcy Code and Bankruptcy Rules, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan, including the terms of the Plan Settlements (as defined below).  To the extent provided for by the Bankruptcy Code, the Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies, including the Plan Settlements, and the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

32.     **Approval of Settlements**.  Based upon the representations and arguments of counsel to the Debtors and all other testimony either actually given or proffered and other evidence introduced at the Confirmation Hearing and the full record of the Chapter 11 Cases, this Confirmation Order constitutes the Bankruptcy Court's approval of the settlements embodied in the Plan and this Confirmation Order, including the Plan Settlements which, for the avoidance of doubt, shall include the 9019 Motion Settlement, because, among other things: (a) each such settlement reflects a reasonable balance between the possible success of litigation with respect to each of the settled claims and disputes, on the one hand, and the benefits of fully and finally resolving such claims and disputes and allowing the Debtors to expeditiously exit chapter 11, on

17

the other hand; (b) absent such settlements, there is a likelihood of complex and protracted litigation involving the attendant expense, inconvenience, and delay that have a possibility to derail the Debtors' chapter 11 objectives and efforts; (c) each of the parties supporting such settlements is represented by counsel that is recognized as being knowledgeable, competent, and experienced; (d) such settlements are the product of arm's-length bargaining and good-faith negotiations between sophisticated parties; and (e) such settlements are fair, equitable, reasonable, and in the best interests of the Debtors, the Wind-Down Debtors, Reorganized PropCo, the Post-Effective Date Debtors, their respective Estates and property, creditors, and other parties in interest, will maximize the value of the Estates by preserving and protecting the ability of the Wind-Down Debtors, Reorganized PropCo, and Post-Effective Date PropCo, as applicable, to continue operating outside of bankruptcy protection and in the ordinary course of business (if applicable), and are essential to the successful implementation of the Plan.  Based on the foregoing, such settlement satisfies the requirements of applicable Third Circuit law for approval of settlements and compromises pursuant to Bankruptcy Rule 9019.

33.     **Plan Settlements.**  Each of (a) the Debtors, the Committee, the Sponsor, the Required Lender Group, and McKinsey (collectively, the "9019 Motion Settlement Parties"), (b) the Debtors and the Gerawan Interested Parties (the "Gerawan Settlement Parties"), and (c) the signatories to that certain Inter-Lender Settlement Term Sheet (the "Inter-Lender Settlement Parties," and together with the 9019 Motion Settlement Parties and the Gerawan Settlement Parties, the "Settlement Parties") agreed to the terms of certain settlements and compromises to be implemented through the Plan and to be approved by the Bankruptcy Court in connection with confirmation thereof (the "Plan Settlements").  The Plan Settlements are comprised in part by the settlement by and among the 9019 Motion Settlement Parties, the material terms of which

settlement were originally filed with the Bankruptcy Court pursuant to the Settlement Stipulation (as defined in the Plan) and have been incorporated in the Plan (the "9019 Motion Settlement") and approval of the Plan shall constitute approval of the 9019 Motion Settlement and the Settlement Stipulation.[3]  In connection with the Plan Settlements, the Gerawan Interested Parties have agreed to use commercially reasonable efforts to support the Confirmation of the Plan, and, to the extent it is heard by the Court, the 9019 Motion.  The Plan incorporates and implements the Plan Settlements, each of which is a good-faith compromise and settlement of numerous issues and disputes between and among the Settlement Parties.  The Plan Settlements are designed to achieve a reasonable and effective resolution of the Chapter 11 Cases.  The Plan Settlements each constitute a settlement of all matters set forth in such Plan Settlement in accordance with its terms.

34.     **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.D of the Plan (the "Debtor Release").  The Debtor Release is an essential component of the Plan.  The scope of the Debtor Release is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is given and made after due notice and opportunity for hearing.

35.     The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith, arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors.  The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these

---

[3]     To the extent of any inconsistency between the terms of the Settlement Stipulation and the Plan, the Plan shall govern.

Chapter 11 Cases is critical to the Debtors' successful emergence from bankruptcy. Each of the Released Parties shares a common goal with the Debtors in seeing the Plan confirmed and implementing the transactions contemplated in the Plan. The record shows that the releases relating to the Debtors' current and former directors, officers, affiliates, and principals have an identity of interest in supporting the release because the Debtors will assume certain indemnification obligations under the Plan, and Reorganized PropCo or the Wind-Down Debtors, as applicable, will honor such obligations in accordance with the terms of the Plan. The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

36.    Entry of this Confirmation Order shall approve, pursuant to Bankruptcy Rule 9019, the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtors' releases herein are: (i) in exchange for the good and valuable consideration provided by the Released Parties, including, without limitation, the Released Parties' contributions to facilitating the restructuring and implementing the Plan; (ii) a good faith settlement and compromise of the Claims released by the Debtors' releases herein; (iii) in the best interests of the Debtors and all Holders of Claims and Interests; (iv) fair, equitable, and reasonable; (v) given and made after reasonable investigation by the Debtors and after notice and opportunity for hearing; and (vi) a bar to any of the Debtors or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtors' releases herein against any of the Released Parties.

37.    **Releases by Holders of Claims and Interests.** Consistent with (a) sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and

1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article VIII.E of the Plan (the "Third-Party Release").  The Third-Party Release is given and made after due notice and opportunity for hearing.

38.    The Third-Party Release is consensual with respect to the Releasing Parties.  The Ballots sent to all Holders of Claims and Interests entitled to vote, the Non-Voting Status Notices sent to Holders of Claims and Interests not entitled to vote, and the notice of the Confirmation Hearing sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan.  Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to confirmation of the Plan, the opportunity to opt out of the Third-Party Release, the opportunity to object to the Third Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors that did not check the "Opt-Out" box on the applicable Ballot or Opt-Out Form returned in advance of the Opt-Out Deadline, or object to the Third Party Release, would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action against the Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous; emphasized with boldface type in the Plan, the Disclosure Statement, the Ballots, and the Non-Voting Status Notices.  Thus, the Third-Party Release is consensual as to those Releasing Parties that did not specifically and timely object.

39.    Entry of this Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the

Bankruptcy Court's finding that the third party releases are: (i) consensual; (ii) essential to the Confirmation of the Plan; (iii) given in exchange for the good and valuable consideration provided by the Released Parties; (iv) a good faith settlement and compromise of the Claims released by the Releasing Parties; (v) in the best interests of the Debtors and their Estates and all Holders of Claims and Interests; (vi) fair, equitable, and reasonable; (vii) given and made after notice and opportunity for hearing; and (viii) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

40.     **Exculpation.**  Consistent with (a) sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Article VIII.F of the Plan (the "Exculpation").  The Exculpation is essential to the Plan.  The evidence before the Bankruptcy Court demonstrates that the Plan's Exculpation was critical to the parties' willingness to support the Debtors' chapter 11 efforts, and that these parties would not have been so inclined to participate in the Plan process without the promise of exculpation, and such parties did so in reliance upon the protections afforded in the Exculpation.  The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

41.     **Injunctions.**  Section 105(a) and sections 1123(b)(3) and (b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article VIII.H of the Plan (collectively, the "Injunctions"), and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunctions are essential to the Plan and are necessary to implement the Plan and to preserve and enforce the Debtor Release, the

Third-Party Release, and the Exculpation provisions in Article VIII of the Plan. The Injunctions are appropriately tailored to achieve those purposes.

### d) Cure of Defaults (11 U.S.C. § 1123(d)).

42.    Article V.D of the Plan provides for the satisfaction of cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.D of the Plan, and applicable bankruptcy and non-bankruptcy law. As such, the Plan provides that the Debtors will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

### e) The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

43.    The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

44.    The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Disclosure Statement Order and the Solicitation Order approving the Initial Solicitation Packages, Continued Solicitation Packages, and the Solicitation and Voting Procedures.

45.     The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Article XII.L of the Plan.

**f)      Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

46.     The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and Plan Documents in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the record of the Disclosure Statement Hearing, the Disclosure Statement Supplement, the record of the Disclosure Statement Supplement Hearing, the record of the Confirmation Hearing, and all the other proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

47.     The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders and parties in interest in these Chapter 11 Cases including,

but not limited to: (a) the Committee; (b) the Required Lender Group; and (c) the Sponsor. Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases. Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

### g)    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).

48.    Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.    The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

### h)    Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).

49.    To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Debtors, the Wind-Down Debtors, Reorganized PropCo, or Post-Effective Date PropCo, as applicable, the Debtors, the Wind-Down Debtors, Reorganized PropCo, and Post-Effective Date PropCo, as applicable, have satisfied the requirements of this provision by, among other things, disclosing the identity of the GUC Administrator and Liquidating Trustee, and providing for the appointment of new directors and officers of Post-Effective Date PropCo.

**i)      No Rate Changes (11 U.S.C. § 1129(a)(6)).**

50.      The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**j)      Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

51.      The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing and the facts and circumstances of these Chapter 11 Cases establish that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis (as defined in Article X.B.2 of the Disclosure Statement and attached as Exhibit L to the Third Amended Plan Supplement), and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are persuasive and credible.  The Liquidation Analysis demonstrates that recoveries under the Plan are at least as high as they would be in a hypothetical liquidation.  The methodology used and assumptions made in the Liquidation Analysis as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are reasonable.

**k)      Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).**

52.      The Plan satisfies section 1129(a)(8) of the Bankruptcy Code.  Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  Class 3, Class 4, Class 5, Class 6, Class 7A, and Class 7B voted to accept the Plan.  Class 9 (Intercompany Interests) is either Unimpaired by the Plan and conclusively

presumed to have accepted the Plan, or Impaired and deemed to have rejected the Plan, depending on whether Interests in Class 9 are reinstated or canceled and released without any distribution an account of such Interests.  Class 8 (Intercompany Claims), Class 10 (Existing Equity Interests), and Class 11 (Section 510(b) Claims) are Impaired Classes that will not receive or retain any property under the Plan on account of the Claim in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan.  To the extent a Class contains Claims or Interests eligible to vote, and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, such Class shall be deemed to have accepted the Plan.  Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

**l)        Deemed Rejecting Classes (11 U.S.C. § 1129(b)).**

53.     Because the Plan has not been accepted by the Deemed Rejecting Classes, the Debtors seek Confirmation under section 1129(b), rather than section 1129(a)(8), of the Bankruptcy Code.  Thus, although section 1129(a)(8) has not been satisfied with respect to the Deemed Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable with respect to the Deemed Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

**m)      Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

54.     The treatment of Administrative Claims, Priority Tax Claims, Other Priority Claims, Professional Fee Claims, payment of U.S. Trustee statutory fees and Restructuring Expenses, and treatment of DIP Claims under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**n)    Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

55.    The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, all Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code). Further, as set forth in the Voting Report, the Classes that are not entitled to receive or retain any property under the Plan are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**o)    Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

56.    The evidence proffered or adduced at or prior to the Confirmation Hearing and in the Schwartz Confirmation Declaration, the Boken Confirmation Declaration, the Sandahl Confirmation Declaration, and the Confirmation Brief:  (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors will have sufficient funds available to meet their obligations under the Plan. The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code, to the extent applicable.

**p)    Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

57.    Article II of the Plan provides for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code. The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**q)**     **Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), 1129(a)(14), (15), and (16)).**

58.     The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.   Therefore, sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**r)**     **Only One Plan (11 U.S.C. § 1129(c)).**

59.     Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**s)**     **Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

60.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**t)**     **Not a Small Business Case (11 U.S.C. § 1129(e)).**

61.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**u)**     **Satisfaction of Confirmation Requirements.**

62.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**R.     Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

63.     Each of the conditions precedent to the Effective Date, as set forth in Article IX.A of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article IX.B of the Plan.

S.      **Implementation**

64.      The Plan, all documents contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best interests of the Debtors, their Estates, Post-Effective Date PropCo, Reorganized PropCo, and the Wind-Down Debtors, as applicable, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

T.      **Good-Faith Solicitation (11 U.S.C. § 1125(e))**

65.      The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code, and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article VIII.F

of the Plan. The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distributions pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

**U.    Executory Contracts and Unexpired Leases**

66.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as of the Effective Date except as otherwise provided in the Plan. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests, and other parties in interest in these Chapter 11 Cases.

**V.    Disclosure: Agreements and Other Documents**

67.    The Debtors have disclosed all material facts regarding: (a) the Plan; (b) the sources and distribution of Cash under the Plan; (c) the adoption, execution, and delivery of all contracts, leases, instruments, releases, indentures, and other agreements related to any of the foregoing; (d) the various releases set forth in Article VIII of the Plan; the (e) adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of PropCo and the Wind-Down Debtors; and (f) the Retained Causes of Action.

## **ORDER**

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

### A.    **Findings of Fact and Conclusions of Law**

68.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

### B.    **Confirmation of the Plan**

69.    The Plan, attached hereto as **Exhibit A**, including all exhibits thereto, shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code.  The Debtors are authorized to enter into and execute all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein, including the Plan Supplement), and the execution, delivery, and performance thereafter by the Wind-Down Debtors, Post-Effective Date PropCo, Reorganized PropCo, the GUC Administrator, and the Liquidating Trustee, as applicable, are hereby approved and authorized.  The Debtors, the Wind-Down Debtors, Post-Effective Date PropCo, Reorganized PropCo, the GUC Administrator, and the Liquidating Trustee, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including, without limitation, entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan.  The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

70.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

## C.     Objections

71.     To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

## D.     The Releases, Injunction, Exculpation, and Related Provisions Under the Plan

72.     The release, exculpation, injunction, and related provisions set forth in Article VIII of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the Parties subject to such provisions, or any other party, including, but not limited to:

a.    **Liens**.  The release of liens provisions set forth in Article VIII.C of the Plan are hereby approved.

b.    **Releases by the Debtors**.  The Debtor Release provisions set forth in Article VIII.D of the Plan are hereby approved.

c.    **Third-Party Releases**.  The Third-Party Release provisions set forth in Article VIII.E of the Plan are hereby approved.

d.    **Exculpation**.  The Exculpation provisions set forth in Article VIII.F of the Plan are hereby approved.

e. **Injunctions**.  The Injunction provisions set forth in Article VIII.H of the Plan are hereby approved.

**E.     Classifications of Claims and Interests**

73.     The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**F.     Provisions Regarding the United States**

74.     As to the United States, nothing in the Plan, this Confirmation Order, any Plan Supplement, or any implementing Plan documents, notwithstanding any provision to the contrary contained therein, shall:  (a) enjoin or affect any Governmental Unit's setoff rights under federal law, as recognized in section 553 of the Bankruptcy Code, and/or recoupment rights, and such rights shall be preserved and are unaffected (provided that the Debtors expressly reserve all defenses to any such rights of setoff or recoupment); (b) be construed as a compromise or settlement of any liability, claim, cause of action, or interest of the United States; or (c) be deemed a waiver or release of any liability, claim, cause of action, or interest of the United States.

**G.     Plan Supplement**

75.     The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into

evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors and their successors are authorized when they are finalized, executed, and delivered.  Without further order or authorization of this Bankruptcy Court, the Debtors and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

**H.      Restructuring Transactions**

76.      On or before the Effective Date, the applicable Debtors, the Wind-Down Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Liquidating Trustee, as applicable, shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, the issuance of all certificates and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions (collectively, the "Restructuring Transactions").  The actions to implement the Restructuring Transactions may include:  (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the

applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the Filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making Filings or recordings that may be required by applicable law in connection with the Plan.  This Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

## I.    Sources of Consideration for Plan Distribution

77.    The Debtors shall fund distributions under the Plan pursuant to the PropCo Equitization Transaction, as applicable, with (1) the issuance of the Post-Effective Date PropCo Equity and (2) the issuance of the Exit Facilities.  Each distribution and issuance referred to in Article IV of the Plan shall be governed by the terms and conditions set forth in the Plan applicable to such distribution or issuance and by the terms and conditions of the instruments or other documents evidencing or relating to such distribution or issuance, which terms and conditions shall bind each Entity receiving such distribution or issuance.

78.    The Liquidating Trustee shall fund distributions under the Plan pursuant to the OpCo Wind-Down with, as applicable:  (a) Cash on hand; (b) the Wind-Down Debtors' Assets and the Liquidating Trust Assets, as applicable;  and (c) any Residual Assets.

79.    The GUC Administrator shall fund distributions under the Plan pursuant to the GUC Trust Agreement with, as applicable:  (a) the Sponsor Contribution Amount and (b) the Gerawan Settlement Amount.

**J.    Wind-Down Debtors**

80.    At least one Debtor shall continue in existence after the Effective Date as the Wind-Down Debtor for purposes of (1) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Wind-Down Debtors after the Effective Date, (2) filing appropriate tax returns, to the extent necessary, and (3) administering the Plan.  The Liquidating Trustee may perform some or all of these actions on behalf of such Wind-Down Debtor in accordance with the other provisions of the Plan and the Liquidating Trust Agreement.  For the avoidance of doubt, to the extent not otherwise waived in writing, released, settled, compromised, assigned or sold pursuant to a prior order or the Plan, the Wind-Down Debtors (and their assignee, the Liquidating Trust) specifically retain and reserve the right to assert, after the Effective Date, any and all of the Retained Causes of Action and related rights, whether or not asserted as of the Effective Date, and all proceeds of the foregoing, subject to the terms of the Plan and the Liquidating Trust Agreement.

81.    On the Effective Date, the Wind-Down Debtors shall become successors to the OpCo Credit Parties' and MVK FarmCo LLC's rights, title, and interests to any assets remaining assets of such Debtors' Estates, which shall vest in the Wind-Down Debtors for the purpose of liquidating the Wind-Down Debtors and consummation of the Plan.  The Wind-Down Debtors will not conduct business operations other than as necessary to wind down such operations and will be charged with winding down the OpCo Credit Parties' and MVK FarmCo LLC's Estates. The Wind-Down Debtors shall be managed by the Liquidating Trustee.  The Wind-Down Debtors shall be administered in accordance with the terms of the Liquidating Trust Agreement.  Any

distributions to be made under the Plan from such assets shall be made by the Liquidating Trustee or its designee.  The Wind-Down Debtors and the Liquidating Trustee shall be deemed to be fully bound by the terms of the Plan, this Confirmation Order, and the Liquidating Trust Agreement.

## K.   Liquidating Trustee

82.    Upon the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of each of the Debtors, except for PropCo, shall be deemed to have been terminated and such persons shall be deemed to have resigned, solely in their capacities as such, and the Liquidating Trustee shall be appointed by pursuant to Article IV of the Plan as the sole director and the sole officer of each Wind-Down Debtor and shall succeed to the powers of such Wind-Down Debtors' directors and officers.  The Liquidating Trustee shall be the sole representative of and shall act for each Wind-Down Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same).  For the avoidance of doubt, the foregoing shall not limit the authority of the Liquidating Trustee, as applicable, to continue the employment of any former director or officer.

83.    The Liquidating Trustee shall make an initial distribution of any excess Cash on hand (excluding any amounts reserved by the Liquidating Trustee in her discretion in accordance with the Liquidating Trust Agreement) within thirty (30) days of the Liquidating Trust's receipt of the Liquidating Trust Assets.

84.    The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the reasonable discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties.  The reasonable and documented fees, expenses, and costs of the Liquidating Trustee (including the

costs of professionals retained by the Liquidating Trustee) shall be paid from the Liquidating Trust Assets, in accordance with the Liquidating Trust Agreement. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

**L.    Plan Settlements**

85.    The Plan incorporates and implements the Plan Settlements, each of which is a good-faith compromise and settlement of numerous issues and disputes between and among the applicable Settlement Parties. The Plan Settlements are designed to achieve a reasonable and effective resolution of the Chapter 11 Cases. The Plan Settlements each constitute a settlement of all matters set forth in such Plan Settlement in accordance with its terms.

86.    Pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code, the Settlement Parties have agreed to the terms of the Plan Settlements, which provide for, among other things: (a) Cash contributions and claims waivers that fund and maximize creditor recoveries hereunder, (b) establishment of the GUC Trust and appointment of a GUC Administrator, (c) the waiver of any and all Waived Avoidance Actions, and (d) support for Confirmation, all as described in more detail in, among other places, the Plan, the Settlement Stipulation, and the Inter-Lender Term Sheet, in exchange for the releases and other consideration set forth herein. Confirmation shall be deemed approval of the Plan Settlements (including the transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred and fees paid by the Debtors, Post-Effective Date PropCo, or the Wind-Down Debtors in connection therewith, and including the 9019 Motion Settlement), to the extent not approved by the Bankruptcy Court previously, and the Debtors, Post-Effective Date PropCo, or the Wind-Down Debtors are authorized to execute and deliver any and all documents necessary or appropriate to consummate the Plan Settlements, without further notice to or order of

the Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person.

87.    The Plan shall be deemed a motion to approve the good faith compromise and settlement of all Claims, Interests, and controversies of the Settlement Parties pursuant to Bankruptcy Rule 9019 as and to the extent provided in the Plan, and the entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlements, including the 9019 Motion Settlement, under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Plan Settlements are fair, equitable, reasonable and in the best interests of the Debtors and their Estates.

a)    **The GUC Trust**

88.    The GUC Trust shall be established on the Effective Date in accordance with the Plan to hold and distribute the GUC Trust Assets (as defined below) and otherwise administer General Unsecured Claims (including, where appropriate, objecting to and reconciling such Claims on behalf of the Wind-Down Debtors).  The GUC Trust Assets shall include the following: (i) the Sponsor Contribution Amount, and (ii) the Gerawan Settlement Amount.

b)    **Sponsor Contribution Amount**

89.    The Sponsor shall contribute the Sponsor Contribution Amount, payable to the Committee Designated Account on the Effective Date.

90.    On the Effective Date, other than with respect to their obligations under the Plan Settlements and the Plan, each of the Settlement Releasing Parties (as defined in the Plan) shall be deemed to have forever released, waived, and discharged each of the other Settlement Releasing Parties from any and all claims and/or remedies that could be asserted by a Settlement Releasing Party against a Settlement Releasing Party, including without limitation, such claims and/or remedies that are actions, Causes of Action, lawsuits, suits, claims, counterclaims, cross-claims,

liabilities, interests, judgments, obligations, rights, demands, debts, damages, losses, grievances, promises, remedies, liens, attachments, garnishments, prejudgment and post-judgment interest, costs and expenses (including attorneys' fees and costs incurred or to be incurred), including unknown claims to the maximum extent allowed under the law, whether pled or unpled, identified or unidentified, fixed or contingent, choate or inchoate, matured or unmatured, foreseen or unforeseen, accrued or unaccrued, past, present or future for fraudulent transfer, fraudulent conveyance, preference, turnover, breach of fiduciary duty, negligence, gross negligence, mismanagement, civil conspiracy, aiding and abetting, unjust enrichment, constructive trust, equitable subordination, equitable disallowance, agency, joint venture, alter ego, corporate veil piercing, usurpation of corporate opportunity, successor liability, breach of contract, fraud, intentional, reckless or negligent misrepresentation, contribution, indemnify, and all other such claims and/or remedies including, for the avoidance of doubt, the Derivative Action, all to the extent such claims and/or remedies are based on or relating to, or in any manner arising from, in whole or in part, the Debtors (including the capital structure, management, ownership, or operation thereof), any Security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Settlement Releasing Party, the assertion or enforcement of rights and remedies against the Debtors, the Debtors' in- or out-of-court restructuring efforts, any Avoidance Actions, intercompany transactions between or among a Debtor and another Debtor, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, or Filing of the Disclosure Statement, the Plan (including, for the avoidance of doubt, the Plan Supplement), the Plan Settlements, the Settlement Stipulation, or any Restructuring Transaction, contract, instrument, release, or other agreement or document (including providing any legal opinion

requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Settlement Releasing Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Disclosure Statement, the Plan, the Plan Supplement, the Plan Settlements, or the Settlement Stipulation, before or during the Chapter 11 Cases, the Filing of the Chapter 11 Cases, the Disclosure Statement, or the Plan, the solicitation of votes with respect to the Plan, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon the business or contractual arrangements between any Debtor and any Settlement Releasing Party, and any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.  Because Classes 3, 4 and 6 have voted to accept the Plan and neither of the Bridge Agents nor the OpCo Agent have objected to the Confirmation of the Plan, the Prepetition Lender Preserved Claims are hereby released and the Bridge Agents and the OpCo Agent are otherwise considered Released Parties as provided for in the Plan.

91.     On the Effective Date, the Sponsor waives any and all claims against the Debtors, whether or not heretofore asserted, and all claims it has asserted against the Debtors shall be deemed disallowed and expunged.  For the avoidance of doubt, any potential claims held by the Sponsor against the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors (but not against any other third party) for indemnification or contribution pursuant to an Executory Contract which is assumed pursuant to and subject to Article V.G of the Plan are not waived.  Notwithstanding the foregoing, the Sponsor waives the right to any recovery

from the GUC Trust Assets.  For the avoidance of doubt, the preceding sentences do not alter nor modify Article V.G of the Plan.

92.     The 9019 Motion Settlement constitutes a final settlement pursuant to Bankruptcy Rule 9019 and section 1123(b)(3)(A) of the Bankruptcy Code of alleged Claims and Causes of Action against the Sponsor**.**

93.     Each Plan Supplement is deemed modified to remove from the Schedule of Retained Causes of Action any and all claims and causes of action of the Debtors and their estates that may be asserted against the Sponsor, McKinsey, or the Gerawan Interested Parties and their respective Related Parties.

94.     The Liquidating Trust and/or the Wind-Down Debtors shall consult with the Sponsor and its tax advisors in the preparation and filing of any tax returns for any taxable period (or portion thereof) where the Sponsor held Existing Equity Interests.

c)     **Gerawan Litigation Claims**

95.     The Plan constitutes a settlement of the Gerawan Litigation Claims pursuant to Bankruptcy Rule 9019 and section 1123(b)(3) of the Bankruptcy Code.  Upon the Effective Date, each of the Gerawan Interested Parties shall be deemed to have irrevocably waived, released, and settled any and all claims against the Debtors, and all proofs of claim filed by each of the Gerawan Interested Parties shall be deemed disallowed and expunged.  For the avoidance of doubt, any potential claims held by the Gerawan Interested Parties against the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors (but not against any other third party) for indemnification or contribution pursuant to an Executory Contract which is assumed pursuant to and subject to Article V.G of the Plan are not waived.  For the avoidance of doubt, the preceding sentence does not alter nor modify Article V.G of the Plan.

96.    On the Effective Date, Negocios Libertad, on behalf of the Gerawan Interested Parties, shall pay or cause to be paid the Gerawan Settlement Amount by wire transfer to the Committee Designated Account.

97.    In exchange for and subject to timely payment in full of the Gerawan Settlement Amount, the Gerawan Litigation Claims shall be deemed settled, waived, and released, and each of the Gerawan Interested Parties shall be a Released Party and a Releasing Party.

98.    In further consideration for each of the Gerawan Interested Parties constituting a Released Party and a Releasing Party: (a) the Gerawan Interested Parties' Plan Objection is deemed withdrawn; (b) any and all discovery requests that the Gerawan Interested Parties have served on the Debtors, the Sponsor, or any other Settlement Party are deemed withdrawn; (c) the Gerawan Interested Parties shall withdraw the Derivative Action; (d) the Gerawan Interested Parties shall be deemed to have voted to accept the Plan; and (e) the Gerawan Interested Parties shall be deemed not to have opted out of the releases contained in Article VIII of the Plan.  For the avoidance of doubt, if any of the Gerawan Interested Parties fail to do any of the foregoing (a) through (f), then none of the Gerawan Interested Parties will be Released Parties under the Plan or this Confirmation Order, or receive the release provided by the other Settlement Releasing Parties pursuant to Article IV.B.2 of the Plan.

99.    In further consideration for the Gerawan Settlement Amount and notwithstanding anything to the contrary in the Plan, within thirty days of the entry of this Confirmation Order, the Debtors shall (i) coordinate with Mr. Gerawan's representatives at Womble Bond Dickinson (US) LLP (the "Gerawan Representatives") to provide Mr. Gerawan, through the Gerawan Representatives, with a download of a complete duplicate set of all emails on the Debtors' servers to and from dan@gerawan.com and DJG@gerawan.com (the "Gerawan Emails") and (ii) provide

Mr. Gerawan, through the Gerawan Representatives, templates of Mr. Gerawan's choosing (without the Debtors' data) from the Debtors' Quickbase software.  Further, the Liquidating Trust and/or the Wind-Down Debtors agree that (i) they shall consult with Mr. Gerawan (d.gerawan@outlook.com) and his tax counsel, David Lyons (dlyon@fabianvancott.com), in the preparation and filing of any tax returns for the period (including but not limited to 2023 and 2024) where Mr. Gerawan held his Existing Equity Interests and (ii) any and all copies of the Gerawan Emails shall be maintained in a manner which does not allow access by any third party who is not the Debtors, the Liquidating Trustee or their representatives (who shall continue to respect applicable privacy and confidentiality obligations), shall not be sold or transferred to any third party, and shall be destroyed as soon as reasonably practicable in a manner that maintains the confidentiality of the Gerawan Emails upon or before the Liquidating Trustee's destruction of the remainder of the Debtors' business documents; provided that if any party seeks to compel the Debtors, the Liquidating Trustee, or the Wind-Down Debtors, as applicable, to disclose of any or all of the Gerawan Emails, through subpoena, judicial action, or otherwise, the Debtors, the Liquidating Trustee, or the Wind-Down Debtors, as applicable, shall immediately provide the Gerawan Representatives with prompt written notice so that Mr. Gerawan may seek an injunction, protective order, or any other available remedy (at Mr. Gerawan's expense) to prevent such disclosure; *provided*, further, that if such remedy is not obtained, the Debtors, the Liquidating Trustee, or the Wind-Down Debtors, as applicable, shall furnish only such information as the Debtors, the Liquidating Trustee, or the Wind-Down Debtors, as applicable, are legally required to provide.

    d)    **Class 7B Distribution; General Unsecured Claims Recovery**

    100.    The Class 7 Distribution Amount shall be held in the Committee Designated Account until the Allowed amounts of all Class 7A General Unsecured Claims have been

determined.  At that time, the Class 7 Distribution Amount shall be allocated *Pro Rata* between (a) the Class 7A Distribution Amount, which shall be released to the GUC Trust for the ratable benefit of Holders of Allowed Class 7A General Unsecured Claims, and (b) the Class 7B Distribution Amount, which shall be released *Pro Rata* to the Holders of Allowed Class 7B Prepetition Credit Agreement Deficiency Claims (subject to the GUC Required Lender Allocation).  Class 7A has voted to accept the Plan and, accordingly, the GUC Required Lender Allocation shall be released to the GUC Trust for the ratable benefit of Holders of Allowed Class 7A General Unsecured Claims instead of to the Required Lenders.

101.    On the Effective Date or as soon thereafter as its General Unsecured Claim becomes Allowed, each Holder of an Allowed General Unsecured Claim shall receive its Pro Rata share of the GUC Trust Beneficial Interests.  The GUC Trust Beneficial Interests shall be reserved for the sole and exclusive purpose of (i) satisfying Allowed General Unsecured Claims in accordance with the Plan, which Allowed General Unsecured Claims against each of the Debtors shall be consolidated for purposes of allowance and distribution but shall not include any intercompany claims or claims by Prepetition Lenders, and (ii) paying the expenses of administering the GUC Trust (including but not limited to fees and expenses incurred on and after the Effective Date in reconciling, objecting to, and paying General Unsecured Claims)**.**

102.    For the avoidance of doubt, (a) no Prepetition Lender, (b) no intercompany claims of any Debtors, and (c) no claims of the Sponsor, Gerawan Interested Parties, or McKinsey will share in the Class 7A Distribution Amount.

e)    **Master Lease Agreement**

103.    On the Effective Date, that certain Amended and Restated Master Lease Agreement dated as of September 13, 2019, by and among OpCo, Gerawan Farming Partners LLC, Gerawan Farming LLC, Gerawan Farming Services LLC, GFP LLC, and Gerawan Supply, Inc., as tenants,

and PropCo, as landlord (the "<u>Master Lease Agreement</u>") shall be deemed rejected by each of OpCo and PropCo.  OpCo and PropCo, as applicable, shall fully and irrevocably waive any rejection damages claims that they may hold arising from or in connection with the rejection damages claims on account of the rejection of the Master Lease Agreement other than the Post-Petition Rent Entitlement.  On the Effective Date, as a settlement for any claims or causes of action related to the Master Lease Agreement:  (a) the Post-Petition Rent Entitlement shall be deemed to be assigned by Reorganized PropCo to Post-Effective Date PropCo; (b) all mobile farm equipment owned by PropCo shall be deemed to have been transferred to OpCo for no additional consideration free and clear of any interest in such mobile farm equipment (and shall be included in the Liquidating Trust Assets); and (c) Reorganized PropCo will be deemed to have purchased from the OpCo Credit Parties any and all interest of the OpCo Credit Parties in and to trees and crops located on any real property owned by PropCo, including without limitation any and all rights to reimbursement in respect of cultural costs from any purchaser or lessee of such real property in exchange for payment to the OpCo Credit Parties of the Consummation Date Crop Value (as defined in the Plan), and such sale shall be free and clear of any Lien, encumbrance, or other interest in such trees and crops other than the Liens thereon securing the Exit Facilities in accordance with the terms thereof.  For the avoidance of doubt, any lien on the foregoing transferred assets securing any obligation in respect of the Prepetition Credit Agreements or the DIP Credit Agreement shall be deemed released upon such transfer.  The Wind-Down Debtors, the Liquidating Trustee, Reorganized PropCo, and/or Post-Effective Date PropCo, as applicable, shall, and shall be authorized to, execute such documents or take such other action as may be reasonably necessary to evidence the foregoing transactions.  The Debtors will share with the Agents and the Required Lender Group the projected Pre-Effective Date Cultural Cost Payments

(as defined in the Plan) and Consummation Date Crop Value three (3) business days prior to the Effective Date.

f)  **McKinsey Waiver and Release**

104.    On the Effective Date, McKinsey waives any and all claims against the Debtors, whether or not heretofore asserted, and all claims it has asserted against the Debtors shall be deemed disallowed and expunged.

g)  **Plan Support**

105.    The Settlement Parties have consented to the terms of the Plan and this Confirmation Order.

106.    To the extent any Settlement Party or individual member of the Committee has heretofore submitted an opt-out election, such election is deemed withdrawn.

107.    So long as each of the Settlement Parties are not in default of their obligations under the Plan Settlements, the Settlement Parties will not (i) file any motion to convert or dismiss the Debtors' chapter 11 cases; *provided* that the Required Lender Group shall be permitted to file a motion to convert or dismiss the Chapter 11 Case of any Debtor for which the Plan is not Confirmed at the Confirmation hearing or (ii) file any motion to appoint a trustee or an examiner in the Debtors' chapter 11 cases, and the Settlement Parties agree not to support any such motion filed by any other party in interest.

h)  **Deemed Consolidation of Class 7A**

108.    Pursuant to the Plan Settlements and limited solely for the purposes of Holders of Allowed General Unsecured Claims receiving distributions from the GUC Trust under the Plan Settlements, (a) all General Unsecured Claims against all of the Debtors shall be deemed General Unsecured Claims against Debtor Wawona Farm Co. LLC, (b) all guarantees or responsibility of one Debtor for the obligations of any other Debtor shall be deemed eliminated, and all guarantees

or responsibility executed by multiple Debtors for the obligations of any other Entity shall be deemed consolidated into a single obligation, and (c) solely for purposes of distribution from the GUC Trust and no other purpose, each General Unsecured Claim Filed or to be Filed in the Chapter 11 Case of any Debtor shall be deemed Filed against, and shall be a single obligation of, Debtor Wawona Farm Co. LLC with respect to any distribution from the GUC Trust to the Holder of such General Unsecured Claim.

**N.    GUC Administrator Exculpation, Indemnification, Insurance, and Liability Limitation**

109.    The GUC Administrator and all professionals retained by the GUC Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by each Wind-Down Debtor.  The GUC Administrator may obtain, at the expense of the Wind-Down Debtors, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Wind-Down Debtors.  The GUC Administrator may rely upon written information previously generated by the Debtors.

**O.    Tax Returns**

110.    After the Effective Date, the Liquidating Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for each of the OpCo Credit Parties, MVK FarmCo LLC, and the Wind-Down Debtors, as applicable, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**P.    Dissolution of the Wind-Down Debtors**

111.    Upon a certification to be Filed with this Bankruptcy Court by the Liquidating Trustee of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of these Chapter 11 Cases, the Wind-Down Debtors shall be deemed to be dissolved without any further action by the Wind-Down Debtors, including the Filing of any documents with the secretary of state for the state in which the Wind-Down Debtors are formed or any other jurisdiction.  The Liquidating Trustee, however, shall have authority to take all necessary actions to dissolve the Wind-Down Debtors in and withdraw the Wind-Down Debtors from applicable states.

**Q.    Statutory Committee and Cessation of Fee and Expense Payment**

112.    On the Effective Date, any statutory committee appointed in these Chapter 11 Cases, including the Committee, shall dissolve, and any such committee, and members and professionals thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except for the Filing of applications for compensation.  The Debtors shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with applications for payment of any fees or expenses for services rendered prior to the Effective Date that are Allowed by this Bankruptcy Court.

**R.    Cancellation of Securities and Agreements**

113.    Except as otherwise specifically provided for in the Plan on the Effective Date:  (i) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtors or any warrants, options, or other Securities exercisable or exchangeable for, or convertible into, debt,

equity, ownership, or profits interests in the Debtors giving rise to any Claim or Interest shall be cancelled and deemed surrendered as to the Debtors, and the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall not have any continuing obligations thereunder; and (ii) the obligations of the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be fully released, settled, and compromised.  Notwithstanding the foregoing, no Executory Contract or Unexpired Lease that (x) has been, or will be, assumed pursuant to section 365 of the Bankruptcy Code or (y) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

114.    Notwithstanding the foregoing, the Bridge Credit Agreement, OpCo Credit Agreements, PropCo Credit Agreement, and DIP Credit Agreement shall survive as necessary to (a) enforce the rights, claims, and interests of any Agent and any predecessor thereof against parties other than the Released Parties; (b) allow the receipt and making of distributions under the Plan in accordance with the terms of any such note or agreement, as applicable; (c) preserve any rights of any Agent and any predecessor thereof as against any money or property distributable to Holders of Bridge Secured Claims, OpCo Secured Claims, PropCo Secured Claims, and DIP Claims, as applicable, including any priority in respect of payment and the right to exercise any charging liens; and (d) permit the OpCo Agent to enforce rights against OpCo Lenders under Section 2.5(e)

of the OpCo Credit Agreements with respect to LC Disbursements (as defined in the OpCo Credit Agreements).

**S.     Corporate Action**

115.     Upon the Effective Date, all actions contemplated under the Plan shall be deemed authorized and approved in all respects, including implementation of the Restructuring Transactions and all other acts or actions contemplated or reasonably necessary or appropriate to promptly consummate the Restructuring Transactions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  On the Effective Date, all matters provided for in the Plan involving the corporate or organizational structure of the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, and any corporate, partnership, limited liability company, or other governance action required by the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, in connection with the Plan shall be deemed to have timely occurred and shall be in effect and shall be authorized and approved in all respects, without any requirement of further action by the equityholders, members, directors, or officers of the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable.  On or prior to the Effective Date, as applicable, the appropriate officers of the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall be authorized and, as applicable, directed, to issue, execute, and deliver the agreements, documents, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of Reorganized PropCo, Post-Effective Date PropCo, or the Wind-Down Debtors, as applicable.  The authorizations and approvals contemplated by Article IV.H of the Plan shall be effective notwithstanding any requirements under nonbankruptcy Law.

**T.      Effectuating Documents; Further Transactions**

116.    On and after the Effective Date, Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, and their respective officers, directors, trustees, members, managers, and Liquidating Trustee (as applicable), are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan in the name of and on behalf of Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**U.      Section 1146 Exemption**

117.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to Post-Effective Date PropCo, Reorganized PropCo, or a Wind-Down Debtor, or the Liquidating Trust, or from a Wind-Down Debtor to the Liquidating Trust, as applicable, or to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity Security, or other interest in the Debtors, Post-Effective Date PropCo, Reorganized PropCo, or the Wind-Down Debtors; (2) the Restructuring Transactions; (3) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (4) the making, assignment, or recording of any lease or sublease; (5) the entrance into, delivery of, and performance under the Exit Facilities; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or

53

other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax, fee, or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax, fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.  All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the imposition or collection of any such tax, fee, or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

**V.    Director and Officer Liability Insurance; Other Insurance**

118.    Nothing (a) alters, modifies, or otherwise amends the terms and conditions of (or the coverage provided by) any Insurance Contracts, nor (1) any Insurer's right to seek payment or reimbursement from the Debtors (or after the Effective Date, Reorganized PropCo, or the Liquidating Trustee on behalf of the Wind-Down Debtors, as applicable), or draw on any Collateral or security therefor, or (2) any Insurer's subrogation rights under the Insurance Contracts and applicable non-bankruptcy law, and for the avoidance of doubt, Insurers shall not need to nor be required to file or serve an objection to a Cure Notice or a request, application, claim, Cure Claim, Proof of Claim, or motion for payment or allowance of any Administrative Claim, or any notice of recoupment, and Insurers shall not be subject to any claims bar date or

similar deadline governing Cure amounts, Proofs of Claim, or Administrative Claims.   The automatic stay of Bankruptcy Code section 362(a) and the injunctions set forth in Article VIII of the Plan, if and to the extent applicable, shall be deemed lifted without further order of this Court, solely to permit:  (I) claimants with valid workers' compensation claims or direct action claims against an Insurer under applicable non-bankruptcy law to proceed with their claims; (II) the Insurers to administer, handle, defend, settle, and/or pay, in the ordinary course of business and without further order of this Bankruptcy Court, (A) workers' compensation claims, (B) claims where a claimant asserts a direct claim against any Insurer under applicable non-bankruptcy law, or an order has been entered by this Court granting a claimant relief from the automatic stay or the injunctions set forth in Article VIII of the Plan to proceed with its claim, and (C) all costs in relation to each of the foregoing; and (III) the Insurers to draw against any or all of the collateral or security provided by or on behalf of the Debtors (or Post-Effective Date PropCo or the Wind-Down Debtors, as applicable) at any time and to hold the proceeds thereof as security for the obligations of the Debtors (and Post-Effective Date PropCo or the Wind-Down Debtors, as applicable) and/or apply such proceeds to the obligations of the Debtors (and Post-Effective Date PropCo or the Wind-Down Debtors, as applicable) under the applicable Insurance Contracts, in such order as the applicable Insurer may determine; and (IV) the Insurers to cancel any Insurance Contracts, and take other actions relating to the Insurance Contracts (including effectuating a setoff or recoupment), to the extent permissible under applicable non-bankruptcy law, and in accordance with the terms of the applicable Insurance Contracts.

119.    Notwithstanding anything to the contrary herein, the D&O Liability Insurance Policies shall be assumed by the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, effective as of the Effective Date, pursuant to sections 105, 365, and 1123 of the

Bankruptcy Code, and nothing shall alter, modify, or amend, affect, or impair the terms and conditions of (or the coverage provided by) any of the D&O Liability Insurance Policies, including the coverage for defense and indemnity under any of the D&O Liability Insurance Policies which shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies in accordance with and subject to the terms and conditions thereof regardless of whether such officers, directors, trustees, managers, or members remain in such position after the Effective Date. For the avoidance of doubt, the D&O Liability Insurance Policies will continue to apply with respect to actions, or failures to act, that occurred on or prior to the Effective Date, in accordance with and subject to the terms and conditions of the D&O Liability Insurance Policies. In addition, after the Effective Date, none of the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall terminate or otherwise reduce coverage under any D&O Liability Insurance Policies (including any "tail policy") in effect or purchased as of the Petition Date. For the avoidance of doubt, nothing herein shall require the Debtors, Reorganized PropCo, or the Wind-Down Debtors to renew or extend any of the D&O Liability Insurance Policies or to purchase other, similar coverage after the Effective Date.

120.    On and after the Effective Date, Reorganized PropCo shall replace the existing first named insured under the Chubb Agribusiness Policy, and shall thereafter be liable in full for all amounts due and owing thereunder in accordance with and subject to the terms thereof, including, but not limited to, with respect to payment for any outstanding or not-yet-owed premium installments owed thereunder and shall properly issue payment before the applicable installment due date for each installment owed under the Chubb Agribusiness Policy in accordance with the terms of any such invoice in full dollars; and, for the avoidance of doubt, and in addition to the treatment provided in Article V.E.2 of the Plan, the Chubb Agribusiness Policy shall be entitled to

the treatment set forth in Article V.E.1(a) of the Plan as though PropCo had been the first named insured thereunder on the Confirmation Date.

## W.   Preservation of Causes of Action

121.   Except as otherwise provided in the Plan, pursuant to section 1123(b) of the Bankruptcy Code, Reorganized PropCo and each Wind-Down Debtor, as applicable, shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action of the Debtors whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and Reorganized PropCo's and Wind-Down Debtors' rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IV and Article VIII of the Plan or pursuant to a Final Order (including the Cash Collateral Order and any DIP Order), which, in each case, shall be deemed released and waived by the Debtors, Reorganized PropCo, and the Wind-Down Debtors as of the Effective Date.  For the avoidance of doubt, all Claims and Causes of Action that may be asserted against the Sponsor, McKinsey, or the Gerawan Interested Parties and their respective Related Parties are hereby waived and may not be enforced by Post-Effective Date PropCo, Reorganized PropCo, any of the Wind-Down Debtors, the Liquidating Trust, or the GUC Trust.

122.   Reorganized PropCo and the Wind-Down Debtors, as applicable, may pursue such retained Causes of Action, as appropriate, in accordance with the best interests of Reorganized PropCo and the Wind-Down Debtors, respectively.  No Entity (other than the Released Parties) may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Causes of Action against it as any indication that the Debtors, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trustee, as applicable, will not pursue any

and all available Causes of Action of the Debtors against it.  Except as specifically released or as assigned or transferred under the Plan or pursuant to a Final Order (including the Cash Collateral Orders and any DIP Orders), the Debtors, Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including **Error! Reference source not found.** of the Plan or pursuant to a Final Order (including the Cash Collateral Orders, any DIP Orders, or this Confirmation Order).  Unless otherwise agreed upon in writing by the parties to the applicable Causes of Action, all objections to the Schedule of Retained Causes of Action must be Filed with the Bankruptcy Court on or before thirty days after the Effective Date.  Any such objection that is not timely Filed shall be disallowed and forever barred, estopped, and enjoined from assertion against Reorganized PropCo, any Wind-Down Debtor, and the Liquidating Trust, without the need for any objection or responsive pleading by Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, or any other party in interest or any further notice to or action, order, or approval of the Bankruptcy Court.  Reorganized PropCo and the Wind-Down Debtors, with respect to other Causes of Action may settle any such objection without any further notice to or action, order, or approval of the Bankruptcy Court.  If there is any dispute regarding the inclusion of any Causes of Action on the Schedule of Retained Causes of Action that remains unresolved by the Debtors, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trust, as applicable, and the objection party for thirty days, such objection shall be resolved by the Bankruptcy Court.

123.    Unless any Causes of Action of the Debtors against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order (including the Cash Collateral Orders, any DIP Orders, and this Confirmation Order), Reorganized PropCo,

the Wind-Down Debtors, the Liquidating Trust, as applicable, expressly reserve all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

124.    Reorganized PropCo and the Wind-Down Debtors, as applicable, reserve and shall retain such Causes of Action of the Debtors notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust, as applicable, through their authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  Reorganized PropCo and the Wind-Down Debtors, as applicable, shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

125.    Notwithstanding the foregoing, the Debtors, on behalf of themselves and their Estates, shall release any and all Waived Avoidance Actions, and the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trust, the GUC Trust, and any of their successors or assigns, and any Entity acting on behalf of the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trust, or the GUC Trust, shall be deemed to have waived the right to pursue any and all Waived Avoidance Actions.

## X.    Treatment of Executory Contracts and Unexpired Leases

126.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes

concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

127.    On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan; (ii) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (iii) is subject to a motion to assume (or assume and assign) such Unexpired Lease or Executory Contract as of the Effective Date; (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (v) is a Pending 363 Sale Contract; (vi) is a D&O Liability Insurance Policy; or (vii) is an Executory Contract that may be assumed and assigned to the "Purchaser" (the "PGIM Executory Contracts") pursuant to the "Purchase Agreement" (approved by the *Order (I) Authorizing and Approving the Sale of Certain Nonresidential Real Property Free and Clear of All Liens, Claims, Encumbrances and Other Interests and (II) Granting Related Relief* [Docket No. 844] (the "PGIM Sale Order", with "Purchaser" and "Purchase Agreement" in this clause having the meanings ascribed to them in the PGIM Sale Order).

128.    Entry of this Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan and the Schedule of Assumed Executory Contracts and Unexpired Leases, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy

Code.  Except as otherwise specifically set forth in the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized PropCo or Wind-Down Debtors, as applicable, in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by Reorganized PropCo or the Wind-Down Debtors, as applicable.

129.    **Wells Fargo Equipment Finance, Inc ("WFEF")**.  Wells Fargo Equipment Finance, Inc ("WFEF"). Notwithstanding anything to the contrary in the Plan or this Confirmation Order, and for the avoidance of doubt: (a) the Equipment Leases (as defined in the Limited Objection of Wells Fargo Equipment Finance, Inc. [Docket No. 274] (the "WFEF Objection")), shall be deemed rejected pursuant to the Plan as of the Effective Date or such earlier date as the Debtors and WFEF agree in writing, and the Debtors shall not sell, assign, or otherwise transfer the Leased Equipment (as defined in the WFEF Objection) or any interest therein to the extent such Leased Equipment is the sole property of WFEF; (b) the Subleases (as defined in the WFEF Objection) shall be deemed rejected pursuant to the Plan as of the Effective Date or such earlier date as the Debtors and WFEF agree in writing, and the claims, interests, and any rights of WFEF to access the properties subject to the Subleases (as defined in the WFEF Objection) in order to access, remove, maintain, operate, or use the Leased Equipment shall not be extinguished or

terminated by, and shall survive entry of, this Confirmation Order; and (c) any rights of WFEF pursuant to section 365(h) of the Bankruptcy Code shall survive entry of, and remain unaltered by, this Confirmation Order.

130.    **Wells Fargo Bank, National Association**.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, and for the avoidance of doubt, the WellsOne Commercial Card Agreement, dated March 21, 2018 between Wells Fargo Bank, National Association ("WFB") and debtor Wawona Packing Co. LLC (the "Card Agreement") shall not be assumed or assumed and assigned and shall be deemed terminated as of February 21, 2024. WFB's rights and interests as the beneficiary of that certain Irrevocable Standby Letter of Credit issued by Royal Bank of Canada ("RBC"), No. 10011032, including but not limited to those rights and liens approved pursuant to the Final Order (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Perform Intercompany Transactions and (II) Granting Related Relief [Docket No. 218] shall continue and remain unimpaired and unaffected by the Plan and this Confirmation Order. WFB reserves all rights to assert claims against the Debtors arising from the Card Agreement, and such claims are not waived, modified, altered, or impaired by the Plan or this Confirmation Order.

131.    Notwithstanding anything to the contrary in the Plan, the Debtors, Reorganized PropCo, or the Wind-Down Debtors, as applicable, reserve the right to alter, amend, modify, or supplement the Schedule of Assumed Executory Contracts and Unexpired Leases at any time up to forty-five days after the Effective Date. The Debtors Reorganized PropCo, or the Wind-Down Debtors, as applicable, shall provide notice of any amendments to the Rejected Executory

Contracts and Unexpired Leases Schedule or the Schedule of Assumed Executory Contracts and Unexpired Leases to the parties to the Executory Contracts or Unexpired Leases affected thereby.

**Y.     Provisions Governing Distributions**

132.    The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Distributions under the Plan shall be made by the Disbursing Agent, the Liquidating Trustee, the GUC Administrator, or the Entity or Entities selected by the Debtors to make or facilitate distributions contemplated under the Plan, including the Liquidating Trustee, and GUC Administrator, if applicable.

**Z.     Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests**

133.    The procedures for resolving disputed, contingent, and unliquidated claims or equity interests contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.

**AA.    Conditions to Effective Date**

134.    The provisions governing the conditions precedent to the Effective Date set forth in Article IX.A of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms.

**BB.    Retention of Jurisdiction**

135.    The provisions governing the retention of jurisdiction set forth in Article XI of the Plan shall be, and hereby are, approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain exclusive jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in Article XI of the Plan.

**CC.**     **Immediate Binding Effect**

136.     Subject to Article IX.A of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, any and all Holders of Claims or Interests (irrespective of whether the Holders of such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunction described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

**DD.**     **Additional Documents**

137.     On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors, Post-Effective Date PropCo, Reorganized PropCo, the Wind-Down Debtors, and all Holders of Claims or Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**EE.**     **Payment of Statutory Fees**

138.     All Quarterly Fees prior to the Effective Date shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors, Reorganized PropCo, the Wind-Down Debtors, and the Liquidating Trust, as applicable, shall be jointly and severally liable to pay any and all Quarterly Fees when due and payable.  Within two Business Days of the Effective Date,

Reorganized PropCo, the Wind-Down Debtors, the GUC Trust, or the Liquidating Trustee, as applicable, and any other authorized parties who have been charged with administering the confirmed Plan shall file a Notice of Occurrence of the Effective Date, identifying the Effective Date and indicating that it has occurred.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, each of the Wind-Down Debtors, Reorganized PropCo, the GUC Trust, and the Liquidating Trust, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due.  Each and every one of the Debtors, Reorganized PropCo, the Wind-Down Debtors, the GUC Trust, and the Liquidating Trust, as applicable, shall remain obligated to pay Quarterly Fees to the Office of the U.S. Trustee until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Claim in the case and shall not be treated as providing any release under the Plan.  The Debtors, Reorganized PropCo, the Wind-Down Debtors, the GUC Trust, and the Liquidating Trust agree and acknowledge that they are only responsible for fees based on their respective disbursements; *provided*, *however*, that the agreement set forth in the foregoing clause is not binding on the U.S. Trustee.

**FF.    Sun World International, LLC**.

139.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, each Proprietary Fruit Producer Lease Agreement  (each, a "Producer Agreement") between Sun World International, LLC ("Sun World") and the Debtors identified on the Schedule of Assumed Executory Contracts and Unexpired Leases, and assumed pursuant to Section V.A of the Plan, shall be assumed and assigned to Reorganized PropCo as of the Effective Date, provided that: (i) the Debtors shall not be required to pay any cure amount to assume and assign the Producer Agreements to Reorganized PropCo, subject to the terms of this paragraph; (ii) assumption and

assignment of the Producer Agreement shall not preclude Sun World from asserting a Claim for pre-petition or pre-Effective Date amounts due under the Producer Agreements other than under Section 365 of the Bankruptcy Code (i.e. Sun World is not precluded from asserting, no later than the Administrative Claims Bar Date, a general unsecured claim or administrative claim, as applicable, for unpaid amounts due under the Producer Agreements), and Sun World's agreement to accept a $0 cure amount shall not be determinative or have any evidentiary value as to the allowable amount of any such Claim; (iii) because Sun World is agreeing to accept assumption and assignment of the Producer Agreements without payment of past-due amounts as a cure pursuant to section 365, assumption and assignment of the Producer Agreements does not and shall not preclude or be considered a waiver of Sun World's right to assert pre-confirmation defaults as either a basis for relief from the automatic stay or as a basis for termination under the terms of such Producer Agreements.

140.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, (i) nothing in the Plan or this Confirmation Order shall be deemed consent by Sun World to any assignment of any Producer Agreement except assignment to Reorganized PropCo as set forth in the immediately preceding paragraph; (ii) all rights in any Sun World Variety plants located on real property owned or leased by the Debtors or Reorganized PropCo shall continue to be governed exclusively by the terms of the applicable Producer Agreement and Sun World shall retain its existing property interests in any Sun World Variety plants located on such real property; and (iii) Reorganized PropCo may terminate any and all Producer Agreements after the Effective Date pursuant to their terms; *provided* that upon termination, Reorganized PropCo shall be liable solely for the cost of removing the Sun World Variety plants from the applicable real property and any

fees accrued under the applicable Producer Agreement from the Effective Date through the date of termination.

**GG.    Provisions Related to Stone Cold (CA) LP ("Stone Cold")**

141.    The Stone Cold Objection[4] to the Plan is hereby resolved on the following terms:

(a)    Stone Cold shall receive a single $800,000.00 cash distribution from the GUC Trust by wire transfer as instructed by Stone Cold within five business days after the Class 7 Distribution Amount is deposited into the Committee Designated Account pursuant to the Plan;

(b)    Stone Cold shall have one (and only one) Allowed Class 7A General Unsecured Claim in the amount of $5.0 million without the need to file a proof of claim;

(c)    by no later than April 5, 2024, the Debtors shall pay Stone Cold by wire transfer as instructed by Stone Cold an aggregate amount of $738,157.67, which represents $447,582.67 of administrative rent for the month of March, 2024, plus a prorated postpetition real estate tax payment in the amount of $290,575.00; *provided* that Stone Cold reserves the right to assert a timely filed administrative expense claim in the Chapter 11 Cases for the remaining balance of the quarterly rental payment due March 1, 2024 in the amount of $895,165.33 plus any applicable late fees and interest as well as any attorney's fees and expenses incurred in pursuing that administrative claim; *provided*, *further*, that the rights of all parties in interest, including the GUC Administrator, Required Lender Group, the Debtors, the Winddown Debtors, the Liquidating Trustee, Post-Effective Date Propco, and Reorganized PropCo, to dispute or object to any asserted administrative expense claim for the remaining balance of quarterly rent and related amounts asserted by Stone Cold are expressly reserved;

(d)    the Required Lender Group will instruct the Bridge Agent and the OpCo Agent to not assert liens and release their liens on any: (i) immoveable personal or other immoveable property located on the Leased Premises;[5] (ii) moveable personal property located on the Leased Premises as of April 1, 2024, excluding the Bucket Trailers but including the packaging/fruit

---

[4]    "Stone Cold Objection" means the *Limited Objections of Stone Cold (CA) LP to Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 790].

[5]    "Leased Premises" means the non-residential real properties located at 14011 West Central Avenue, Kerman, CA 93630, 1467 East Dinuba Avenue, Reedley, CA 93654, 12133 Avenue 408, Cutler, CA 93615, 3023 South Reed Avenue, Sanger, CA 93657

labeler that was removed;[6] (iii) improvements located on the Leased Premises; (iv) any Bucket Trailers on the Leased Premises after May 30, 2024; or (v) fixtures located on the Leased Premises; *provided* that the foregoing does not affect any rights of the Bridge Agent and the OpCo Agent to assert liens on the Bucket Trailers so long as the Debtors remove such Bucket Trailers from the Leased Premises on or before May 30, 2024;

(e)     the Required Lender Group, the Bridge Agent, and the OpCo Agent shall cooperate with Stone Cold to ensure that the appropriate documentation, which may be a termination of or modification to the estoppel certificate for the benefit of the OpCo Agent, reflects that the Bridge Agent and the OpCo Agent have released their liens on: (i) immoveable personal or other immoveable property located on the Leased Premises; (ii) moveable personal property located on the Leased Premises as of April 1, 2024, excluding the Bucket Trailers, but including the packaging/fruit labeler that was removed; (iii) improvements located on the Leased Premises; (iv) any Bucket Trailors on the Leased Premises after May 30, 2024; or (v) fixtures located on the Leased Premises, in each case, at the sole cost and expense of the Debtors, Post-Effective Date PropCo, Reorganized PropCo or the Wind-Down Debtors, as applicable, and without recourse, representation or warranty of any kind; and

(f)     the packaging labeler removed from the Leased Premises will be returned and the Debtors will assist and cooperate in such efforts, including, without limitation, if necessary by assigning title to the packaging labeler to Stone Cold and by directing the current possessor of the packaging/fruit labeler to return it to the appropriate Leased Premises.

## HH.     Reservation of Rights

142.     Except as expressly set forth in the Plan, the Plan shall have no force or effect until the Bankruptcy Court enters the Confirmation Order. Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

---

[6]     "Bucket Trailers" means certain bucket trailers located on the Premises as described in that certain *Order Authorizing the Debtors to Reject the Lease with Stone Cold (CA) LP*.

## II.    Non-Severability of Plan Provisions Upon Confirmation

143.    The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

## JJ.    Governmental Approvals Not Required

144.    Except as otherwise specifically provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

## KK.    Recording

145.    The Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable, hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer.

## LL.    Effect of Conflict between Plan and Confirmation Order

146.    In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control

(unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

**MM.    Documents, Mortgages, and Instruments**

147.    Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

**NN.    Authorization to Consummate**

148.    The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX.A of the Plan.

**OO.    Debtors' Actions Post-Confirmation Through the Effective Date**

149.    During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Restructuring Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Restructuring Transactions, in each case subject to the terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan,

upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings.

**PP.    Notices of Confirmation and Effective Date**

150.    The Debtors shall serve notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known Holders of Claims and Interests and the Bankruptcy Rule 2002 service list within five Business Days after the Effective Date.  As soon as reasonably practicable after the Effective Date, the Debtors shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties.  The notice of the Effective Date may be included in this Confirmation Order Notice.  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Further, the Debtors shall only be required to serve those members who have not filed a Proof of Claim in these Chapter 11 cases with the Confirmation Order Notice to the extent that such members have active electronic mail addresses.  In addition, no later than five Business Days after the Effective Date, the Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable, shall cause this Confirmation Order Notice, modified for publication, to be published on one occasion in *USA TODAY*, *The Fresno Bee*, or another similar nationally circulated news publication.  The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

151.    After the Effective Date, the Debtors, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trustee, as applicable, may notify parties that, in order to continue to receive service of documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive service of documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, Reorganized PropCo, and the Wind-Down Debtors, or Liquidating Trustee, as applicable, is authorized to limit the list of parties receiving such service pursuant to Bankruptcy Rule 2002 to those parties who have Filed such renewed requests; provided that the Notice of the Effective Date discloses that parties who wish to continue to receive service of documents must file a renewed request for service under Bankruptcy Rule 2002.

## QQ.    Return of Adequate Assurance Deposits

152.    On the Effective Date, all funds in the Adequate Assurance Account as defined and established by the Debtors in the *Final Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Services, (III) Approving Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* [Docket No. 222] shall be returned to the Debtors, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trustee.

## RR.    Dissolution of Statutory Committees

153.    On the Effective Date, any statutory committee appointed in these Chapter 11 Cases shall dissolve and the members and professionals thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except for (i) the filing of all final fee applications for all Professionals, and (ii) the resolution of any appeals of this Confirmation Order.  The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Effective

Date, except for those fees and expenses incurred by such committee's professionals in connection with the matters identified in clauses (i) and (ii) in the forgoing sentence.

**SS.**     **Formation of GUC Trust Advisory Committee**

154.    On the Effective Date, the GUC Trust Advisory Committee shall be formed in accordance with Article IV.F.3 of the Plan, comprised of members of the Committee and/or any other entities appointed by the Committee.  The GUC Trust Advisory Committee shall direct the GUC Administrator to carry out its powers in accordance with the Plan, this Confirmation Order, and the GUC Trust Agreement.

**TT.**     **Headings**

155.    Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**UU.**     **Final Order and Waiver of Stay**

156.    For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately, be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.

**<u>Exhibit A</u>**

**Plan**

## Exhibit B

**Confirmation Order Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MVK FARMCO LLC, *et al.*,[1] | ) Case No. 23-11721 (LSS) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## NOTICE OF (I) ENTRY OF CONFIRMATION ORDER, (II) OCCURRENCE OF EFFECTIVE DATE, AND (III) RELATED BAR DATES

**PLEASE TAKE NOTICE THAT** on [●], 2024, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") confirmed the *First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates (Technical Modifications)* [Docket No. [●]] (the "Plan"),[2] which was attached as Exhibit A to the *Findings of Fact, Conclusions of Law, and Order Confirming the First Amended Joint Chapter 11 Plan of Liquidation of MVK FarmCo LLC and its Debtor Affiliates (Technical Modifications)* [Docket No. [●]] (the "Confirmation Order").

**PLEASE TAKE FURTHER NOTICE THAT** the Effective Date, as defined in the Plan, occurred on **[●], 2024**.

**PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.C of the Plan, unless otherwise wise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date.  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Debtors and the Holder of such Claim.

**PLEASE TAKE FURTHER NOTICE THAT**, except as otherwise provided by this Confirmation Order, the Plan, or a Final Order of the Bankruptcy Court, the deadline for filing requests for payment of Administrative Claims shall be **[●], 2024** (the "Administrative Claim Bar

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  MVK FarmCo LLC (5947); MVK Intermediate Holdings LLC (6016); Gerawan Farming LLC (1975); Gerawan Supply, Inc. (6866); Gerawan Farming Partners LLC (0072); Gerawan Farming Services LLC (7361); Wawona Farm Co. LLC (1628); Wawona Packing Co. LLC (7637); and GFP LLC (9201).  The location of the Debtors' service address is:  7700 N. Palm Ave., Suite 206, Fresno, CA 93711.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in Plan.

Date"), which is the first Business Day that is [thirty (30)] days after the Effective Date.  If a Holder of an Administrative Claim (other than DIP Claims, Professional Fee Claims, or claims subject to section 503(b)(1)(D) of the Bankruptcy Code) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claim Bar Date, such Holder shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or their property without the need for any objection from the Debtors or any notice to or action, order, or approval of the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE THAT, pursuant to the Plan, the Deadline to file final requests for payment of Professional Fee Claims is **[●], 2024** (the "Professional Fee Application Deadline"), which is the first Business Day that is forty-five days after the Effective Date.  All professionals must file final requests for payment of Professional Fee Claims by no later than the Professional Fee Application Deadline to receive final approval of the fees and expenses incurred in these Chapter 11 Cases.

PLEASE TAKE FURTHER NOTICE THAT the Plan and its provisions are binding on the Debtors, any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

PLEASE TAKE FURTHER NOTICE THAT the Plan, this Confirmation Order, and other documents and materials filed in these Chapter 11 Cases may be obtained at no charge from Stretto, Inc., the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice, Claims, and Solicitation Agent") by (a) visiting the Debtors' restructuring website at https://cases.stretto.com/primawawona, (b) writing to: MVK FarmCo, et al., Claims Processing c/o Stretto, 410 Exchange Suite 100, Irvine, CA 92602, (c) emailing PrimaWawonaInquiries@stretto.com with a reference to "MVK FarmCo LLC" in the subject line, or (d) calling the Debtors' Notice, Claims, and Solicitation Agent at (888) 405-4599 (U.S. & Canada) or +1 (949) 385-6774 (International).  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://ecf.deb.uscourts.gov/.

Dated:  [●], 2024                    /s/  DRAFT
Wilmington, Delaware              Joseph Barry (Del. Bar No. 4221)
                                 Kenneth J. Enos (Del. Bar No. 4544)
                                 Andrew A. Mark (Del. Bar No. 6861)
                                 **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
                                 Rodney Square
                                 1000 North King Street
                                 Wilmington, Delaware 19801
                                 Telephone:    (302) 571-6600
                                 Facsimile:    (302) 571-1253
                                 Email:        jbarry@ycst.com
                                               kenos@ycst.com
                                               amark@ycst.com

                                 -and-


                                 Ryan Blaine Bennett, P.C. (admitted *pro hac vice*)
                                 Jaimie Fedell (admitted *pro hac vice*)
                                 **KIRKLAND & ELLIS LLP**
                                 **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                 300 North LaSalle Street
                                 Chicago, Illinois 60654
                                 Telephone:    (312) 862-2000
                                 Facsimile:    (312) 862-2200
                                 Email:        ryan.bennett@kirkland.com
                                               jaimie.fedell@kirkland.com


                                 *Co-Counsel for the Debtors and Debtors in Possession*

## EXHIBIT 2

**Changed Pages Only Blackline**

PropCo, the Wind-Down Debtors, the Liquidating Trust, the GUC Trust, and any of their successors or assigns, and any Entity acting on behalf of the Debtors, Reorganized PropCo, the Wind-Down Debtors, the Liquidating Trust, or the GUC Trust, shall be deemed to have waived the right to pursue any and all Waived Avoidance Actions.

## X.    Treatment of Executory Contracts and Unexpired Leases

126.    The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

127.    On the Effective Date, except as otherwise provided in the Plan, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease: (i) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan; (ii) is identified on the Schedule of Assumed Executory Contracts and Unexpired Leases; (iii) is subject to a motion to assume (or assume and assign) such Unexpired Lease or Executory Contract as of the Effective Date; (iv) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (v) is a Pending 363 Sale Contract; or (vi) is a D&O Liability Insurance Policy.; or (vii) is an Executory Contract that may be assumed and assigned to the "Purchaser" (the "PGIM Executory Contracts") pursuant to the "Purchase Agreement" (approved by the *Order (I) Authorizing and Approving the Sale of Certain Nonresidential Real Property Free and Clear of All Liens, Claims, Encumbrances and*

*Other Interests and (II) Granting Related Relief* [Docket No. 844] (the "PGIM Sale Order", with "Purchaser" and "Purchase Agreement" in this clause having the meanings ascribed to them in the PGIM Sale Order).

128.    Entry of this Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases as set forth in the Plan and the Schedule of Assumed Executory Contracts and Unexpired Leases, as applicable, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Except as otherwise specifically set forth in the Plan, assumptions or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the applicable contracting Reorganized PropCo or Wind-Down Debtors, as applicable, in accordance with its terms, except as such terms may have been modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by a Final Order on or after the Effective Date but may be withdrawn, settled, or otherwise prosecuted by Reorganized PropCo or the Wind-Down Debtors, as applicable.

129.    **Wells Fargo Equipment Finance, Inc ("WFEF")**.  Wells Fargo Equipment Finance, Inc ("WFEF").  Notwithstanding anything to the contrary in the Plan or this Confirmation Order, and for the avoidance of doubt: (a) the Equipment Leases (as defined in the Limited Objection of Wells Fargo Equipment Finance, Inc. [Docket No. 274] (the "WFEF Objection")), shall be deemed rejected pursuant to the Plan as of the Effective Date or such

and shall not preclude or be considered a waiver of Sun World's right to assert pre-confirmation defaults as either a basis for relief from the automatic stay or as a basis for termination under the terms of such Producer Agreements.

140.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, (i) nothing in the Plan or this Confirmation Order shall be deemed consent by Sun World to any assignment of any Producer Agreement except assignment to Reorganized PropCo as set forth in the immediately preceding paragraph; (ii) all rights in any Sun World Variety plants located on real property owned or leased by the Debtors or Reorganized PropCo shall continue to be governed exclusively by the terms of the applicable Producer Agreement and Sun World shall retain its existing property interests in any Sun World Variety plants located on such real property; and (iii) Reorganized PropCo may terminate any and all Producer Agreements after the Effective Date pursuant to their terms; *provided* that upon termination, Reorganized PropCo shall be liable solely for the cost of removing the Sun World Variety plants from the applicable real property and any fees accrued under the applicable Producer Agreement from the Effective Date through the date of termination.

**GG.    Provisions Related to Stone Cold (CA) LP ("Stone Cold")**

141.    The Stone Cold Objection[4] to the Plan is hereby resolved on the following terms:

(a)    Stone Cold shall receive a single $800,000.00 cash distribution from the GUC Trust by wire transfer as instructed by Stone Cold within five business days after the Class 7 Distribution Amount is deposited into the Committee Designated Account pursuant to the Plan;

(b)    Stone Cold shall have one (and only one) Allowed Class 7A General Unsecured Claim in the amount of $5.0 million without the need to file a proof of claim;

---

[4]    "Stone Cold Objection" means the *Limited Objections of Stone Cold (CA) LP to Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 790].

(c)    by no later than April 5, 2024, the Debtors shall pay Stone Cold by wire transfer as instructed by Stone Cold an aggregate amount of $738,157.67, which represents $447,582.67 of administrative rent for the month of March, 2024, plus a prorated postpetition real estate tax payment in the amount of $290,575.00; *provided* that Stone Cold reserves the right to assert a timely filed administrative expense claim in the Chapter 11 Cases for the remaining balance of the quarterly rental payment due March 1, 2024 in the amount of $895,165.33 plus any applicable late fees and interest as well as any attorney's fees and expenses incurred in pursuing that administrative claim; *provided*, *further*, that the rights of all parties in interest, including the GUC Administrator, Required Lender Group, the Debtors, the Winddown Debtors, the Liquidating Trustee, Post-Effective Date Propco, and Reorganized PropCo, to dispute or object to any asserted administrative expense claim for the remaining balance of quarterly rent and related amounts asserted by Stone Cold are expressly reserved;

(d)    the Required Lender Group will instruct the Bridge Agent and the OpCo Agent to not assert liens and release their liens on any: (i) immoveable personal or other immoveable property located on the Leased Premises;[5] (ii) moveable personal property located on the Leased Premises as of April 1, 2024, excluding the Bucket Trailers but including the packaging/fruit labeler that was removed;[6] (iii) improvements located on the Leased Premises; (iv) any Bucket Trailers on the Leased Premises after May 30, 2024; or (v) fixtures located on the Leased Premises; *provided* that the foregoing does not affect any rights of the Bridge Agent and the OpCo Agent to assert liens on the Bucket Trailers so long as the Debtors remove such Bucket Trailers from the Leased Premises on or before May 30, 2024;

(e)    the Required Lender Group, the Bridge Agent, and the OpCo Agent shall cooperate with Stone Cold to ensure that the appropriate documentation, which may be a termination of or modification to the estoppel certificate for the benefit of the OpCo Agent, reflects that the Bridge Agent and the OpCo Agent have released their liens on: (i) immoveable personal or other immoveable property located on the Leased Premises; (ii) moveable personal property located on the Leased Premises as of April 1, 2024, excluding the Bucket Trailers, but including the packaging/fruit labeler that was removed; (iii) improvements located on the Leased Premises; (iv) any Bucket Trailers on the Leased Premises after May 30, 2024; or

---

[5]    "Leased Premises" means the non-residential real properties located at 14011 West Central Avenue, Kerman, CA 93630, 1467 East Dinuba Avenue, Reedley, CA 93654, 12133 Avenue 408, Cutler, CA 93615, 3023 South Reed Avenue, Sanger, CA 93657

[6]    "Bucket Trailers" means certain bucket trailers located on the Premises as described in that certain *Order Authorizing the Debtors to Reject the Lease with Stone Cold (CA) LP*.

(v) fixtures located on the Leased Premises, in each case, at the sole cost and expense of the Debtors, Post-Effective Date PropCo, Reorganized PropCo or the Wind-Down Debtors, as applicable, and without recourse, representation or warranty of any kind; and

(f)     the packaging labeler removed from the Leased Premises will be returned and the Debtors will assist and cooperate in such efforts, including, without limitation, if necessary by assigning title to the packaging labeler to Stone Cold and by directing the current possessor of the packaging/fruit labeler to return it to the appropriate Leased Premises.

**HH.    ~~GG.~~ Reservation of Rights**

142.    ~~141.~~ Except as expressly set forth in the Plan, the Plan shall have no force or effect until the Bankruptcy Court enters the Confirmation Order.  Neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by the Debtors or any Debtor with respect to the Plan, the Disclosure Statement, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of the Debtors or any Debtor with respect to the Holders of Claims or Interests, unless and until the Effective Date has occurred.

**II.    ~~HH.~~ Non-Severability of Plan Provisions Upon Confirmation**

143.    ~~142.~~ The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent.

**JJ.** ~~II.~~ **Governmental Approvals Not Required**

144. ~~143.~~ Except as otherwise specifically provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

**KK.** ~~JJ.~~ **Recording**

145. ~~144.~~ The Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable, hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer.

**LL.** ~~KK.~~ **Effect of Conflict between Plan and Confirmation Order**

146. ~~145.~~ In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

**MM.** ~~LL.~~ **Documents, Mortgages, and Instruments**

147. ~~146.~~ Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or

appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

**NN.** ~~MM.~~ **Authorization to Consummate**

148. ~~147.~~ The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article IX.A of the Plan.

**OO.** ~~NN.~~ **Debtors' Actions Post-Confirmation Through the Effective Date**

149. ~~148.~~ During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Restructuring Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement, or the Restructuring Transactions, in each case subject to the terms and conditions of the Plan.  Notwithstanding anything to the contrary herein or in the Plan, upon entry of this Confirmation Order, the Debtors shall be released from any and all reporting obligations arising under any order of the Bankruptcy Court entered in connection with any of the First Day Pleadings.

**PP.** ~~OO.~~ **Notices of Confirmation and Effective Date**

150.    ~~149.~~ The Debtors shall serve notice of entry of this Confirmation Order, substantially in the form attached hereto as **Exhibit B** (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known Holders of Claims and Interests and the Bankruptcy Rule 2002 service list within five Business Days after the Effective Date.  As soon as reasonably practicable after the Effective Date, the Debtors shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties.  The notice of the Effective Date may be included in this Confirmation Order Notice. Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Further, the Debtors shall only be required to serve those members who have not filed a Proof of Claim in these Chapter 11 cases with the Confirmation Order Notice to the extent that such members have active electronic mail addresses.  In addition, no later than five Business Days after the Effective Date, the Debtors, Reorganized PropCo, and the Wind-Down Debtors, as applicable, shall cause this Confirmation Order Notice, modified for publication, to be published on one occasion in *USA TODAY*, *The Fresno Bee*, or another similar nationally circulated news publication.  The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

151.    ~~150.~~ After the Effective Date, the Debtors, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trustee, as applicable, may notify parties that, in order to continue to

receive service of documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive service of documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, Reorganized PropCo, and the Wind-Down Debtors, or Liquidating Trustee, as applicable, is authorized to limit the list of parties receiving such service pursuant to Bankruptcy Rule 2002 to those parties who have Filed such renewed requests; provided that the Notice of the Effective Date discloses that parties who wish to continue to receive service of documents must file a renewed request for service under Bankruptcy Rule 2002.

## QQ.   ~~PP.~~ Return of Adequate Assurance Deposits

152.   ~~151.~~ On the Effective Date, all funds in the Adequate Assurance Account as defined and established by the Debtors in the *Final Order (I) Determining Adequate Assurance of Payment for Future Utility Services, (II) Prohibiting Utility Providers From Altering, Refusing, or Discontinuing Services, (III) Approving Debtors' Proposed Procedures for Resolving Adequate Assurance Requests, and (IV) Granting Related Relief* [Docket No. 222] shall be returned to the Debtors, Reorganized PropCo, the Wind-Down Debtors, or the Liquidating Trustee.

## RR.   ~~QQ.~~ Dissolution of Statutory Committees

153.   ~~152.~~ On the Effective Date, any statutory committee appointed in these Chapter 11 Cases shall dissolve and the members and professionals thereof, shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except for (i) the filing of all final fee applications for all Professionals, and (ii) the resolution of any appeals of this Confirmation Order.  The Debtors shall not be responsible for paying any fees or expenses incurred by the members of or advisors to any statutory committee (including the Committee) after the Effective Date, except for those fees and expenses incurred by such committee's

professionals in connection with the matters identified in clauses (i) and (ii) in the forgoing sentence.

**SS.    RR. Formation of GUC Trust Advisory Committee**

154.    153. On the Effective Date, the GUC Trust Advisory Committee shall be formed in accordance with Article IV.F.3 of the Plan, comprised of members of the Committee and/or any other entities appointed by the Committee.  The GUC Trust Advisory Committee shall direct the GUC Administrator to carry out its powers in accordance with the Plan, this Confirmation Order, and the GUC Trust Agreement.

**TT.    SS. Headings**

155.    154. Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

**UU.    TT. Final Order and Waiver of Stay**

156.    155. For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately, be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors are authorized to consummate the Plan.