1                    UNITED STATES BANKRUPTCY COURT
                         DISTRICT OF DELAWARE
2

3    IN RE:                          .  Chapter 11
                                     .  Case No. 23-11721 (LSS)
4    MVK FARMCO LLC, *et al.*,        .
                                     .  (Jointly Administered)
5                                    .
                                     .  Courtroom No. 2
6                                    .  824 North King Street
                 Debtors.           .  Wilmington, Delaware 19801
7                                    .
                                     .  Thursday, March 28, 2024
8    . . . . . . . . . . . . . . .  2:03 p.m.

9                          TRANSCRIPT OF HEARING
           BEFORE THE HONORABLE LAURIE SELBER SILVERSTEIN
10               CHIEF UNITED STATES BANKRUPTCY JUDGE

11   <u>APPEARANCES</u>:

12   For the Debtors:          Jaimie Fedell, Esquire
                               Robert Jacobson, Esquire
13                             David Gremling, Esquire
                               KIRKLAND & ELLIS LLP
14                             KIRKLAND & ELLIS INTERNATIONAL LLP
                               300 North LaSalle Street
15                             Chicago, Illinois 60654

16

17

18
     (APPEARANCES CONTINUED)
19
     Audio Operator:           Brandon J. McCarthy, ECRO
20

21   Transcription Company:    Reliable
                               The Nemours Building
22                             1007 N. Orange Street, Suite 110
                               Wilmington, Delaware 19801
23                             Telephone: (302)654-8080
                               Email:  gmatthews@reliable-co.com
24

25   Proceedings recorded by electronic sound recording,
     transcript produced by transcription service.

1  APPEARANCES (CONTINUED):

2  For the Committee:        Andrew Behlmann, Esquire
                             LOWENSTEIN SANDLER LLP
3                            One Lowenstein Drive
                             Roseland, New Jersey 07068

4  For Stone Cold (CA)
5  LP:                       Curtis Miller, Esquire
                             MORRIS NICHOLS ARSHT & TUNNELL LLP
6                            1201 North Market Street
                             16th Floor
7                            P.O. Box 1347
                             Wilmington, Delaware 19899
8
   For Wells Fargo Bank:     Laurel D. Roglen, Esquire
9                            BALLARD SPAHR LLP
                             919 North Market Street
10                           11th Floor
                             Wilmington, Delaware 19801-3034
11
   For MetLife:              Glenn Siegel, Esquire
12                           MORGAN LEWIS & BOCKIUS LLP
                             101 Park Avenue
13                           New York, New York 10178

14 For Compeer and
   Farm Credit:              Luis Lluberas, Esquire
15                           MOORE & VAN ALLEN
                             100 North Tryon Street
16                           Suite 4700
                             Charlotte, North Carolina 28202
17
   For the Buyer:            Matthew Brooks, Esquire
18                           TROUTMAN PEPPER HAMILTON
                               SANDERS LLP
19                           875 Third Avenue
                             New York, New York 10022
20

21

22

23

24

25

1                                INDEX

2   MOTION:                                                    PAGE

3   Agenda
    Item 1:  Confirmation of First Amended Joint              4
4            Chapter 11 Plan of Liquidation of
             MVK FarmCo LLC and Its Debtor
5            Affiliates

6            Court's Ruling                                   24

7   Agenda
    Item 2:  Debtors' Motion for Entry of Interim and Final   29
8            Orders (I) Authorizing the Debtors to (A) Obtain
             Senior Secured Superpriority Postpetition
9            Financing and (B) Use Cash Collateral, (II)
             Granting Liens and Superpriority Administrative
10           Expense Claims, (III) Providing Adequate
             Protection to Prepetition Secured Parties, (IV)
11           Modifying the Automatic Stay, (V) Scheduling a
             Final Hearing, and (VI) Granting Related Relief
12           [Docket No. 463; 1/8/24]

13           Court's Ruling                                   30

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

        (Proceedings commence at 2:03 p.m.)

7

                THE COURTROOM DEPUTY:  Please rise.

8

                THE COURT:  Please be seated.

9

                Mr. Fedell.

10

                MR. FEDELL:  Good morning, Your Honor.  Jaimie

11

Fedell of Kirkland & Ellis on behalf of the debtors.  We are

12

here today for the adjourned confirmation hearing, as well as

13

our lease rejection order and final financing order.  I'm

14

happy to dive into the confirmation order, if that is all

15

right with Your Honor.

16

                Obviously, right before we broke yesterday, Mr.

17

Bennett announced the terms of a resolution with Stone Cold

18

which would resolve their objection.  We filed an updated

19

confirmation order at Docket Number 848 a few minutes before

20

the hearing.

21

                THE COURT:  Okay.

22

                MR. FEDELL:  I have redlines here, Your Honor, it's

23

-- mercifully, they are quite short changes.

24

                May I approach?

25

                THE COURT:  You may.  Thank you.

1        MR. FEDELL:  And that confirmation order also

2   includes one clarifying change with respect to the PGIM sale

3   order, which is reflected in the redline as well, but those

4   were the only changes from the version filed at Docket 840.

5        THE COURT:  Okay.

6        MR. FEDELL:  So I know other folks, Mr. Miller and

7   representatives from the required lenders are -- and the UCC

8   are in the courtroom, but from the debtors' perspective this

9   does resolve the Stone Cold objection.

10        THE COURT:  Okay.  Mr. Miller, I take it you have

11   client signoff?

12        MR. MILLER:  Your Honor, for the record, Curtis

13   Miller of Morris, Nichols, Arsht & Tunnell on behalf of Stone

14   Cold.  I do have client signoff.  I very much appreciate the

15   debtors and all the parties with the work that they did

16   overnight to get us here, and we're signed off on the

17   language in both the revised confirmation order that I

18   believe you're looking at, and there's also a separate

19   component, a revised rejection order, which you'll -- I think

20   you'll see in a moment, if you don't currently have it in

21   front of you.

22        THE COURT:  Okay.

23        MR. MILLER:  Thank you.

24        THE COURT:  Thank you.

25        Anyone else?

1        (No verbal response)

2            THE COURT:  Okay.  So, with the resolution of the

3    sole remaining objection, I am prepared, subject to the

4    comments I have on the order, to confirm the plan.  And big

5    picture and a big-picture look at this and the 1129

6    standards, I find they are met.  The plan was proposed in

7    good faith.  The plan passed the best interests test.  The

8    liquidation analysis shows that the holders of impaired

9    claims have each accepted the plan, or will receive or retain

10   under the plan on account of their claims not less than they

11   would receive in a Chapter 7.

12           There are representations and stipulations that the

13   debtor has sufficient assets to pay its administrative

14   claims, so feasibility has been met.

15           All classes voted to accept the plan, so we have at

16   least one class of impaired creditors.  With respect to

17   cramdown on those classes deemed to reject the plan, they're

18   appropriate.  No class below a deemed rejecting class is

19   receiving a distribution.

20           With respect to the debtor releases, there are no

21   objections to the debtor releases, and the releases are

22   supported by declarations which were admitted into evidence.

23           With respect to the third party releases, I will

24   find they are consensual, and -- but I will find there were

25   three creditors who were identified in the supplemental

1  declaration of the claims agent who both checked the box

2  opting out and voted in favor of the plan.  If I can find

3  that --

4        (Pause)

5        THE COURT:  It must be in the supplemental

6  declaration.

7        (Pause)

8        THE COURT:  Here it is.  It's in Docket 838,

9  declaration of Letitia Sanchez regarding the solicitation and

10  tabulation of opt-outs, and it's Exhibit B. GAR Bennett, LLC;

11  Primus Labs Corp.; and Raphaea (ph) A. Hall, Trustee of the

12  Ralph H. Al (ph) Survivors Trust; each of these both accepted

13  the plan and they opted out of the third party release.  The

14  debtors' plan provides that, if you accept the plan, you

15  can't opt out.  I think the checking of -- both accepting the

16  plan and checking the box then makes it unclear about what

17  these three creditors' intent was with respect to the opt-

18  out.  And I think, again, at best, their intent is uncertain.

19        So these three parties need to get on the opt-out

20  list with the others who -- the handful that opted out by

21  checking the box or objecting to the plan on that basis.

22        In terms of the settlements, specific settlements

23  contained within the plan, again, there were no objections to

24  any of the specific settlements, the settlement with the

25  sponsor, the settlement with the Gerawan entities, or the

1   settlements between the OpCo agent and the PropCo lenders, I

2   guess, that are contained within the plan as settled to the

3   -- and I guess the intercreditor claim is a component of the

4   plan, so I will approve that as well under 9019, and I will

5   approve each of those settlements under 9019.  Again, there's

6   been no objections and they resolve claims that, at least as

7   to the two, the debtors have against third parties.

8          So those are my big-picture observations for

9   confirming the plan and meeting the 1129 standards.

10         Let's go through the order and I'm looking at --

11  I'm looking at the redline in, I want to say -- which is my

12  understanding is the most, yes, recent version of the form of

13  order.

14         MR. FEDELL:  The most recent version is 848, but I

15  have 840 here --

16         THE COURT:  Ah --

17         MR. FEDELL:  -- Your Honor --

18         THE COURT:  -- I'm sorry, yes --

19         MR. FEDELL:  -- we can follow along.

20         THE COURT:  -- with those few changes.  Okay.

21  Page -- well, it's page 8 here, (f), objections.

22         The first sentence says, "The bankruptcy case

23  takes judicial notice of the docket and all pleadings."  I

24  don't do that.  If there's something in particular you want

25  me to take judicial notice of, I will, but not the entire

1  docket.  I just don't know what that means.

2          MR. FEDELL:  Understood, Your Honor.

3          THE COURT:  Okay.

4       (Pause)

5          THE COURT:  Paragraph (g), on the next page, the

6  second-to-last sentence, "All documents included in the plan

7  supplement are integral to and part of the plan."

8          So I did have a list of all those documents and

9  it's not clear to me why they're all part of the plan.

10 What's the thinking behind that?

11         MR. FEDELL:  Well, in terms of, for example, the

12 documentation, that is, you know, the treatment of certain

13 classes of creditors and the DIP rolls into a new facility,

14 that it would be the actual -- obviously, heavily negotiated

15 between the parties, the terms of those documentation.  While

16 the plan at a high level refers to, you know, what piece of

17 paper someone would receive or the specific mechanics of the

18 liquidation trust agreement, for example, that it is part of

19 the Chapter 11 plan because it is -- you know, the plan sets

20 forth at a high level and the definitive documentation

21 implement the plan, and all of those documents have been

22 negotiated by the stakeholders and we think it would be

23 appropriate to incorporate them into the plan as well.

24         THE COURT:  Okay.  The next sentence then says

25 that, subject to the terms of the plan, all those documents

1  could be modified --

2          MR. FEDELL:  That's -- yes, excuse me, Your Honor,

3  I'm sorry.

4          THE COURT:  -- through the effective date.  So are

5  then we changing the plan?

6          MR. FEDELL:  Only to the extent that it is an

7  agreed change by the parties who have consent rights over the

8  documents as set forth in the plan.

9          So, for example, just taking the DIP, the required

10 DIP lenders, obviously, have a consent right set forth in the

11 plan with respect to, you know, the treatment -- or the terms

12 of the take-back facility, so parties who have seen the plan

13 have effectively accepted that changes can be made to that

14 definitive documentation from and after the confirmation date

15 until the effective date.

16         THE COURT:  Does it say that in the plan or in the

17 documents somewhere, or does it just say that in my order?

18         MR. FEDELL:  The plan -- I can pull up the

19 references to the consent provisions, but --

20     (Pause)

21         MR. FEDELL:  It's article 10(a) of the plan

22 provides that there may be modifications to the plan, subject

23 to the consent of the required lender group and the debtors,

24 including the liquidating trust and reorganized PropCo, to

25 seek nonmaterial modifications to the plan.

1         THE COURT:  Thank you.

2         Okay, the next comment is on page 12, burden of

3 proof.  I will find -- I have found that the debtors have met

4 their burden of proof by a preponderance.  The second

5 sentence is unnecessary, and I'm not finding clear and

6 convincing evidence, I don't think that's a standard.

7         MR. FEDELL:  Understood, Your Honor.

8         THE COURT:  Okay, page 17, paragraph 31,

9 "Compromise and settlement."  This is the paragraph that says

10 a plan is a settlement.  I don't believe a plan is a

11 settlement.  So I'll give you a chance to convince me or we

12 can just strike it.

13         MR. FEDELL:  Your Honor, I think the plan contains

14 settlements.  So I'm --

15         THE COURT:  And those are in the next two

16 paragraphs, as I read them --

17         MR. FEDELL:  Correct.

18         THE COURT:  -- which I'm generally okay with that

19 these specific settlements -- and I looked at the definition

20 of plan settlements which is in the plan, which refers to the

21 various actual settlements.

22         MR. FEDELL:  Yes.  Certainly, we just want to be

23 crystal clear that the plan settlements are absolutely --

24 defined term plan settlements are absolutely approved, but in

25 terms of finding the plan in general as a settlement, we do

1  not need that language specifically.

2          THE COURT:  Okay, then let's strike paragraph 31.

3  I think paragraph 32 and 33 address each of your -- the three

4  settlements that I've identified as in the plan.  Okay?  And

5  I'm not aware of a different -- any others.

6          Okay, paragraph 38 and 39; these are the third

7  party releases.  With respect to paragraph 38, I just had the

8  comment I had before that we have those three people in Ms.

9  Sanchez's declaration, we need to -- I don't know that the

10 paragraph needs to change, I think they just need to get on

11 the list.  So we may need an amended list on the docket.

12         And then paragraph 39, I'm not approving the third

13 party releases as a settlement.  I'm approving them as

14 consensual, not deciding they're essential to the plan or

15 finding that they're given in exchange for good and valuable

16 consideration, or they're fair and equitable or reasonable,

17 or anything else.  So it can just be approved as consensual.

18         MR. FEDELL:  Understood, Your Honor.

19         Looking -- I'm sorry, Your Honor -- looking at

20 that actual paragraph --

21         THE COURT:  Yes.

22         MR. FEDELL:  -- (vii), given and made after notice

23 and opportunity for hearing --

24         THE COURT:  Yes.

25         MR. FEDELL:  -- certainly everyone was on notice

1  of --

2          THE COURT:  Yes --

3          MR. FEDELL:  -- the confirmation hearing --

4          THE COURT:  -- that makes --

5          MR. FEDELL:  -- so I think that would be --

6          THE COURT:  -- that's where the consent concept

7  comes from.  So, yes, that can be included.

8          MR. FEDELL:  Thank you, Your Honor.

9      (Pause)

10          THE COURT:  Paragraph 47.  I do not have any

11  problems with the good faith finding, which I think I make in

12  46, and then it's just elaborated on in 47, but the further

13  sentence:  "Further, the plan's classification, settlement,

14  exculpation, release, and injunction provisions have been

15  negotiated in good faith, and are consistent with these

16  sections and are necessary to consummate a value-maximizing

17  conclusion."

18          Is that a necessary finding to confirm the plan?

19          MR. FEDELL:  I think that finding, from the

20  perspective of the parties from -- who are the beneficiaries

21  of the release is an important finding and specifically

22  there's two evidentiary back-up pieces, and I was looking at

23  paragraphs 38 and 45 of the Boken declaration at Docket

24  Number -- excuse me one moment -- Docket Number 821, and then

25  also paragraph 16 of the Schwartz declaration at Docket

1   Number 817.

2        (Pause)

3        THE COURT:  I just think this is a crossover

4   between the plan being a settlement and then releases being

5   necessary.  And certainly the third party releases I'm not

6   making that finding, regardless of what the declarants may

7   say.  Classification is -- I mean, classification is either

8   permitted under the plan or it's not permitted, regardless of

9   what the parties negotiated, right?

10       MR. FEDELL:  Yeah, I agree with that, Your Honor.

11       THE COURT:  So that's why I'm just -- if you --

12  and in terms of the settlement, the three settlements that

13  we've specifically talked about, I don't have a problem.  So

14  maybe if this gets narrowed and we take out classification

15  and we put in the defined term plan settlements, I think is

16  the defined term, and exculpation, okay, the debtors'

17  releases, and injunction have been negotiated in good faith.

18  I'm okay with that.

19       And actually I don't think that good faith and

20  value-maximizing necessarily have to -- you know, you get the

21  thing you get with good faith.  I'm not sure where that comes

22  from or why that piece is necessary in a good faith finding.

23       MR. FEDELL:  This would be the clause starting

24  "and are each necessary for the debtors" --

25       THE COURT:  Yeah.

1    MR. FEDELL:  Okay.  Thank you, Your Honor.  We can

2  strike that.

3    THE COURT:  I'm curious, the GUC administrator and

4  the liquidating trustee, I did see the disclosures, I don't

5  happen to know these two individuals.  Are they both -- I

6  assume they're both in the restructuring field?

7    MR. FEDELL:  That's right, Your Honor, and were

8  respectively selected in consultation with the creditors

9  committee and the required lenders.

10    THE COURT:  Okay.  And paragraph 51, best

11  interests, the second sentence:  "The evidence in support of

12  the plan that was proffered or adduced at the confirmation

13  hearing," that's fine, but the facts and circumstances of

14  these Chapter 11 cases is not what I considered in looking at

15  this and in making that finding.

16    In paragraph 52, towards the end it has a

17  sentence, "To the extent a class contains claims or interests

18  eligible to vote, no holders of claims voted," I don't think

19  we have that scenario here and I haven't had to rule on that

20  issue.  So I'd like to take that out because I don't think it

21  matter.

22    MR. FEDELL:  Correct, there were no

23  (indiscernible) classes, Your Honor.

24    THE COURT:  Right.

25    (Pause)

1          THE COURT:  I'm curious about paragraph 67.  "The

2     debtors have disclosed all material facts."  What's that

3     aimed at?  I approved a disclosure statement as containing

4     adequate information to make a decision.

5          MR. FEDELL:  I think that is effectively restating

6     the adequate-information standard and supplementing it in

7     terms -- like, essentially, the plan -- you know, the

8     disclosure statement said there will be a plan supplement

9     that will have additional information regarding the

10    documentation, and then we in fact did so.  However, I would

11    not view this as a necessary finding to confirm the plan,

12    frankly.

13         THE COURT:  Okay, then let's take it out.

14         Okay, and paragraph 75, this is again dealing with

15    the plan supplement, which I guess I'm okay with, but it also

16    talks about agreements entered -- introduced -- documents and

17    agreements introduced into evidence are being authorized.

18    I'm not sure what that means.

19       (Pause)

20         MR. FEDELL:  I think -- so what we -- the parties

21    are looking for in the plan supplement is obviously that like

22    an execution version of the credit agreement can be executed

23    and approved, but there would not be a document agreement

24    introduced into evidence at the confirmation hearing.

25         So I think that sentence, and then the sort of

1  clause and then the parenthetical right after it, would be

2  able to come out.

3          THE COURT:  Okay.  Okay, and the next sentence

4  also deals with modifications again to the documents and it's

5  mentioned a bunch of times.  As long as you're consistent

6  with the plan, consistent with the Code, they're not

7  material, they don't impact third parties adversely, is not

8  contemplated by the plan, then we're okay, but I assume the

9  debtors and all parties understand that.

10          MR. FEDELL:  Yes, Your Honor.

11          THE COURT:  Okay, I'm on page 51 now, paragraph

12  (n), and I'm not sure if this is changed now with the

13  additions that were made, the GUC administrator.  The last

14  sentence:  "The GUC administrator may rely upon written

15  information previously generated by the debtors."  Is that

16  something specific?

17          MR. FEDELL:  Off the top of my head, I do not.  I

18  suspect the creditors -- and I see Mr. Behlmann coming off of

19  -- or on the Zoom, so if Mr. Behlmann would like to address

20  that.

21          THE COURT:  Yes, Mr. Behlmann.

22          MR. BEHLMANN:  Your Honor, good afternoon, Andrew

23  Behlmann from Lowenstein on behalf of the committee.  I

24  believe the sole intent of that purpose -- of that language

25  was the debtors -- you know, to the extent the debtors have

1  books and records that we look at in reconciling claims, that

2  the GUC administrator is able to rely upon the books and

3  records, as opposed to going out and creating them anew on

4  his own.

5          THE COURT:  Okay, that's -- certainly the GUC

6  administrator can look at those records and -- so that's

7  fine, I guess that's fine.  Okay, that can stay in.

8          Okay, the paragraph, it's 111, dissolution of the

9  wind-down debtors.  If the debtors are going to be dissolved,

10 they need to comply with state law.  If you need to make a

11 filing, you need to make a filing, but I'm not going to deem

12 some debtor dissolved.

13         MR. FEDELL:  Understood, Your Honor.  I was just

14 making a note, but that's fine, of course.

15         THE COURT:  Page 55, paragraph (u), the Section

16 1146 exemption.  So I think the debtors are -- and the post-

17 effective date debtors are entitled to the protections of

18 1146(a), whatever they are, but that provision is about three

19 lines in the Code and this is a page and a half.

20         So it should just mirror the Code.  Is there a

21 reason why it can't just mirror the Code?

22         MR. FEDELL:  I think the reason would be is that

23 -- I mean, I would start by saying that it's -- there's a

24 caveat at the beginning that it's to the fullest extent

25 permitted by Section 1146(a) of the Bankruptcy Code.  So, if

1    a taxing authority has an issue with something, you know, it

2    either complies with 1146(a) or it does not.  This is an

3    attempt to --

4            THE COURT:  To make them think it does?

5            MR. FEDELL:  I would describe it as to bolster

6    those provisions and to --

7        (Laughter)

8            MR. FEDELL:  -- clarify what type of actual

9    transactions will be occurring.  So I would put it to Your

10   Honor that it does not in any way conflict or expand 1146(a)

11   and everyone's rights to come back are reserved.  There's not

12   a specific finding that any transaction falls within the

13   meaning of 1146(a).

14           THE COURT:  I just -- I think this -- if I had to

15   guess, I'd say this goes beyond 1146.

16           MR. MILLER:  Your Honor, for the record, Curtis

17   Miller.  You'll see it in our rejection order.  We have a

18   similar provision in our rejection order where some of the

19   property that we talked about yesterday, as the debtor is

20   vacating, it's getting transferred back to Stone Cold, and we

21   have -- because it's being done pursuant to this plan

22   settlement, we have a similar provision in our rejection

23   order.

24           At least when we do this in our plans, the reason

25   is because when we go to taxing authorities, if you just use

1  the simple words that are in the Code, which mean things if

2  you go and you look at, you know, the cases and the history

3  of interpreting the Bankruptcy Code, it means something to us

4  as bankruptcy lawyers, but to those taxing authorities it

5  doesn't.  So stating things like excise taxes, you know,

6  specific types of taxes that would otherwise qualify under

7  1146 makes a difference when you're dealing with those

8  authorities.

9          And so that's the reason at least why we are

10  typically expounding upon that.  I think everything still

11  fits within what would be 1146, but at least that's the

12  reason why we do it because, you know, depending on who it is

13  you're dealing with in what state and whatever that taxing

14  authority is, if you have to come them with a case or, you

15  know, something that's interpreting what's in the Bankruptcy

16  Code, it can be challenging, and we don't want to have to

17  come back to you.

18          But I'll sit down now because this isn't -- it's

19  the debtors' plan.

20          THE COURT:  Thank you.

21      (Pause)

22          THE COURT:  Okay, I'll let you keep this expansive

23  thing, which, quite frankly, I don't know if it goes beyond a

24  stamp tax, which was probably, you know, some term from the

25  18 whatever, but the last sentence then needs to be changed

1    to simply "authorize filing and recording officers to accept

2    these documents and forgo the imposition of these taxes,"

3    rather than the mandatory shall language.

4            MR. FEDELL:  Yes, Your Honor.  Thank you.

5            THE COURT:  Paragraph W, preservation of causes of

6    action, or category W.  Paragraph 121, which probably isn't

7    that anymore -- and actually it's the next one, 122, that

8    begins, "Reorganized PropCo, wind-down debtors may pursue

9    such retained causes of action as appropriate."  Okay?

10            About halfway down there's a sentence that starts,

11   "Unless otherwise agreed upon in writing by the parties to

12   the applicable causes of action, all objections to the

13   schedule of retained causes of action must be filed on or

14   before 30 days after the effective date," and then it goes on

15   until the end of the paragraph.  I really don't know what

16   that's getting to.

17            MR. FEDELL:  I believe it is specifically

18   referring to if a party sees a cause of action that it

19   believes is subject to the debtor release that would not

20   otherwise be vested in the, you know, reorganized entities or

21   the wind-down debtors, that they would have an opportunity to

22   assert that a specifically-delineated cause of action would

23   be subject to the release within that 30-day period.

24            THE COURT:  Instead of just filing a motion to

25   dismiss when they're sued?

1    MR. FEDELL:  They could certainly do that as well

2 and, I suspect, in all likelihood would end up doing that

3 with or without that language.

4    THE COURT:  It's the next sentence that prohibits

5 them from doing that.  I've never seen this type of provision

6 before.

7    MR. FEDELL:  We can remove that provision, Your

8 Honor.

9    THE COURT:  Okay.  I think from "Unless authorize"

10 to the end of the paragraph comes out.  We'll deal with what

11 happens if someone tries to sue a released party when that

12 happens.

13    MR. FEDELL:  Understood.

14    THE COURT:  Similarly, in paragraph 120 -- the

15 next paragraph, 123, the doctrines of issue preclusion, *res*

16 *judicata*, et cetera, we'll deal with those when they get

17 raised in a motion to dismiss.  I'm not going to preclude

18 future defendants from raising defenses.

19    So the first part of that is fine, but the "and,

20 therefore, no preclusion doctrine," et cetera, is forward-

21 looking.

22    MR. FEDELL:  Understood, Your Honor.

23    THE COURT:  In paragraph -- well, I guess it's

24 section Z -- or I guess Y and Z, these refer to provisions of

25 the plan that permit proofs of claim to be wiped off the

1  claims docket without bringing an objection.  I'm not going

2  to permit that.  If you have any objection, if it's late-

3  filed, it's duplicative, whatever it is, you need to --

4  whoever is going to object to claims has to file their

5  objection.

6          MR. FEDELL:  Understood, Your Honor.  I just can't

7  seem to find the provision, but I understand the concept --

8          THE COURT:  It's in --

9          MR. FEDELL:  -- so we can reflect that change.

10         THE COURT:  -- they refer to article 7 --

11         MR. FEDELL:  Oh.

12         THE COURT:  -- of the plan, and I looked at

13  article 7 and it permits claims to be excised without

14  objection, without notice to parties, those claimants, and I

15  am not going to permit that.

16         MR. FEDELL:  Understood, Your Honor.

17         THE COURT:  And it's (oo), notice of confirmation

18  and effective date.  There's a provision towards the bottom,

19  a sentence that says, "Further, the debtors shall only be

20  required to serve those members who have not filed a proof of

21  claim in these Chapter 11 cases with the confirmation order

22  notice, to the extent that such members have active

23  electronic mail addresses."

24         I don't know who the members are and who's the

25  services here.

1    MR. FEDELL:  I don't think it's referring to

2 members of the creditors committee or -- and there's not

3 membership units in this case.  This may be a holdover --

4    THE COURT:  A holdover?

5    MR. FEDELL:  -- from precedent, to be frank, Your

6 Honor.

7    THE COURT:  Okay.  Well, I think we've got mailing

8 of it and I think that's what happened -- should happen to

9 creditors who are impacted.  So let's take that out as

10 probably unnecessary here and a holdover.

11    MR. FEDELL:  Yes, Your Honor.

12    THE COURT:  Okay.  And then the next paragraph, if

13 the reorganized debtors or whoever wants to make people file

14 another notice of appearance, there needs to be a specific

15 notice of that done after -- not as a part of this.  And,

16 until that's done, people who are on the 2002 list remain on

17 the 2002 list.

18    MR. FEDELL:  Yes, Your Honor.

19    THE COURT:  Okay.  And my last comment is on

20 paragraph (pp), return of adequate assurance deposits.  I

21 just think it needs to be consistent with the utility order.

22 I don't know what the utility order said, but it just needs

23 to be consistent with the utility order.

24    MR. FEDELL:  Yes, Your Honor.

25    THE COURT:  Okay.  So those are my comments and

1 | when I get a form of order that's consistent with that,

2 | circulated to everyone who it should be circulated to, I will

3 | sign it.

4 |         MR. FEDELL:  Thank you, Your Honor.  One practical

5 | issue, I believe tomorrow is a federal holiday, technically,

6 | that is our milestone for entry of the confirmation order.

7 | Of course, Your Honor indicated that it will be approved.  We

8 | will endeavor to get you the order as soon as possible, but I

9 | just wanted to, I guess, put that out there, including for

10 | the required lenders, who I expect would not default the DIP

11 | given --

12 |         THE COURT:  One would hope not.

13 |         MR. FEDELL:  -- the holiday, but --

14 |         THE COURT:  One would hope not.  If you email Ms.

15 | Batts and Ms. Johnson and let them know that it has been

16 | uploaded, they will get in touch with me.  And,

17 | unfortunately, I will probably be here tomorrow, so I'll look

18 | at it.

19 |         MR. FEDELL:  Okay.  Thank you, Your Honor.  And we

20 | had -- and thank you for entry of the confirmation order, of

21 | course -- we do have two further items on our agenda.  I'll

22 | turn it over to -- I can't remember which one is going first

23 | -- Mr. Gremling.

24 |         MR. GREMLING:  Good afternoon, Your Honor, Dave

25 | Gremling, Kirkland & Ellis, on behalf of the debtors.

1          It's actually not on the agenda from yesterday

2   because, as you're aware, our issues with Mr. Miller's

3   clients has sort of pulled forward a consensual rejection of

4   a lease that had been docketed, but we negotiated the form of

5   order.  We submitted a certificate of counsel just before

6   this hearing.  I would like to just state for the record we

7   will submit a further revised form of order.

8          It was pointed out pretty immediately by the folks

9   at Ballard Spahr that we inadvertently omitted agreed

10  language about their client, Wells Fargo Equipment Finance.

11  I can read to you the agreed language or we can just put it

12  in the agreed form.  And I have a clean and redline of what

13  is on the docket, if you'd like it.

14          THE COURT:  Thank you.

15          MR. GREMLING:  You're welcome.

16      (Pause)

17          THE COURT:  Okay, I only have two thoughts.

18          MR. GREMLING:  Okay.

19          THE COURT:  And I think Mr. Miller better come up.

20          Okay, I see in paragraph 2 the abandonment of,

21  pursuant to 554, which is fine, and then it says that Stone

22  Cold may, in its sole discretion and without further order of

23  the Court, utilize and/or dispose of such property,

24  consistent with state law.  Okay?

25          MR. MILLER:  That's -- this is the one paragraph

1  that's going to change with Wells Fargo.

2              THE COURT:  Okay.

3              MR. MILLER:  So they have some solar equipment on

4  our property and we've worked out some language that is going

5  to deal with the property because they weren't happy with the

6  original abandonment language.

7              THE COURT:  Okay.

8              MR. MILLER:  So that is the provision that will go

9  in there.

10             THE COURT:  Okay.

11             MR. MILLER:  But if you want to -- could you tell

12 me where you want the state law --

13             THE COURT:  Well, it just needs --

14             MR. MILLER:  -- provision to go in?

15             THE COURT:  -- your ability to dispose of,

16 basically, a landlord's ability to dispose of property should

17 be consistent with state law, however you would do it under

18 state law.

19             MR. MILLER:  I'm sure we would do that anyway.  So

20 that's fine, Your Honor.

21             THE COURT:  Okay?  So just that concept.  And then

22 your language on the tax, the stamp tax --

23             MR. MILLER:  Uh-huh.

24             THE COURT:  -- should be qualified similar to how

25 it was qualified in the confirmation order, consistent with

1  the Code --

2              MR. MILLER:  Sure.

3              THE COURT:  -- because I -- you know, I don't --

4  although this may be -- well --

5              MR. MILLER:  I think it's actually narrower.

6              THE COURT:  It is narrower, but I couldn't tell

7  you whether all of these taxes are a stamp tax or not.  So,

8  as long as it's consistent with 1146, I am fine with that.

9              MR. MILLER:  So how about right before where it

10 says, "Shall not be subject," I just add in "consistent with

11 Section 1146 of the Code"?

12             THE COURT:  Or as permitted by or as -- I forget

13 what the language is --

14             MR. GREMLING:  Either of those are fine, Your

15 Honor.

16             THE COURT:  Yeah, something that qualifies it a

17 little bit so that it is consistent.

18             Okay.  And other than that --

19             MR. MILLER:  And then I see Ms. Roglen is --

20             THE COURT:  Ms. Roglen.

21             MS. ROGLEN:  Good afternoon, Your Honor, Laurel

22 Roglen of Ballard Spahr on behalf of Wells Fargo Equipment

23 Finance, I'm wearing my real property lessor hat -- or,

24 excuse me, my personal property lessor hat today instead of

25 my real property lessor hat --

1          THE COURT:  Uh-huh.

2          MS. ROGLEN:  -- as usual.  So it's unusual for me

3   to be on the other side of Mr. Miller and the debtors on

4   these abandonment issues, but I just wanted to say that the

5   clarification that Your Honor has requested that the disposal

6   of the property be consistent with state law is acceptable

7   from Wells Fargo's perspective, in addition to the language

8   that we all had agreed will be in this order.

9          THE COURT:  I like how you clarified your -- who

10  you have your hat on for that particular concession.  Okay.

11       (Laughter)

12         MR. MILLER:  We're going to hold this against her

13  in the future, Your Honor.

14         THE COURT:  We've all heard it, right?  Okay.

15       (Laughter)

16         THE COURT:  Okay, thank you.  Thank you.

17         MR. MILLER:  Thank you, Your Honor.

18         THE COURT:  Okay.  And, with that, this obviously

19  settles not only a confirmation objection, but a rejection

20  issue, and, with the language that will also satisfy Ms.

21  Roglen's client, I will sign it.

22         MR. GREMLING:  Thank you, Your Honor.  I will turn

23  the podium to my colleague Mr. Jacobson for the DIP.

24         THE COURT:  Okay.  Thank you.

25         MR. JACOBSON:  Good afternoon, Your Honor, Rob

1  Jacobson, Kirkland & Ellis, on behalf of the debtors.

2          Your Honor, we are pleased, after five interim

3  cash collateral orders and four interim DIP orders, to be in

4  a position to ask for approval of the final DIP order.  The

5  final order is substantially the same as the fourth interim

6  DIP order, with modifications necessary to convert it into a

7  final order.

8          As noted in the certification of counsel that we

9  filed, that was at Docket Number 831, the debtors circulated

10 the proposed order to the DIP lenders, the bridge and OpCo

11 agents, the committee, the U.S. Trustee, and none of those

12 parties have objected to entry of this order.  We also

13 received no general objections to the order on the docket or

14 informally.

15         I am happy to answer any questions Your Honor has,

16 but otherwise we'd respectfully request entry of the order.

17         THE COURT:  I do not have any questions.  Does

18 anyone wish to be heard?

19      (No verbal response)

20         THE COURT:  I hear no one.  I will sign it as an

21 agreed form of final DIP order --

22         MR. JACOBSON:  Yeah, our tenth order.

23         THE COURT:  -- on the date of confirmation of the

24 plan.  Okay.

25         MR. JACOBSON:  Thank you, Your Honor.

1          THE COURT:  Okay.  Anything else?

2          MR. JACOBSON:  That's the balance of our agenda.

3          THE COURT:  Then we are adjourned.

4          COUNSEL:  Thank you, Your Honor.

5      (Proceedings concluded at 2:57 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          CERTIFICATION

2              I certify that the foregoing is a correct

3   transcript from the electronic sound recording of the

4   proceedings in the above-entitled matter to the best of my

5   knowledge and ability.

6

7

8

9   /s/ Tracey J. Williams                March 29, 2024

10  Tracey J. Williams, CET-914

11  Certified Court Transcriptionist

12  For Reliable

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25